

ORIGINAL

FAXED

1  COOLEY LLP
   MICHAEL G. RHODES (116127)
2  (RHODESMG@COOLEY.COM)
   MATTHEW D. BROWN (196972)
3  (BROWNMD@COOLEY.COM)
   JEFFREY M. GUTKIN (216083)
4  (GUTKINJM@COOLEY.COM)
   101 California Street, 5th Floor
5  San Francisco, CA  94111-5800
   Telephone:    (415) 693-2000
6  Facsimile:     (415) 693-2222

7  Attorneys for Defendant
   FACEBOOK, INC.

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  ANGEL FRALEY; PAUL WANG; SUSAN          Case No.
    MAINZER; JAMES H. DUVAL, a minor, by
13  and through JAMES DUVAL, as Guardian ad       CV 11-01726
    Litem; and WILLIAM TAIT, a minor, by and
14  through RUSSELL TAIT, as Guardian ad     Cal. Superior Court, County of Santa Clara
    Litem; individually and on behalf of all others    Case No.: 111CV196193
15  similarly situated,
                                            NOTICE OF REMOVAL OF ACTION
16              Plaintiffs,                  UNDER 28 U.S.C. §§ 1332(d), 1446, AND
                                            1453(b)
17       v.
                                            Complaint Filed: March 11, 2011
18  FACEBOOK, INC., a corporation; and DOES
    1-100,                                  First Amended Complaint Filed: March
19                                          18, 2011
                Defendants.
20

21

22  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

23       PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332(d), 1446, and 1453(b), defendant

24  Facebook, Inc. ("Facebook" or "Defendant"), by its undersigned attorneys, hereby removes to

25  this Court the above-captioned civil action, and all claims and causes of action therein, from the

26  Superior Court of California, County of Santa Clara, to the United States District Court for the

27  Northern District of California.  Defendant states as follows:

28  ///

## Jurisdiction and Authority for Removal

1) On March 11, 2011, an action was commenced by plaintiff Angel Fraley and her co-plaintiffs ("Plaintiffs") against Facebook in the Superior Court of the State of California in and for the County of Santa Clara, entitled "Angel Fraley, Paul Wang, and Susan Mainzer, individually and on behalf of all others similarly situated v. Facebook, Inc., a corporation, and DOES 1-100" ("*Fraley*"), with case number 111CV196193. This removal is therefore timely under 28 U.S.C. § 1446(b).

2) Attached hereto as **Exhibit A** are all electronically filed documents in the *Fraley* case file, including a copy of the *Fraley* Complaint and First Amended Complaint.

3) The Northern District of California encompasses Santa Clara County.

4) This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")) because, according to the First Amended Complaint, (a) a member of the putative class is a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2)(A); (b) the putative class action consists of at least 100 putative class members, 28 U.S.C. § 1332(d)(5)(B); and (c) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2).

5) This action is a "class action" within the meaning of CAFA because Plaintiffs seek to represent a class of persons in a civil action brought under California Code of Civil Procedure § 382 and California Civil Code § 1781 (First Amended Complaint ("FAC") ¶¶ 45-51), which are "statute[s] . . . of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

6) Defendant may thus remove this action to this Court under 28 U.S.C. § 1453(b).

## Citizenship of Parties and Putative Class (28 U.S.C. § 1332(d)(2)(A))

7) According to the First Amended Complaint (FAC ¶ 6), Plaintiff Angel Fraley is a resident of Seattle, King County, Washington.

8) Facebook is a corporation organized under the laws of Delaware with its principal place of business in Palo Alto, California.

9) Facebook is a social network that enables users to connect and share content with

1   their family and friends. Facebook users reside throughout the United States and the rest of the

2   world. (FAC ¶¶ 13, 45.)

3       10)    Plaintiffs seek to represent a class of plaintiffs who reside "in the United States."

4   (FAC ¶ 44.) Plaintiffs have defined the putative class as:

5           All registered Members of facebook.com as of January 24, 2011 in
            the United States who are natural persons, who remained registered
6           through January 25, 2011 or later, and who have had their names,
            photographs, likenesses or identities used in a Facebook Sponsored
7           Stories ad ("the Class").[1]

8   (FAC ¶ 44.)

9       11)    Thus, one named plaintiff and other members of the putative class are citizens of a

10  state other than Delaware or California. 28 U.S.C. § 1332(d)(2)(A).

11  **Number of Class Members (28 U.S.C. § 1332(d)(5)(B))**

12      12)    Plaintiffs allege that there are "potentially 153 million persons in the Class, and

13  over 51 million in the Minor Class." (FAC ¶ 45.)

14      13)    Therefore, there are at least 100 members of Plaintiffs' putative class. 28 U.S.C.

15  § 1332(d)(5)(B).

16  **Amount in Controversy (28 U.S.C. § 1332(d)(2))**

17      14)    Assuming, for purposes of this Notice of Removal, that all of Plaintiffs'

18  allegations were true and the putative class of plaintiffs were to be certified, the amount in

19  controversy, exclusive of interest and costs, exceeds $5,000,000. 28 U.S.C. § 1332(d)(2).

20      15)    Plaintiffs assert the following claims: (i) violation of California Civil Code section

21  3344 (misappropriation of the right of publicity), (ii) violation of California Business and

22  Professions Code section 17200 (unlawful, unfair, and fraudulent business practices), and

23  (iii) unjust enrichment. Plaintiffs seek actual, statutory, and exemplary damages, restitution,

24  disgorgement, and recovery of their fees and expenses. (FAC ¶¶ 56-83.)

25      16)    According to the First Amended Complaint, "Plaintiffs and Members of the Class

26

27  [1] Plaintiffs also purport to assert claims on behalf of a subclass of minors, which Plaintiffs have
    defined as "All persons in the Plaintiff Class who additionally have had their names, photographs,
28  likenesses or identities used in a Facebook Sponsored Stories ad while under 18 years of age ('the
    Minor Subclass')." (FAC ¶ 44.)

1   seek also remedy as provided for by Cal. Civ. Code § 3344(a) in the amount equal to the greater

2   of $750 per incident, or actual damages, any profits attributable to [Defendants' allegedly

3   improper conduct], before taking into account any actual damages, punitive damages, attorneys

4   fees and costs, and any relief as may be appropriate." (FAC ¶ 67.)

5       17)   As noted above, Plaintiffs seek to represent a class that allegedly includes at least

6   153 million Facebook users. (*See supra* ¶ 12.)

7       18)   Without taking into account other relief sought by Plaintiffs for their additional

8   causes of action, and based on the Plaintiffs' own allegations, Plaintiffs' demand for statutory

9   damages for their misappropriation claim under California Civil Code section 3344 places the

10  amount in controversy in excess of the statutory minimum $5,000,000 for federal diversity

11  jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).[2] (*See supra* ¶¶ 16-17.)

12  **Notice to Superior Court of Removal of Civil Action**

13      19)   Defendant will promptly serve a copy of this Notice of Removal on counsel for

14  Plaintiffs and will file a copy of this Notice of Removal with the Clerk of the Superior Court of

15  California for the County of Santa Clara pursuant to 28 U.S.C. § 1446(d).

16

17  Dated: April 8, 2011                      COOLEY LLP

18

19                                           By: _____

20                                               Matthew D. Brown (196972)

21                                           Attorneys for Defendant
                                             FACEBOOK, INC.

22

23

24

25

26

27  _____
    [2] In filing this Notice of Removal, Facebook makes no admissions as to any allegations contained
28  in Plaintiffs' First Amended Complaint, nor does Facebook waive or forfeit any arguments or
    defenses.

