COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. BROWN (196972) (brownmd@cooley.com)
JEFFREY M. GUTKIN (216083) (gutkinjm@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Defendant FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as guardian ad Litem; individually and on behalf of all others similarly situated, | Case No. 11-CV-01726 LHK |
| | **FACEBOOK, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | **F.R.C.P. 12(b)(1), 12(b)(6)** |
| v. | Date:          July 28, 2011 |
| FACEBOOK, INC, a corporation; and DOES 1-100, | Time:          1:30 p.m. |
| | Courtroom:   4 |
| | Judge:         Hon. Lucy H. Koh |
| Defendants. | Trial date:     None Set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................... 1

STATEMENT OF RELIEF SOUGHT ....................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.    INTRODUCTION .......................................................................................... 2

II.   STATEMENT OF FACTS ............................................................................... 3

III.  APPLICABLE STANDARDS ........................................................................... 6

IV.   ARGUMENT ................................................................................................ 7

    A.  Plaintiffs Lack Standing Under Article III Because They Have Not Alleged Injury in Fact ........................................................................................... 7

    B.  Plaintiffs' Claims Are Barred by the Federal Communications Decency Act, 47 U.S.C. § 230 ..................................................................................... 10

    C.  Plaintiffs Fail to State a Claim for Misappropriation Under California Civil Code Section 3344 ...................................................................................... 14

        1.  Plaintiffs have not alleged any actionable injury under section 3344 ....... 15

        2.  Plaintiffs consented to the use of their names and likenesses in association with sponsored content ......................................................... 15

        3.  Facebook's republication of information already displayed by Users in their News Feeds is newsworthy and exempt under section 3344(d) ...................................................................................................... 17

    D.  Plaintiffs Fail to State a Claim for Violation of California Business and Professions Code Section 17200 ................................................................ 22

    E.  Plaintiffs Fail to State a Claim for Unjust Enrichment ................................. 25

V.    CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

Page(s)

CASES

*Animal Legal Defense Fund v. Mendes,*
    160 Cal. App. 4th 136 (2008)..................................................................................... 22

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ...................................................................................... 6, 7, 15

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006) .................................................................................................. 11

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003)..................................................................................... 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................ 6, 7, 8, 18

*Black v. Google Inc.,*
    No. 10-02381 CW, 2010 WL 3222147 (N.D. Cal. Aug 13, 2010) .......................... 11

*Blatty v. New York Times Co.,*
    42 Cal. 3d 1033 (1986) ............................................................................................... 21

*Branzburg v. Hayes,*
    408 U.S. 665 (1972).................................................................................................... 21

*Californians for Disability Rights v. Mervyn's, LLC,*
    39 Cal. 4th 223 (2006) ................................................................................................ 22

*Camacho v. Auto. Club of S. Cal.,*
    142 Cal. App. 4th 1394 (2006).................................................................................... 23

*Carafano v. Metrosplash.com, Inc.,*
    339 F.3d 1119 (9th Cir. 2003)............................................................................... 11, 14

*Concerned Consumers League v. O'Neill,*
    371 F. Supp. 644 (E.D. Wis. 1974)............................................................................. 19

*Craigslist, Inc. v. Naturemarket, Inc.,*
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ..................................................................... 15

*Davis v. Ford Motor Credit Co.,*
    179 Cal. App. 4th 581 (2009)...................................................................................... 23

*Delfino v. Agilent Techs., Inc.,*
    145 Cal. App. 4th 790 (2007) ..................................................................................... 10

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

*Doe II v. MySpace, Inc.*,
    175 Cal. App. 4th 561 (2009) ................................................................................. 13

*Doe IX v. MySpace, Inc.*,
    629 F. Supp. 2d 663 (E.D. Tex. 2009) ................................................................... 13

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) .................................................................................. 13

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (1993) ............................................................................. 18, 20

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) .................................................................................. 15

*Dwyer v. Am. Express Co.*,
    273 Ill. App. 3d 742 (Ill. App. Ct. 1995) ................................................................. 8

*Eastwood v. Super. Ct.*,
    149 Cal. App. 3d 409 (1983) .................................................................................. 15

*Edwards v. First Am. Corp.*,
    610 F.3d 514 (9th Cir. 2010) .................................................................... 2, 9, 12, 22

*Engalla v. Permanente Med. Group, Inc.*,
    15 Cal. 4th 951 (1997) ........................................................................................... 24

*Facebook, Inc. v. Power Ventures, Inc.*,
    No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ....................... 15

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ...................................................... 10, 11, 12, 14

*Finkel v. Facebook, Inc.*,
    No. 102578/09, 2009 N.Y. Misc. LEXIS 3021 (N.Y. Sup. Ct. Sept. 15, 2009) ..... 12

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) ........................................................................... 14, 16

*GA Escrow, LLC v. Autonomy Corp. PLC*,
    No. C 08-01784 SI, 2008 WL 4848036 (N.D. Cal. Nov. 7, 2008) ......................... 25

*Gentry v. eBay, Inc.*,
    99 Cal. App. 4th 816 (2002) .................................................................................. 12

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (2001) .................................................................................. 20

*Gladstone, Realtors v. Vill. of Bellwood*,
    441 U.S. 91 (1979) ................................................................................................... 9

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

*Goddard v. Google*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ........................................................................ 13, 14

*In re DirecTV Early Cancellation Litig.*,
   738 F. Supp. 2d 1062 (C.D. Cal. 2010) .............................................................................. 25

*In re Facebook Privacy Litig.*,
   No. C 10-02389 JW ............................................................................................................ 23

*In re JetBlue Airways Corp. Privacy Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................................. 8

*INS v. St. Cyr*,
   533 U.S. 289 (2001) ........................................................................................................... 21

*Jurin v. Google Inc.*,
   695 F. Supp. 2d 1117 (E.D. Cal. 2010) .............................................................................. 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................................ 24

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ..................................................................................................... 25

*Lee v. Chase Manhattan Bank*,
   No. C07-04732 MJJ, 2008 WL 698482 (N.D. Cal. Mar. 14, 2008) ........................................ 9

*Levine v. Blue Shield of Cal*,
   189 Cal. App. 4th 1117 (2010).......................................................................................... 25

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003)............................................................................................ 7

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
   --- F.3d ----, No. 09-56391, 2011 WL 873303 (9th Cir. Mar. 15, 2011) .............................. 9

*Lowe v. S.E.C.*,
   472 U.S. 181 (1985)........................................................................................................... 19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................... 7, 9, 22

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004)............................................................................................ 25

*Montana v. San Jose Mercury News, Inc.*,
   34 Cal. App. 4th 790 (1995).......................................................................................... 18, 20

*Morningstar, Inc. v. Super. Ct.*,
   23 Cal. App. 4th 676 (1994) .............................................................................................. 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001)............................................................................................ 6

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009)........................................................................................... 11

*New Kids on the Block v. News America Publ'g, Inc.,*
    745 F. Supp. 1540 (C.D. Cal. 1990) .............................................................................. 20

*Newcombe v. Adolf Coors Co.,*
    157 F.3d 686 (9th Cir. 1998)........................................................................................... 14

*Paradise Hills Associates. v. Procel,*
    235 Cal. App. 3d 1528, 1544 (1991) .............................................................................. 19

*Paulsen v. Personality Posters, Inc.,*
    299 N.Y.S. 2d 501 (1968) .............................................................................................. 20

*Perfect 10, Inc. v. CCBill LLC,*
    488 F.3d 1102 (9th Cir. 2007)......................................................................................... 11

*Raines v. Byrd,*
    521 U.S. 811 (1997)........................................................................................................... 9

*Ramey v. Darkside Prods., Inc.,*
    No. 02-730 (GK), 2004 WL 5550485 (D.D.C. May 17, 2004) ...................................... 13

