COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. BROWN (196972) (brownmd@cooley.com)
JEFFREY M. GUTKIN (216083) (gutkinjm@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

FACEBOOK, INC.
COLIN S. STRETCH (205144) (colin@fb.com)
SANDEEP N. SOLANKI (244005) (ssolanki@fb.com)
1601 S. California Ave.
Palo Alto, CA 94304
Telephone:    (650) 853-1300
Facsimile:    (650) 543-4800

Attorneys for Defendant FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC, a corporation; and DOES 1-100,<br><br>Defendants. | Case No. 11-CV-01726 LHK (PSG)<br><br>**FACEBOOK, INC.'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**F.R.C.P. 12(b)(1), 12(b)(6)**<br><br>Date:          October 6, 2011<br>Time:          1:30 p.m.<br>Courtroom:  4<br>Judge:         Hon. Lucy H. Koh<br>Trial date:    None Set |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................ 1

STATEMENT OF RELIEF SOUGHT ............................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

I.      INTRODUCTION ............................................................................................... 2

II.     STATEMENT OF FACTS ................................................................................. 4

III.    APPLICABLE STANDARDS ........................................................................... 7

IV.     ARGUMENT ...................................................................................................... 7

     A.      Plaintiffs Have Not Alleged Injury in Fact and Lack Article III Standing. ............ 7

     B.      The Federal Communications Decency Act Bars Plaintiffs' Claims.................... 11

     C.      Plaintiffs Fail to State a Claim for Misappropriation Under  Section 3344......... 15

          1.      Plaintiffs have not alleged any actionable injury under Section 3344.................................................................................................... 15

          2.      Plaintiffs consented to the use of their names and likenesses.................. 16

          3.      The republished content is newsworthy under Section 3344(d). .............. 18

     D.      Plaintiffs Fail to State a Claim for Violation of California's UCL. ..................... 22

     E.      Plaintiffs Fail to State a Claim for Unjust Enrichment. ....................................... 25

V.      CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Animal Legal Def. Fund v. Mendes*,
  160 Cal. App. 4th 136 (2008).................................................................................... 23

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ......................................................................................... 7, 16

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
  No. CV 10-01360 SVW (PJWx), 2011 WL 2469822 (C.D. Cal. May 4, 2011).................... 14

*Bates v. State Bar of Ariz.*,
  433 U.S. 350 (1977)................................................................................................ 19

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003)........................................................................... 13, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................... 7, 8, 14, 18

*Black v. Google Inc.*,
  No. 10-02381 CW, 2010 WL 3222147 (N.D. Cal. Aug. 13, 2010) ...................................... 12

*Blatty v. New York Times Co.*,
  42 Cal. 3d 1033 (1986) ............................................................................................ 22

*Branzburg v. Hayes*,
  408 U.S. 665 (1972)................................................................................................. 22

*Brown v. Entm't Merchs. Ass'n*,
  Case No. 08-1448, 2011 WL 2518809 (U.S. June 27, 2011) ........................................ 19, 22

*Camacho v. Auto. Club of S. Cal.*,
  142 Cal. App. 4th 1394 (2006)................................................................................. 24

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003)................................................................................... 11

*Chem. Device Corp. v. Am. Cyanamid Co.*,
  No. C-89-1739 WHO, 1990 WL 56164 (N.D. Cal. Jan. 11, 1990) ................................ 14, 15

*Cohen v. Facebook, Inc.*,
  No. 10-cv-05282-RS (N.D. Cal. June 28, 2011)..................................................... 7, 10, 15, 16

*Concerned Consumers League v. O'Neill*,
  371 F. Supp. 644 (E.D. Wis. 1974).......................................................................... 20

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................................... 16

*Davis v. Ford Motor Credit Co.*,
    179 Cal. App. 4th 581 (2009) ............................................................................... 24

*Doe II v. MySpace, Inc.*,
    175 Cal. App. 4th 561 (2009) ............................................................................... 13

*Doe IX v. MySpace, Inc.*,
    629 F. Supp. 2d 663 (E.D. Tex. 2009) ................................................................. 13

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ................................................................................ 13

*Dora v. Frontline Video, Inc.*,
    15 Cal. App. 4th 536 (1993) .......................................................................... 19, 20

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ................................................................................ 15

*Dwyer v. Am. Express Co.*,
    273 Ill. App. 3d 742 (Ill. App. Ct. 1995) .............................................................. 9

*Eastwood v. Super. Ct.*,
    149 Cal. App. 3d 409 (1983) ................................................................................ 15

*Edwards v. First Am. Corp.*,
    610 F.3d 514 (9th Cir. 2010) ................................................................................ 10

*Engalla v. Permanente Med. Group, Inc.*,
    15 Cal. 4th 951 (1997) .......................................................................................... 24

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) .................................................................................. 7

*Facebook, Inc. v. Power Ventures, Inc.*,
    No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) .................... 16

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ................................................................... 11, 12, 13

*Finkel v. Facebook, Inc.*,
    No. 102578/09, 2009 N.Y. Misc. LEXIS 3021 (N.Y. Sup. Ct. Sept. 15, 2009) ..... 12

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996) .......................................................................... 15, 18

*GA Escrow, LLC v. Autonomy Corp. PLC*,
    No. C 08-01784 SI, 2008 WL 4848036 (N.D. Cal. Nov. 7, 2008) ....................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

*Gentry v. eBay, Inc.*,
  99 Cal. App. 4th 816 (2002)...................................................................................... 12

*Gionfriddo v. Major League Baseball*,
  94 Cal. App. 4th 400 (2001)...................................................................................... 21

*Gladstone Realtors v. Vill. of Bellwood*,
  441 U.S. 91 (1979) ..................................................................................................... 10

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................................... 13, 14

*Heller v. Roberts*,
  386 F.2d 832 (2d Cir. 1967)....................................................................................... 15

*In re DirecTV Early Cancellation Litig.*,
  738 F. Supp. 2d 1062 (C.D. Cal. 2010)...................................................................... 25

*In re Doubleclick Inc. Privacy Litig.*,
  154 F. Supp. 2d 497 (S.D.N.Y. 2001) .................................................................... 9, 23

*In re Facebook Privacy Litig.*,
  No. C 10-02389 JW, 2011 WL 2039995 (N.D. Cal. May 12, 2011) .......................... 23

*In re JetBlue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ......................................................................... 9

*INS v. St. Cyr*,
  533 U.S. 289 (2001) ................................................................................................... 22

*Jones v. Corbis Corp.*,
  No. 10-8668 SVW(CW) (C.D. Cal. May 25, 2011) ................................................... 18

*Jurin v. Google Inc.*,
  695 F. Supp. 2d 1117 (E.D. Cal. 2010) ......................................................... 11, 12, 14

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)..................................................................................... 24

*LaCourt v. Specific Media, Inc.*,
  No. SACV 10-1256-GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)............... 8, 9

*Lee v. Chase Manhattan Bank*,
  No. C07-04732 MJJ, 2008 WL 698482 (N.D. Cal. Mar. 14, 2008) ...................... 9, 10

*Levine v. Blue Shield of Cal*,
  189 Cal. App. 4th 1117 (2010)................................................................................... 25

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
  350 F.3d 1018 (9th Cir. 2003)....................................................................................... 8

Cooley LLP
Attorneys At Law
San Francisco

iv.

