# EXHIBIT CC

## TO DECLARATION OF MATTHEW D. BROWN
## IN SUPPORT OF FACEBOOK, INC.'S OPPOSITION
## TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## [PUBLIC DOCUMENT]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| E.K.D., by her next friend MELISSA K. DAWES, and C.M.D., by his next friend JENNIFER E. DEYONG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL NO. 11-461-GPM<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

### I. INTRODUCTION

This case is before the Court on the motion to transfer brought by Defendant Facebook, Inc. ("Facebook") (Doc. 57). Plaintiffs E.K.D., by her next friend Melissa K. Dawes, and C.M.D., by his next friend Jennifer E. Deyong, who bring this action individually and on behalf of all others similarly situated, have responded to the motion to transfer. Having considered the matter carefully, the Court now rules as follows.

### II. BACKGROUND

According to the record of this case, Facebook operates facebook.com, a free, Internet-based social networking site with over 153 million members in the United States; over fourteen million facebook.com users in the United States are under the age of eighteen. To join facebook.com, a user must provide his or her name, age, gender, and a valid e-mail address, and click a button leading to a message stating that "By clicking Sign Up, you are indicating that you have read and agree to"

Facebook's Terms of Service ("TOS"), with a hyperlink to Facebook's TOS. Doc. 63 at 2 ¶ 6. Once registered, a facebook.com user receives a "profile" page, may upload a "profile photo" of himself or herself, and may connect with other facebook.com users by approving them as "friends." Also, facebook.com allows users to share information with friends. Users may "post" by adding text, images, videos, and hyperlinks to their own profile page, "check-in" by announcing their geographical location using the website's "places" feature, and "like" content by clicking on a thumbs-up button that appears next to certain items on the Internet, both within facebook.com and on external sites. When facebook.com users take one of these actions, facebook.com generates a "story," which appears on their friends' "news feed."

Facebook earns revenue primarily through the sale of targeted advertising that appears on facebook.com users' profile pages. Plaintiffs challenge one of Facebook's advertising services in particular, known as "sponsored stories," which Facebook launched on January 25, 2011, and which was enabled for all facebook.com users by default. A sponsored story is a form of paid advertisement that appears on a facebook.com user's profile page and that generally consists of another friend's name, profile picture, and an assertion that the person "likes" the advertiser. A sponsored story may be generated whenever a facebook.com user utilizes the website's post, like, or check-in features, or uses an application or plays a game that integrates with facebook.com, and the content relates to an advertiser in some way determined by Facebook. Thus, if a facebook.com user clicks on the "like" button on a company's website, the facebook.com user's user name and profile picture, which bears the user's likeness, will appear on the facebook.com pages of the user's friends in a sponsored story advertisement stating that the user likes the company, operating in effect as an endorsement by the facebook.com user of the company or its products and services to the

facebook.com user's friends. Such sponsored story advertisements are more valuable than standard facebook.com advertisements, and Facebook profits from selling this added value to advertisers.

Users of facebook.com can modify the commercial use of their names and likenesses by Facebook, but they cannot opt out of the sponsored stories feature of the website entirely. Specifically, Facebook's TOS advise facebook.com users that "You can use your privacy settings to limit how your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place." Doc. 63-1 at 4 § 10(1). Plaintiffs, who are minors residing in Illinois and users of facebook.com, allege that Facebook's practice of misappropriating their names and likenesses for commercial endorsements without their consent violates their right of privacy under the laws of various states. Federal subject matter jurisdiction is proper in this case on the basis of 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.).[1] Plaintiffs seek class certification:

> The proposed class is defined as follows:
> All facebook users, who during a time that facebook records identified them to be under the age of 18, had their name used in connection with a facebook advertisement. (the "Class" or "Class Members").
> Alternatively, Plaintiffs seek certification of a class defined as follows:
> All facebook users, who during a time that facebook records identified them to be under the age of 18 and a resident of California, Ohio, Nevada, Illinois, or Indiana

---

1. More specifically, this is a putative class action involving one hundred or more class members, in which at least one member of the putative class is a citizen of a state different from the state of which Facebook is a citizen, California, and in which, after aggregating the putative class members' claims, more than $5 million, exclusive of interest and costs, is in controversy. *See* 28 U.S.C. § 1332(d)(1)(B), (d)(2)(A), (d)(5)(B), (d)(6).

and had their name used in connection with a facebook advertisement. (the "Class" or "Class Members").

