# EXHIBIT DD

## TO DECLARATION OF MATTHEW D. BROWN IN SUPPORT OF FACEBOOK, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## [PUBLIC DOCUMENT]

FILED IN CHAMBERS
U.S.D.C. Rome

JAN 1 5 2010

JAMES N. ~~~~~~, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANIEL M. MILLER,

       Plaintiff,

   v.

FACEBOOK, INC., et al.,

       Defendants.

CIVIL ACTION

NO. 1:09-CV-2810-RLV

## O R D E R

In a three-count complaint alleging copyright infringement, violations of the Lanham Act, and unfair competition under the Georgia Deceptive Trade Practices Act, the plaintiff seeks damages against Facebook, Inc. and Yao Wei Yeo. This matter comes before the court on a motion to transfer venue [Doc. No. 13] filed by Facebook.

In the motion to transfer, Facebook argues that the plaintiff, a registered user of its social-networking website, agreed to Facebook's Terms of Use ("TOU"). The forum selection clause contained in the TOU states in relevant part:

> If there is any dispute about or involving the Web site and/or the Service, you agree that the dispute will be governed by the laws of the State of California without regard to its conflict of law provisions. You also agree to the exclusive jurisdiction and venue of the courts of the state and federal courts of Santa Clara County, California and waive all defenses of lack of personal jurisdiction and forum non conveniens.

The plaintiff does not dispute that he agreed to the terms of the TOU. Instead, he argues that the TOU constituted a contract of adhesion, rendering the clause unenforceable. Alternatively, the plaintiff argues that this clause is either vague or that his causes of action do not fall within the scope of the TOU's forum selection clause.

The first issue the court must address is whether the forum selection clause is enforceable even if the clause was contained in a contract of adhesion. In <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 590-95 (1991), the United States Supreme Court enforced a forum selection clause printed in small print on the back of a cruise ship ticket which the passengers had to "take the contract, or leave." The Supreme Court noted that public policy favors such clauses, because the nature of the cruise ship business necessarily opened the company to the possibility of litigation in several fora and that the cruise line had a justifiable "interest in limiting the fora in which it potentially could be subject to suit." <u>Id</u>. at 593. The Court reasoned that without such clauses, businesses would likely have to increase prices for their customers to account for the higher cost of litigation. <u>Id</u>.

In addressing a forum selection clause in the internet context, the Second Circuit Court of Appeals held:

> While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree.

Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d Cir. 2004).

The court finds that the United States Supreme Court's precedent of Carnival Cruises and the persuasive authority of Register.com should be followed in this case. Thus, the court concludes that the forum selection clause contained in Facebook's TOU should be enforced. Even if the court were to assume without deciding that the TOU was a contract of adhesion, striking the forum selection clause could wreak havoc on the entire social-networking internet industry. If this court were to determine that the forum selection clause contained in Facebook's TOU was unenforceable, the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies.

3

Next, the court turns to the plaintiff's argument that the forum selection is vague or that his claims fall outside of the forum selection clause. Having reviewed the forum selection clause, the court concludes that it is not vague and it is broad enough to include the plaintiff's current claims against Facebook. Specifically, the forum selection clause states that "any dispute about or involving the Web site and/or the Service . . . " should be submitted to the state or federal courts in Santa Clara, County in California. In Counts I and II, the plaintiff alleges that Facebook and another defendant infringed the plaintiff's copyright and patent and that this infringement occurred either on Facebook's website or in the use of Facebook's site. Moreover, the plaintiff alleges that he uses the Facebook website to promote his claimed work, his "K2xL" company and its website, and at least one other game. Furthermore, the plaintiff alleges that defendant Yeo "[a]t least as early as April, 2009 . . . published the game ChainRxn on a website hosted by Defendant Facebook [www.facebook.com]." Complaint, ¶ 18. The court concludes that the forum selection's use of the term "any dispute" is broad enough to include the plaintiff's current allegations contained in Counts I and II.

Next, the court turns to an evaluation of the 28 U.S.C. § 1404(a) factors. According to P & S Business Machines, Inc. v.

4

<u>Canon USA, Inc.</u>, 331 F.3d 804, 807 (11th Cir. 2003), the following principles "have been established for consideration of whether a case should be removed to another jurisdiction pursuant to a forum selection clause."

> 3. The burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute. <u>See In re Ricoh Corp.</u>, 870 F.2d 570, 573 (11th Cir. 1989).

> 4. The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general. <u>See In re Ricoh Corp.</u>, 870 F.2d at 573-74 (considering whether the clause was "freely and fairly negotiated by experienced business professionals" and whether there was any fraud, duress, misrepresentations, or other misconduct in connection with the agreement to the forum selection clause).

