ROBERT S. ARNS
(#65071, rsa@arnslaw.com)
JONATHAN E. DAVIS
(#191346, jed@arnslaw.com)
STEVEN R. WEINMANN
(#190956, srw@arnslaw.com)
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel: (415) 495-7800
Fax: (415) 495-7888

JONATHAN M. JAFFE, ESQ.
(# 267012, jmj@jaffe-law.com)
**JONATHAN JAFFE LAW**
3055 Hillegass Avenue
Berkeley, CA 94705
Telephone: (510) 725-4293
Attorneys for Plaintiffs

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>Defendants. | Case No. CV 11-01726 LHK (PSG)<br><br>**DECLARATION OF HONORABLE EDWARD A. INFANTE (RET.) IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE PROPOSED CLASS SETTLEMENT** |

1.

I, Edward A. Infante, hereby state and declare:

1. I serve as a mediator with JAMS, the nation's largest private provider of alternative dispute resolution services. As a former Chief Magistrate Judge of the United States District Court for the Northern District of California, I have more than 30 years of dispute resolution experience and have conducted more than 3,000 settlement conferences. I have particular expertise in complex litigation, including antitrust, consumer, securities fraud, and shareholder class actions. As relevant to the settlement here, I have mediated and overseen the settlement of more than 100 class actions, including privacy cases. I make this statement in support of Plaintiffs' Motion for Preliminary Approval of the Proposed Class Settlement, which seeks the Court's approval of the settlement reached by the Parties on May 29, 2012. Except as otherwise noted, I have personal knowledge of the facts stated herein, and if called upon as a witness, I could and would testify competently thereto.

### THE MEDIATION AND SUBSEQUENT DEVELOPMENTS

2. The Parties approached me to mediate *Fraley v. Facebook Inc.*, and I agreed. On March 1, 2012, the Parties engaged in an all-day mediation session at JAMS. Both sides were well represented by experienced and competent counsel who had previously appeared before me on many occasions. Prior to the mediation, both sides submitted lengthy mediation statements, each setting forth its view of the factual, legal, and procedural issues in the case. In addition, lead counsel for both sides (Robert Arns for Plaintiffs and Michael Rhodes for Facebook) met and conferred prior to the mediation. It appeared from the briefing that each side had a complete grasp of the issues and was well prepared to attempt to resolve the case.

3. From both the briefing and the conduct of the mediation, it was clear that the Parties had conducted substantial and comprehensive discovery. As of the date of the settlement, I understand that the discovery completed has included:

- 505 Requests for Production of Documents propounded
  - Documents produced by Facebook in response: far in excess of 200,000 pages
  - Documents produced by Plaintiffs in response: approximately 7,180 pages
- 646 Requests for Admission propounded

- 130 Interrogatories propounded
- Over 20 depositions completed, including 7 expert depositions, totaling almost 5,000 pages of transcripts
- Numerous expert reports on both sides

4. Since the mediation on March 1, 2012, I have been in contact with the Parties to continue to supervise settlement discussions. During that time, I have also reviewed the transfer order in *E.K.D. v. Facebook, Inc.* (now *C.M.D. v. Facebook, Inc.*), in which the District Court for the Southern District of Illinois held that minors were bound by Facebook's terms of use (known as the "Statement of Rights and Responsibilities"), which ruling may have major implications in this case. In addition, I have reviewed the briefing on Plaintiffs' Motion for Class Certification in this case, including the moving, response, and reply papers. I have also received reports on the various meetings, settlement discussions, and communications between Plaintiffs' and Facebook's attorneys after March 1, 2012, leading up to the settlement on May 29, 2012.

## THIS IS A NOVEL CASE AND THE OUTCOME WAS UNCERTAIN

5. Having reviewed the pertinent documents in the case, I believe that there was considerable uncertainty as to its outcome. As set forth below, both Parties faced significant risks in pursuing and defending these claims, which raised numerous complex issues of first impression. In my view, absent a settlement, these issues would continue to be hotly contested at the trial court level, and perhaps for many years in the appellate courts.

6. Plaintiffs' untested theory of liability raises numerous issues not previously litigated in either state or federal court. According to Plaintiffs, Facebook is a social media company that derives its revenue from advertising. At issue in the case is a new form of alleged advertising called "Sponsored Stories," which Plaintiffs claim displays the Facebook names and profile pictures of Facebook Users in connection with commercial content, in violation of California Civil Code § 3344. According to Plaintiffs, Facebook claims that Sponsored Stories are more effective than other marketing products. Plaintiffs also contend that Facebook has the data necessary to determine which Facebook Users are in the class and to calculate each

3.

individual class member's damages. Facebook disputes Plaintiffs' allegations, denies liability, and denies that class treatment is appropriate.

