ROBERT S. ARNS (#65071, rsa@arnslaw.com)
JONATHAN E. DAVIS (#191346, jed@arnslaw.com)
STEVEN R. WEINMANN (#190956, srw@arnslaw.com)
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:   (415) 495-7800
Fax:   (415) 495-7888

JONATHAN M. JAFFE (# 267012, jmj@jaffe-law.com)
**JONATHAN JAFFE LAW**
3055 Hillegass Avenue
Berkeley, CA 94705
Tel:   (510) 725-4293
Fax:   (510) 868-3393

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL. a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W. T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>Defendants. | **Case No. CV 11-01726 LHK**<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: July 12, 2012<br>Time: 1:30 p.m.<br>Courtroom: 8<br>Judge: Hon. Lucy H. Koh<br>Trial Date: December 3, 2012 |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT
Case No. CV 11-01726 LHK

1

# TABLE OF CONTENTS

2

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL........................... 1

3

STATEMENT OF ISSUES .................................................................................................... 1

4

MEMORANDUM OF LAW .................................................................................................. 2

5

I.      INTRODUCTION .................................................................................................... 2

6

II.     TERMS OF THE PROPOSED SETTLEMENT ............................................................. 5

7

    1.      The Proposed Settlement Class.................................................................... 5

8

    2.      The *Cy Pres* payments ................................................................................. 6

9

    3.      Injunctive Relief........................................................................................... 6

10

    5.      Plaintiffs' Litigation Costs and Fees............................................................ 8

11

    6.      Service Payments to Class Representatives.................................................. 8

12

    7.      Release By Settlement Class Members......................................................... 9

    8.      Notice.......................................................................................................... 9

13

III.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................................... 9

14

A.      Facts Concerning Defendant Facebook, Inc. ..................................................... 9

15

B.      Facts Concerning The Class Representatives .................................................... 12

16

C.      Procedural History ........................................................................................... 12

17

D.      Discovery.......................................................................................................... 13

18

E.      Settlement Negotiations.................................................................................... 14

19

IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
    SETTLEMENT ...................................................................................................... 14

20

A.      The Settlement Meets All Requirements For A Presumption Of Fairness..................... 14

21

    1.      The Total Amount Offered In Settlement Is Valued At $123,537,500. ...................... 16

22

        a.      The Injunctive Relief Is Valued at $103.2 million..................................................... 16

23

        b.      The cy pres, payments, attorneys' fees and service awards, and notice and
        administration costs are worth over to $20 million.................................................... 17

24

        c.      The Service Awards to the Class Representatives are reasonable and valuable...... 18

25

    2.      Risks Of Further Litigation........................................................................................ 18

B.      This Case Presents Ideal Circumstances Appropriate For *Cy Pres* Distribution In Place

26

of Damages Awards To Class Members................................................................ 20

27

    1.      Case law supports the use of cy pres awards in place of damages. ............................ 21

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT
Case No. CV 11-01726 LHK

   2.   The proposed *cy pres* recipients are appropriate under the Ninth Circuit's standards 23

V.   The Proposed Settlement Class Should be Certified for Settlement Purposes and
Plaintiff's Counsel Appointed As Class Counsel ........................................................... 24

A.   Numerosity: ................................................................................................................ 24

B.   Typicality & Commonality Under Rule 23(a). ............................................................. 25

C.   Adequacy of Representation. ........................................................................................ 27

D.   The Proposed Settlement Class Meets the Requirements of Rule 23(b) (3) ................. 28

   1.   A class action is the superior means of adjudication ................................................... 29

E.   Nationwide Certification .............................................................................................. 30

F.   Appointment of Class Counsel under Rule 23(g). ........................................................ 31

VI.   The Court Should Order Dissemination of the Proposed Class Notice .......................... 32

VII.   A HEARING FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND
FOR PAYMENT OF ATTORNEYS' FEES SHOULD BE SET, ALONG WITH PRE-
HEARING EXCLUSION AND OBJECTION DEADLINES ...................................... 34

VIII.   THE COURT SHOULD APPOINT Garden City Group AS SETTLEMENT
ADMINISTRATOR ...................................................................................................... 34

IX.   CONCLUSION ............................................................................................................. 35

# TABLE OF AUTHORITIES

**Federal Cases**

*Alvarado v. Nederend*, No. 1:08-CV-01099. 2011 U.S. Dist. LEXIS 2326

(E.D. Cal. Jan. 11, 2011) ................................................................................................ 14, 15

*Amchem Prods.. Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 24, 28, 29

*Ameritrade Account Holder Litig.*. 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ................... 33

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001), *cert. denied* 537 U.S. 812 (2002) ............. 26

*Bateman v. Am. Multi-Cinema, Inc..* 623 F.3d 708 (9th Cir. 2010) ........................................... 30

*Battle v. Liberty Nat'l Life Ins. Co.*, 770 F. Supp. 1499 (N.D. Ala. 1991) ................................. 32

*Bebchick v. Pub. Utils. Comm'n*, 318 F.2d 187 (D.C. Cir. 1963) .............................................. 22

*BMW of N. Am., Inc. v. Gore*. 517 U.S. 559 (1996) .................................................................. 21

*Boyle v. Giral*, 820 A.2d 561 (D.C. 2003) .............................................................................. 22

Catala v. Resurgent Capital Services L.P., No. 08CV24012010 U.S. Dist. LEXIS 63501

(S.D. Cal. June 22, 2010) ..................................................................................................... 21

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004) ........................................... 30

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .............................................. 33

*Diamond Multimedia Sys., Inc. v. Super. Court*, 19 Cal. 4th 1036 (1999) ................................. 31

*Downing v. Abercrombie & Fitch.* 265 F.3d 994 (9th Cir. 2001) .............................................. 19

*Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147 (1982) .................................................. 25, 26

*Gypsum Antitrust Cases*, 565 F.2d 1123 (9th Cir. 1977) ......................................................... 32

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................. passim

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) .................................................... 25

*Heartland Payment Sys.. Inc.*, No. 09-2046 2012 U.S. Dist. LEXIS 37326

(S.D. Tex. March 20, 2012) ............................................................................................... 22

*Holocaust Victim Assets Litig.*, 424 F.3d 132 (2d. Cir. 2005) ...................................................... 22

*Leuthold v. Destination Am. Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004) .......................................... 30

*Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189 2011 U.S. Dist. LEXIS 114821

(N.D. Cal. Oct. 5, 2011) ................................................................................................... 24

*Marr v. E. State Hosp.*, 2002 U.S. Dist. LEXIS 28460 (E.D. Wash. Apr. 29, 2002) ................ 27

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ................................. 22

*MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D. N.Y. 2010) ................................... 22

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ....................................................... 21, 24

*Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................ 18

*Parkinson v. Hyundai Motor Am., Inc.*, 258 F.R.D. 580 (C.D. Cal. 2008) ................................ 29

*Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24 (1st Cir. 2009) ............................ 22

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .................. 21, 24

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) .................................................................. 18

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................... 14

*Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005) ................................................................... 29

*United States v. Truckee-Carson Irrigation Dist.*, 71 F.R.D. 10 (D. Nev. 1975) ...................... 32

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) .............................................. 29

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ................................... 29

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..................................................... 25, 26

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ......................................... 29

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) .............................................. 29, 30

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180. *am.* 273 F.3d 1266 (9th Cir. 2001) . 24, 29

## Statutes

Cal. Civ. Code § 1542 ................................................................................................................. 9

Cal. Civ. Code § 3344 ......................................................................................................... passim

California Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*............................. passim

Children's Online Privacy Protection Act. 15 U.S.C. § 6502 ...................................................... 20

Class Action Fairness Act, 28 U.S.C. § 1715.............................................................. 1, 2, 33, 35

Communications Decency Act, 47 U.S.C. § 230 ........................................................................ 19

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 ............................................................ 31

## Rules

Fed. R. Civ. P. 23(a) ............................................................................................................. passim

Fed. R. Civ. P. 23(b)............................................................................................................. passim

Fed. R. Civ. P. 23(c) ................................................................................................................... 33

Fed. R. Civ. P. 23(e) ............................................................................................................. 32, 34

Fed. R. Civ. P. 23(g).................................................................................................................... 31

Fed. R. Civ. P. 23(h).................................................................................................................. 8, 34

## Treatises

A. Conte & H. Newberg, 3 *Newberg on Class Actions* § 7:37 (West 4th ed. 2002).................... 6

Charles Alan Wright, *et al., 7A Federal Practice and Procedure* § 1778 (3d ed. 2005)........... 29

Manual for Complex Litigation (Fourth) § 21.632 (2012)........................................................... 24

Manual for Complex Litigation (Fourth) § 21.633 (2012)........................................................... 34

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on July 12, 2012, at 1:30 p.m., or as soon thereafter as counsel may be heard, Plaintiffs and proposed Class representatives Susan Mainzer, James H. Duval, and W.T. ("Plaintiff") shall bring on for hearing before the Honorable Lucy H. Koh, United States District Judge, in the United States District Courthouse, Northern District of California, San Jose Division, Courtroom 8, 280 South First St., San Jose, CA, 95113, their Motion for Preliminary Approval of Class Action Settlement.

The Motion seeks an Order: (1) granting preliminary approval of the proposed Stipulation of Settlement (the "Settlement Agreement") between Plaintiffs and Defendant Facebook, Inc. ("Facebook" or "Defendant"); (2) provisionally certifying the Settlement Class, as defined below, for settlement purposes only; (3) appointing Plaintiffs as Class Representatives and their counsel as Class Counsel; (4) approving the form and manner of notice to Settlement Class members and directing that the settlement notices be disseminated in the manner described in the Settlement Agreement; (5) establishing deadlines for requests for exclusions from the Settlement Class (as defined below), and the filing of objections to the proposed settlement; (6)appointing a Settlement Administrator; (7) finding that Facebook, Inc. has complied with the Class Action Fairness Act, 28 U.S.C. §1715, and (8) scheduling a fairness / final approval hearing to consider the fairness of the Settlement. This Motion is based on this Notice of Motion, the attached Memorandum of Law, the accompanying Declarations of Robert S. Arns, Steven R. Weinmann, Jonathan M. Jaffe, Fernando Torres, and Judge Edward A. Infante (Ret.); and the Settlement Agreement and its exhibits, and the pleadings, Orders, transcripts and other papers on file in this action; and any further evidence and arguments as may be presented at the hearing of this matter.

