# EXHIBIT 1

ROBERT S. ARNS
(#65071, rsa@arnslaw.com)
JONATHAN E. DAVIS
(#191346, jed@arnslaw.com)
STEVEN R. WEINMANN
(#190956, srw@arnslaw.com)
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:  (415) 495-7800
Fax:  (415) 495-7888

JONATHAN M. JAFFE
(# 267012, jmj@jaffe-law.com)
**JONATHAN JAFFE LAW**
3055 Hillegass Avenue
Berkeley, CA 94705
Tel: (510) 725-4293
Fax: (510) 868-3393
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated, | **Case No. CV 11-01726 LHK PSG** |
| | **SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES** |
| | **CLASS ACTION** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | **1.CAL. CIV. CODE § 3344** |
| | **2.UNFAIR COMPETITION** |
| FACEBOOK, INC., a corporation; and DOES 1-100, | **3.UNJUST ENRICHMENT** |
| | Courtroom:  4 |
| Defendants. | Judge:  Hon. Lucy H. Koh |
| | Trial Date:  None Set |

1. Plaintiffs ANGEL FRALEY, PAUL WANG and SUSAN MAINZER, JAMES H. DUVAL, a minor, by and through JAMES DUVAL as Guardian ad Litem, and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as Guardian ad Litem ("Plaintiffs") on behalf of themselves and all others similarly situated, make the following allegations on information and belief, except as to allegations pertaining to Plaintiffs individually, which are based on their respective personal knowledge:

## I. INTRODUCTION

2. Plaintiffs bring this class action complaint against Facebook, Inc. (hereafter, "FACEBOOK") for appropriating the names, photographs, likenesses and identities of Plaintiffs to advertise products, services or brands for a commercial purpose without Plaintiffs' consent, or the consent of their parents or legal guardians when a minor was involved, for unfair and deceptive business practices, and in violation of FACEBOOK's agreement with Plaintiffs, accepted industry standards, and state law.

3. The wrongful conduct by FACEBOOK that is the subject of this complaint arises from what FACEBOOK calls "Sponsored Stories." "Sponsored Stories" is a deceptive phrase; "Sponsored Stories" are neither sponsored in the sense that a benefit is being conveyed free of charge, nor are they stories in the customary sense of the word. They are simply paid advertisements. FACEBOOK intentionally and knowingly created and developed this misleading advertising scheme that improperly uses the names, photographs, likenesses and identities of Plaintiffs to generate substantial profits for FACEBOOK, all without consent, to advertise or sell products or services or brands. Plaintiffs each have a right of publicity under common and statutory law, which entitles them to be compensated for the use of their names, likenesses and/or photographs. Specifically, California Civil Code § 3344 provides expressly for such a right. Plaintiffs have been deprived of such compensation by FACEBOOK.

## II. JURISDICTION AND VENUE

4. This Court has personal jurisdiction over FACEBOOK because (a) a substantial portion of the wrongdoing alleged in this complaint took place in this state, and (b) FACEBOOK is authorized to do business here, has sufficient minimum contacts with this state, and/or otherwise intentionally avails itself of the markets in this state through the promotion, marketing and sale of products and services in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. This case was removed from California Superior Court pursuant to the Class Action Fairness Act.

5. Venue is proper in this Court because FACEBOOK's headquarters and principal place of business are in the City of Palo Alto, County of Santa Clara, State of California. Venue is also proper under California Code of Civil Procedure § 17203 as this is a Court of competent jurisdiction.

## III. PARTIES

6. Individual Plaintiffs/Class Representatives. Plaintiff Angel Fraley is a citizen and resident of Seattle, in King County, Washington. Her name by which her friends and acquaintances know her, and by which she is registered on the website http://www.facebook.com ("facebook.com"), is Angel Frolicker. At all relevant times herein, Ms. Fraley was a facebook.com member.

7. Plaintiff Susan Mainzer is a citizen and resident of Los Angeles, California in Los Angeles County. Her name by which her friends and acquaintances know her, and by which she is registered on facebook.com, is Susan von Seggern. At all relevant times herein, Ms. Mainzer was a facebook.com member.

8. Plaintiff Paul Wang is a citizen and resident of Oakland, California in Alameda County. At all relevant times herein, Mr. Wang was a Facebook.com member.

9. Plaintiff James H. Duval is and at all relevant times was a minor, under 18 years of age, residing in Contra Costa County, California. At all relevant times herein, James H. Duval was a facebook.com member. Mr. Duval is a minor who is concerned about being identified with mass-culture and the establishment.

10. Plaintiff William Tait is and at all relevant times was a minor, under 18 years of age, residing in the County of Los Angeles, California. At all relevant times herein, William Tait was a facebook.com member.

11. Defendant Facebook, Inc. is a corporation organized and existing under the laws of the state of Delaware that maintains its headquarters and principal place of business in Palo Alto, California, operating by and under the laws of California. FACEBOOK conducts business throughout California, the nation and the world. FACEBOOK operates the Internet site facebook.com.

12. Defendant Does 1 through 100. Plaintiffs are unaware of the true names and capacities of Does 1 through 100, inclusive, and therefore sue such defendants by fictitious names. Plaintiffs will amend the complaint to show the true names and capacities of the fictitiously named defendants when they are ascertained. Plaintiffs are informed and believe, and on that basis allege, that Does 1 through 100 are agents, joint employers, co-conspirators, employees and/or representatives of the named defendants. Plaintiffs are informed and believe, and on that basis allege, that the fictitiously named defendants are liable to plaintiff and the class members, and each of them, for the conduct and damages alleged herein.

