1  ROBERT S. ARNS (#65071, rsa@arnslaw.com)
   JONATHAN E. DAVIS (#191346, jed@arnslaw.com)
2  STEVEN R. WEINMANN (#190956, srw@arnslaw.com)
   **THE ARNS LAW FIRM**
3  515 Folsom Street, 3rd Floor
   San Francisco, CA 94105
4  Tel:   (415) 495-7800
   Fax:   (415) 495-7888
5
   JONATHAN M. JAFFE (# 267012, jmj@jaffe-law.com)
6  **JONATHAN JAFFE LAW**
   3055 Hillegass Avenue
7  Berkeley, CA 94705
   Tel:   (510) 725-4293
8  Fax:   (510) 868-3393
9  Attorneys for Plaintiffs

10

11                UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
12                     SAN JOSE DIVISION

13

| 14 | ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W. T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated, | **Case No. CV 11-01726 LHK** |
|----|----|----|
| 15 16 17 |  | **DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| 18 | Plaintiffs, | Date: July 12, 2012 |
| 19 | v. | Time: 1:30 p.m. Courtroom: 8 |
| 20 | FACEBOOK, INC., a corporation; and DOES 1-100, | Judge: Hon. Lucy H. Koh Trial Date: December 3, 2012 |
| 21 |  |  |
| 22 | Defendants. |  |

23

24

25

26

27

28                               -1-
   **DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR
   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
   Case No. CV 11-01726 LHK**

I, Robert S. Arns, hereby state and declare:

1. I am an attorney licensed to practice before all the federal and state courts located in the State of California and I am admitted to practice before this Court. I am the President of The Arns Law Firm, A Professional Corporation, one of the attorneys for Plaintiffs herein. I have personal knowledge of the facts stated in this declaration, and if called upon to testify, could and would competently testify thereto. I make this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

## I. INTRODUCTION

2. I have been actively and personally involved in every aspect of this litigation as lead counsel since its inception. This includes (1) preparing for and taking and defending virtually all of the twenty one depositions in this case, (2) preparing and overseeing written discovery, (3) overseeing all pleadings and participation in preparation of every brief, (4) conducting all settlement discussions and negotiations of all issues in the case, including preparing a 28 page executive mediation brief and a 231 page comprehensive settlement conference brief, (5) communication with the clients and opposing lawyers, (6) conducting frequent meetings with the plaintiff team to develop strategy for each phase of the case and to divide up assignments, (7) selection of and preparation of experts, (8) appearing as lead counsel at each court appearance in this case, (9) reviewing a massive number of documents produced by Facebook, (10) maintaining an organized front for every aspect of the case, and (11) constantly monitoring every detail of the case. In 36 years of practice I have never spent this much continuous time on any single matter in my office, except for the periods when I was trying a case.

-1-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

3. The risks of going forward with the litigation of this matter from the Plaintiffs' perspective include the usual hazards of trial, as well as defenses which would have required significant motion practice and effort to overcome. It is with a great sense of gratification that we have been able to accomplish quality injunctive relief, which has been valued by an economist, who has a specialty in the right of publicity, at $103,200,000. This case should serve to set guidelines for the ever increasing use of online marketing that uses "friend endorsements," such that it will be in harmony with the right of publicity generally and specifically under California Civil Code section 3344. Further, with $10,000,000.00 in cy *pres* funds available to monitor right of publicity and privacy issues in online marketing, the class will be well protected in the future. Class Counsel has demonstrated a high degree of competence in the litigation of this case and strongly believes that the Settlement is a fair, adequate, and reasonable resolution of the Settlement Class's disputes with Facebook and is preferable to continued litigation.

**Declaration of Honorable Edward A. Infante (Ret.)**

4. The Hon. Edward A. Infante (Ret.), the former Chief Magistrate Judge of the United States District Court for the Northern District of California, was the mediator in this case and supervisor of continuing settlement discussions. Judge Infante was kind enough to provide a declaration in support of the Motion for Preliminary Approval, in which he addresses the mediation and all of the terms of this settlement.

5. The Parties have engaged in extensive discovery in order to evaluate the relative strength of the Parties' claims and defenses. A complete discussion of this discovery is set forth below.

-2-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

## II. THE SETTLEMENT AGREEMENT

6. The terms of the proposed settlement are included in the Settlement Agreement, a true and correct copy of which is attached as Exhibit 1. It provides the following benefits to the class:

### 2. SETTLEMENT TERMS

**2.1 Class Relief.** Facebook agrees to take the following measures within a reasonable time not to exceed six months following the Final Settlement Date:

**(a) Revision of Facebook's Terms of Use.** In addition to other changes Facebook reserves the right to make to section 10.1 of its Statement of Rights and Responsibilities, Facebook will revise section 10.1 to include language reading substantially as follows:

#### About Advertisements and Other Commercial Content Served or Enhanced by Facebook

Our goal is to deliver advertising and other commercial or sponsored content, such as Facebook Ads and Sponsored Stories, that is valuable to our users and advertisers. In order to help us do that, you agree to the following:

You give us permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. This means, for example, that you permit a business or other entity to pay us to display your name and/or profile picture with your content or information. If you have selected a specific audience for your content or information, we will respect your choice when we use it.

If you are under the age of eighteen (18), or under any other applicable age of majority, you represent that at least one of your parents or legal guardians has also agreed to the terms of this section (and the use of your name, profile picture, content, and information) on your behalf.

**(b) User Visibility and Control Over Sponsored Stories**. Facebook will create an easily accessible mechanism that enables users to view the subset of their interactions and other content that have been displayed in Sponsored Stories. Facebook will further engineer settings to enable users, upon viewing the interactions and other content that have been used in Sponsored Stories, to control which of these interactions and other content are eligible to appear in additional Sponsored Stories. Without limiting the foregoing, but for the sake of clarity, these settings will include the ability to enable

-3-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

users to prevent individual interactions and other content (or categories of interactions and other content) from appearing in additional Sponsored Stories.

