ROBERT S. ARNS (#65071, rsa@arnslaw.com)
JONATHAN E. DAVIS (#191346, jed@arnslaw.com)
STEVEN R. WEINMANN (#190956, srw@arnslaw.com)
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:   (415) 495-7800
Fax:   (415) 495-7888

JONATHAN M. JAFFE (# 267012, jmj@jaffe-law.com)
**JONATHAN JAFFE LAW**
3055 Hillegass Avenue
Berkeley, CA 94705
Tel:   (510) 725-4293
Fax:   (510) 868-3393

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W. T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>　　　　　　Defendants. | **Case No. CV 11-01726 LHK**<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE**<br><br>Date: July 12, 2012<br>Time: 1:30 p.m.<br>Courtroom:  8<br>Judge:  Hon. Lucy H. Koh<br>Trial Date:  December 3, 2012 |

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE
Case No. CV 11-01726 LHK

# TABLE OF CONTENTS

I.    STATEMENT OF ISSUES ................................................................. 1

II.   INTRODUCTION ........................................................................... 1

III.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................... 3

   1.   The Proposed Settlement Class ...................................................... 3

A.   Discovery in *Fraley* vs. Discovery in *C.M.D.* ................................... 5

B.   Settlement Terms in the *Fraley* Proposed Settlement ........................... 5

   1.   Injunctive Relief in the *Fraley* proposed Settlement ........................ 5

   2.   The Total Amount Offered in Settlement is Valued at $123,537,500. ......... 7

IV.   STANDARD ON MOTION TO INTERVENE ......................................... 8

V.    INTERVENTION SHOULD NOT BE ALLOWED ................................... 8

A.   The Motion to Intervene Should be Denied as Untimely ......................... 9

B.   The Only Overlap Between the Actions is as to Sponsored Stories Featuring Minors .. 11

C.   The Release Does Not Extend Beyond Sponsored Stories ........................ 12

D.   *C.M.D.* is a Tag-Along Case Filed After Fraley, and Any Claimed Rights of the *C.M.D.* Class Members Can Be Dealt with as Objectors. .................................... 13

E.   A Grant of Preliminary Approval Will Not "Substantially Impede Or Impair" *C.M.D.* Class Members' Interests, As They Are Adequately Represented ...................... 15

VI.   PERMISSIVE INTERVENTION SHOULD ALSO BE DENIED BECAUSE *C.M.D.* PLAINTIFFS' COUNSEL HAS NOT ACTED IN THE BEST INTERESTS OF THE CLASS. .................................................................................... 20

   1.   *C.M.D.* Counsel Have Failed To Put The Class' Interests First ............... 22

   2.   *C.M.D.* Counsel Was Not Excluded From Settlement Negotiations by *Fraley* Plaintiffs ................................................................................. 23

   3.   *C.M.D.* Counsel Has Sought to Try the Case in the Media and Attempted to Interfere with the Cy Pres Recipients .......................................................... 23

   4.   There is No Reason for Intervention Based on Costs to the Parties. ........... 24

VII.  CONCLUSION ............................................................................. 24

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

# TABLE OF AUTHORITIES

**State Cases**

*Blakemore v. Super. Ct.,* 129 Cal. App. 4th 36 (2005).................................................. 8

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)............................................ 8, 18

**Federal Cases**

*Acosta v. Trans Union L.L.C.*, 243 F.R.D. 377 (C.D. Cal. 2007)................................ 17

*Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir. 1978) .................................... 10

*Alvarado v. Nederend*, No. 1:08-CV-01099, 2011 U.S. Dist. LEXIS 2326
    (E.D. Cal. Jan. 11, 2011) ...................................................................... 17, 19

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) ........................................ 15

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...................... 17

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......................... 13

*Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 87263 (S.D. Cal. Aug. 5, 2011) .............. 8, 14

*County of Orange v. Air Cal.*, 799 F.2d 537 (9th Cir. 1986)...................................... 10

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...................................... 14

*Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601 (W.D.N.Y. 2011).................. 9, 10, 14

*Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) .................... 15

*Ferrington v. McAfee, Inc.*, No. 10-cv-01455-LHK, 2012 U.S. Dist. LEXIS 49160
    (N.D. Cal. April 6, 2012) ...................................................................... 16, 24

*Ford Motor Co. Bronco II Prods. Liab. Litig.*, MDL No. 991, 1995 U.S. Dist LEXIS 3507
    (E.D. La. 1995)................................................................................ 17

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981)................................................ 17

*Grilli v. Metropolitan Life Ins. Co., Inc.*, 78 F.3d 1533 (11th Cir. 1996) ................ 14

*In re Holocaust Victim Assets Litig.*, 225 F.3d 191 (2d. Cir. 2000) .......................... 14

*In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998) ........... 10

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) .................... 14

*Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002)............................ 21

*League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997).................. 9, 15

-ii-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000) .......................... 17

*Linney v. Cellular Alaska P'ship.*, 151 F.3d 1234 (9th Cir. 1998) ........................... 19

*Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*, 99-MD-1309 (PAM),

    2002 WL 31371945 (D. Minn. Oct. 7, 2002) ............................................... 21

*Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) ................................ 23

*Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147 (4th Cir. 1996).. 17

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ..................... 8

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) ................................. 21

*Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................... 19

*TD Ameritrade Account Holder Litig.*, C 07–2852 SBA, 2011 WL 4079226

    (N.D. Cal. Sept. 13, 2011) ........................................................ 19

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142 (9th Cir. 2010) ........................................ 10

*United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002) ........................................... 9, 10

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) ...................................................... 9

*Vollmer v. Publishers Clearing House*, 248 F.3d 698 (7th Cir. 2001) ............................... 10, 14

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96 (2d Cir. 2005) cert. denied,

    544 U.S. 1044 (2005) ........................................................... 13

*Weisshaus v. Swiss Bankers Ass'n.*, 200 U.S. App. LEXIS 29529 (2d. Cir. 2000).................... 14

*Zoran Derivatives Litig.*, No. 06-05503 WHA, 2008 U.S. Dist. LEXIS 48246

    (N.D. Cal. April 7, 2008) ............................................... 13

**Statutes**

28 U.S.C. § 1404 ...................................................................... 22

Cal. Civ. Code § 1542 .......................................................... 12

Cal. Fam. Code § 6701 ........................................................ 22

Cal. Fam. Code § 6710 ........................................................ 22

Children's On-Line Privacy Protection Act, 15 U.S.C. § 6502........................................ 2, 20, 21

Unfair Competition Law, Bus. & Prof. Code § 17200 et seq................................................ 22, 23

-iii-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 14

Fed. R. Civ. P. 23(a) ........................................................................................... 19

Fed. R. Civ. P. 23(b) .......................................................................................... 4, 5

Fed. R. Civ. P. 23(c) ........................................................................................... 2

**Treatises**

A. Conte & H. Newberg, 3 *Newberg on Class Actions* § 7:37 (West 4th ed. 2002) .................... 4

B. Rothstein & T.Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*

(Fed. Judicial Center, 3d ed. 2010) ...................................................................... 16

-iv-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

## I.   STATEMENT OF ISSUES

1.  Whether the *C.M.D.* Plaintiffs' motion to intervene should be rejected as untimely.

2.  Whether the *C.M.D.* Plaintiffs' motion to intervene should be rejected as not supported as *Fraley* counsel are adequately representing the Class.

