1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. BROWN (196972) (brownmd@cooley.com)
JEFFREY M. GUTKIN (216083) (gutkinjm@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:     (415) 693-2000
Facsimile:      (415) 693-2222

FACEBOOK, INC.
COLIN S. STRETCH (205144) (colin@fb.com)
SANDEEP N. SOLANKI (244005) (ssolanki@fb.com)
1601 S. California Ave.
Palo Alto, CA 94304
Telephone:     (650) 853-1300
Facsimile:      (650) 543-4800

Attorneys for Defendant FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as guardian ad Litem; individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FACEBOOK, INC, a corporation; and DOES 1-100,

Defendants.

CASE NO. CV 11-01726 LHK (PSG)

**DEFENDANT FACEBOOK, INC.'S OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE TO OPPOSE THE MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Date:             July 12, 2012
Courtroom:      8
Judge:            Hon. Lucy H. Koh
Trial Date:       December 3, 2012

**Table of Contents**

**Page**

I.     INTRODUCTION ....................................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................................... 2

III.   LEGAL STANDARD ................................................................................................. 5

IV.    ARGUMENT .............................................................................................................. 6

    A.   The Proposed Intervenors Are Not Entitled to Intervention as of Right
       Under Fed. R. Civ. P. 24(a) ............................................................................ 6

       1.   The Proposed Intervenors' Motion to Intervene Is Not Timely ................. 6

           a.   The Proposed Intervenors waited until the last possible stage
              of the proceeding to seek to intervene ........................................... 6

           b.   Intervention would cause substantial prejudice to the Parties
              and the putative class ................................................................... 10

           c.   The Proposed Intervenors offer no justification for their
              delay ............................................................................................ 11

       2.   The Disposition of This Case Will Not Impair or Impede the
          Proposed Intervenors' Interests Because They Can Opt Out of
          Settlement .................................................................................................. 12

       3.   The Proposed Intervenors' Interests Are Already Adequately
          Represented by Plaintiffs in this Action .................................................. 14

           a.   Disagreement with the terms of the Settlement does not
              establish inadequate representation of Proposed Intervenors'
              interests or otherwise constitute a basis for intervention ............. 16

           b.   A disagreement over litigation strategy does not establish
              inadequate representation ............................................................. 19

           c.   The Proposed Intervenors previously admitted their own
              inadequacy to represent the class whose rights they now
              claim they are trying to defend ..................................................... 20

    B.   The Proposed Intervenors' Should Not Be Allowed to Permissively
       Intervene Under Fed. R. Civ. P. 24(b) ......................................................... 21

V.     CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alaniz v. Cal. Processors, Inc.*,
   73 F.R.D. 269 (N.D. Cal. 1976) ....................................................................................... 12, 13

*Alaniz v. Tillie Lewis Foods*,
   572 F.2d 657 (9th Cir. 1978) ........................................................................................ 7, 8, 11

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ................................................................................ 5, 12, 14, 15

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ................................................................................................ 6, 21

*Bergman v. Thelen LLP*,
   No. C-08-05322 EDL, 2009 WL 1308019 (N.D. Cal. May 11, 2009) ...................... 12, 15, 19

*Bradley v. Milliken*,
   828 F.2d 1186 (6th Cir. 1987) ................................................................................................... 15

*Chippewa Community v. Babbitt*,
   214 F.3d 941 (7th Cir. 2000) ........................................................................................................ 8

*Cnty. of Orange v. Air California*,
   799 F.2d 535 (9th Cir. 1986) ............................................................................................. 6, 7, 11

*Cohorst v. BRE Props., Inc.*,
   No. 10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 87342 (S.D. Cal. July 19, 2011) ....... 7, 13

*Cohorst v. BRE Props., Inc.*,
   No. 10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 87263 (S.D. Cal. Aug. 5, 2011) ........... 12

*Donnelly v. Glickman*,
   159 F.3d 405 (9th Cir. 1998) ................................................................................................ 6, 21

*Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*
   62 F.3d 1217 (9th Cir. 1995) ................................................................................................ 7, 11

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb. 6, 2012) ................... 18

*Hayman Cash Register Co. v. Sarokin*,
   669 F.2d 162 (3d Cir. 1982) ................................................................................................... 20

*Heartwood, Inc. v. U.S. Forest Serv.*,
   316 F.3d 694 (7th Cir. 2003) ...................................................................................................... 8

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Hofstetter v. Chase Home Finance, LLC,*
No. C 10-01313 WHA, 2011 U.S. Dist. LEXIS 129218 (N.D. Cal. Nov. 8, 2011) ......... 13, 14

4

5

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................................... 11

6

*In re Charles Schwab Corp. Secs. Litig.,*
No. C 08-01510 WHA, 2011 WL 633308 (N.D. Cal. Feb. 11, 2011) .................................. 19

7

8

*In re Google Buzz Privacy Litig.,*
No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ...................................... 16

9

10

*In re IKON Office Solutions Securities Litigation,*
209 F.R.D. 94 (E.D. Pa. 2002) ...................................................................... 17

11

*In re Mex. Money Transfer Litig.,*
267 F.3d 743 (7th Cir. 2001)...................................................................... 17

12

13

*In re: Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011)...................................................................... 18

14

15

*Jenkins v. Missouri,*
78 F.3d 1270 (8th Cir. 1996)...................................................................... 15

16

*Koike v. Starbucks Corp.,*
602 F. Supp. 2d 1158 (N.D. Cal. 2009) .............................................................. 10

17

18

*League of United Latin Am. Citizens v. Wilson,*
131 F.3d 1297 (9th Cir. 1997)....................................................................... passim

19

*Lelsz v. Kavanaugh,*
710 F.2d 1040 (5th Cir. 1983)...................................................................... 16

20

21

*Levell v. Monsanto Research Corp.,*
191 F.R.D. 543 (S.D. Ohio 2000) .................................................................. 17

22

23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
319 F. Supp. 2d 1094 (C.D. Cal. 2003)........................................................... 8, 11, 21

24

25

*Reeves v. Wilkes,*
754 F.2d 965 (11th Cir. 1985).................................................................... 11

26

*Reich v. Walter W. King Plumbing & Heating Contractor, Inc.,*
98 F.3d 147 (4th Cir.1996)...................................................................... 17, 18

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990)............................................................................................. 16

4

5

*United States v. Aerojet General Corp.*,
    606 F.3d 1142 (9th Cir. 2010)............................................................................................... 9

6

*United States v. Alexander*,
    106 F.3d 874 (9th Cir. 1997)................................................................................................ 20

7

8

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004)................................................................................................. 5

9

10

*United States v. Washington*,
    86 F.3d 1499 (9th Cir. 1996)............................................................................................ 6, 9

11

**STATUTES**

12

28 U.S.C.
    § 1404(a) ............................................................................................................................ 5
    § 1407 ................................................................................................................................. 5

13

14

California Business and Professions Code
    § 17200 *et seq.* ................................................................................................................. 2

15

16

California Civil Code
    § 3344 ................................................................................................................................. 2

17

18

**OTHER AUTHORITIES**

19

Federal Rule of Civil Procedure
    24 ............................................................................................................................. passim

