KOREIN TILLERY
Steven A. Katz
skatz@koreintillery.com
Aaron M. Zigler
azigler@koreintillery.com
One U.S. Bank Plaza
505 N. 7th St., Suite 3600
St. Louis, MO 63101-1625
Tel: (314) 241-4844 Fax: (314) 241-3525

[Additional Counsel Appear on Signature Page]

Attorneys for Movants.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,

Plaintiffs,

v.

FACEBOOK, INC.,

Defendant.

Case No. 11-CV-1726 LKH (PSG)

REPLY IN SUPPORT OF INTERVENTION TO OPPOSE THE MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Date: July 12, 2012

Courtroom: 8

Judge: Hon. Lucy H. Koh

Trial Date: December 3, 2012

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II ARGUMENT .......... 1

A. **The Application is Timely** .......... 1

B. **The Proposed Settlement is Indistinguishable from *Bluetooth*.** .......... 2

C. **Movants and their Counsel are Qualified and Have Acted in the Best Interests of the Putative Class.** .......... 6

III. CONCLUSION .......... 9

KOREIN TILLERY
*Attorneys at Law*

# TABLE OF AUTHORITIES

**CASES**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) .......... 5

*Atkins v. Praxair Inc.*,
182 F. App'x 724 (9th Cir. 2006) .......... 5

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) .......... 8

*Consol. Edison, Inc. v. Ne. Utils.*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) .......... 6

*Dunn v. Carey*,
808 F.2d 555 (7th Cir. 1986) .......... 5

*G. Heileman Brewing Co. v. Joseph Oat Corp.*,
871 F.2d 648 (7th Cir. 1989) (Easterbrook, J., dissenting) .......... 4

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 2, 3, 4

*In re Bluetooth Headset Products Liab. Litig.*,
654F.3d 935, 944 (9th Cir. 2011) .......... 4

*In re: Bluetooth Headset Products Liability Litig.*,
07-ml-1822, ECF No. 61 (C.D. Cal. Jan. 16, 2009) at ¶ 3.6 .......... 3

*Karvaly v. eBay, Inc.*,
245 F.R.D. 71 (E.D.N.Y. 2007) .......... 6

*Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*,
748 U.S. 501 (1986) .......... 4

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003) .......... 6

*Officers for Justice v. Civil Service Comm'n*,
934 F.2d 1092 (9th Cir. 1991) .......... 1

KOREIN TILLERY
*Attorneys at Law*

*Pac. Car & Foundry Co. v. Pence*,
403 F.2d 949 (9th Cir. 1968)........................................................................................ 8

*Research Automation, Inc. v. Schrader-Bridgeport Int'l*,
626 F.3d 973 (7th Cir. 2010)........................................................................................ 8

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ..................................................................................... 2

*Sunshine Beauty Supplies, Inc. v. U.S. Dist. Court*,
872 F.2d 310 (9th Cir. 1989)........................................................................................ 8

*United States v. Oregon*,
745 F. 2d 550 (9th Cir. 1984)....................................................................................... 1

*United States v. Sardie*,
191 F. Supp. 2d 1128 (C.D. Cal. 2000) ....................................................................... 6

*Varsic v. U.S. Dist. Court for Cent. Dist. of Cal.*,
607 F.2d 245 (9th Cir. 1979)........................................................................................ 8

*Wyant v. City of Lynnwood*,
621 F. Supp. 2d 1108 (W.D. Wash. 2008)..................................................................... 8

KOREIN TILLERY
*Attorneys at Law*

KOREIN TILLERY
*Attorneys at Law*

## I. INTRODUCTION

Movants are plaintiffs represented by experienced counsel in an overlapping class action who seek to intervene to provide the Court with their view of litigation. None of this can be reasonably disputed. Instead, in opposition to the Motion to Intervene, both Facebook and the *Fraley* plaintiffs offer only noise to distract from the special scrutiny required of this settlement and the FJC's sensible suggestion to include counsel of overlapping actions as a hedge against the lack of adversarial posture of the parties. There is simply no reason to deny intervention here. Movants have not and will not seek to delay the proceedings. Instead they offer to provide the necessary perspective that the parties only wish to squelch.