# EXHIBIT A
# To Notice of Removal



ROBERT S. ARNS
(#65071, rsa@arnslaw.com)
JONATHAN E. DAVIS
(#191346, jed@arnslaw.com)
STEVEN R. WEINMANN
(#190956, srw@arnslaw.com)
THE ARNS LAW FIRM
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:   (415) 495-7800
Fax:   (415) 495-7888

JONATHAN M. JAFFE
(# 267012, jmj@jaffe-law.com)
JONATHAN JAFFE LAW
3055 Hillegass Avenue
Berkeley, CA 94705
Telephone: (510) 725-4293
Attorneys for Plaintiffs

ENDORSED
FILED

MAR 18 2011

David H. Yamasaki, Chief Exec. Officer/Clerk of the Superior Court
County of Santa Clara, California
By: _____
Deputy Clerk

A. FLORESCA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

FACEBOOK, INC., a corporation; and DOES 1-100,

Defendants.

CASE NO. 111CV196193

FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

1. CAL. CIV. CODE § 3344
2. UNFAIR COMPETITION
3. UNJUST ENRICHMENT

Jury Trial Demanded

Page 1
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES



1.   Plaintiffs ANGEL FRALEY, PAUL WANG and SUSAN MAINZER, JAMES H. DUVAL, a minor, by and through JAMES DUVAL as Guardian ad Litem, and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as Guardian ad Litem ("Plaintiffs") on behalf of themselves and all others similarly situated, make the following allegations on information and belief, except as to allegations pertaining to Plaintiffs, which are based on personal knowledge:

## I. INTRODUCTION

2.   Plaintiffs bring this class action complaint against Facebook, Inc. (hereafter, "FACEBOOK") for appropriating the names, photographs, likenesses and identities of Plaintiffs to advertise products, services or brands for a commercial purpose without Plaintiffs' consent, or the consent of their parents or legal guardians when a minor was involved, for unfair and deceptive business practices, and in violation of FACEBOOK's agreement with Plaintiffs, accepted industry standards, and state law.

3.   FACEBOOK intentionally and knowingly conducted such actions without Plaintiffs' consent, or the consent of their parents or legal guardians when a minor was involved, for substantial profit in a scheme to advertise or sell products or services or brands.

## II. JURISDICTION AND VENUE

4.   This Court has personal jurisdiction over FACEBOOK because (a) a substantial portion of the wrongdoing alleged in this complaint took place in this state, and (b) FACEBOOK is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of products and services in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.   Venue is proper in this County under the California Code of Civil Procedure section 395 and Business & Professions Code section 17203 because this Court is a court of competent jurisdiction, and because FACEBOOK's headquarters and principal place of business is in the City of Palo Alto, County of Santa Clara, State of California.

Page 2
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

## III. PARTIES

6.   Individual Plaintiff/Class Representatives. Plaintiff Angel Fraley is a citizen and resident of Seattle, in King County, Washington. Ms. Fraley has been, and still is, a registered member of the facebook.com web site (hereafter, "Facebook.com") since before January 25, 2011. At all relevant times herein, Ms. Fraley was a Facebook.com member who, on one or more occasions during the class period, in her city of residence, accessed Facebook.com as a registered member to "Post", employ the "Like" function, employ a partner application, or in various locations within the state of Washington, utilize the Facebook.com "Check-in" feature to post her geographical location to her Facebook News Feed. Sometime later, FACEBOOK caused her name, photograph, likeness or identity to appear in a Sponsored Story as an endorsement for a paid advertisement without her consent, and caused that advertisement to be shown to one or more Facebook Friends within the state of Washington, California, and the rest of the United States.

7.   Plaintiff Susan Mainzer is a citizen and resident of Los Angeles, California in Los Angeles County. Ms. Mainzer has been, and still is, a registered Facebook member since before January 25, 2011. At all relevant times herein, Ms. Mainzer was a Facebook.com member that, on one or more occasions during the class period, in her city of residence, accessed Facebook.com as a registered member to "Post", employ the "Like" function, employ a partner application, or in various locations within California, utilize the Facebook "Check-in" feature to post her geographical location to her Facebook News Feed. Sometime later, FACEBOOK caused her name, photograph, likeness or identity to appear in a Sponsored Story as an endorsement for a paid advertisement without her consent, and caused that advertisement to be shown to one or more Facebook Friends within and outside of California.

8.   Plaintiff Paul Wang is a citizen and resident of Oakland, California in Alameda County. Mr. Wang has been, and still is, a registered Facebook member since before January 25, 2011. At all relevant times herein, Mr. Wang was a Facebook.com member that, on one or more occasions during the class period, in his state of residence, accessed Facebook.com as a registered member to "Post", employ the "Like" function, employ a partner application, or in various locations within California, utilize the Facebook "Check-in" feature to post his geographical location to his Facebook News Feed.

Sometime later, FACEBOOK caused his name, photograph, likeness or identity to appear in a Sponsored Story as an endorsement for a paid advertisement without his consent, and caused that advertisement to be shown to one or more Facebook Friends within and outside of California.

9.     Plaintiff James H. Duval is and at all relevant times was a minor, under 18 years of age, residing in Contra Costa County, California. James H. Duval has been, and still is, a registered Facebook member since before January 25, 2011. At all relevant times herein, James H. Duval was a Facebook.com member who, on one or more occasions during the Class period, in his state of residence, accessed Facebook.com as a registered Member to "Post", employ the "Like" function, employ a partner application, or in various locations within California, utilize the Facebook "Check-in" feature to post his geographical location to his Facebook News Feed. Sometime later, on information and belief, FACEBOOK caused his name, photograph, likeness or identity to appear in a Sponsored Story as an endorsement for a paid advertisement without the consent of his parents, and caused that advertisement to be shown to one or more Facebook Friends within and outside of California. James Duval is the parent and guardian ad litem of James H. Duval.

10.     Plaintiff William Tait is and at all relevant times was a minor, under 18 years of age, residing in the County of Los Angeles, California. William Tait has been, and still is, a registered Facebook.com member since before January 25, 2011. At all relevant times herein, William Tait was a Facebook.com member who, on one or more occasions during the class period, in his state of residence, accessed Facebook.com as a registered Member to "Post", employ the "Like" function, employ a partner application, or in various locations within California, utilize the Facebook.com "Check-in" feature to post his geographical location to his Facebook News Feed. Sometime later, on information and belief, FACEBOOK caused his name, photograph, likeness or identity to appear in a Sponsored Story as an endorsement for a paid advertisement without the consent of his parents, and caused that advertisement to be shown to one or more Facebook Friends within and outside of California. Russell Tait is the parent and guardian ad litem of William Tait.

11.     Defendant Facebook, Inc. is a corporation organized and existing under the laws of the state of Delaware that maintains its headquarters and principal place of business in Palo Alto, California.

operating by and under the laws of California. FACEBOOK conducts business throughout California, the nation and the world. FACEBOOK operates the Internet site facebook.com.

12. <u>Defendant Does 1 through 100</u>. Plaintiffs are unaware of the true names and capacities of Does 1 through 100, inclusive, and therefore sue such defendants by fictitious names. Plaintiffs will amend the complaint to show the true names and capacities of the fictitiously named defendants when they are ascertained. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 100 are agents, joint employers, co-conspirators, employees and/or representatives of the named defendants. Plaintiff is informed and believes, and on that basis alleges, that the fictitiously named defendants are liable to plaintiff and the class members, and each of them, for the conduct and damages alleged herein.