*Robins v. Spokeo, Inc.,*
    No. CV10-05306 ODW, 2011 WL 597867 (C.D. Cal. Jan. 27, 2011) .............................. 9

*Santa Clara Cnty. Local Transp. Auth. v. Guardino,*
    11 Cal. 4th 220 (1995) ................................................................................................... 21

*Shulman v. Group W Prods., Inc.,*
    18 Cal. 4th 200 (1998) ................................................................................... 18, 19, 20, 21

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ............................................................................................................ 6

*Stewart v. Rolling Stone LLC,*
    181 Cal. App. 4th 664 (2010)..................................................................................... 18, 21

*Summers v. Earth Island Inst.,*
    129 S. Ct. 1142 (2009) ..................................................................................................... 9

*Thompson v. Home Depot, Inc.,*
    No. 07cv1058 IEG, 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007).............................. 8, 23

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,*
    594 F.2d 730 (9th Cir. 1979)............................................................................................ 6

*Troyk v. Farmers Group, Inc.*,
   171 Cal. App. 4th 1305 (2009)................................................................................. 22

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*,
   425 U.S. 748 (1976).............................................................................................. 19

*Whiteside v. Tenet Healthcare Corp.*,
   101 Cal. App. 4th 693 (2002)............................................................................... 23

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)............................................................................................... 7

*Young v. Facebook, Inc.*,
   No. 10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)...... 11, 12

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997)............................................................................... 13

**STATUTES**

15 U.S.C.
   § 45(n) .................................................................................................................. 23

47 U.S.C.
   § 230................................................................................................................ passim
   § 230(b)(1) ........................................................................................................... 10
   § 230(b)(2) ........................................................................................................... 10
   § 230(f)(2) ............................................................................................................ 12

Cal. Bus. & Prof. Code

   § 17200 ............................................................................................................ passim
   § 17204 ........................................................................................................... 10, 22

Cal. Civ. Code

   § 3344 ............................................................................................................. passim
   § 3344(a) .................................................................................................. 10, 14, 15
   § 3344(d) ................................................................................................... 3, 17, 19

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

vi.

**OTHER AUTHORITIES**

CAL. CONST. art. I, §2 ................................................................................................ 21, 22

Federal Rule of Civil Procedure
    9(b) ......................................................................................................................... 24
    12(b)(1) ................................................................................................................. 1, 6
    12(b)(6) ................................................................................................................. 1, 6

U.S. CONST. art. III ................................................................................................... passim

U.S. CONST. amend. I ........................................................................................................ 22

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

vii.

1  |  ### NOTICE OF MOTION AND MOTION TO DISMISS

2  |  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3         PLEASE TAKE NOTICE that on July 28, 2011 at 1:30 p.m. or as soon thereafter as this

4  motion may be heard in the above-entitled court, located at 280 South First Street, San Jose,

5  California, in Courtroom 4, 5th Floor, Defendant Facebook, Inc. ("Facebook") will move to

6  dismiss the First Amended Class Action Complaint (the "Complaint") filed by Plaintiffs.

7  Facebook's Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

8  and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and

9  Authorities, and all pleadings and papers on file in this matter, and upon such other matters as

10  may be presented to the Court at the time of hearing or otherwise.

11  |  ### STATEMENT OF RELIEF SOUGHT

12         Facebook seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and

13  12(b)(6) dismissing Plaintiffs' Complaint and each of the three Claims for Relief alleged therein

14  for lack of standing and for failure to state a claim upon which relief can be granted.

15  |  ### STATEMENT OF ISSUES TO BE DECIDED

16         1.       Because Plaintiffs fail to allege an injury in fact that gives them standing under

17  Article III of the United States Constitution, should the Complaint be dismissed?

18         2.       Because Facebook's actions are entitled to immunity under the Communications

19  Decency Act, 47 U.S.C. § 230, should the Complaint be dismissed?

20         3.       Because the Complaint fails to state a claim upon which relief can be granted

21  under the California statute on misappropriation of the right of publicity, Civil Code section 3344,

22  should the First Claim for Relief be dismissed?

23         4.       Because the Complaint fails to state a claim upon which relief can be granted

24  under California Business and Professions Code section 17200, should the Second Claim for

25  Relief be dismissed?

26         5.       Because the Complaint fails to state a claim upon which relief can be granted

27  under the theory of unjust enrichment, should the Third Claim for Relief be dismissed?

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Facebook is a social networking website that connects people with their friends, families, and communities.  Facebook has always been a free service, and to join, Facebook users ("Users") need only provide their name, age, gender, and a valid e-mail address.  Users do not need to post any content to use the site, but if they choose to do so, they may share information with others about virtually anything—vacation photos, news about their everyday lives, links to websites they think are interesting, or opinions about world events.  Users can communicate to their friends that they "Like" a Facebook page related to a local restaurant, a politician, a brand of shoes, or an article in the area newspaper.  Users may also share information about which applications they use and games they play on the Facebook platform.  In addition, Users may use the "Places" feature to tell their friends and family where they are and what local businesses they frequent.  Facebook's ability to allow Users to share information with others in these varied and unique ways is one of the fundamental reasons so many people use the site.

The First Amended Class Action Complaint ("Complaint") is brought on behalf of a putative class of adults and minors[1] who are Facebook Users.  In essence, it alleges that Facebook wrongfully republished to Users' friends certain information that Users previously voluntarily published to that very same group of friends.  According to Plaintiffs, when Facebook republished the *same information to the same group of friends* as a story sponsored by an advertiser, Facebook (1) violated California Civil Code section 3344, (2) violated the California Unfair Competition Law, Business and Professions Code section 17200 ("UCL"), and (3) was unjustly enriched.

Plaintiffs' Complaint is insufficient as a matter of law and should be dismissed.  *First*, and fatal to all three claims, Plaintiffs have not alleged any cognizable injury in fact that would give them standing to bring suit under Article III of the U.S. Constitution.  *Second*, the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230, bars all three claims.  As many courts

---

[1] Minors must be at least 13 years of age to register with Facebook.

have held, Congress enacted CDA section 230 to promote the development of the Internet and to protect the Internet as an active forum for free and open speech.  Accordingly, the statute grants websites broad immunity from liability for publishing information posted by users.  *Third*, Plaintiffs' claim under Civil Code section 3344 should be dismissed because the Complaint fails to allege the required element of injury, and because Plaintiffs consented to the alleged use of their names and likenesses that they now challenge.  Further, the "newsworthy" exemption codified in section 3344(d) protects Facebook's republication of a User's comments, activities and opinions about content on Facebook to the likely interested audience of the User's Facebook friends.  This is particularly so when the Court construes the statute, as it must, in light of the substantial First Amendment concerns that would be raised by a ruling that would inhibit Users' ability to communicate to their friends about content posted on Facebook, or Facebook's ability to republish that information to those same friends.  *Fourth*, as a court in this district recently held, because Facebook is a free service, Plaintiffs cannot allege facts suggesting that they suffered injury in fact or lost money or property as a result of unfair competition, and, as such, they lack standing to bring a claim under the UCL.  Moreover, the Complaint fails to allege facts that would support such a claim under the "unlawful," "fraudulent," or "unfair" prongs of section 17200.  *Fifth*, because unjust enrichment is not an independent cause of action in California, and because Plaintiffs—who used Facebook for free—fail to allege facts entitling them to restitution, this claim fails as well.  Accordingly, the Complaint should be dismissed with prejudice.

## II.   STATEMENT OF FACTS[2]

Facebook operates a free social networking website that permits anyone with access to a computer and an Internet connection to create a profile page, find and connect with their friends and loved ones around the world, and share information about themselves and their lives. (Compl. ¶ 13.)  This information can include almost anything, such as "texts, images, web links, and video" selected and posted by the Facebook User.  (*Id.* ¶ 17.)  Users join, in large part, to "establish social network relationships within the site" and to view content "produced by other

---

[2] This Statement of Facts is based on the allegations in the First Amended Complaint, which Facebook assumes as true for the purposes of this motion but does not thereby admit.