**Facebook's Motion to Dismiss the SAC
Case No. 11-CV-01726 LHK (PSG)**

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
  638 F.3d 644 (9th Cir. 2011)...................................................................... 10

*Lowe v. S.E.C.*,
  472 U.S. 181 (1985).................................................................................. 20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................. 7, 8, 10, 23

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004)................................................................... 25

*Montana v. San Jose Mercury News, Inc.*,
  34 Cal. App. 4th 790 (1995)............................................................... 19, 20

*Morningstar, Inc. v. Super. Ct.*,
  23 Cal. App. 4th 676 (1994)..................................................................... 20

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001)....................................................................... 7

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009)..................................................................... 12

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  745 F. Supp. 1540 (C.D. Cal. 1990) .................................................... 20, 21

*Newcombe v. Adolf Coors Co.*,
  157 F.3d 686 (9th Cir. 1998)..................................................................... 15

*Paradise Hills Associates. v. Procel*,
  235 Cal. App. 3d 1528 (1991).................................................................. 20

*Paulsen v. Personality Posters, Inc.*,
  299 N.Y.S.2d 501 (1968).......................................................................... 21

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007)................................................................... 11

*Perlman v. Zell*,
  938 F. Supp. 1327 (N.D. Ill. 1996) ........................................................... 15

*Raines v. Byrd*,
  521 U.S. 811 (1997).................................................................................. 10

*Ramey v. Darkside Prods., Inc.*,
  No. 02-730 (GK), 2004 WL 5550485 (D.D.C. May 17, 2004) ............................ 14

*Robins v. Spokeo, Inc.*,
  No. CV10-05306 ODW (AGRx), 2011 WL 597867 (C.D. Cal. Jan. 27, 2011).................. 10

*Santa Clara Cnty. Local Transp. Auth. v. Guardino,*
   11 Cal. 4th 220 (1995) ........................................................................................ 22

*Shulman v. Group W Prods., Inc.,*
   18 Cal. 4th 200 (1998) ............................................................................ 19, 20, 22

*Sorrell v. IMS Health Inc.,*
   Case No. 10-799, 2011 WL 2472796 (U.S. June 23, 2011) ............................ 19, 20

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ................................................................................................ 7

*Stewart v. Rolling Stone LLC,*
   181 Cal. App. 4th 664 (2010) .......................................................................... 19, 22

*Summers v. Earth Island Inst.,*
   129 S. Ct. 1142 (2009) ........................................................................................ 10

*Thompson v. Home Depot, Inc.,*
   No. 07cv1058 IEG, 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) .................. 9, 23

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,*
   594 F.2d 730 (9th Cir. 1979) ................................................................................. 7

*Troyk v. Farmers Grp., Inc.,*
   171 Cal. App. 4th 1305 (2009) ............................................................................ 23

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*
   425 U.S. 748 (1976) ............................................................................................ 20

*Whiteside v. Tenet Healthcare Corp.,*
   101 Cal. App. 4th 693 (2002) .............................................................................. 23

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) .............................................................................................. 8

*Young v. Facebook, Inc.,*
   No. 10-cv-03579-JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ............ 12

**STATUTES**

15 U.S.C. § 45(n) ................................................................................................. 24

47 U.S.C. § 230 ............................................................................................. passim

Cal. Bus. & Prof. Code
   § 17200 ........................................................................................................ passim
   § 17204 .................................................................................................... 10, 23

Cal. Civ. Code § 3344 .................................................................................... passim

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

**FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)**

**OTHER AUTHORITIES**

CAL. CONST., ART. I § 2 ......................................................................................... 22

Federal Rule of Civil Procedure
    9(b) ................................................................................................................... 24
    12(b)(1) ............................................................................................................. 1, 7
    12(b)(6) ............................................................................................................. 1, 7

RESTATEMENT (SECOND) OF TORTS § 652D ............................................................ 19

U.S. CONST. ART. III .................................................................................... passim

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3 PLEASE TAKE NOTICE that on October 6, 2011 at 1:30 p.m. (which is the first

4 available date for hearing this Motion) or as soon thereafter as this Motion may be heard in the

5 above-entitled court, located at 280 South First Street, San Jose, California, in Courtroom 4, 5th

6 Floor, Defendant Facebook, Inc. ("Facebook") will move to dismiss the Second Amended Class

7 Action Complaint (the "SAC") filed by Plaintiffs. Facebook's Motion is made pursuant to

8 Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice of Motion and

9 Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Ana

10 Yang Muller and Jeffrey Gutkin, the Request for Judicial Notice, and all pleadings and papers on

11 file in this matter, and upon such other matters as may be presented to the Court at the time of

12 hearing or otherwise.

13

**STATEMENT OF RELIEF SOUGHT**

14 Facebook seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and

15 12(b)(6) dismissing with prejudice Plaintiffs' SAC and each of the three Claims for Relief alleged

16 therein for lack of standing and failure to state a claim upon which relief can be granted.

17

**STATEMENT OF ISSUES TO BE DECIDED**

18 1. Because Plaintiffs fail to allege an injury in fact that gives them standing under

19 Article III of the United States Constitution, should the SAC be dismissed?

20 2. Because Facebook is entitled to immunity under the Communications Decency

21 Act, 47 U.S.C. § 230, should the SAC be dismissed?

22 3. Because the SAC fails to state a claim upon which relief can be granted under the

23 California statute on misappropriation of the right of publicity, Civil Code Section 3344, should

24 the First Claim for Relief be dismissed?

25 4. Because the SAC fails to state a claim upon which relief can be granted under

26 Business and Professions Code Section 17200, should the Second Claim for Relief be dismissed?

27 5. Because the SAC fails to state a claim upon which relief can be granted under the

28 theory of unjust enrichment, should the Third Claim for Relief be dismissed?

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Facebook is a social networking website that enables people to connect with their friends, families, and communities.  Facebook is free.  To join, Facebook users ("Users") need only provide their name, age, gender, and a valid e-mail address, and agree to Facebook's terms of service.  Users do not have to post any content to use the site, but if they choose to, they can share virtually anything through Facebook—vacation photos, news about their everyday lives, links to websites they think are interesting, or opinions about world events.  Users can communicate to their friends that they "Like" a local restaurant, a politician, a brand of shoes, or an article in the area newspaper.  Users can also share which applications they use and games they play on the Facebook platform.  With Facebook's location-sharing features, Users can tell their friends and family where they are and "Check In" at the places they frequent.  Although there are many other social media and interactive sharing sites, people across the globe use Facebook because of the innovative ways it enables them to connect, communicate, and share their interests and their lives.

The Second Amended Complaint ("SAC") is brought on behalf of a putative nationwide class of Facebook Users who took some action on the site that was shared with their Friends, consistent with their privacy settings, and who later had their action republished to the exact same audience as a story sponsored by a Facebook advertiser—a "Sponsored Story."  For instance, each named Plaintiff "Liked" a Facebook page on the site (specifically, pages associated with a charitable organization, a sporting event, a software program, or a snack food).  Plaintiffs admit that they voluntarily clicked a button labeled "Like" associated with this content.  They also admit that these "Likes" were then published to their Friends, and they do not object to that publication in any way.  However, according to Plaintiffs, when *the same information was republished to the very same Friends as a Sponsored Story*, Facebook (1) violated their rights of publicity under Civil Code Section 3344, (2) violated the Unfair Competition Law, Business and Professions Code Section 17200 ("UCL"), and (3) was unjustly enriched.  Though Sponsored Stories were introduced in January of this year, under one of Plaintiffs' methods for estimating damages, Plaintiffs claim their damages to date approach, if not exceed, *one trillion dollars*.

Plaintiffs' claims are insufficient as a matter of law and should be dismissed with prejudice.  *First*, and fatal to all claims, Plaintiffs have not alleged an injury in fact that would give them standing under Article III of the U.S. Constitution.   Although Plaintiffs make conclusory allegations that they have been deprived of "the monetary value of having his or her endorsement appear in [an] advertisement," they allege no facts suggesting their names or likenesses have any commercial value.  Courts have held private litigants do not necessarily have a property interest in their names and likenesses.  Additionally, Plaintiffs make other allegations contradicting the claim that they could have been paid for their alleged endorsements.

*Second*, the federal Communications Decency Act ("CDA"), 47 U.S.C. § 230, bars all three claims.  As many courts have held, Congress enacted CDA Section 230 to promote the development of the Internet and to protect it as an active forum for free and open speech.  Accordingly, the CDA grants websites broad immunity for publishing information provided by Users.  Plaintiffs' allegations make clear that they themselves shared each piece of information they complain of and that Facebook, at most, performed an editorial function by republishing this User-provided information—conduct which uniformly receives CDA Section 230 immunity.

*Third*, Plaintiffs' claim under California Civil Code Section 3344 should be dismissed for failure to state a claim.  As stated, the SAC fails to allege the required element of injury.  Only a few days ago, a court in this District dismissed similar Section 3344 claims against Facebook precisely because the plaintiffs' conclusory claims of injury were inadequate and lacked "a plausible supporting factual basis."  Further, Plaintiffs consented to the alleged use of their names and profile pictures that they now challenge.  Under Facebook's terms of service—to which all Users agree by registering for and continuing to use the site—Users expressly authorize the use of their names and profile pictures in association with "commercial, sponsored or related content," subject to the Users' privacy settings.   Additionally, Section 3344(d)'s exemption for "newsworthy" content protects Facebook's republication of User comments, activities, and opinions to the audience chosen by the User—i.e., the User's Facebook Friends.