Doc. 2 at 7 ¶ 24. Facebook in turn has moved for transfer of this case to the United States District Court for the Northern District of California pursuant to a forum-selection clause in Facebook's TOS. The clause advises users of facebook.com:

> You will resolve any claim, cause of action or dispute (claim) you have with us arising out of or relating to [these TOS] or Facebook exclusively in a state or federal court located in Santa Clara County[, California]. The laws of the State of California will govern [these TOS], as well as any claim that might arise between you and us, without regard to conflict of law provisions. You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims.

Doc. 63-1 at 5 § 15(1). Having set out the relevant background of this case, the Court will turn next to the merits of Facebook's motion for transfer of the case.

### III. ANALYSIS

#### A. Disaffirmance of the Contract

Before reaching the issue of the forum-selection clause in Facebook's TOS and the enforceability of the clause, the Court first must determine whether Facebook is barred from enforcing the forum-selection clause against Plaintiffs, who, as noted, are minors, by the doctrine of infancy. Certain categories of persons are held by the law to have no capacity, or only a limited capacity, to contract:

> (1) No one can be bound by contract who has not legal capacity to incur at least voidable contractual duties. Capacity to contract may be partial and its existence in respect of a particular transaction may depend upon the nature of the transaction or upon other circumstances.
> (2) A natural person who manifests assent to a transaction has full legal capacity to incur contractual duties thereby unless he is
>     (a) under guardianship, or
>     (b) an infant, or

> (c) mentally ill or defective, or
> (d) intoxicated.

Restatement (Second) of Contracts § 12 (1981). The commentary to the Restatement notes that "[h]istorically, the principal categories of natural persons having no capacity or limited capacity to contract were married women, infants, and insane persons." *Id*. cmt. b. The doctrine of infancy is codified in California law. Under that law, "minors" are all persons under eighteen years of age. *See* Cal. Fam. Code § 6500. California law provides,

> A minor cannot do any of the following:
> (a) Give a delegation of power.
> (b) Make a contract relating to real property or any interest therein.
> (c) Make a contract relating to any personal property not in the immediate possession or control of the minor.

Cal. Fam. Code § 6701. The contracts enumerated in the statute are void, and no act of disaffirmance is required to avoid them. *See Burnand v. Irigoyen*, 186 P.2d 417, 419 (Cal. 1947). Contracts that are not void under California law are voidable, and may be disaffirmed by the minor, either before majority or within a reasonable time thereafter. *See* Cal. Fam. Code § 6710. *See also Berg v. Traylor*, 56 Cal. Rptr. 3d 140, 148 (Cal. Ct. App. 2007) (a minor may disaffirm a contract by any act or declaration disclosing an unequivocal intent to disaffirm). If a minor dies within the statutory period, the minor's heirs or personal representatives may disaffirm the contract. *See* Cal. Fam. Code § 6710.

As California law recognizes also, however, "the disability of infancy [is not] a 'sword' rather than a 'shield[.]'" *Hastings v. Dollarhide*, 24 Cal. 195, 216 (Cal. 1864). The infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit. *See, e.g., MacGreal v. Taylor*, 167 U.S. 688, 701 (1897) ("To say that the