> 5. Under Section 1404(a), the court should consider "the convenience of parties and witnesses" and "the interest of justice," with a choice of forum clause "a *significant* factor that figures *centrally* in the district court's calculus." <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988)(emphasis added). "Thus, while other factors might 'conceivably' militate against a transfer . . . the venue mandated by a choice of clause rarely will be outweighed by other 1404(a) factors." <u>In re Ricoh Corp.</u>, 870 F.2d at 573.

> 6. By enforcing the contractual forum, the Court is not attempting to limit the plaintiff's usual right to choose its forum, but is enforcing the forum that the plaintiff

5

has already chosen. <u>In re Ricoh Corp.</u>, 870 F.2d at 573.

7. The financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause. <u>See Bonny v. Society of Lloyd's</u>, 3 F.3d 156, 160 n. 11 (7th Cir. 1993).

8. No case has been cited indicating that congestion of the selected forum's court docket should be grounds to avoid enforcement of a forum selection clause.

Therefore, in order to overcome the *prima facie* validity and the enforcement of a forum selection clause, the plaintiffs must establish that judicial enforcement of the clause would be improper due to an "exceptional situation." <u>See In re Ricoh</u>, 870 F.2d at 574.

The evaluation of these factors is made relatively easy by the plaintiff's own admissions in his response to Facebook's motion to transfer. Specifically, the plaintiff states, "The majority of the factors do not favor the defendant or the plaintiff. The convenience of the witnesses and parties does not favor either the Plaintiff or the Defendant." (Plaintiff's Response to Motion to Transfer, at 5). Likewise, the plaintiff states, "In the same manner, the locus of operative facts, location of documents, and the forum's familiarity with governing law do not favor either

6

party.   The  operative  facts  occurred  both  in  California (Defendants' actions) and Georgia (Plaintiff's actions) and documents related to these facts exist in both jurisdictions." (Plaintiff's Response to Motion to Transfer, at 6).   By these admissions, the  court  concludes  that  the  plaintiff  has  not demonstrated the "exceptional situations" necessary to overcome the presumption that the forum selection clause should be enforced.

In addition to the plaintiff's own admissions contained in its response  to  the  motion  to  transfer,  the  court  conducted  an independent review of the § 1404(a) factors, and it concludes that these  factors  weigh  in  favor  of  transfer.    In  reaching  this conclusion, the court notes that the plaintiff and Facebook agreed to California as the forum for "any dispute" that arose regarding the use and service in the TOU, that both defendants and several potential  witnesses  reside  in  California,  that  substantial documents, records, and systems are located in California, and that there appears to be no witnesses or documents, other than the plaintiff, located in Georgia.    And, most  importantly,  the complaint alleges that the events giving rise to the plaintiff's causes  of  action  occurred  in  California,  not  in  Georgia. Therefore, the court concludes that the plaintiff has failed to demonstrate either "exceptional circumstances" that would require

7

relief from their contractual burdens of the TOU or that the § 1404(a) factors weigh in favor of this court's retention of this case.

In his response, the plaintiff argues that three specific factors favor retention of this case. In particular, the plaintiff argues that Facebook has overwhelming resources, that the plaintiff's choice of forum must be taken into account, and that Georgia has an interest in protecting its residents. Of course, these are all valid arguments; however, these factors even when considered in combination do not constitute the sort of "exceptional circumstances" warranting the non-enforcement of a valid forum selection clause.

Having found that the forum selection clause was broad enough to include Counts I and II of the plaintiff's complaint, i.e., allegations of copyright infringement and Lanham Act violations, the court finds that it is also within its discretion pursuant to 28 U.S.C. § 1404(a) to transfer all of the claims against all defendants to United States District Court for the Northern District of California in order to avoid piecemeal litigation as well as to conserve judicial resources.[1]

------------------------------------------------------------

[1] Count III of the complaint alleges violations of unfair competition under the Georgia Deceptive Trade Practices Act. Even

8

For the reasons set forth above, defendant Facebook's motion to transfer [Doc. No. 13] this matter to the United States District Court for the Northern District of California is hereby GRANTED. The Clerk of the Court is directed to transfer this case to the United States District Court for Northern District of California.

SO ORDERED, this 15th day of January, 2010.

ROBERT L. VINING, JR.
Senior United States District Judge

---

if this claim did not fall within the forum selection clause's broad scope, the court would exercise its discretion to transfer this claim as well to avoid piecemeal litigation and to conserve judicial resources.

9