## CLASS CERTIFICATION WAS UNCERTAIN

7. Facebook contends that class treatment is inappropriate for many reasons, including because issues common to the class will not drive the litigation; individualized questions predominate as to both liability and damages; and class action treatment is not a superior approach to this litigation. Although I express no view as to whether a class should be certified, I note that the following arguments in Facebook's opposition to class certification present substantial hurdles to certification:

8. ***Implied consent.*** Facebook has argued that substantial numbers of Facebook Users (and minor Users' parents) have impliedly consented to appear in Sponsored Stories through a variety of means, including by using Facebook (and/or taking particular actions on Facebook) with knowledge that they could later appear in "commercial, sponsored, or related content." Facebook contends that the issue of implied consent (well established by California case law as being sufficient under Civil Code § 3344) is highly individualized and not susceptible to classwide resolution. Because lack of consent is an element of Plaintiffs' claims, this raises uncertainty as to whether these claims can be maintained as a class action.

9. ***Use of Name and Likeness.*** Facebook Users frequently use pseudonyms, as opposed to their real names, and frequently use profile pictures that do not contain their likenesses. Facebook has argued that it does not track and has no way of knowing whether a person has uploaded his or her own image or is using his or her name or a recognizable nickname at any given time. Since members are free to change their names and profile pictures at will, determining whether they could have been recognized by their friends—which Facebook argues is an element of Plaintiffs' proof—could be difficult to do on a classwide basis.

10. ***Newsworthiness.*** California Civil Code § 3344(d) contains an exception to the consent requirement of subdivision (a), for use of a likeness "in connection with any news, public affairs, or sports broadcast or account, or any political campaign." Facebook has argued that whether a given Sponsored Story is newsworthy requires an individualized examination on a

4.

story-by-story basis. Thus, this element could also be difficult to prove using classwide evidence.

11. **Class Action Preclusion.** In its opposition to class certification, Facebook also raised the issue of whether claims under California Civil Code § 3344 were intended by the Legislature to be brought as class actions. A holding that a class case was prohibited would leave Plaintiffs without the ability to continue on a class action basis.

## POST-CERTIFICATION UNCERTAINTY

12. Even if a class were certified, there would be substantial risk to Plaintiffs with respect to summary judgment, trial and appeal. I briefly outline some of the key issues below.

13. **Litigation Risk on the Merits.** Facebook's arguments on summary judgment are likely to include: (1) express consent under Facebook's terms of use, through which Users authorize Facebook to display their names and likenesses in "commercial, sponsored, or related content;" (2) implied consent, as discussed above; (3) minor consent (particularly in light of the *E.K.D./C.M.D.* transfer order enforcing the Facebook Statement of Rights and Responsibilities over the objections of minors); (4) preemption under the Children's Online Privacy Protection Act, 15 U.S.C. § 6502, which Facebook has raised in other matters, and prevailed upon in one action; (5) that Plaintiffs' methods for proving injury and measuring damages are not legally or factually tenable. Each of these arguments could be raised, and could potentially succeed, on summary judgment, at trial, or on appeal. In addition, Facebook raised, but did not prevail on, a number of other arguments in its Motion to Dismiss, including statutory immunity under the Communications Decency Act § 230, lack of liability under California Civil Code § 3344(d) and the First Amendment, lack of Article III standing, and lack of injury. These issues present additional defenses for Facebook in the district court and/or bases for appeal, should Plaintiffs prevail after proceedings in this Court.

14. **Attorneys' Fees Risk.** Civil Code § 3344 includes a prevailing party attorneys' fees provision. This is obviously a substantial risk of litigation in this case, where Facebook has mounted a vigorous defense. These costs would only increase if the case were to reach the

5.

appellate courts. In addition, the fact that Facebook has sought its attorneys' fees in previous, similar cases is an indication that is likely to pursue its attorneys' fees in this case.

15. ***Injunctive Relief Litigation Risk.*** Plaintiffs also faced the risk that the Court may not order the types of changes to Facebook's practices that class counsel has been able to negotiate. Courts are understandably reluctant to micro-manage the business of defendants. In a settlement, Facebook and class counsel are better able to work together to craft stringent, but not unworkable, solutions to the issues alleged in the Complaint than would the Court with advice from a victorious plaintiff and resistance from a losing defendant.

## A CLAIMS-MADE RECOVERY IS NOT FEASIBLE

16. In my opinion, a "claims made" settlement structure (or similar method of providing money to each class member) would not be workable, as there are too many class members (and thus potential claimants), likely low rates of redemption, no set and uniform amount of money that each class member paid or was owed, and no product or service purchased that can be supplemented with economic or product relief (e.g., warranty extension, free software).

17. In addition, the facts of this case do not lend themselves to an award of meaningful monetary relief for individual class members. The sheer size of the class, coupled with the lack of any economic relationship between the class members and Facebook (Facebook is free, and there is no economic or purchasing relationship that could warrant partial restitution, refunds, additional products, or credits), make it very difficult to determine the fact and extent of injury to a given class member. Therefore, this case is not appropriate for a claims-made settlement structure. This was a factor I emphasized from the outset of my discussions with the Parties. In particular, the size of the award necessary to incentivize class members to seek out the award would be too large on an aggregated basis. According to Plaintiffs, Facebook.com has over 153 million Users in the United States, and over 51 million of these are minors. (Second Amended Complaint ¶ 13.) Assuming that the class of persons who actually appeared in Sponsored Stories is 100 million members (*see* Facebook Opp. to Class Cert. 7), a damage award of only one dollar ($1) for each class member would cost $100 million. Ten dollars ($10) would

6.

be more meaningful, but would still represent a very small amount to each class member and would require a settlement fund of a billion dollars.