## STATEMENT OF ISSUES

1. Whether the Court should grant preliminary approval of the proposed Settlement with Defendant Facebook, Inc., including conditional certification of the Settlement Class, authorizing Plaintiffs and Class Counsel to represent the proposed Settlement

Class, because the Settlement Class satisfies the requirements of Rules 23(a) and (b) of the Federal Rules of Civil Procedure, preliminarily finding that the proposed Settlement is fair, reasonable, and in the best interests of the proposed Settlement Class, and that it warrants notifying the Settlement Class of the terms of the proposed Settlement and of their rights in connection with the proposed Settlement. and appoint Garden City Group as Settlement Administrator.

2. Whether the Court should approve the form and content of the e-mail and long form notices of settlement for the Settlement Class (the "Settlement Notices"), in substantially the forms attached as Exhibits 2. 3 and 4 to the Settlement Agreement. and whether the Court should direct the Settlement Notices to be disseminated in the manner described in the Settlement Agreement, Section 3.3.

3. Whether the Court should establish deadlines for requests for exclusion from the Settlement Class and the filing of objections to the proposed Settlement: set a hearing date for the Fairness Hearing on Final Approval of the Settlement and its terms, and for Plaintiff's motion for an award to Plaintiff's counsel for their attorney's fees and costs and an award to Plaintiffs for their service in this action.

4. Whether the Court should find that Facebook has satisfied the Class Action Fairness Act, 28 U.S.C. §1715 by providing the appropriate notices.

## MEMORANDUM OF LAW

## I. INTRODUCTION

Plaintiffs Susan Mainzer, James H. Duval and W.T. bring this Motion for Preliminary Approval of Class Action Settlement. This class action involves the critical issue of proper notice to users of social media as to their relationship to advertising online, such that there is notice and therefore consent as to the use of their respective likenesses and names in connection with advertising. At issue in this case is defendant Facebook, Inc.'s new advertising vehicle, "Sponsored Stories."

Plaintiffs bring claims for their right of publicity under California Civil Code § 3344 and California's Unfair Competition Law, Business & Professions Code § 17200 et seq. They

-2-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

allege that their names and likenesses had been used without their prior consent in "Sponsored Stories" ads shown to their online friends on Facebook.com. After more than a year of hard fought litigation, including two motions to dismiss, twenty-one depositions, and the briefing of a motion for class certification, the Parties entered into mediation with the Hon. Edward A. Infante, the retired former Chief Magistrate Judge of the Northern District of California and ultimately reached the proposed settlement.

The proposed injunctive relief will provide significant benefits to the Class Members, and to future Facebook members. This relief will include changes to Facebook's website, to remain for at least two (2) years, to make it clear to all persons with Facebook accounts ("Users") and the parents or legal guardians of minor Users that their names and likenesses may be used in "Sponsored Stories" ads, thereby ensuring that Facebook has their consent to such uses. Further, the Settlement increases the ability of Users and parents to control the extent to which their (or their children's) actions may be used in Sponsored Stories. The injunctive relief thus includes relief in the form of (1) a revision of the Facebook terms (Statement of Rights and Responsibilities, or "SRR"), section 10.1 that clarifies to users that they give Facebook permission to use their name and likeness in Sponsored Stories ads, (2) a mechanism that will allow users to see and control which actions they have taken that have led to their being featured in Sponsored Stories ads, (3) additional provisions requiring that Users under 18 years of age represent that they have received parental consent to be featured in Sponsored Stories ads, (4) additional provisions obtaining consent from parents or legal guardians of user under 18 years of age establishing their consent to have these minor Users featured in Sponsored Stories; (5) additions to Facebook's "Family Safety Center" that explain Sponsored Stories ads and enable parents to prevent their children from being featured in Sponsored Stories ads, and (6) an opportunity for Plaintiffs' counsel to review Facebook's website materials regarding advertising and ensure that Sponsored Stories are clearly identified as ads, with the right to move the Court to call for an independent audit (for which Facebook will pay) if necessary.

1    The Settlement also provides substantial value to the class. The changes to the
2  SRRs alone, including the mechanism for excluding Class Member actions from Sponsored
3  Stories, have been valued by Plaintiffs' expert economist Fernando Torres at \$103.2 million,
4  based on an analysis of revenue generated by Sponsored Stories. Declaration of Fernando
5  Torres, ¶11. In addition, Facebook has agreed to pay the substantial costs of notice and
6  administration, and a very large amount of money--\$10 million--to go to *cy pres* recipients.
7  These recipients are entities which have been and are engaged in activities which will benefit
8  the entire Class as well as the public at large, as they will advocate for issues such as the right
9  of protection of the Class members' right of publicity on the internet and specifically on social
10 media websites. The *cy pres* recipients also include entities which are dedicated to the
11 protection of the rights and welfare of minor children, as they are affected by social media in an
12 online context.[1]

13    Facebook has also agreed to pay the attorneys' fees and costs of up to \$10 million and
14 \$300,000, respectively, and service awards to the three class representatives (each of whom
15 devoted substantial time in being deposed and answering discovery and monitoring the
16 litigation) totaling \$37,500, and all costs of administration of the Settlement. The agreement as
17 to the amount of attorneys' fees and costs was reached after conclusion of the negotiation of the
18 amount and type of relief to the class. Neither fees nor the service awards reduce the amounts
19 benefitting the Class through *cy pres*.

20    This case presents the classic scenario for approval of certification and settlement of a
21 class action: millions of class members, and a policy or practice by the defendant which
22 Plaintiffs contend is applied uniformly to all class members. The proposed *cy pres* and
23 injunctive relief addresses the issues identified in the Complaint and will provide significant
24 benefits in terms of information available and remedying the asserted lack of consent issues.
25 The injunctive relief will clarify the ways in which Users' actions may lead to their names and

26

27  _____
[1] A settlement which provides damages to individual class members is economically infeasible here. Facebook
28 earned only, on average,          in gross revenue per Class Member from Sponsored Stories. Even if
class members were given this entire amount, after the cost of administering the settlement, there would be little
left to distribute and the amounts would not be worthwhile to the Class Members. *See infra* Section IV(B).

-4-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

likenesses being included in Sponsored Stories ads, and they will have the tools to limit further appearances in Sponsored Stories ads. The total relief, put into monetary terms, is worth $123,537,500.

## II. TERMS OF THE PROPOSED SETTLEMENT

The terms of the Settlement are as follows:

### 1. The Proposed Settlement Class

Plaintiffs request that, pursuant to the terms of the Settlement, the Court certify the following proposed Settlement Class:

> **(a)** **Class:** All persons in the United States who have or have had a Facebook account at any time and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, at any time on or before the date of entry of the Preliminary Approval Order.

> **(b)** **Minor Subclass:** All persons in the Class who additionally have or have had a Facebook account at any time and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, while under eighteen (18) years of age, or under any other applicable age of majority, at any time on or before the date of entry of the Preliminary Approval Order.

Settlement Agreement ("S.A."), Arns Decl. Ex. 1, at §§1.2, 1.11. The Class definition sought here differs slightly from that requested in the Second Amended Complaint (which also had certain exclusions), in that it includes members who joined through the date of preliminary approval of the settlement.[2] Plaintiffs requested in their Class Certification Motion and have agreed to a longer class period, because they determined that the applicable SRRs did not change significantly. *See infra* page 11. Thus, it is and was Plaintiffs' contention that all Facebook members are similarly situated when it comes to the issues of consent based upon

---

[2] The definition was: "All natural persons in the United States who had an account registered on facebook.com as of January 24, 2011, and had their names, photographs, likenesses or identities associated with that account used in a Facebook Sponsored Stories advertisement ("the Class"). Subclass of Minors. All persons in the Plaintiff Class who additionally have had their names, photographs, likenesses or identities used in a Facebook Sponsored Stories ad while under 18 years of age ("the Minor Subclass")." Second Amended Complaint,¶95, Ex. 1.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK

the representations by Facebook in the SRRs and the agreement with Facebook.[3]

## 2. The *Cy Pres* payments

Defendant shall deposit the total sum of Ten Million Dollars ($10,000,000) as the Settlement Payment required by the Agreement in an interest-bearing Settlement Fund, within 90 days of the Final Settlement Date as defined in the Settlement Agreement. S.A., §§2.2, 1.7. These monies shall be paid in *cy pres.* the recipient(s) of which are to be determined by Class Counsel and Facebook and approved by the Court. S.A., §2.2. The proposed recipients are recognized leaders in the fields of online advertising, privacy, and/or safety. The list of tentative recipients of the *cy pres* funds are set forth as Exhibit 1 hereto.

## 3. Injunctive Relief

The Parties have agreed to a stipulated injunction that will provide the relief described below addressing and clarifying the issues of consent and control of the use of the Class members' names and likenesses. Previously, it was in Plaintiffs' view impossible even for a person who carefully pored over Facebook's SRRs and Help Pages to discern exactly what a "Sponsored Story" was, except that it was plain that Facebook distinguished them from "ads," stating expressly that they are "different from ads." Ex. 17 (Help Center Excerpt). Under the terms of the Settlement, Facebook agrees to take the following measures within a reasonable time not to exceed six months following the Final Settlement Date (after the Settlement is approved and the Judgment is final, Arns Decl. Ex. 1, S.A. §§1.7, 2.1):

2.1 Class Relief. Facebook agrees to take the following measures within a reasonable time not to exceed six months following the Final Settlement Date:

(a) Revision of Facebook's Terms of Use. In addition to other changes Facebook reserves the right to make to section 10.1 of its Statement of Rights and Responsibilities, Facebook will revise section 10.1 to include language reading substantially as follows:

About Advertisements and Other Commercial Content Served or Enhanced by Facebook

---

[3]"The class definition may be the one alleged in the complaint, or the class may be redefined by the court, as appropriate."A. Conte & H. Newberg, 3 *Newberg on Class Actions* § 7:37 at 100-101 (West, 4th ed. 2002)(citing cases).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK

Our goal is to deliver advertising and other commercial or sponsored content, such as Facebook Ads and Sponsored Stories, that is valuable to our users and advertisers. In order to help us do that, you agree to the following:

You give us permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. This means, for example, that you permit a business or other entity to pay us to display your name and/or profile picture with your content or information. If you have selected a specific audience for your content or information, we will respect your choice when we use it.