## IV. FACTUAL ALLEGATIONS

13. Defendant FACEBOOK is an advertising company that owns and operates the world's largest social networking site, facebook.com. FACEBOOK's purpose as a business entity is to generate revenue, which is achieved primarily through the sale of advertising targeted at their users. FACEBOOK requires users ("Members") to register on the site facebook.com in order

to post content to the site, establish social network relationships within the site, and view most of the content produced by other Members. Members receive an Internet presence on facebook.com where they can exchange highly personal messages through text, images, audio and video, and display equally personal photos, to an explicitly identified group of friends, family and acquaintances, as well as those outside of this group. Facebook.com has become an integral part of the lives of approximately 600 million people around the world and has become the de facto method of communication among friends for a significant portion of these Members. Facebook.com has over 153 million Members in the United States. Over 51 million of these are minors.

14. FACEBOOK employs a unique lexicon of doublespeak that takes common English words and intentionally contorts their everyday meanings in a way beneficial to FACEBOOK, but misleading to the reader. For example, FACEBOOK deploys a graphic with the word "Like" on it ("Facebook Like button") found throughout facebook.com and the Internet. When the Facebook Like button appears on third party website, it acts as a link back to the facebook.com website, allowing a Member to interact with their own FACEBOOK profile.

15. Although the Facebook Like button has the text "like" on it, its use does not always have anything to do with affinity. Registered Members of FACEBOOK are enticed to click on this button to receive special offers, to gain access to other pages of interest, to see photos, or to get notifications of upcoming events, for example. FACEBOOK takes a person's action of clicking on this Facebook Like button and misrepresents that action by publishing to other Members an affinity that generally does not exist. The result of this is the Member is falsely reported by FACEBOOK to like something they do not. Other examples of such doublespeak abound:

a. A FACEBOOK "friend" ("Facebook Friend") is anyone with whom one Member has given explicit privileges to send and receive messages, see postings,

1

2

photos, or other facebook.com actions taken by the Member, as opposed to a person who one knows and with whom one has a bond of mutual affection.

3

4

5

6

7

8

9

b. A FACEBOOK "story" ("Facebook Story") is text posted by a Member, or a Facebook action taken by a Member on facebook.com that may appear on a Member's Facebook Profile Page and in the Facebook News Feeds of other Members. It is almost always a single sentence, and unlike the word 'story' as it is properly used, a Facebook Story is not an account of an evolution of events about a person or thing. It is almost always an ephemeral thought, also referred to as a "status update" in the FACEBOOK lexicon.

10

11

12

13

c. FACEBOOK "news" ("Facebook News") is anything a Member may post on his or her Facebook Profile Page such as, "My cat is adorable" or "I just woke up." It is the same thing as a Facebook Story.

14

15

16

17

18

d. A FACEBOOK "sponsor" ("Facebook Sponsor") is an advertiser, not one who donates money to an entity or provides funds or resources for a project or activity carried out by another. The phrase "Sponsored Stories" is equally misleading terminology intentionally employed by FACEBOOK to avoid the negative connotation of the common phrase "Paid-for advertisement."

19

20

21

22

23

16. To become a Member of facebook.com, a person must register a profile. FACEBOOK requires its Members to submit their names, email addresses, birth dates, and gender at the time of registration. Members may upload a Facebook Profile Photo—often, a photograph of themselves—which is viewable by anyone, regardless of whether they are a Member or not.

24

25

26

17. After joining, a Member gets a FACEBOOK "Profile" ("Facebook Profile") page. Within this Facebook Profile page Members can see, among other things, a Facebook "News Feed" and a "Wall" ("Facebook Wall").

27

28

18. Members are connected to other Members in relationships called "Friends". A Facebook Friend is someone to whom you have given explicit permission to post content to your Facebook Wall to see information about you, and to send you messages, among other things.

19. The Facebook News Feed displays status updates, photos, URLs, and the like, known as "stories" in the FACEBOOK lexicon, from other facebook.com Members.

20. A Member may post information—text, images, web links, and video information— using a variety of methods. This information is fed into the Facebook News Feed of other Members with whom the posting Member is a Facebook Friend.

21. FACEBOOK sells highly targeted advertising services that place ads on Members' Facebook Profile Pages and other pages. FACEBOOK enjoys substantial profits from this.

22. FACEBOOK offers (or more accurately, imposes upon) Members a variety of features that are enabled by default. FACEBOOK requires Members to proactively disable those features if Members do not want to employ them. These features include "Places" and "Facebook ads." Many other features cannot be disabled. The advertising scheme known as "Sponsored Stories" is one of those features that cannot be disabled.

23. Posting is the main method of interacting with facebook.com and is a feature that is always enabled. A Member Posts by adding text, images, web links, and video information to his or her "News Feed."

24. "Check-in" allows a Member to announce to Friends his or her geographical location within the feature Places. This information is also fed into the Member's "News Feed." The locations are frequently linked to business establishments. "Check-in" is enabled by default.

25. The Facebook "Like" feature is a button located on pages both inside and outside of facebook.com. When Members click on Facebook Like buttons, they make what

FACEBOOK refers to as a "connection" to the associated item. Connections appear in the Members' News Feeds. Members click on the Facebook Like button for many different reasons having nothing to do with having an affinity for the associated item. For example, as noted above, many members are requested to click on the Facebook "Like" button to get discounts on products, support social causes, or just to see a humorous image.

26. On or around January 25, 2011, FACEBOOK launched a new advertising service called "Sponsored Stories." It turns Members' actions into what appears to be a personally endorsed advertisement on their Facebook Friends' pages. When a Member uses a Posts to Facebook function, Facebook Likes, uses the Facebook Check-in, uses an application or plays a game that integrates with the Facebook website, and the content relates to an advertiser in some way determined solely by FACEBOOK, the interaction can result in the Member's Facebook Profile image, name, photograph and/or likeness appearing as an endorsement in a paid advertisement. This advertisement appears on the pages viewed by some or all of the Friends of that Member. Members are unaware their interaction with the website is being interpreted and publicized by FACEBOOK as an endorsement of those advertisers, products, services or brands.