**(c) Relief for Minor Subclass**.

> **(i) Revision of Facebook's Terms of Use.** Facebook will revise its Statement of Rights and Responsibilities to provide that Facebook users under the age of eighteen (18), or under any other applicable age of majority, represent that their parent or legal guardian consents to the use of their name and likeness in connection with commercial, sponsored, or related content, as set forth in the revised section 10.1 (provided above).

> **(ii) Parent Educational Information and Parental Control.** Facebook will add a clear, easily understandable description of how advertising works on Facebook to its Family Safety Center (https://www.facebook.com/safety), and it will review and to the extent reasonably feasible implement methods for communicating the availability of such information to parents of minors on Facebook. In addition, Facebook will add an easily accessible link in the Family Safety Center to the tool it currently provides that enables parents to prevent the names and likenesses of their minor children from appearing alongside Facebook Ads (currently available at https://www.facebook.com/help/contact/328678960533614) and Facebook will extend this tool to enable parents to also prevent the names and likenesses of their minor children from appearing in Sponsored Stories. Finally, Facebook will review and to the extent reasonably feasible implement methods for enabling parents to utilize this tool through their own Facebook accounts, without obtaining access to their children's accounts, where appropriate (i.e., if the minor has confirmed the identity of his or her parent or legal guardian on Facebook).

**(d) Additional Educational Information**. For a period of up to ninety (90) calendar days following the Final Settlement Date, Facebook agrees to make a good faith effort to work with Plaintiffs, through Plaintiffs' Counsel, to identify any educational or other information on www.facebook.com that in Plaintiffs' view does not accurately or sufficiently explain how advertising works on Facebook. Facebook will endeavor to clarify such language.

**(e) Compliance Audit If Court Ordered**. For a period of two years following the Final Settlement Date, Class Counsel shall have the right to move the Court, for good cause shown, for an order requiring one third-party audit to confirm compliance with the provisions of subparts (a) through (d) of Section 2.1 of this Agreement, and Facebook shall have the right to oppose such a motion. In the event the Court requires such a third-party audit, Facebook agrees to conduct a total of one such audit during the two-year period at its own expense and provide the results thereof to Class Counsel.

-4-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

Nothing described in this Section 2.1 above will inhibit, prevent, or limit Facebook from making product changes, changes to its terms of use (currently referred to as the "Statement of Rights and Responsibilities"), changes to product names or other terminology, or other changes, from time to time, as it deems appropriate in the conduct of its business, provided that such changes are consistent with the relief described above, or to comply with the law.

### A. Injunctive Relief

7. The injunctive relief above, which includes changes to Facebook's website, is designed to provide Facebook Members with the ability to give informed consent to the use of their names and likenesses in friend-endorsed advertising, so that they can limit being in such advertising if they so choose. Plaintiffs believe this addresses the issues with lack of transparency and failure to obtain consent that existed with Facebook's use of Sponsored Stories ads contrary to the "right of publicity," which requires prior consent before using a person's name or likeness in advertising and commercial content, as set forth in the common law and in California Civil Code section 3344. Previously, in my view, even an extremely diligent and inquisitive Facebook user would have had trouble understanding what Sponsored Stories are and had no way to determine if he or she was in them, apart from learning from friends who had seen ads featuring him or her.

8. Section 2.1(a) of the Settlement Agreement states that Facebook will change section 10.1 of its Statements of Rights and Responsibilities to state, in part:

> Our goal is to deliver advertising and other commercial or sponsored content, such as Facebook Ads and Sponsored Stories, that is valuable to our users and advertisers. In order to help us do that, you agree to the following:
>
> You give us permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. This means, for example, that you permit a business or other entity to pay us to display your name and/or profile picture with your content or information. If you have selected a specific

-5-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

audience for your content or information, we will respect your choice when we use it.

Plaintiffs believe this language will better reflect the nature of Facebook's advertising system.

9.    Additionally, through the Settlement, Facebook has agreed to make a good faith effort to work with Plaintiffs to identify information on www.facebook.com that, in Plaintiffs' view, does not accurately or sufficiently explain how Facebook advertising works. Settlement Agreement § 2.1(d) states:

> **Additional Educational Information.** For a period of up to ninety (90) calendar days following the Final Settlement Date, Facebook agrees to make a good faith effort to work with Plaintiffs, through Plaintiffs' Counsel, to identify any educational or other information on www.facebook.com that in Plaintiffs' view does not accurately or sufficiently explain how advertising works on Facebook. Facebook will endeavor to clarify such language.

10.    Plaintiffs have performed a review of the Facebook Help Center and other pages on Facebook.com to identify those that they felt did not accurately or sufficiently explain how advertising works on Facebook. Plaintiffs focused on identifying areas where they felt the pages did not make clear that Sponsored Stories are paid advertisements, pages that stated Sponsored Stories are not advertisements, clarification that the privacy settings allowing users to opt-out of Social Ads does not affect one's appearance in Sponsored Stories, and clarification on Help Pages to explain to users how to prevent themselves from appearing in Sponsored Stories.

11.    Counsel for the Parties have already had multiple discussions to begin implementing the type of relief discussed in section 2.1(d) of the Settlement Agreement and have already reached agreement on changes to all of the following Facebook pages that, in Plaintiffs' view, were not

**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

sufficiently clear or complete prior to the Settlement.