3.  Whether the *C.M.D.* Plaintiffs' motion to intervene should be rejected as not in the best interests of the Class.

## II.   INTRODUCTION

Plaintiffs Susan Mainzer, James Duval, and W.T. by and through his guardian ad litem Russell Tait, submit this opposition to the Motion to Intervene of plaintiffs in the *C.M.D. v. Facebook, Inc.* action (No. 12-CV-01216-LHK)("*C.M.D.* Plaintiffs").   The Motion is untimely, not supported by the facts or law, and not in the best interests of the Class in *Fraley* and should be denied.

The stated basis for the timeliness of this belated motion is the pretext that counsel only now understands that the rights of the putative *C.M.D.* Class may be implicated by this action, because of the Release in the Settlement Agreement.   This in turn is based upon the incorrect assertion that the Release in the proposed settlement is designed to affect the claims being made in *C.M.D.* as to other types of ads besides Sponsored Stories.   Because the Release does not affect such other claims and because *C.M.D.* was plainly on notice of the nature of the claims in *Fraley* since its inception (more than two months prior to the filing of *C.M.D.*), after having argued both a motion to transfer before the Judicial Panel on Multidistrict Litigation and having seen the *Fraley* Plaintiff's opposition to the relating of the two cases, there is no justification for the delay in moving to intervene.   The motion to intervene is untimely and should be denied on that ground alone.

The Motion should also be denied because there is nothing that the *C.M.D.* Plaintiffs can do as intervenors which they cannot do as objectors.   It is plain that the goal of the intervention is a strategic one in the interests of counsel in *C.M.D.*, not the interests of the Classes in *Fraley* or *C.M.D.*   The *C.M.D.* case was and is a tag-along action as to any claims as to Sponsored Stories, and should be treated as such.   *C.M.D.*'s counsel—which includes the

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

attorneys from three other now-dismissed actions, *David Cohen v. Facebook, Inc,* No. BC 444482, Los Angeles County Superior Court, *Nastro v. Facebook, Inc.*, No. 11 cv-2128 (E.D.N.Y), and *J.N.D. v. Facebook, Inc.,* No. 5:11-03287 LHK (N.D. Cal.) —have engaged in forum shopping, dismissing out the other actions in order to try to win a perceived advantage.[1]

Now that *Fraley* has reached the point of submitting a proposed settlement for the Court's review, and *C.M.D.* faces a motion to dismiss, this mostly boilerplate motion for intervention is made solely as means to derail the only part of the case that has already been successfully tested against Facebook's defenses—the claims as to Sponsored Stories which *Fraley* counsel has pursued. The unsupported assertions as to the lack of adequacy directed against *Fraley*'s counsel are not only untrue, they are ironic given the track record of the counsel in *C.M.D.*, which have had one case dismissed on grounds of preemption under the Children's On-Line Privacy Protection Act ("COPPA," 15 U.S.C. § 6502), and have lost a motion to transfer in *C.M.D.* on the basis that Facebook's Statement of Rights and Responsibilities ("SRR's") is enforceable as to the choice of venue, and thus by implication that California law applies. Having failed to appeal the latter ruling, *C.M.D.* faces a strong motion to dismiss at least some of its claims on grounds of law of the case.

*C.M.D.* fails to identify any ways in which that case's putative Class members will have their interests "substantially impaired or impeded" if Preliminary Approval is granted and notice is issued. *C.M.D.* counsel can object to the Settlement, including the scope of the release, at the Fairness Hearing if it so chooses. The purported reason for intervention to somehow prevent confusion about the terms—confusion only on the part of *C.M.D.'s* counsel—is a red herring, and unsupported by any authority at all. The Court will ensure that any notice which goes out will adequately inform the Class of the terms of the proposed Settlement, pursuant to Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure. Permissive

---

[1] Counsel for *C.M.D.* now also includes Squitieri & Fearon, formerly counsel in the *Nastro v. Facebook, Inc.,* and *J.N.D.* cases; and Wexler Wallace, LLP, who were formerly counsel in the *J.N.D.* case and in *David Cohen v. Facebook,* and John Torjeson and Antony Stuart, also counsel in *David Cohen* (Torjeson and Stuart were counsel in another matter, *Meth v. Facebook,* which was consolidated with *D. Cohen*).

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

intervention should also be denied on the ground that *C.M.D.* counsel have not shown that they intend to do anything other than object to the proposed Settlement, which they can do just as well as objectors.

## III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

This action was filed in Santa Clara Superior Court on March 11, 2011.  Plaintiffs amended to add a subclass of minors on March 18, 2011.  The case was thereafter removed to federal court on April 8, 2011.  Following an initial Motion to Dismiss after removal, Plaintiffs amended the Complaint; the operative Complaint is the Second Amended Complaint. Facebook filed a second Motion to Dismiss, which was denied on December 16, 2011. Plaintiffs filed their Motion for Class Certification on March 29, 2012, and their Reply on May 3, 2012.  The Motion was fully briefed at the time the Parties' original Term Sheet was entered into on May 22, 2012.

The Class in *Fraley* is defined for purposes of settlement (as set out in the Settlement Agreement) as follows in the Motion for Preliminary approval:

The terms of the Settlement are as follows:

### 1.   The Proposed Settlement Class

Plaintiffs request that, pursuant to the terms of the Settlement, the Court certify the following proposed Settlement Class:

> **(a)   Class:**  All persons in the United States who have or have had a Facebook account at any time and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, at any time on or before the date of entry of the Preliminary Approval Order.
>
> **(b)   Minor Subclass:**  All persons in the Class who additionally have or have had a Facebook account at any time and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, while under eighteen (18) years of age, or under any other applicable age of majority, at any time on or before the date of entry of the Preliminary Approval Order.

Settlement Agreement ("S.A."), Declaration of Robert S. Arns in Support of Motion for Preliminary Approval ("Arns P.A. Decl.") Ex. 1, at §§1.2, 1.11. The Class definition sought in Settlement (and previously in the Motion for Class Certification) differs slightly from that

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

requested in the Second Amended Complaint, in that it includes members who joined through the date of preliminary approval of the settlement.[2]   Plaintiffs requested in their Class Certification Motion and have agreed to a longer class period, because they determined that the disclosures to users did not change significantly.   *See* Memorandum of Law in Support of Motion for Preliminary Approval, page 11.   Thus, it is and was Plaintiffs' contention that all Facebook members are similarly situated when it comes to the issues of consent based upon the representations by Facebook in the SRRs and the agreement with Facebook.[3]

The *C.M.D.* action (formerly *E.K.D.*) was filed on June 1, 2011---more than <u>two months</u> after *Fraley*.   Furthermore, that case had no discussion whatsoever of Sponsored Stories. Rather, the *C.M.D.* Class was defined as follows:

> All facebook users, who during a time that facebook records identified them to be under the age of 18, had their name used in connection with a facebook advertisement. (the "Class" or "Class Members").

Alternatively, *C.M.D.* Plaintiffs seek certification of a class defined as follows:

> All facebook users, who during a time that facebook records identified them to be under the age of 18 and a resident of California, Ohio, Nevada, Illinois or Indiana and had their name used in connection with a facebook advertisement. (the "Class" or "Class Members").