20

Civil Local Rule
    3-12 ..................................................................................................................................... 5

21

    6-3 ...................................................................................................................................... 9

22

    7-2(a) .................................................................................................................................. 9

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

1    I.    **INTRODUCTION**

2        The proposed intervenors' (the "Proposed Intervenors") Motion to Intervene to Oppose

3    the Motion for Preliminary Approval and Settlement of the *Fraley v. Facebook* action (the

4    "Motion to Intervene" or "Motion") is not about protecting the interests of Facebook users; nor is

5    it about judicial economy, justice, or any other laudable goal.  It is about attorneys' fees and the

6    protection of what a group of law firms thinks of as a business opportunity.   The Proposed

7    Intervenors' attorneys seek to insert themselves into the *Fraley* action at the 11th hour, after

8    having resolutely opposed every previous chance to become involved in the case for the better

9    part of a year.  They opposed MDL consolidation of their action with *Fraley*, they opposed

10   transfer of their action to this district, and they even refused to take a position on whether their

11   action was related to *Fraley* after it was transferred here.  Now, in order to try to hold up the

12   *Fraley* settlement (the "Settlement") and gain a tactical advantage, they insist that they must be

13   allowed into this action.   Granting their untimely Motion to Intervene will not advance the

14   interests of the *Fraley* Settlement class members.  Instead, it will sacrifice the class's interests in

15   favor of the financial goals of a group of lawyers.  The Motion to Intervene should be denied.

16       Substantively, the Motion to Intervene is based on a series of fictions that are facially

17   insufficient to establish either a right to intervene or any reason for the Court to exercise its

18   discretion in granting permissive intervention.  *First*, the Proposed Intervenors' argue that their

19   motion is timely because it was filed two days after they learned the essential terms of the

20   Settlement.  This claim is both false and irrelevant.  It is false because the Proposed Intervenors,

21   despite what they repeatedly imply in their brief, were informed of the essential terms of the

22   *Fraley* Settlement weeks before they filed the Motion to Intervene.  Their contention is also

23   irrelevant because the inquiry for timeliness turns on when they learned that the *Fraley* action

24   could affect their interests, which occurred almost a year ago, *not* when they learned of the

25   Settlement.  Rather than intervening when they realized their rights could be implicated, as the

26   law requires, the Proposed Intervenors sat on their hands and waited until a settlement had been

27   reached before attempting to interject themselves into this action.  Consequently, their motion is

28   untimely and should be denied on that basis alone.

*Second*, the Proposed Intervenors argue that their interests will be impaired by approval of the Settlement.  This claim inexplicably disregards that the Proposed Intervenors may opt out of the Settlement and thereby fully protect their interests.  Indeed, this opt-out option *precludes* a finding that their interests may be impaired in a manner that would justify intervention.  In reality, the only interest that may be impaired by the Settlement is the interest of the Proposed Intervenors' attorneys in being able to litigate all of their clients' claims as a class action and the corresponding potential for those lawyers to earn greater fees.

Finally, the Proposed Intervenors argue that their interests are not adequately represented in this action.  Not so.  Even putting aside their ability to opt out of the Settlement and protect their rights in their entirety, the Proposed Intervenors' interests are fully aligned with those of the *Fraley* Plaintiffs.  The Proposed Intervenors' claims concerning the adequacy of representation boil down to disagreements with the terms of the Settlement.  Such arguments should be dealt with through objection, not intervention.  Additionally, their claims regarding the inadequacy of the *Fraley* Plaintiffs ring particularly hollow given that, in arguing against transfer of their action to this Court, the Proposed Intervenors conceded that they themselves would not be able to adequately represent the class because transfer to the Northern District of California "would . . . effectively prevent them from adequately supervising the litigation . . . ."  (Opp. to Mot. to Transfer Venue (Dkt. No. 78) in *C.M.D. v. Facebook, Inc.* at 8.)  Their argument that they must be allowed to intervene in *Fraley* in order to the protect the interests of an as-yet uncertified class, thus, is not credible.

It is clear that the Motion to Intervene is not about the *C.M.D.* plaintiffs' (or other Facebook users') interests, but about the interests of their lawyers.  Facebook respectfully submits that the Court should deny the Motion.

## II.  STATEMENT OF FACTS

The *Fraley* action was commenced in California state court on March 11, 2011 and was removed to federal court on April 8, 2011.  Plaintiffs alleged violations of California Civil Code Section 3344 and California Business and Professions Code Section 17200 *et seq.*, as well as unjust enrichment arising out of Facebook's allegedly nonconsensual use of Plaintiffs' names and

1    likenesses for commercial gain.  (*See generally* Second Am. Compl. (Dkt. No. 22) ("SAC").)

2    Over the course of the following year, Plaintiffs and Facebook (the "Parties") engaged in

3    extensive motion practice and comprehensive formal discovery, propounding approximately 500

4    requests for production of documents, 600 requests for admission, and 130 interrogatories.  (*See*

5    Decl. of Robert S. Arns I/S/O Motion for Preliminary Approval of Class Action Settlement (Dkt.

6    No. 184) ("Arns Decl. ISO Approval") ¶¶ 29-44.)  Both parties retained experts, produced expert

7    reports, took and defended depositions, and reviewed and produced thousands of pages (or, in

8    Facebook's case, hundreds of thousands of pages) of documents.  (*Id.*)

9          On March 1, 2012, the Parties engaged in a mediation before the Honorable Edward A.

10   Infante (Ret.).  Although no agreement was reached, settlement discussions continued.  Following

11   Plaintiffs' motion for class certification (filed on March 29, 2012) and Facebook's opposition to

12   class certification (filed on April 19, 2012), the Parties were able to reach agreement on

13   settlement terms, which culminated in the signing of a Settlement Agreement and Release (Dkt.

14   No. 184-1), which was filed with the Court in connection with Plaintiffs' June 14, 2012 Motion

15   for Preliminary Approval of Class Action Settlement (Dkt. No. 181).  The proposed Settlement

16   defines the relevant class as follows:

17              [A]ll persons in the United States who have or have had a Facebook
                account at any time and had their names, nicknames, pseudonyms,
18              profile pictures, photographs, likenesses, or identities displayed in a
                Sponsored Story, at any time on or before the date of entry of the
19              Preliminary Approval Order.

20   (Settlement § 1.2)  And it defines a subclass of minor children as follows:

21              [A]ll persons in the Class who additionally have or have had a
                Facebook account at any time and had their names, nicknames,
22              pseudonyms, profile pictures, photographs, likenesses, or identities
                displayed in a Sponsored Story, while under eighteen (18) years of
23              age, or under any other applicable age of majority, at any time on or
                before the date of entry of the Preliminary Approval Order.
24

25   (*Id.* § 1.11.)

26         The Proposed Intervenors are plaintiffs in a related case, now entitled *C.M.D. v.*

27   *Facebook, Inc.*, No. 12-cv-01216 (N.D. Cal.) ("*C.M.D.*"), which was originally filed on June 1,

28

2011 in the Southern District of Illinois.[1]  The *C.M.D.* plaintiffs allege that Facebook "used and continues to use Plaintiffs' names and likenesses for the purpose of marketing, advertising, selling and soliciting the purchase of goods and services without legal consent, thus misappropriating Plaintiffs' rights to publicity" (First Am. Compl. (Dkt. No. 107) in *C.M.D.* ("*C.M.D.* FAC") ¶ 66.)