## II. ARGUMENT

### A. The Application is Timely

In instances where, as here, movants move to intervene shortly after the litigation "change[s] circumstance," any perceived delay is justified, and timeliness is satisfied. *See, e.g.*, *United States v. Oregon*, 745 F. 2d 550, 552 (9th Cir. 1984). ("changed circumstance—the possibility of new and expanded negotiations—[are] a major reason for its attempted intervention at this time. This change of circumstance, which suggests that the litigation is entering a new stage, indicates that the stage of the proceeding and reason for the delay are factors which militate in favor of granting the application."). Moreover, in analyzing timeliness, courts focus "on the date the person attempting to intervene should have been aware his 'interests ***would no longer be protected adequately*** by the parties,' rather than the date the person learned of the litigation." *Officers for Justice v. Civil Service Comm'n*, 934 F.2d 1092, 1095 (9th Cir. 1991) (*quoting Legal Aid Soc'y v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980)).

Here, Movants promptly moved for intervention shortly after a "change in circumstance" in the litigation—the proposed settlement deal reached between the *Fraley* plaintiffs and Facebook. Prior to this, even though Movants were aware of the pending *Fraley* action, they were unaware that the *Fraley* plaintiffs would enter into a settlement that would release the *C.M.D.* claims without consideration. In fact, *Fraley*'s counsel had repeatedly assured them that they would not. (*See* Declaration of Aaron Zigler)

Despite best efforts by the Movants to obtain the essential terms of the proposed settlement in this action after learning of it on May 21, 2012 (ECF No. 163), the essential terms of the proposed settlement in this action were only revealed on June 20, 2012, when the plaintiffs filed redacted versions of the Motion for Preliminary Approval and supporting documents. (ECF Nos. 182-84.) Prior to this time, none of the settlement's key terms were publicly available, and only limited information was provided to the Movants under strict confidentiality provisions (which required acknowledgement of the settlement terms as "trade secret," and did not allow Movants to discuss the terms in court filings). (*See* Declaration of Aaron Zigler) Indeed, an important provision of the settlement—the release of claims—changed between what was provided to Movants originally and what was eventually filed as part of the settlement agreement. (*See* Declaration of Aaron Zigler). Any contention that Movants were aware of the "essential terms" of the settlement "weeks" before the settlement papers were filed (ECF 198 at 1, 9) is incorrect. The sealed settlement documents did not allow Movants to determine that their interests would no longer be protected adequately by the parties until recently. *See Smith v. Marsh*, 194 F.3d 1045,1052 (9th Cir. 1999) (if the intervenors were able to substantiate their claim that they "were definitively able to determine that their interests were inadequately represented only after reviewing closely the briefs filed and the [district court's] April 22, 1998 decision on the [Law School's] motion for summary judgment. . . . Such a claim, if true, could constitute a proper explanation for delay."). (*See* Declaration of Aaron Zigler) And accordingly any claim of unreasonable delay on the part of Movants justifying denial of their motion is without merit.

**B. The Proposed Settlement is Indistinguishable from *Bluetooth*.**

Likewise, the parties' attempt to distinguish this settlement are equally unavailing. The proposed settlement before the Court provides for no money to the class while allowing counsel clear-sailing for an award of up-to $10 million in attorneys' fees; any reduction of which will not benefit the class. (Settlement Agreement, ECF No. 184-1 at ¶ 2.3, 2.5). Thus, just like the failed *Bluetooth* settlement, the pre-certification settlement agreement here includes all three significant warning signs "that counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations" that caused the Ninth Circuit to reject the Bluetooth set-

KOREIN TILLERY
*Attorneys at Law*

tlement last August. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

"Confronted with these multiple indicia of possible implicit collusion, the district court ha[s] a special 'obligat[ion] to assure itself that the fees awarded in the agreement [a]re not unreasonably high,' for if they [a]re, 'the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained.'" *Id.* at 947 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964-65 (9th Cir. 2003)). Thus, in *Bluetooth*, the court found an attorney's fee award of $800,000 to be so disproportionate so as to raise an inference of unfairness, *id.* at 939, requiring the settlement to "be supported by a clear explanation of why the disproportionate fee [wa]s justified and d[id] not betray the class's interests." *Id.* at 949.