## IV.  FACTUAL ALLEGATIONS

13.    Defendant FACEBOOK owns and operates the world's largest social networking site, facebook.com. FACEBOOK requires Internet Members to register ("Members") in order to post content to the site, establish social network relationships within the site, and view most of the content produced by other Facebook.com Members. Members receive an Internet presence on Facebook.com where they can exchange highly personal messages through text, images, audio and video, and display equally personal photos, to an explicitly identified group of friends, family and acquaintances, as well as those outside of this group. Facebook.com has become an integral part of the lives of approximately 600 million people around the world and has become the de facto method of communication among friends for a significant portion of these Members. Facebook.com has over 148 million Members in the United States. Over 14 million of these are minors.

14.    To become a Member of Facebook.com, persons must register a profile. FACEBOOK requires its Members to submit their true names, email addresses, birth dates, and gender in order to register.

15.    A Member gets a "Profile" page. This Profile page displays News Feeds from other Facebook.com Members. The part of the Profile page that displays this information is called the "Wall."

16.    Members are connected to other Members in relationships called "Friends." A Friend is someone to whom you have given explicit permission to post content to your "Wall," to see information about you, and to send you messages.

Page 5
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

17.   A Member may post information—text, images, web links, and video information—using a variety of methods. This information becomes part of the Member's "News Feed," which can be seen by other persons with whom the Member has a relationship as a Friend.

18.   FACEBOOK sells highly targeted advertising services that place ads on Members' Walls and other pages. FACEBOOK enjoys substantial profits from this.

19.   FACEBOOK offers Members a variety of features that are enabled by default. FACEBOOK requires Members to proactively disable those features if Members do not want to employ them. These features include "Places" and "Facebook ads". Many other features cannot be disabled.

20.   Posting is the main method of interacting with Facebook.com and is a feature that is always enabled. A Member Posts by adding text, images, web links, and video information to his or her News Feed.

21.   "Check-in" allows a Member to announce to Friends his or her geographical location within the feature Places. This information is also fed into the Member's News Feed. The locations are frequently linked to business establishments. "Check-in" is enabled by default.

22.   "Like" is a button located on pages both inside and outside of Facebook.com. When Members click on Like buttons, they make connections to the "Liked" item. Connections appear in the Members' News Feeds.

23.   On or around August 18, 2010, FACEBOOK released the feature Places. "Places" is a feature that allows Members to see where his or her friends are and share his or her actual, physical location. Using Places posts this information to the Member's News Feed and the News Feed of that Member's Friends

24.   On or around January 25, 2011, FACEBOOK launched a new advertising service called "Sponsored Stories." It turns Members' actions into an endorsed advertisement on their Friends' pages. When a Member Posts, Likes, Checks-in, or uses an application that integrates with Sponsored Stories, and the content relates to an advertiser in some programmatically-determined way, the posted content, along with the Member's profile image and name appears as an endorsement in a paid advertisement on the pages viewed by some or all of the Friends of that Member.

25. The Sponsored Stories service is enabled for all Members. Members are unable to opt-out of the service.

26. FACEBOOK's terms of use, comprised of the Statement of Rights and Responsibilities, (http://www.facebook.com/terms.php?ref=pf), Privacy Policy (http://www.facebook.com/policy.php), and a variety of references found with tremendous difficulty—if at all—throughout the Facebook.com site (collectively referred to as "Terms of Use" hereafter).

27. FACEBOOK's Terms of Use mislead Members into believing that Members can prohibit the use of their name and profile picture in advertisements:

> You can use your privacy settings to limit how your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place.

Statement of Rights and Responsibilities, Section 10.1 http://www.facebook.com/terms.php?ref=pf

28. Regarding Posts by a Member, The Privacy Policy states, "You can control exactly who can see it at the time you create it." (Privacy Policy, Section 3 http://www.facebook.com/policy.php).

29. In spite of the above misleading assertions in the Terms of Use a Member cannot prevent a Post, Like, Check-in or application from taking a Member's name, photograph, likeness or identity and using it as an endorsement for a Sponsored Story. From a buried Help Center page, not connected by any link within the Privacy Policy or Statement of Rights and Responsibilities pages, FACEBOOK publishes the following question and answer:

> Can I opt out of seeing or being featured in sponsored News Feed stories? While there is no way to opt out of seeing all or being featured in any Sponsored Stories, you can remove specific stories by clicking the "X" displayed in the upper right side of a story and choosing the appropriate option when prompted.

Sponsored Stories http://www.facebook.com/help/?faq=19723

30. The Terms of Use are "challenging" for Members to understand. FACEBOOK, itself acknowledges this:

> Many websites' privacy policies are challenging for people to understand because

they are often written for regulators and privacy advocates, not the majority of people who actually use those websites. Our own privacy policy has been criticized as being "5830 words of legalese" and "longer than the U.S. constitution – without the amendments." Okay, you're right. We agree that privacy policies can and should be more easily understood,....

"A Privacy Policy Posted Re-imagined For Users Like You", Facebook Site Governance (posted February 25, 2011)
https://www.facebook.com/fbsitegovernance

31.   A Member is never required to actively read or agree to the Terms of Use.

32.   No consent is sought or received for a Member's action in "Liking," "Checking in," to be used as an endorsement of the advertiser. Even if Members had read the Terms of Use, they could not know that their likenesses and names would be later used in Sponsored Stories ads sent to their Facebook Friends: Sponsored Stories did not exist at the time the Class Members first registered, and FACEBOOK never properly—if at all—notified Members of the drastic changes to FACEBOOK's advertising scheme.

33.   Where a Member is a minor, no consent for use of the Member's name, photograph, likeness or identity is sought or received from the minor's parent or legal guardian.

34.   The Member is deprived of payment for the use of his or her profile image, name or any other information used in the endorsed advertisement.

35.   The Terms of Use contain the following choice of law clause:

You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook exclusively in a state or federal court located in Santa Clara County. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions. You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims.

Statement of Rights and Responsibilities, Section 15.1 http://www.facebook.com/terms.php?ref=pf

Facts Concerning Plaintiffs' Actions

36.   Plaintiffs each registered a Facebook.com account prior to January 25, 2011.

37.   Plaintiffs' accounts have been continuously active since that time and up to the date of this action.

38.   Plaintiffs' each Posted content to their News Feeds on or after January 25, 2011.

39.   Plaintiffs are informed and believe, and thereupon allege that their posted content, or some part thereof, along with their respective names, photographs, likenesses, or identities, appeared as endorsements of a Facebook advertiser, product or service on one or more of the Facebook.com pages accessed by their Facebook Friends through the Facebook Sponsored Stories advertising service.

40.   In other words, their pictures and names were made to appear as part of advertisements for third party companies whose products they may or may not have connected with once. Their "Friends" thus saw what appeared to be an advertisement appearing on their Facebook.com pages, with Plaintiff Fraley, Plaintiff Wang, Plaintiff Mainzer, Plaintiff James H. Duval, or Plaintiff William Tait's profile image combined with statements such as "Angel Fraley likes [Product X]," "Paul Wang has checked in to [Advertiser location Y]," or "Susan Mainzer likes [Product Z]", etc.

41.   Neither Plaintiffs nor the parents of the minor Plaintiffs, ever consented to the use of their names, photographs likenesses, or identities to advertise or sell products or services or brands through the Facebook Sponsored Stories advertising service. Plaintiffs and the parents of the minor Plaintiffs reasonably believed that their names and likenesses would not be so used.

42.   The value to an advertiser or sell of advertisments of using the name, photograph, likeness or identity of a Friend is measurably higher than of using such items of a person unconnected with the person to whom the advertisement is being shown. That value is measurable in dollars on a class-wide basis.