Facebook.com [Users]."   (*Id.* ¶ 13.)  Facebook has become "the de facto method of communication among friends for a significant portion" of its Users.  (*Id.*)

To join Facebook, Users must register and provide their real names; they may, but need not, choose and upload a "profile image."[3]  (Compl. ¶¶ 14, 24.)  Once Users have a profile page, they may begin connecting with other Users they know on Facebook.  (*Id*. ¶ 16.)  To do so, they invite the other User to become one of their Facebook "Friends."  (*Id.*)  If the other User accepts the invitation, he or she has "explicit permission to post content" on the User's News Feed, to see the information that the User voluntarily shares on the site, and to send the User messages.  (*Id.*)  However, even among a User's Friends, a User can control who can see the content on their profile page via their privacy settings.  (*See* Declaration of Ana Yang Muller ("Yang Decl."), filed herewith, ¶ 5, Ex. D.)

Facebook offers Users an array of options for sharing content and communicating.  Chief among these is "Posting," whereby Users can add content onto their profile page such as statements of what is on their minds (called "status updates"), messages to their Friends, photos, links to other websites, videos, etc.  (Compl. ¶¶ 15, 20.)  These posts, one of the primary methods of interacting on the site, are shown to a User's Facebook Friends. (*Id*. ¶¶ 17, 20.)  Users may also signal to their Friends that they like almost anything—e.g., pages for politicians, products, organizations, music, or causes—on Facebook, or even content on webpages outside of Facebook, by clicking on a button labeled "Like" that is associated with that content.  (*Id*. ¶ 22.)  When a User "Likes" content, that statement of opinion may appear on the User's profile page, and in his or her Friends' News Feeds, depending on the User's privacy settings.  (*Id*. ¶¶ 15, 22, *see also* Yang Decl. Ex. B)  Users may also use the "Places" feature to check in at a location and announce where they are to their Friends.  (*Id*. ¶ 21.)  Because a check-in can be at a local coffee shop or at the dog park down the street, it may or may not include a reference to a business establishment.  (*Id*.)  That information too may be posted on the User's profile page and in his or her Friends' News Feeds.  (*Id*. ¶¶ 15, 23.)  Additionally, Users may use applications and games

---

[3] Users can and do use a range of photos for their profile image, including pets, cars, cartoon characters, nature scenes, etc.

created by other software developers that are offered on the Facebook platform, and that activity may also be shared with Friends.  (*Id.* ¶ 24.)

In January 2011, Facebook launched a new feature called "Sponsored Stories."  (Compl. ¶ 24.)  The Complaint alleges that, in certain circumstances, this tool republishes a User's previously "posted content," consisting of Likes, check-ins, Posts, or use of certain applications, along with the User's name and/or profile image, as a story sponsored by an advertiser regarding the content to which the User's action related.  (*Id.*)  Although the Complaint alleges these Sponsored Stories are advertisements (*id.*), this inaccurate characterization of Sponsored Stories is a legal conclusion which the Court need not accept as a true factual allegation.  Regardless, the Complaint admits Sponsored Stories are *only* triggered when the User's original posting already "relates to an advertiser" and are only shown to the Friends who had previously been shown the same content in their News Feeds.  (*Id.* ¶¶ 20, 24.)  Thus, the Complaint alleges Facebook may have republished, as a Sponsored Story next to Angel Fraley's Friends' News Feeds, the message "Angel Fraley likes [Product X]" and her profile picture, which is the very same content that was previously published when she voluntarily "Liked" "Product X".  (*Id.* ¶¶ 15, 22, 40.)  An example of a User-created Post that appears on the User's profile page and in Friends' News Feeds (on top), and a corresponding Sponsored Story displayed to the same friends (below) looks like this:



Plaintiffs allege that this republication, using their names and/or profile images, constitutes a misappropriation of their right of publicity under section 3344, a violation of the UCL, and unjust enrichment.  (Compl. ¶¶ 65, 76, 79.)  But the Complaint does not allege that any of the named Plaintiffs uploaded a profile picture that was an actual "likeness" of themselves. Plaintiffs also do not allege that their privacy settings permitted anyone to view content they posted.  Nor does the Complaint provide any specific examples of products or services that Plaintiffs "Liked," places they checked into, or any applications they used or games they played that ***even may have*** resulted in a Sponsored Story.  Moreover, the Complaint alleges no facts whatsoever supporting the allegation that Plaintiffs suffered a loss of money they would have otherwise received for the use of their names and/or profile images.  (*Id.* ¶¶ 43, 77.)

## III.   APPLICABLE STANDARDS

A court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(1) based on lack of subject matter jurisdiction, and the motion may attack either the Complaint on its face or the existence of subject matter jurisdiction in fact.  *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 732-33 (9th Cir. 1979).  If a complaint does not establish standing under Article III of the U.S. Constitution, a federal court does not have subject matter jurisdiction to hear the case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion under Rule 12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them."  *Id*.  However, as the Supreme Court recently emphasized, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).   A plaintiff must therefore plead "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949.

## IV.   ARGUMENT

### A.   Plaintiffs Lack Standing Under Article III Because They Have Not Alleged Injury in Fact.

 It is axiomatic that Plaintiffs must, as a threshold matter, allege some injury in fact that permits them to assert a claim.  Under Article III, federal courts do not have jurisdiction to hear a case where no injury has been alleged.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (To have standing to pursue a claim in federal court a plaintiff must allege (1) that they suffered injury in fact; (2) that there is a causal connection between the injury and the alleged conduct; and (3) that the injury may be redressed by a favorable decision.); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (an injury in fact is one that is "distinct and palpable," not "abstract").  Moreover, in a class action, each named plaintiff must establish that they "personally have been injured" and thus have standing to bring the cause of action.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (citation omitted).

Plaintiffs have not sufficiently alleged any injury in fact.  First, the Complaint contains only generalized allegations that Plaintiffs' names and/or likenesses have been used at some point, in some undefined Sponsored Story, because Plaintiffs posted content on or after January 25, 2011.   (Compl. ¶¶ 38, 39.) The Complaint does not even allege that any of the named Plaintiffs posted content related to any Facebook advertiser, which, as Plaintiffs admit, is a prerequisite to a Sponsored Story occurring.  (*Id.* ¶ 24.)  Nor do they allege that their privacy settings permitted anyone to view the relevant content or any Sponsored Story associated with it.  Plaintiffs' generalized allegations do not allege a "distinct and palpable" injury in fact.

Further, although the Complaint alleges that Plaintiffs' "likenesses" were used in association with some undefined Sponsored Story, the Complaint does not allege that, at all relevant times, Plaintiffs had elected to upload profile images or that those images were actual likenesses of each named Plaintiff (many Facebook users elect not to upload any profile picture at all, and many others choose to upload an image of something other than their own likeness).

Lastly, the Complaint admits that, in each instance, Sponsored Stories are triggered by a User's voluntary use of optional Facebook features and are only shown to the same group of people with whom the User already shared the same information (e.g., Angel Fraley Likes Product X; Paul Wang has checked into advertiser location Y).  (*Id.* ¶ 40.)  The Complaint never explains how such republication of information a User has voluntarily shared—to the same audience with which the User has voluntarily shared it—could cause injury to anyone, much less how it supposedly injured the named Plaintiffs.