*Fourth*, regarding Plaintiffs' UCL claims, Plaintiffs cannot (and do not) allege facts showing that they suffered "injury in fact" or that they lost money or property.  As a court in this

1   District recently held, because Facebook is a free service, parties in Plaintiffs' precise position

2   lack standing to bring a claim under the UCL.  Moreover, the SAC fails to allege facts that would

3   support a claim under the "unlawful," "fraudulent," or "unfair" prongs of Section 17200.

4       *Finally*, Plaintiffs' unjust enrichment claim should be dismissed because there is no such

5   independent cause of action in California, and Plaintiffs' claim cannot give rise to a restitutionary

6   remedy.  Facebook is a free service and Plaintiffs have not paid any money to Facebook.

7       Plaintiffs have now twice amended their complaint, once with the benefit of having

8   Facebook's first motion to dismiss in hand.  The Court should dismiss the SAC with prejudice.

9   **II.    STATEMENT OF FACTS**[1]

10      Facebook operates a free social networking website that permits anyone with access to a

11  computer and an Internet connection to create a profile page, to find and connect with their

12  friends and loved ones around the world, and, if they so choose, to share information about

13  themselves and their lives.  (SAC ¶ 13.)  This information can include almost anything, such as

14  "text, images, audio and video" selected by the Facebook User.  (*Id*.)  Users join Facebook to

15  "establish social network relationships within the site," to share with their friends, and to view

16  content "produced by other Members."  (*Id*.)  In Plaintiffs' words, Facebook has become "the de

17  facto method of communication among friends for a significant portion" of its Users.  (*Id*.)

18      To join Facebook, Users must register, agree to the site's terms of service, and provide

19  their names[2] and a valid email address; they may, but need not, upload a profile image.[3]  (SAC

20  ¶ 16.)  Once Users register, they may begin connecting with other Users by inviting them to

21

22  [1] This Statement of Facts is based on the allegations in the Second Amended Complaint, which Facebook assumes as true for the purposes of this Motion but does not thereby admit.

23  [2] Several Plaintiffs did not register with their legal names.  Angel Fraley registered as Angel

24  Frolicker, Susan Mainzer as Susan von Seggern, and James Duval as Jimmy Bassnutt Duval. (SAC ¶¶ 6, 7, 76.)

25  [3] Users can change their profile images at any time, and they can and do use a range of photos for

26  their profile images, including pets, cars, cartoon characters, nature scenes, etc.  Plaintiff William Tait, for example, admits that his profile photo "does not show his face."  (SAC ¶ 81; *see also id*.

27  Ex. 7.)  James Duval allegedly uploaded a profile image that "clearly bears his likeness," but the profile photo in the SAC appears to be unrecognizable.  (*Id*. ¶ 76, Ex. 6.)  Plaintiff Paul Wang

28  does not allege he uploaded any profile image.  (*Id*. ¶¶ 73-75.)

become Facebook "Friends."  (*Id.* ¶¶ 17-18.)  If the other User accepts, he or she has "explicit privileges" to see the information that the User shares on the site and to send the User messages.  (*Id.* ¶ 15.)  However, even among a User's Friends, a User can control who can see the content they post via their privacy settings.  (*See* Declaration of Ana Yang Muller ("Yang Decl."), filed herewith, ¶ 5, Ex. D.)  For example, Users can choose to share specific pieces of content with Friends of Friends, Friends only, a customized list of Friends, or no one at all.  (*Id.*)

Facebook offers Users an array of options for sharing content and communicating.  Chief among these is "Posting," whereby Users can add content onto their profile page, such as statements of what is on their minds (called "status updates"), messages to their Friends, photos, links to other websites, videos, etc.  (SAC ¶¶ 15, 20, 23.)  These Posts are shown to a User's Facebook Friends in accordance with the User's privacy settings.  (*Id.* ¶¶ 18, 20.)  Users may also communicate to their Friends that they like almost anything—e.g., Facebook pages created by politicians, products, organizations, bands, or causes, as well as content on webpages outside of Facebook—by clicking on a button labeled "Like" that is associated with that page or content.  (*Id.* ¶ 25.)  When a User "Likes" a page or content, that action appears on the User's profile page and may appear in his or her Friends' News Feeds (which are running lists of content updates posted by each of the Users' Friends), depending on the User's privacy settings.  (*Id.* ¶¶ 17, 19, 25; *see also* Yang Decl. Ex. D.)  Users may also use Facebook's location-sharing features to share where they are to their Friends.  (*Id.* ¶ 24.)  Because a location "Check-In" can be at a local coffee shop or at the dog park down the street, it may or may not include a reference to a business establishment.  (*See id.*)  That information too is posted on the User's profile page, and may subsequently appear in his or her Friends' News Feeds, depending on whether and how broadly the User has chosen to share that type of content.  (*Id.* ¶¶ 17, 20, 24.)  Additionally, Users may use applications and games created by third-party developers that allow Users to interact with their Friends, and that activity may also be shared with Friends.  (*Id.* ¶ 26.)

In January 2011, Facebook launched a new feature called "Sponsored Stories."  (*Id.* ¶ 26.)  The SAC alleges that, in certain circumstances, Facebook republishes a User's previously posted content, consisting of Likes, Check-Ins, Postings, or use of certain games or applications, along

with the User's name and/or profile image, as a story sponsored by the person, company, or organization to which the User's action related.  (*Id.*)  Although the SAC alleges these Sponsored Stories are advertisements created and developed by Facebook (*id.* ¶ 27), this inaccurate characterization of Sponsored Stories is a legal conclusion which the Court need not accept as a true factual allegation.  (*See infra* § III.)  Regardless, the SAC admits (i) Sponsored Stories may be created *only* when the User's original Posting already "relates to an advertiser" and (ii) Sponsored Stories respect the User's privacy settings, meaning they are *only* shown to the Friends that the User has authorized to view the content in the first place.  (*Id.* ¶¶ 25, 26.)  As an example, the SAC alleges that the statement "Susan von Seggern likes UNICEF," along with her profile picture, were republished to her Friends as a Sponsored Story.  (*Id.* ¶¶ 71, 72.)  But this is the very same statement that was previously published to the same audience (her Facebook Friends) when she voluntarily "clicked on a Facebook 'Like' on the facebook.com page for UNICEF . . . to support UNICEFF [sic] in a campaign to reduce the deaths of children."  (*Id.* ¶ 70; *see also id.* ¶¶ 25, 26, 88.)  An example of User-created content that appears on the User's profile page and in Friends' News Feeds (above the arrow), and a corresponding Sponsored Story displayed to the same Friends (below the arrow), looks like this:



*See also* SAC, Ex. 6 (Sponsored Story stating "Jimmy Bassnutt Duval likes PopCorners").

Plaintiffs allege that the republication of content they shared with their Friends, including

their names or profile images alongside that content, to the same Friends they chose to share it with initially, constitutes a misappropriation of their right of publicity under Section 3344, a violation of the UCL, and actionable unjust enrichment.  (SAC ¶¶ 116, 121, 131.)

### III.   APPLICABLE STANDARDS

A court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(1) based on lack of subject matter jurisdiction, and the motion may attack either the complaint on its face or the existence of jurisdiction in fact.  *See Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 732-33 (9th Cir. 1979).  If a complaint does not establish standing under Article III of the U.S. Constitution, a federal court does not have subject matter jurisdiction to hear the case.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).  A court may dismiss a claim under Rule 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion under Rule 12(b)(6), "all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them."  *Id*.  However, as the Supreme Court recently emphasized, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient."  *Cohen v. Facebook, Inc.*, No. 10-cv-05282-RS, slip op. at 3 (N.D. Cal. June 28, 2011) (citing *Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996)).[4]

### IV.   ARGUMENT

#### A.   Plaintiffs Have Not Alleged Injury in Fact and Lack Article III Standing.

It is axiomatic under Article III that Plaintiffs must allege an injury in fact to pursue a claim in federal court.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (plaintiffs

---

[4] A courtesy copy is attached as Exhibit A to the Declaration of Jeffrey Gutkin ("Gutkin Decl.").

must allege that (1) they suffered injury in fact; (2) there is a causal connection between the injury and the alleged conduct; and (3) the injury may be redressed by a favorable decision); *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (an injury in fact is one that is "distinct and palpable," not "abstract").   Moreover, in a class action, each plaintiff must establish that they "personally have been injured" and thus, have standing to bring the cause of action.  *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (citation omitted).  Plaintiffs have not adequately pled any injury and thus, the SAC should be dismissed.