consideration paid to [a minor] . . . is not in her hands, when the money has been put into her property in conformity with the disaffirmed contract, and notwithstanding such property is still held and enjoyed by her, is to . . . make the privilege of infancy a sword to be used to the injury of others, although the law intends it simply as a shield to protect the infant from injustice and wrong."). Thus, "[i]f an infant enters into any contract subject to conditions or stipulations, the minor cannot take the benefit of the contract without the burden of the conditions or stipulations." 5 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 9:14 (4th ed. 1993 & Supp. 2011) (collecting cases). California law is in accord with "the equitable principle that minors, if they would disaffirm a contract, must disaffirm the entire contract, not just the irksome portions." *Holland v. Universal Underwriters Ins. Co.*, 75 Cal. Rptr. 669, 672 (Cal. Ct. App. 1969). "[N]o person, whether minor or adult, can be permitted to adopt that part of an entire transaction which is beneficial, and reject its burdens. This commanding principle of justice is so well established, that it has become one of the maxims of the law . . . . [Minors] must either accept or repudiate the entire contract," and "they cannot retain [the contract's] fruits and at the same time deny its obligations." *Peers v. McLaughlin*, 26 P. 119, 120 (Cal. 1891). "A party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill." *Id.* "[W]hat the rules of equity would not permit [minors] to do if they had attained their majority they cannot be permitted to do . . . through their guardian *ad litem*." *Id.* *See also Simmons v. Briggs*, 231 P. 604, 611 (Cal. Dist. Ct. App. 1924) (the recipient of a gift procured by another's fraud cannot raise infancy as a defense to the donor's action to rescind, although the recipient was a minor when the gift was executed, but retained the property after maturity).

In the specific context of forum-selection clauses, courts, including California courts, have readily declined to permit minors to accept the benefits of a contract, then seek to void the contract in an attempt to escape the consequences of a clause that does not suit them. For example, in *Paster v. Putney Student Travel, Inc.*, No. CV 99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999), a sixteen-year-old high school student entered an agreement with a company to spend four weeks on an Indian reservation in Montana. *See id.* at *1. A term of the agreement provided, "I agree and consent to the jurisdiction of the courts of the State of Vermont, with venue in Windham County, Vermont or the United States District Court for the District of Vermont, for the resolution of all legal matters concerning this agreement or brought against Putney Student Travel, Inc., its officers, directors, agents, servants and employees." *Id*. The student later brought suit against the company in California for personal injuries she allegedly suffered during her stay on the reservation. As to the forum-selection clause in the agreement, the student argued that she was not bound by the agreement "because she was a minor when she signed it and has now disaffirmed the contract by filing this action." *Id*. at *2. The court held that the plaintiff "cannot accept the benefits of a contract and then seek to void it in an attempt to escape the consequences of a clause that do not suit her." *Id*. Similarly, in *Morrow v. Norwegian Cruise Line Ltd*., 262 F. Supp. 2d 474 (M.D. Pa. 2002), the court ruled that a forum-selection clause contained in a contract printed on a cruise ship passenger ticket was valid and enforceable against a passenger who alleged that she was negligently injured aboard the cruise ship, although the passenger was a minor. The court said, "Plaintiff boarded the *Norwegian Wind* with her family and took the cruise. Since Plaintiff can not give back, or in any way disgorge, the benefit of her contract, it would be inequitable to now release her from the obligations and consequences attached to that benefit. It is

appropriate, therefore, to hold her to the rest of the bargain and enforce the forum selection agreement." *Id*. at 476. *See also Harden v. American Airlines*, 178 F.R.D. 583, 587 (M.D. Ala. 1998) (quoting 42 Am. Jur. 2d *Infants* § 43 (1964 & Supp. 2012)) ("A contract signed by a minor is only voidable . . . . If the minor chooses benefits under the contract, he may not avoid his obligations thereunder," because "'[a]n infant who asserts contractual rights is bound by reciprocal obligations.'"). *Cf. Doyle v. Giuliucci*, 401 P.2d 1, 3 (Cal. 1965) (refusing to permit a minor beneficiary of a health care contract between the minor's parent and a health care group to disaffirm an arbitration provision contained within the contract). Plaintiffs have used and continue to use facebook.com. The Court concludes that Plaintiffs cannot disaffirm the forum-selection clause in Facebook's TOS, although Plaintiffs were minors when they entered the agreement containing the clause.

        **B.**        **Validity of Facebook's Forum-Selection Clause**

Settled law holds that a mandatory forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972). With respect to the unreasonableness of a forum-selection clause,

> The Supreme Court has construed this exception narrowly: forum selection and choice of law clauses are unreasonable (1) if their incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) if the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) if enforcement of the clauses would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

*Bonny v. Society of Lloyd's*, 3 F.3d 156, 160 (7th Cir. 1993) (citations, brackets, and quotation marks omitted). *See also Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 210-11 (7th Cir. 1993).