18. The above analysis shows that an award of any amount of money that would actually provide a benefit to the class members, plus costs of notice and a claims process, is not practicable. Further, a statutory damages award under California Civil Code § 3344 could be a minimum of $750 per person. Multiplying that amount by the size of the class leads to an astronomically large minimum of $75 billion. Facebook would likely have strong bases for appealing such an award on due process grounds. This would be similar to the arguments that led to a ruling that punitive damages must be proportional to the wrong. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575, 116 S. Ct. 1589, 1599 (1996) (holding that courts in reviewing punitive damages awards must consider: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases).

### *CY PRES* RELIEF IS APPROPRIATE

19. Thus, the only real way to provide consideration of meaning to the class is to have Facebook pay a substantial sum (here, the Parties have agreed to $10,000,000.00) into a multi-year *cy pres* fund, to be distributed to groups whose charters set out actions and programs relevant to advocacy related to the purposes for which the case was brought. This will further the goals and interests raised in the suit for years to come.

20. The Court of Appeals for the Ninth Circuit, and other jurisdictions, have recognized that in some cases, the inability to award meaningful amounts in damages to class members justifies the use of *cy pres* to further the interests of a class. *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). In *Catala v. Resurgent*, 2010 U.S. Dist. LEXIS 63501 (S.D. Cal. June 22, 2010), a *cy pres* settlement was approved where the amounts available to the class would have been trivial when divided among the class members (about 13 cents per class member). The American Law Institute has also approved of the use of *cy pres* in such circumstances. *See* American Law Institute, Principles of the Law of Aggregate Litigation, §

3.07 (Am. Law Inst. 2010). It is my opinion that the instant case is just the sort of vehicle for which the *cy pres* doctrine is well-suited in the context of a settlement.

21. In terms of which *cy pres* recipients are appropriate, the ones being discussed by the Parties seem to be in keeping with the rules in the Ninth Circuit. *Cy pres* distributions must account for the nature of the plaintiff's lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity. *See Nachsin*, 663 F.3d at 1036.

### INJUNCTIVE RELIEF

22. I have reviewed the prospective injunctive relief obtained for the class. This injunctive relief is designed to provide additional notice to Facebook's members of exactly what occurs when they take certain actions on Facebook. Notice is relevant to consent. A Facebook member who is apprised of the existence and mechanics of Sponsored Stories is capable of taking steps to limit his or her participation. The injunctive relief agreed to as part of the settlement also includes engineering additional controls to enable Users to prevent specific actions from appearing in Sponsored Stories. This is in harmony with the purpose of California Civil Code § 3344, which requires prior consent before using a person's name or likeness in certain advertisements and commercial content. It also furthers the goals of California's Unfair Competition Law, Business & Professions Code § 17200 *et seq.*, which is intended to prevent fraudulent, unfair, and/or illegal conduct. The changes to the Statement of Rights and Responsibilities, and other pages on Facebook, will make very clear how Sponsored Stories work and that Users may be featured in them if they take certain actions. This will address Plaintiffs' charges that the existing disclosures were inadequate or fraudulent.

23. In sum, as a result of the injunctive relief, Facebook Users will be better informed and thereby better able to confer free and knowing consent to the use of their names and likenesses in commercial and sponsored content such as the challenged Sponsored Stories.

### THE SETTLEMENT PROCESS

24. Class counsel advocated strongly on behalf of all class members. The resulting settlement represents a highly favorable outcome for Plaintiffs and provides tremendous benefits

8.

to the class and to the public. The Parties' proposed settlement resulted from fully-informed, arms-length negotiations. There is no indication whatsoever of collusion in the case and, on the contrary, a short review of the Parties' discovery correspondence reveals the intensity of the adversarial process. Indeed, the record on the class certification motion, which the Parties partially shared with me, reveals an intensely litigated case that has come to a logical point of inflection for settlement—the Court's ruling as to whether the case can be maintained as a class action. Based on my experiences as both a judge and private mediator, my observations of the mediation session, subsequent developments, and discussions with lead counsel for both Plaintiffs and Facebook (and I should note that I know both counsel well from numerous prior interactions), and my review of the information exchanged, it is my opinion that the process leading to the proposed settlement bears all the hallmarks of procedural fairness.

25. I am available to provide additional information about events related to the mediation session in this case upon the request of the Court.

I declare under penalty of perjury that the foregoing is true and correct. This document was executed on June 8, 2012 in San Francisco, Ca.

_____
Edward A. Infante

9.