If you are under the age of eighteen (18), or under any other applicable age of majority, you represent that at least one of your parents or legal guardians has also agreed to the terms of this section (and the use of your name, profile picture, content, and information) on your behalf.

(b) **User Visibility and Control Over Sponsored Stories**. Facebook will create an easily accessible mechanism that enables users to view the subset of their interactions and other content that have been displayed in Sponsored Stories. Facebook will further engineer settings to enable users, upon viewing the interactions and other content that have been used in Sponsored Stories, to control which of these interactions and other content are eligible to appear in additional Sponsored Stories.

(c) **Relief for Minor Subclass**.

(i) **Revision of Facebook's Terms of Use**. Facebook will revise its Statement of Rights and Responsibilities to provide that Facebook users under the age of eighteen (18), or under any other applicable age of majority, represent that their parent or legal guardian consents to the use of their name and likeness in connection with commercial, sponsored, or related content, as set forth in the revised section 10.1 (provided above).

(ii) **Parent Educational Information and Parental Control.** Facebook will add a clear, easily understandable description of how advertising works on Facebook to its Family Safety Center (https://www.facebook.com/safety), and it will review and to the extent reasonably feasible implement methods for communicating the availability of such information to parents of minors on Facebook. In addition, Facebook will add an easily accessible link in the Family Safety Center to the tool it currently provides that enables parents to prevent the names and likenesses of their minor children from appearing alongside Facebook Ads (currently available at https://www.facebook.com/help/contact/328678960533614) and Facebook will extend this tool to enable parents to also prevent the names and likenesses of their minor children from appearing in Sponsored Stories. Finally, Facebook will review and to the extent reasonably feasible implement methods for enabling parents to utilize this tool through their own Facebook accounts, without

-7-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

obtaining access to their children's accounts, where appropriate (i.e.. if the minor has confirmed the identity of his or her parent or legal guardian on Facebook).

(d) **Additional Educational Information.** For a period of up to ninety (90) calendar days following the Final Settlement Date. Facebook agrees to make a good faith effort to work with Plaintiffs. through Plaintiffs' Counsel. to identify any educational or other information on www.facebook.com that in Plaintiffs' view does not accurately or sufficiently explain how advertising works on Facebook. Facebook will endeavor to clarify such language.

(e) **Compliance Audit If Court Ordered.** For a period of two years following the Final Settlement Date, Class Counsel shall have the right to move the Court. for good cause shown. for an order requiring one third-party audit to confirm compliance with the provisions of subparts (a) through (d) of Section 2.1 of this Agreement, and Facebook shall have the right to oppose such a motion. In the event the Court requires such a third-party audit. Facebook agrees to conduct a total of one such audit during the two-year period at its own expense and provide the results thereof to Class Counsel.

Nothing described in this Section 2.1 above will inhibit, prevent, or limit Facebook from making product changes, changes to its terms of use (currently referred to as the "Statement of Rights and Responsibilities"), changes to product names or other terminology, or other changes, from time to time, as it deems appropriate in the conduct of its business, provided that such changes are consistent with the relief described above, or to comply with the law.

Settlement Agreement. §2.1, Arns Decl, Ex. 1.

### 4. Costs of Settlement Administration.

Facebook has agreed to pay all reasonable Administration Expenses.   S.A., §2.6.

### 5. Plaintiffs' Litigation Costs and Fees

Subject to the Court's approval at a Fed. R. Civ. P. 23(h) hearing. five days after the Final Settlement Date (as defined in S.A. §1.7), Defendants shall pay the Class Counsel's attorneys' fees and costs in an amount not to exceed $10,000,000 and $300,000, respectively, with respect to the Settlement of the claims of all Settlement Class Members. This amount will be paid separate from. and in addition to. the Settlement Fund. Settlement Agreement, §2.3.

### 6. Service Payments to Class Representatives

Within fourteen (14) calendar days after the Final Settlement Date, providing Class Representatives have given Facebook certain tax documents, and subject to Court approval, Service Payments in a total amount not to exceed $12.500 will be paid to each of the Class

-8-

Representatives. S.A., §2.4.

### 7. Release By Settlement Class Members

Following entry of Judgment, and upon the Final Settlement Date, as defined in the Settlement Agreement, the Settlement Class will have released the "Released Parties" from the "Released Claims," all as defined in the Settlement Agreement, including a waiver of California Civil Code § 1542. S.A., § 4.2. The Release claims as defined, will include all claims raised or which could have been raised in the Complaint based on the factual allegations.

### 8. Notice

Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, the Settlement Administrator will set up a website and post the Long Form Notice. S.A., §§3.3 (a). No more than 30 days following entry of order, Facebook or the Settlement Administrator will begin transmitting the Email Notice by email to each Class Member (including Minor Subclass Members) for whom Facebook has a valid email address, including persons who previously indicated that they do not wish to receive any communications from Facebook. S.A., §3.3(b)(i). Alternatively, Facebook will transmit the Email Notice through the domain of www.facebook.com, which may include use of Facebook's onsite messaging service or other distribution mechanisms that Facebook uses to advise users of important updates, to each Class Member (including Minor Subclass Members). S.A.. §3.3(a)(ii). A summary notice will also be published (i) once in an insertion in the national Monday-Thursday edition of USA Today, and (ii) once by transmission through PR Newswire's US1 distribution service. S.A., §3.3(c). Facebook shall have up to 90 days after entry of preliminary approval of order to complete the dissemination of the Short Form Notice.

## III. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Facts Concerning Defendant Facebook, Inc.

Facebook is the world's largest social networking site which generates most of it

-9-

revenue from advertising. Second Amended Complaint ("SAC") ¶ 13.[4] Facebook has over 153 million Members in the United States; over 51 million of these are minors. *Id*.

On January 25, 2011, Facebook launched a new advertising service called "Sponsored Stories." Ex.22[RFA Response No. 1.3]. Since that time, when a Member posts, "Likes," "Checks-in", or uses an application or game, and the content relates to an ad campaign in some predetermined way, the Member's profile image and name may appear, along with content created by Facebook, as an endorsement in what Plaintiffs contend is a paid advertisement on the pages viewed by some or all of the Friends of that Member. These Sponsored Stories ads typically appeared in the right-hand column along with other ads which have been paid for by Facebook's advertisers. More recently, Sponsored Stories ads have been displayed in the Newsfeed column where they are denoted as "Sponsored." They do **not** appear on pages seen by the Members whose names and/or likenesses are being used. *See* Ex. 7; Ex. 4.

The Sponsored Stories ad service is already enabled for all Members when they sign up, and Plaintiffs contend that Members are unable to opt-out of the service. Exs. 5, 24-26; Ex. 6,Yang Dep Tr., at 140:3-6; Ex. 23, Squires Dep. Tr., at 302:20-303:02. The most common action that leads to an appearance in a Sponsored Story ad, is clicking on a Facebook Like button anywhere on the Internet. Reasons for doing so include being able to thereby take advantage of some offer, or simply in order to be able to see content on a page

At any given time, only a single user agreement was in effect between Facebook and all Class members in the United States. See Ex. 6, Ana Yang Muller Deposition, 166:11-168:9; 169:3-1.[5] That agreement applied uniformly to all Class members during the time period in which it was in effect. *Id*. The user agreement has been modified over time, but only one is in effect at a given time. *Id*. The terms of use effective during the Class Period thus far (generally

---

[4] Declaration of Steven R. Weinmann, Ex. 1. All references which are designated only with "Ex." and a number are citations to exhibits to the Weinmann Declaration; exhibits to other persons' respective declarations are so identified.

[5] Facebook's Amended Resp. And Obj. To Plaintiffs' First Set Of Interrogatories, Response to Interrogatory No. 13, Ex. 10.

referred to as the Statement of Rights and Responsibilities, or "SRR") are listed in the footnote below by the date each went into effect and superseded the prior version.[6] The SRR contains a choice of law provision that establishes California law as the exclusive law which applies to any claim or dispute relating to user's use of the Facebook service.

The current SRR provides in part that:

**10. About Advertisements and Other Commercial Content Served or Enhanced by Facebook**

Our goal is to deliver ads and commercial content that are valuable to our users and advertisers. In order to help us do that, you agree to the following:

1. You can use your privacy settings to limit how your name and profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and profile picture in connection with that content, subject to the limits you place.
2. We do not give your content or information to advertisers without your consent.
3. You understand that we may not always identify paid services and communications as such.

Ex. 21. Plaintiffs contend that neither this version of the SRR nor any of the previous versions of the SRR disclosed to Members the fact that they may appear in Sponsored Stories ads or sought their consent as to appearances in Sponsored Stories. Plaintiffs further contend that a problem with the voluminous "Help Center" (hundreds of linked pages) and the Settings arose from Facebook's failures to notify users of the addition of Sponsored Stories. Prior to the advent of Sponsored Stories, users that visited the "Help Center" for the topic "Where can I edit my privacy settings for ads?" were told "You can edit your ad privacy settings through the "Account Settings" link at the top of any page within Facebook or by clicking here." (Exhibit 8) If a Facebook user clicked on that link, they were taken to a page where they were given the ability to "opt-out" of appearing in all advertisements. Users who did this believed that they had successfully prevented their likeness from being paid with ads. This meant that members

---

[6]SRRs for the Class Period thus far (extending back to when Class members joined) are: May 24, 2007—December 21, 2009, "Terms of Use"; SRR for December 21, 2009—April 22, 2010,; SRR for April 22, 2010—August 25, 2010,; SRR for August 25, 2010—October 4, 2010,October 4, 2010—April 26, 2011; SRR for April 26, 2011—August 25, 2011 (current)). Exs. 16-21.

-11-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK

1 who had disabled their appearance in ads, were still eligible to appear in Sponsored Stories,
2 even though they likely believed they were not appearing in advertisements. Facebook's
3 "Help Center" in some areas states that Sponsored Stories are "different" than Facebook Ads,
4 thus, Plaintiffs allege, leading to further confusion. See Exhibit 16, Exhibit 17.