27. In a manner solely determined by FACEBOOK, Sponsored Stories advertisements are each uniquely and independently generated and shown to FACEBOOK Members based on how that Member's Facebook Friends have interacted with the facebook.com website. For example, when a Member logs into the facebook.com website and views a page, the website determines if one of the Member's Facebook Friends has "Liked" a certain product, and if so displays a Sponsored Story advertisement that draws an endorsement connection between the Facebook friend and the product. Thus, Members do not create the advertisements or the content of those advertisements in any meaningful way; FACEBOOK does.

28. The Class members were not asked for their consent to appear in such advertisements.

29. FACEBOOK creates and develops the content of those advertisements in whole or in part, as well as the entire advertisement itself.

30. The Sponsored Stories advertisement service is enabled for all Members. Members are unable to opt-out of the service.

31. FACEBOOK's terms of use is comprised of the Statement of Rights and Responsibilities (http://www.facebook.com/terms.php?ref=pf[1]), Privacy Policy (http://www.facebook.com/policy.php), and a variety of references found with tremendous difficulty—if at all—throughout the Facebook.com site (collectively referred to as "Terms of Use" hereafter.)

32. FACEBOOK's Terms of Use intentionally mislead Members into believing that Members can prohibit the use of their name and Facebook Profile picture in all advertisements:

> You can use your privacy settings to limit how your name and [Facebook] profile picture may be associated with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. You give us permission to use your name and [Facebook] profile picture in connection with that content, subject to the limits you place.

> Statement of Rights and Responsibilities, Section 10.1, http://www.facebook.com/terms.php?ref=pf.

33. Regarding Posts by a Member, The Privacy Policy states, "You can control exactly who can see it at the time you create it." (Privacy Policy, Section 3, http://www.facebook.com/policy.php).

34. In spite of the above misleading assertions in the Terms of Use, a Member cannot prevent a Post, Like, Check-in or application from taking a Member's name, photograph, likeness or identity and using it as an endorsement for a Sponsored Story advertisement. From

---

1 All references to Internet citations in this Complaint refer to URLs last visited June 6, 2011, unless otherwise noted.

1   a buried Help Center page, not connected by any link within the Privacy Policy or Statement

2   of Rights and Responsibilities pages, FACEBOOK publishes the following question and

3   answer:

4
5
6

Can I opt out of seeing or being featured in sponsored News Feed stories? While there is no way to opt out of seeing all or being featured in any Sponsored Stories, you can remove specific stories by clicking the "X" displayed in the upper right side of a story and choosing the appropriate option when prompted.

7

Sponsored Stories, http://www.facebook.com/help/?faq=19723.

8

9   35.   Thus, FACEBOOK is telling Members on the one hand that Members can control who

10   can see their information, but on the other hand, that Members cannot prevent their identities

11   from being used in advertisements shown to others.

12   36.   The Terms of Use are worded in a way difficult for Members to understand.

13   FACEBOOK, itself acknowledges this:

14
15
16
17

Many websites' privacy policies are challenging for people to understand because they are often written for regulators and privacy advocates, not the majority of people who actually use those websites. Our own privacy policy has been criticized as being "5830 words of legalese" and "longer than the U.S. constitution – without the amendments." Okay, you're right. We agree that privacy policies can and should be more easily understood...

18
19

A Privacy Policy Posted Re-imagined For Users Like You, Facebook Site Governance (Feb. 25, 2011), https://www.facebook.com/fbsitegovernance

20
21

37.   A Member is never required to read or agree to the Terms of Use.

22
23

38.   Sponsored Story advertisements did not exist at the time the Class Members first registered.

24   39.   With regard to Sponsored Stories' launch, FACEBOOK never notified Members of the

25   drastic changes to FACEBOOK's advertising scheme.

26
27
28

40. No consent is sought or received by FACEBOOK to convert a Member's action on the website into an endorsement of the advertiser.

41. Where a Member is a minor, no consent for use of the Member's name, photograph, likeness or identity is sought or received from the minor's parent or legal guardian.

42. The Nielsen Company, which is a company that provides clients the most complete understanding of what consumers watch and why they purchase (i.e., how people respond to advertising), and is frequently quoted by Facebook, has determined that advertising consisting of recommendations by friends, such as "Sponsored Stories," is the most effective form of advertising.

43. FACEBOOK has repeatedly referred to friend-endorsed advertisement (such as Sponsored Stories) as "the Holy Grail" in advertising, touting its higher value compared to other advertisement schemes.

> Nothing influences people more than a recommendation from a trusted friend. A trusted referral influences people more than the best broadcast message. A trusted referral is the Holy Grail of advertising.
>
> > Mark Zuckerberg, FACEBOOK CEO
> > Claire Hoffman, *The Battle for Facebook*, Rolling Stone, Sept. 15, 2010.

> Marketers have always known that the best recommendation comes from a friend....This, in many ways, is the Holy Grail of marketing.
>
> > Sheryl Sandberg, FACEBOOK COO
> > "'It's All About People' with Sheryl Sandberg at IAB MIXX [HQ]," Sept. 28, 2010,
> > http://www.facebook.com/video/video.php?v=760718736391.

44. The value of a Sponsored Story advertisement is at least twice the value of a standard Facebook.com ad, per FACEBOOK'S own statements:

> Ads shown with the names of people's friends are twice as effective as those without,....
>
> > Guide to the New Facebook Ads Manager, Page 3,
> > http://ads.ak.facebook.com/ads/FacebookAds/TheNewAdsManager_May2011v2.pdf.