- http://www.facebook.com/full_data_use_policy

- http://www.facebook.com/business/

- http://www.facebook.com/business/ads/

- http://www.facebook.com/business/howitworks/

- http://www.facebook.com/business/pages/

- http://www.facebook.com/business/platform/

- http://www.facebook.com/business/sessions/

- http://www.facebook.com/about/ads/#stories

- http://www.facebook.com/help/?faq=125802974166366#How-can-I-improve-my-Facebook-Ads'-or-Sponsored-Stories'-performance?

- http://ads.ak.facebook.com/ads/FacebookAds/Facebook_Product_Guide_041911.pdf

- http://ads.ak.facebook.com/ads/FacebookAds/TheNewAdsManager_May2011v2.pdf

- http://ads.ak.facebook.com/ads/FacebookAds/Page_Insights_Guide.pdf

- http://www.facebook.com/about/privacy/advertising#socialcontext

- http://www.facebook.com/help/?page=202790293089857

- http://www.facebook.com/help/?page=202790293089857

- http://www.facebook.com/help/?page=202790293089857

-7-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

- http://www.facebook.com/help/?page=202790293089857

- http://www.facebook.com/help/?page=202790293089857

- http://www.facebook.com/help/?page=245316378826196

- http://www.facebook.com/help/?page=195623423828629

- http://www.facebook.com/help/?page=175624025825871

- http://www.facebook.com/help/?page=249771195050317

The parties will continue to make a good faith effort to identify any other Facebook pages that may need to be modified pursuant to the terms of Settlement Agreement § 2.1(d).

12. Fernando Torres is an economics expert and principal of IP Metrics, a consulting company based in San Diego, California. He is an expert in the valuation of rights to publicity. Mr. Torres created a formula which Plaintiffs contended could be used to calculate the value of the "friend endorsement" and hence the class members' damages, for purposes of the class certification motion in this case. Mr. Torres' stellar credentials include a post-graduate degree in economics with a concentration in econometrics from the University of London; as well as service as a Professor of Economics. He teaches a course on "Valuing Intangible Assets for Litigation" for the National Association of Certified Valuation Analysts. In this case, he developed a method for determining the value of the class's damages by reviewing hundreds of pages of documents, authoring an extensive declaration explaining two possible valuation methods, preparing for and giving a seven hour deposition, and authoring a rebuttal declaration to the declaration and deposition of Facebook expert Dr. Randolph Bucklin. For the purposes

-8-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Mr. Torres provided a declaration addressing the value of Plaintiffs' injunctive relief. He concluded that the value of the injunctive relief was approximately $73,000,000 for the first 17 months, and up to $103.2 million if continued for two years (24 months).

## B. The *Cy Pres* Relief

13. The *cy pres* relief of $10,000,000.00 is appropriate and of value to the Class because it will benefit the class by funding groups which advocate, in a variety of ways, for the rights and safety of individuals using the internet, and specifically on social media websites. The *cy pres* recipients also include entities which are dedicated to the protection of the rights and welfare of minor children, as they are affected by social media in an online context. This is extremely important because the type of friend-endorsed online advertising at issue in this case, Sponsored Stories, was pioneered by Facebook in January 2011. This type of advertising will be used more and more by Facebook and by other social networking sites in the future. This case has created a clear standard that informed consent is necessary in order for a person's name and likeness to be utilized in such advertising. Due to the recent introduction of friend-endorsed advertising, there are very few persons – outside of the social network advertising industry–who have any knowledge and background with such friend-endorsed advertising on social media, and thus most people are unaware that this violation of the right of publicity is even occurring. Plaintiffs believe they had a difficult time finding experts who could adequately address the use "at scale" of friend-endorsed advertisements (that is, the use of ads using names and likenesses of persons connected online, communicated to large numbers of persons over the internet), because it is such a new phenomenon. Thus this *cy pres* funding

-9-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

will create a situation where friend-endorsed online advertising will be monitored by watchdog entities to protect peoples' right of publicity.

14. As set forth in the declaration of the Hon. Edward A. Infante, a claims-made recovery of damages was not feasible in this case. There were too many class members (at least 100 million) and likely low rates of redemption, and there were no set and uniform amounts of money that each class member was owed, and no product or service purchased that can be supplemented with economic relief, e.g., a warranty extension, free software, etc. Furthermore, the relatively small amount of money available for each class member even given an award of $100 million divided evenly would be almost completely consumed by the cost of the claims process.

15. Thus, as stated by Judge Infante, the case does not lend itself to an award of meaningful relief for individual class members. The sheer size of the class and a lack of any purchase transaction relationship between the Class members and Facebook, make it difficult to provide certain forms of relief to the Class Members, as it would be in a typical consumer product or service case. Further, the size of the award necessary to incentivize class members to seek out the award would be too large on an aggregated basis. As Judge Infante notes in his declaration, with 100 million class members, a damages award of only $1.00 per Class Member would require a settlement fund or award of $100 million (more if the costs of administration and attorneys' fees and costs are considered). A $10.00 per Class Member recovery would be better, but that would cost $1 billion. The statutory damages provided in California Civil Code section 3344 are $750.00 per violation which is $75 billion. That is again considering just one

**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

violation per Class Member; most Class Members will have likely been in more than one ad campaign.

### C. Attorneys' Fees and Costs and Costs of Notice and Administration

16.    The claims and the settlement here will also support application for attorney's fees pursuant to California Code of Civil Procedure section 1021.5.  Defendant has agreed to pay, and not to oppose an application for, attorney's fees incurred by Plaintiffs' counsel, The Arns Law Firm and Jonathan Jaffe Law, in a sum not to exceed $10,000,000, and to pay costs not to exceed of $300,000.  Neither fees nor costs were negotiated before the other terms of the Settlement were finalized.  Facebook has also agreed to pay the costs of notice and administration.  There are going to be large costs associated with class notification.