*See C.M.D.* Compl.¶24, Arns Decl., Ex. 2.

Following transfer to the Northern District, the class definition in *C.M.D.* was changed:

> "Under Rule 23(b)(2):
> All facebook users, who during a time that facebook records identified them to be under the age of 18, had their name used in connection with a facebook advertisement. (the "Class" or "Class Members")"

---

[2] The definition was: "All natural persons in the United States who had an account registered on facebook.com as of January 24, 2011, and had their names, photographs, likenesses or identities associated with that account used in a Facebook Sponsored Stories advertisement ("the Class"). Subclass of Minors. All persons in the Plaintiff Class who additionally have had their names, photographs, likenesses or identities used in a Facebook Sponsored Stories ad while under 18 years of age ("the Minor Subclass")." Second Amended Complaint,¶95, Ex. 1.
[3] "The class definition may be the one alleged in the complaint, or the class may be redefined by the court, as appropriate."A. Conte & H. Newberg, 3 *Newberg on Class Actions* § 7:37 at 100-01 (West 4th ed. 2002)(citing cases).

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

*C.M.D.* First Amended Complaint, ¶33.

> Further, under Rule 23(b)(3):
>> "All facebook users, who during a time that facebook records identified them to be under the age of 18 and a resident of Ohio, Nevada, Illinois, Florida, Massachusetts, Wisconsin or Indiana, and had their name used in connection with a facebook advertisement. (the "Penalty State Sub-Class" or "Penalty State Sub-Class Members.")"

*C.M.D.* First Amended Complaint, ¶34.

**A.  Discovery in *Fraley* vs. Discovery in *C.M.D.***

The discovery in the *Fraley* case has been extensive. There have been twenty-one (21) depositions taken in this action, including 7 experts and over 4,263 pages of transcripts. Arns P.A. Decl. ¶29. These included key personnel of Facebook involved in the development of Sponsored Stories ads and persons most qualified to discuss the workings of Facebook's systems. Arns P.A. Decl, ¶29-30. Plaintiffs' Counsel prepared and served 11 sets of Requests for Production of Documents, for a combined total of 214 individual requests, upon Defendant; six sets of Requests for Admission, a total of 249 requests; and 25 Interrogatories. Arns P.A. Decl., ¶¶34-36. The document demands resulted in over 200,000 pages being produced by Facebook, not counting responses to third-party subpoenas served by Plaintiffs. *Id.*, ¶34. Plaintiffs issued subpoenas to five third-parties. Arns P.A. Decl., ¶37. Plaintiffs' Counsel received, analyzed and responded to 105 interrogatories from Facebook, 351 Requests for Admission and 269 Requests for Production of Documents. Arns P.A. Decl. ¶40-42.

In contrast, apart from obtaining copies of the written discovery and deposition transcripts from *Fraley*, the *C.M.D.* case has done far less discovery. Depositions have not yet taken place, and the document discovery done thus far is perfunctory at best. Arns Decl., ¶19. It is ironic that *C.M.D.* counsel has done so little preparation and yet casts aspersions at *Fraley* counsel.

**B.  Settlement Terms in the *Fraley* Proposed Settlement**

**1.  Injunctive Relief in the *Fraley* proposed Settlement**

The Parties in *Fraley* have agreed to a stipulated injunction that will provide the relief described below addressing and clarifying the issues of consent and control of the use of the

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

Class members' names and likenesses.  Under the terms of the Settlement, Facebook agrees to take the following measures within a reasonable time not to exceed six months following the Final Settlement Date (after the Settlement is approved and the Judgment is final, Arns P.A. Decl. Ex. 1, S.A. §§1.7, 2.1):

**2.1 Class Relief.**  Facebook agrees to take the following measures within a reasonable time not to exceed six months following the Final Settlement Date:

> **(a) Revision of Facebook's Terms of Use.**  In addition to other changes Facebook reserves the right to make to section 10.1 of its Statement of Rights and Responsibilities, Facebook will revise section 10.1 to include language reading substantially as follows:

> **About Advertisements and Other Commercial Content Served or Enhanced by Facebook**

> Our goal is to deliver advertising and other commercial or sponsored content, such as Facebook Ads and Sponsored Stories, that is valuable to our users and advertisers.  In order to help us do that, you agree to the following:

> You give us permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us.  This means, for example, that you permit a business or other entity to pay us to display your name and/or profile picture with your content or information.  If you have selected a specific audience for your content or information, we will respect your choice when we use it.

> If you are under the age of eighteen (18), or under any other applicable age of majority, you represent that at least one of your parents or legal guardians has also agreed to the terms of this section (and the use of your name, profile picture, content, and information) on your behalf.

> **(b)  User Visibility and Control Over Sponsored Stories.**  Facebook will create an easily accessible mechanism that enables users to view the subset of their interactions and other content that have been displayed in Sponsored Stories. Facebook will further engineer settings to enable users, upon viewing the interactions and other content that have been used in Sponsored Stories, to control which of these interactions and other content are eligible to appear in additional Sponsored Stories.

> **(c)   Relief for Minor Subclass.**

> > **(i)   Revision of Facebook's Terms of Use.**  Facebook will revise its Statement of Rights and Responsibilities to provide that Facebook users under the age of eighteen (18), or under any other applicable age of majority, represent that their parent or legal guardian consents to the use of their name and likeness in

-6-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

connection with commercial, sponsored, or related content, as set forth in the revised section 10.1 (provided above).

**(ii) Parent Educational Information and Parental Control.** Facebook will add a clear, easily understandable description of how advertising works on Facebook to its Family Safety Center (https://www.facebook.com/safety), and it will review and to the extent reasonably feasible implement methods for communicating the availability of such information to parents of minors on Facebook. In addition, Facebook will add an easily accessible link in the Family Safety Center to the tool it currently provides that enables parents to prevent the names and likenesses of their minor children from appearing alongside Facebook Ads (currently available at https://www.facebook.com/help/contact/328678960533614) and Facebook will extend this tool to enable parents to also prevent the names and likenesses of their minor children from appearing in Sponsored Stories. Finally, Facebook will review and to the extent reasonably feasible implement methods for enabling parents to utilize this tool through their own Facebook accounts, without obtaining access to their children's accounts, where appropriate (i.e., if the minor has confirmed the identity of his or her parent or legal guardian on Facebook).

Settlement Agreement, §2.1, Arns P.A. Decl, Ex. 1.

## 2. The Total Amount Offered in Settlement is Valued at $123,537,500.

The proposed Settlement Agreement, among other things, provides for a Settlement Fund of $10 million for *cy pres*, which will not be diminished by attorneys' fees, the cost of notice, or the proposed service award, and also provides for injunctive relief that squarely addresses the key issues in Plaintiffs' Complaint, which will be in place for two years, S.A., §2.2, and has a value of $103.2 million. Declaration of Fernando Torres in Support of Prelim. App. Motion, ¶11. The injunctive relief detailed above is designed to provide notice to Facebook's members of the potential consequences of certain actions taken on Facebook. The injunctive relief will ensure that the Members are apprised of the existence and mechanics of Sponsored Stories ads, and they will then also be capable of taking steps to limit their appearance in those ads. *See* S.A., §2.1 (b). The changes to the SRRs and other pages on Facebook to clarify that Sponsored Stories are advertisements and that users may be featured in them if they take certain actions, will remedy the situation where Plaintiffs identified that there was no such disclosure and/or that the disclosures were inadequate or allegedly fraudulent (in the context of section 17200 jurisprudence, which does not require intent to

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

deceive, actual deception, or damage in a "fraud" case, *see, e.g., Blakemore v. Super. Ct.,* 129 Cal. App. 4th 36, 49 (2005)).