> The *C.M.D.* plaintiffs seek to bring their action on behalf of two classes of users:

>> All [F]acebook users, who during a time that [F]acebook records identified them to be under the age of 18, had their name used in connection with a [F]acebook advertisement.

>> All [F]acebook users, who during a time that [F]acebook records identified them to be under the age of 18 and a resident of Ohio, Nevada, Illinois, Florida, Massachusetts, Wisconsin or Indiana, and had their name used in connection with a [F]acebook advertisement.

(*C.M.D.* FAC ¶¶ 33-34.)

On August 1, 2011, Facebook filed a Motion to Transfer with the United States Panel on Multidistrict Litigation (the "MDL Panel"), requesting that *Fraley*, *C.M.D.*, and a number of other similar cases regarding the use of Facebook's users' names and likenesses in alleged advertisements be transferred to a single judge in the Northern District of California for pretrial coordination or consolidation.  (*See* Mot. for Transfer of Related Actions (Dkt. No. 1-1) in *In re Facebook Use of Name and Likeness Litig.*, Case MDL No. 2288 (U.S. MDL Panel) (the "*MDL Action*") at 4-8.)   On August 23, 2011, the Proposed Intervenors opposed MDL transfer and coordination of *C.M.D.* and *Fraley*, contending that (1) "transfer would only complicate matters by adding another procedural interruption to three otherwise manageable and progressing actions," (2) "Plaintiffs' counsel are working cooperatively to coordinate their efforts," and (3) because "[t]he [a]ctions [s]hare [f]ew [c]ommon [q]uestions . . . [c]onsolidating these cases will be no more productive than if the Panel were to centralize every products liability case against Pfizer regardless of the drug at issue or every internet privacy claim without regard to the underlying dispute."   (*See* Pl. E.K.D.'s Resp. in Opp. Facebook's Mot. for Trsfr. and

---

[1] Since filing, named plaintiff E.K.D. moved for voluntary dismissal and other named plaintiffs have been added to the action.

Coordination or Consolidation under 28 U.S.C. § 1407 (Dkt. No. 17) in *MDL Action* at 1, 5.)

Following denial of the MDL transfer motion, Facebook moved the Southern District of Illinois to transfer *C.M.D.* to the Northern District of California pursuant to 28 U.S.C. § 1404(a). The Proposed Intervenors again opposed transfer and the possibility of greater coordination with *Fraley*.  (*See* Opp. to Mot. to Trsfr. (Dkt. No. 78) in *C.M.D.*)  After that motion was granted and the *C.M.D.* action was transferred to this Court (*see* Order, March 8, 2012 (Dkt. No. 93) in *C.M.D.*), Facebook sought the Proposed Intervenors' support for its attempt to have *C.M.D.* and *Fraley* deemed "related" pursuant to Civil Local Rule 3-12.  Again, the Proposed Intervenors refused to take a position.  (Gutkin Decl. I/S/O Facebook's Opp. to Intervention ("Gutkin Decl.") ¶ 3.)  It was only after the public filing of the *Fraley* Settlement—at least ten months after the Proposed Intervenors learned of this action—that the Proposed Intervenors first showed any interest in asserting their rights in *Fraley*.

## III.   LEGAL STANDARD

To intervene as of right: (1) the applicant must have a significant protectable interest in the property or transaction that is the subject of the action; (2) the applicant must be situated such that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest; (3) the applicant's interest must not be adequately represented by the existing parties, and (4) the applicant must timely move to intervene. Fed. R. Civ. P. 24(a); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).  The party seeking to intervene bears the burden of showing that all the requirements for intervention have been met.  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).  Failure to satisfy any one of the four requirements is dispositive.  *See, e.g.*, *Arakaki,* 324 F.3d at 1083 ("Each of these four requirements must be satisfied to support a right to intervene."); *League of United Latin Am. Citizens*, 131 F.3d at 1302 ("[F]our elements, each of which must be demonstrated in order to provide a non-party with a right to intervene . . . .").

Permissive intervention pursuant to Federal Rule of Civil Procedure 24(b) requires an applicant to "prove that it meets three threshold requirements: (1) it shares a common question of

law or fact with the main action, (2) its motion is timely, and (3) the court has an independent basis for jurisdiction . . . ." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).  If these requirements are all met, the court has discretion to permit or deny intervention under Rule 24(b). *Id.*  The Ninth Circuit has stated that "the primary focus of Rule 24(b) is intervention for the purpose of litigating a claim on the merits." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992).

**IV.    ARGUMENT**

**A.    The Proposed Intervenors Are Not Entitled to Intervention as of Right Under Fed. R. Civ. P. 24(a).**

Intervention as of right should be denied because the Proposed Intervenors' motion is untimely, their rights are not jeopardized by the approval of the Settlement, and their interests are already being zealously represented by the *Fraley* plaintiffs.

**1.    The Proposed Intervenors' Motion to Intervene Is Not Timely.**

Timeliness is "the threshold requirement" for intervention as of right.  *League of United Latin Am. Citizens*, 131 F.3d at 1302.  If the Motion to Intervene is not timely, the Court need not reach the remaining elements of Rule 24.  *Id.*  In determining whether a motion for intervention is timely, the Court should consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay."  *Cnty. of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).  In considering these factors, the court "must bear in mind that 'any substantial lapse of time weighs heavily against intervention.'"  *League of United Latin Am. Citizens*, 131 F.3d at 1302 (quoting *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)).  These factors weigh decisively against intervention as of right here.

**a.    The Proposed Intervenors waited until the last possible stage of the proceeding to seek to intervene.**

The Proposed Intervenors brought their Motion less than three weeks before the hearing of Plaintiffs' motion for preliminary approval.  But they have known about the *Fraley* action and the possibility that its outcome could affect their rights since at least August 1, 2011, when Facebook

1    moved the MDL Panel to transfer and coordinate *C.M.D.* (then pending in the Southern District

2    of Illinois) and *Fraley* in the Northern District of California.  (*See* Mot. for Transfer of Related

3    Actions (Dkt. No. 1-1) in *MDL Action* at 4, 5-6, 7-8.)  The Motion is plainly untimely.

4         The law is clear that the timeliness of intervention does not, as the Proposed Intervenors

5    appear to believe, depend upon when a party first learns the terms of a settlement that it contends

6    could affect its rights.  Instead, timeliness is measured from when a putative intervenor first learns

7    of a lawsuit that could affect its rights.  *See, e.g.*, *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659

8    (9th Cir. 1978).  In *Alaniz*, the would-be intervenors sought to intervene following the approval of

9    a class action settlement.  They argued that their motion was timely since they did not know until

10   settlement that the parties were not acting in their best interests.  *Id*. at 659.  The Ninth Circuit

11   rejected this understanding of the timeliness requirement, holding that "the crux of appellants'

12   argument is that they did not know the settlement decree would be to their detriment.  But surely