In an effort to distinguish this settlement from *Bluetooth*, Facebook highlights the presence of the mediator and argues that *Bluetooth* recognized that mediated settlements favor a finding of non-collusiveness. (Br. in Sup. of Prelim. Approval., ECF No. 188-3 at 21). The presence of a mediator, however, was not enough to save the *Bluetooth* settlement in light of the same infirmities present here. As the Court held: "the mere presence of a neutral mediator, though a factor weighing in favor of a finding of non-collusiveness, is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement." *Id.* at 948. "[T]he Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Id.*

The parties' other attempts to distinguish *Bluetooth* are equally inapt. For example, Facebook also argues that as it has not agreed to a fee award in any particular amount sets this settlement apart. However, comparison of the actual agreements show the settlements to be indistinguishable in this regard. *Compare* Class Action Settlement Agreement, *In re: Bluetooth Headset Products Liability Litig.*, 07-ml-1822, ECF No. 61 (C.D. Cal. Jan. 16, 2009) at ¶ 3.6 ("Defendants will pay Class Counsel attorney's fees in an amount to be approved by the Court, not to exceed $800,000 for Class Counsel.") with Settlement Agreement and Release, ¶ 2.3 ("Facebook agrees to pay the attorneys' fees approved by the Court up to $10 million (total) and costs approved by the Court up

KOREIN TILLERY
*Attorneys at Law*

to $300,000 (total) to Class Counsel...").

The *Fraley* Plaintiffs, on the other hand, argue the existence of *cy pres* awards and injunctive relief distinguish this case from *Bluetooth*. But the *Bluetooth* settlement also provided for *cy pres* awards and injunctive relief:

> In exchange for plaintiffs' general release and waiver of all asserted claims defendants agreed to***: (1) post acoustic safety information on their respective websites and in their product manuals and/or packaging for new Bluetooth headsets; (2) pay a total of $100,000 in cy pres awards to be distributed among four non-profit organizations dedicated to the prevention of hearing loss;*** (3) pay notice costs ... (4) pay documented costs to class counsel ...; (5) pay attorneys' fees ... not to exceed $800,000; and (6) pay an incentive award ...not to exceed $12,000 ....

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 939-40 (9th Cir. 2011) (emphasis added). Despite this, the Ninth Circuit nevertheless found the district court abused its discretion in approving the settlement without "a clear explanation of why the disproportionate fee is justified and does not betray the class's interests. *Id.* at 949.

Moreover, contrary to the parties' arguments, the purported cost to Facebook to implement the agreed injunctive relief, cannot serve as a justification of fairness. (Decl. of F. Torres Regarding the Value of Injunctive Relief, ECF No. 182). As *Bluetooth* court observed "[T]he standard [under Rule 23] is not how much money a company spends on purported benefits, but the value of those benefits to the class." *In re Bluetooth Headset Products Liab. Litig.*,654 F.3d 935, 944 (9th Cir. 2011) (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)). Despite this unequivocal statement, the parties only attempt to value the injunctive relief is based upon a superficial estimation on the potential cost to Facebook. (Decl. of F. Torres Regarding the Value of Injunctive Relief, ECF No. 182). This evidentiary issue aside, injunctive relief that simply promises to *almost* follow the law is both improper and of no value.