43.   Plaintiffs were deprived of fair market value remuneration for the use of their names, photographs likenesses and identities, and were thus harmed.

## V.   CLASS ACTION ALLEGATIONS

44.   Plaintiff Class. The class sought to be represented is defined as follows:

All registered Members of facebook.com as of January 24, 2011 in the United States who are natural persons, who remained registered through January 25, 2011 or later, and

Page 9
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

who have had their names, photographs, likenesses or identities used in a Facebook Sponsored Stories ad ("the Class").

Subclass of Minors.

All persons in the Plaintiff Class who additionally have had their names, photographs, likenesses or identities used in a Facebook Sponsored Stories ad while under 18 years of age ("the Minor Subclass").

Excluded from the Class are (a) FACEBOOK, its officers and directors, legal representatives, successors or assigns; (b) any entity in which FACEBOOK has or had a controlling interest; (c) the judge to whom this case is assigned and the judge's immediate family; (d) any juror selected to hear this case.

45.   The Class is comprised of thousands if not millions of persons, and is therefore so numerous that joinder in this action would be impracticable. The disposition of their claims through this class action will benefit Class Members, the parties and the courts. Upon information and belief, FACEBOOK has over 600 million Members worldwide, and potentially over 153 million persons in the Class, and over 51 million in the Minor Class.

46.   Upon information and belief, the identities and contact information of the individual Members of the Class are available through FACEBOOK's electronic records.

47.   There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

- Whether Plaintiffs and the Class consented to the use of their names, photographs, likenesses, or identities in Sponsored Stories;

- Whether FACEBOOK gained a commercial benefit or some other advantage by using Plaintiff and the Class' names, photographs, likenesses, or identities in Sponsored Stories;

- Whether Plaintiffs and the Class were harmed by the nonconsensual use of their names, photographs, likenesses, or identities in Sponsored Stories, and whether FACEBOOK's conduct was a substantial factor in causing that harm;

- Whether Class Members are entitled to damages as a result of FACEBOOK's conduct, and, if so, what is the measure of those damages;

- Whether FACEBOOK's conduct described herein violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.);

- Whether FACEBOOK was unjustly enriched as a result of its conduct described herein;

- Whether FACEBOOK violated California Civil Code section 3344; and

- What the value of an endorsement by a non-celebrity is in a social network advertisement.

48. FACEBOOK engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class Members. Similar or identical statutory and common law violations, business practices and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

49. The injuries sustained by Members of the Class flow, in each instance, arise from a common nucleus of operative facts. In each case, FACEBOOK caused or permitted the unauthorized appropriation of the Plaintiff and the Class Members' names, photographs, likenesses or identities without adequate or any notice, consent, or opportunity to withdraw from participation.

50. Given the similar nature of the Class Members' claims and the absence of material differences in the statutes and common laws upon which the Class Members' claims are based, a nationwide class will be easily managed by the Court and the parties.

51. Because of the relatively small size of the individual Class Members' claims, no Class Member could afford to seek legal redress on an individual basis.

52. Plaintiffs' claims are typical of those of the Class as all Members of the Class are similarly affected by FACEBOOK's uniform and actionable conduct as alleged herein.

53. FACEBOOK has acted and failed to act on grounds generally applicable to Plaintiffs and the other Members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Members of the Class.

54. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action litigation. Plaintiffs have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seek to represent.

55. Plaintiffs reserve the right to revise the above class definition based on facts learned in discovery.

## FIRST CAUSE OF ACTION

### (Violation of California's Right of Publicity Statute, Civil Code § 3344)

56. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

57. California's Right of Publicity Statute, California Civil Code § 3344 et seq. protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

58. During the Class period, FACEBOOK and Does 1-100 knowingly used Plaintiffs' names, photographs, or likenesses to directly advertise or sell a product or service.

59. FACEBOOK did not have Plaintiffs' consent to do so.

60. Plaintiffs received no compensation or other consideration for FACEBOOK's (and/or Does 1-100) use thereof.

61. Plaintiffs were harmed by FACEBOOK's actions.

62. Use of Plaintiffs' names, photographs, and likenesses were directly connected to FACEBOOK's and/or Does 1-100's commercial use.

63. FACEBOOK's and/or Does 1-100's actions were a substantial factor in Plaintiffs' harm.

64. The advertisements were not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

65. Each incident is a separate and distinct violation of Cal. Civil Code § 3344.

66.    Plaintiffs and Members of the Class therefore seek injunctive relief, and other such preliminary and other equitable or declaratory relief as may be appropriate.

67.    Plaintiffs and Members of the Class also seek remedy as provided for by Cal. Civ. Code § 3344(a) in the amount equal to the greater of $750 per incident, or actual damages, any profits attributable to FACEBOOK's (and Does 1-100's) illegal action, before taking into account any actual damages, punitive damages, attorneys fees and costs, and any relief as may be appropriate.

### SECOND CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code §17200)

68.    Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

69.    As described herein, FACEBOOK's (and Does 1-100's) nonconsensual use of its Members' names, photographs, and likenesses is a violation of California's Right to Publicity Statute, Civil Code § 3344.

70.    These violations satisfy the "unlawful" prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

71.    FACEBOOK (and Does 1-100's) also violated the "fraudulent" prong of the UCL by explicitly representing that Members have full control to prevent their appearance in Facebook advertising, including Sponsored Stories, when in reality there is no meaningful way to prevent one's name, photograph, likeness or identity from appearing as an endorsement in Sponsored Stories. Plaintiffs each reasonably believed that they had only consented to the types of use discussed in the Terms of Use at the time they entered into them; Sponsored Stories did not then exist.

72.    Alternatively, to the degree the Terms of Use were modified to truthfully represent a Member's inability to meaningfully opt out of Sponsored Stories, FACEBOOK violated the "fraudulent" prong of the UCL by knowingly and intentionally failing to seek and acquire informed consent regarding such changes to the Terms of Use.

73.    FACEBOOK also violated the "unfair" prong of the UCL by leading Members to believe they can opt out of advertising endorsements, encouraging Members to weave Facebook.com into their lives

1  such that it becomes indispensible, and then introducing an advertising service from which Members

2  are unable to opt out.

3  74.   FACEBOOK violated the "unfair" prong of the UCL by intentionally profiting from the

4  nonconsensual endorsements extracted from Members without sharing those profits with those

   Members.

5  75.   FACEBOOK's unfair, deceptive and fraudulent practices originated from and/or occurred

6  primarily in California. Decisions concerning the creation of Sponsored Stories were made in

7  California, FACEBOOK maintains all or a substantial part of its computer systems that serve

8  Facebook.com in California, and all or a substantial part of the code and content that comprise

9  Sponsored Stories is developed and deployed within and from California.

10  76.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court permanently

11  enjoining FACEBOOK (and Does 1-100's) from continuing to engage in the unlawful, unfair and

12  fraudulent conduct described herein. Plaintiffs seek an order requiring FACEBOOK to (1) immediately

13  cease the unlawful practices stated in this Complaint, and (2) award Plaintiff and the Class reasonable

14  costs and attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5.

15  77.   Plaintiffs each lost money to which they were entitled in the form of compensation for the use of

16  their images and names, and in which they had a vested interest, by virtue of FACEBOOK's (and Does

17  1-100's) conduct. They are entitled to restitution of such sums.

18
19                          **THIRD CAUSE OF ACTION**
                                 **(Unjust Enrichment)**

20  78.   Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

21  79.   Plaintiff and the Class have conferred a benefit upon FACEBOOK (and Does 1-100's).