At most, the Complaint makes a wholly conclusory claim regarding Plaintiffs' injuries, alleging that Plaintiffs "were deprived of fair market value remuneration" for the use of their names and/or profile photos in which they had a "vested interest."  (Compl. ¶¶ 43, 77).  This cryptic assertion is at most a *legal conclusion*, which the Court is not bound to accept.  *See Twombly*, 550 U.S. at 555 (noting the court need not accept the truth of legal conclusions couched as factual allegations).  Plaintiffs allege absolutely no facts suggesting that their names and/or likenesses have any commercial value or that they could ever have received any payment for their names and/or likenesses in the absence of Facebook's alleged conduct.  Even if Plaintiffs had made this highly implausible allegation, courts have already considered and rejected the notion that private individuals have a compensable *property* interest in their names and/or likenesses. *See Thompson v. Home Depot, Inc*., No. 07cv1058 IEG (WMc), 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (holding that use of plaintiff's personal information such as a name and telephone number for marketing purposes did not confer a property interest in the information to plaintiff, since such information is not "property" under Cal. Bus. & Prof. Code section 17200); *In re JetBlue Airways Corp. Privacy Litig*., 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) ("there is [] no support for the proposition that an individual passenger's personal information has or had any compensable value in the economy at large"); *Dwyer v. Am. Express Co*., 273 Ill. App. 3d 742, 749 (Ill. App. Ct. 1995) (cardholder name has little or no intrinsic value apart from its inclusion on a categorized list; instead "[d]efendants create value by categorizing and aggregating" the names).  *See also infra* § IV.D (discussing standing requirement of UCL).

1  Plaintiffs' attempt to argue that they have suffered economic harm is thus unavailing and does not

2  support any allegation that they have suffered injury in fact for Article III purposes.

3         Additionally, Plaintiffs may not save their claim by alleging that the mere violation of the

4  asserted state statutes gives them standing.  "[T]he mere allegation of a violation of a California

5  statutory right, without more, does not confer Article III standing.  A plaintiff invoking federal

6  jurisdiction must also allege some actual or imminent injury resulting from the violation . . . ."

7  *Lee v. Chase Manhattan Bank*, No. C07-04732 MJJ, 2008 WL 698482, at *5 (N.D. Cal. Mar. 14,

8  2008) (citing *Lujan*, 504 U.S. at 560-61); *see also Robins v. Spokeo, Inc.*, No. CV10-05306

9  ODW, 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011) (allegations that website violated statute

10  which provided private right of action did not allege injury in fact for standing purposes without

11  some allegations of "actual or imminent" harm);  *cf. Los Angeles Haven Hospice, Inc. v. Sebelius*,

12  --- F.3d ----, No. 09-56391, 2011 WL 873303, at *8 (9th Cir. Mar. 15, 2011) (publication

13  pending) (noting "less tangible forms of injury, such as the deprivation of an individual right

14  conferred by statute" *may* confer Article III standing if the harm is "sufficiently particularized and

15  concrete to demonstrate injury-in-fact").  This principle flows from the rule, repeatedly affirmed

16  by Supreme Court jurisprudence, that a plaintiff only has standing if he or she suffered "a distinct

17  and palpable injury to himself."  *See Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100

18  (1979); *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase

19  Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would

20  not otherwise have standing."); *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009)

21  ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be

22  removed by statute.").

23         Even if this Court were to follow decisions which find Article III standing based on

24  alleged violation of a statute, which it should not, Plaintiffs have failed to meet this standard.

25  Such decisions look to the text of the statute to determine whether a plaintiff has alleged all of the

26  statute's elements.  *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010)

27  (concluding the court must look to the text of the federal statute to determine whether plaintiffs

28  had alleged a violation that thereby conferred Article III standing).  Plaintiffs however, have not

alleged the injury necessary to state a claim under either Cal. Civ. Code section 3344 or Cal. Bus. & Prof. Code section 17200. Both statutory provisions specifically require proof of injury to state a claim. *See* Cal. Civ. Code § 3344(a) (using the word "injured" four times to state that defendants may only be liable to "the person or persons injured as a result thereof"); Cal. Bus. & Prof. Code § 17204 (requiring both injury in fact and a loss of money or property to state a claim under the UCL). Permitting Plaintiffs to proceed in federal court without proof of injury in fact would impermissibly read a key element out of both the statutes under which Plaintiffs have sued.

Because Plaintiffs have not alleged injury in fact as required to have standing in this Court under Article III, their Complaint should be dismissed.

**B.     Plaintiffs' Claims Are Barred by the Federal Communications Decency Act, 47 U.S.C. § 230.**

Under section 230 of the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 precludes any application of state law that interferes with this rule, providing that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3). Facebook is entitled to CDA section 230 immunity here because Plaintiffs seek to hold Facebook liable for information provided by another party—namely, Plaintiffs themselves.

Among the express policy considerations Congress sought to advance through the immunity provisions of CDA section 230 were "to promote the continued development of the Internet and other interactive computer services and other interactive media" and "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. §§ 230(b)(1)–(2). The Ninth Circuit has explained that by enacting the CDA, Congress intended "to preserve the free-flowing nature of Internet speech and commerce . . . ." *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008); *see also Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 802-03 (2007) (noting immunity is intended to "avoid the chilling effect" on online speech that liability would impose). Therefore, section 230 "provides

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

broad immunity [to websites that publish] content provided primarily by third parties." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *see also Barrett v. Rosenthal*, 40 Cal. 4th 33, 57 (2006) (section 230 provides "blanket immunity from tort liability for online republication of third party content."). The Ninth Circuit has reaffirmed this broad immunity, declaring that "close cases . . . must be resolved in favor of immunity, lest we cut the heart out of Section 230 by forcing websites to face death by ten thousand duck-bites . . . ." *See Roommates.com*, 521 F.3d at 1174.

Courts have held that Section 230 bars claims alleging misappropriation of name and likeness (right of publicity). *See Carafano*, 339 F.3d at 1125 (upholding section 230 immunity for interactive dating website against misappropriation claim); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007) (affirming website's section 230 immunity against right of publicity claims, noting "Congress's expressed goal of insulating the development of the Internet from various state-law regimes"). In fact, this federal immunity encompasses all state statutory and common law causes of action. *See Perfect 10*, 488 F.3d at 1118-19 (affirming immunity from plaintiffs' claims for unfair competition and false advertising); *Jurin v. Google Inc*., 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (dismissing plaintiffs' claim for unjust enrichment, negligent and intentional interference with contractual relations and prospective advantage, and fraud). Immunity under section 230 is a proper ground on which to grant a motion to dismiss. *See, e.g.*, *Black v. Google Inc*., No. 10-02381 CW, 2010 WL 3222147, at *3 (N.D. Cal. Aug 13, 2010) (granting motion to dismiss with prejudice under Section 230 noting "any amendment would be futile"); *Jurin*, 695 F. Supp. 2d at 1122-23; *Young v. Facebook, Inc*., No. 10-cv-03579-JF/PVT, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255-58 (4th Cir. 2009) (courts should "resolve the question of § 230 immunity at the earliest possible stage of the case" (citing *Roommates.com*, 521 F.3d at 1175)).

Section 230 immunity requires that (1) the defendant be a provider or user of an interactive computer service, (2) the cause of action treat the defendant as a publisher or speaker of the information, and (3) the information be provided or developed by another information

Cooley LLP
Attorneys At Law
San Francisco

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

11.

1    content provider.  *See Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 830 (2002) (section 230
2    immunizes interactive computer service providers where these three factors are met).   These
3    elements are met here.

4         *First*, Facebook is undoubtedly an "interactive computer service," which is defined as
5    "any information service . . . that provides or enables computer access by multiple users to a
6    computer server."  *See* 47 U.S.C. § 230(f)(2); *Young*, 2010 WL 4269304, at *5 (finding Facebook
7    is an interactive computer service and granting motion to dismiss under section 230); *Finkel v.
8    Facebook, Inc.*, No. 102578/09, 2009 N.Y. Misc. LEXIS 3021, at *3-4 (N.Y. Sup. Ct. Sept. 15,
9    2009) (granting Facebook's motion to dismiss under section 230); *see also Roommates.com*, 521
10   F.3d at 1162 n.6 ("[T]he most common interactive computer services are websites.").