The SAC admits that, in each instance, Sponsored Stories may result from a User's voluntary use of Facebook features and are shown to the same Friends with whom the User previously chose to share the same information (e.g., "Susan von Seggern likes UNICEF").  (*Id.* ¶¶ 18, 25-26, 72; *see also* Yang Decl. Ex. B.)  The SAC never explains how taking information a User has voluntarily shared with a specific audience, and republishing it to the *same* audience, could injure anyone.   Indeed, given that the content of the User's voluntary Post (i.e., communication with her Facebook Friends) is virtually identical to the content of the Sponsored Story, as shown in the example above, no plausible allegation of injury is possible.

At most, the SAC makes a wholly conclusory claim regarding Plaintiffs' injuries, alleging that Plaintiffs were "deprived [of] the monetary value of having his or her endorsement appear," in which they purportedly had an "expectation interest."  (SAC ¶¶ 47, 63.)  These assertions are, at most, legal conclusions that the Court is not bound to accept.  *See, e.g.*, *Twombly*, 550 U.S. at 555 (noting the court need not accept the truth of legal conclusions couched as factual allegations); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 WL 1661532, at *3 (C.D. Cal. Apr. 28, 2011) ("Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth.").  Plaintiffs allege no facts suggesting that their names or likenesses have any commercial value or that they could have received payment for their names or likenesses, but for Facebook's alleged conduct.  Even if Plaintiffs had made this highly implausible allegation, numerous courts have rejected the notion that private individuals have a *property* interest in their names and likenesses.  *See LaCourt*, 2011 WL 1661532, at *4-5 (plaintiffs failed to adequately allege injury in fact because they provided no

1    facts showing they "ascribed an economic value" to their personal information or were deprived

2    of its value); *Thompson v. Home Depot, Inc*., No. 07-cv-1058 IEG (WMc), 2007 WL 2746603, at

3    *3 (S.D. Cal. Sept. 18, 2007) (use of plaintiff's personal information, including a name, for

4    marketing purposes did not confer a property interest to plaintiff under Cal. Bus. & Prof. Code

5    Section 17200); *In re JetBlue Airways Corp. Privacy Litig*., 379 F. Supp. 2d 299, 327 (E.D.N.Y.

6    2005) ("there is [] no support for the proposition that an individual passenger's personal

7    information has or had any compensable value in the economy at large"); *Dwyer v. Am. Express

8    Co*., 273 Ill. App. 3d 742, 749 (Ill. App. Ct. 1995) (cardholder name has little or no intrinsic value

9    apart from its inclusion on a categorized list; instead, "[d]efendants create value by categorizing

10   and aggregating" the names); *see also infra* § IV.D (standing requirement of UCL).

11       This analysis is not altered by Plaintiffs' claim that friend-based endorsements generate

12   better results than other sponsored content.  That Facebook earns revenues from Sponsored

13   Stories does not imbue Plaintiffs' names or likenesses with a property interest that did not

14   otherwise exist.  *See LaCourt*, 2011 WL 1661532, at *2 (rejecting claim that "[the plaintiffs']

15   personal information has discernable value, both to Defendant and to Plaintiffs and Class

16   Members"); *In re Doubleclick Inc. Privacy Litig*., 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001)

17   (website's advertising revenue from personal information not an "economic loss to the subject").

18       Plaintiffs' newfound assertions that they did not have a true affinity for the items they

19   elected to "Like" (*e.g.*, SAC ¶ 25) only *confirms* their lack of standing.  If Plaintiffs did not

20   actually like the products they "Liked" on Facebook, how could they have been "deprived of the

21   monetary value of" making these alleged endorsements?  (*See, e.g.*, *id.* ¶ 66 (Angel Fraley clicked

22   "Like" button "not because she likes Rosetta Stone"), ¶ 73 (Paul Wang clicked "Like" button "not

23   because he had an affinity for Warrior Dash—in fact, Mr. Wang had minimal familiarity with the

24   advertiser").)  Even in the fictional construct of Plaintiffs' claims of injury, *Plaintiffs could never

25   have been paid to endorse products they allege they do not actually endorse*.

26       Nor can Plaintiffs save their claim by arguing that a mere allegation of a statutory

27   violation confers standing.  Courts have repeatedly rejected that contention.  *Lee v. Chase

28   Manhattan Bank*, No. C07-04732 MJJ, 2008 WL 698482, at *5 (N.D. Cal. Mar. 14, 2008) ("[T]he

1   mere allegation of a violation of a California statutory right, without more, does not confer Article

2   III standing.  A plaintiff invoking federal jurisdiction must also allege some actual or imminent

3   injury resulting from the violation . . . ." (citing *Lujan*, 504 U.S. at 560-61)); *see also Robins v.*

4   *Spokeo, Inc.*, No. CV10-05306 ODW (AGRx), 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011)

5   (website's alleged statutory violation insufficient for standing purposes without allegations of

6   "actual or imminent" harm); *cf. Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 656

7   (9th Cir. 2011) (noting "less tangible forms of injury, such as the deprivation of an individual

8   right conferred by statute" *may* confer Article III standing if the harm is "sufficiently

9   particularized and concrete to demonstrate injury-in-fact").  This principle flows from the often

10  cited maxim that a plaintiff has standing only if he or she suffers "a distinct and palpable injury to

11  himself." *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (citation omitted);

12  *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article

13  III's standing requirements by statutorily granting the right to sue to a plaintiff who would not

14  otherwise have standing."); *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009)

15  ("[I]njury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.").

16          Even if this Court were to follow decisions which find Article III standing based on

17  alleged violation of a statute, which it should not, Plaintiffs have failed to meet that standard.

18  Those decisions look to the statute's text to determine whether a plaintiff has alleged all the

19  required elements.  *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (court

20  must look to statute's text to determine whether plaintiffs alleged violation that conferred Article

21  III standing).  Plaintiffs however, have not alleged the injury necessary to state a claim under

22  either Section 3344 or the UCL.  Both statutory provisions specifically require proof of injury to

23  state a claim.  *See* Cal. Civ. Code § 3344(a) (using the word "injured" four times to state that

24  defendants may only be liable to "the person or persons injured"); Cal. Bus. & Prof. Code

25  § 17204 (requiring both injury in fact and a loss of money or property to state a claim).  Indeed, a

26  court in this District very recently held, in a case against Facebook, that an alleged violation of

27  Section 3344 without a showing of harm with "a plausible supporting factual basis" failed to

28  plead a cognizable injury as a matter of law.  *Cohen*, No. 10-cv-05282-RS, slip op. at 9.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

1    Because Plaintiffs have not alleged injury in fact, the SAC should be dismissed.

2    **B.      The Federal Communications Decency Act Bars Plaintiffs' Claims.**

3         Under Section 230 of the CDA, "[n]o provider or user of an interactive computer service

4    shall be treated as the publisher or speaker of any information provided by another information

5    content provider." 47 U.S.C. § 230(c)(1). Section 230 precludes any application of state law that

6    interferes with this rule, providing that "[n]o cause of action may be brought and no liability may

7    be imposed under any State or local law that is inconsistent with this section." *Id.* § 230(e)(3).

8    Facebook is entitled to CDA Section 230 immunity here because Plaintiffs seek to hold Facebook

9    liable for information provided by another party—namely, Plaintiffs themselves.

10        In enacting the CDA, Congress sought "to promote the continued development of the

11   Internet and other interactive computer services and other interactive media" and "to preserve the

12   vibrant and competitive free market that presently exists for the Internet and other interactive

13   computer services, unfettered by Federal or State regulation." 47 U.S.C. §§ 230(b)(1)–(2). These

14   aims include the preservation of "the free-flowing nature of Internet speech and commerce . . . ."

15   *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175

16   (9th Cir. 2008). As a result, Section 230 "provides broad immunity [to websites that publish]

17   content provided primarily by third parties." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119,

18   1123 (9th Cir. 2003). "[C]lose cases . . . must be resolved in favor of immunity, lest we cut the

19   heart out of section 230 . . . . [S]ection 230 must be interpreted to protect websites not merely

20   from ultimate liability, but from having to fight costly and protracted legal battles." *See*

21   *Roommates.com*, 521 F.3d at 1174-75.