This is true even if the contract was never negotiated and in effect was dictated by one party to the other party. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991). A forum-selection clause is mandatory where its "language is obligatory" and "clearly manifests an intent to make venue compulsory and exclusive." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756 (7th Cir. 1992). The clause at issue here provides, "You will resolve any claim, cause of action or dispute . . . you have with us . . . exclusively in a state or federal court located in Santa Clara County[, California]." Doc. 63-1 at 5 § 15(1). Under the clause, venue is exclusive in a state court in Santa Clara County, or in a federal court having jurisdiction over that county. Because the clause makes venue compulsory and exclusive in state or federal court in Santa Clara County, it is mandatory. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006) (a clause providing that "JURISDICTION AND VENUE OVER ANY DISPUTES ARISING OUT OF THIS AGREEMENT SHALL BE PROPER ONLY IN THE FEDERAL OR STATE COURTS IN DALLAS COUNTY, TEXAS" was mandatory); *Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 607 (7th Cir. 2003) (a clause providing that any suit "arising out of the goods carried under this Bill of Lading shall, whenever the port of loading or the port of discharge named on the face hereof is in the United States of America, be brought only in the United States District Court having admiralty jurisdiction at the USA port of loading or USA port of discharge, as the case may be, to the exclusion of any other Court or forum" was mandatory); *Piechur v. Redbox Automated Retail, LLC*, No. 09-cv-984-JPG, 2010 WL 706047, at *3 (S.D. Ill. Feb. 24, 2010) ("By agreeing to submit to the 'exclusive jurisdiction' in a particular forum, the parties in this case have manifested their intent to make that venue exclusive and to exclude venue in all other jurisdictions.").

The Court turns then to the matter of the reasonableness of the forum-selection clause contained in Facebook's TOS. Facebook's TOS, including the forum-selection clause at issue, are contained in a so-called "browsewrap agreement." Browsewrap agreements typically "involve a situation where notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink." *Southwest Airlines v. BoardFirst, L.L.C.*, Civil Action No. 3: 06-CV-0891-B, 2007 WL 4823761, at *4 (N.D. Tex. Sept. 12, 2007). Thus, a party gives his or her assent simply by using the website. *See id*. (citing *Pollstar v. Gigmania, Ltd*., 170 F. Supp. 2d 974, 981 (E.D. Cal. 2000)). Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of a browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions. *See id*. at *5 (citing Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 477 (Dec. 2006) ("Courts may be willing to overlook the utter absence of assent . . . when there are reasons to believe that the website user is aware of the website owner's terms.") (brackets omitted). Thus, absent a showing of actual knowledge of the terms by the webpage user, the validity of a browsewrap contract hinges on whether the website provided reasonable notice of the terms of the contract. In this instance, as noted, persons wishing to join facebook.com must attest that they have read Facebook's TOS, which are made available through a hyperlink. Also, Facebook's TOS are hyperlinked on every page accessed by a facebook.com user in underlined, blue text that contrasts with the white background of the hyperlink. Accordingly, the Court concludes that Plaintiffs were reasonably put on notice of Facebook's TOS. *See PDC Labs., Inc. v. Hach Co*., No. 09-1110, 2009 WL 2605270, at *3 (C.D. Ill. Aug. 25, 2009) (a browsewrap agreement was sufficiently conspicuous to users of a

website where a hyperlink to the agreement was included on multiple pages of the website in underlined, blue, contrasting text). Whether or not Plaintiffs actually read Facebook's TOS is irrelevant, of course, to the matter of the conspicuousness of the TOS and thus Plaintiffs' constructive knowledge of the TOS, and Plaintiffs are bound by Facebook's TOS whether Plaintiffs read them or not. *See Bonny*, 3 F.3d at 160 n.10 ("[A] party to a contract has an obligation to read its provisions. It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them."); *Paper Express*, 972 F.2d at 757 (noting that "a party who agrees to terms . . . without understanding or investigating those terms does so at his own peril").