5 **B. Facts Concerning The Class Representatives**

6      Prior to January 1, 2011, Susan Mainzer uploaded a Facebook Profile picture of herself
7 that clearly bears her likeness. Ex. 7. On March 22, 2010, Ms. Mainzer clicked on the
8 Facebook "Like" button for UNICEF USA. Ex. 7 ; Ex. 8 Mainzer Dep. 62:11-16, 72:4-17;
9 77:23-78:12. Ms. Mainzer's name and profile picture appeared in a UNICEF Sponsored Story
10 on facebook.com and displayed to her Friends. Ex. 7. She was not paid for her appearance in
11 that ad, or for her appearance in others since then. Ex. 9 (Mainzer Response to Int. Nos. 8,
12 11).

13      James H. Duval, a minor at the time (he turned 18 in 2012), prior to January 1, 2011,
14 uploaded a Facebook Profile picture of himself that clearly bore his likeness. Ex. 11. Mr.
15 Duval appeared in Sponsored Stories shown to his Friends. Ex. 2. Three days after Facebook
16 launched Sponsored Stories ads—eight weeks after he clicked on the "Like" button—Mr.
17 Duval (unbeknownst to him) began appearing in Sponsored Stories about Coca-Cola, shown to
18 his friends. Ex.14. At no point did Facebook seek or obtain consent from his parents or other
19 legal guardians to use his name or likeness as required under California law. He was not paid
20 for his appearance in any ads. Ex. 15.

21      Sometime prior to January 1, 2011, representative "W.T," a minor at the time, uploaded
22 a Facebook Profile picture of himself that clearly bears his likeness in the form of a
23 photograph. On Dec. 11, 2010, W.T. clicked on the Facebook "Like" button for Craftsman.
24 Ex. 14. On or about March 20, 2011 W.T. (unbeknownst to him) began appearing in ads. *See*
25 Ex. 3. W.T. was not paid for his appearance in any of those ads. Ex. 15.

26 **C. Procedural History**

27      This action was filed in Santa Clara Superior Court on March 11, 2011. Plaintiffs
28 amended to add a subclass of minors on March 18, 2011. The case was thereafter removed to

-12-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

federal court on April 8, 2011. Following an initial Motion to Dismiss after removal, Plaintiffs amended the Complaint; the operative Complaint is the Second Amended Complaint. Facebook filed a second Motion to Dismiss, which was denied on December 16, 2011. Plaintiffs filed their Motion for Class Certification on March 29, 2012, and their Reply on May 3, 2012. The Motion was fully briefed at the time the Parties' original Term Sheet was entered into on May 22, 2012.

**D.    Discovery**

The discovery in this case has been extensive. There have been twenty-one (21) depositions taken in this action, including 7 experts and over 4,263 pages of transcripts. Arns Decl., ¶29. These included key personnel of Facebook involved in the development of Sponsored Stories ads and persons most qualified to discuss the workings of Facebook's systems. Declaration of Robert S. Arns, ¶29-30. Plaintiffs' Counsel prepared and served 11 sets of Requests for Production of Documents, for a combined total of 214 individual requests, upon Defendant; six sets of Requests for Admission, a total of 249 requests; and 25 Interrogatories. Arns Decl., ¶¶34-36. The documents produced by Facebook included many "natively produced" PowerPoint documents and e-mails. The document demands resulted in over 200,000 pages being produced by Facebook, not counting responses to third-party subpoenas served by Plaintiffs. *Id.*, ¶34. Plaintiffs issues subpoenas to five third parties. Arns Decl., ¶37.

Plaintiffs' Counsel received, analyzed and responded to 105 interrogatories from Facebook. Arns Decl. ¶40. Responding to these interrogatories involved extensive communication with the plaintiffs, verification of their answers, and service of the responses. The demanding task resulted in over 275 pages of initial and supplemental responses from named plaintiffs. Arns Decl., ¶40. Counsel received, analyzed and responded to 269 Requests for Production of Documents from Defendant; as well as 351 Requests for Admissions from Defendant which were reviewed, analyzed and responded to. *Id.* ¶¶41-42. The requests resulted in the production of over 7,000 pages of documents by Plaintiffs. Declaration of Edward Infante, ¶3. Plaintiffs and their guardians have dedicated at least 150 hours of time

-13-

staying informed, responding to discovery requests and being deposed. Declaration of Jonathan M. Jaffe, ¶¶ 9-11.

## E.     Settlement Negotiations

Plaintiffs and Defendant Facebook mediated the case at JAMS in San Francisco, before the Hon. Edward A. Infante, the retired former Chief Magistrate Judge of the Northern District of California, on March 1, 2012. Plaintiffs' settlement conference statement was 231 pages long, and they also provided an executive summary 28 pages long. Arns Decl., ¶2. The case did not settle at that time, but the Parties achieved a better understanding of one another's position. Subsequently, lead counsel for both parties continued to negotiate, with the mediator being kept apprised at all times of the status. *Id*. ¶4. Eventually a framework for settlement was developed between Facebook and counsel for Plaintiffs.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT

## A.     The Settlement Meets All Requirements For A Presumption Of Fairness

At the preliminary approval stage the Court determines only whether "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class; and [4] falls within the range of possible approval," such that it is presumptively fair, and it is therefore worthwhile to give the class notice of the settlement and proceed to a formal fairness hearing. *Alvarado v. Nederend*, No. 1:08-CV-01099, 2011 U.S. Dist. LEXIS 2326, at *14-15 (E.D. Cal. Jan. 11, 2011), quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The proposed Settlement meets each of these requirements.

The proposed settlement is a product of arm's length negotiations by Plaintiffs' counsel well-versed in class actions and thus is entitled to an initial presumption of fairness. *See Alvarado*, 2011 U.S. Dist. LEXIS 2326, at *15. As noted above, the discovery was hard-fought and involved over 200,000 pages of documents, and 21 depositions as well as a motion to compel and two motions for protective orders. *See supra* page 13, and Arns Decl. ¶¶29-34.

-14-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

Furthermore, there were two rounds of motions to dismiss, with Plaintiffs amending in response to the first and prevailing on second. There were seven experts who were deposed in connection with the class certification motion. Arns Decl., ¶ 31-32There is no evidence of fraud or collusion in the settlement negotiations, which were conducted at arms' length, and initiated in mediation before Judge Infante, a respected retired Magistrate Judge for the United States District Court for the Northern District of California and experienced mediator with JAMS. Arns Decl., ¶4; Infante Decl.¶2.

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.' Thus, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Nat'l Rural*, 221 F.R.D. at 528 (citations omitted). Here, in investigating this action thoroughly, Class Counsel has demonstrated a high degree of competence in the litigation of this case, and strongly believes that the Settlement is a fair, adequate, and reasonable resolution of the Settlement Class's disputes with Defendants and is preferable to continued litigation. Arns Decl., ¶¶57. In Plaintiffs' counsel's view, the Settlement contains no obvious deficiencies: it provides class relief to address all of the violations alleged in Plaintiff's complaint, as well as issues which came to light during discovery, and does not provide for attorneys' fees at the expense of the class. Arns Decl., ¶56. Nor does the Settlement grant preferential treatment to the class representatives or any segment of the class, with the exception of the proposed incentive awards for the class representatives. Each class member is entitled to the same type of relief.

The settlement falls within the range of possible approval as it accomplishes much of what Plaintiff sought in the lawsuit now—without the risk of a denial of class certification, an adverse grant of summary judgment or adverse verdict at trial. *See Alvarado*, 2011 U.S. Dist. LEXIS 2326, at *16-17 (to evaluate the range of possible approval, courts primarily consider the value provided by the settlement against the claims' expected recovery if tried). Numerous

-15-

1 | factors further support the fairness of the settlement. including (1) the substantial amount
2 | offered in settlement. and (2) the risks of continued litigation.

3 | **1. The Total Amount Offered In Settlement Is Valued At $123,537,500.**

4 | The proposed Settlement Agreement merits preliminary approval given that, among
5 | other things, it provides for a Settlement Fund of $10 million for *cy pres*, which will not be
6 | diminished by attorneys' fees or cost of notice or the proposed service award, and injunctive
7 | relief which squarely addresses the key issues in Plaintiffs' Complaint, which will be in place
8 | for two years, S.A., §2.2, and has a value of $103.2 million. Declaration of Fernando Torres,
9 | ¶11. "In assessing the consideration obtained by the class members in a class action settlement,
10 | '[i]t is the complete package taken as a whole, rather than the individual component parts, that
11 | must be examined for overall fairness.' In this regard, it is well-settled law that a proposed
12 | settlement may be acceptable even though it amounts to only a fraction of the potential
13 | recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop.,*
14 | *supra.* 221 F.R.D. at 527 (citations omitted). The proposed Settlement Agreement, taken as a
15 | whole, is fair, as the value of the relief provided for exceeds $123 million (as detailed below).

16 | **a. The Injunctive Relief Is Valued at $103.2 million.**

17 | The injunctive relief is designed to provide notice to Facebook's members of the
18 | potential consequences of certain actions taken on Facebook. The injunctive relief will ensure
19 | that the Members are apprised of the existence and mechanics of Sponsored Stories ads, and
20 | they will then also be capable of taking steps to limit their appearance in those ads. *See* S.A.,
21 | §2.1 (b). California Civil Code §3344 is intended to require parties to seek prior consent from
22 | individuals, before using names and likenesses in ads, and expressly requires prior consent
23 | guardian or parent for minors. The relief also furthers the goals of California's Unfair
24 | Competition Law, Business & Professions Code §17200 et seq. Section 17203 "authorizes the
25 | court to fashion remedies to prevent, deter, and compensate for unfair business practices."
26 | *Cortez v. Purolator Air Filtration Products Co.,* 23 Cal. 4th 163, 176 (2000). The changes to
27 | the SRRs, and other pages on Facebook to make it clear that Sponsored Stories are
28 | advertisements and that users may be featured in them if they take certain actions, will remedy

-16-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

1  the situation where Plaintiffs identified that there was no such disclosure and/or that the
2  disclosures were inadequate or allegedly fraudulent (in the context of section 17200
3  jurisprudence, which does not require intent to deceive, actual deception, or damage in a
4  "fraud" case, *see, e.g., Blakemore v. Super. Ct.* 129 Cal. App. 4th 36, 49 (2005)).