45. FACEBOOK Chief Operating Officer ("COO") Sheryl Sandberg states that such friend-endorsed advertisements are actually three hundred percent more valuable than non-friend advertisements:

> When a customer has a good experience...on Facebook, the average action is shared with the average number of friends, which is 130 people. This is the illusive goal we've been searching for, for a long time; Making your customers your marketers.

> On average, if you compare an ad without a friend's endorsement, and you compare an ad with a friend's [Facebook] "Like", these are the differences: on average, 68% more people are likely to remember seeing the ad with their friend's name. A hundred percent—so two times more likely to remember the ad's message; and 300% more likely to purchase.

> Sheryl Sandberg, FACEBOOK COO,
> "'It's All About People' with Sheryl Sandberg at IAB MIXX [HQ]," Sept. 28, 2010,
> http://www.facebook.com/video/video.php?v=760718736391.

46. Thus FACEBOOK, through Sponsored Stories advertisements, is attempting to make the approximately 153 million Facebook Members in the United States into their marketers, but without any compensation. In spite of the increased value of friend-endorsed advertisements, the Member is deprived of any payment whatsoever for the use of his or her photo, name, likeness or any other information used in the endorsed advertisement.

47. Members have an expectation interest in the use of their identities in Sponsored Story advertisements, from which FACEBOOK derives significant advertising revenue. The value of the endorsement compared to non-endorsed advertisements is used by FACEBOOK to sell the Sponsored Story product to advertisers. Plaintiffs are not paid by FACEBOOK for the use of their name, photograph and/or likeness in the advertisement. FACEBOOK receives substantial and ever-increasing revenue from the sale of such advertisements.

48. The Terms of Use contain the following choice of law clause:

> You will resolve any claim, cause of action or dispute ("claim") you have with us arising out of or relating to this Statement or Facebook exclusively in a state

or federal court located in Santa Clara County. The laws of the State of California will govern this Statement, as well as any claim that might arise between you and us, without regard to conflict of law provisions. You agree to submit to the personal jurisdiction of the courts located in Santa Clara County, California for the purpose of litigating all such claims.

Statement of Rights and Responsibilities, Section 15.1, http://www.facebook.com/terms.php?ref=pf.

49. All decisions as to the content of the Terms of Use, content of the Statement of Rights and Responsibilities, and the decisions as to whether or if to gain consent from Members for their use in Sponsored Stories, were made in FACEBOOK's California headquarters by FACEBOOK executives and employees. All decisions as to how to implement and market the Sponsored Stories advertising campaign were also made in FACEBOOK's California headquarters by FACEBOOK executives and employees.

## Facts Common to Plaintiffs' Actions

50. Plaintiffs each registered a facebook.com account prior to January 25, 2011.

51. The Sponsored Stories advertising scheme did not exist at the time Plaintiffs registered with facebook.com.

52. Plaintiffs did not agree to allow FACEBOOK to use their names, photographs, or likenesses in an advertisement as an endorsement.

53. Plaintiffs had not, and could not have been expected to have had any exposure to the unique and novel advertising scheme Sponsored Stories. FACEBOOK had not previously employed advertising schemes that converted a user's website interaction into an endorsed advertisement. For this reason, Plaintiffs reasonably had no expectation that their names, photographs or likenesses would be used to endorse products, services, goods or brands when they took any sort of FACEBOOK action as described below.

54.     FACEBOOK used each Plaintiff's user name, Facebook Profile photo, and/or likeness without consent in each of the respective advertisements described below.

55.     Each Plaintiff's name and photo had been provided to FACEBOOK earlier for purposes unrelated to the advertisement in question as required or requested by FACEBOOK.

56.     Each advertisement described below used the respective name of the advertiser and an image related to the advertiser.

57.     Each advertisement described below combined all of the respective elements described below, heretofore unrelated to one another, into new content appearing on facebook.com.

58.     FACEBOOK was solely responsible for the creation and development of each advertisement, the content, and the advertisement scheme by which each advertisement was created.

59.     Each advertisement was new, original and unique content created and developed in whole or in part by FACEBOOK.

60.     In each advertisement, the respective Plaintiff appears to be endorsing the respective advertiser when in fact, he or she does not.

61.     No Plaintiff knew that clicking on the Facebook Like button, as described below, would result in the appearance of him or her endorsing the respective advertiser in a commercial advertisement.

62.     No Plaintiff consented to the use of his or her name, photo or likeness in any advertisement. Where a Plaintiff is a minor, that minor's parent did not give consent.

63.     Each Plaintiff was deprived the monetary value of having his or her endorsement appear in that advertisement, and therefore was deprived of money to which he or she was entitled.

64. Each Plaintiff has been personally injured by this loss of money. The injury to Plaintiffs is not outweighed by any countervailing benefits to them or other consumers.

## Angel Fraley

65. Prior to January 25, 2011, Ms. Angel Fraley uploaded a Facebook Profile picture of herself that clearly bears her likeness.

66. Sometime on or before March 7, 2011, Ms. Fraley clicked on a Facebook "Like" button on the facebook.com page for Rosetta Stone. She did this not because she likes Rosetta Stone, but because she believed she had to in order to try a free software demonstration. See Exhibit 1 hereto, a true and correct copy of a printout of the page on March 10, 2011 and similar to the page upon which Ms. Fraley acted.