### D. Service Awards to Class Representatives

17.    Plaintiffs Susan Mainzer, James H. Duval, and W.T. have provided document discovery and monitored the progress of the action, have been deposed in lengthy depositions, and should be rewarded for taking the initiative to file the action, and for their role in reaching a Settlement providing for valuable relief to the Settlement Class. Defendants have also agreed not to oppose an application by counsel for Plaintiffs for a service award to the class representatives in the amount of $12,500 each.   The Class representatives have spent considerable time consulting with Mr. Jaffe, myself, and the other attorneys in my office, with respect to their claims and those of the Class.   They have participated in preparing and reviewing a myriad of discovery responses in response to the discovery propounded by Defendant, as set out more fully below.  I would estimate that they have spent in excess of 80 hours each with respect to their duties as putative class representatives. Furthermore, they

**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. CV 11-01726 LHK**

exposed themselves, under Civil Code section 3344, to potential liability for Facebook's attorneys' fees but persisted with the case even after Facebook sought over $700, 000 in such fees in another case. Therefore, the proposed service award of $12,500 each for their service as class representatives is appropriate.

## III. PLAINTIFFS' ATTORNEYS' EXPERIENCE AND CREDENTIALS

18.   The competency of Class Counsel was not put in issue in Defendant's Opposition to Plaintiffs' Motion for Class Certification. Plaintiffs' counsel are fully qualified to represent the proposed Settlement Class.

19.   I, Robert S. Arns (curriculum vitae attached as Exhibit 2) have been in practice for 36 years in San Francisco, representing only plaintiffs in civil matters. I founded The Arns Law Firm in 1996; it currently has eight lawyers. The firm's inventory of catastrophic injury and death cases coupled with the class action practice is a perfect mixture of inspiring cases that creates a well funded firm that allows us to fulfill our fiduciary duties to our clients with the highest standard of care.

20.   I have tried over 60 cases to a jury verdict. My Class Action experience includes a total of approximately fifteen matters, most of which involved California's Unfair Competition Law, Business & Professions Code section 17200 (one of the claims in this case), and the related Consumer Legal Remedies Act, Civil Code section 1750 et seq., as well as other claims under California State and Federal law. We are proud that The Arns Law Firm approaches each case (including class cases) the same way: initiating discovery immediately after filing the case so that we can discover the facts early and work to an expeditious resolution, either by trial or settlement. I have taught (and continue to teach) trial practice at

-12-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. CV 11-01726 LHK**

the University of San Francisco School of Law for the last nine years, and was named Professor of the Year in 2011 and Alumni of the Year in 2009. I am the author of the best-selling trial publications *The Evidence Wheel* and *The Trial Wheel*, –both California and Federal versions—published by The Rutter Group, a division of West Publishing. I have chaired and participated in many Rutter Group seminars and numerous other seminars involving trial practice, class actions, evidence and related subjects, many times each year. I have been the Trial Lawyer of the Year (and finalist many times) for the San Francisco Trial Lawyers Association and was a finalist three times for Consumer Attorneys Of California's (the largest plaintiff bar in the United States) Trial Lawyer of the Year. As an American Board of Trial Advocates member, I have presented the ABOTA Masters in Trial on numerous occasions in both Northern and Southern California. I have been asked to be a presenter the ABOTA Masters in Trial again in 2012.

21. The Arns Law Firm consists of eight attorneys, five of whom, myself, Jonathan Davis, Steven Weinmann, Kevin Osborne and Robert Foss, work on class action cases as a significant amount of their practices. My practice is largely devoted to, and Mr. Weinmann's practice is devoted almost entirely to, the litigation of class action cases, and the law firm also handles numerous other significant cases including personal catastrophic injury and death actions, all for plaintiffs.

22. The Arns Law Firm concluded two other class action cases during the pendency of this lawsuit, and continues to litigate a third, complex action involving some 64 clients. The firm is also litigating with other firms four separate class actions against skilled nursing facility chains for failure to provide legally mandated care requirements for patients requiring skilled nursing

-13-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

care. Those lawsuits aim to increase the level of care provided to residents in skilled nursing facilities. Myself, along with Jonathan Davis and Steven Weinmann litigated a class action against Home Depot and a related company for wage and hour claims, which resulted in a multi-million dollar settlement. We have litigated other wage and hour cases.

23.    The firm has also been engaged in significant appeals of cases on issues of employer liability in the workplace. The firm also has a pending appeal before the California Supreme Court on the issue of putative spouse recovery in wrongful death matters. The Arns Law Firm, myself, Jonathan Davis and Steven Weinmann, prevailed before the Court of Appeal in a case which will likely clarify the law as to the putative spouse doctrine. As always, we represent the plaintiff, a bereaved widow whose husband was killed in a construction accident. I have argued cases in front of the California Supreme Court, California Courts of Appeal and the Ninth Circuit.

24.    A true and correct copy of the Curriculum vitae of Jonathan E. Davis, a shareholder in The Arns Law Firm, is attached as Exhibit 3. Mr. Davis is a seasoned trial lawyer and has resolved several class action matters, including wage and hour claims class actions.

25.    A true and correct copy of the curriculum vitae of Steven R. Weinmann is attached as Exhibit 4. He has specialized in class action law virtually all of his over 22 years in practice. Mr. Weinmann has had responsibility for litigation of consumer class action, securities, and antitrust cases under federal and state law in numerous jurisdictions. He has been counsel for the plaintiff on several reported opinions, including *McAdams v. Monier, Inc.,* 182 Cal.App.4th 174 (2010), in which the Court of Appeal reversed a denial of class certification and decided an important issue of law as to standing of class representatives in cases under the Unfair

-14-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

Competition Law, and held that an inference of reliance could be inferred from a failure to disclose a fact in cases under the Consumer Legal Remedies Act.