Facebook in the Settlement Agreement has also committed to fund *cy pres* payments of $10 million. S.A., §2.2. Furthermore, it has agreed to pay subject to court approval, and to not oppose (and to pay if awarded) attorneys' fees of up to $10 million and costs of $300,000. S.A., §2.3. The attorney's fees and service awards are in addition to the *cy pres* recovery and thus provide additional value to the Class. *Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 50 (2008) (value of attorney's fees included in placing valuation on settlement). Facebook will also bear the cost of notice and administration (monitoring objectors and opt-outs), a further significant value to the Class. S.A. §2.6.

The total value of the *cy pres*, injunctive relief, and attorneys' fees and costs combined is at least $123,537,500.

## IV.    STANDARD ON MOTION TO INTERVENE

"A party satisfies the requirements for intervention as a matter of right upon showing: "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interests must not be adequately represented by the existing parties in the lawsuit."

*Cohorst v. BRE Props.,* 2011 U.S. Dist. LEXIS 87263 (S.D. Cal. Aug. 5, 2011) (citing *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810, 817 (9th Cir. 2001)).

## V.    INTERVENTION SHOULD NOT BE ALLOWED

The motion of *C.M.D.* Plaintiffs to intervene as of right should be denied as untimely, as *C.M.D.* Plaintiffs have known of the allegations in *Fraley*, and that their rights as to claims as to Sponsored Stories may be affected since before *C.M.D.* was filed. The assertions that the terms of the Release in the *Fraley* Settlement Agreement release claims in *C.M.D.* as to ad products other than Sponsored Stories is without any basis, and thus, no new information allows this untimely motion. There is a presumption that class members' interests are adequately represented by the settling plaintiffs and their counsel, and the burden is on the

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

proposed intervenors to rebut that presumption. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997); *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 606 (W.D.N.Y. 2011). The motion should thus also be denied because the *C.M.D.* Plaintiffs are adequately represented in this action, and they have not met their burden to show collusion or inadequacy of representation. Any objections to the merits of the Settlement or the reach of the Release can and should be made at the Fairness Hearing.

The motion for permissive intervention should also be denied on the ground that there is no benefit to the Class or the Court of intervention by counsel in *C.M.D.*, which has not acted in the best interests of the Class. Specifically, *C.M.D.* counsel has engaged in actions including failing to appeal crucial decisions and pursuing legal theories which work against the interests of the Class in *Fraley*. Furthermore, *C.M.D.* counsel has misstated the facts concerning the settlement negotiations and failed to provide any evidence that its intervention will be of any benefit to the Class. To the contrary, delays due to any discovery or motion practice could jeopardize the Settlement currently up for review by the Court.

## A.     The Motion to Intervene Should be Denied as Untimely

"Timeliness is 'the threshold requirement' for intervention as a right." *League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297, 1302 (9th Cir. 1997) (citing *United States v. Oregon,* 913 F.2d 576-88 (9th Cir. 1990)). "We consider three criteria to evaluate timeliness: the stage of the proceeding, prejudice to other parties, and the reason for and length of the delay." *United States v. Oregon,* 913 F.2d 576, 588 (9th Cir. 1990). Here, we are in the late stages of the case, at preliminary settlement approval. The parties in *Fraley* would be prejudiced by this intervention, and there is no good reason for the *C.M.D.* Plaintiffs' delay in asking to intervene.

The Ninth Circuit Court of Appeals has noted that it has "been reluctant to require the granting of motions to intervene where lengthy settlement efforts might be disrupted and the applicants for intervention had notice of the existence of the suit." *United States v. Carpenter,* 298 F.3d 1122, 1125 (9th Cir. 2002), *see also County of Orange v. Air Cal.,* 799 F.2d 537 (9th

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

Cir. 1986); *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978).[4]  *C.M.D.* plaintiffs have waited until there is a settlement being considered before making any move to intervene. There is no question that the *C.M.D.* Plaintiffs were aware from the inception of their case that *Fraley v. Facebook* covered Sponsored Stories ads for minors.   The *C.M.D.* case was filed more than two months after *Fraley* was amended to add the minor subclass.  Counsel in *C.M.D.* fought a motion to consolidate before the Judicial Panel on Multi-District Litigation which was brought in August of 2011, and a motion to transfer brought by Facebook back in January of 2012.  Thus, *C.M.D.* Plaintiffs were on notice of all facts that their claims might be impacted by what happened in *Fraley*.   As detailed below, there is no claim to be made that the proposed Release in *Fraley* somehow constituted a new fact that now allows *C.M.D.* Plaintiffs to now intervene.  The Release does not cover friend-endorsed ads beyond Sponsored Stories ads and therefore does not cover "Facebook ads with Social Content."  Given the inexcusable delay by *C.M.D.* Plaintiffs in brining this motion, it should be denied as untimely[5].

There will also be prejudice to the existing parties if intervention is allowed. *See Davis v. J.P. Morgan Chase*, 775 F. Supp. 2d at 606 ("The Second Circuit has noted on several occasions that 'jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit.") (quoting *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465, 490 (S.D.N.Y. 1998), other citations omitted); *see also Vollmer v. Publishers Clearing House*, 248 F.3d 698, 706-07 (7th Cir. 2001) ("Relevant factors to consider in ruling on a motion for permissive intervention include whether the request ... would unduly delay or prejudice the adjudication of the rights of the original parties").

---

[4] The facts here are thus unlike those in *Carpenter* (indirectly cited by *C.M.D.*), where the Ninth Circuit held that "It was only when the intervenors learned that the settlement constituted a substantial departure from the position that the government had maintained throughout the litigation that they sought to intervene." 298 F.3d at 1125.  Nor are they like those in *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010), in which timeliness was not contested.
[5] The assertion that Plaintiffs took an "unusual" step in filing parts of their Motion for Preliminary Approval under seal ignores the fact that they were required to do so by the terms of the Protective Order in the case and the Local Rules, given that certain information referred to in the Motion was previously designated confidential.

-10-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

**B.    The Only Overlap Between the Actions is as to Sponsored Stories Featuring Minors**

The *Fraley* action has only a minimal overlap with *C.M.D.*, which involves only minor children who have appeared in <u>any</u> type of ad on Facebook—or possibly only minor children in a handful of other States. *Fraley*, by contrast, has a nationwide class limited to Facebook Members (<u>including</u> a subclass of minors) who have had Sponsored Stories created using their names and likeness. *Fraley* counsel have always maintained that their case does not cover advertising on Facebook beyond Sponsored Stories ads, or whatever Sponsored Stories may be called in the future which has the same characteristics (use of name and profile picture in an apparent endorsement coupled with an advertiser's logo or copy, shown to the users' Facebook friends).   Contrary to *C.M.D.* Plaintiffs' insinuations, the "expansion" of the time period covered by the Class was done by *Fraley* Counsel after investigation of the claims and a determination that the disclosures to users did not vary significantly in terms of providing for consent or notice as to users' inclusion in Sponsored Stories ads.  This expansion was simply carried over into the Settlement Agreement.  It is simply not true that the interests of the Class members for that period were not represented by *Fraley* counsel; careful consideration led to the conclusion that the Class members were similarly situated and that no new Class representatives were needed, given the lack of material changes to the SRRs.    See Memorandum of Law in Support of Motion for Preliminary Approval, at p. 11.