13   they knew the risks.  To protect their interests, appellants should have joined the negotiations

14   before the suit was settled. . . .  It is too late to reopen this action."  *Id*.; *see also Cohorst v. BRE*

15   *Props., Inc.*, No. 10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 87342, at *17-19 (S.D. Cal. July

16   19, 2011) ("The Special Master cannot accept Roman's position that her Motion to Intervene is

17   timely simply because it was filed shortly after learning of the proposed settlement.").  Similarly,

18   in *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.* the Ninth Circuit

19   cautioned that "parties who delay in attempting to intervene, and who end up doing so only after

20   the original parties have reached an acceptable settlement, should not be able, without good

21   reason, to intervene when their intervention may well cause substantial prejudice to the original

22   parties."  62 F.3d 1217, 1219-20 (9th Cir. 1995) (holding that where "Aetna did not seek to

23   intervene until the day of the Blue Cross-APFU settlement, despite overwhelming evidence that

24   Aetna knew of the litigation since its inception almost two years earlier," the motion was

25   untimely).  In fact, the Ninth Circuit has repeatedly held, in cases such as this one in which a

26   party has long known of the pendency of an action that could affect its rights but has waited to

27   intervene until a settlement was reached, that intervention should be denied.  *See id*.; *Air*

28   *California*, 799 F.2d at 538 ("Although Irvine did intervene before the Stipulated Judgment was

officially approved by the district court, the fact that Irvine waited until after all the parties had come to an agreement after five years of litigation should nevertheless weigh heavily against Irvine."); *Alaniz*, 572 F.2d at 659.[2]

Similarly, the Seventh Circuit has explained the intervention timeliness requirement in this way:

> The relevant inquiry in determining timeliness. . . is not on the time between the settlement and the motion to intervene, but instead is on the time between the [prospective intervenors'] knowledge that the suit could impact their interests and the motion to intervene. Prompt filing of a motion to intervene after the settlement does not indicate timeliness, particularly where there is evidence that the intervenor should have known the suit could impact its interests for some time prior to that settlement. In fact, as we noted in *Sokaogon* [*Chippewa Community v. Babbitt*, 214 F.3d 941 (7th Cir. 2000)], "that the prospective intervenor waited until settlement was imminent strongly suggests that the prospective intervenor was not interested in intervening in the *litigation* but in blocking a settlement between the parties—or at a minimum, this settlement." 214 F.3d at 948 (emphasis in original).

*Heartwood, Inc. v. U.S. Forest Serv.*, 316 F.3d 694, 701 (7th Cir. 2003).

Here, the Proposed Intervenors waited at least ten and a half months to intervene since learning of this litigation. They stayed on the sidelines while the parties in *Fraley* engaged in substantial discovery, motion practice (including all class certification briefing), and expert discovery. Moreover, the Proposed Intervenors did not just pass up chances to assert their rights when Facebook sought MDL transfer and when Facebook sought 1404(a) transfer, they *actively opposed* these opportunities to become involved in *Fraley*. As mentioned, when transfer to this district first occurred, the Proposed Intervenors were even unwilling to take a position as to whether their action and *Fraley* were related at all. (Gutkin Decl. ¶ 3.) It is only now, when the scope of the lawsuit *C.M.D.* counsel may bring (and the corresponding fees they may earn) could be affected by *Fraley*, that the Proposed Intervenors have suddenly asserted intervention is necessary. Therefore, even if the Proposed Intervenors' rights could be impaired by the *Fraley*

---

[2] *See also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1094, 1104-05 (C.D. Cal. 2003) (denying motion to intervene as untimely where cases had been pending for four years and motion to intervene was filed after parties had nearly finalized settlement).

Settlement—which, as discussed below, they cannot—the Proposed Intervenors have only themselves to blame. Their tactical delay in moving to intervene "weighs heavily against intervention." *Washington*, 86 F.3d at 1503.

The Proposed Intervenors argue that their motion is timely because "[t]he essential terms of the proposed settlement in this action were only revealed on June 20, 2012." (Motion to Intervene at 10; *see also id.* at 4.) This claim is irrelevant, as shown by the authorities above. Moreover, this characterization of when the Proposed Intervenors learned of the terms of the proposed Settlement is simply inaccurate. Two weeks before that date, on June 5, 2012, counsel for Facebook provided counsel for the Proposed Intervenors with the full term sheet setting forth the provisions of the *Fraley* Settlement and had in-person settlement talks with them as well. (Gutkin Decl. ¶ 5.) Prior to that date, and no later than May 24, counsel for Facebook had informed the Proposed Intervenors that a settlement in principle of the *Fraley* action had been reached. (*Id.* ¶ 6.) At none of these points, did the Proposed Intervenors assert their rights. Instead, they waited until three weeks before the preliminary approval hearing, and after the submission of the *Fraley* Plaintiffs Motion for Preliminary Approval, to file their Motion to Intervene. The Proposed Intervenors waited so long, in fact, that their June 22 Motion (which notices a hearing for July 12) violates Civil Local Rule 7-2(a), requiring motions to be noticed for hearing "not less than 35 days after service of the motion."[3]

Moreover, the cases Plaintiffs cite to support their claim of timeliness are inapposite. In *United States v. Aerojet General Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010), the parties did not even dispute timeliness. The intervenors had filed objections to a proposed consent decree entered into by the Environmental Protection Agency within a month of publication in the Federal Register and then moved to intervene a month after receiving documents pursuant to a Freedom

---

[3] Inexplicably, rather than filing a motion to shorten time on their untimely Motion to Intervene pursuant to Civil Local Rule 6-3, the Proposed Intervenors have disregarded the Local Rules.

Similarly, the Proposed Intervenors violated the *Standing Order Regarding Case Management in Civil Cases for the San Jose Division* by unilaterally selecting a hearing date for their Motion without conferring with counsel regarding the hearing date. (Standing Order re Case Management in Civil Cases dated April 25, 2011 at 1.) (Gutkin Decl. ¶ 4.)

1    of Information Act request.  In total, only five months elapsed from the filing of the lawsuit to the

2    filing of their motion to intervene.  *Id.  Koike v. Starbucks Corp.*, 602 F. Supp. 2d 1158 (N.D.

3    Cal. 2009), is similarly irrelevant, as it stands for no more than the proposition that "a motion to

4    intervene for the limited purpose of appealing a denial of class certification is timely if it is filed

5    within the time allowed for a party to file an appeal."  *Id.* at 1160.  Here, the Proposed Intervenors

6    do not seek to intervene to appeal denial of class certification.

7         In sum, the Motion to Intervene is untimely by a wide margin, and the delay in bringing it

8    stems from the Proposed Intervenors' knowing and strategic choices.  That they now regret their

9    earlier decisions is no basis to permit their last minute attempt to block the *Fraley* Settlement.[4]

10                    **b.    Intervention would cause substantial prejudice to the Parties
                             and the putative class.**
11

12        The Motion quotes some of the factors courts examine to assess the timeliness of

13   intervention (Motion to Intervene at 10), including "prejudice to other parties."  Despite their

14   acknowledgement, however, the Proposed Intervenors never address this factor in their Motion.