"[S]ettlements must be negotiated within the framework of existing rules; the desire to get a case over and done with does not justify modifying generally applicable norms." *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 664 (7th Cir. 1989) (Easterbrook, J., dissenting); *See also Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*, 748 U.S. 501, 526 (1986) (parties to settlement may not "agree to take action that conflicts with or violates the statute upon

KOREIN TILLERY
*Attorneys at Law*

which the complaint was based"); *Dunn v. Carey*, 808 F.2d 555, 560 (7th Cir. 1986) (consent decrees, and hence settlement may be more attractive if parties agree not to follow state law, but the value of settlement does not authorize that). The injunctive relief proposed here is based upon the flawed and widely discredited concept—'Notice and Consent'—that has been rejected by the Federal Trade Commission (FTC) and other expert agencies as worthless. Indeed, the proposed relief falls short of providing a mechanism that comports with the basis of the underlying lawsuit and Cal. Civ. § 3344 requirement of prior parental consent yet while at the same time absolving Facebook of all potential liability under the Act.

In fact, as another district courts in this Circuit have held, even a full measure of injunctive relief that would requiring nothing more than compliance with the law is of no value to the class.

> The ability of the Settlement's injunctive relief to redeem an unsatisfactory settlement is even further crippled by the possibility that these changes to [defendant's] procedures are inevitable. To the extent [defendant's] procedures may actually violate the FCRA, these injunctive relief provisions are of no value. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 544-45 (S.D.Ohio 2000) ("[A] defendant's promise to do that which the law already requires is not a valuable benefit.") (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir.1981) (finding little benefit to class members from settlement agreement provisions that obligated defendant "to do what the law generally requires"); *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150 (4th Cir.1996) (defendant not the "prevailing party" under a settlement that merely obligated plaintiff to do that which the law already required); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 U.S. Dist LEXIS 3507 (E.D.La.1995) ("The proposed settlement ... merely provides plaintiffs with information to which they were already entitled and confers no additional value in consideration for release of plaintiffs' claims.")).

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 395-96 (C.D. Cal. 2007). Facebook's promise for half-measures does nothing to redress the settlements facial inadequacy.

Moreover, this lack of consideration makes the settlment's release even more problematic. Contrary to the *Fraley* Plaintiffs' argument, it is "not limited" to the sponsored stories claims pled here. *See, e.g., Atkins v. Praxair Inc.*, 182 F. App'x 724, 727 (9th Cir. 2006) (finding released from "any and all claims" which might have arisen out of or in connection with employment and included, but was not limited to, claims related to their wages or hours of work released "any claims which could have been brought up until the present."); *United States v. Sardie*, 191 F.

KOREIN TILLERY
*Attorneys at Law*

Supp. 2d 1128, 1134 (C.D. Cal. 2000) ("The phrase 'including, but not limited to' plainly suggests that future claims not related to the state action are also subject to the Release. ... it is hard to imagine a more clearly worded statement of the parties' intentions with regard to unknown claims."). Accordingly, the settlement's release would bar relitigation of not only claims concerning Sponsored Stories but also the *C.M.D.* Plaintiffs' separate claims. A fact well understood by Facebook. (*See* Br. in Sup. of Prelim. Approval, ECF No. 188-3 at 24).

Nevertheless, the *Fraley* Plaintiffs maintain that they do not intend the release to operate as a bar to the *C.M.D.* claims. (Mem. In Opp'n to Mot. to Intevene, ECF No. 191 at 11). But *Fraley*'s intent is immaterial. Because the settlement requires that the release is incorporated in the final judgment, (Settlement Agreement ¶ 3.8(e)), absent class members will be bound by the actual language of the decree excusive of extrinsic evidence in future litigation. *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003).

Courts must take "special care" when a class action settlement purports to release claims "not asserted within [the] class action or not shared alike by all class members." *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 651 (S.D.N.Y. 2004). Where the settlement contains a general release that purports to strip millions of individuals of their rights to sue the defendant upon a wide range of offenses that have nothing to do with the misconduct alleged in the present action, for no more consideration than an agreement to make certain superficial changes to its website, it is an offense to the principle of due process so egregious as to render the proposed settlement untenable even at this preliminary stage. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 88-89 (E.D.N.Y. 2007).