22  FACEBOOK (and Does 1-100's) has received and retained money from advertisers, a portion of which

23  belong to Plaintiffs and the Class as a result of co-opting Members names, photographs, likenesses and

24  identities, and placing them in paid-for advertisements—Sponsored Stories—as described herein.

25  80.   FACEBOOK (and Does 1-100's) appreciates or has knowledge of said benefit.

26
27                              Page 14
                FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
28

81. Under principles of equity and good conscience, FACEBOOK (and Does 1-100's) should not be permitted to retain money belonging to Plaintiffs and the Class that it unjustly received as a result of its actions.

82. Plaintiffs and the Class have suffered loss as a direct result of FACEBOOK's (and Does 1-100's) conduct.

83. Plaintiffs, on their own behalf and on behalf of the Class, seek the imposition of a constructive trust on and restitution of the proceeds FACEBOOK (and Does 1-100's) received as a result of its conduct described herein, as well as attorney's fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5.

84. PRAYER FOR RELIEF WHEREFORE, Plaintiffs individually and on behalf of the Class, pray for the following relief:

- Certify this case as a class action on behalf of the Class defined above, appoint Plaintiffs Angel Fraley, Paul Wang, Susan Mainzer, James H. Duval by and through James Duval, and William Tait by and through Russell Tait, as class representatives, and appoint their counsel as Class co-counsel;

- Declare that FACEBOOK's actions, as described herein, violate the California Right to Publicity Act (Cal. Civ. Code § 3344), violate the Unfair Competition Law, and have led to unjust enrichment;

- Award injunctive and other equitable relief as is necessary to protect the interests of the Plaintiffs and the Class, including, inter alia, an order prohibiting FACEBOOK from engaging in the wrongful and unlawful acts described herein;

- Disgorge FACEBOOK of all revenue earned from its Sponsored Stories feature during the class period;

- Award damages, including statutory damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

- Award all economic, monetary, actual, consequential, and compensatory damages caused by FACEBOOK's (and Does 1-100's) conduct, and if its conduct is proved willful, award Plaintiffs and the Class exemplary damages;

Page 15
FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES

- Award restitution against FACEBOOK (and Does 1-100's) for all money to which Plaintiffs and the Class are entitled in equity;

- Award Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

- Award Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

- Award such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all issues so triable.

By _____
ROBERT S. ARNS
JONATHAN E. DAVIS
STEVEN R. WEINMANN
THE ARNS LAW FIRM
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:   (415) 495-7800
Fax:   (415) 495-7888

By _____
JONATHAN M. JAFFE
JONATHAN JAFFE LAW
3055 Hillegass Avenue
Berkeley, CA 94705
Tel:   (510) 725-4293
Fax:   (510) 868-3393

Attorneys for Plaintiffs

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED

MAR 11 2011

Clerk of the... of the Superior Court
County of Santa Clara, California

By_____  Deputy Clerk
A. FLORESCA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FACEBOOK, INC. a corporation, and DOES 1-100

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ANGEL FRALEY, PAUL WANG, SUSAN MAINZER, and individually
and on behalf of all others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

CASE NUMBER:
(Número del Caso):
**1-11-CV196193**

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
191 N First Street, San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jonathan E. Davis     (Bar # 191346)            Fax No.: (415) 795-7888
The Arns Law Firm, 515 Folsom Street, Third Floor, San Francisco, CA 94105     Phone No.: (415) 495-7800

| DATE: | MAR 11 2011 | Clerk, by | DAVID H YAMASAKI  A. FLORESCA | , Deputy |
| *(Fecha)* | | *(Secretario)* (Executive Officer) Clerk | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Facebook, Inc., a corporation
     under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
LexisNexis® Automated California Judicial Council Forms

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jonathan E. Davis   (Bar # 191346)<br>The Arns Law Firm<br>515 Folsom Street, Third Floor<br>San Francisco, CA 94105<br>TELEPHONE NO.: (415) 495-7800   FAX NO.: (415) 795-7888<br>ATTORNEY FOR *(Name):* Angel Fraley, Paul Wang, and Susan Mainzer, et al., Plaintiffs | ENDORSED<br>FILED<br>MAR 11 2011<br>A. FLORESCA<br>*(signature block, Superior Court, County of Santa Clara, California)* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 N First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME:

CASE NAME:
Fraley, et al. v. Facebook, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 111CV196193 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property | [ ] Other collections (09) | [ ] Construction defect (10) |
| Damage/Wrongful Death) Tort | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | Real Property | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | Enforcement of Judgment |
| [ ] Civil rights (08) | Unlawful Detainer | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | Miscellaneous Civil Complaint |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | Judicial Review | Miscellaneous Civil Petition |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| Employment | [ ] Petition re: arbitration award (11) | [X] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify):* THREE (3)
5. This case [X] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: March 11, 2011
Jonathan E. Davis
*(TYPE OR PRINT NAME)*                                    *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>LexisNexis® Automated California Judicial Council Forms |

ENDORSED
FILED

MAR 11 2011

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By _____
Deputy Clerk

1   ROBERT S. ARNS
    (#65071, rsa@arnslaw.com)
2   JONATHAN E. DAVIS
    (#191346, jed@arnslaw.com)
3   STEVEN R. WEINMANN
    (#190956, srw@arnslaw.com)
    THE ARNS LAW FIRM
4   515 Folsom Street, 3rd Floor
    San Francisco, CA 94105
5   Tel:    (415) 495-7800
    Fax:    (415) 495-7888
6
    JONATHAN M. JAFFE, ESQ.
7   (# 267012, jmj@jaffe-law.com)
    JONATHAN JAFFE LAW
8   3055 Hillegass Avenue
    Berkeley, CA 94705
9   Telephone: (510) 725-4293
    Attorneys for Plaintiffs
10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                 IN AND FOR THE COUNTY OF SANTA CLARA

13   ANGEL FRALEY, PAUL WANG, and SUSAN          CASE NO.   111CV196198
     MAINZER, individually and on behalf of all others
14   similarly situated,                          CLASS ACTION COMPLAINT FOR
                                                  DAMAGES
15                          Plaintiffs,
                                                    1. CAL. CIV. CODE § 3344
16                                                  2. UNFAIR COMPETITION
                                                    3. UNJUST ENRICHMENT
17   vs.
                                                  Jury Trial Demanded
18   FACEBOOK, INC, a corporation, and DOES 1-100,

19                          Defendants.

20

21

22

23

24

25

26

27                                  Page 1
                         CLASS ACTION COMPLAINT FOR DAMAGES
28

1.    Plaintiffs ANGEL FRALEY, PAUL WANG and SUSAN MAINZER ("Plaintiffs") on behalf of themselves and all others similarly situated, and make the following allegations on information and belief, except as to allegations pertaining to Plaintiffs, which are based on personal knowledge:

## I. INTRODUCTION

2.    Plaintiffs bring this class action complaint against Facebook, Inc. (hereafter, "FACEBOOK") for appropriating the names, photographs, likenesses and identities of Plaintiffs to advertise products, services or brands for a commercial purpose without Plaintiffs' consent, for unfair and deceptive business practices, and in violation of FACEBOOK's agreement with Plaintiffs, accepted industry standards, and state law.

3.    FACEBOOK intentionally and knowingly conducted such actions without Plaintiffs' consent for substantial profit in a scheme to advertise or sell products or services or brands.