11        *Second*, Plaintiffs' claims seek to treat Facebook as the publisher or speaker of the content
12   they provided.   Plaintiffs allege that Facebook published Plaintiffs' "posted content"—for
13   example, information about unspecified pages they "Liked," games they played, and places they
14   visited—with Plaintiffs' names and likenesses in a Sponsored Story.  (Compl. ¶¶ 23, 24, 39-40.)
15   But, as discussed above, Facebook is merely republishing the same content that a User already
16   posted on his or her profile page and published to Friends' News Feeds, consistent with the
17   User's privacy settings.

18        *Third*, the information was provided or developed by another information content
19   provider, i.e., Plaintiffs themselves—and not Facebook.  All such information, including a User's
20   name and likeness and their Likes, check-ins, Posts to their News Feeds, and use of an application
21   that is part of Sponsored Stories, is voluntarily provided by Users.  (*Id.* ¶¶ 6-10, 17, 21-22, 24.)
22   In fact, the Complaint specifically notes that most of the content on Facebook is produced by
23   Facebook Users.  (*Id.* ¶ 13.)   Users often share with their network of Friends a variety of
24   information, including photographs or videos, personal messages, links to other websites, or
25   information surrounding upcoming events or special interest groups.  (*Id.* ¶¶ 16-17.)  Indeed, the
26   Complaint notes that posting content is the main method by which Users, including Plaintiffs
27   themselves, interact on Facebook.  (*Id.* ¶ 20.)  More specifically, the Complaint admits that *Users
28   publish to their Friends the fact that they have been to a location when they Check-in, or that they

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

1 Like a particular item when they use the Like button, or generally Post information about a

2 product, website, brand or service on Facebook. (*Id.* ¶¶ 21-24.) In fact, they admit that all such

3 information is "posted content" made by Plaintiffs. (*Id.* ¶ 24.) Thus, according to the Complaint,

4 it is Plaintiffs as Facebook Users who provided all of the information at issue, including their

5 names, likenesses, and content about brands or other content on Facebook, and Plaintiffs who

6 decided to share the information with Friends and potentially with others.

7 The law is clear that when a user of a website selects which information to publish, the

8 user constitutes "another information content provider" for purposes of section 230. *See Goddard*

9 *v. Google*, 640 F. Supp. 2d 1193, 1197 (N.D. Cal. 2009) (holding that a website operator cannot

10 be treated as the publisher or speaker of content on the website if "users ultimately determine

11 what content to post"). Courts have held that section 230 immunity applies even when the

12 content provider is the party suing over the website's display of that content. *See generally Doe*

13 *II v. MySpace, Inc.*, 175 Cal. App. 4th 561 (2009) (upholding website's section 230 immunity as

14 to claims arising from information published by plaintiffs); *Doe v. MySpace, Inc.*, 528 F.3d 413

15 (5th Cir. 2008); *Doe IX v. MySpace, Inc.*, 629 F. Supp. 2d 663 (E.D. Tex. 2009).

16 Nor does Facebook's republication of User-created content as a Sponsored Story alter this

17 analysis. Courts uniformly hold that websites do not lose immunity under Section 230 based on

18 the performance of editorial functions such as deciding whether to publish, withdraw, postpone,

19 edit, or alter content provided by their users. *See Batzel v. Smith*, 333 F.3d 1018, 1031 n.18 (9th

20 Cir. 2003) (explaining that "the exercise of a publisher's traditional editorial functions—such as

21 deciding whether to publish, withdraw, postpone or alter content—do not transform an individual

22 into a 'content provider' within the meaning of § 230" (internal quotation marks and citation

23 omitted)); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (section 230 precludes

24 courts from entertaining lawsuits that "would place a computer service provider in a publisher's

25 role" even if they exercise traditional editorial functions, so long as the content originated with a

26 third-party user); *Ramey v. Darkside Prods., Inc.*, No. 02-730 (GK), 2004 WL 5550485, at *7

27 (D.D.C. May 17, 2004) (defendant was not an information content provider merely because it

28 edited the ads posted on its website). This is so even when websites use neutral tools to

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

categorize the content provided by users or suggest what content users might provide.  *See, e.g.*, *Roommates.com*, 521 F.3d at 1172 (fact that "interactive computer service 'classifies user characteristics . . . does not transform [it] into a 'developer' of the underlying misinformation'") (citing *Carafano*, 339 F.3d at 1124); *see also Goddard*, 640 F. Supp. 2d at 1197-98 (by providing a keyword search tool to advertisers who used the tool to post illegal information, Google did not become the content provider even if Google "should have known" that the tool would lead to the improper posting, so long as the users ultimately determined what content to post).  Indeed, the Ninth Circuit has warned that an interpretation of CDA immunity that was not broad enough to include websites' classification of information "would sap section 230 of all meaning." *Roommates.com*, 521 F.3d at 1172.  Thus, Plaintiffs' allegations that Facebook republishes as a Sponsored Story the same User-published information that appears on their profile pages and in their Friends' News Feeds do not make Facebook into an information content provider. Accordingly, Facebook is entitled to Section 230 immunity here.

### C.   Plaintiffs Fail to State a Claim for Misappropriation Under California Civil Code Section 3344.

To state a claim under California Civil Code section 3344, Plaintiffs must allege (1) defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; (4) resulting injury; (5) a knowing use by the defendant; (6) for the purposes of advertising; and (7) a direct connection between the alleged use and the commercial purpose.  Cal. Civ. Code § 3344(a); *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (1996); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998).  The Complaint does not allege any injury sufficient to state a claim for violation of section 3344, and Plaintiffs gave consent to any such use of their names and likenesses.  Further, Plaintiffs' claim fails because Facebook's actions are protected by the "newsworthy" exemption under the statute.  Accordingly, the Court should dismiss the claim as a matter of law.

### 1.   Plaintiffs have not alleged any actionable injury under section 3344.

Plaintiffs have failed to allege facts supporting any actionable injury, a necessary element to state a claim under section 3344.  *See* Cal. Civ. Code § 3344(a) (using the term "injured" four

Cooley LLP
Attorneys At Law
San Francisco

14.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

1  separate times to describe who may recover under the statute); *Eastwood v. Super. Ct.*, 149 Cal.

2  App. 3d 409, 417 (1983) (to plead a violation of section 3344, Plaintiffs must allege injury);

3  *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (resulting injury is a

4  necessary element of a claim under section 3344).   Although the Complaint contains the

5  conclusory allegation that Plaintiffs lost the "fair market value" they could have recovered for the

6  use of their names and/or likenesses (Compl. ¶ 43), Plaintiffs plead no facts in support of this

7  legal conclusion.   They have not alleged that they have previously received remuneration for the

8  use of their name or likeness, or that they have ever sought to obtain such remuneration.   It is

9  insufficient for Plaintiffs to assert, without any supporting factual allegations, that they would

10  have received payment for the use of their names and/or profile images.   They therefore have not

11  pled facts sufficient to allege any injury, nor stated a claim that is "plausible on its face."

12  *Ashcroft*, 129 S. Ct. at 1949.

13  **2.     Plaintiffs consented to the use of their names and likenesses in association with sponsored content.**

14  

15      The first statement within Facebook's Statement of Rights and Responsibilities ("SRR")

16  informs Users that it "governs [Facebook's] relationship with users and others who interact with

17  Facebook.   By using or accessing Facebook, you agree to this statement."   (*See* Yang Decl, ¶ 2,

18  Ex. A.)   As acknowledged recently by the Northern District of California, when a party "accesses

19  or uses" Facebook's website, these terms are binding.   *See Facebook, Inc. v. Power Ventures,*

20  *Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 n.20 (N.D. Cal. July 20, 2010) (stating that

21  "in the act of accessing or using Facebook's websites alone, [defendant] Power acceded to the

22  Terms of Use and became bound by them"); *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.

23  Supp. 2d 1039, 1052 (N.D. Cal. 2010) (holding that party consented to forum selection clause in

24  website's terms of service where terms were condition to accessing website).   Plaintiffs allege

25  they are Facebook Users who accessed and used the website (Compl. ¶¶ 6-10), and, thus, they are

26  bound by the SRR.