22        Courts have held that Section 230 bars claims alleging misappropriation of name and

23   likeness (right of publicity). *See Carafano*, 339 F.3d at 1125 (upholding Section 230 immunity

24   for interactive dating website against misappropriation claim); *Perfect 10, Inc. v. CCBill LLC*,

25   488 F.3d 1102, 1118-19 (9th Cir. 2007) (affirming website's Section 230 immunity against right

26   of publicity claims, noting "Congress's expressed goal of insulating the development of the

27   Internet from various state-law regimes"). In fact, CDA immunity encompasses all state statutory

28   and common law causes of action. *See Perfect 10*, 488 F.3d at 1118-19 (unfair competition and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

false advertising); *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (unjust enrichment, fraud, and other claims).  And courts have recognized that CDA immunity is a proper ground on which to grant a motion to dismiss.  *See, e.g.*, *Young v. Facebook, Inc.*, No. 10-cv-03579-JF/PVT, 2010 WL 4269304, at *5 (N.D. Cal. Oct. 25, 2010); *Black v. Google Inc.*, No. 10-02381 CW, 2010 WL 3222147, at *3 (N.D. Cal. Aug. 13, 2010); *Jurin*, 695 F. Supp. 2d at 1122-23; *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-58 (4th Cir. 2009) (courts should "resolve the question of § 230 immunity at the earliest possible stage of the case" (citing *Roommates.com*, 521 F.3d at 1175)).

CDA immunity requires (1) the defendant be a provider or user of an interactive computer service, (2) the cause of action treat the defendant as a publisher or speaker of the information, and (3) the information be provided or developed by another information content provider.  *See Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 830 (2002).  These elements are met here.

*First*, Facebook is undoubtedly an "interactive computer service," defined as "any information service . . . that provides or enables computer access by multiple users to a computer server . . . ."  *See* 47 U.S.C. § 230(f)(2); *Young*, 2010 WL 4269304, at *5 (finding Facebook is an interactive computer service and granting motion to dismiss under Section 230); *Finkel v. Facebook, Inc.*, No. 102578/09, 2009 N.Y. Misc. LEXIS 3021, at *3-4 (N.Y. Sup. Ct. Sept. 15, 2009) (granting Facebook's motion to dismiss under Section 230); *see also Roommates.com*, 521 F.3d at 1162 n.6 ("[T]he most common interactive computer services are websites.").

*Second*, Plaintiffs' claims seek to treat Facebook as the publisher or speaker of the content at issue.  Indeed, Plaintiffs' entire case rests on the notion that Facebook republished content that Plaintiffs chose to share with Friends.  (SAC ¶ 88.)

*Third*, the information was provided or developed by other information content providers—Plaintiffs themselves—and not Facebook.  The SAC specifically alleges that "[e]ach Plaintiff's name and photo had been provided to Facebook earlier" by Plaintiffs (*id.* ¶ 55) and that each Plaintiff appeared in a Sponsored Story only after choosing to share that he or she "Liked" a page or content associated with that story (*id.* ¶ 26; *see also id.* ¶¶ 17, 18, 25, 27 (alleging that Sponsored Stories are shown only to a User's Facebook Friends, and display the *same message*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

1    ("Angel Frolicker likes Rosetta Stone") previously displayed in their Friends' News Feed)).

2        Thus, according to the SAC, Plaintiffs provided the content at issue, including their

3    names, profile images, and opinions about third-party content, and Plaintiffs determined the

4    audience to which it was published (if at all).  The law is clear that when a website user selects

5    which information to publish, the user constitutes "another information content provider" under

6    Section 230.  *See Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197 (N.D. Cal. 2009) (website

7    operator cannot be treated as publisher or speaker if "users ultimately determine what content to

8    post").  Courts have also held that Section 230 immunity applies when the content provider is the

9    plaintiff.  *See generally Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561 (2009) (upholding Section

10   230 immunity for information published by the plaintiffs); *Doe v. MySpace, Inc.*, 528 F.3d 413

11   (5th Cir. 2008); *Doe IX v. MySpace, Inc.*, 629 F. Supp. 2d 663 (E.D. Tex. 2009).

12       Plaintiffs' new claim that they did not have a true affinity for the content they "Liked" and

13   clicked the "Like" button for various reasons ("to get discounts on products, support social

14   causes, or just to see a humorous image") (SAC ¶ 25), does not affect Facebook's immunity.

15   Facebook merely republished the true statement that each Plaintiff "Liked" certain content.  This

16   is a statement that *automatically* was eligible to appear in their Friends' News Feeds when they

17   clicked on the "Like" button, and that Plaintiffs have never alleged was a misappropriation of

18   their names or likenesses.  To receive CDA immunity, Facebook is not obligated to ascertain the

19   potentially varied intentions of Users who "Like" content (nor could it conceivably do so), just as

20   websites are not obliged to confirm the accuracy of other user-provided statements.  *See*

21   *Roommates.com*, 521 F.3d at 1171-72 (claim that websites "failed to review each user-created

22   profile to ensure that it wasn't defamatory . . . is precisely the kind of activity for which Congress

23   intended to grant absolution").

24       Further, Plaintiffs' allegation that Facebook "combined all of the respective elements"

25   into a Sponsored Story (SAC ¶ 57) does not alter the analysis.  Those actions—including

26   increasing the prominence of Plaintiffs' stories that appeared in News Feeds—are well within the

27   editorial function for which websites receive immunity.  *See Batzel v. Smith*, 333 F.3d 1018, 1031

28   n.18 (9th Cir. 2003) (explaining that "the exercise of a publisher's traditional editorial

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

functions—such as deciding whether to publish, withdraw, postpone or alter content do not transform an individual into a 'content provider' within the meaning of § 230" (internal quotation marks and citation omitted)); *Jurin*, 695 F. Supp. 2d at 1122 ("[s]o long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process"); *Asia Econ. Inst. v. Xcentric Ventures LLC*, No. CV 10-01360 SVW (PJWx), 2011 WL 2469822, at *6 (C.D. Cal. May 4, 2011) ("Increasing the visibility of a statement is not tantamount to altering its message . . . . Absent a changing of the [] substantive content that is visible to consumers, liability cannot be found."); *Ramey v. Darkside Prods., Inc.*, No. 02-730 (GK), 2004 WL 5550485, at *7 (D.D.C. May 17, 2004) (defendant not an information content provider because it edited ads on website).

Nor is the Court required to accept Plaintiffs' unfounded allegations that Sponsored Stories are "original and unique content created and developed in whole or in part by [Facebook]." (SAC ¶ 59.) *First*, the SAC's use of the terms "develop" and "create" do nothing more than parrot the elements of Section 230. *See* 47 U.S.C. § 230(f)(3) (information content provider is someone responsible for "creation or development of content"). The Court need not accept legal conclusions that are unsupported by factual allegations. *See, e.g.*, *Twombly*, 550 U.S. at 555; *see also Goddard*, 640 F. Supp. 2d at 1196 (rejecting plaintiff's allegations that defendant "collaborates in the development of the illegal content" as a "formulaic recitation of the elements" under the CDA, which "will not do") (citation omitted). *Second*, the generalized claim that Facebook creates or develops Sponsored Stories is contradicted by other allegations in the SAC: Plaintiffs allege that (1) *Users* provide their names and profile images, (2) *Users* identify the content they wish to communicate to their Friends that they "Like," and (3) *advertisers* provide their company names and logos for Sponsored Stories. (SAC ¶¶ 26, 55, 56.) These specific allegations trump the generalized, and incorrect, allegations that Facebook "creates" or "develops" the Sponsored Stories for CDA Section 230 purposes. *See Chem. Device Corp. v. Am. Cyanamid Co.*, No. C-89-1739 WHO, 1990 WL 56164, at *3 (N.D. Cal. Jan. 11, 1990) ("the court is not bound to accept conclusory legal allegations in the complaint when more specific allegations in the pleadings are at variance with those conclusions") (citing *Heller v. Roberts*, 386

Cooley LLP
Attorneys At Law
San Francisco

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

14.