Second, the selected forum does not make it "so gravely difficult and inconvenient that [Plaintiffs] will for all practical purposes be deprived of [their] day in court." *Bonny*, 3 F.3d at 160. Plaintiffs' counsel, the Court is well aware, are sophisticated class-action attorneys who are accustomed to litigating throughout the United States. Anyhow, "additional expense does not necessarily invalidate a forum-selection clause[.]" *Paper Express*, 972 F.2d at 758. "Whatever inconvenience [Plaintiffs] would suffer by being forced to litigate in a court in [California] was foreseeable at the time that [they] agreed to" the forum-selection clause in Facebook's TOS. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526 (7th Cir. 2001). The time for Plaintiffs to have considered whether the forum-selection clause in Facebook's TOS would terribly disadvantage them was when they agreed to the TOS. *See Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 426 (7th Cir. 2007) (when signing an agreement containing a forum-selection clause, the party attempting to evade the clause "could and no doubt did consider the potential inconvenience of litigating in Japan, but decided to risk it," and "is bound by its choice"); *Bonny*, 3 F.3d at 160 (requiring an

American plaintiff to litigate in England as per a forum-selection clause was not unreasonable); *Walker v. Carnival Cruise Lines, Inc.*, No. 87 C 115, 1987 WL 28413, at *2 (N.D. Ill. Dec. 22, 1987) (noting that "the cost of litigating far from home, and the loss of effectiveness which may occur when a party is required to rely on depositions, even video depositions, rather than live testimony to a jury" are not grounds to avoid a forum-selection clause). In any event, Plaintiffs do not claim that litigating in California would put them to unreasonable expense. *See Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp. 2d 650, 659 (N.D. Ill. 2005) (if a party fails to argue that enforcement of a forum-selection clause would cause the party financial hardship, the court may enforce the clause).

  Finally, enforcing the forum-selection clause would not contravene any strong public policy of the State of Illinois. In general, the public policy of Illinois is gleaned from its statutes, judicial decisions, constitution, and the practices of its government officials. *See American Home Assurance Co. v. Stone*, 61 F.3d 1321, 1324-25 (7th Cir. 1995) (citing *Zeigler v. Illinois Trust & Sav. Bank*, 91 N.E. 1041, 1046 (Ill. 1910)); *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 537 N.E.2d 730, 734 (Ill. 1989); *McClure Eng'g Assocs., Inc. v. Reuben H. Donnelley Corp.*, 447 N.E.2d 400, 402 (Ill. 1983); *Smith v. Board of Educ. of Oswego Cmty. High Sch. Dist.*, 89 N.E.2d 893, 896 (Ill. 1950); *Hyatte v. Quinn*, 607 N.E.2d 321, 324 (Ill. App. Ct. 1993). The enforcement of forum-selection clauses offends no public policy of Illinois. *See Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 252 (7th Cir. 1996) (citing *Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23 (Ill. App. Ct. 1987)) ("Under Illinois law, a forum selection clause is enforceable except in exceptional circumstances."); *Vencor, Inc. v. Webb*, 33 F.3d 840, 844-45 (7th Cir. 1994) ("Webb argues that this non-competition agreement is contrary to the fundamental public policy of

the state of Illinois, and thus Illinois law must govern this dispute. We disagree. Here, both parties elected to have the agreement governed by Kentucky law, and we discern no reason why an Illinois court would find the agreement to be contrary to Illinois public policy."); *Cummins v. Bickel & Brewer*, No. 00 C 3703, 2001 WL 204797, at *3 (N.D. Ill. Mar. 1, 2001) ("Under Illinois law, a choice of law clause is prima facie valid and should be enforced unless the opposing party shows that enforcement would contravene the strong public policy of the State."); *Compass Envtl., Inc. v. Polu Kai Servs., L.L.C.*, 882 N.E.2d 1149, 1156 (Ill. App. Ct. 2008) (citing *Calanca*, 510 N.E.2d at 23) (the party opposing enforcement a forum-selection clause must demonstrate that "trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."). In this case, there is no reason to believe that the policies underpinning the state laws invoked by Plaintiffs would not be served as well by a California court as they would be by this Court. Enforcing the forum-selection clause in Facebook's TOS would cause no offense to Illinois public policy, and the Court finds that the forum-selection clause is reasonable and enforceable.