5  The injunctive relief is invaluable to the class as it would not be possible for the
6  individual class members to negotiate better terms on an individual basis. In order to place a
7  real-world baseline value on the relief, however, Plaintiffs' expert economist Fernando Torres
8  calculated the estimated actual value that the use of the Class Members' names and likenesses
9  in Sponsored Stories ads contributed to Facebook's revenue in the year 2011 to be
10 approximately          . Fernando Torres Decl, ¶11. Assuming this number constitutes the
11 average monthly revenue generated for Facebook by the use of the class members in Sponsored
12 Stories ads, he calculates the estimated value for the next 17 months is approximately
13          *Id.* This amounts to          per month. *Id.,* ¶12.

14 As noted above, the class members now by virtue of the injunctive relief changes have
15 the opportunity, by using the new features to alter who sees advertisements featuring them, to
16 control the use of what is essentially a          /month advertising asset. Torres Decl., ¶12.
17 Assuming Facebook would continue to deny users the ability to negotiate from the incremental
18 revenue their use in Sponsored Stories ads generated for Facebook for approximately the same
19 duration in time as has already passed, (since January 25, 2011), the value of the injunctive
20 relief is $73 million at a minimum for the next 17 months alone. *Id.* The total relief is
21 accordingly valued at $103,200,000.

22          **b. The cy pres, payments, attorneys' fees and service awards, and notice and**
23          **administration costs are worth over to $20 million**

24 As noted above, Facebook in the Settlement Agreement has committed to fund *cy pres*
25 payments of $10 million. S.A., §2.2. Furthermore, it has agreed to pay subject to court
26 approval, and to not oppose and to pay attorneys' fees of up to $10 million, and costs of
27 $300,000. S.A., §2.3. The attorney's fees and service awards are in addition to the *cy pres*
28 recovery, and thus provide additional value to the Class, *Chavez v. Netflix, Inc.*, 162 Cal. App.

4th 43, 50 (2008) (value of attorney's fees included in placing valuation on settlement). Facebook will also bear the cost of notice and administration (monitoring objectors and opt-outs), a further significant value to the Class. S.A. §2.6. As set forth in detail below, this case does not lend itself to individual damages awards.

c. The Service Awards to the Class Representatives are reasonable and valuable.

Facebook has agreed to pay service awards totaling $37,500, subject to court approval, which includes $12,500 for each of the Class Representatives. S.A., §2.4. Class representatives "are eligible for reasonable incentive payments," after consideration of relevant factors, including the actions the representative has taken to protect the interests of the class and the degree to which the class has benefited from those actions. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). Plaintiffs have provided documentary discovery, had their depositions taken at length, and monitored the progress of the action, and attended the mediation, and should be rewarded for taking the initiative to file the action, and for their role in reaching a Settlement providing for valuable relief to the Settlement Class. Arns Decl., ¶¶17, 33; Jaffe Decl., ¶¶ 9-11. In addition, Plaintiffs by litigating this case potentially exposed themselves to the fee-shifting under Civil Code §3344. Jaffe Decl., ¶¶12-15. Indeed, the Ninth Circuit has approved incentive awards to class representatives that far exceed the modest award proposed to be awarded Plaintiffs, $12,500 each. *Staton*, 327 F.3d at 976-77.

2. Risks Of Further Litigation

Approval of a settlement is proper where "the settlement terms compare favorably to the uncertainties associated with continued litigation regarding the contested issues in this case [including where] . . . the Settlement provides Class Members with a meaningful business resolution regarding contested issues." *Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)("*Nat'l Rural*"). Comparing the uncertainties of future litigation against the risks detailed below, settlement on the terms proposed is clearly warranted.

Plaintiffs faced significant risks in pursuing these claims, including, *inter alia*, conflicting views with Facebook on liability and issues on appeal as well as vastly differing

-18-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

analyses and assertions regarding the scope. dollar amount and legal basis on which to recover potential damages. Decl. of Judge Edward A. Infante (Ret.), ¶¶5-15. These factors made it apparent that litigation of these issues would continue to be hotly contested, perhaps for many years in the appellate courts, and that both sides would face substantial litigation risks. *Id.* Further, the issues of class certification. implied consent, and minor consent (particularly in light of the transfer order from the Southern District of Illinois in *E.K.D. v. Facebook*, [now *C.M.D. v. Facebook*, No. 12-cv-01216-LHK] by Judge Patrick Murphy, applying the Facebook Statement of Rights and Responsibilities to minors) present challenges for Plaintiffs to ultimately prevail on in the end. *Id.*, ¶13.[7]

The Hon Edward Infante. (Ret.) identified the following arguments which Facebook has made and which it could make on summary judgment or at trial should the case continue:

- The defense of implied consent. Infante Decl., ¶8. The continued use of facebook.com by members, Facebook has argued, has led to increasing amounts of awareness by members of Sponsored Stories ad by virtue of the members having seen such ads, raising the possibility of a finding of implied consent. Infante Decl.. ¶8.

- Facebook Members' use of pseudonyms as opposed to their actual (legal) names and the posting of images as "profile pictures" which are not the likeness of the individual Class members. Infante Decl., ¶9.

- The contention (rejected by the Court on the Motion to Dismiss, but available for summary judgment or appeal) that the claims are preempted under the Communications Decency Act, 47 U.S.C. § 230 ("CDA"). and that the "newsworthy" exemption of Cal. Civil Code § 3344(d) grants an exception to the consent requirement of subdivision (a), for use of a likeness "in connection with any news, public affairs, or sports broadcast or account, or any political campaign." Infante Decl.. ¶13.

---

[7] Pursuant to Cal. Civil Code §3344 Plaintiffs must prove "'(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.' [Citation.]" (*Ibid.*) "To prove the statutory remedy. a plaintiff must present evidence of 'all the elements of the common law cause of action' and must also prove 'a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose.' (*Ibid.*)." *Orthopedic Sys., Inc. v. Schlein,* 202 Cal. App. 4th 529, 544 (2011) (quoting *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1001(9th Cir. 2001)). Proof of the § 3344 claim will also provide the proof for the UCL claim under Business & Professions Code § 17200 et seq. *Smith v. Wells Fargo Bank,* 135 Cal. App. 4th 1463, 1480 (2006) (quoting *Cel-Tech Commc'ns., Inc. v. L.A. Cellular Tel.Co.,* 20 Cal. 4th at 180). The UCL claim is "borrowing" section 3344. Claims have also been made under the "unfair" and "fraudulent" prongs, specifically targeting the failure to disclose the fact that certain actions would potentially result in Members' inclusion in Sponsored Stories ads.

-19-

- Facebook has also raised a defense under the Children's Online Privacy Protection Act. or COPPA, 15 U.S.C. § 6502. in other matters and could raise the defense in this case. *Id.*

- The risk that the Court might not be inclined to order the types of changes to Facebook's practices that Class Counsel has been able to negotiate. Infante Decl., ¶15. [8]

Class certification posed a potentially difficult hurdle. In its opposition to the Motion for Class Certification. Facebook argued that California Civil Code § 3344 was not intended by the Legislature to be brought as a class action. Plaintiffs' methods for proving damages would also have to be accepted by the Court and trier of fact, in order for class certification to be granted and to ultimately prevail at trial. A smaller class size or class period could also have resulted, or the class could have been certified for only certain of the claims, such as for injunctive relief only. California Civil Code § 3344 also includes a prevailing party attorneys' fees provision. This is obviously a substantial risk of litigation in this case, and Facebook has pursued such claims in other cases.

While Plaintiffs deny that any of Facebook's contentions have any merit, they are still risks inherent in further litigation, particularly as the facts and laws at issue present a case of first impression and the laws are subject to interpretation.

## B. This Case Presents Ideal Circumstances Appropriate For *Cy Pres* Distribution In Place of Damages Awards To Class Members

The facts of this case do not lend themselves to the distribution of an award of meaningful monetary relief to the individual Class members. The average gross revenue that Facebook earned per class member was only ▮▮▮▮▮▮▮▮▮ in 2011. Moreover, the size of the award which would be necessary to provide each Class member in a nationwide class with an amount of money such that they would be likely to be interested in seeking out the award would just be too large. Facebook.com has over 153 million Members in the United States; over 51 million of these are minors. Second Amended Complaint, ¶13. Even assuming that the Class of persons who actually appeared in Sponsored Stories ads is 100 million members, and

---

[8] As Judge Infante notes: "Courts are understandably reluctant to micro-manage the business of defendants. In a settlement, Facebook and Class Counsel are better able to work together to craft stringent, but not unworkable, solutions to the issues alleged in the Complaint than would the Court with advice from a victorious Plaintiff and resistance from a losing Defendant." Infante Decl., ¶15.

-20-

that each person only appeared in one ad campaign, a damage award of [        ] for each Class member would be [        ]. Infante Decl., ¶17. [        ] would be more meaningful, but still would represent a very small amount to each Class member and would require a settlement fund of a billion dollars. *Id.*[9]

Thus, the only real way to provide consideration with meaning for the Class is to have FB provide funds, through *cy pres* funding of $10,000,000 and distributions to groups whose charters set out actions and programs relevant to advocacy as to the purposes for which the case was brought, and thus to ensure that the concerns raised in the suit are thereby continued to be monitored, advanced and protected for years to come. Infante Decl., ¶¶19-21.