67. On March 7, 2011, and on many subsequent days thereafter, Ms. Fraley's Facebook user name, Angel Frolicker, and her Facebook Profile picture bearing her likeness in the form of a photograph appeared in a Rosetta Stone advertisement on facebook.com. It was shown to at least one other Facebook Member. Ms. Fraley's Facebook "friends" know and recognize her by her online user name. Exhibit 2 hereto is a true and correct copy of the screen shot showing the Sponsored Story advertisement. (Personal identifying information has been redacted from the screen shot.)

68. The advertisement included a sentence authored solely by FACEBOOK, "Angel Frolicker likes Rosetta Stone."

## Susan Mainzer

69. Prior to January 25, 2011, Ms. Mainzer uploaded a Facebook Profile picture of herself that clearly bears her likeness in the form of a photograph.

70. Sometime on or before February 12, 2011, Ms. Mainzer clicked on a Facebook "Like" on the facebook.com page for UNICEF. She did this to support UNICEFF in a campaign to

reduce the deaths of children. See Exhibit 3 hereto, a true and correct copy of a printout of the page on April 12, 2011 and similar to the page earlier seen by Ms. Mainzer.

71. On February 12, 2011, and again on many subsequent days, Ms. Mainzer's name and photograph and/or likeness appeared in a UNICEF advertisement on facebook.com. It was shown to at least one other Member.

72. The advertisement included a sentence authored solely by FACEBOOK, "Susan von Seggern likes UNICEF."

### Paul Wang

73. Sometime on or before March 10, 2011, Mr. Wang clicked on a Facebook "Like" button found on the facebook.com page for "Warrior Dash." He did this not because he had an affinity for Warrior Dash—in fact, Mr. Wang had minimal familiarity with the advertiser and only clicked on the Facebook Like button because that was the only way to see photos about this intriguing event. See Exhibit 4 hereto, a true and correct copy of a screen shot of the page, taken May 25, 2011 and similar to the page as earlier seen by Mr. Wang with the same Warrior Dash enticement.

74. On March 17, 2011 and again on many other days, Mr. Wang's name appeared in a Warrior Dash advertisement on facebook.com. It was shown to at least one other Facebook Member.

75. The advertisement included a sentence authored solely by FACEBOOK, "Paul Wang likes Warrior Dash."

### Jimmy Duval

76. Prior to April 7, 2011, Mr. Duval uploaded a Facebook Profile picture of himself that clearly bears his likeness in the form of a photograph. He has added the nickname "Bassnutt" to his username on Facebook.

77. Sometime on or before April 7, 2011, Mr. Duval clicked on a Facebook "Like" button found on the facebook.com page for PopCorners. He did this to get a special offer code, not because he had an affinity for PopCorners. See Exhibit 5 hereto, a true and correct copy of a printout of the page on May 4, 2011, similar to that which enticed Mr. Duval to click on the Facebook Like button.

78. On April 7, 2011, and again on many subsequent days, Mr. Duval's name and said photograph appeared in a PopCorners advertisement on facebook.com. It was shown to at least one other Facebook Member. Exhibit 6 hereto is a true and correct copy of the ad.

79. The advertisement included a sentence authored solely by FACEBOOK, "Jimmy Bassnut Duval likes PopCorners."

80. At no point did FACEBOOK seek or obtain consent from his parents or other legal guardians to use his name or likeness as required under California law. California Civil Code § 3344(a) expressly requires the prior written consent of a minor's guardian to the use of his or her name or likeness.

## William Tait

81. Prior to March 30, 2011, Mr. Tait uploaded a Facebook Profile picture of himself that clearly bears his likeness in the form of a photograph. He is a runner, and even though this image does not show his face, his Facebook Friends know that this image is his likeness, uniquely associated with Mr. Tait.

82. Sometime on or before March 30, 2011, Mr. Tait clicked on a Facebook "Like" button found on the facebook.com page for Warrior Dash. He did this to win "Warrior prize packs," see photos from previous events, or get updates about the event. See Exhibit 5 hereto, a copy of a screen shot of the page, taken May 25, 2011 and similar to the page as earlier seen by Mr. Tait with the same Warrior Dash enticement.

83. On March 30, 2011, and again on many subsequent days, Mr. Tait's name and said photograph appeared in a Warrior Dash advertisement on facebook.com It was shown to at least one other Facebook Member. Exhibit 7 hereto is a true and correct copy of a print out of the ad.

84. The FACEBOOK-created ad employs his name and photograph, and says, "William Tait and Paul Wang like Warrior Dash." Mr. Tait did not author that sentence, FACEBOOK did.

85. At no point did FACEBOOK seek or obtain consent from William Tait's parents or other legal guardians to use his name or likeness as required under California law.

86. Facebook created the Sponsored Story Advertisements featuring the names and likenesses of the PlaintiffsPlaintiffs did not create these Sponsored Story advertisements, nor did they intend to have these advertisements created.

87. Advertisers did not create those advertisements.

88. In other words, Plaintiffs' pictures, names and likenesses were made to appear as part of advertisements created by FACEBOOK. Plaintiffs' Facebook Friends then saw advertisements appearing on the facebook.com pages of those Facebook Friends, with Plaintiff Fraley, Plaintiff Wang, Plaintiff Mainzer, Plaintiff James H. Duval, or Plaintiff Tait's Facebook Profile image combined with statements *never* made by Plaintiffs, such as "Angel Fraley likes Rosetta Stone," "Paul Wang likes Warrior Dash," "Susan Mainzer likes UNICEF," "Jimmy Bassnut Duval likes PopCorners," or "William Tait likes Warrior Dash." These statements were, in fact, created in whole by FACEBOOK.

89. FACEBOOK, and FACEBOOK alone, took those sentences it created, the Facebook Profile photos and names of Plaintiffs which Plaintiffs unwittingly provided for unrelated (and/or required) purposes at some point earlier in time, along with the name and image of an

advertiser, and combined them to create unique, original advertisements in which the Member Plaintiff had no idea, much less intention, he or she would appear.