26.    Kevin Osborne worked on this case and reviewed and analyzed the damages calculations and worked with experts on class certification. His curriculum vitae is attached as Exhibit 5. In addition to his law degree, he holds a Bachelor's of Arts in Economics and a Master's degree in Economics. He has studied macroeconomics, macroeconomic policy and performance, microeconomics, and econometrics at the undergraduate level as well as graduate-level economic policy, managerial economics, finance, and accounting. Mr. Osborne also has worked as a computer software designer. He has also worked on numerous cases involving financial institutions and banks, including the central bank of Mexico. Mr. Osborne has calculated damages and presented such calculations in over 50 cases, including highly complex damage calculations in financial institution and wage and hour class actions. Mr. Osborne's training and experience were invaluable in analyzing the monetization, metrics, and analytics of Sponsored Stories marketing.

27.    A true and correct copy of the Curriculum vitae of Robert C. Foss, is attached as Exhibit 6. Mr. Foss holds an undergraduate degree in Business Economics, as well as a Masters in Business Administration. Graduate level courses include Data and Decision Analysis, Technology-Enabled Innovation, Marketing Management and Small Business Ventures. Prior to joining the Arns Law Firm, Mr. Foss worked as the Information Technology Department Head for a resource management company where he was in charge of managing the system at five office locations including hardware, software and end-user

support. Mr. Foss's computer experience and education were instrumental in examination of the monetization, metrics and analytics of Sponsored Stories marketing.

28. Further, although Mr. Osborne and Mr. Foss are younger attorneys, their experience with Facebook and its evolution provides them with an understanding of every aspect of it. Thus, they were able to provide great insight into the inner working of Facebook.

## IV. DISCOVERY AND EXPERTS

### A. Depositions And Experts

29. The Arns Law Firm prepared for and conducted nine depositions and defended twelve more, for a total of twenty one depositions, amounting in total to 4,263 pages of transcript.

30. For each deposition, there was extensive pre-deposition preparation of exhibits, strategies, and questions. After conducting the depositions and upon receiving the deposition transcript from the court reporter, a deposition extract was created, which summarized and analyzed the content generated from the deposition. The following depositions of Facebook personnel were taken:

Ana Yang, Legal Project Manager (10/4/11)
Christopher Plambeck, Director, Monetization Analytics (9/28/11)
Gokul Rajarem, Director, Product Management (1/24/12)
James Squires, Manager, Product Marketing (9/20/11
James Squires, Manager, Product Marketing (10/14/11)
John Hegeman, Engineering Manager (2/17/12)
Kent Schoen, Former Product Manager (2/22/12)

31. Plaintiffs located and retained appropriate experts for the class certification motion as well as the case in chief. Each expert had to be extensively prepared to make their declarations to support Plaintiffs Motion for Class Certification as well as extensively prepared for their

-16-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

depositions, and then had to have their depositions defended. The experts for plaintiff-with

deposition dates-were:

> Vincent Alberico, Software Architect (4/9/12)
> David Taber, MBA, owner of online marketing company (4/10/12)
> Fernando Torres, Economist specializing in right of publicity (4/11/12)
> Gary Frazier, PhD Professor of Marketing, USC (4/12/12)
> Richard Drogin, PhD, Statistician (4/13/12)

These expert depositions resulted in 1,065 pages of transcript and the creation of extensive

deposition exhibits.

32. Plaintiffs also prepared for and took the depositions of Facebook's experts Catherine

Tucker (Professor of Marketing at MIT) on 4/24/12 and Randolph Bucklin (Professor of

Marketing at UCLA) on 4/27/12. These experts had each submitted forty-page declarations in

opposition to Plaintiffs Motion for Class Certification.

33. Plaintiffs defended seven plaintiff depositions, representing four of the named plaintiffs,

Susan Mainzer, minor class representative James H. Duval (who has turned 18 during the

pendency of this action), Angel Fraley and minor class representative W.T., and three parents of

class members: James Duval, Sr. (guardian for Plaintiff James H. Duval), Russell Tait

(guardian and father for Plaintiff W.T.), and Patricia Coluse, mother of James H. Duval. Each

of these depositions required extensive preparation. Their depositions were defended and extract

summaries of the content of the transcripts were prepared and analyzed. These depositions

produced 1,371 pages of content.

**B. Propounding Discovery**

34. **Requests for Production of Documents.** Counsel prepared and served 11 sets of

Requests for Production of Documents ("RFDs"), for a combined total of 214 requests, upon

-17-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. CV 11-01726 LHK**

Defendant, Facebook, Inc. Further efforts were expended in order to compel responses to many of these requests. Ultimately Counsel received Defendants' responses to these requests amounting to over 200,000 documents that had to be analyzed.

34.1. RFD Set 1 contained seven requests regarding key documents about Sponsored Stories, including the creation of Sponsored Stories.

34.2. RFD Set 2 included nine requests regarding the terms and conditions of the agreements between Facebook and Plaintiffs and between Facebook and all other Facebook Members ("Members"). Specifically, the requests sought documents regarding any announcement or information given to Members about the launch of Sponsored Stories and how it functions differently from other advertisements, whether Member consent is required in order for a Member's name and/or likeness to be available for use through Sponsored Stories, and a Member's ability to opt-out of Sponsored Stories.

34.3. RFD Set 3 was comprised of eight requests regarding the advertising value of Facebook's Sponsored Stories. The eight requests sought documentation of communication from Facebook to advertisers regarding the newly implemented Sponsored Stories, the agreements between Facebook and its "premium" advertisers, all revenue derived by Facebook attributable to Sponsored Stories, and a detailed break down by month of gross revenue generated by advertising.