*Fraley* Counsel has made the fact that the *Fraley* case only covers Sponsored Stories plain to counsel for *C.M.D.* on several occasions. Arns Decl., ¶28, and Ex. 8.  Following the filing of the Motion to Intervene, *Fraley* Counsel discussed the issue of the scope of the Release, and stated unequivocally that it was not intended to and did not cover ads on Facebook beyond Sponsored Stories ads, and that it specifically did not extend to Facebook ads with social content ("Facebook Ads with Social Content).  *Id.*, ¶28.   At the present time, only Sponsored Stories and have the "social content" aspect on Facebook in that they employ the likeness or name of users.  Arns Decl., ¶28.  Counsel for *C.M.D.*, Aaron Zigler and Steven Katz, confirmed that they would attempt to intervene and oppose the Motion for Preliminary

-11-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

Approval even if the Release were to be clarified further to state that Facebook Ads with Social Content are excluded from the Released Claims in *Fraley*. Arns Decl. ¶28 and Ex. 8.

## C.      The Release Does Not Extend Beyond Sponsored Stories

Notwithstanding the contentions of *C.M.D.* Plaintiffs, the Release as drafted in the Settlement Agreement does not go beyond Sponsored Stories.   The Release provides that following entry of Judgment, and upon the Final Settlement Date, as defined in the Settlement Agreement, the Settlement Class will have released the "Released Parties" from the "Released Claims," all as defined in the Settlement Agreement, including a waiver of California Civil Code Section 1542. S.A., §4.2.   The Released Claims, as defined, will include all claims raised or which could have been raised in the Complaint based on the factual allegations.

The Settlement Agreement provides in part that the Released Claims include:
"all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown claims, in law or equity, fixed or contingent, which the Releasing Parties have or may have against the Released Parties <u>arising out of or relating to any of the acts, omissions, or other conduct that was or could have been alleged in the Action, including but not limited to any and all acts, omissions, or other conduct related to the display of any Class Member's name, nickname, pseudonym, profile picture, photograph, likeness, or identity in a Sponsored Story</u> ("Released Claims").

In addition, the Releasing Parties expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

S.A., §4.2. (emphasis added).

*C.M.D.* is thus simply incorrect that the Release covers advertisements beyond Sponsored Stories.   The release of "known and unknown" claims is still tethered to the allegations of the Complaint and class definition, which deal only with Sponsored Stories and

-12-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

any permutations of Sponsored Stories—including other names by which they may be called by Facebook in the future.  This does <u>not</u> include non-friend endorsed ads like Facebook ads, or other types of ads which Facebook may create which do not have the characteristics of Sponsored Stories:  Advertiser logo / name paired with an action by a Facebook member, and the Facebook member's name and profile picture.[6]

Counsel in *C.M.D.* clearly does not understand the concepts at play or the realities of the relief which is possible in an action such as this.  First, *C.M.D.* has done far less discovery overall than have *Fraley*'s counsel, with no depositions having been taken at all in *C.M.D.* and far fewer documents having been produced.   *C.M.D.* counsel's argument on the issue of minor consent shows a failure to appreciate the impracticability of requiring provable, express parental consent on a social media website. [7] The potential problem of fraudulent e-mails as to consent is only one issue that must be addressed. Additional practical difficulties associated with obtaining such express parental consent include determining what type of proof of a parental or guardian relationship a social media website should require, and how to obtain such proof in a verifiable manner that is not so burdensome as to be impractical.  The *Fraley* Plaintiffs have devised relief which provides for increased parental controls and the ability to prevent their children from being in ads, and the acknowledgement by the minors (over age 13, as Facebook does not allow children under 13 to have Facebook accounts) that they have parental permission, is also an indication that actual consent was obtained.

**D.**   ***C.M.D.* is a Tag-Along Case Filed After <u>Fraley</u>, and Any Claimed Rights of the *C.M.D.* Class Members Can Be Dealt with <u>as Objectors.</u>**

*C.M.D.* Plaintiffs are able to opt-out of the Class and pursue their own damages action against Defendant Facebook.  As noted in other cases, alternatively, *C.M.D.* Plaintiffs "may

---

[6] Since no claims beyond those which are tied to the claims s to Sponsored Stories are released, the cases cited by *C.M.D.* which hold that releases of claims that are not actually alleged in the complaint are overly broad are inapposite.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992); *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 108 (2d Cir. 2005) cert. denied, 544 U.S. 1044 (2005); *In re Zoran Derivatives Litig.*, No. 06-05503 WHA, 2008 U.S. Dist. LEXIS 48246 (N.D. Cal. April 7, 2008).
[7] Furthermore, minors as a group often change their profile pictures which leads to further issues as to proof of injury and damages.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

raise any objections to the settlement at the time of the Final Hearing." *Cohorst v. BRE Props.*, 2011 U.S. Dist. LEXIS 87263 at *18.   The circumstances here are similar to those in *Davis v. J.P. Morgan Chase, & Co.*, 775 F. Supp. 2d 601, 606 (W.D.N.Y. 2011).   In *Davis*, putative class members brought a parallel class action and sought intervention in order to propound discovery and to oppose the settlement.   The district court denied the motion for intervention, holding that "[t]he proposed intervenors' interests in this action can be fully protected at the fairness hearing for final approval of the settlement," and that  "[i]ntervention is not necessary here to protect the proposed intervenors' or other class members' interests, and there are alternatives open to them which would be less disruptive to these proceedings and to the interests of the settling parties." 775 F. Supp. 2d at 605.  *See also, e.g., Grilli v. Metropolitan Life Ins. Co., Inc.*, 78 F.3d 1533, 1536-38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene;  court concluded that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and objecting to the settlement); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 263-64 (D. Del. 2002) (denying motion to intervene, and noting that "the court provided every class member who did not opt out with the opportunity to present argument or evidence of the unfairness of the settlement in writing and/or orally at the fairness hearing").[8]

     There is also no support for the argument that it is necessary for a Court to allow intervention to avoid "confusion" by the Class members as to "misunderstood settlement terms"—as shown by the fact that no such authority is cited.  The Court will be charged with reviewing the Notice to ensure that it complies with Rule 23 and adequately informs the Class

---

[8] Furthermore, to the extent that they may seek discovery after intervention, "such requests are generally looked upon with disfavor, absent some evidence of collusion in the settlement negotiations, because of 'the potential for undermining the settlement process.'" *Davis*, 775 F. Supp. 2d at 607, (citing *Vollmer v. Publrs. Clearing House*, 248 F.3d 698, 708 (7th Cir. 2001)). *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) ("Because of this jeopardy to the settlement, the district court did not abuse its discretion when it concluded that the prejudice to the existing parties outweighs any prejudice to appellant and denied appellant's motion to intervene"). *see also In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d. Cir. 2000) amended by *Weisshaus v. Swiss Bankers Ass'n.*, 200 U.S. App. LEXIS 29529 (2d. Cir. 2000) ("We have affirmed a denial of a motion to intervene where granting intervention would have jeopardized a settlement").