15   Allowing intervention at this juncture could delay the settlement proceedings and needlessly

16   prolong this litigation, substantially prejudicing the Parties in *Fraley*.

17        Facebook and Plaintiffs have spent over sixteen months litigating this action, engaging in

18   extensive discovery and motion practice, and taking part in months of settlement discussions,

19   including a mediation before a highly-experienced mediator.  (Arns Decl. I/S/O Approval ¶¶ 29-

20   44; Decl. of Hon. Edward A. Infante (Ret.) I/S/O Pls' Mot for Prelim. Approval (Dkt. No. 178)

21   ¶ 2.)  Yet it is only after the Parties reached a settlement acceptable to both sides that the

22   Proposed Intervenors have finally moved to intervene—for the express purpose of seeking "an

23   Order denying the Motion for Preliminary Approval." (Motion to Intervene at 3.)   In such

24

---

25   [4] Furthermore, by August 1, 2011, counsel for the Proposed Intervenors were aware of the action
     entitled *David Cohen v. Facebook, Inc.*, No. BC 444482 (Cal. Super. Ct.), that had been pending

26   in California state court.  Plaintiffs in that action sought to bring a class action on behalf of minor
     Facebook users alleging that the use of these users' names and likenesses in advertisements on

27   Facebook violated their rights of publicity.  (See Mot. for Transfer of Related Actions (Dkt. No.
     1-1) in *MDL Action* at 7.)  But the Proposed Intervenors took no action to intervene to protect

28   their interests in that action either.

1    circumstances, courts are particularly inclined against granting motions to intervene due to the

2    obvious prejudice to the existing parties.  Decisions in the Ninth Circuit, among others, make this

3    clear.  *See, e.g.*, *Empire Blue Cross*, 62 F.3d at 1219  (stating that allowing intervention after

4    parties have reached an acceptable settlement "may well cause substantial prejudice to the

5    original parties"); *Nat'l Rural Telecomms.*, 319 F. Supp. 2d at 1104-05 (denying motion to

6    intervene during settlement as untimely where "the overwhelming interest in having these matters

7    settled after four years of litigation, at enormous cost to the parties, is paramount"); *Reeves v.

8    Wilkes*, 754 F.2d 965, 971 (11th Cir. 1985) ("if intervention is allowed, time and effort expended

9    in formulating the settlement . . . will be for naught"); *In re Austrian & German Bank Holocaust

10   Litig.*, 80 F. Supp. 2d 164, 172 (S.D.N.Y. 2000) (where intervention was sought after the parties

11   submitted a settlement for court approval, holding that "intervention for purposes of derailing the

12   Settlement . . . would cause intolerable delay . . . [and] certain prejudice").

13          Furthermore, allowing intervention here would only delay the substantial *cy pres* awards

14   and injunctive relief that the Parties have negotiated.  *See Alaniz*, 572 F.2d at 659 ("[i]n

15   evaluating the second factor, courts have emphasized the seriousness of the prejudice which

16   results when relief from long-standing inequities is delayed").

17                    **c.    The Proposed Intervenors offer no justification for their delay.**

18          Similarly, despite acknowledging it as a factor in the timeliness inquiry (Motion to

19   Intervene at 10), the Proposed Intervenors have offered no explanation for their delay in filing

20   their Motion to Intervene.  While they state that the Preliminary Approval Motion was the first

21   time they learned the essential terms of the deal, as discussed above, that claim is both inaccurate

22   and irrelevant.  By waiting until the Parties had reached a settlement before moving to Intervene

23   (despite having known of the lawsuit for almost a year and the Settlement since at least May 24),

24   the Proposed Intervenors took the risk that the end result of the litigation might not be entirely to

25   their liking.  *See Air California,* 799 F.2d at 539; *Alaniz,* 572 F.2d at 659.  The Proposed

26   Intervenors certainly realized that—like any class action—this litigation might be resolved by

27   mediation or settlement.  Granting their Motion at this stage would only serve to reward the

28   Proposed Intervenors' unjustified tardiness.

Cooley LLP
Attorneys At Law
San Francisco

11.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

For these reasons, the Motion to Intervene is untimely, and the Court need not reach the remaining elements of Rule 24. *League of United Latin Am. Citizens*, 131 F.3d at 1302.

### 2. The Disposition of This Case Will Not Impair or Impede the Proposed Intervenors' Interests Because They Can Opt Out of Settlement.

Even if the Motion were timely, intervention should still be denied because the Proposed Intervenors fail to demonstrate that "disposing of the action may as a practical matter impair or impede [their] ability to protect [their] interest[s] . . . ." Fed. R. Civ. P. 24(a)(2); *Arakaki*, 324 F.3d at 1083. The Proposed Intervenors have the ability to avoid any impairment of their interests by opting out of the settlement. (*See* Settlement § 3.7 (detailing how "Exclusion Requests" shall be made, through which "Class Members (including Minor Subclass Members) may elect not to be part of the Class and not to be bound by this Settlement Agreement.").)

As courts have consistently recognized, where a class action settlement agreement "allows any class member who does not wish to be bound by the terms of the Agreement to exclude themselves by opting out," the "ability to opt out <u>precludes</u> [proposed intervenors] from satisfying the impairment-of-interest test." *Alaniz v. Cal. Processors, Inc.*, 73 F.R.D. 269, 289 (N.D. Cal. 1976) (emphasis added); *see also Cohorst v. BRE Props., Inc.*, No. 10cv2666 JM(BGS), 2011 U.S. Dist. LEXIS 87263, at *18 (S.D. Cal. Aug. 5, 2011) (fact that proposed intervenor "is able to opt-out of the class and pursue her own damages action against Defendants" deemed "[f]atal" to motion to intervene as a matter of right) (emphasis added); *Bergman v. Thelen LLP*, No. C-08-05322 EDL, 2009 WL 1308019, at *2 (N.D. Cal. May 11, 2009) ("The disposition of the action will not, as a practical matter, impede or impair applicants' ability to protect their interest [since the proposed intervenors] may opt out of the class action and assert any claims they wish to pursue against Defendants."). This holds true even where, as here, the proposed intervenors, "as potential members of the class, undoubtedly may claim an interest in the subject matter of the action . . . ." *Alaniz*, 73 F.R.D. at 289.

The Proposed Intervenors assert that, among other defects, the proposed Settlement is "wholly inadequate" because it "releases all claims that the class members, including Plaintiffs-Intervenors, may have against the Defendant, without providing anything of value in exchange for

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

such release." (Motion to Intervene at 12 (citing Settlement §§ 2.2, 4.2).)  But while the Proposed Intervenors may not like the terms of the Settlement or believe that the relief afforded is sufficient, such sentiments have no bearing on whether their interests will be impaired or impeded where they have the ability to opt out.  *Alaniz*, 73 F.R.D. at 289.  Instead, the Proposed Intervenors are free to opt out of the Settlement and pursue their claims and their desired remedies free of any impairment or impediment.  *See Cohorst*, 2011 U.S. Dist. LEXIS 87342, at *12-14 (the courts "have recognized that where the right to object to the settlement at the Fairness hearing or to opt out of the settlement exists, intervention is simply unnecessary to protect a putative class member's interests").  For these reasons, the rights of the *C.M.D.* named plaintiffs are not in peril of being impaired at all.  It is *only* the interests of the *C.M.D.* plaintiffs' lawyers in protecting their ability to obtain the greater fees associated with prosecuting a larger class action that would be impacted by the final approval of a settlement in *Fraley*.  That interest carries no weight here.