**C. Movants and their Counsel are Qualified and Have Acted in the Best Interests of the Putative Class.**

Given the obvious infirmities in the proposed settlement, it is evident that Movants and their Counsel can provide an informed assessment the value of the case and the prospects for success at trial that would assist the Court in its evaluation. In an effort to undermine this conclusion, however, the parties levy a variety of allegations at them challenging everything from their motives

KOREIN TILLERY
*Attorneys at Law*

and ethics to the legal strategy used prosecuting their own matter. However, all of these criticisms fall wide of the mark.

For example, the *C.M.D.* action, as described by the parties, is simply a tag-along action. However, as explained in the Declaration of John Torjesen, the *C.M.D.* action was developed based upon the independent legal theories of counsel for *C.M.D.*, without assistance from *Fraley* counsel or plaintiffs. (Exhibit 4 at ¶¶ 2-5 (discussing genesis of earliest-filed action against Facebook concerning names and likenesses).) In fact, the *Fraley* action was brought *after* the initial name and likeness case was brought by counsel for *C.M.D.*, and counsel for the *Fraley* matter represented that he had brought the case after "watching [the *C.M.D.*] case against Facebook from the sidelines." (*Id.* at ¶ 6.) In fact, the *Fraley* action was the ***fifth*** lawsuit against Facebook concerning the misappropriation of names and likenesses in various advertisements. (*Id.* at ¶¶ 7-12.) And, initially, the *Fraley* action did not even concern minors. (*Id.* at ¶ 12.) It is perfectly clear that the *Fraley* Plaintiffs' accusations of the tag-along nature of Movants' suit lacks basis in fact.

Likewise, the *Fraley* Plaintiffs claim that Movants are unqualified or fail to understand the issues in the litigation as the discovery completed in the *C.M.D.* Action is "perfunctory at best." However, as Facebook own counsel has attested, "substantial discovery has already taken place in both *Fraley* and [*C.M.D.*], some of which is similar or overlapping." Decl. of M. Brown, ECF No. 100-1 at ¶ 8. As a result of this overlap, the *C.M.D.* and *Fraley* Plaintiffs agreed to attempt to coordinate discovery (Zigler Decl. at ¶ 12), and in addition to their own discovery, the *C.M.D.* Plaintiffs sought production of any discovery completed in *Fraley* in an effort to prevent needless expense. (Am. Resp. to Plts' Initial Requests for Prod., 12-1216, ECF No. 78-4 at Requests 8-9). As a result, the *Fraley* Plaintiffs' claims of superior understanding are baseless.

The *Fraley* Plaintiffs also accuse Movants' counsel of failing to protect the interests of the class by failing to appeal what they characterize as "adverse determinations" in *C.M.D. v. Facebook* and *David Cohen v. Facebook*. (Decl. of Robert Arns, ECF No. 190-1 at ¶ 17). However, these claims are both factually and legally wrong.

Contrary to the *Fraley* Plaintiffs' claims, the Los Angeles Superior Court did not dismiss the David Cohen case on grounds of preemption. Instead, the California trial court granted demurrer

KOREIN TILLERY
*Attorneys at Law*

with leave to amend and the plaintiffs filed an amended complaint. (*See* Decl. of Torjesen & Stuart). Subsequently, the *Cohen* Plaintiffs thereafter voluntarily dismissed in favor of the *C.M.D.* action. (*Id.*). And even if a state trial court decision on federal law ere precedent – it is not, *Wyant v. City of Lynnwood*, 621 F. Supp. 2d 1108, 1113 (W.D. Wash. 2008), "a voluntary dismissal without prejudice is not adverse to the plaintiff's interests." *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995). This legal truism was confirmed by the *Cohen* court when it denied Facebook petition for attorneys' fees under Cal. Civ. § 3344 finding that there was no prevailing party in the Cohen case. (*See* Decl. of Torjesen & Stuart). Accordingly, the *David Cohen* order is neither precedent, adverse nor appealable. Movants' counsel cannot be faulted for not appealing it. Likewise, the *Fraley* Plaintiffs' claim that the *C.M.D.* Plaintiffs abdicated their responsibility to the class by failing to appeal the order transferring it here from the Southern District of Illinois seemingly fails to consider that the order is not appealable as a final judgment. *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 951 (9th Cir. 1968); *Varsic v. U.S. Dist. Court for Cent. Dist. of Cal.*, 607 F.2d 245, 251 (9th Cir. 1979); *Sunshine Beauty Supplies, Inc. v. U.S. Dist. Court*, 872 F.2d 310, 311 (9th Cir. 1989); *Research Automation, Inc. v. Schrader-Bridgeport Int'l*, 626 F.3d 973, 976 (7th Cir. 2010).