## II. JURISDICTION AND VENUE

4.    This Court has personal jurisdiction over FACEBOOK because (a) a substantial portion of the wrongdoing alleged in this complaint took place in this state, and (b) FACEBOOK is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of products and services in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5.    Venue is proper in this County under the California Code of Civil Procedure section 395 and Business & Professions Code section 17203 because this Court is a court of competent jurisdiction, and because FACEBOOK's headquarters and principal place of business is in the City of Palo Alto, County of Santa Clara, State of California.

## III. PARTIES

6.    <u>Individual Plaintiff/Class Representatives.</u> Plaintiff Angel Fraley is a citizen and resident of Seattle, Washington in King County. Ms. Fraley has been, and still is, a registered member of the facebook.com web site (hereafter, "FACEBOOK") since before January 25, 2011. At all relevant times herein, Ms. Fraley was a Facebook member who, on one or more occasions during the class period, in

her city of residence, accessed Facebook as a registered member to "Post", employ the "Like" function, employ a partner application, or in various locations within the state of Washington, utilize the FACEBOOK "Check-in" feature to post her geographical location to her Facebook News Feed. Sometime later, FACEBOOK caused her name, photograph, likeness or identity to appear in a Sponsored Story as an endorsement for a paid advertisement, and caused that advertisement to be shown to one or more "Facebook Friends" within the state of Washington, California, and the rest of the United States.

7.    Plaintiff Susan Mainzer is a citizen and resident of Los Angeles, California in Los Angeles County. Ms. Mainzer has been, and still is, a registered Facebook member since before January 25, 2011. At all relevant times herein, Ms. Mainzer was a Facebook member that, on one or more occasions during the class period, in her city of residence, accessed facebook.com as a registered member to "Post", employ the "Like" function, employ a partner application, or in various locations within California, utilize the Facebook "Check-in" feature to post her geographical location to her Facebook News Feed. Sometime later, FACEBOOK caused her name, photograph, likeness or identity to appear in a Sponsored Story as an endorsement for a paid advertisement, and caused that advertisement to be shown to one or more "Facebook Friends" within and outside of California.

8.    Plaintiff Paul Wang is a citizen and resident of Oakland, California in Alameda County. Mr. Wang has been, and still is, a registered Facebook member since before January 25, 2011. At all relevant times herein, Mr. Wang was a Facebook member that, on one or more occasions during the class period, in his state of residence, accessed facebook.com as a registered member to "Post", employ the "Like" function, employ a partner application, or in various locations within California, utilize the Facebook "Check-in" feature to post his geographical location to his Facebook News Feed. Sometime later, FACEBOOK caused his name, photograph, likeness or identity to appear in a Sponsored Story as an endorsement for a paid advertisement, and caused that advertisement to be shown to one or more "Facebook Friends" within and outside of California.

9.    Defendant Facebook, Inc. is a California corporation that maintains its headquarters and principal place of business in Palo Alto, California. FACEBOOK conducts business throughout California, the nation and the world. FACEBOOK operates the Internet site facebook.com.

10. <u>Defendant Does 1 through 100</u>. Plaintiffs are unaware of the true names and capacities of Does 1 through 100, inclusive, and therefore sue such defendants by fictitious names. Plaintiffs will amend the complaint to show the true names and capacities of the fictitiously named defendants when they are ascertained. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 100 are agents, joint employers, co-conspirators, employees and/or representatives of the named defendants. Plaintiff is informed and believes, and on that basis alleges, that the fictitiously named defendants are liable to plaintiff and the class members, and each of them, for the conduct and damages alleged herein.

## IV.  FACTUAL ALLEGATIONS

11.  Defendant FACEBOOK owns and operates the world's largest social networking site, facebook.com. FACEBOOK requires Internet users of its site to register (who then become "members") in order to post content to the site, establish social network relationships within the site, and view most of the content produced by other Facebook members. Members receive an Internet presence on Facebook where they can exchange highly personal messages through text, images, audio and video, and display equally personal photos, to an explicitly identified group of friends, family and acquaintances, as well as those outside of this group. Facebook has become an integral part of the lives of approximately 600 million people around the world and has become the de facto method of communication among friends for a significant portion of these members. Facebook has over 148 million members in the United States. Over 14 million of these are minors.

12.  To become a member of Facebook, persons must register a profile. FACEBOOK requires its members to submit their true names, email addresses, birth dates, and gender in order to register.

13.  A member gets a "Profile" page. This Profile page displays News Feeds from other Facebook members. The part of the Profile page that displays this information is called the "Wall."

14.  Members are connected to other members in relationships called "Friends." A Friend is someone to whom you have given explicit permission to post content to your "Wall," to see information about you, and to send you messages.

15.  A member may post information—text, images, web links, and video information—using a variety of methods. This information becomes part of the member's "News Feed," which can be seen by other persons with whom the member has a relationship as a Friend.

16.   FACEBOOK sells highly targeted advertising services that place ads on members' Walls and other pages. FACEBOOK enjoys substantial profits from this.

17.   FACEBOOK offers members a variety of features that are enabled by default. FACEBOOK requires members to proactively disable those features if members do not want to employ them. These features include "Places," "Check-in," and "Like." Many other features cannot be disabled.

18.   Posting is the main method of interacting with Facebook and is a feature that is always enabled. A member Posts by adding text, images, web links, and video information to his or her News Feed.

19.   "Check-in" allows a member to announce to Friends his or her geographical location within the feature Places. This information is also fed into the member's News Feed. The locations are frequently linked to business establishments. "Check-in" is enabled by default.

20.   "Like" is a button which can appear on webpages both inside and outside of Facebook (that is, on third party sites). When members click on Like buttons, they make connections to the "Liked" item. Connections appear in the members' News Feeds.

21.   On or around August 18, 2010, FACEBOOK released the feature Places. "Places" is a feature that allows members to see where his or her friends are and share his or her actual, physical location. Using Places posts this information to the member's News Feed.

22.   On or around January 25, 2011, FACEBOOK launched a new advertising service called "Sponsored Stories." It turns members' actions into an endorsed advertisement on their Friends' pages. When a member Posts, Likes, Checks-in, or uses an application that integrates with Sponsored Stories, and the content relates to an advertiser in some programmatically-determined way, the posted content, along with the member's profile image and name appears as an endorsement in a paid advertisement on the pages viewed by some or all of the Friends of that member.

23.   The Sponsored Stories service is enabled for all members. Members are unable to opt-out of the service.

24.   FACEBOOK's terms of use are comprised of the Statement of Rights and Responsibilities, (http://www.facebook.com/terms.php?ref=pf), Privacy Policy (http://www.facebook.com/policy.php), and a variety of references found with tremendous difficulty—if at all—throughout the Facebook site (collectively referred to as "Terms of Use" hereafter.)

Page 5
CLASS ACTION COMPLAINT FOR DAMAGES

25.     FACEBOOK's Terms of Use intentionally mislead a member to believe members can prohibit the use of their name and profile picture in advertisements:

> You can use your privacy settings to limit how your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place.

Statement of Rights and Responsibilities, Section 10.1 http://www.facebook.com/terms.php?ref=pf

26.     Regarding Posts by a member, The Privacy Policy states, "You can control exactly who can see it at the time you create it." (Privacy Policy, Section 3 http://www.facebook.com/policy.php).

27.     In spite of the above misleading assertions in the Terms of Use, a member cannot prevent a Post, Like, Check-in or other FACEBOOK application from taking a member's name, photograph, likeness or identity and using it as an endorsement for a Sponsored Story. From a buried Help Center page, not connected by any link within the Privacy Policy or Statement of Rights and Responsibilities pages, FACEBOOK publishes the following question and answer:

> Can I opt out of seeing or being featured in sponsored News Feed stories? While there is no way to opt out of seeing all or being featured in any Sponsored Stories, you can remove specific stories by clicking the "X" displayed in the upper right side of a story and choosing the appropriate option when prompted.