27      As the Complaint acknowledges, under Facebook's SRR, Users give Facebook permission

28  to use their names and/or likenesses in association with sponsored content. (Compl. ¶ 27.)

Cooley LLP
Attorneys At Law
San Francisco

15.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

Section 10.1 expressly tells Users that "[y]ou can use your privacy settings to limit how your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us." (*Id.* (citing SRR § 10.1).) Section 10.1 further states: "You give us permission to use your name and profile picture in connection with that content, subject to the limits you place." (*Id.*) Under this provision, Plaintiffs gave express consent for Facebook to use their names and/or profile images in connection with "sponsored content" such as Sponsored Stories, subject to the privacy limitations they select. Therefore, Plaintiffs cannot state a claim under section 3344. *See Fleet*, 50 Cal. App. 4th at 1918 (a lack of consent is a required element under section 3344).[4]

Consistent with section 10.1, Plaintiffs and other Users could limit the creation of Sponsored Stories via their privacy settings. Facebook's Help Center, from which Plaintiffs quote in their complaint (Compl. ¶ 29), affirms this in a question and answer that Plaintiffs ignore, entitled "Where can I view and edit my privacy settings for sponsored content?" (Yang Decl. ¶ 3, Ex. B)[5] The question and answer notes that "Sponsored Stories are only delivered to your confirmed friends and *respect the privacy settings you configure for News Feed*." (*Id.*) (emphasis added). The question and answer also contains a link to a page giving Users more information about such privacy settings. (*Id.*) For example, the page contains questions and answers that explain that Users can change the privacy setting for each piece of content they post and determine whether it will appear in their Friends' News Feeds. (*Id.* ¶ 4, Ex. C) It also explains that Users can include or exclude specific friends from viewing their content. (*Id.* ¶ 5, Ex. D) Thus, if Users select privacy settings that restrict information such as Likes, check-ins, Posts, or their use of applications from being published to their News Feed and seen by their

---

[4] Plaintiffs purport to bring this action on behalf of a subclass of minors, and argue that the consent of their parents would be necessary under section 3344. (Compl. ¶ 41.) However, putting consent aside, the minor Plaintiffs' claims are nonetheless barred because they lack standing, Facebook has immunity for all users under CDA section 230, Plaintiffs fail to allege any injury under section 3344 and the minors' expressions are entitled to section 3344's "newsworthy" exemption as discussed below.

[5] True and correct copies of Facebook's Statement of Rights and Responsibilities and the Help Center questions and answers are attached as Exhibits A-D to the Yang Declaration.

Cooley LLP
Attorneys At Law
San Francisco

16.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE No. 11-CV-01726 LHK

1    Friends, those limitations will apply to how their names and likenesses are used in Sponsored

2    Stories.

3         Although the Complaint cites a different question and answer from the Help Center

4    (Compl. ¶ 29), the information cited does not contradict the consent provided by Section 10.1 of

5    the SRR.  In that question, entitled "Can I opt out of seeing or being featured in sponsored News

6    Feed stories," the answer notes that there is no way to opt out of seeing or being featured in such

7    stories.  That does not mean, as described above, that Users may not "limit" the use of their

8    names and/or profile images by customizing their privacy settings.  Users can and do, as these

9    judicially noticeable Help Center pages that Plaintiffs chose not to mention make clear.

10        Regardless of how each particular User elects to use his or her privacy settings, in SRR

11   Section 10.1, each "[User] give[s] [Facebook] permission to use [his or her] name and profile

12   picture in connection with [sponsored] content."  Accordingly, the Complaint fails to state a claim

13   for violation of section 3344.

14        **3.      Facebook's republication of information already displayed by Users in their News Feeds is newsworthy and exempt under section 3344(d).**

15

16        Section 3344 states explicitly that newsworthy speech is not the proper subject of a

17   misappropriation claim: "a use of a name, voice, signature, photograph, or likeness in connection

18   with any news, public affairs, or sports broadcast or account, or any political campaign shall not

19   constitute a use for which consent is required under subdivision (a)."  Cal. Civ. Code § 3344(d).

20   As discussed above, *supra* § II, the Complaint alleges that a Sponsored Story may be generated

21   only if a User engages in some action—e.g., Liking an item on Facebook, checking in at a

22   business, Posting information about a product, or using an application or game—that he or she

23   has chosen to share with Friends and that would otherwise appear on the User's profile page and

24   Friends' News Feeds.  (*Id.* ¶¶ 21, 22, 24.)  Thus, in all cases, a Sponsored Story republishes

25   content that the User previously posted and made available to his or her Friends.  (*Id.*)  Sponsored

26   Stories are never shown outside of a User's selected group of Friends.  (*Id.* ¶¶ 16, 17, 24,

27   specifically noting that Sponsored Stories are only shown "on [User's] Friends pages").  Because

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

1   Facebook's alleged use of Users' names and likenesses falls within this broad "newsworthy"

2   exemption, the Complaint fails to state a cause of action under section 3344.[6]

3       The term "newsworthy" under section 3344 is broadly construed, and "is not limited to

4   'news' in the narrow sense of reports of current events.  'It extends also to the use of names,

5   likenesses, or facts in giving information to the public for purposes of education, amusement or

6   enlightenment, when the public may reasonably be expected to have a legitimate interest in what

7   is published.'"  *See Shulman v. Group W Prods., Inc*., 18 Cal. 4th 200, 225 (1998) (quoting Rest.

8   2d Torts § 652D, com. j, p. 393).  The key is whether the use of the name and/or likeness relates

9   to information in which the audience has a legitimate interest.  *See Montana v. San Jose Mercury*

10  *News, Inc*., 34 Cal. App. 4th 790, 793-95 (1995) (dismissing claim under section 3344(d) because

11  republication of football player's image "report[ed] newsworthy items of public interest"); *see*

12  *also Dora v. Frontline Video, Inc*., 15 Cal. App. 4th 536, 546 (1993) (holding section 3344(d)

13  precluded claim for use of likeness in surfing documentary because the public is "entitled to know

14  about things, people, and events that affect it").

15      The California Supreme Court has recognized that "legitimate interest" analysis for

16  purposes of the analogous "newsworthy" exception to a claim for public disclosure of private

17  facts parallels the analysis in cases involving the constitutional right to freedom of speech.  *See*

18  *Shulman*, 18 Cal. 4th at 214-16 (critical issue for both tort and constitutional law inquiries is the

19  presence or absence of a "public interest," noting that "the requirements of tort law and the

20  Constitution have generally been assumed to be congruent" (citing Rest.2d Torts. § 652D, com. d,

21  p. 388)); *see also Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 681 (2010) ("[T]he tort of

22  appropriation of name and personality, whether labeled a form of intrusion into privacy or a

23  publicity right, invokes constitutional protections.").  Thus, if there is a legitimate public interest

24

25

26  ───────────────
    [6] Although Plaintiffs conclusorily allege that the information republished by Facebook was not
27  used in conjunction with "news," this assertion is both a legal conclusion that the Court is not
    bound to accept as true, *Twombly*, 550 U.S. at 555, and contradicted by the facts pled in the
28  Complaint.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

18.

1    in speech for First Amendment purposes, the speech also qualifies as "newsworthy" under section

2    3344(d).  *See Shulman*, 18 Cal. 4th at 216.

3         Facebook's republication of Users' names and/or profile images, in association with their

4    actions to Like, check-in, or Post about content on Facebook is newsworthy on two grounds.