F.2d 832 (2d Cir. 1967)); *accord Perlman v. Zell*, 938 F. Supp. 1327, 1347 (N.D. Ill. 1996) (where specific factual allegations conflict with general allegations, the specific allegations control). *Lastly*, Facebook's Help Center—from which Plaintiffs selectively quote in their complaint (SAC ¶ 34) and of which the Court may take judicial notice—flatly contradicts Plaintiffs' contention that Facebook develops or creates Sponsored Stories. (*See* Yang Decl. Ex. E (describing how businesses and organizations can sponsor Users' stories).)

### C.  Plaintiffs Fail to State a Claim for Misappropriation Under Section 3344.

To state a claim under California Civil Code Section 3344, Plaintiffs must allege, among other things, (1) appropriation of plaintiff's name or likeness to defendant's advantage; (2) plaintiff's lack of consent; and (3) resulting injury. Cal. Civ. Code § 3344(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998); *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (1996). The SAC does not allege any injury sufficient to state a Section 3344 claim, and Plaintiffs consented to the use of their names and likenesses in sponsored content. Further, Plaintiffs' claim fails because Facebook's actions are protected by the "newsworthy" exemption under the statute. Accordingly, the Court should dismiss the claim as a matter of law.

### 1.  Plaintiffs have not alleged any actionable injury under Section 3344.

As discussed above, *supra* Section IV.A, Plaintiffs fail to allege facts supporting any actionable injury. *See* Cal. Civ. Code § 3344(a) (using the term "injured" four separate times to describe who may recover under the statute); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001); *Eastwood v. Super. Ct.*, 149 Cal. App. 3d 409, 417 (1983); *Cohen*, No. 10-cv-05282-RS, slip op. at 8-9 (plaintiffs must allege facts supporting injury in addition to alleging that their name or likeness was misappropriated in violation of the statute). Although the SAC contains the conclusory allegation that Plaintiffs were "deprived [of] the monetary value" they could have recovered for the use of their names or likenesses (SAC ¶ 63), Plaintiffs plead no facts in support of this legal conclusion. They have not alleged that they have previously received remuneration for the use of their name or likeness, or that they have ever sought to obtain such remuneration. Moreover, Plaintiffs' newly-hatched claim that they had no affinity for the products, events, or causes they "Liked" firmly establishes that Plaintiffs could not have been

Cooley LLP
Attorneys At Law
San Francisco

15.

Facebook's Motion to Dismiss the SAC
Case No. 11-CV-01726 LHK (PSG)

compensated for the alleged use of their names or likenesses here.  Therefore, Plaintiffs have not stated a claim that is "plausible on its face."  *Ashcroft*, 129 S. Ct. at 1949.

As referenced above, another court in this District very recently struck down similar misappropriation claims against Facebook for lack of injury.   The plaintiffs in *Cohen v. Facebook, Inc.* alleged that their names and likenesses were used without their consent to promote a Facebook feature that enables Users to find other Friends.  *Cohen*, No. 10-cv-05282-RS, slip op. at 2.  The plaintiffs sued for, among other things, violation of Section 3344 and the UCL.  The court held that this alleged misuse of the plaintiffs' names and likenesses did not allege a cognizable injury "regardless of the extent to which [the use of their names and likenesses] could also be seen as an implied endorsement by them of the service."  *Id.* at 9.  The court also rejected the plaintiffs' claim that the statutory damages provided by Section 3344 constituted a cognizable injury, finding that nothing in the statute or the authority the plaintiffs cited "suggests that a plaintiff is entitled to the minimum damages award even in the absence of showing any harm."  *Id.*  Like the plaintiffs in *Cohen*, Plaintiffs here have not pled a cognizable injury, nor "a plausible supporting factual basis for any such assertion."

### 2.    Plaintiffs consented to the use of their names and likenesses.

Facebook's Statement of Rights and Responsibilities ("SRR") "governs [Facebook's] relationship with users and others who interact with Facebook."  (*See* Yang Decl. ¶ 2, Ex. A.) Those "using or accessing Facebook [] agree to this statement." (*Id.*)  As acknowledged recently by another court in this District, when a party "access[es] or us[es]" Facebook's website, these terms are binding.  *See Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 n.20 (N.D. Cal. July 20, 2010); *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1052 (N.D. Cal. 2010) (party consented to forum selection clause in website's terms of service by accessing website).  As alleged Facebook Users (SAC ¶¶ 6-10), Plaintiffs are bound by the SRR and, consequently, they have consented to the use of their names and profile images in Sponsored Stories.

As the SAC acknowledges, Section 10.1 of the SRR informs Users that "[y]ou can use your privacy settings to limit how your name and profile picture may be associated with

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

16.

commercial, sponsored, or related content (such as a brand you like) served or enhanced by us." (SAC ¶ 32 (citing SRR § 10.1).)  That section also states: "You give us permission to use your name and profile picture in connection with that content, subject to the limits you place."  (*Id.*) Thus, Plaintiffs consented to the use their names and profile images "in connection with" "sponsored content," subject to their privacy settings.

Consistent with Section 10.1, Plaintiffs and other Users can limit their appearance in Sponsored Stories via their privacy settings.  Facebook's Help Center, from which Plaintiffs quote (SAC ¶ 34), confirms this.  (Yang Decl. ¶ 3, Ex. B ("Where can I view and edit my privacy settings for sponsored content?").)[5]  This page notes that "Sponsored Stories are only delivered to your confirmed friends and *respect the privacy settings you configure for News Feed*."  (*Id.*) (emphasis added).  It also contains a link to a page giving Users more information about such privacy settings.  (*Id.*)  For example, the page explains that Users can change the privacy setting for each piece of content they post and determine whether it will appear in their Friends' News Feeds.  (*Id.* Ex. C.)  It also explains that Users can include or exclude specific Friends from viewing their content.  (*Id.* Ex. D.)  Thus, if a User selects privacy settings that restrict information, such as their Likes, from being published to their Friends' News Feed, those settings will also prevent that same information from appearing to the User's Friends as Sponsored Stories, precisely as provided in the SRR.[6]

"Consent is determined from the reasonable viewpoint of another person, not from Plaintiff's unexpressed subjective beliefs."  *Jones v. Corbis Corp.*, No. 10-8668 SVW(CW), slip

---

[5] Copies of Facebook's Statement of Rights and Responsibilities and the Help Center questions and answers are attached as Exhibits A-F to the concurrently filed Yang Declaration.

[6] Although the SAC cites a different Help Center Q&A (SAC ¶ 34), the information cited does not contradict the consent provided by Section 10.1.  In that question, entitled "Can I opt out of seeing or being featured in sponsored News Feed stories?" the answer notes that there is no global mechanism to opt out.  As the discussion in the text makes clear, that does not mean that Users may not "limit" the use of their names and profile images through their privacy settings.  Users can do that, as these judicially noticeable Help Center pages make clear.  For example, Users *can* prevent a specific story—e.g., a Like, a Check-In, or a Posting—from being republished as a Sponsored Story by "clicking the 'X' displayed in the upper right side of a story and choosing the appropriate option when prompted."  (SAC ¶ 34.)  Moreover, nothing precludes a User from immediately "unliking" content.  (Yang Decl. ¶ 7, Ex. F.)

Cooley LLP
Attorneys At Law
San Francisco

17.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

op. at 8 n.2 (C.D. Cal. May 25, 2011) (dismissing plaintiff's misappropriation claim because her objective actions implied consent to the use of her photograph) (*see* Gutkin Decl. Ex. B).  By using Facebook, clicking on the "Like" button on various pages, and choosing to share those actions with their Friends, Plaintiffs consented to the display of their names or profile images in connection with sponsored content.  Accordingly, the SAC fails to state a claim.  *See Fleet*, 50 Cal. App. 4th at 1918 (lack of consent is a required element under Section 3344).[7]

### 3. The republished content is newsworthy under Section 3344(d).

Plaintiffs' misappropriation claim also fails because the speech at issue falls within the newsworthiness exception in Section 3344(d).  As discussed above, the SAC alleges that a Sponsored Story may be created only if a User engages in some action on Facebook (e.g., Liking an item, Checking In, Posting information, or using an application or game) that he or she has chosen to share with Friends and that would therefore appear on the User's profile page and/or in Friends' News Feeds.  (SAC ¶¶ 17, 18, 24, 25, 26.)  Sponsored Stories are republished only to the same Friends with whom the User chose to share the information in the first place.  (*Id.* ¶ 26)  Facebook cannot be held liable for republishing this newsworthy speech.[8]

Section 3344(d) exempts from liability "use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign."  Cal. Civ. Code § 3344(d).  The term "news" under Section 3344 is broadly construed, and "is not limited to 'news' in the narrow sense of reports of current events.  'It extends also to the use of names, likenesses, or facts in giving information to the public for purposes of education, amusement or enlightenment, when the public may reasonably be

---

[7] Plaintiffs purport to bring this action on behalf of a subclass of teenagers (Users must be at least 13 to register with Facebook) and argue that parental consent is needed under Section 3344. (SAC ¶¶ 80, 90.)  However, because Sponsored Stories do not violate Section 3344 for numerous reasons described in this motion, no parental consent was required.  Additionally, the minor Plaintiffs' claims fail because they lack standing and Facebook has immunity under CDA Section 230.