### C. Transfer under 28 U.S.C. § 1404

The United States Court of Appeals for the Seventh Circuit routinely affirms the dismissal of lawsuits under Rule 12(b)(3) of the Federal Rules of Civil Procedure due to forum-selection clauses. However, most such decisions involve clauses that designate an arbitral forum, a state-court forum, or a foreign forum. *See, e.g., Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 676 (7th Cir. 2007) (the forum-selection clause at issue designated "the State Court of Fulton County, Georgia") (italics omitted); *Abbott Labs.*, 476 F.3d at 422 (the forum-selection clause at issue designated Japan); *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 733

(7th Cir. 2005) (the forum-selection clause at issue designated an arbitral forum); *American Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 886 (7th Cir. 2004) (the forum-selection clause at issue designated Bermuda); *Paper Express*, 972 F.2d at 754-55 (the forum-selection clause at issue designated Germany).  These decisions seem sensible to the Court:  where the alternative forum designated by a forum-selection clause is not a federal court, a case cannot be transferred under 28 U.S.C. § 1404 or, assuming that venue were not otherwise proper under 28 U.S.C. § 1391 or some other federal venue statute, 28 U.S.C. § 1406, and if dismissal were not an option, the forum-selection clause would be meaningless.

However, where, as here, a forum-selection clause designates both a state and a federal court as a proper forum, a court may consider whether transfer is appropriate under 28 U.S.C. § 1404. *See In re LimitNone, LLC*, 551 F.3d 572, 575-76 (7th Cir. 2008) (noting that "the district court mischaracterized the transfer as one under [28 U.S.C.] § 1406(a) when it was 28 U.S.C. § 1404(a) that provided the necessary authority," and affirming transfer under Section 1404); *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001) ("[T]here is nothing . . . that *precludes* a district court, faced with a Rule 12 motion based on a forum selection clause, from considering § 1404 factors to determine whether transfer is the better course.") (emphasis in original); *Digital Envoy, Inc. v. Google, Inc.*, 319 F. Supp. 2d 1377, 1378-79 (N.D. Ga. 2004) (the district court rejected the defendant's attempt to dismiss the case pursuant to Rule 12(b)(3) because the chosen forum was the Northern District of California and therefore the case could be transferred under Section 1404); 5B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 1352 (3d ed. 1998 & Supp. 2011) ("Given Section 1404(a)'s emphasis on convenience and justice, transfer, rather than the harsh remedy of dismissal, seems to

be the better approach whenever possible.") (collecting cases). Here, of course, the forum-selection clause contained in Facebook's TOS designates the United States District Court for the Northern District of California as a proper forum for this case, and therefore the Court will evaluate whether transfer of this case to the Northern District of California pursuant to Section 1404 is warranted.[2] Under 28 U.S.C. § 1404, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). With respect to whether the Northern District of California is a district where this action "might have been brought" within the meaning of Section 1404(a), a district is one in which an action "might have been brought" if that district has: (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (the district where a case "might have been brought" for purposes of Section 1404(a) means that the plaintiff has to have had the right to bring its case in the transferee district, which would require proper venue and personal jurisdiction over the defendants in the transferee district). This action could have been brought in the Northern District of California, because Facebook resides in Santa Clara County, within the Northern District of California, and Plaintiffs allege that Facebook's headquarters is the location of the source of the misconduct alleged in this case.

---

2. The United States District Court for the Northern District of California is the federal district court whose jurisdiction comprises the following California counties: Alameda; Contra Costa; Del Norte; Humboldt; Lake; Marin; Mendocino; Monterey; Napa; San Benito; San Francisco; San Mateo; Santa Clara; Santa Cruz; and Sonoma. The court, which is headquartered in San Francisco, hears cases in its courtrooms in Eureka, Oakland, San Francisco, and San Jose. This Court may judicially notice public records and government documents, including those available from reliable sources on the Internet, such as the official website of the United States District Court for the Northern District of California (http://www.cand.uscourts.gov). *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (collecting cases).