### 1. Case law supports the use of cy pres awards in place of damages.

The Court of Appeals for the Ninth Circuit, and other jurisdictions, have recognized that in some cases, the inability to award meaningful amounts in damages to class members justifies the use of *cy pres* to further the interest of a class. In *Catala v. Resurgent Capital Services L.P.*, No. 08CV2401 2010 U.S. Dist. LEXIS 63501 (S.D. Cal. June 22, 2010), for example, a *cy pres* only settlement was approved where the amounts available to the Class would have been trivial when divided among the class members (about 13 cents per class member). The Ninth Circuit has also explained that "when a class action involves a large number of class members but only a small individual recovery, the cost of separately proving and distributing each class member's damages may so outweigh the potential recovery that the class action becomes unfeasible. . .*cy pres* distribution avoids these difficulties. . .federal courts have frequently approved this remedy in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d at 1305 (citations omitted); In *Nachshin v. AOL*, 663 F.3d 1034, 1037 (9th Cir. 2011), the Ninth Circuit rejected a proposed *cy pres* recipient because the proposal was for recipients who were "geographically isolated and substantively unrelated charities," while

---

[9] Further, putting aside all of the uncertainties as to liability discussed above, the potential statutory damage award under Cal. Civil Code §3344 would be of such size that it could potentially serve as a basis for appeals by Facebook on due process grounds. This would be similar to the arguments which led to a ruling that punitive damages must be proportional to the wrong. Infante Decl., ¶17; *see BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996).

-21-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

1  approving of the concept in principle. This is in contrast however to the action at bench, where
2  the proposed *cy pres* recipients have a nationwide reach.

3      Circuit Courts across the country have also noted their approval of or adopted the
4  "infeasibility" test (the use of *cy pres* awards where economic damages is infeasible) and
5  approved settlements which consisted of "*cy pres* only awards" in lieu of damages, or awards
6  of *cy pres* where funds available would not result in meaningful individual awards even if large
7  in the aggregate. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 34 (1st
8  Cir. 2009); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir.
9  2007)(recognizing the principle but holding that the case at bench did not meet the criteria for
10 cy pres distribution); *In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 146 (2d. Cir. 2005)
11 ("distribution would have resulted in the payment of literally pennies to each of the millions of
12 individuals who would fall into the Looted Assets Class....[W]e have previously affirmed the
13 District Court's use of a *cy pres* remedy in this case"); *Bebchick v. Pub. Utils Comm'n*, 318
14 F.2d 187 (D.C. Cir. 1963) (impossibility of individual refunds for train and bus tickets led to
15 the creation of a fund to benefit public transit riders); *see also In re MetLife Demutualization
16 Litig.*, 689 F. Supp. 2d 297, 323 (E.D. N.Y. 2010)(*cy pres* allocation of $2.5 million where
17 administrative costs of distributing it would reduce payments to $2.00 per claimant). In *Boyle
18 v. Giral*, 820 A.2d 561, 569 (D.C. 2003), an antitrust case concerning vitamin products, the
19 District of Columbia Court of Appeals approved a *cy pres* only award to organizations
20 promoting the health of District of Columbia residents where only $1 would have been
21 available for each Class member. The Court of Appeals noted:

22     Such distributions, including the **entire amount** of the consumer **settlement fund
      rather than just the residue**, are being used or advocated increasingly where
23    direct distribution of settlement funds to individual class members is impractical;
      and where important consumer goals, such as disgorgement of ill-gotten gains
24    from and deterrence of future over-pricing and manipulation of market allocation
      by the offending entities, can be achieved. . . . We are satisfied that the fund will
25    benefit consumers.

26

27 *Id.* at 569 (emphasis added). *See also In re Heartland Payment Sys., Inc.*, No. 09-2046 2012
28 U.S. Dist. LEXIS 37326 (S.D. Tex. March 20, 2012)(approval of a *cy pres* award of $1 million

-22-

1   in settlement where only 290 valid claims out of a class of 130 million persons who had
2   suffered from a data security breach by hackers as to their payment cards).

3       The American Law Institute has also expressed approval of the use of *cy pres* in such
4   circumstances. where even though the class members can be identified through reasonable
5   effort. (a) the distributions are insufficiently large to make individual distributions
6   economically viable, and (b) the case is not one where funds remain after distributions because
7   some class members could not be identified or chose not to participate). *Principles of The Law*
8   *of Aggregate Litigation.* § 3.07 (a), (b) A.L.I. (2010)(emphasis added)("The P.O.A.L."). In a
9   case such as this, The P.O.A.L. advises that if the court finds that individual distributions are
10  not economically viable, "the settlement may utilize a cy pres approach." The P.O.A.L, § 3.07
11  (c).

12      The instant case presents just the sort of situation for which the *cy pres* doctrine is well-
13  suited. As noted above. the total amount that Facebook earned from Sponsored Stories for all
14  of 2011 was on average only        per Class Member. Thus, the amounts which would be
15  available for individual Class Members in actual damages are not significant enough, and
16  cannot be significant enough for the entire Class to receive a meaningful amount in damages.
17  Thus, since neither subsections (a) nor (b) of The P.O.A.L. § 3.07 are fulfilled (the
18  distributions are not large enough to make individual awards viable, nor is this a case where
19  there is remainder after distribution due to lack of participation or missing class members),
20  distribution to the class members would be economically infeasible. *cy pres* is appropriately
21  used under the American Law Institute guidelines.

22      **2.    The proposed *cy pres* recipients are appropriate under the Ninth Circuit's**
23          **standards**

24      In this case, the proposed *cy pres* recipients are consonant with the rules in the Ninth
25  Circuit. Ninth Circuit case law has held as follows:

26      "The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable
    portions of a class action settlement fund to the "next best" class of beneficiaries. *Cy*
27  *pres* **distributions must account for the nature of the plaintiffs' lawsuit, the**
    **objectives of the underlying statutes, and the interests of the silent class**
28  **members, including their geographic diversity."**

1   *Nachshin, supra,* 663 F.3d at 1036 (citing *See Six (6) Mexican Workers, supra,* 904 F.2d at
2   1307-08 (9th Cir. 1990)(emphasis added).

3       The proposed recipients meet each of these requirements. The proposed *cy pres* grants
4   here will be to address issues of the commercialization of personal information online, and will
5   go to organizations which are involved in educational outreach that teaches adults and children
6   how to use social media technologies safely, or are involved in research of social media, with a
7   focus on critical thinking around advertising and commercialization, particularly of the
8   commercialization of children. They will be of use to all Facebook users and children and
9   parents nationwide.

10

11  **V.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
    SETTLEMENT PURPOSES AND PLAINTIFF'S COUNSEL APPOINTED AS
12  CLASS COUNSEL**

13      Before granting preliminary approval of the settlement, the Court should determine that
14  the proposed settlement class provisionally meets the requirements of Rule 23. *See Amchem*
15  *Prods., Inc. v. Windsor,* 521 U.S. 591, 619-20 (1997); Manual for Complex Litigation (Fourth)
16  § 21.632 (2012). The prerequisites for certifying a class are (1) numerosity, (2) commonality,
17  (3) typicality, and (4) adequacy of representation, each of which is satisfied here. *See* Fed. R.
18  Civ. P. 23(a). Plaintiffs bear the burden of establishing that all four requirements of Rule 23 (a)
19  are met, as well as one requirement of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.,* 253
20  F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). Whether or not to certify a class
21  is within the broad discretion of the Court. *Li v. A Perfect Franchise, Inc.,* No. 5:10-CV-01189
22  2011 U.S. Dist. LEXIS 114821 (N.D. Cal. Oct. 5, 2011) at *20-21. *Id.* Plaintiffs seek
23  certification of a Class under Fed. R. Civ. P. 23(b)(3), as questions of law and fact predominate
24  over any individual issues

25  **A.  Numerosity:**

26      "The prerequisite of numerosity is discharged if 'the class is so large that joinder of all
27  members is impracticable.'" *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998)
28  Facebook stated that as of August 15, 2011, approximately 71.1 million users (who fit the

-24-

Plaintiff Class definition) had appeared in at least one Sponsored Stories ad. Ex. 41 (Defendant's Resp. to Plaintiffs' Interrogatories, Set Two, No. 16). Of that number, 10.9 million fit the Subclass of Minors definition of minors. *Id.* (No. 17). This number far exceeds the numbers where the joinder of the members of the class action is impractical beyond any doubt. *See Hanlon*, 150 F.3d at 1019.

**B. Typicality & Commonality Under Rule 23(a).**

Rule 23(a)(3) requires that the claims of the representative plaintiff be typical of those of the class. Commonality and typicality "tend to merge," such that factors that support a finding of commonality also support a finding of typicality. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "The typicality inquiry under Rule 23(a)(3) is permissive and requires that Plaintiffs establish 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.' Fed. R. Civ. P. 23(a)(3)." *Li*, 2011 U.S. Dist. LEXIS 114821 at *25. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)(citation omitted).

Plaintiffs' claims are typical of the Class they seek to represent because all claims relating to Facebook's use of User's names and likenesses in advertisements arise under California law as made applicable under the SRR (and thus under Cal. Civil Code section 3344), and because they arise from the same practice and course of conduct: Facebook's creation of Sponsored Stories ads and the showing of those ads without obtaining permission; all Plaintiffs have been injured in the same manner. Plaintiffs' claims are based on the same facts and legal theories as the Class and are, therefore, typical. *See Hanlon*, 150 F.3d at 1020 (typicality satisfied where plaintiffs' claims are "reasonably coextensive with those of absent class members"). For similar reasons, Plaintiffs' claims also meet the commonality requirement in that they raise "questions of law or fact common to the class," including whether Facebook's policies violated State law, and whether they caused injury to the Class. *See* Fed. R. Civ. P. 23(a)(2); *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

A subclass of minors represented by James H. Duval through his guardian at litem James Duval. and W.T. through his guardian ad litem Russell Tait. should also be certified. California Civil Code §3344 expressly states that liability attaches for the failure to obtain consent "in the case of a minor, the prior consent of his parent or legal guardian." Facebook uniformly does not seek or obtain such prior consent as to any minors. Each of the other requirements of proof—other than consent—are identical for the Subclass.

In the Ninth Circuit, "Rule 23(a)(2) has been construed permissively. The commonality requirement is met if "plaintiffs' grievances share a common question of law or of fact." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *cert. denied* 537 U.S. 812 (2002). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1019 (9th Cir. 1998).

All questions of fact and law need not be common to satisfy the rule. *Id.* "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.' *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551, (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364 (1982)). The class members' "claims must depend on a common contention," and that common contention must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551

In this case, Plaintiff has alleged not just a single common issue, but several. These questions of law and fact include, but are not limited to, the following:

- Whether Plaintiffs and the Class consented to the use of their names. photographs, likenesses, or identities in Sponsored Story advertisements.
- Whether FACEBOOK gained a commercial benefit by using Plaintiff and the Class' names, photographs, likenesses in Sponsored Stories advertisements.
- Whether Plaintiffs and the Class were harmed by the nonconsensual use of their names, photographs, likenesses, or identities in Sponsored Stories advertisements.

-26-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

- Whether Class Members are entitled to damages as a result of FACEBOOK's conduct, and, if so, what is the measure of those damages.
- Whether Sponsored Stories are ads. Plaintiffs contended that they are, Facebook denied in this litigation that they are ads.[10]
- Whether FACEBOOK's conduct described herein violated California Civil Code § 3344 and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.).

Any one of these common questions is sufficient to establish commonality in this action. Together, they overwhelmingly satisfy Rule 23(a)(2).

## C. Adequacy of Representation.

The final requirement of Rule 23(a), adequacy of representation, is also satisfied. Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." *Hanlon, supra,* 150 F.3d at 1020. The adequacy of representation issue focuses on whether the plaintiff's attorney is qualified to conduct the proposed litigation and whether the plaintiff's interests are antagonistic to the interests of the class. *Marr v. E. State Hosp.*, 2002 U.S. Dist. LEXIS 28460, *15 (E.D. Wash. Apr. 29, 2002).

Second, Plaintiffs' interests are co-extensive with those of the Class. Plaintiffs had Sponsored Stories ads created about them and were not asked for their consent nor were they paid for appearing in such ads, as were all other class members. Plaintiffs seek relief that is identical to the relief sought by members of the class. Therefore, Plaintiffs will adequately represent the Class. Plaintiffs do not have any conflicts with the other members of the Class. Rather, they have exactly the same incentives to prove their cases as do the other Class members, and their interests are thus perfectly aligned and Plaintiffs clearly are adequate representatives of the Class.

---

[10] Facebook in response to Request For Admission, No. 6 [1.6], Set 1 Facebook denied "that Sponsored Stories are advertisements for members") Ex. 22. Jim Squires of Facebook testified: "Yes, Sponsored Stories are not ads. I'm not sure what the distinction is to members, advertisers, or anybody else. Sponsored Stories are not advertisements period." Squires Dep. Tr., (Ex. 23), at page 33.

-27-

1      Plaintiffs and their counsel have shown, through their prosecution of this action and
2 negotiation of this proposed settlement, that they "will fairly and adequately protect the
3 interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem, supra*, 521 U.S. at 619-20
4 (the existence of a proposed settlement is relevant to class certification, including whether
5 absent class members' interests are being adequately represented). As set forth more fully
6 below, The Arns Law Firm and its lawyers, Robert S. Arns, Jonathan E. Davis, Steven R.
7 Weinmann, and Kevin M. Osborne, and Robert Foss are experienced in class action cases. Arns
8 Decl., ¶¶18-27. Jonathan M. Jaffe, the other Class Counsel, is uniquely qualified to address the
9 issues raised in this case. *See* Jaffe Decl., ¶¶3-6.

10 **D. The Proposed Settlement Class Meets the Requirements of Rule 23(b) (3)**

11      "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class
12 certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2),
13 or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed class is maintainable under Rule 23 as
14 common questions predominate over any questions affecting only individual members and
15 class resolution is superior to other available methods for a fair resolution of the controversy.
16 *See id.* at 1022-23 (citing Fed. R. Civ. P. 23(b)(3)).

17      The proposed class is maintainable under Rule 23(b)(3) as common questions
18 predominate over any questions affecting only individual members and class resolution is
19 superior to other available methods for a fair resolution of the controversy. *See Hanlon*, 150
20 F.3d at 1022-23 (citing Fed. R. Civ. P. 23(b)(3) ). Because Facebook is an Internet company
21 and all of its dealings with its Members are all through its website, all of the Class Members are
22 similarly situated and exposed to the same policies, practices and procedures. This applies to
23 the SRR, Terms of Use, and Privacy Policy, as well as the means by which Sponsored Stories
24 ads are generated. Ex. 2 (types of actions leading to SS ads); see Ex. 6 Muller Dep., 166:11-
25 170:4 (single version of Terms applies to all users at a given time). Each of the issues which
26 are the subject of common proof or determination as a matter of law can be addressed (in this
27 case through settlement) for all class members at once, justifying certification of these claims
28 for settlement purposes. *See, e.g., Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1173

-28-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

(9th Cir. 2010) (finding consumer protection claims arising from automotive manufacturer's failure to disclose an allegedly inherent defect raised predominantly common questions); *Parkinson v. Hyundai Motor Am.. Inc.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008) (same).

Class members' claims satisfy the predominance requirement.

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.". . . the determination rests not on whether individualized damages determinations will be necessary but on "legal or factual questions that qualify each class member's case as a genuine controversy."

*Thomas v. Baca*, 231 F.R.D. 397, 402 (C.D. Cal. 2005) (quoting *Amchem*, 521 U.S. at 623).

A "central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans. Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser, supra*, 253 F.3d at 1189). Thus, courts must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." Charles Alan Wright. *et al., 7A Federal Practice and Procedure* § 1778 (3d ed. 2005).

As noted above, *supra* pages 27-28, Plaintiffs have alleged not just a single common issue, but many, including the common issues of fact and law discussed above. Indeed, every critical issue in the case. including consent, the elements of Civil Code § 3344. and which law applies. can be resolved using common evidence.

### 1. A class action is the superior means of adjudication

Rule 23(b)(3) requires that a court determine whether "a class action is superior to other methods for the fair and efficient adjudication of the controversy." "A plaintiff can satisfy the superiority requirement when he or she can show that 'class-wide litigation of common issues will reduce litigation costs and promote greater efficiency.' *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2011). (quoting *Valentino v. Carter-Wallace. Inc.*. 97 F.3d 1227. 1234 (9th Cir. 1996)). "In order to make this determination, the Court should consider the following factors: 'the interest of members of the class in individually controlling the prosecution or defense of separate actions: the extent and nature of any litigation concerning

-29-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; the difficulties likely to be encountered in the management of a class action.' Fed. R. Civ. P. 23(b)(3)(A)-(D)." *Wolph*, 272 F.R.D. at 488; *accord Leuthold v. Destination Am. Inc.*, 224 F.R.D.462, 469 (N.D. Cal. 2004).

Proceeding as a class action would be superior to alternative means for the fair and efficient adjudication of the litigation. A class action is superior because "few potential class members could afford to undertake individual litigation against [Defendant] to recover relatively modest damages." *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004); *accord, Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010). Furthermore, to the extent that individuals would bring suit if class certification would be denied, judicial economy and efficiency, and the risk of inconsistent verdicts, all weigh in favor of class certification. The courts do not need millions of individual actions burdening their dockets. *See Sav-On Drug Stores v. Superior Court*, 34 Cal. 4th 319, 340 (2004) ("the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.")

A key part of the relief sought in this case is injunctive relief in the form of an injunction requiring Facebook to make significant changes to its practices with regard to securing consent from both adults and minors. It is obviously crucial that Facebook be directed to make only one set of changes. Prosecution of Plaintiffs' claims on a classwide basis is the only viable means to resolve Plaintiffs' and other Class members' claims, and the Court should certify this action as a class action.

**E.     Nationwide Certification**

A nationwide class is plainly appropriate in the circumstances. California law is specifically made applicable to all claims against Facebook under the user agreement. Statement of Rights and Responsibilities, Section 15.1, Exs. 18, 20, 21 (emphasis added). The claims in this case are based upon violation of a pair of California laws which pursuant to

-30-

Facebook's Terms are applicable to all Class Members across the country. In *Wash. Mutual Bank, FA v. Super. Court*, 24 Cal. 4th 906, 921 (2001) . the California Supreme Court established that courts must enforce a California choice of law as to a nationwide class so long as "the chosen state has a substantial relationship to the parties or their transactions."

Here, California has a substantial relationship to the parties – since Facebook is headquartered in California – and because the challenged practices were implemented at Facebook's California headquarters. "Where the defendant is a California corporation and some or all of the challenged conduct emanates from California," it is proper to apply California statutes to non-California members of a nationwide class. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (2001) . California has an interest in preventing unlawful. unfair, or fraudulent behavior from originating in California. *Diamond Multimedia Sys., Inc. v. Super. Court*, 19 Cal. 4th 1036 (1999) (out of state plaintiffs can sue for actions originating in California). Under *Washington Mutual*, certification of a nationwide class under California law is proper where "the legal questions are sufficiently similar to be manageable and all other requirements for certification are satisfied." *Id.* at 915. Here, Defendants do not oppose certification of a nationwide class. Accordingly, nationwide certification is proper.

Finally, there is little risk that non-California class members' substantive rights would be sacrificed, given that "California's consumer protection laws are among the strongest in the country." *Wershba, supra*, at 242 (affirming approval of nationwide class for claims based on California's Unfair Competition Law and Consumers Legal Remedies Act, Cal. Civ. Code § 1750.

In short, the Settlement Class and Subclass are suitable for certification, and the Court should certify the Settlement Class and Subclass pursuant to Rule 23(b)(3) for purposes of granting preliminary approval of the Settlement.

**F.    Appointment of Class Counsel under Rule 23(g).**

In connection with any order certifying a class, Rule 23(g) requires that the Court formally appoint Class Counsel. The Arns Law Firm consists of eight attorneys, five of whom. Robert Arns. Steven Weinmann, and Jonathan Davis, Kevin Osborne and Robert Foss. work on

-31-

1   class action cases as a significant amount of their practices. *See* Arns Decl., ¶¶18-27. All five
2   Arns class action attorneys were also engaged in the litigation of a significant pending class
3   action in the Northern District of California against a major bank, also involving UCL claims.
4   The Arns Law Firm concluded another nationwide class action case during the pendency of this
5   lawsuit, and have commenced and continued to litigate a third, complex action involving some
6   64 clients. Arns Decl., ¶22. Robert Arns, Jonathan Davis, and Steven Weinmann all litigated an
7   action against The Home Depot and a related company for wage and hour claims, which
8   resulted in a multimillion dollar settlement. *Id.* ¶24. The firm is also presently part of a group
9   of lawyers litigating four separate class actions against skilled nursing facility chains. *Id.*

10      Jonathan M. Jaffe, of co-counsel Jonathan M. Jaffe Law, has extensive experience in
11  the field of computer software systems design, data privacy and data security, which amply
12  qualifies him to deal with the complex technical issues raised in this case. Jaffe Decl. ¶¶3-5.
13  He has also recently worked on several other class actions, dealing primarily with electronic
14  discovery issues for these matters. *Id.* ¶ 6.

15  **VI.    THE COURT SHOULD ORDER DISSEMINATION OF THE PROPOSED
16          CLASS NOTICE**

17      Before finally approving a class settlement, "[t]he court must direct notice in a
18  reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.
19  23(e). What constitutes reasonable notice depends on the circumstances of the case. *See id.*
20  Courts have broad discretion in fashioning an appropriate notice program. *In re Gypsum*
21  *Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) (matters of notice are "left to the court's
22  discretion to be dictated by the circumstances of each case.") (quoting *United States v. Truckee-*
23  *Carson Irrigation Dist.*, 71 F.R.D. 10, 18 (D. Nev. 1975)); *Battle v. Liberty Nat'l Life Ins. Co.*,
24  770 F. Supp. 1499, 1521 (N.D. Ala. 1991) ("[A] district court has great discretion in
25  determining the kind of notice to employ in alerting class members to a proposed settlement
26  and settlement hearing, subject to 'the broad reasonableness standards imposed by due
27  process.'" (citation omitted)). Generally, notice is acceptable if it "describes the terms of the
28  settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

-32-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

1     forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

2     (quotation omitted); *accord In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at

3     *10 (N.D. Cal. Sept. 13, 2011) ("[T]here is no requirement that notice be perfect.").

4           The parties have agreed on a notice plan that would provide class members with

5     individual notice by e-mail. *See* Settlement Agreement §3.3. Facebook has the means to

6     identify and send e-mails or Facebook messages to each and every Class member. Ex. 13.

7     Thus, Plaintiffs propose e-mailed notice to all identified Class Members, to be sent out by

8     Facebook; a third party notice / claims administrator may assist. Facebook will also cause a

9     summary of the settlement terms to be published (i) once in an insertion in the national

10    Monday-Thursday edition of USA Today, and (ii) once by transmission through PR

11    Newswire's US1 distribution service. S.A., §3.3(c). Plaintiffs request that the Court approve

12    this method of notice as the best practicable under the circumstances.

13           The notice provided to class members should "clearly and concisely state in plain,

14    easily understood language the nature of the action; the class definition; the class claims, issues,

15    or defenses; that the class member may appear through counsel; that the court will exclude

16    from the class any member who requests exclusion; the time and manner for requesting

17    exclusion; and the binding effect of a class judgment on class members." Fed. R. Civ. P. 23(c)

18    (2)(B) . The form of notice proposed by the parties complies with those requirements. *See*

19    Settlement Agreement, Exs. 2, 3, and 4. It clearly and accurately informs the class members of

20    the material terms of the settlement and their rights pertaining to it, including the right to opt

21    out from or object to the settlement. Plaintiffs thus request that the Court approve the form of

22    notice as well. Class members will have 60 days after notice goes out to opt out or exclude

23    themselves from the Class. S.A. §3.6.

24           Notice of the proposed settlement will also be provided to the appropriate federal

25    official and the appropriate State officials of all 50 states, as required by the Class Action

26    Fairness Act, 28 U.S.C. § 1715. Settlement Agreement §3.4. Facebook will provide these

27    government officials with copies of all required materials—including the Settlement

28    Agreement, Class Notice, and the amended complaint—so that the states and federal

-33-

government may make an independent evaluation of the settlement and bring any concerns to the Court's attention prior to final approval. Facebook shall, after filing of this Motion, file and serve a notification of service. *Id.*

## VII. A HEARING FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND FOR PAYMENT OF ATTORNEYS' FEES SHOULD BE SET, ALONG WITH PRE-HEARING EXCLUSION AND OBJECTION DEADLINES

"Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." Manual for Complex Litigation (Fourth) § 21.633 (2012). Following dissemination and publication of the Notices, Settlement Class Members will have 60 days in which to mail in their requests for exclusion or written objections, allowing for sufficient time thereafter for the parties to address any written objections in the moving papers. Settlement Agreement, §§ 3.3, 3.6.

Moreover, by the time of the Fairness Hearing, the Court will be in a position to rule on Class Counsel's Rule 23(h) motion for attorneys' fees, and for Service Awards to Plaintiffs; the Motion will be filed prior to the issuance of notice. Plaintiff requests that the Fairness Hearing and Rule 23(h) hearing be set for no earlier than 185 days after Preliminary Approval. Submitted herewith is a proposed Preliminary Approval Order, which has been approved by Defendants. S.A. Ex. 1. A chart setting forth the dates as to notice, and the setting of the fairness hearing and the dates for the implementation of the relief by Facebook is Exhibit 2 hereto.

## VIII. THE COURT SHOULD APPOINT GARDEN CITY GROUP AS SETTLEMENT ADMINISTRATOR

As is set forth in the resume for Garden City Group, it has provided settlement administration for numerous class action settlements. Arns Decl., Ex. 7. As such, they each have the requisite experience to act as Settlement Administrator in this case. The Parties have agreed to recommend and request the appointment of Garden City Group as Settlement Administrator. The Court should approve their appointment.

-34-

IX. **CONCLUSION**

For all the foregoing reasons, the Motion for Preliminary Approval of the Settlement should be granted, the proposed Class and sub-Class should be certified for settlement purposes. Susan Mainzer, James Duval and W.T. should be appointed as class representatives. and The Arns Law Firm and Jonathan M. Jaffe appointed Class Counsel, and the Notices should be approved, and Garden City Group should be confirmed as the Settlement Administrator. The Court should also direct dissemination of the class notice, and set a hearing for the purpose of deciding whether to grant final approval of the settlement and Plaintiff's motion for attorneys' fees and costs. and whether to grant a service award for the Class Representative, and find that Facebook, Inc. has complied with the Class Action Fairness Act. 28 U.S.C. § 1715 by notifying the appropriate government authorities.

THE ARNS LAW FIRM

By:
    Robert S. Arns
    Jonathan E. Davis
    Steven R. Weinmann

JONATHAN JAFFE LAW

By: /s/ Jonathan M. Jaffe
    JONATHAN M. JAFFE
    Attorneys for Plaintiffs

-35-
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT Case No. CV 11-01726 LHK

EXHIBIT 1

## FRALEY V. FACEBOOK, CASE NO. 5:11-CV-01726-LHK

### Proposed Cy Pres recipients pursuant to Settlement Agreement §2.2

| Organization | URL | Amount |
|---|---|---|
| Joan Ganz Cooney Center | www.joanganzcooneycenter.org/ | $1,000,000.00 |
| Center for Democracy and Technology | www.cdt.org/ | $1,000,000.00 |
| Electronic Frontier Foundation | https://www.eff.org/ | $1,000,000.00 |
| MacArthur Foundation | www.macfound.org | $1,000,000.00 |
| Campaign for Commercial-Free Childhood | www.commercialfreechildhood.org/ | $500,000.00 |
| Consumers Federation of America | www.consumerfed.org | $500,000.00 |
| Consumers Union | www.consumersunion.org/ | $500,000.00 |
| Berkeley Center for Law and Technology (Berkeley Law School) | bclt.berkeley.edu/ | $600,000.00 |
| Center for Internet and Society (Stanford Law School) | cyberlaw.stanford.edu/ | $600,000.00 |
| Information Law Institute (NYU Law School) | www.law.nyu.edu/ili/index.htm | $600,000.00 |
| High Tech Law Institute (Santa Clara University School of Law) | law.scu.edu/hightech/ | $600,000.00 |
| Berkman Center for Internet and Society (Harvard Law School) | http://cyber.law.harvard.edu/ | $600,000.00 |
| Consumer Privacy Rights Fund | www.rosefdn.org/article.php?id=260 | $500,000.00 |
| Connect Safely | www.ConnectSafely.org | $500,000.00 |
| Wired Safety | www.WiredSafety.org | $500,000.00 |
| | **TOTAL** | **$10,000,000.00** |

EXHIBIT 2

Implementation Schedule
(Summary of Dates in Settlement Agreement)

| Description | Timing | Pursuant to Settlement Agreement Section: |
|---|---|---|
| Short-Form Notice by Email or Facebook Messaging begins | 30 days following Preliminary Approval Order | 3.3(b) |
| Internet Posting of Long Form Notice and website setup begins | 30 days following Preliminary Approval Order | 3.3(a) |
| Publication Notice takes place between | 30-90 days following Preliminary Approval Order | 3.3(c) |
| Last day to complete Email or Facebook Messaging Notice | 90 days following Preliminary Approval Order | 3.3(b) |
| Objections must be filed with the Court by Facebook, and Class Members appearing must file Notice of Intention to Appear no later than | No later than 150 days following Preliminary Approval Order | 3.6 |
| Exclusion Requests must be postmarked by | 150 days following Preliminary Approval Order | 3.7 |
| Proof of Notice by Facebook/Settlement Administrator must be provided to Class Counsel | 7 days before filing of Class Counsel's motion in support of Final Order and Judgment | 3.5 |
| Exclusion list must be served on Class Counsel by Facebook | 7 days before filing date of Class Counsel's motion in support of Final Order and Judgment | 3.7(a) |
| Last day for Facebook to exercise termination clause | 7 days before filing date of Class Counsel's motion in support of Final Order and Judgment | 3.7(b) |
| Last day for Facebook to file brief or statement in support of Final Order and Judgment | 7 days before Fairness Hearing | 3.8 |
| Fairness Hearing | At least 185 days after Preliminary Approval | 3.2(d) |
| Final Settlement Date | 2 days after judgment becomes final | 1.7 |
| Payment of Attorney Fees and Incentive Awards | Later of 14 days after either Final Settlement Date or Facebook receives W-9 | 2.3 and 2.4 |
| Cy Pres Distribution | within 90 days after Final Settlement Date | 2.2 |
| Section 2.1(d) consultation with Class Counsel completed | 90 days after Final Settlement Date | 2.1(d) |
| Class Relief completed | Not to Exceed 6 months following Final Settlement Date | 2.1 |