90. Neither Plaintiffs nor the parents of the minor Plaintiffs ever consented to the use of their names, photographs likenesses, or identities to advertise or sell products or services or brands through the Facebook Sponsored Stories advertising service. Plaintiffs and the parents of the minor Plaintiffs reasonably believed that their names and likenesses would not be so used.

91. The value to an advertiser of using the name, photograph, likeness or identity of a Friend in an advertisement is measurably higher than that of using the identity of a person unconnected with the person to whom the advertisement is being shown. That value is measurable in dollars on an individual and on a class-wide basis.

92. Plaintiffs had a financial interest in the use of their identities in these advertisements.

93. Plaintiffs were deprived of their financial interest, and were thus harmed.

## V. CLASS ACTION ALLEGATIONS

94. Plaintiffs seek certification of this action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

95. Plaintiff Class. The class sought to be represented is defined as follows:

All natural persons in the United States who had an account registered on facebook.com as of January 24, 2011, and had their names, photographs, likenesses or identities associated with that account used in a Facebook Sponsored Stories advertisement ("the Class").

Subclass of Minors.

All persons in the Plaintiff Class who additionally have had their names, photographs, likenesses or identities used in a Facebook Sponsored Stories ad while under 18 years of age ("the Minor Subclass").

Excluded from the Class are (a) FACEBOOK, its officers and directors, legal representatives, successors or assigns; (b) any entity in which FACEBOOK has or had a controlling interest; (c) the judge to whom this case is assigned and the judge's immediate family; (d) any juror selected to hear this case.

96. The Class is comprised of millions of persons, and is therefore so numerous that joinder in this action would be impracticable. The disposition of their claims through this class action will benefit Class Members, the parties and the courts. Upon information and belief, FACEBOOK has over 600 million Members worldwide, and potentially over 153 million persons in the Class, and over 51 million persons in the Minor Class.

97. Upon information and belief, the identities and contact information of the individual Members of the Class are available through FACEBOOK's electronic records.

98. Common questions of law and fact affecting the Class predominate over any individual issues. These questions of law and fact include, but are not limited to, the following:

- Whether Plaintiffs and the Class consented to the use of their names, photographs, likenesses, or identities in Sponsored Story advertisements;
- Whether FACEBOOK gained a commercial benefit or some other advantage by using Plaintiff and the Class' names, photographs, likenesses, or identities in Sponsored Stories advertisements;
- Whether Plaintiffs and the Class were harmed by the nonconsensual use of their names, photographs, likenesses, or identities in Sponsored Story

advertisements, and whether FACEBOOK's conduct was a substantial factor in causing that harm;

- Whether Class Members are entitled to damages as a result of FACEBOOK's conduct, and, if so, what is the measure of those damages;
- Whether FACEBOOK's conduct described herein violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.);
- Whether FACEBOOK was unjustly enriched as a result of its conduct described herein;
- Whether FACEBOOK violated California Civil Code § 3344; and
- What the value of an endorsement by a non-celebrity is in a social network advertisement.

99. FACEBOOK engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class Members. Similar or identical statutory and common law violations, business practices and injuries are involved. Therefore, individual questions, if any, pale by comparison to the numerous common questions presented.

100. The injuries sustained by Members of the Class flow, in each instance, from a common nucleus of operative facts. In each case, FACEBOOK caused or permitted the unauthorized appropriation of the Plaintiff and the Class Members' names, photographs, likenesses or identities without adequate or any notice, consent, or opportunity to withdraw from participation.

101. Given the similar nature of the Class Members' claims and the absence of material differences in the statutes and common laws upon which the Class Members' claims are based, a nationwide class will be easily managed by the Court and the parties.

102. Because of the relatively small size of the individual Class Members' claims, no Class Member could afford to seek legal redress on an individual basis. A class action is superior to any alternative means of prosecution.

103. The representative Plaintiffs' claims are typical of those of the Class and Subclass, as all Members of the Class are similarly affected by FACEBOOK's uniform and actionable conduct as alleged herein.

104. FACEBOOK has acted and failed to act on grounds generally applicable to Plaintiffs and the other Members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Members of the Class.

105. Plaintiffs will fairly and adequately protect the interests of the Class and Subclass, and have retained counsel competent and experienced in class action litigation. The class representatives have no interests which conflict with or adverse to those of the other Class members.

106. Plaintiffs reserve the right to revise the above class definition based on facts learned in discovery.

## FIRST CAUSE OF ACTION

### (Violation of California's Right of Publicity Statute, Civil Code § 3344)

107. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

108. California's Right of Publicity Statute, California Civil Code § 3344 et seq. protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

109. During the Class period, FACEBOOK (and Does 1-100) knowingly used Plaintiffs' names, photographs, or likenesses to directly advertise or sell a product or service.

110. FACEBOOK (and/or Does 1- 100) did not have Plaintiffs' consent to do so.

Page 22
SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
Case No. CV 11-01726 LHK PSG

111. Plaintiffs received no compensation or other consideration for FACEBOOK's (and/or Does 1-100's) use thereof.

112. Plaintiffs were harmed by FACEBOOK's (and/or Does 1-100's) actions.

113. Use of Plaintiffs' names, photographs, and likenesses were directly connected to FACEBOOK's (and/or Does 1-100's) commercial use.

114. FACEBOOK's (and/or Does 1-100's) actions were a substantial factor in causing Plaintiffs' harm.

115. The advertisements were not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

116. Each incident is a separate and distinct violation of California Civil Code § 3344.

117. Plaintiffs and Members of the Class therefore seek injunctive relief, and other such preliminary and other equitable or declaratory relief as may be appropriate.

118. Plaintiffs and Members of the Class also seek remedy as provided for by California Civ. Code § 3344(a) in the amount equal to the greater of $750 per incident, or actual damages, any profits attributable to FACEBOOK's (and Does 1-100's) illegal action, before taking into account any actual damages, punitive damages, attorneys fees and costs, and any other relief as may be appropriate.

## SECOND CAUSE OF ACTION
### (Violation of Cal. Bus. & Prof. Code § 17200)

119. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

120. As described herein, FACEBOOK's (and Does 1-100's) nonconsensual use of its Members' names, photographs, and likenesses is a violation of California's Right to Publicity Statute, Civil Code § 3344.

121. These violations satisfy the "unlawful" prong of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.

122. FACEBOOK (and Does 1-100's) also violated the "fraudulent" prong of the UCL by intentionally and knowingly misrepresenting that Members have full control to prevent their appearance in Facebook advertising, including Sponsored Story advertisements. FACEBOOK (and Does 1-100) did so with the intent of getting Members to register with facebook.com, and to participate in ads even while FACEBOOK (and Does 1-100) knew there was no meaningful way to prevent one's name, photograph, likeness or identity from appearing as an endorsement in Sponsored Stories advertisement. Moreover, FACEBOOK (and Does 1 – 100) intentionally misrepresented a Member's ability to prevent his or her appearance in advertisements so FACEBOOK could enjoy substantial profits by having users unwittingly appear in such ads. Plaintiffs justifiably relied upon those misrepresentations when deciding to join FACEBOOK and when performing FACEBOOK actions such as clicking on the Facebook Like button. Plaintiffs suffered damages of deprivation of money earned by the misrepresentations, the amount to be proven at trial.

123. Alternatively, to the degree the Terms of Use may have been modified at a later time to truthfully represent a Member's inability to meaningfully opt out of Sponsored Story advertisements, FACEBOOK violated the "fraudulent" prong of the UCL by knowingly and intentionally failing to seek and acquire informed consent regarding such changes to the Terms of Use.

124. FACEBOOK (and/or Does 1- 100) also violated the "unfair" prong of the UCL by leading Members to believe they could opt out of advertising endorsements, encouraging Members to weave Facebook.com into their lives such that it becomes indispensable, and then introducing an advertising service from which Members are unable to opt out.

125. FACEBOOK (and/or Does 1- 100) violated the "unfair" prong of the UCL by intentionally profiting from the nonconsensual endorsements extracted from Members without sharing those profits with those Members.

126. FACEBOOK's (and/or Does 1- 100's) unfair, deceptive and fraudulent practices originated from and/or occurred primarily in California. Decisions concerning the creation of Sponsored Story advertisements were made in California, FACEBOOK maintains all or a substantial part of its computer systems that serve Facebook.com in California, and all or a substantial part of the code and content that create and/or comprise Sponsored Story advertisements is developed and deployed within and from California.

127. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court permanently enjoining FACEBOOK (and Does 1-100's) from continuing to engage in the unlawful, unfair and fraudulent conduct described herein. Plaintiffs seek an order requiring FACEBOOK (and/or Does 1- 100) to (1) immediately cease the unlawful practices stated in this Complaint, and (2) award Plaintiff and the Class reasonable costs and attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5.

128. Plaintiffs have a vested monetary interest in their appearance in FACEBOOK ads, and FACEBOOK has deprived them of that interest.

129. Plaintiffs each lost money to which they were entitled in the form of compensation for the use of their images and names, and in which they had a vested interest, by virtue of FACEBOOK's (and Does 1-100's) conduct. They are entitled to restitution of such sums.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

130. Plaintiffs incorporate each of the foregoing allegations as if fully set forth herein.

131. Plaintiffs and the Class have conferred a benefit upon FACEBOOK (and Does 1-100). FACEBOOK (and Does 1-100) has received and retained money from advertisers, a portion

of which belong to Plaintiffs and the Class as a result of co-opting Members names, photographs, likenesses and identities, and placing them in paid-for advertisements— Sponsored Stories—as described herein.

132. FACEBOOK (and Does 1-100) appreciates or has knowledge of said benefit.

133. Under principles of equity and good conscience, FACEBOOK (and Does 1-100) should not be permitted to retain money belonging to Plaintiffs and the Class that it unjustly received as a result of its actions.

134. Plaintiffs and the Class have suffered loss as a direct result of FACEBOOK's (and Does 1-100) conduct.

135. Plaintiffs, on their own behalf and on behalf of the Class, seek the imposition of a constructive trust on and restitution of the proceeds FACEBOOK (and Does 1-100) received as a result of its conduct described herein, as well as attorney's fees and costs pursuant to California Civ. Proc. Code § 1021.5.

136. PRAYER FOR RELIEF WHEREFORE, Plaintiffs individually and on behalf of the Class, pray for the following relief:

- Certification of this case as a class action on behalf of the Class defined above, appoint Plaintiffs Angel Fraley, Paul Wang, Susan Mainzer, James H. Duval by and through James Duval, and William Tait by and through Russell Tait, as class representatives, and appoint their counsel as Class co-counsel;

- A declaration that FACEBOOK's actions, as described herein, violate the California Right to Publicity Act (Cal. Civ. Code § 3344), violate the Unfair Competition Law, and have led to unjust enrichment;

- An award of injunctive and other equitable relief as is necessary to protect the interests of the Plaintiffs and the Class, including, inter

Page 26
SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
Case No. CV 11-01726 LHK PSG

alia, an order prohibiting FACEBOOK from engaging in the wrongful and unlawful acts described herein;

- Disgorgement or restitution by FACEBOOK of all revenue earned from its Sponsored Story advertisements feature during the class period;

- An award of damages, including statutory damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

- An award of all economic, monetary, actual, consequential, and compensatory damages caused by FACEBOOK's (and Does 1-100's) conduct, and if its conduct is proved willful, award Plaintiffs and the Class exemplary damages;

- An award of restitution against FACEBOOK (and Does 1-100's) for all money to which Plaintiffs and the Class are entitled in equity;

- An award to Plaintiffs and their Class Counsel of their reasonable litigation expenses and attorneys' fees;

- An award to Plaintiffs and the Class of pre- and post-judgment interest, to the extent allowable; and

- Such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiffs demand a jury trial on all issues so triable.

By_____

ROBERT S. ARNS
JONATHAN E. DAVIS
STEVEN R. WEINMANN
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel: (415) 495-7800
Fax: (415) 495-7888

Page 27
SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
Case No. CV 11-01726 LHK PSG

1

2    By _____
          JONATHAN M. JAFFE
3         **JONATHAN JAFFE LAW**
          3055 Hillegass Avenue
4         Berkeley, CA 94705
          Tel:   (510) 725-4293
5         Fax:   (510) 868-3393

6         Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
Case No. CV 11-01726 LHK PSG

**RosettaStone·**



Wall
Info
Valentine's App
**Demo TOTALe**
**P** Support
Video
Photos (41)
Major League Soccer
Ticket Sweepstakes
More

**404,908**
people like this

Likes                    See All

 Careers at
Rosetta Stone

 Rosetta Stone
Homeschool

 Rosetta Stone De

Tshulu Trust

 Rosetta Stone UK

Create a Page
Report Page
Share

---

**Rosetta Stone**  Like
Product/Service

Click 🖒 **Like** above

# Find your new language.



Take your first step today. ► Click here to try our demo.

**Introducing Rosetta Stone® Version 4 TOTALe™**, our newest language learning solution. Now, our trusted software is paired with an **entirely new online experience.** Rosetta Stone® Version 4 TOTALe™ is a complete solution that adds **live conversational practice** and **social learning activities** to our core course.

 Try the free demo

LEARN NATURALLY

**Rosetta**
**COURSE·**

Use our award-winning software, complete with proprietary speech-recognition technology



---

Create a Page

**You and Rosetta Stone**



3 friends like this.

**Sponsored Story**

 Recheng Tsang and Simon Winder like Levi's.

 Levi's
Like

Sponsored          Create an Ad

**Seattle Bucket List**
livingsocial.com

 365 Things to do in Seattle before you die.

**SEXY KITCHENS @ VERDEAUX**
verdeauxcondos.com

 Slab granite, deluxe stainless, tons of cupboard space. Bistro bar opens to living area. Verdeaux Condominiums. Spacious & Delicious!

**SEATTLE: 90% Off Burgers**
dealpop.com

 Get 50% to 90% off the best in Seattle. One ridiculously HUGE coupon every day!

CONVERSE CONFIDENTLY

**Rosetta**
**STUDIO™**

Practice through live 50-
minute sessions led by native
tutors



**Rosetta**
**WORLd™**

Interact in a community where
learners play games and
communicate with others



### TOTALe Mobile Companion™

Learn on the go with our Mobile Companion application for the
iPhone® and iPod touch®

iPhone® and iPod Touch® are registered trademarks of Apple, Inc.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 2

25

26

27

28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT 3

25
26
27
28

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
Case No. CV 11-01726 LHK PSG



 UNICEF

Create a Page
Report Page
Share



Believe in 

22,00



# Click for latest
tweets

unicef ✪
united states fund

The U.S. Fund for UNICEF delivers the
basics for life to children around the world,
including lifesaving vaccines and medical care,
emergency supplies, clean water and nutrition.

UNICEF has saved more children than any
humanitarian organization. A feat we are very
proud of. For every $1 donated, 90¢ goes
to deliver important resources to children in
need. Because we know, every penny counts.
UNICEF's efficient use of contributions allows
you to give with confidence.



Facebook © 2011 English (US)

About · Advertising · Developers  Careers · Privacy  Terms · Help

Chat (Offline)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
Case No. CV 11-01726 LHK PSG



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 5

25

26

27

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
Case No. CV 11-01726 LHK PSG

28



## "Like" us
## to get popping!

Wall
Info
Photos (22)
Welcome
Meet the Flavors
Feed Me!
Raves
Events
More▾

**About**
Time to change the popcorn/
PopCorners is the world's first
popcorn chip, a...
More

**56,486**
people like this

**Likes**

 Hungry Girl

 Gluten Freely

 Whole Foods
Market

 JetBlue Airways

Create a Page
Report Page
Share

**PopCorners**   Like
Food/Beverages



Join our snacking revolution!
"Like" us to receive a special offer code
to get popping with your very own bag!

POPCORNERS

Once upon a time there was a chip and a piece of popcorn. They
loved each other very much, but nobody accepted them on the
snack aisle – until now. Meet PopCorners, the first real popcorn
chip. Welcome to snacking nirvana.

POPCORNERS

Create a Page

**You and PopCorners**
Jimmy Bassnutt Duval likes this

**Recommended Pages**   See All
**Cumbre** Cumbre Yah
**Yah!** Brian Fey suggested you check
out his page.
Like

**People You May Know**   See All
 Jennifer Schultz
Add as friend

Sponsored         Create an Ad

Facebook © 2011 · English (US)        About · Advertising · Create a Page · Developers · Careers · Privacy · Terms · Help

Chat (Offline)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 6

25

26

27

SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES
Case No. CV 11-01726 LHK PSG

28