34.4. RFD Set 4 included 20 requests regarding the creation of Sponsored Stories. The requests targeted a development timeline, documents showing the motivation for the creation of Sponsored Stories—including the reasoning behind deciding not to seek consent to its implementation—any marketing efforts aimed at

-18-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

advertisers and Members, and any communication between The Nielsen Company and Facebook, including any documents from Nielsen upon which Facebook relied demonstrating the benefits of a user-endorsed advertising like Sponsored Stories. It also sought any content available on Facebook's Help Center related to Sponsored Stories, the identities of participating advertisers, and the value of friend-endorsed advertisements.

34.5.    RFD Set 5 contained 19 requests regarding the inner workings of Sponsored Stories and the extent of its use to date. More specifically, the requests sought the identities of all Members whose name and/or likeness had been used in a Sponsored Story to date, what actions the Members engaged in that caused them to appear in the ads, the mechanism through which a Sponsored Story is delivered to a particular Facebook page, and the process through which a specific destination page is determined. Set 5 also requested documents pertaining to the research and development of Sponsored Stories, any changes made to its software code since its creation, and any Member ability to opt-out of the feature. The requests sought information regarding the total number of Members in the United States, the number of Sponsored Stories impressions made using Member's name and/or likeness, and, of those, the number of Members who were minors at the time.

34.6.    RFD Set 6 encompassed 30 requests regarding Defendant's denial of various Plaintiff Requests for Admission.

34.7.    RFD Set 7 contained 12 requests regarding the value and effectiveness of Sponsored Stories. The requests sought information about the amounts charged by Facebook to third parties that purchased Sponsored Stories in 2011, the amounts charged

-19-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

to the top ten advertisers, data summarizing the effectiveness of Sponsored Stories as compared to a control advertisement, and other information about the effectiveness of Sponsored Stories to Facebook customers, partners, and third parties. The requests also sought any and all communications to or from Mark Zuckerberg, David Fisher, Cheryl Sandberg, and Gokul Rajaram relating to Sponsored Stories.

34.8. RFD Set 8 was comprised of 14 requests regarding the measurement of the value generated by Sponsored Stories as compared to other Facebook advertising products and services. The requests sought information pertaining to the value of Sponsored Stories in terms of income generated for Facebook and heightened click-through rates as well as any studies or samples relating to its value as compared to other advertisement products and services unaffiliated with Facebook.

34.9. RFD Set 9 included 57 requests for documents, which assessed various aspects of Sponsored Stories ad campaigns in relation to non-Sponsored Story ad campaigns such as budgets, durations, click-through rates, the names of advertisers and their respective bid amounts, cost per click-through and cost per impression. The requests also sought internal and external explanatory documents regarding changes to the Sponsored Stories feature effective as of Sept. 2011, such as the new or additional types of "Stories" shown to the public, differences in how the ads were sold, and web page location where they appeared.

34.10. RFD Set 10 consisted of 37 requests regarding the varying degree of influence a given Member may wield when appearing in a Sponsored Story. The requests also sought documents relevant to show a wide range of data concerning Facebook ads

-20-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

and Sponsored Stories captured by Defendant, such as number of impressions and revenue realized, as well as additional information required to explain documents received thus far from Facebook in response to previous RFDs.

34.11. RFD Set 11 contained 1 request regarding any documents on which Facebook intended to rely for any purpose at trial.

These Requests for Production resulted in Facebook providing over 200,000 documents, each of which had to be analyzed by the plaintiff legal team.

35. **Interrogatories.** Counsel prepared and served a total of 25 interrogatories upon Defendant, Facebook, Inc. Efforts were expended in order to compel responses to certain of these requests and ultimately Counsel received and analyzed Defendants' responses to these requests.

35.1. Interrogatory Set 1 included 15 interrogatories regarding the creation of Sponsored Stories, its function, operation, and total revenue generation. The interrogatories also inquired about the total number of Facebook Members and the number of Members who are minors.

35.2. Interrogatory Set 2 contained four interrogatories inquiring the number of Facebook Members who have been used by Sponsored Stories and the number of minors included in such a group.

35.3. Interrogatory Set 3 consisted of two interrogatories concerning the measurement of value created by Sponsored Stories.

-21-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

35.4.    Interrogatory Set 4 included three interrogatories regarding the
information captured from each Facebook ad impression as well as facts supporting
Facebook's denial of various Plaintiff RFAs.

36.    **Requests for Admission.** Counsel prepared and served six sets of Requests for
Admission ("RFAs"), a total of 249 requests, upon Defendant, Facebook, Inc. Further efforts
were dedicated to compelling responses to many of these requests, and ultimately Counsel
received and analyzed Defendants' responses to these requests.

36.1.    RFA Set 1 consisted of 12 requests concerning Member's identities, lack
of Member consent with regard to the usage of name and/or likeness through Sponsored
Stories, and the for-profit nature of the feature.

36.2.    RFA Set 2 contained 10 requests regarding Facebook's Terms and
Conditions, Privacy Policy, Statement of Rights and Responsibilities, and the lack of
changes to these agreements despite the implementation of Sponsored Stories.

36.3.    RFA Set 3 was comprised of four requests concerning the increased
revenue generated by Sponsored Stories and its attribution to the use of Member's name
and/or likeness, as well as the lack of ability to opt-out of the feature.

36.4.    RFA Set 4 included 14 requests pertaining to the non-consensual use of
Member's name and/or likeness in connection with "Story" endorsements, the treatment
of minors in connection with Sponsored Stories, and the partnership between Facebook
and The Nielsen Company.

36.5.    RFA Set 5 contained 13 requests regarding a Member's ability to avoid
her or her name and/or likeness being used by Sponsored Stories, the non-consensual

-22-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. CV 11-01726 LHK**

nature of the feature, and other inner workings of the feature including the algorithms used.

36.6.     RFA Set 6 was comprised of 196 requests for admission covering a broad range of term definitions and specific factual events generated in response to Counsel's analysis of documents received from Defendant as of such date.

37.     **Subpoenas.** Plaintiffs' counsel issued subpoenas to five companies who had purchased Sponsored Stories advertisements requesting documents provided to them by Facebook and documents provided by them to Facebook, documents regarding how Sponsored Stories were being promoted and marketed to advertisers and any studies regarding the effectiveness of Sponsored Stories as compared to non-endorsed advertisements. These subpoenas resulted in over 2,000 pages of documents, which were reviewed, analyzed, and incorporated into litigation. Plaintiffs' counsel issued subpoenas to the following companies:

37.1.     The Nielsen Company

37.2.     CafePress

37.3.     Levi Strauss & Co.

37.4.     Razorfish

37.5.     Shoedazzle

### C.     Document Review

38.     The eleven sets of RFDs, six sets of RFAs, four sets of interrogatories, independent investigation and numerous depositions produced over 200,000 pages of documents, which Counsel received, sorted, and organized. The Plaintiff Legal Team then carried out the arduous

-23-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

task of exhaustively analyzing, categorizing, numbering and summarizing these thousands of pages of technical and complex documents.

39. From the over 200,000 documents in this case, Plaintiff's Counsel then identified and marked 725 exhibits, which were used in depositions, motions and other filings.

## D. Responding To Defendant's Discovery Requests

40. **Interrogatories.** Plaintiffs' counsel received, analyzed and responded to 105 interrogatories from Facebook. Responding to these interrogatories involved extensive communication with the class representatives, crafting of legal objections, and obtaining verification of their answers. The demanding task resulted in over 278 pages of initial and supplemental responses from named plaintiffs. Plaintiffs' counsel received 15 interrogatories regarding plaintiffs Angel Fraley and Paul Wang and 25 interrogatories regarding plaintiffs James H. Duval, Susan Mainzer, and W.T.

40.1. Interrogatory Set 1 included 15 to 16 interrogatories regarding the named plaintiff's general interactions with Facebook and the company's approach to privacy, specifically their experience with Facebook's Terms and Policies. The interrogatories inquired about specific dates the plaintiff accessed the Facebook agreement and also requested information about all instances where plaintiff "liked" content on Facebook including the specific dates and content "liked." The firm received these interrogatories regarding all five named plaintiffs Susan Mainzer, James H. Duval, Paul Wang, Angel Fraley, and W.T., which we had to review and analyze. We worked extensively with plaintiffs to respond to the interrogatories, which resulted in 112 pages of responses and supplemental responses.

-24-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

40.2.    Interrogatory Set 2 included nine interrogatories regarding the amount of value plaintiff's name and/or likeness was diminished as a result of its non-consensual use in a Sponsored Story, their understanding of how their Facebook activity may ultimately result in the use or their name and/or likeness by a Sponsored Story, and their control over the amount of exposure of the content they post on Facebook. The firm received these nine interrogatories regarding three named plaintiffs Susan Mainzer, James H. Duval, and W.T., which we reviewed and analyzed. We worked extensively with these plaintiffs to respond to the interrogatories, which resulted in 154 pages of responses and supplemental responses.

40.3.    Interrogatory Set 3 consisted of one interrogatory regarding named plaintiff Mainzer inquiring about the injunctive and equitable relief being sought. Our response to this interrogatory amounted to 12 pages of content.

41.    **Requests for Production of Documents.** Counsel received, analyzed and responded to 269 Requests for Production of Documents from Defendant, which we reviewed, analyzed and responded to. This involved extensive communication with the plaintiffs, verification of their answers, and collection, privilege review, and numbering and service of relevant documents.

41.1.    Counsel received 50 requests regarding plaintiffs Fraley and Wang, 58 requests regarding plaintiffs James H. Duval and WT, and 53 requests regarding plaintiff Susan Mainzer. With regard to minor plaintiffs WT and James H. Duval, we worked closely with both the plaintiffs and their respective guardians in order to generate responses.

-25-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

42. **Requests for Admission.** Counsel received, analyzed and responded to 351 Requests for Admissions from Defendant, which we reviewed and analyzed. Extensive efforts were expended in order to generate responses to these requests. We worked closely with the named plaintiffs in order to respond to these requests, and in the case of W.T. and James H. Duval, with both plaintiffs and their respective guardians.

42.1. The firm received 115 requests regarding named plaintiff Mainzer, 119 requests regarding plaintiff James H. Duval, and 117 requests regarding named plaintiff WT. These requests were received and reviewed, then responded to through extensive work with the respective plaintiff. The responses were then verified and then served to Defendant.

43. The intensive discovery that took place in this case from its inception allowed the parties to analyze all aspects of the facts and legal theories to make an informed decision about the disposition of the case.

### E. Motion Practice Related To Discovery

44. In addition, Plaintiffs' Counsel engaged in motion practice with regard to discovery. We filed three motions for protective orders on 7/5/11, 2/13/12 and 4/17/12. The first motion was an attempt by Facebook to stall all discovery pending the outcome of its second motion to dismiss; that motion was denied. These motions also required Plaintiffs' Counsel to prepare for and attend two court hearings as well as prepare and file a withdrawal of one of these motions. Facebook's Counsel also made a motion to compel responses to deposition questions and Plaintiffs' Counsel prepared for and attended a hearing on the matter.

### V. THE RESOLUTION OF THIS CASE

-26-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

45. As noted in the Declaration of Judge Infante, there are numerous risks of litigation which make this case ripe for settlement and in Plaintiffs' interest. Plaintiffs successfully opposed Facebook's Motion to Dismiss, which involved numerous difficult legal issues, many of them of first impression. Furthermore, Plaintiffs prepared for and filed their opening brief for Plaintiffs' Motion for Class Certification and served and filed their Reply brief to Defendant's Opposition. There were seven experts (five of whom were plaintiffs') who prepared declarations and who were deposed. This case has been fully discovered and prepared for trial.

46. In addition to the standard risks of litigation if the case were to continue towards trial, there are substantial arguments which Facebook has made and which it could make on summary judgment or at trial should the case continue. In its Motion to Dismiss, Facebook raised several points which the Court rejected as a basis for failure to state a claim. However, Facebook has raised the defense of implied consent. Facebook has argued that the continued use of Facebook by members has led to members becoming aware of the Sponsored Stories ads by virtue of the members having seen such ads featuring their friends, and that members would have thereby realized that they too could be in one. Facebook argues this could lead to a finding of implied consent.

47. The use of pseudonyms and the posting of images as "profile pictures" which are not the likeness of the Class members, has led Facebook to argue that it does not track and has no way of knowing whether a person has uploaded his or her own image or is using their name or a recognizable nickname at any given time. Thus, since members are free to change their names

-27-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

and profile pictures at will, Facebook argues that this raises issues of proof difficult to show on a classwide basis.

48. Facebook argued in its Motion to Dismiss that the claims were preempted under the Communications Decency Act, 47 U.S.C. § 230 ("CDA"), and that the "newsworthiness" exemption of Cal. Civil Code Section 3344(d), which grants an exception to the consent requirement of subdivision (a), for use of a likeness "in connection with any news, public affairs, or sports broadcast or account, or any political campaign" applies. Both of these defenses could be raised again by Facebook on appeal. Facebook has also raised a defense under the Children's Online Privacy Protection Act, or COPPA, 15 U.S.C. §6502, in other matters and could raise the defense here.

49. A risk to the Class is that the Court would not grant class certification, a risk in every class action. Reasons for denial of certification could include manageability, such as the aforementioned issue of pseudonyms and profile pictures not showing a likeness.

50. Facebook in its Opposition to the Motion for Class Certification also raised the issue of whether California Civil Code §3344 was intended by the Legislature to be brought as a class action. A holding that a class case was prohibited would potentially leave Plaintiffs without a basis to continue on a class action basis.

51. Plaintiffs through its experts have offered two methods by which they assert they can prove the damages on a classwide basis. If these methods are not accepted by the Court or a jury as being based on sound theory and facts, the Plaintiffs would not have carried their burden to prove damages. The theories were well thought out, but they represent a means of first

-28-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

impression of proving damages in a case involving the right of publicity. Facebook has also made numerous evidentiary and theoretical objections to the proposed methods.

52. The Class, even if certified, could be certified only for a smaller class size or class period, or for only certain of the claims, or for injunctive relief only, depending on the Court's findings as to typicality of the class representatives and the homogeneity of the Class, based upon variations in Facebook's Statement of Rights and Responsibilities. The ability of minors to agree or disaffirm agreements is also an issue which could provide the basis for fragmenting the Class, or for the Court to carve out such a sub-class.

53. California Civil Code section 3344 also includes a prevailing party attorneys' fees provision. This is obviously a substantial risk of litigation in this case, where Facebook has employed large law firms to mount a vigorous defense. Any such defense would also continue through the appeals process, as Facebook would not want a precedent set, or to pay a judgment in an amount which would have a significant impact on its earnings. Facebook has sought its attorneys' fees in similar such cases, indicating that it is concerned with discouraging further suits.

54. Another risk of litigation for plaintiffs is that the Court will not be inclined to order the types of changes to Facebook's practices that Class Counsel has been able to negotiate. As Judge Infante notes, courts are understandably reluctant to micro-manage the business of litigants, and Facebook's cutting edge platform is particularly vulnerable to changes being rejected by users, who use Facebook on a voluntary basis. In a cooperative settlement, Facebook and Class Counsel are better able to work together to craft stringent, but not unworkable, solutions to the problems identified in the Complaint and in the case during

-29-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**

discovery, than would the Court with advice from a victorious Plaintiff and resistance from a losing Defendant.

55.     The Parties have requested a bid from Garden City Group, Inc. ("GCG") to act as the Settlement Administrator. GCG has provided settlement administration services for over 25 years. It has processed tens of millions of claims and mailed more than 200 million notices. It is staffed with over 1,000 individuals, including software engineers, call-center professionals, and legal specialists. As such, GCG has the requisite experience to act as Settlement Administrator in this case. Having considered the bid, the Parties have agreed to recommend and request the appointment of GCG as Settlement Administrator. A firm resume is attached as Exhibit 7.

## VI. CONCLUSION

56.     This case was as vigorously prosecuted and defended as humanly possible. In the end, Plaintiffs' counsel believes that the result is best for the class and for the future of protecting online users' rights of publicity. The Settlement contains no obvious deficiencies; to the contrary, it provides the class relief to address all of the violations alleged in Plaintiff's complaint, as well as issues which came to light during discovery, and does not provide for attorneys' fees at the expense of the class.

57.     Class Counsel has demonstrated a high degree of competence in the litigation of this case, and strongly believes that the Settlement is a fair, adequate, and reasonable resolution of the Settlement Class's disputes with Defendants and is preferable to continued litigation, particularly in light of the multitude of risks identified above. The Court should approve the Settlement.

-30-
**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT Case No. CV 11-01726 LHK**

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that if called upon to testify, I could verify the accuracy of the same. This document was executed on June /4, 2012 in San Francisco, California.

Robert S. Arns

**DECLARATION OF ROBERT S. ARNS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No. CV 11-01726 LHK**