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

members of the proposed settlement. Further, that determination will only be necessary if the Court first finds that the Settlement falls within the range of possible approval and merits notice.

The claims as to "Facebook Ads with Social Content, moreover, are considerably weaker than those in *Fraley* for Sponsored Stories, for the following reasons: 1) Advertisers do not pay additional monies for Facebook Ads with Social Content as compared to "regular" Facebook Ads, thus opening up an Article III standing issue as to injury (as Facebook points out in its Motion to Dismiss in *C.M.D.*); 2) the SRRs clearly "cover" Facebook Ads of any type, [as opposed to Sponsored Stories, which are excluded from the definition of "ads" by Facebook for purposes of SRR section 10.1] which are thus subject to a defense of consent; and 3) because no additional monies are paid for Facebook Ads with Social Content, ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮

**E.     A Grant of Preliminary Approval Will Not "Substantially Impede Or Impair"**
**       *C.M.D.* Class Members' Interests, As They Are Adequately Represented**

*C.M.D.* Plaintiffs have failed to demonstrate that the *Fraley* Class Representative's interests are not aligned with those of the putative Class in *Fraley*.  As acknowledged by *C.M.D.* Plaintiffs, there is a presumption of adequacy of representation when the applicant for intervention shares the same ultimate objective with the existing party, and the applicant for intervention must make a "compelling showing" of inadequacy of representation.  *C.M.D.* brief at 13, citing *League of United Latin Am. Citizens*, 131 F.3d at 1305; *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); and *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 334 (N.D. Ga. 1993).

The allegations by *C.M.D.* of inadequacy of counsel for *Fraley* plaintiffs are unsupported by facts or law.  Simply because *C.M.D.* Plaintiffs may have a separate agenda or goal does not mean that the counsel in *Fraley* are somehow inadequately representing them. Plaintiffs' counsel in *Fraley* are not purporting to represent claims of the putative *C.M.D.* Class beyond the issues raised by Sponsored Stories, so any arguments that *Fraley* Counsel is

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

inadequate to represent *C.M.D.*'s interests as to claims that are neither raised nor released in *Fraley* are irrelevant to Counsel's adequacy.[9] Indeed, all that *C.M.D.* attempts to do is to show that the stated goals of the *C.M.D.* case are different as to different types of ads. This is not an argument that there is some conflict between the actual goals of the *Fraley* representatives vis-à-vis Sponsored Stories ads, only a complaint by *C.M.D.* about the scope of the proposed release and the proposed relief. *C.M.D.* Plaintiffs' argument is based upon the premise that the Release in the proposed Settlement also releases the claims being brought in *C.M.D.* as to other types of ads, most notably Facebook Ads with Social Content. As shown above, this is a faulty premise, and the argument that there is a conflict falls apart once this premise is removed.

Nor has there been any showing of collusion between *Fraley* Counsel and Facebook. *C.M.D.'s* reference to the standards for approval of settlements adds nothing the Court's analysis of whether to allow this intervention. That the relief for the Class consists of "non-pecuniary" injunctive relief and *cy pres* payments has not been concealed in any way. The *Fraley* Plaintiffs have submitted extensive briefing on the issues and have kept in mind at all times the Court's suggestion to look to cases such as *Ferrington v. McAfee, Inc.*, No. 10-cv-01455-LHK, 2012 U.S. Dist. LEXIS 49160 (N.D. Cal. April 6, 2012) as to what is necessary for preliminary approval. Those cases include the principles which *C.M.D.* waves around as if they are somehow news to the parties or the Court. The cases cited by *C.M.D.* simply recommend "scrutiny" if there is no money going directly to the Class.[10]

---

[9] Similarly misleading is *C.M.D.*'s citation to authorities that advocate the allowing of intervention of counsel in "overlapping" class actions. As repeatedly recognized by *C.M.D.* counsel, *Fraley* and *C.M.D.* do not "overlap" in the sense intended in those authorities. *See C.M.D.* brief at p. 1-2 (citing B. Rothstein & T. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 24 (Fed. Judicial Center, 3d ed. 2010).

[10] This argument also highlights just how disingenuous *C.M.D.* counsel is being: The only relief that the *C.M.D.* case is even seeking for 43 of the 50 States is declarative relief—no damages at all are sought in those States. Thus, any settlement of the claims in *C.M.D.* would also by definition be only for "non-pecuniary" relief. Furthermore, contrary to C.M.D.'s assertion, this Court's opinion *Ferrington* does not discuss whether intervention by plaintiffs in a similar action is appropriate; there, the "Pochis" plaintiffs, filed an objection rather than moving to intervene in *Ferrington*. *See* 2012 U.S. Dist. LEXIS 49160 at *13-*15.

-16-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

Furthermore, each of the cases cited for conflicts of interest, or that state that there is no value in "promises" by the defendants to do what the law requires, are distinguishable from the facts of this case—where the injunctive relief will cause modifications to Facebook's procedures which will not just help in keeping it in compliance with the law, but which has demonstrable value.   Unlike in those cases, absent this lawsuit, Facebook would not be compelled to change its SRRs to clearly seek consent to the use of a user's name and likeness, or allow the users to review and prevent further appearances in Sponsored Stories ads.[11]

The proposed Settlement is also clearly a product of arm's length negotiations by *Fraley* Counsel, who are well-versed in class actions and thus is the Settlement is entitled to an initial presumption of fairness.   *See Alvarado v. Nederend*, No. 1:08-CV-01099, 2011 U.S. Dist. LEXIS 2326, at *15 (E.D. Cal. Jan. 11, 2011).   As noted above, the discovery was hard-fought and involved over 200,000 pages of documents, and 21 depositions as well as a motion to compel and two motions for protective orders.   *See supra* page 5, and Arns P.A. Decl. ¶¶29-34.   Furthermore, there were two rounds of motions to dismiss, with Plaintiffs amending in response to the first and prevailing on second.   There were seven experts who were deposed in connection with the class certification motion.   Arns P.A. Decl., ¶ 31-32.   The settlement negotiations were initiated in mediation before Judge Infante, the respected retired Chief Magistrate Judge for the United States District Court for the Northern District of California and an experienced mediator with JAMS.   Arns P.A. Decl., ¶4; Infante P.A. Decl.¶2.

---

[11] Compare with *Acosta v. Trans Union L.L.C.*, 243 F.R.D. 377, 395-96 (C.D. Cal. 2007)(changes to the defendants' credit reporting procedures were possibly "inevitable" as they violated federal law); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 554-55 (S.D. Ohio 2000)(citing to cases including *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) for the proposition that obligating defendants to do what they are already required to do under the law generally not a benefit to the class, but actually finding that the proposed injunction <u>did</u> provide a benefit in the form of collective bargaining rights as to violations); *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150 (4th Cir. 1996)(defendant only agreed to comply with ERISA prospectively, which it was required to do anyway); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, MDL No. 991, 1995 U.S. Dist LEXIS 3507 (E.D. La. 1995)(proposed settlement provided none of the relief asked for in the complaint, and only provided for information and inspections as to subject vehicles).

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

The comparison with the settlement in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) is misplaced. The Ninth Circuit Court of Appeal there vacated the order approving the settlement, due to issues dealing with attorney's fees including the procedural point that the district court never announced a lodestar figure. *Id.* at 943. The district court was ordered on remand to consider whether to treat the settlement as a common fund, to consider whether to use the lodestar or percentage method in calculating a reasonable fee, to make explicit calculations, and to consider the degree of success in the litigation and benefit to the class in deciding whether to adjust the lodestar or percentage to be awarded. *Id.* at 945. Thus, the Court of Appeal seemed open to considering the *cy pres* award as a "common fund," against which a percentage fee could be calculated, and therefore also open to the concept of the *cy pres* award comprising the major relief. The ratio of the *cy pres* award to the attorneys' fees in *Bluetooth* (the fees being eight times greater than the *cy pres*) was also obviously far different from that presented in *Fraley*, where the agreement is that Facebook will not oppose attorney's fees of up to $10 million (and counsel's actual fees will be lower). Calling this a "kicker" is incorrect, as the attorney's fees provision was negotiated after the *cy pres* award. Arns Decl., ¶13. Furthermore, there was no injunctive relief in *Bluetooth* of the type which is being imposed by the Settlement here, thus the entire value of that settlement was in the *cy pres* award.

C.M.D. counsel fails to identify any common issues of law or fact which will be decided in *Fraley* that will affect *C.M.D.* Indeed, the fact that it is settling means that there will be no such adverse determinations. *C.M.D.* counsel also fails to adequately describe the actual relief proposed in the *Fraley* Settlement, as it does not mention the substantial injunctive relief in a meaningful way or indeed at all for the first two-thirds of its brief (passing reference is made on page 12). As noted, that relief is substantial—and far more than the *C.M.D.* case is likely to achieve. The injunctive relief in the Settlement is valued at <u>$103 million</u>, which must be taken into account <u>in addition</u> to the $10 million in *cy pres* when calculating the value to the Class. *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th at 50. Attorney's fees in this case of even the full $10

-18-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

million would represent far less than the Ninth Circuit benchmark of 25% in common fund cases. The total value of the Settlement is $123 million.

At any rate, attacks on the alleged inadequacy of the Settlement itself are not appropriate at this stage of the proceeding. The question on preliminary approval is whether the claim falls within the range of permissible approval, and only later, if it is fair and reasonable.[12] That a party may have achieved a "better result" in settlement is also simply not a supportable argument, now or later. *Linney v. Cellular Alaska P'ship.*, 151 F.3d 1234, 1242 (9th Cir. 1998). *See also In re TD Ameritrade Account Holder Litig.*, C 07–2852 SBA, 2011 WL 4079226, at *12-13 (N.D. Cal. Sept. 13, 2011). Thus, any argument by *C.M.D.* that the proposed Settlement could be somehow "better" is misguided; that is not the issue here.

The Settlement falls within the range of possible approval as it accomplishes much of what Plaintiff sought in the lawsuit now—without the risk of a denial of class certification, an adverse grant of summary judgment or adverse verdict at trial. *See Alvarado*, 2011 U.S. Dist. LEXIS 2326, at *16-17 (to evaluate the range of possible approval, courts primarily consider the value provided by the settlement against the claims' expected recovery if tried). Numerous factors further support the fairness of the settlement, including (1) the substantial amount offered in settlement, and (2) the risks of continued litigation. Thus, there is simply no basis whatsoever for *C.M.D.*'s assertion that *Fraley* Class Counsel is in any way inadequate or that there was any collusion.

In contrast to *C.M.D.* counsel's failure to appeal two critical rulings (as detailed below), *Fraley* Plaintiffs and their counsel have shown, through their prosecution of this action and negotiation of the proposed Settlement, that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As set forth more fully in the Motion for

---

[12] At the preliminary approval stage the Court determines only whether "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class; and [4] falls within the range of possible approval," such that it is presumptively fair, and it is therefore worthwhile to give the class notice of the settlement and proceed to a formal fairness hearing. *Alvarado*, 2011 U.S. Dist. LEXIS 2326, at *14-15 (quoting *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). The proposed Settlement meets each of these requirements.

-19-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

Preliminary Approval, The Arns Law Firm and its lawyers, Robert S. Arns, Jonathan E. Davis, Steven R. Weinmann, and Kevin M. Osborne, and Robert Foss are experienced in class action cases. Arns P.A. Decl., ¶¶18-27.   Jonathan M. Jaffe, the other Class Counsel, is uniquely qualified to address the issues raised in this case. *See* Jaffe Decl., ¶¶3-6.

## VI.   PERMISSIVE INTERVENTION SHOULD ALSO BE DENIED BECAUSE *C.M.D.* PLAINTIFFS' COUNSEL HAS NOT ACTED IN THE BEST INTERESTS OF THE CLASS.

Permissive intervention should also be denied as not in the best interests of the Class. As noted earlier, *C.M.D.* Plaintiffs' counsel have forum shopped from the beginning.   Lead counsel Korein Tillery has co-counseled with other firms and required them to drop their claims (*JND* in the Northern District of California and *Nastro* in the Eastern District of New York) in the interests of consolidating their case in the Southern District of Illinois.   Another action pending in California Superior Court, *David Cohen v. Facebook*, was voluntarily dismissed after the lawyers there (Wexler Wallace among them) lost a demurrer on the ground of preemption under the COPPA, 15 U.S.C. § 6502.   Declaration of Robert S. Arns, Ex. 1. Instead of continuing to litigate what is now a California Superior Court adverse precedent, they dismissed the case and chose to file elsewhere knowing they could not amend the complaint successfully.   The lawyers in each of the three dismissed actions have associated as counsel in *C.M.D. C.M.D.* Counsel in the motion to intervene, state incorrectly that they were "excluded" from settlement negotiations.   *C.M.D.* Counsel has also pursued legal theories which could negatively impact the Class, and engaged in a media campaign which could be adverse to the best interests of the Class.   Finally, there is no reason to believe that there will be any extraordinary costs imposed on the Class if this intervention is not allowed.

Further, *C.M.D.* faces a motion to dismiss in front of this Court.   Due to the fact that *C.M.D.* mainly deals with minors in "Facebook Ads with Social Content" (i.e., friend endorsement) – not Sponsored Stories – the claims face numerous other serious problems. These problems include the fact that advertisers do not pay more for the "Social Content," and

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

Furthermore, the fact that the SRRs explicitly cover consent for "advertisements" creates issues as to express consent if the SRRs are not "void" (and the decision by Judge Murphy may preclude that argument); minors ages 13-17 (high school students) frequently change their profile and name, creating issues as to proof; and the failure to appeal the successful demurrer in the *David Cohen* state court case makes it impossible for them to plead around COPPA. All of this is evidence that *C.M.D.* counsel wishes to intervene for the purpose of making claims for minors under Sponsored Stories, as the other aspects of the *C.M.D.* case may be in jeopardy in part due to *C.M.D.* counsel's own actions and in part due to the differences between Sponsored Stories and Facebook Ads with Social Content. *C.M.D.* is simply a tag-along action as to the claims involving Sponsored Stories, having filed more than two months later than *Fraley* and never even mentioning Sponsored Stories ads in its pleadings.

Given the poor track record of *C.M.D.* Counsel, there is no support in *C.M.D.*'s papers for the idea that their intervention would in any way "strengthen" the adequacy of representation. *Cf. Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094 (9th Cir. 2002); *In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*, 99-MD-1309 (PAM), 2002 WL 31371945 (D. Minn. Oct. 7, 2002). Nor is there any evidence that allowing this intervention "will facilitate an equitable result" or that *C.M.D.* Plaintiffs will "significantly contribute to development of the underlying factual issues." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)(not actually deciding the right of the parties to intervene, and also listing as factors "whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.") Indeed, all that *C.M.D.* Counsel appears to intend to do is to object, which does not require intervention.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK

**1.** ***C.M.D.*** **Counsel Have Failed To Put The Class' Interests First**

*C.M.D.* Counsel attempts to distract from the myriad infirmities with the claims in that case, asserting that its argument that the SRRs are void and unenforceable "avoids many of the difficulties" of the *Fraley* action. But *C.M.D.*'s theory that the SRRs are "void" has already been rejected by Judge Murphy in his Order transferring the case to the Northern District of California. That Order relied upon the SRRs as a basis to uphold Facebook's venue provision.

After dismissal of the *J.N.D.*, *David Cohen* and *Nastro* cases, and following a ruling by the Judicial Panel on Multidistrict Litigation denying coordination of the *C.M.D.* and *Fraley* actions, the *C.M.D.* case was transferred to the Northern District of California pursuant to a 28 U.S.C. § 1404 transfer motion by Facebook. Crucially, the basis for Judge Murphy's decision in granting the transfer was that the SRRs were binding as to its venue provision. This ruling attacked a keystone of the *C.M.D.* theory of their case—that the SRRs were "void" under California Family Code sections 6701 and 6710, as well as presumably the laws of their other targeted Penalty States. Despite this, and despite the fact that the SRRs also contain a choice of law provision that states that California law applies, C.M.D. counsel failed to appeal that ruling, despite expressly recognizing in a motion to reconsider the transfer order that the finding was potentially "ruinous to their claims." Arns Decl., Ex. 7 (*C.M.D.* Motion to Reconsider, at page 1). Facebook has thus argued in its pending motion to dismiss, that the ruling that the SRRs are binding is "law of the case." Arns Decl., ¶25.

If Facebook's position in that motion is accepted, then the failure to appeal the transfer ruling will have led to the loss of not only the theory that the SRRs are void as to minors, but also any argument that the law of the other so-called "Penalty States" applies to the *C.M.D.* claims. In other words, the entire case may be thrown out. Yet, *C.M.D.* Counsel has continued to pursue this theory that the SRRs are void (arguing unsuccessfully under Cal. Family Code section 6701, which is easily distinguishable, and other State laws) and now seeks to intervene and oppose *Fraley*'s settlement based upon it. If *C.M.D.* were to "succeed" in its plan to impose this already judicially rejected theory upon *Fraley* as the only theory of recovery, the claims of the minor subclass in *Fraley* too could be brought down.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

Furthermore, if *C.M.D.* is successful in arguing that California law does <u>not</u> apply so that it can pursue the actions for damages in only five States, giving up any damages claims whatsoever in the other 46, then the Unfair Competition Law claim in *Fraley* (and potentially other actions) will be potentially jeopardized by the ruling in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) that the Unfair Competition Law, does not apply to claims by plaintiffs in other States[Business & Profession Code section 17200 et seq.]. Again, this would do a great disservice to Class members in both actions. Clearly *C.M.D.* Counsel does not have their best interests in mind.

**2. *C.M.D.* Counsel Was Not Excluded From Settlement Negotiations by *Fraley* Plaintiffs**

*C.M.D.* Counsel incorrectly asserts that it was excluded from settlement negotiations. The settlement of the *C.M.D.* case was initially a contingency to the settlement of *Fraley*, at the behest of Facebook, which wanted a global settlement. Arns Decl., ¶20. *C.M.D.* Counsel was in fact invited out to meet with Facebook but could not settle the case. *Id.*, ¶22. It was only *C.M.D.*'s inability to come to terms with Facebook in the time allotted by the Court before the rescheduled class certification hearing in *Fraley* which caused a revision to the Settlement Agreement dropping that contingency. *Id. Fraley* Counsel was also not responsible for how Facebook chose to include or not include a separate action in settlement negotiations. Nor did *Fraley* Counsel have an obligation to represent Class members as to claims that they are not making in *Fraley* as to Facebook ads with social content, or other types of advertising involving minors beyond Sponsored Story ads—claims which counsel had determined suffered from serious potential issues of proof.

**3. *C.M.D.* Counsel Has Sought to Try the Case in the Media and Attempted to Interfere with the Cy Pres Recipients**

*C.M.D.* Counsel has engaged in a media campaign which appears to be designed to try their case in the press. Among other things, it held a press conference prior to Facebook's initial public offering which seemed designed to undermine the IPO. Arns Decl., ¶23 and Exs. 3, 4 & 5. This is inimical to the best interests of the Class as it could potentially harm

-23-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE Case No. CV 11-01726 LHK

1    Facebook and its ability to pay, and also decrease its willingness to settle. Further such actions

2    could be disruptive to proceedings.

3          In addition, counsel for *C.M.D.* have been contacting the suggested *cy pres* recipients

4    and trying to get them to oppose the Settlement. Arns Decl., ¶27. This reprehensible behavior

5    is not in the best interests of the Class—or a tactic which the Court should countenance.

6    **4.**      **There is No Reason for Intervention Based on Costs to the Parties.**

7          *C.M.D.*'s citation to a case (*Ferrington v. McAfee,* No. 10-cv-01455, 2012 WL 1156399

8    (N.D. Cal. April 6, 2012)) saying that rejection of a settlement increases costs for the parties is

9    disingenuous, as the costs are to be borne by Facebook and by the representatives in *Fraley*, not

10    the Class members. This Court in *Ferrington* was expressing an understanding of the costs

11    associated with denial of approval of a settlement <u>at the final fairness hearing</u> (that is, after

12    preliminary approval and notice goes out) but was not addressing the issue of intervention by

13    absent class members for the purpose of commenting on the settlement at the preliminary

14    approval stage. Nor are the costs of any notice going to be borne by the Class if the Court

15    should not approve the settlement; under the Settlement agreement, Facebook bears the costs of

16    notice, so the Class members in *Fraley* (or *C.M.D.*) are not affected by it. There are no specific

17    costs identified which the intervention of the *C.M.D.* plaintiffs is going to help the Class avoid.

18    **VII.**     **CONCLUSION**

19          For all the foregoing reasons, the Motion To Intervene should be denied.

21    THE ARNS LAW FIRM

23    By:_____
        Robert S. Arns

24         Jonathan E. Davis
        Steven R. Weinmann

25    JONATHAN JAFFE LAW

26

27    By:   /s/ Jonathan M. Jaffe_____

28         JONATHAN M. JAFFE
        Attorneys for Plaintiffs

-24-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE Case No. CV 11-01726 LHK