The Proposed Intervenors also assert that they are "named plaintiffs in a related class action . . . who believe that final approval of the proposed settlement here could work to bar their claims . . . without benefitting *their class* in any way."  (Motion to Intervene at 1 (emphasis added).)  Without directly admitting it, the Proposed Intervenors appear to be arguing that they may intervene to assert the impairment of interests of *unnamed, putative class members* in their action.  This argument is unsupported by any legal authority (in the Motion or, to Facebook's knowledge, otherwise).  First, like the Proposed Intervenors themselves, the putative members of the *C.M.D.* class have the same opportunity to opt out of the proposed Settlement and to pursue their claims individually, should they choose to do so.  Moreover, no class has been certified in the *C.M.D.* action and, thus, the Proposed Intervenors do not yet represent the interests of absent putative class members.  *See Hofstetter v. Chase Home Finance, LLC*, No. C 10-01313 WHA, 2011 U.S. Dist. LEXIS 129218, at *8-9 (N.D. Cal. Nov. 8, 2011).  In *Hofstetter*, the proposed intervenor, a putative class representative in a separate, as-of-then uncertified class action pending in Florida, sought to intervene in a California class action.  *Id.* at *2, *8.  In assessing the requirements of Rule 24, the court found the proposed intervenor's reference to "the rights and

Cooley LLP
Attorneys At Law
San Francisco

13.

Facebook's Opp. to Motion to Intervene
Case No. 11-CV-01726-LHK (PSG)

1    interests of other consumers" to be inappropriate, as he had "no standing to represent any alleged

2    class from that other action." *Id*. at *8.

3         Like the intervenors in *Hofstetter*, the Proposed Intervenors here cannot rely on their wish

4    to represent the unidentified members of their as-yet uncertified class as a reason to justify

5    intervention.

6         **3.    The Proposed Intervenors' Interests Are Already Adequately**
         **Represented by Plaintiffs in this Action.**

7

8         The Proposed Intervenors also have failed to demonstrate that the *Fraley* Plaintiffs do not

9    adequately represent their interests. The most important factor in determining the adequacy of

10   representation is whether the movant's interests are aligned with the interests of existing parties.

11   *Arakaki*, 324 F.3d at 1086. Thus, "[w]here an applicant for intervention and an existing party

12   'have the same *ultimate objective*, a presumption of adequacy of representation arises.'" *League*

13   *of United Latin Am. Citizens*, 131 F.3d at 1305 (citations omitted) (emphasis in original). If the

14   interests of the applicant and an existing party are "identical," a strong presumption of adequacy

15   arises and the applicant must make a "compelling showing" of inadequate representation.

16   *Arakaki*, 324 F.3d at 1086 ("If the applicant's interest is *identical* to that of one of the present

17   parties, a *compelling* showing should be required to demonstrate inadequate representation.")

18   (emphasis added).

19        Here, the Proposed Intervenors' objectives are aligned with those of the *Fraley* Plaintiffs.

20   As they themselves state, "[l]ike the *Fraley* action, *C.M.D.* complains of Facebook's use of the

21   names and likenesses of its users in advertisements without consent." (Motion to Intervene at 5;

22   *see also id.* at 4.) Both the Proposed Intervenors and the *Fraley* Plaintiffs allege that their names

23   and likenesses were used in Sponsored Stories (*see*, *e.g.*, *C.M.D.* FAC ¶¶ 1, 2; Motion to

24   Intervene at 11; *Fraley* SAC ¶¶ 3, 26), and both claim that such use violates their right of

25   publicity.[5] (*See*, *e.g.*, *C.M.D.* FAC ¶ 1; *Fraley* SAC ¶¶ 3, 108.) Both seek the same relief (i) a

26

27   _____
     [5] Interestingly, the *C.M.D.* plaintiffs' Original Complaint only mentioned the "right of publicity"
     once in passing as part of a string citation. However, after the *Fraley* Plaintiffs survived a motion

28   to dismiss with their "right of publicity" allegations (*see generally* Order Granting in Part and
     Denying in Part Def.'s Mot. to Dismiss, Dkt. No. 74), the *C.M.D.* plaintiffs amended their

1  finding that Facebook has used their names and profile photographs without their consent, (ii)

2  injunctive relief, (iii) statutory damages, and (iv) attorneys' fees.  (*See C.M.D.* FAC at 13 (Prayer

3  for Relief); *Fraley* SAC at 26-27 (Prayer for Relief).)   Because the ultimate objectives of the

4  parties are aligned, a presumption of adequacy of representation exists.  *League of United Latin*

5  *Am. Citizens*, 131 F.3d at 1305.  Indeed, where proposed intervenors are members of the class in

6  the target litigation, they are presumed to be adequately represented in that action.  *Jenkins v.*

7  *Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996) ("There is a presumption of adequate representation

8  when the persons attempting to intervene are members of a class already involved in the litigation

9  or are intervening only to protect the interests of class members.") (citing *Bradley v. Milliken*, 828

10 F.2d 1186, 1192 (6th Cir. 1987)); *Bergman*, 2009 WL 1308019, at *3 (holding that intervenors

11 were adequately represented as class members).

12      While the Proposed Intervenors contend that their putative class is broader than the *Fraley*

13 class and therefore their interests are not aligned (Motion to Intervene at 5), the breadth of the

14 *C.M.D.* class is not relevant to the adequacy inquiry.  To the extent that the *C.M.D.* putative class

15 is broader than the *Fraley* Settlement class, such *C.M.D.* putative class members' claims will not

16 be affected by the Settlement.  (*See* Settlement § 4.2 (Class Members' Release).)   On the other

17 hand, those *C.M.D.* putative class members who *are* in the *Fraley* putative class—and who would

18 therefore be bound by the *Fraley* Settlement—have *identical* interests (since they are literally the

19 same people).  As such, a strong presumption of adequacy arises and the applicant must make a

20 "compelling showing" of inadequate representation.  *Arakaki*, 324 F.3d at 1086.  The Proposed

21 Intervenors have made no showing of inadequate representation, let alone the "compelling

22 showing" that is required here.

23      At their core, the Proposed Intervenors' arguments for why their interests would be

24 inadequately represented in this action are simply a disagreement with the terms of settlement and

25 with the litigation strategy employed by the *Fraley* Plaintiffs—neither of which is a valid reason

26 to allow intervention.

27

28 complaint.  In the *C.M.D.* First Amended Complaint, the term "right of publicity" shows up in the
very first paragraph and repeatedly throughout.  (*C.M.D.* FAC ¶¶ 1, 31, 39(e), 46, 56, 62, 66.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

a.     **Disagreement with the terms of the Settlement does not establish inadequate representation of Proposed Intervenors' interests or otherwise constitute a basis for intervention.**

The Proposed Intervenors take issue with the terms of the Settlement, arguing that the scope of the release is inappropriate and that the Settlement does not provide "anything of value in exchange for the release . . . ."  (Motion to Intervene at 14-15.)  Both assertions are baseless and beside the point.  The Proposed Intervenors cite no authority for the conclusion that simply not agreeing with the terms of a proposed settlement establishes that they have the right to intervene or that their interests will not be adequately represented.  Indeed, disagreement with the terms of a settlement is the very reason that settlement procedures are structured to allow individuals to opt out and pursue their own claims and to allow those who are not motivated to pursue their own claims to object to the Settlement.  In such a case, objection (rather than intervention) is the preferred procedure.  *See Lelsz v. Kavanaugh*, 710 F.2d 1040, 1046 (5th Cir. 1983) (holding that "proposed intervenors who are also class members may object to any settlement that in their view jeopardizes their interests").

Furthermore, the Proposed Intervenors' arguments about the terms of the Settlement are incorrect.  *First*, contrary to their claims that the proposed Settlement offers "no value" to the class, the Settlement provides for substantial injunctive relief that directly addresses the concerns raised by the *Fraley* and *C.M.D.* plaintiffs and $10 million to *cy pres* recipients who are well positioned to advance the interests of the class.[6]  (*See* Facebook's Br. I/S/O Pls.' Mot. for Prelim. Approval of Settlement (Dkt No. 188-3) ("Facebook's Brief ISO Preliminary Approval") at 19-20.)  The Proposed Intervenors cite a full page of cases to support their claim that this proposed Settlement deserves "special scrutiny" (Motion to Intervene at 2), but *none* of the cases they cite deal with intervention at all, and none of them establish that any special scrutiny is required here.  Only one of the cases the Proposed Intervenors rely upon involved a *cy pres* fund, and in that case

---

[6] Such *cy pres* funds are particularly appropriate where, as here, there are a large number of class members and individual recovery would be modest and difficult to administer and distribute.  *See, e.g.*, *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990); *In re Google Buzz Privacy Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *1, *4 (N.D. Cal. June 2, 2011).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

the Seventh Circuit *affirmed the district court's approval of a final settlement agreement*. *In re Mex. Money Transfer Litig.,* 267 F.3d 743, 749 (7th Cir. 2001) ("Nothing in this transaction smacks of fraud, so the settlement cannot be attacked as too low."). The settlement in *Mex. Money* provided for a *cy pres* fund of $4.6 million to public interest organizations related to the plaintiffs, and attorneys' fees of $10 million. *Id.* at 746. The court concluded that the "relief to which the defendants have agreed . . . is not an outcome to be sneered at." *Id.* at 748-49. Similarly, the court approved of the settlement in *In re IKON Office Solutions Securities Litigation*, 209 F.R.D. 94, 99 (E.D. Pa. 2002), another case cited by the Proposed Intervenors. The settlement in *IKON* provided only for injunctive relief, but the court approved it, stating that non-cash settlements are "not by any means [] unprecedented . . . ." *Id.* at 109.

*Second*, the Proposed Intervenors wrongly claim that the injunctive relief contemplated by the Settlement is of "no value" to members of the class because it only requires Facebook to do what it already is required to do by law. (*See* Motion to Intervene at 15-16; *see also id.* at 2.) But the Proposed Intervenors fail to identify any law that requires the proposed relief Facebook has agreed to provide under the Settlement. As explained in Facebook's Brief ISO of Preliminary Approval, the proposed Settlement offers substantial value to the class, including (among other things) enhanced notice and tools to control whether their Likes and activities are rebroadcast to their friends in a sponsored context, (*See* Facebook's Br. ISO Preliminary Approval at 16-21.) The Proposed Intervenors do not and cannot explain how this is already required by law, despite having the burden of proof.[7]

---

[7] The Proposed Intervenors' citation of *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 544-45 (S.D. Ohio 2000), for the proposition that "a defendant's promise to do something which the law already requires 'is not a valuable benefit'" (Motion to Intervene at 2) is particularly off base, because, while the *Levell* court noted that "[o]rdinarily, a defendant's promise to do that which the law already requires is not a valuable benefit," it went on to find that the settlement's requirement that defendant comply with federal law <u>was</u> "of value" under the facts of the case. 191 F.R.D. at 554-55. Also perplexing is the Proposed Intervenors' citation of *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150 (4th Cir.1996), for the proposition that a "defendant not the 'prevailing party' under a settlement that merely obligated plaintiff to do that which the law already required." (Motion to Intervene at 2.) The court in *Reich* actually held the <u>opposite</u> of the Proposed Intervenors' characterization—that the defendant *was* the prevailing party. *See Reich*, 98 F.3d at 151 ("We conclude that the district court did not abuse its discretion in finding King Plumbing to be the prevailing party in the settlement.") Only the lone dissenter

17.

Finally, the Proposed Intervenors cite "the failed *Bluetooth* settlement" in an effort to demonstrate the inadequacy of the *Fraley* Plaintiffs' representatives. They argue that the Settlement here "provid[es] for more than ten times as much in attorneys' fees than what warranted rejection in *Bluetooth*." (Motion to Intervene at 8-9 (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)).) As an initial matter, the Proposed Intervenors misrepresent the terms of the Settlement, since the Settlement provides only for attorneys' fees if approved by the Court and only in an amount approved by the Court (up to $10 million). (*See* Settlement § 2.3.) Moreover, *Bluetooth* does not stand for the proposition that a class member who dislikes the terms of a proposed settlement agreement may intervene in the underlying action rather than voice his or her complaints during the objection process. Rather, in *Bluetooth*, the Ninth Circuit vacated the orders of a district court approving a class action settlement agreement and awarding attorneys' fees pursuant to a challenge brought by objecting class members. Also, contrary to the Proposed Intervenors' suggestion, the Ninth Circuit did not deem the terms of the *Bluetooth* settlement agreement——including the award of attorneys' fees—to be *per se* unreasonable, but instead found the district court's inquiries and findings to be insufficient to assess the reasonableness of the award. *See id.* at 943, 949-50 (remanding, but noting that the district court might ultimately re-approve its original orders). Here, this Court will review the terms of the proposed Settlement, taking into account the positions and arguments of the Parties and any objectors—a process in which the Proposed Intervenors are free to take part. The terms of the Settlement here also are not analogous to the disproportionate award of attorneys' fees in *Bluetooth*, where the district court approved a settlement agreement providing for an award of up to $800,000 in attorneys' fees that dwarfed the $100,000 *cy pres* payment. (*Compare* Settlement §§ 2.2, 2.3; *with Bluetooth*, 654 F.3d at 938.) Here, the value of the settlement is several times larger than any attorneys' fees that the Court may award under the Settlement Agreement (*See* Facebook's Brief ISO Preliminary Approval at 21 n.2.) *Cf. Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 U.S. Dist. LEXIS 13797, at *16 (N.D. Cal. Feb. 6, 2012) (approving

---

stated that the defendant should not have been the prevailing party. *See id.* at 153 (Hall, J., dissenting).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

settlement agreement where multi-million dollar award of attorneys fees was "on par with the money to the class and the *cy pres* combined (roughly 1:1)").

### b. A disagreement over litigation strategy does not establish inadequate representation.

The Proposed Intervenors also disagree with the litigation strategy adopted by the representative Plaintiffs in this action. (*See* Motion to Intervene at 5-8 (outlining differing approaches to "Facebook's principle defense"), 13-15 (disagreeing with settlement strategy and terms), 15-16 (disagreeing with the *Fraley* Plaintiffs' approach to injunctive relief); 15-16 (arguing that the *Fraley* parties' approach to consent differs from the Proposed Intervenors' attack of the SRR as void).) But a disagreement over litigation strategy does not establish inadequate representation of a proposed intervenor's interests. *See League of United Latin Am. Citizens*, 131 F.3d at 1306 ("When a proposed intervenor has not alleged any substantive disagreement between it and the existing parties to the suit, and instead has vested its claim for intervention entirely upon a disagreement over litigation strategy or legal tactics, courts have been hesitant to accord the applicant full-party status."); *see also Bergman*, 2009 WL 1308019, at *3 (proposed intervenors were adequately represented despite class representatives' decision not to bring cause of action); *In re Charles Schwab Corp. Secs. Litig.*, No. C 08-01510 WHA, 2011 WL 633308, at *4 (N.D. Cal. Feb. 11, 2011) (arguments that certification and approval orders were wrongly entered have "nothing to do with whether there has been adequate representation, which there has been," since "[i]n the best case [they] present[] a disagreement over litigation strategy with class counsel.").

Furthermore, not only is the Proposed Intervenors' argument that Facebook's Statement of Rights and Responsibilities is void (*see* Motion to Intervene at 5-8, 15-16) a mere disagreement over litigation strategy and therefore irrelevant to intervention, it is also legally baseless. As described more fully in Facebook's motion to dismiss briefing in *C.M.D.* (*see* Dkt. No. 109 in *C.M.D.* at 10-12), the *C.M.D.* plaintiffs' claim that the entire SRR is void was already argued to, and rejected by, Judge G. Patrick Murphy of the Southern District of Illinois. The Proposed Intervenors' position is, accordingly, barred by the law-of-the-case doctrine and, in any event, is

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

1   inconsistent with California law, which applies to all putative class members.[8]  (*See id.*; *see also*

2   Transfer Order (Dkt. No. 93) in *C.M.D.* at 8); *United States v. Alexander*, 106 F.3d 874, 876 (9th

3   Cir. 1997) ("a court is generally precluded from reconsidering an issue that has already been

4   decided by the same court, or a higher court in the identical case." (citation omitted)); *Hayman*

5   *Cash Register Co. v. Sarokin*, 669 F.2d 162, 169 (3d Cir. 1982) ("Adherence to law of the case

6   principles is even more important . . . where the transferor judge and the transferee judge are not

7   members of the same court.").

8                            c.      **The Proposed Intervenors previously admitted their own**
                                     **inadequacy to represent the class whose rights they now claim**
9                                    **they are trying to defend.**

10          Finally, the Proposed Intervenors' arguments about their interests not being adequately

11  represented by the named plaintiffs in *Fraley* are particularly weak given that, in arguing against

12  transfer of their action to this Court, they conceded that "[t]ransfer of this action to California

13  would . . . *effectively prevent them from adequately supervising the litigation*" since "California

14  counsel would be required [and] the guardians would be unable to attend pre-trial hearings and

15  would be burdened to attend any trial."  (Opp. to Mot. to Transfer Venue (Dkt. No. 78) in *C.M.D.*

16  at 8 (emphasis added).)    In fact, the guardians of the named plaintiffs and would-be class

17  representatives at the time actually submitted sworn affidavits stating that they do not have the

18  time or resources to supervise litigation in the Northern District of California.  (*See* Affidavit. of

19  Jennifer E. DeYong (Dkt. No. 78-1) and Melissa K. Dawes (Dkt. No. 78-2) in *C.M.D.*)  Their

20  argument that they should be allowed to intervene here so that absent class members' interests are

21  adequately protected is thus contradicted not only by the facts and law, but by their own

22  admissions in prior court filings.

---

23  [8] Strangely, the Proposed Intervenors state in their June 22 Motion to Intervene that "Facebook'
    [sic] Motion to Dismiss the *C.M.D.* Action is now fully briefed and pending before the Court."
24  (Motion to Intervene at 4.)  This statement, of course, overlooks the fact that it was not until June
    29 that Facebook filed its reply brief in support of its motion to dismiss.  (*See* Dkt. No. 119 in
25  *C.M.D.*)

26  While the Proposed Intervenors spend much of their Motion to Intervene arguing the merits of
    their opposition to Facebook's motion to dismiss (*see, e.g.*, Motion to Intervene at 4-8), such
27  arguments are not germane to their argument for intervention and, in any case, are addressed in
    more detail in Facebook's memoranda in support of its motion to dismiss.
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)

1    For the foregoing reasons, the Proposed Intervenors have failed to meet their burden under

2    Rule 24 to demonstrate that they should be allowed to intervene in this case.

3         **B.    The Proposed Intervenors' Should Not Be Allowed to Permissively Intervene
                  Under Fed. R. Civ. P. 24(b).**

4

5         Permissive intervention should also be denied here.  For the reasons discussed in Section

6    IV.A.1 above, the Proposed Intervenors' Motion is highly untimely.  *See Donnelly*, 159 F.3d 405,

7    412 (before a court may exercise its discretion in allowing permissive intervention, the threshold

8    factor of timeliness must be satisfied); *Nat'l Rural Telecomms.*, 319 F. Supp. 2d at 1104-05

9    (denying permissive intervention on timeliness grounds where the motion to intervene was filed

10   after four years of litigation and while the parties were engaged in settlement discussions, since

11   "the overwhelming interest in having these matters settled . . . at enormous cost to the parties, is

12   paramount).

13        Additionally, even if the Proposed Intervenors had proven the threshold requirements, the

14   Court should still exercise its discretion to deny intervention.  The Proposed Intervenors are not

15   seeking to intervene for the purpose of litigating a claim on the merits, *see Beckman Indus.*, 966

16   F.2d at 472 ("the primary focus of Rule 24(b) is intervention for the purpose of litigating a claim

17   on the merits"), but are instead seeking to intervene solely to hold up the Settlement of this action

18   in order to protect their counsel's pecuniary interests.  The Proposed Intervenors will have the

19   ability to either opt out of the Settlement altogether or, if they no longer wish to pursue their

20   claims independently, to offer their views on the Settlement by filing a valid objection.

21   **V.    CONCLUSION**

22        For the foregoing reasons, the Court should deny the Motion to Intervene.

23

24   Dated: July 6, 2012                          Respectfully Submitted,

25                                                COOLEY LLP

26                                                /s/ Michael G. Rhodes
                                                  Michael G. Rhodes (116127)

27

28                                                Attorneys for Defendant FACEBOOK, INC.

1275886/SF

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FACEBOOK'S OPP. TO MOTION TO INTERVENE
CASE NO. 11-CV-01726-LHK (PSG)**