Facebook also joins the fray and argues for its part that the proposed interveners have admitted that they were inadequate representatives pointing to declarations filed in opposition to its Motion to Transfer. (Mem. in Opp. to Mot to Intervene, ECF No. 198 at 20). This argument is just as disingenuous as the others. Even if a litigant could admit a legal conclusion, Facebook fails to mention that only one Movant has made such an admission and none of the other five Movants suffer from this purported disability. (*See* Decls. of Isaak, Young, & Lemons, No. 12-cv-1216, ECF Nos. 90-1, 90-2, 90-3 (showing the use of plaintiffs' names and likeness in "Sponsored Stories")).

Similarly unavailing are the parties' assertions that Movants' counsel is solely interested in fees. Again, this has no basis in fact, as counsel for *C.M.D.* made perfectly clear to counsel for *Fraley* that the chief concern is an opportunity for meaningful relief to the class. (*See* Zigler Decl. at ¶ 16 (counsel for *Fraley* contacted counsel for *C.M.D.*, claiming that participation in the

*Fraley* settlement would allow counsel to "recover their lodestar in the settlement." Instead, counsel for *C.M.D.* expressed disappointment in a settlement of claims that did not provide for an opportunity for class members to receive monetary relief and that as a matter of principle, [counsel for *C.M.D.*] would unlikely participate in his proposed settlement.")).

Further, attempts to stretch contact with *cy pres* recipients into some type of backroom dealing to thwart settlement approval is as inaccurate as it is misleading. (*See* Arns Decl. at ¶ 27, ECF No. 190-1.) As is described in the attached declarations, any attempts at or ongoing communication with *cy pres* recipients occurred *prior* to the announcement of the *Fraley* settlement, and was not done with the purpose of encouraging objection. (*See, e.g.*, Exhibit 1 at ¶¶ 12, 23.)

## III. CONCLUSION

For the foregoing reasons, the Court should allow intervention of the C.M.D. Plaintiffs.

Dated: July 10, 2012

By /s Aaron M. Zigler
One the attorneys for Plaintiffs C.M.D., by his next friend Jennifer E. DeYong, T.A.B. by her next friend Patricia A. Isaak, H.E.W. & B.A.W., by their next friend Jami A. Lemons, and A.D.Y & R.P.Y., by their next friend Robert L. Young, Jr., individually and on behalf of all others similarly situated

Steven A. Katz
Aaron M. Zigler
KOREIN TILLERY
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Tel. (314) 241-4844
Fax. (314) 241-3525

Edward A. Wallace
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel. (312) 346-2222
Fax. (312) 346-0022

Lee Squitieri
Garry T. Stevens Jr.
SQUITIERI & FEARON, LLP
32 E. 57th Street, 12th Floor
New York, NY 10022
Tel. (212) 421-6492
Fax. (212) 421-6553

KOREIN TILLERY
Attorneys at Law

Antony Stuart
STUART LAW FIRM
801 South Grand Avenue, 11th Floor
Los Angeles, California 90017-4613
Tel. (213) 612-0009 Fax. (213) 489-0225

John C. Torjesen
JOHN C. TORJESEN & ASSOCIATES, PC
612 N. Sepulveda Blvd.
Los Angeles, California 90049
Tel. (310) 440-0005 Fax. (310) 440-0006

KOREIN TILLERY
*Attorneys at Law*