Sponsored Stories http://www.facebook.com/help/?faq=19723

28.     The Terms of Use are "challenging" for members to understand. FACEBOOK, itself acknowledges this:

> Many websites' privacy policies are challenging for people to understand because they are often written for regulators and privacy advocates, not the majority of people who actually use those websites. Our own privacy policy has been criticized as being "5830 words of legalese" and "longer than the U.S. constitution -- without the amendments." Okay, you're right.  We agree that privacy policies can and should be more easily understood,....

"A Privacy Policy Posted Re-imagined For Users Like You", Facebook Site Governance (posted February 25, 2011)
https://www.facebook.com/fbsitegovernance

29.     A member is never required to actively read or agree to the Terms of Use.

Page 6
CLASS ACTION COMPLAINT FOR DAMAGES

30.   No consent is sought or received for a member's action in "Liking," "Checking in," to be used as an endorsement of the advertiser. Even if members had read the Terms of Use, they could not know that their likenesses and names would be later used in Sponsored Stories ads sent to their Facebook Friends: Sponsored Stories did not exist at the time the Class members first registered, and FACEBOOK never properly—if at all—notified members of the drastic changes to FACEBOOK's advertising scheme.

31.   Where a member is a minor, no consent for use of the member's name, photograph, likeness or identity is sought or received from the minor's parent or legal guardian.

32.   The member is deprived of payment for the use of his or her profile image, name or any other information used in the endorsed advertisement.

33.   The Terms of Use contain the following choice of law clause:

> You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook exclusively in a state or federal court located in Santa Clara County. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions. You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims.

Statement of Rights and Responsibilities, Section 15.1 http://www.facebook.com/terms.php?ref=pf

**Facts Concerning Plaintiffs' Actions**

34.   Plaintiffs Fraley, Wang and Mainzer each registered a Facebook account prior to January 25, 2011.

35.   Plaintiffs' accounts have been continuously active since that time and up to the date of this action.

36.   Plaintiffs' each Posted content to their News Feeds on or after January 25, 2011.

37.   Plaintiffs are informed and believe, and thereupon allege that their posted content, or some part thereof, along with their respective names, photographs, likenesses, or identities, appeared as endorsements of a Facebook advertiser, product or service on one or more of the Facebook pages accessed by their Facebook Friends through the Facebook Sponsored Stories advertising service.

38. In other words, their pictures and names were made to appear as part of advertisements for third party companies whose products they may or may not have connected with once. Their "Friends" thus saw what appeared to be an advertisement appearing on their Facebook pages, with Plaintiff Fraley, Plaintiff Wang or Plaintiff Mainzer's profile images combined with statements such as "Angel Fraley likes [Product X]," "Paul Wang has checked in to [Advertiser location Y]," or "Susan Mainzer likes [Product Z]."

39. Plaintiffs never consented to the use of their names, photographs likenesses, or identities to advertise or sell products or services or brands through the Facebook Sponsored Stories advertising service.

40. The value of using the name, photograph, likeness or identity of a Friend is measurably higher than of using such items of a person unconnected with the person to whom the advertisement is being shown. That value is measurable in dollars on a classwide basis.

41. Plaintiffs were deprived of fair market value remuneration for the use of their names, photographs likenesses and identities, and were thus harmed.

42. Plaintiffs' reputations were harmed by the implied endorsement of advertisers or their products or services.

## V. CLASS ACTION ALLEGATIONS

43. Plaintiff Class. The class sought to be represented is defined as follows:

> All registered members of facebook.com as of January 24, 2011 in the United States who are natural persons and who have had their names, photographs, likenesses or identities used in a Facebook Sponsored Stories advertisement ("the Class").

> Excluded from the Class are (a) FACEBOOK, its officers and directors, legal representatives, successors or assigns; (b) any entity in which FACEBOOK has or had a controlling interest; (c) the judge to whom this case is assigned and the judge's immediate family; (d) any juror selected to hear this case.

44. The Class is composed of thousands if not millions of persons, and is therefore so numerous that joinder in this action would be impracticable. The disposition of their claims through this class action

will benefit Class members, the parties and the courts. Upon information and belief, FACEBOOK has over 600 million members worldwide, and over 148 million persons in the Class.

45.     Upon information and belief, the identities and contact information of the individual members of the Class are available through FACEBOOK's electronic records.

46.     There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class members, including, but not limited to, the following:

- Whether Plaintiffs and the Class consented to the use of their names, photographs, likenesses, or identities in Sponsored Stories;

- Whether FACEBOOK gained a commercial benefit or some other advantage by using Plaintiff and the Class' names, photographs, likenesses, or identities in Sponsored Stories;

- Whether Class members are entitled to damages as a result of FACEBOOK's conduct, and, if so, what is the measure of those damages;

- Whether FACEBOOK's conduct described herein violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.);

- Whether FACEBOOK was unjustly enriched as a result of its conduct described herein; and

- Whether FACEBOOK violated California Civil Code section 3344.

- What the value of an endorsement by a non-celebrity is in a social network advertisement;

47.     FACEBOOK engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class members. Similar or identical statutory and common law violations, business practices and injuries are involved. Individual questions, if any, pale by comparison to the numerous common questions that dominate.

48.     The injuries sustained by members of the Class flow, in each instance, from a common nucleus of operative facts. In each case, FACEBOOK caused or permitted the unauthorized appropriation of the

Plaintiff and the Class members' names, photographs, likenesses or identities without adequate or any notice, consent, or opportunity to withdraw from participation.

49.     Given the similar nature of the Class members' claims and the absence of material differences in the statutes and common laws upon which the Class members' claims are based, a nationwide class will be easily managed by the Court and the parties.

50.     Because of the relatively small size of the individual Class members' claims, no Class member could afford to seek legal redress on an individual basis.

51.     Plaintiffs' claims are typical of those of the Class as all members of the Class are similarly affected by FACEBOOK's uniform and actionable conduct as alleged herein.

52.     FACEBOOK has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

53.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action litigation. Plaintiffs have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seek to represent.

54.     Plaintiffs reserve the right to revise the above class definition based on facts learned in discovery.

## FIRST CAUSE OF ACTION

### (Violation of California's Right of Publicity Statute, Civil Code § 3344)

55.     Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

56.     California's Right of Publicity Statute, California Civil Code § 3344 et seq. protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

57.     During the Class period, FACEBOOK and Does 1-100 knowingly used Plaintiffs' names, photographs, or likenesses to directly advertise or sell a product or service.

58.     FACEBOOK did not have Plaintiffs' consent to do so.

59.     Plaintiffs received no compensation or other consideration for FACEBOOK's (and/or Does 1-100) use thereof.

60.     Plaintiffs were harmed by FACEBOOK's actions.

61. Use of Plaintiffs' names, photographs, and likenesses were directly connected to FACEBOOK's and/or Does 1-100's commercial use.

62. FACEBOOK's and Does 1-100's actions were a substantial factor in Plaintiffs' harm.

63. The advertisements were not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

64. Each incident is a separate and distinct violation of Cal. Civil Code § 3344.

65. Plaintiffs and members of the Class therefore seek injunctive relief, and other such preliminary and other equitable or declaratory relief as may be appropriate.

66. Plaintiffs and members of the Class also seek remedy as provided for by Cal. Civ. Code § 3344(a) in the amount equal to the greater of $750 per incident, or actual damages, any profits attributable to FACEBOOK's (and Does 1-100's) illegal action and not taken into account into actual damages, punitive damages, attorneys fees and costs, and any relief as may be appropriate.

### SECOND CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code §17200)

67. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

68. As described herein, FACEBOOK's (and Does 1-100's) nonconsensual use of its members' names, photographs, likenesses, and identities is a violation of California's Right to Publicity Statute, Civil Code § 3344, and of the common law privacy tort, appropriation of another's likeness or identity for commercial gain.

69. These violations satisfy the "unlawful" prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

70. FACEBOOK (and Does 1-100) violated the "fraudulent" prong of the UCL by explicitly representing that members have full control prevent their appearance in Facebook advertising, including Sponsored Stories, when in reality there is no meaningful way to prevent one's name, photograph, likeness or identity from appearing as an endorsement in Sponsored Stories.

71. Alternatively, to the degree the Terms of Use were modified to truthfully represent a member's inability to meaningfully opt out of Sponsored Stories, FACEBOOK violated the "fraudulent" prong of

the UCL by knowingly and intentionally failing to seek and acquire informed consent regarding such changes to the Terms of Use.

72.     FACEBOOK violated the "unfair" prong of the UCL by leading members to believe they can opt out of advertising endorsements, encouraging members to weave Facebook into their lives such that it becomes indispensible, and then introducing an advertising service from which members are unable to opt out.

73.     FACEBOOK violated the "unfair" prong of the UCL by intentionally profiting from the nonconsensual endorsements extracted from members without sharing those profits with those members.

74.     FACEBOOK's unfair, deceptive and fraudulent practices originated from and/or occurred primarily in California. Decisions concerning the creation of Sponsored Stories were made in California, FACEBOOK maintains all or a substantial part of its computer systems that serve up Facebook in California, and all or a substantial part of the code and content that comprise Sponsored Stories is developed and deployed within and from California.

75.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court permanently enjoining FACEBOOK (and Does 1-100) from continuing to engage in the unlawful, unfair and fraudulent conduct described herein. Plaintiffs seek an order requiring FACEBOOK to (1) immediately cease the unlawful practices stated in this Complaint, and (2) award Plaintiff and the Class reasonable costs and attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5.

76.     Plaintiffs each lost money to which they were entitled in the form of compensation for the use of their images and names, and in which they had a vested interest, by virtue of FACEBOOK's (and Does 1-100's) conduct. They are entitled to restitution of such sums.

### THIRD CAUSE OF ACTION
#### (Unjust Enrichment)

77.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

78.     Plaintiff and the Class have conferred a benefit upon FACEBOOK (and Does 1-100). FACEBOOK (and Does 1-100) has received and retained money from advertisers, a portion of which

belong to Plaintiffs and the Class as a result of co-opting members names, photographs, likenesses and identities, and placing them in paid-for advertisements—Sponsored Stories—as described herein.

79. FACEBOOK (and Does 1-100) appreciates or has knowledge of said benefit.

80. Under principles of equity and good conscience, FACEBOOK (and Does 1-100) should not be permitted to retain money belonging to Plaintiffs and the Class that it unjustly received as a result of its actions.

81. Plaintiffs and the Class have suffered loss as a direct result of FACEBOOK's (and Does 1-100's) conduct.

82. Plaintiffs, on their own behalf and on behalf of the Class, seek the imposition of a constructive trust on and restitution of the proceeds FACEBOOK (and Does 1-100) received as a result of its conduct described herein, as well as attorney's fees and costs pursuant to Cal. Civ. Proc. Code § 1021.5.

83. PRAYER FOR RELIEF WHEREFORE, Plaintiffs individually and on behalf of the Class, pray for the following relief:

- Certify this case as a class action on behalf of the Class defined above, appoint Plaintiffs Angel Fraley, Paul Wang and Susan Mainzer as class representatives, and appoint their counsel as Class co-counsel;

- Declare that FACEBOOK's actions, as described herein, violate the California Right to Publicity Act (Cal. Civ. Code § 3344), violate the Unfair Competition Law, and have led to unjust enrichment;

- Award injunctive and other equitable relief as is necessary to protect the interests of the Plaintiffs and the Class, including, inter alia, an order prohibiting FACEBOOK from engaging in the wrongful and unlawful acts described herein;

- Disgorge FACEBOOK of all revenue earned from its Sponsored Stories feature during the class period;

- Award damages, including statutory damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

- Award all economic, monetary, actual, consequential, and compensatory damages caused by FACEBOOK's (and Does 1-100's) conduct, and if its conduct is proved willful, award Plaintiffs and the Class exemplary damages;

- Award punitive damages;

- Award restitution against FACEBOOK (and Does 1-100) for all money to which Plaintiffs and the Class are entitled in equity;

- Award Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

- Award Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

- Award such other and further relief as equity and justice may require.

**JURY TRIAL DEMANDED**

Plaintiff demands a jury trial on all issue so triable.

By _____

ROBERT S. ARNS
JONATHAN E. DAVIS
STEVEN R. WEINMANN
THE ARNS LAW FIRM
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:    (415) 495-7800
Fax:   (415) 495-7888

By _____

JONATHAN M. JAFFE, ESQ.
(#267012; jmj@jaffe-law.com)
JONATHAN JAFFE LAW
3055 Hillegass Avenue
Berkeley, CA 94705
Telephone: (510) 725-4293

Attorneys for Plaintiffs

Page 14
CLASS ACTION COMPLAINT FOR DAMAGES

**ATTACHMENT CV-5012**

## CIVIL LAWSUIT NOTICE

**Superior Court of California, County of Santa Clara**
**191 N. First St., San Jose, CA 95113**

CASE NUMBER: _____ **111CV196193**

### PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued): You must do each of the following to protect your rights:

1. You must file a written response to the *Complaint, using the proper legal form or format*, in the Clerk's Office of the Court, within 30 days of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning: If you, as the Defendant, do not follow these instructions,
you may automatically lose this case.**

---

*RULES AND FORMS:* You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

---

Your Case Management Judge is: __Honorable Peter Kirwan_____ Department: __8__

The 1ˢᵗ CMC is scheduled for: (Completed by Clerk of Court)
  Date: **AUG 2 2011**  Time: **3:00 PM** in Department: __8__

The next CMC is scheduled for: (Completed by party if the 1ˢᵗ CMC was continued or has passed)
  Date: _____  Time: _____ in Department:_____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< ADR can save money. Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< ADR provides more participation. Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

< Mediation may be appropriate when:
    < The parties want a non-adversary procedure
    < The parties have a continuing business or personal relationship
    < Communication problems are interfering with a resolution
    < There is an emotional element involved
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

< Neutral evaluation, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
    < The parties are far apart in their view of the law or value of the case
    < The case involves a technical issue in which the evaluator has expertise
    < Case planning assistance would be helpful and would save legal fees and costs
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

---

ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION

CV-5003 REV 6/08

< Arbitration is a less formal process than a trial, with no jury.  The arbitrator hears the evidence and arguments of the parties, then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
    < The action is for personal injury, property damage, or breach of contract
    < Only monetary damages are sought
    < Witness testimony, under oath, needs to be evaluated
    < An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

< Civil Judge ADR allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
    < The parties have complex facts to review
    < The case involves multiple parties and problems
    < The courthouse surroundings would be helpful to the settlement process

< Special masters and referees are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

< Settlement conferences are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

Contact:
Santa Clara County Superior Court                          Santa Clara County DRPA Coordinator
ADR Administrator                                        408-792-2910
408-882-2530

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION**

CV-5003 REV 8/08