5    First, expressions of consumer opinion are matters of public interest under the First Amendment.

6    For instance, in *Paradise Hills Associates. v. Procel*, the Court of Appeal held that the First

7    Amendment protects a consumer's statements and signs about the quality of a developer's

8    construction.  235 Cal. App. 3d 1528, 1544 (1991).  The court recognized that members of the

9    public have an interest in "improv[ing] their relative position vis-à-vis the suppliers and

10   manufacturers of consumer goods" and thus "[t]hey clearly have an interest in matters which

11   affect their roles as consumers . . . ."  *Id.* (quoting *Concerned Consumers League v. O'Neill*, 371

12   F. Supp. 644, 648 (E.D. Wis. 1974)).  The consumer's expression of an opinion about a product is

13   therefore protected by the First Amendment.  *Id.*; *see also Morningstar, Inc. v. Super. Ct.*, 23 Cal.

14   App. 4th 676, 697 (1994) (opinions analyzing advertisements for financial products are protected

15   by the First Amendment); *Lowe v. S.E.C.*, 472 U.S. 181, 210 n.58 (1985) (consumer opinion

16   about commercial products such as loudspeakers and marketable securities are protected speech

17   under the First Amendment); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425

18   U.S. 748, 764-65 (1976) (society has "a strong interest in the free flow of commercial information

19   . . . .  So long as we preserve a predominantly free enterprise economy, the allocation of our

20   resources in large measure will be made through numerous private economic decisions.  It is a

21   matter of public interest that those decisions, in the aggregate, be intelligent and well informed.").

22        When a Facebook User says that he or she Likes certain content, posts something about it,

23   or checks-in—whether in relation to a brand, a product, an organization, or a business—that User

24   is communicating to his or her Friends an affinity for or opinion about that content.  In such a

25   circumstance, "the free flow of commercial information is indispensable."  *Va. State Bd. of*

26   *Pharmacy*, 425 U.S. at 765.

27        Secondly, because the information is republished only to the User's Friends, a group of

28   individuals with an identifiable interest in the actions of the User, that information is a matter of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

19.

public interest as to that group, even if the publication did not express a consumer opinion. As noted in *Shulman*, publications "giving information to the public for purposes of education, amusement or enlightenment" is "newsworthy" where it is a subject of "legitimate public interest." *See* 18 Cal. 4th at 225. In turn, a matter is of "legitimate public interest" if "some reasonable members of the community could entertain a legitimate interest" in it which is not "governed by the tastes or limited interests of an individual judge or juror." *Id.* Thus, even publications which merely provide "amusement" may be newsworthy if the viewing public "could entertain a legitimate interest" in them. *Id.*; *see also Montana*, 34 Cal. App. 4th at 793-96 (publishing picture of quarterback who won four Super Bowls is matter of public interest); *Dora*, 15 Cal. App. 4th at 546 (publishing video of surfing legend is matter of public interest because surfing "is of more than passing interest to some"); *New Kids on the Block v. News America Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990) (magazine survey asking which band member was subscriber's "fave" was matter of public interest because the identity was used for "informative or cultural" purpose); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 411 (2001) (finding immunity for use of little known baseball players' names and likenesses because the game is followed by "millions of people across this country" and thus there is a public interest in its history); *Paulsen v. Personality Posters, Inc.*, 299 N.Y.S. 2d 501, 507 (1968) (publication of comedian's fake presidential run matter of public interest). Here, the alleged republication was to a group with an established interest in the activities and News Feed postings of the Plaintiffs—the Plaintiffs' Friends. Coming from an individual with whom the Friend has an established relationship, the content within Sponsored Stories postings may be educational, enlightening, amusing, or all three. Thus, "reasonable members" of the Facebook community— i.e., Plaintiffs' Friends—have a "legitimate public interest" in the information Plaintiffs have allegedly posted, and that information is "newsworthy" for purposes of the misappropriation claim. This is fatal to Plaintiffs' claims.

Facebook's free speech rights also are implicated by Plaintiffs' claims. As confirmed recently by the Court of Appeal, "[p]ublication of matters in the public interest, which rests on the right of the public to know, and the freedom of the press to tell it, cannot ordinarily be

Cooley LLP
Attorneys At Law
San Francisco

20.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

1   actionable." *See Rolling Stone*, 181 Cal. App. 4th at 681 (rejecting claim for misappropriation

2   under section 3344) (citations omitted); *see also Shulman*, 18 Cal. 4th at 225 (A publisher has

3   "broad discretion to publish matters that are of legitimate public interest.") (citation omitted);

4   *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) ("Freedom of the press is a 'fundamental personal

5   right' which 'is not confined to newspapers and periodicals [and] . . . comprehends every sort of

6   publication which affords a vehicle of information and opinion.") (citation omitted).   By

7   republishing a User's name or likeness along with the actions the User has taken—Liking content,

8   checking in at different locations, playing games, or Posting content—Facebook provides a forum

9   for authentic recommendations by persons who, without pecuniary motive, have expressed their

10  approval of a particular product or service.  This serves a particularly useful purpose inasmuch as

11  the information is republished only to the User's group of Friends—persons with whom the User

12  has an established relationship and for whom a User's opinion may be particularly informative or

13  valuable or for whom the information may be amusing.  Facebook has a right to republish

14  information on a topic that the courts have explicitly recognized is a matter of legitimate interest.

15  On these bases, Plaintiffs' cause of action for misappropriation falls under section 3344(d)'s

16  "newsworthy" exemption and should be dismissed with prejudice.

17          This construction of section 3344 is further supported by the doctrine of constitutional

18  avoidance.  Where an otherwise valid interpretation of a statute raises serious constitutional

19  problems and an alternative interpretation is "fairly possible," the court must construe the statute

20  to avoid the constitutional problem.  *See INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001)

21  (superseded by statute on other grounds); *see also Santa Clara Cnty. Local Transp. Auth. v.

22  Guardino*, 11 Cal. 4th 220, 230 (1995).  As shown above, Plaintiffs' claim under section 3344

23  raises serious constitutional questions under the First Amendment and Article 1, section 2 of the

24  California Constitution.  *See Blatty v. New York Times Co*., 42 Cal. 3d 1033, 1041 (1986).  The

25  First Amendment provides broad protection for the fundamental right of free speech, and the

26  California Constitution "independently establishes a zone of protection that is broader still."  *See

27  id*.  Plaintiffs' claim puts at issue the right of Facebook Users to express their consumer opinions

28  and communicate with their Friends, as well as the right of Facebook to republish that

Cooley LLP
Attorneys At Law
San Francisco

21.

**FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK**

information, as a subject in which the audience has a legitimate interest.  The Court should construe section 3344 so that Facebook's republication of User communications falls within the "newsworthy" exemption and avoid these constitutional concerns.

**D.      Plaintiffs Fail to State a Claim for Violation of California Business and Professions Code Section 17200.**

For several reasons, Plaintiffs' Second Claim for Relief under California's Unfair Competition Law (the "UCL"), Business and Professions Code section 17200, fails to state a claim upon which relief can be granted.

*First*, Plaintiffs lack standing to sue under the UCL because they have not alleged, and cannot allege, that they "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204; *see also Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 227 (2006); *Animal Legal Defense Fund v. Mendes,* 160 Cal. App. 4th 136, 145, 148 (2008).  Plaintiffs' conclusory allegation that "Plaintiffs each lost money to which they were entitled in the form of compensation for the use of their names and interest" (Compl. ¶ 77) and their request in the Prayer for Relief for "damages … in an amount to be determined at trial" and "restitution" (Compl. ¶ 84), without *any* factual allegations suggesting that such injury exists or is imminent, is insufficient to satisfy the "injury in fact" prong of UCL standing.  *See supra* IV.A (discussing lack of injury in fact and citing authorities) *see also Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1346 (2009) (the California proposition adding the "injury in fact" requirement to the UCL referred specifically to the standing requirements of the United States Constitution, which include "actual or imminent, not 'conjectural' or 'hypothetical'" injury) (quoting *Lujan*, 504 U.S. at 560-61).  Nor have Plaintiffs satisfied the second prong of UCL standing.  Plaintiffs have not alleged that they lost any money or property, nor could they as Facebook is, and always has been, a free service.

In another putative class action against Facebook pending in this district before Judge Ware, the Court dismissed the plaintiffs' UCL claim with prejudice because "'personal information' does not constitute property for purposes of a UCL claim." *In re Facebook Privacy Litig.*, No. C 10-02389 JW, at 11 (N.D. Cal. May 12, 2011) (citing *Thompson v. Home Depot,*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

1   *Inc.*, No. 07cv1058 IEG, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007)).[7]   Judge Ware also

2   reasoned that the plaintiffs could not allege a loss of money or property because they "received

3   [Facebook's] services for free."   *Id.* at 11-12 (noting that UCL claim is limited to plaintiffs who

4   *paid for* certain services and a company discloses personal information about its consumers to the

5   public in violation of its own principles).   Similarly, here, Plaintiffs cannot allege that they lost

6   money or property as a result of the alleged conduct.

7           *Second*, Plaintiffs have not sufficiently alleged that Facebook acted "unlawfully" in

8   contravention of the UCL, which is based on the alleged violation of their statutory publicity

9   rights under Civil Code section 3344.   (Compl. ¶¶ 69-70.)   However, as shown above (*supra*

10   § IV.C), Plaintiffs have failed to allege facts sufficient to state such a claim, and thus Plaintiffs'

11   claim under the "unlawful" prong of section 17200 necessarily fails as well.   *See Whiteside v.*

12   *Tenet Healthcare Corp.*, 101 Cal. App. 4th 693, 706 (2002) ("unlawful" claim under UCL fails

13   where there is no claim based on underlying statute).

14           *Third*, Plaintiffs have not alleged facts showing that Facebook acted "unfairly" within the

15   meaning of the UCL.   California courts have held that in order to state a claim for an "unfair"

16   business practice in the context of a UCL consumer action, a plaintiff must allege facts sufficient

17   to establish: (1) substantial consumer injury; (2) that the injury is not outweighed by

18   countervailing benefits to consumers; and (3) that the injury is one that consumers could not

19   reasonably have avoided.   *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006)

20   (referring to factors under section 5 of Federal Trade Commission Act, codified at 15 U.S.C.

21   § 45(n)); *accord Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 596 (2009).   But, as

22   discussed above, Plaintiffs have not sufficiently pled *any* injury, let alone a "substantial" injury.

23   On the contrary, they acknowledge that Sponsored Stories are generated only when Facebook

24   Users voluntarily share content (Compl. ¶¶ 24) that can only "be seen by other persons with

25   whom the Member has a relationship as a Friend."   (Compl. ¶ 17.)   Plaintiffs have also failed to

26

27   _____

[7] Because this recently issued decision is not yet available in online databases, a courtesy copy is
28   attached to the concurrently filed Declaration of Jeffrey Gutkin.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

1   suggest that any such injury is "not outweighed by countervailing benefits to consumers."

2   Therefore, Plaintiffs' claim under the "unfair" prong of section 17200 should be dismissed.

3   *Fourth*, Plaintiffs have not alleged facts showing that Facebook is liable under the

4   "fraudulent" prong of section 17200.  Claims brought under the "fraud" prong must be pled with

5   particularity under Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d

6   1120, 1124 (9th Cir. 2009) (claims brought under the fraud prong of the UCL must be pled with

7   specificity, stating "with particularity the circumstances constituting fraud" including the "who,

8   what, when, where, and how' of the misconduct charged").  To state a claim, the Complaint must

9   allege with particularity facts demonstrating (1) a misrepresentation, (2) knowledge of its falsity,

10   (3) intent to induce reliance, (4) that the reliance was justified, and (5) damages.  *Id.* at 1126

11   (citing *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997)).

12   Plaintiffs' allegations that Facebook acted fraudulently are deficient in several respects.

13   Though the Complaint alleges that Facebook misrepresented Users' ability to prevent their

14   appearance in Facebook advertising because allegedly "there is no meaningful way to prevent

15   one's name, photograph, likeness or identity from appearing as an endorsement in Sponsored

16   Stories" (Compl. ¶ 71), the Complaint also admits that Sponsored Stories can be generated only if

17   a User chooses voluntarily to utilize the Post, Like, Places, or Check-in features.  (*See generally*

18   Compl. ¶¶ 17, 20-24.)  Moreover, as discussed, despite Plaintiffs' selective of omission of Help

19   Center pages, it is also clear Plaintiffs could have limited the use of their name and/or likeness in

20   Sponsored Stories through their privacy settings.  In addition, the Complaint does not allege with

21   specificity that Facebook intended to induce Plaintiffs' reliance, or the manner in which Facebook

22   purportedly induced some action by the named Plaintiffs.  Nor does the Complaint allege when

23   statements about the "Sponsored Stories" feature were purportedly made to Plaintiffs, nor when

24   their own names and/or likenesses were used, if ever.  In short, the Complaint does not allege

25   with particularity facts sufficient to demonstrate any alleged fraud, and thus fails to state a claim.

26   Finally, Plaintiffs cannot assert a claim for monetary relief.  Under the UCL, monetary

27   relief is limited to restitution, *see Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

28   1148 (2003), and Plaintiffs do not and cannot allege they paid money to Facebook.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

FACEBOOK'S MOTION TO DISMISS THE FAC
CASE NO. 11-CV-01726 LHK

E.      **Plaintiffs Fail to State a Claim for Unjust Enrichment.**

Plaintiffs' unjust enrichment claim should also be dismissed on the ground that there is no such independent cause of action in California.  *See, e.g.*, *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010) (noting "unjust enrichment is not an independent claim"); *Levine v. Blue Shield of Cal*, 189 Cal. App. 4th 1117, 1138 (2010) (dismissing unjust enrichment claim because "[t]here is no cause of action in California for unjust enrichment") (internal citations omitted); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause of action, however, or even a remedy . . . .").  Such an improperly pled claim can only survive if the court elects to reinterpret the "unjust enrichment" claim as some alternate legal theory that would give rise to a restitutionary remedy.  *See GA Escrow, LLC v. Autonomy Corp. PLC*, No. C 08-01784 SI, 2008 WL 4848036, at *7 (N.D. Cal. Nov. 7, 2008).  Thus, Plaintiffs' unjust enrichment claim does not properly state a cause of action.

Moreover, as demonstrated above, Plaintiffs have failed to allege facts sufficient to show that Facebook fraudulently obtained a benefit from Plaintiffs in violation of section 17200.  *See supra* IV.D.  Plaintiffs cannot allege entitlement to restitution because Facebook is free, and Plaintiffs have not paid money to Facebook.  Plaintiffs thus have not demonstrated any basis on which they would be entitled to restitution based on a theory of unjust enrichment.  *See, e.g.*, *Levine*, 189 Cal. App. 4th at 1138 (holding that there is no separate cause of action for unjust enrichment, and, where trial court sustained demurrer on other causes of action involving fraud or misrepresentation, plaintiffs did not demonstrate any basis on which they would be entitled to restitution under unjust enrichment theory).

V.      **CONCLUSION**

Plaintiffs' First Amended Class Action Complaint should be dismissed with prejudice.

Dated: May 18, 2011                          COOLEY LLP


By: */s/ Matthew D. Brown*
    Matthew D. Brown

Attorneys for Defendant FACEBOOK, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FACEBOOK'S MOTION TO DISMISS THE FAC**
**CASE NO. 11-CV-01726 LHK**

25.