[8] Although Plaintiffs conclusorily allege that the content republished by Facebook was not used in conjunction with "news," this assertion is a bald legal conclusion that the Court is not bound to accept as true, *Twombly*, 550 U.S. at 555, and is contradicted by other facts pled in the SAC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

expected to have a legitimate interest in what is published.'"  *Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 225 (1998) (quoting Rest. 2d Torts, § 652D, com. j, p. 393); *see also Brown v. Entm't Merchs. Ass'n*, -- U.S. --, No. 08-1448, 2011 WL 2518809, at *3 (U.S. June 27, 2011) ("The Free Speech Clause exists principally to protect discourse on public matters, but we have long recognized that it is difficult to distinguish politics from entertainment, and dangerous to try.").  The key inquiry is whether the use of the name or likeness relates to information in which the audience has a legitimate interest.  *See Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793-97 (1995) (dismissing claim under Section 3344(d) because republication of football player's image "report[ed] newsworthy items of public interest"); *see also Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 545-46 (1993) (Section 3344(d) exempted surfing documentary because public is "entitled to know about things, people, and events that affect it").

The California Supreme Court has recognized that this "legitimate interest" analysis for state privacy tort claims parallels the analysis for claims involving the constitutional right to freedom of speech.  *See Shulman*, 18 Cal. 4th at 214-16 (critical issue for both tort and constitutional law inquiries is the presence or absence of a "public interest," noting that "the requirements of tort law and the Constitution have generally been assumed to be congruent" (citing Rest. 2d Torts. § 652D, com. d, p. 388)); *see also Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 681 (2010) ("[T]he tort of appropriation of name and personality, whether labeled a form of intrusion into privacy or a publicity right, invokes constitutional protections.").  Thus, if there is a legitimate public interest in speech for First Amendment purposes, the speech also qualifies as "newsworthy" under Section 3344(d).  *See Shulman*, 18 Cal. 4th at 216.

Facebook's republication of Users' names or profile images next to statements about pages or content they "Like" or actions they have taken, is newsworthy for at least two reasons.  *First*, expressions of consumer opinion are matters of public interest under the First Amendment.  *See, e.g.*, *Sorrell v. IMS Health Inc.*, -- U.S. --, No. 10-799, 2011 WL 2472796, at *9 (U.S. June 23, 2011) ("[A] 'consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue.'") (quoting *Bates v. State Bar of Ariz.*, 433 U.S. 350, 364 (1977)).  In *Paradise Hills Associates v. Procel*, the court held that the First

Cooley LLP
Attorneys At Law
San Francisco

19.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

Amendment protects a consumer's statements and signs about the quality of a developer's construction.  235 Cal. App. 3d 1528, 1544 (1991).  The court recognized that members of the public have an interest in "improv[ing] their relative position vis-à-vis the supplies [sic] and manufacturers of consumer goods" and thus "[t]hey clearly have an interest in matters which affect their roles as consumers . . . ."  *Id.* (quoting *Concerned Consumers League v. O'Neill*, 371 F. Supp. 644, 648 (E.D. Wis. 1974)); *see also Morningstar, Inc. v. Super. Ct.*, 23 Cal. App. 4th 676, 696-97 (1994) (opinions analyzing advertisements for financial products); *Lowe v. S.E.C.*, 472 U.S. 181, 210 n.58 (1985) (consumer opinion about products such as loudspeakers and marketable securities); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 764-65 (1976) (society has "a strong interest in the free flow of commercial information. . . . It is a matter of public interest that [private economic] decisions, in the aggregate, be intelligent and well informed.").  When a User "Likes" or Posts certain content or Checks In —whether in relation to a product, a politician, or an organization—that User is telling her Friends that she has a connection to or an affinity for that content.  As the Supreme Court very recently said, "The commercial marketplace, like other spheres of our social and cultural life, provides a forum where ideas and information flourish.  Some of the ideas and information are vital, some of slight worth.  But the general rule is that the speaker and the audience, not the government, assess the value of the information presented."  *Sorrell*, 2011 WL 2472796, at *17 (citation omitted).

*Second*, as noted in *Shulman*, publications "giving information to the public for purposes of education, amusement or enlightenment" are "newsworthy" where they are a subject of "legitimate public interest."  *See* 18 Cal. 4th at 225.  In turn, a matter is of "legitimate public interest" if "some reasonable members of the community could entertain a legitimate interest" in it which is not "governed by the tastes or limited interests of an individual judge or juror."  *Id.* Thus, even publications which merely provide "amusement" may be newsworthy if the audience "could entertain a legitimate interest" in them.  *Id.*; *see also Montana*, 34 Cal. App. 4th at 793-96 (because the public has an interest in a four-time Super Bowl winner, the publication is a matter of public interest); *Dora*, 15 Cal. App. 4th at 546 (publishing video of surfing legend is matter of public interest because surfing "is of more than passing interest to some"); *New Kids on the Block*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

1  *v. News Am. Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990) (magazine survey asking

2  which band member was subscriber's "fave" was matter of public interest because the identity

3  was used for "informative or cultural" purpose); *Gionfriddo v. Major League Baseball*, 94 Cal.

4  App. 4th 400, 411 (2001) (finding exemption for use of little known baseball players' names and

5  likenesses because the game is followed by "millions of people across this country" and there is a

6  public interest in its history); *Paulsen v. Personality Posters, Inc.*, 299 N.Y.S.2d 501, 507 (1968)

7  (publication of comedian's fake presidential run matter of public interest). Because a Sponsored

8  Story is republished only to the audience with whom the User chose to share the content in the

9  first place—individuals who have an identifiable interest in the User's actions—that information

10  is certainly a matter of legitimate interest to that group.

11    In short, by republishing a User's name or profile image along with the actions the User

12  has taken—Liking or Posting content, Checking In, or playing games—Facebook provides a

13  forum for authentic communications or suggestions by persons who have expressed their

14  approval of or connection with a particular product or service. This serves a particularly useful

15  purpose inasmuch as the information is republished to the User's group of Friends, for whom a

16  User's statement may be particularly informative, valuable, or even amusing.

17    Plaintiffs' new contention that they did not have a true affinity for the content they elected

18  to "Like" (SAC ¶ 25), does not alter the interest their Friends may have in the republished

19  content. A User's Friends need not know his or her subjective motivation to have an interest in

20  "Liked" content or Check-In location. A Posting coming from an individual with whom the

21  Friend has an established relationship is likely to be informative, enlightening, amusing, or all

22  three. A cursory review of the content allegedly "Liked" by Plaintiffs confirms this point.

23  Plaintiff Mainzer, for example, allegedly "Liked" the UNICEF page to support a campaign to

24  "reduce the deaths of children"—clearly an issue of public interest. (SAC ¶ 70.) Regardless of

25  Ms. Mainzer's motivations, her Friends may be interested in her choice to "Like" UNICEF for

26  any number of reasons. Similarly, Plaintiff Wang's Friends may be interested in seeing photos of

27  the "Warrior Dash" event—an event that he himself described as "intriguing." (*Id.* ¶ 73.) Indeed,

28  Exhibit 7 to the SAC indicates that both Plaintiffs Wang and William Tait found the "Warrior

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

21.

Dash" page to be of some interest, albeit for allegedly different reasons.  (*Id.* ¶¶ 73, 82, Ex. 7.) Plaintiffs' claim thus fails under Section 3344(d)'s "newsworthy" exemption.[9]

This construction of Section 3344 is further supported by the doctrine of constitutional avoidance.  Where an otherwise valid interpretation of a statute raises serious constitutional problems and an alternative interpretation is "fairly possible," the court must construe the statute to avoid the constitutional problem.  *See INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001) (superseded by statute on other grounds); *see also Santa Clara Cnty. Local Transp. Auth. v. Guardino*, 11 Cal. 4th 220, 230 (1995).  Plaintiffs' claim under Section 3344 raises serious First Amendment questions, and questions under Article 1, section 2 of the California Constitution. *See Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1041 (1986).  The First Amendment provides broad protection for the fundamental right of free speech, and the California Constitution "independently establishes a zone of protection that is broader still."  *See id.*  Plaintiffs' claim puts at issue the right of Users to communicate with their Friends, and Facebook's right to republish content in which Users' Friends have a legitimate interest.  As the Supreme Court recently said, "whatever the challenges of applying the Constitution to ever-advancing technology, 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears."  *Brown*, 2011 WL 2518809, at *3 (citation omitted).  The Court should construe Section 3344 so that Facebook's republication falls within the "newsworthy" exemption and avoid these concerns.

### D.    Plaintiffs Fail to State a Claim for Violation of California's UCL.

For several reasons, Plaintiffs' UCL claim also should be dismissed.  *First*, Plaintiffs lack standing to sue under the UCL because they have not alleged, and cannot allege, that they "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition."

---

[9] Facebook's free speech rights also are implicated by Plaintiffs' claims.  "Publication of matters in the public interest, which rests on the right of the public to know, and the freedom of the press to tell it, cannot ordinarily be actionable."  *See Rolling Stone*, 181 Cal. App. 4th at 681 (rejecting claim for misappropriation under section 3344) (citations omitted); *see also Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) ("Freedom of the press is a 'fundamental personal right' which 'is not confined to newspapers and periodicals [and] . . . comprehends every sort of publication which affords a vehicle of information and opinion.'") (citation omitted); *Shulman*, 18 Cal. 4th at 225.

Cooley LLP
Attorneys At Law
San Francisco

22.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

Cal. Bus. & Prof. Code § 17204; *see also Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 145 (2008).  As discussed, Plaintiffs' conclusory and contradictory allegations about the harm they suffered are insufficient to satisfy the "injury in fact" prong.  *See supra* IV.A; *see also Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1346 (2009) (proposition adding "injury in fact" requirement to UCL referred specifically to Article III, which requires an "actual or imminent, not 'conjectural' or 'hypothetical'" injury (quoting *Lujan*, 504 U.S. at 560-61)).

Plaintiffs also have not alleged that they lost any money or property, nor could they because Facebook is, and always has been, a free service.  Plaintiffs' assertion that they had a "vested monetary interest in their appearance in [Facebook] ads" (SAC ¶ 128) is a legal conclusion unsupported by any factual allegations and directly contrary to case law.  *See, e.g.*, *In re Doubleclick*, 154 F. Supp. 2d at 525 (rejecting argument that advertising revenue derived by website via use of personal information was an "economic loss to the subject").  Indeed, in another putative class action against Facebook, Chief Judge Ware dismissed the plaintiffs' UCL claim with prejudice because "'personal information' does not constitute property for purposes of a UCL claim."  *In re Facebook Privacy Litig.*, No. C 10-02389 JW, 2011 WL 2039995, at *6 (N.D. Cal. May 12, 2011) (citing *Thompson*, 2007 WL 2746603, at *3).  Judge Ware also reasoned that the plaintiffs could not allege a loss of money or property because they "received [Facebook's] services for free."  *Id.* at *7.

*Second*, Plaintiffs base their claim that Facebook acted "unlawfully" in contravention of the UCL on alleged violation of Civil Code Section 3344, (SAC ¶¶ 120-121), but, as shown above (*supra* § IV.C), Plaintiffs have failed to allege facts sufficient to state such a claim.  *See Whiteside v. Tenet Healthcare Corp.*, 101 Cal. App. 4th 693, 706 (2002) ("unlawful" claim under UCL fails where there is no claim based on underlying statute).

*Third*, Plaintiffs have not alleged facts showing that Facebook acted "unfairly" within the meaning of the UCL.  California courts have held that to state a claim for an "unfair" business practice in a UCL consumer action, a plaintiff must allege facts sufficient to establish: (1) substantial consumer injury; (2) that the injury is not outweighed by countervailing benefits to consumers; and (3) that the injury is one that consumers could not reasonably have avoided.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

*Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006) (referring to factors under Section 5 of Federal Trade Commission Act, codified at 15 U.S.C. § 45(n)); *accord Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 596 (2009).  As discussed above, Plaintiffs have not sufficiently pled *any* injury, let alone a "substantial" injury.  On the contrary, they acknowledge that Sponsored Stories may be created only when a Facebook User voluntarily shares content (SAC ¶ 26) with "other Members with whom the posting Member is a Facebook Friend."  (*Id.* ¶ 20.) Plaintiffs have also failed to suggest that any such injury is "not outweighed by countervailing benefits to consumers," in particular the speech and associational benefits arising from the Facebook service, which enables hundreds of millions of Users to connect and share information.  As for avoidance, the materials referenced in the SAC and subject to judicial notice also show that Plaintiffs could have easily "avoided" this alleged injury, for example, by choosing not to upload a profile picture or "Like" content, or by adjusting their privacy settings to limit the publication of their "Likes."  (*See, e.g.*, Yang Decl. ¶ 5, Ex. D.)  Therefore, Plaintiffs' claim under the "unfair" prong of Section 17200 should be dismissed.

*Fourth*, Plaintiffs have not alleged facts showing that Facebook is liable under the "fraudulent" prong of Section 17200.  Claims brought under the "fraudulent" prong must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  To state a claim, the SAC must allege with particularity facts demonstrating (1) a misrepresentation, (2) knowledge of its falsity, (3) intent to induce reliance, (4) that the reliance was justified, and (5) damages.  *Id.* at 1126 (citing *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997)).  Plaintiffs' allegations that Facebook acted fraudulently are deficient in several respects.  Plaintiffs allege that Facebook misrepresented Users' ability to prevent their names and profile images from appearing in Sponsored Stories (SAC ¶ 122), but the SAC also alleges that Sponsored Stories can be generated only if a User chooses voluntarily to utilize the Post, Like, Places, or Check-in features and share their content with Friends.  (*See generally id.* ¶¶ 20, 23-26.)  Moreover, as discussed, Plaintiffs *could have* limited the use of their name and profile image in Sponsored Stories through various means.  In addition, the SAC does not allege with specificity the manner in which Facebook purportedly

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

induced some action by the named Plaintiffs, nor when statements about the "Sponsored Stories" feature were made to Plaintiffs.  In short, the SAC does not allege any fraud with particularity.

### E.     Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs' unjust enrichment claim also fails because there is no such independent cause of action in California.  *See, e.g.*, *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010) (noting "unjust enrichment is not an independent claim"); *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) ("[t]here is no cause of action in California for unjust enrichment") (internal citations omitted); *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause of action, however, or even a remedy . . . .").

Such an improperly pled claim can only survive if the court elects to reinterpret the "unjust enrichment" claim as some alternate legal theory that would give rise to a restitutionary remedy, and there is no appropriate basis to do that here.  *See GA Escrow, LLC v. Autonomy Corp. PLC*, No. C 08-01784 SI, 2008 WL 4848036, at *7 (N.D. Cal. Nov. 7, 2008).  Plaintiffs have not paid any money to Facebook because it is a free service.  Plaintiffs have also failed to allege facts sufficient to show that Facebook fraudulently obtained a benefit from Plaintiffs in violation of Section 17200.  *See supra* IV.D.  Plaintiffs, thus, have not demonstrated any basis on which they could be entitled to restitution.  *See, e.g.*, *Levine*, 189 Cal. App. 4th at 1138 (no separate cause of action for unjust enrichment where trial court sustained demurrer on other causes of action and no demonstration of entitlement to restitution on unjust enrichment theory).

### V.     CONCLUSION

For all the foregoing reasons, Plaintiffs' Second Amended Class Action Complaint should be dismissed with prejudice.

Dated: July 1, 2011                              COOLEY LLP

                                                 By: */s/ Matthew D. Brown*
                                                    Matthew D. Brown

                                                 Attorneys for Defendant FACEBOOK, INC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)

25.

716058 /SD

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26.

FACEBOOK'S MOTION TO DISMISS THE SAC
CASE NO. 11-CV-01726 LHK (PSG)