The Supreme Court of the United States has held that a "forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . . , but rather the consideration for which Congress provided in [28 U.S.C.] § 1404(a)." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). In the Seventh Circuit, the "consideration for which Congress provided in § 1404(a)" has been held to reflect the view set forth by Justice Kennedy's concurring opinion in *Stewart*, namely, that "a valid forum-selection clause is given controlling weight in all but the most exceptional cases." *Id*. at 33 (Kennedy, J., concurring). *See also Heller Fin., Inc. v. Midwhey Powder Co*., 883 F.2d 1286, 1290-91 (7th Cir. 1989) (quoting *M/S Bremen*, 407 U.S. at 15) ("[A] forum-selection clause should control unless there is a 'strong showing that it should be set aside.'"). According to the Seventh Circuit Court of Appeals:

> [T]he signing of a valid forum selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience to the [parties]. If there is inconvenience to some third party of which that third party may not even be aware, or to the judicial system itself, then either party to the suit is free to move for a change of venue. But one who has agreed to be sued in the forum selected by the [parties] has thereby agreed not to seek to retract his agreement by asking for a change of venue on the basis of costs or inconvenience to himself; such an effort would violate the duty of good faith that modern law reads into contractual undertakings. A party can seek to rescind a forum selection clause, . . . but if the attempt fails and the clause is held to be valid, then section 1404(a) may not be used to make an end run around it.

*Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990) (citations omitted). The "strong presumption" in favor of enforcing a valid forum-selection clause

> can be overcome . . . only if there is inconvenience to some third party . . . or to the judicial system itself, as distinct from inconvenience to the party seeking [to avoid the clause]. That party's inconvenience has no weight if the clause is valid, because the party waived any objection based on inconvenience to it by agreeing to the clause. But it could not waive rights of third parties, or the interest of the federal judiciary

> in the orderly allocation of judicial business, which is why a transfer motion [to the designated forum] can be [denied] even if there is a valid forum selection clause.

*IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 613 (7th Cir. 2006) (citation and quotation marks omitted). Thus, the inconvenience to Plaintiffs of litigating in the Northern District of California is irrelevant under Section 1404(a). The only basis for declining to enforce a forum-selection clause is when transfer "would impose significant costs on third parties or on the judicial system." *Abbott Labs.*, 476 F.3d at 423. *See also IFC Credit*, 437 F.3d at 613 (a forum-selection clause's presumption of validity is overcome when "there is inconvenience to some third party . . . or to the judicial system itself") (quotation omitted). Plaintiffs have identified no non-party witnesses residing in Illinois and, if any such witnesses exist, Plaintiffs do not say what testimony these witnesses would give. *See Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1008 (N.D. Ill. 2007) (a party seeking to avoid transfer under a forum-selection clause must provide "affidavits or other actual evidence specifying third-party witnesses and their purported testimony"). In any event, Illinois non-parties are beyond the subpoena power of the Northern District of California, so if they are called as witnesses, they will have the option of being deposed in Illinois rather than in California; in fact, Facebook has stipulated that any witnesses, party or non-party, residing in Illinois will be deposed in Illinois, not California, so that transferring this case cannot impose any significant inconvenience on Illinois witnesses. Finally, Plaintiffs offer no plausible reason why transfer would subject the judicial system to significant costs or "interfere with the orderly allocation of judicial business." *Donovan*, 916 F.2d at 376. The forum-selection clause in Facebook's TOS will be enforced by transferring this case to the Northern District of California under Section 1404(a).

## IV. Conclusion

Facebook's motion for transfer (Doc. 57) is **GRANTED**. Pursuant to 28 U.S.C. § 1404(a), this action is **TRANSFERRED** to the United States District Court for the Northern District of California for all further proceedings. The following motions pending in this case will be carried with the case for resolution in the transferee court: Facebook's Motion to Dismiss for Failure to State a Claim (Doc. 12); Facebook's Motion for Judicial Notice (Doc. 15); Plaintiffs' Motion to Certify Class (Doc. 51); Plaintiffs' Motion to Intervene (Doc. 90); and Plaintiffs' Motion for Protective Order (Doc. 92). The Clerk of Court is directed to transmit the complete file in this case to the Clerk of the United States District Court for the Northern District of California and to close this Court's file in the case.

**IT IS SO ORDERED.**

DATED: March 8, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge