**WEXLER WALLACE LLP**
Edward A. Wallace, *pro hac vice*
eaw@wexlerwallace.com
55 West Monroe St.
Suite 3300
Chicago, Illinois 60603
Tel.    (312) 346-2222
Fax    (312) 346-0022

[Additional Counsel Appear on Second Page]

Attorneys for Moving Parties

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated, | Case No. CV 11-01726 LHK (PSG) |
| | **DECLARATION OF EDWARD A. WALLACE IN FURTHER SUPPORT OF MOTION TO INTERVENE** |
| Plaintiffs, | |
| v. | Date:        July 12, 2012 |
| | Time:        1:30 p.m. |
| FACEBOOK, INC., | Courtroom:        8 |
| | Judge:        Hon. Lucy H. Koh |
| Defendant. | Trial Date:        December 3, 2012 |

## DECLARATION OF EDWARD A. WALLACE

I, Edward A. Wallace, being first duly sworn upon my oath, depose and state as follows:

1.        I certify that the statements set forth in this instrument are true and correct. I make the following statements based on my personal knowledge and if called, I could competently testify to the matters stated herein.

2. I am a partner at the law firm of Wexler Wallace LLP and am one of the Plaintiffs' attorneys in the *C.M.D., et al. v. Facebook, Inc.*, action, No. 12-cv-01216-LHK ("*C.M.D.*").

3. I am submitting this declaration in support of the Motion and Memorandum in Support of Intervention to Oppose the Motion for Preliminary Approval of Class Settlement.

4. I was recognized as a 2009 "Rising Star" by Super Lawyers for the practice areas of class actions and mass torts, an award given annually to no more than 2.5% of the lawyers in Illinois.

5. I have been rated by my peers in the Bar and given an AV® Preeminent™ rating by Martindale-Hubbell, the highest rating a lawyer can obtain, indicating a very high to preeminent legal ability and exceptional ethical standards.

6. I am regularly appointed by federal and state courts to serve in leadership positions for class action and mass tort cases, as set forth in the firm resume of Wexler Wallace LLP, also included as an attachment to this declaration.

7. I have never been sanctioned by a court.

8. My firm has funded class action litigation on a contingent basis for over a decade, which has included notice paid for by the firm, or with co-counsel. My firm has the resources and demonstrated expertise to do the same in this case.

9. I was admitted to the State Bar of Illinois in 1995 and am a member in good standing of the State Bar.

10. I have reviewed the materials submitted by both counsel for Facebook and counsel for the Fraley plaintiffs concerning the possibility for settling the *Fraley, et al. v. Facebook, Inc.* action, No. CV 11-01726 LHK ("*Fraley*"), for $10 million in attorneys' fees and $10 million in *cy pres*, with injunctive relief for the class.

11.     As an attorney representing plaintiffs and a putative class of minor children in the *C.M.D.* matter, counsel for the *Fraley* plaintiffs did not inform me (or any of the other *C.M.D.* attorneys) of ongoing settlement discussions with Facebook and plaintiffs from the *Fraley* matter until *days* before the attorneys involved in the *Fraley* matter informed the Court that they had reached a settlement.

12.     Despite the fact that the attorneys representing the plaintiffs in the *Fraley* matter encouraged us to resolve the claims of the plaintiffs and putative minor class in the *C.M.D.* action, we were not informed of the specifics of the proposed settlement until *after* a deal was reached between the *Fraley* plaintiffs and Facebook.

13.     It became clear to counsel in the *C.M.D.* action that the plaintiffs in the *Fraley* action, and counsel representing the plaintiffs in the *Fraley* action, no longer represented the best interests of the putative class of minor children in the *C.M.D.* action—once counsel in the *Fraley* matter finally gave us access to settlement documents after they were filed under seal.

14.     As counsel for plaintiffs and the putative class of minor children in *C.M.D.*, I believe that the injunctive relief proposed does not adequately resolve plaintiffs' claims, and further attempts to evade many of the secure measures enacted under the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501-6506, and state law statutes concerning the use of names and likenesses of individuals and minor children.

15.     As counsel for plaintiffs and the putative class of minor children in *C.M.D.*, I believe that the injunctive relief proposed does not provide an adequate mechanism for Facebook to seek verifiable consent from a parent or guardian regarding the use of names and likenesses of the putative minor class members.

16.     As counsel for plaintiffs and the putative class of minor children in *E.K.D.*, I believe that the injunctive relief proposed is inadequate.

17.     I understand that there is speculation concerning whether or not counsel for the *E.K.D.* plaintiffs contacted the *cy pres* recipients involved in the *Fraley* settlement.  Neither I, nor any other member of my firm, have contacted the proposed *cy pres* recipients involved in the proposed *Fraley* settlement.

FURTHER DECLARANT SAYETH NOT

Affirmed this 10th day of July 2012.

_____
Edward A. Wallace

**WEXLER WALLACE LLP**
55 West Monroe St., Suite 3300
Chicago, Illinois 60603
Tel.    (312) 346-2222
Fax    (312) 346-0022
eaw@wexlerwallace.com

*Counsel for Movants*

*Additional Counsel for Movants*:

Steven A. Katz
Aaron M. Zigler
KOREIN TILLERY
505 N. 7th Street, Suite 3600
St. Louis, MO 63101

John C. Torjesen
JOHN C. TORJESEN & ASSOCIATES, PC
612 N. Sepulveda Boulevard, 2nd Floor
Los Angeles, CA  90049

Lee Squitieri
Garry T. Stevens Jr.
SQUTIERI & FEARON LLP
32 E. 57th Street, 12th Floor
New York, NY 10022

Antony Stuart
STUART LAW FIRM
801 South Grand Avenue, 11th Floor
Los Angeles, CA  90017

Declaration of Edward A. Wallace in Further Support of Motion to Intervene; Case No. CV11-01726 LHK

**ATTACHMENT**

# WEXLER WALLACE LLP

# FIRM RESUME

*Chicago Office*
*55 West Monroe Street, Suite 3300*
*Chicago, IL 60603*
*Tel. 312.346.2222*
*Fax. 312.346.0022*

*e-mail at: info@wexlerwallace.com*
*Website:  www.wexlerwallace.com*

# WEXLER WALLACE LLP

### THE FIRM

Wexler Wallace LLP is a Chicago-based nationally-recognized leader in complex class action and multidistrict litigation with a commitment to excellence and achieving meaningful relief for our clients.  In short, Wexler Wallace embodies a diverse litigation practice, including antitrust, consumer fraud, securities class action and mass tort litigation.  We are respected by our clients, judges and co-counsel as a firm that focuses on practical, innovative solutions and dedication to providing quality.  Wexler Wallace sets itself apart from other plaintiffs' firms by the commitment we make to our clients, to advanced technology, and our willingness to risk what it takes to achieve results.

We are frequently retained by our clients to pursue high-profile, high-stakes litigation. We also have been retained by co-counsel to work with them and their clients on cases having wide-ranging and significant importance.  We have tried cases and had them affirmed on appeal.  In the process, we have helped shape the law and paved the way for future success for our clients and aggrieved plaintiffs generally.  We stand for positive change and have proved it through our repeated successes.

Wexler Wallace is proud to have an AV rating from LexisNexis Martindale-Hubbell.[1]  An AV Peer Review Rating is a testament to the fact that a lawyer's peers rank him or her at the highest level of professional excellence.  Our legal team, which includes three partners, an of-counsel, eight associates, three paralegals and a legal nurse, consists of professionals with a broad range of experience and diverse backgrounds.  In addition, partners in the firm have been selected multiple times as "SuperLawyers" and "Rising Stars" in both the Illinois and California offices.  Many of our lawyers serve as leaders in charitable institutions, universities, and national, state, and local bar associations.

---

[1] Martindale-Hubbell is the facilitator of a peer review rating process. Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories - legal ability and general ethical standards.  CV, BV and AV are registered certification marks of Reed Elsevier Properties Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.

REPRESENTATIVE ACTIONS AND NOTABLE SUCCESSES

<u>Health Care Litigation</u>

***United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund v. Walgreen Company et al.,*** **Case No. 12-cv-00204 (N.D. Ill.)**

Wexler Wallace filed a class action in the United States District Court for the Northern District of Illinois on behalf of the United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund ("UFCW") against Walgreen Company ("Walgreens"), Par Pharmaceutical Companies, Inc. and Par Pharmaceuticals, Inc. UFCW seeks to represent a class of third party payors that were overcharged for prescription drugs taken by their members as a result of an illegal scheme to switch patient prescriptions. The complaint alleges that, from July 1, 2001 through 2006, Walgreens and Par engaged in a widespread scheme to overcharge self-insured employers, union health and welfare funds and other private insurers by systematically switching patient prescriptions from a less expensive dosage form to a much more expensive one (e.g., from tablets to capsules or vice versa) for highly prescribed medications including Zantac and Prozac, or their generic equivalents. The case was filed in December, 2011 and is currently proceeding.

***In re: Effexor XR Antitrust Litig.,*** **Civil Action No. 11-5590 (D.N.J.)**

Wexler Wallace has been appointed interim class counsel in antitrust, consumer protection and unjust enrichment litigation against pharmaceutical manufacturer Wyeth, Inc. regarding its antidepressant Effexor XR. The complaint alleges that Wyeth fraudulently obtained a number of method of use patents for Effexor XR and engaged in sham litigation against sixteen potential generic competitors in an effort to protect the Effexor XR monopoly. As part of the scheme, plaintiffs further allege that Wyeth entered into an anticompetitive settlement with the first generic ANDA filer, Teva Pharmaceutical Industries, Ltd., and its US subsidiary Teva Pharmaceuticals USA, Inc., which delayed the entry of generic Effexor XR competitors for more than two years.

***In re: Pharmaceutical Indus. Average Wholesale Price ("AWP") Litg.,*** **MDL No. 1456 (D. Mass.)**

Wexler Wallace initiated a wave of class actions nationwide against dominant pharmaceutical manufacturers to halt the deceptive reporting of Average Wholesale Prices, or AWPs, which serve as the benchmark from which consumers, union health and welfare funds, insurance companies and other third-party payers ("TPPs") pay for pharmaceuticals. These cases, which were consolidated in the United States District Court for the District of Massachusetts, alleged that pharmaceutical manufacturers such as Abbott, AstraZeneca, Bristol-Myers Squibb, Baxter

and GlaxoSmithKline routinely inflated the AWPs they reported to trade publications, causing those who purchased and reimbursed for pharmaceuticals to vastly overpay.

Wexler Wallace was a critical part of the trial team against four of the largest defendants in the litigation which resulted in verdict largely in favor of the plaintiffs that was affirmed in all respects by the First Circuit Court of Appeals.  In approving a settlement with a single defendant for $70 million, Judge Saris praised Wexler Wallace and their co-counsel, saying that she wanted "to express appreciation again to class counsel for taking this case." In all, settlements of approximately $350,000,000 have been achieved in the case.

### *New England Carpenters Health Benefits Fund v. First DataBank,* **No. 1:05-cv-11148 (D. Mass.)**

Wexler Wallace filed a complaint against pharmaceutical wholesaling giant McKesson Corporation (McKesson) and pharmaceutical pricing publisher First DataBank, Inc. (FDB). Medispan, another publisher, was later named as a defendant in a separate case.  Both FDB and Medispan published data containing the AWPs of various drugs.  The litigation concerned an unlawful increase in published AWPs, causing consumers and TPPs to overpay for pharmaceuticals.

Judge Patti B. Saris granted final approval of Plaintiffs' $350 million settlement with McKesson. Plaintiffs believe this settlement to be one of the *largest* RICO settlements in history.  In addition, Plaintiffs entered into a settlement with FDB and Medispan under which those pricing publishers agreed to pay $2.7 million and "rollback" their WAC-to-AWP mark-ups for over 1400 drug codes from 25% to 20%.  The rollbacks were intended to recapture for consumers and TPPs amounts that were previously overpaid as a result of Defendants' scheme and ensure that, in the future, insurance companies and other third-party payors would pay less for the drugs that were rolled back.  An economist opined that this could achieve an estimated $750 million in prospective savings to the classes.

### *In re: Synthroid Marketing Litg.*, **MDL No. 1182 (N.D. Ill.)**

Although this case was filed while Ken Wexler was with his predecessor firm, this is litigation of which Wexler Wallace is especially proud.  The Synthroid case was one of the first, if not the first, cases brought against a brand name pharmaceutical manufacturer for attempting to suppress generic competition, a practice that significantly raises drug prices.  The Synthroid case settled in 2000 for an aggregate amount of $87.4 million.

### *In re Wellbutrin XL Antitrust Litig*, **No. 08-cv-2433 (E.D. Pa.)**

This case is pending before the Honorable Mary A. McLaughlin in the Eastern District of Pennsylvania.  As alleged in the complaint, Defendants GlaxoSmithKline and Biovail unlawfully

delayed the entry of generic Wellbutrin XL, a multi-billion dollar blockbuster antidepressant, through sham patent infringement litigation, improper Orange Book patent listing, baseless Citizen Petition submission, and anticompetitive settlement.  With co-lead counsel, Wexler Wallace fought vigorously for, and successfully obtained, certification of an end payor class.

### *In re Hypodermic Prods. Antitrust Litig*. **MDL 1730 (D.N.J.)**

Wexler Wallace was appointed co-lead counsel in this MDL litigation on behalf of indirect purchasers and represents healthcare providers who assert direct purchaser standing with respect to the purchase of hypodermic products manufactured by Becton Dickenson.  These products include such items as disposable syringes and associated needles, disposable blood collection tubes and holders, IV catheter devices and their associated needles.  Certain issues in the case, which is being litigated before the Honorable Jose L. Linares, are on appeal before the Third Circuit.

### *In re Flonase Antitrust Litig.***, No. 08-CV-3301 (E.D. Pa**.)

Wexler Wallace serves on the Plaintiffs' Executive Committee in this class action, alleging that GlaxoSmithKline ("GSK") filed Citizen Petitions with the Food & Drug Administration ("FDA") to keep generic versions of Flonase (fluticasone propionate) off the market.  Until the statute authorizing Citizen Petitions was amended due to its abuse by pharmaceutical companies seeking to preserve their monopolies, the filing of a Citizen Petition stayed the FDA's decision of a generic company's ANDA – or application to sell and market a generic drug.  Plaintiffs allege that GSK abused the Citizen Petition process in order to preserve its monopoly profits for the drug Flonase.  This case is currently being litigated before the Honorable Anita B. Brody.

### *In re Wellbutrin SR Antitrust Litigation*, **04-cv-05898 (E.D. Pa.)**

Wexler Wallace represents a proposed class of end payors in this class action against GlaxoSmithKline, PLC.  Plaintiffs allege GSK engaged in sham litigation to keep generic versions of Wellbutrin SR® off the market.  While class certification was initially denied, plaintiffs are seeking to file a renewed motion to certify a more narrowly tailored class. This case is currently being litigated before the Honorable Lawrence F. Stengel.

### *Nichols, et. al v. Smithkline Beecham Corp. ("Paxil®")*, **No. 00-CV-6222 (E.D. Pa.)**

 Wexler Wallace served as co-lead counsel in this case involving alleged efforts by GlaxoSmithKine, including "sham" patent litigation, to keep generic versions of Paxil® off the market.  This case is believed to be one of the first, if not the first, to allege misuse of patents to delay generic competition in a pharmaceutical market brought under Section 2 of the Sherman Act rather than Section 1. The case settled for $65 million in cash.

5

***In re Prograf Antitrust Litig.*, No. 11-cv-11870 (D. Mass.)**

Wexler Wallace represents End-Payors in this class action alleging that Astellas Pharma US, Inc. filed a citizen petition with the FDA to keep generic versions of Prograf (tacrolimus) off the market. The filing of the sham citizen petition served to delay the FDA's final approval of at least one generic company's ANDA – the application to sell and market a generic bioequivalent drug. This case is currently being litigated before the Honorable Rya Z. Zobel.

## Antitrust Litigation[2]

### *In re: Live Concert Antitrust Litg.*, MDL No. 1745 (C.D. Cal.)

Wexler Wallace is co-lead counsel for Plaintiff ticket buyers in this case which alleges that media conglomerate Clear Channel used its monopoly power to dominate the live rock concert promotion industry.   Plaintiffs allege that this increased the cost of tickets purchased to live rock concerts.  Plaintiffs filed class action lawsuits against Clear Channel in 23 different regional markets, all of which are before Judge Stephen V. Wilson in federal court in Los Angeles for pretrial proceedings.  Wexler Wallace successfully achieved litigation class certification of five "template" markets. Discovery is closed and the parties are engaged in vigorous pretrial motion practice

### *In re: BP Prods. North America, Inc. Antitrust Litg.*, MDL No. 1801 (N.D. Ill.)

Wexler Wallace was appointed co-lead class counsel in this case filed against BP Products North America, Inc.  Wexler Wallace represented indirect purchasers of propane who were injured by BP's unlawful manipulation of the price of TET physical propane after it cornered the TET propane market in February 2004.  On February 10, 2010, the Court approved a settlement with BP worth $15,250,000.

### *In re: Chocolate Confectionary Antitrust Litg.*, MDL No. 1935. (M.D. Pa.)

Wexler Wallace filed a class action on behalf of all direct purchasers of chocolate from the major manufacturers in the United States, including Hershey, Nestle, Mars, and Cadbury.  Wexler Wallace's complaint alleges that the defendants conspired to raise, fix, maintain, peg and/or stabilize the prices of chocolate from January 1, 2002, through the present in violation of the Sherman Act and Clayton Antitrust Act.  The defendants alleged antitrust violations are also being investigated by The Canadian Competition Bureau and the United States Department of Justice.   This multi-district litigation now involves over 75 federal actions, and has been

---

[2] See *In re: Effexor XR Antitrust Litig.*, Civil Action No. 11-5590 (D.N.J.); *In re Wellbutrin XL Antitrust Litig*, No. 08-cv-2433 (E.D. Pa.); *In re: Hypodermic Prods. Antitrust Litg.*, MDL No. 1730 (D.N.J.); *Nichols, et. al v. Smithkline Beecham Corp. ("Paxil®")*, No. 00-CV-6222 (E.D. Pa.); *In re Flonase Antitrust Litig.*, No. 08-CV-3301 (E.D. Pa.);   *In re Wellbutrin SR Antitrust Litig.*, 04-cv-05898 (E.D. Pa.); *In re Prograf Antitrust Litig.*, No. 11-cv-11870 (D. Mass.)**,** discussed above under the heading of Health Care Litigation.  Each is an antitrust case.

consolidated in the United States District Court for the Middle District of Pennsylvania for pretrial proceedings.

***In re: OSB Antitrust Litg.*, No. 06-CV-00826 (E.D. Pa.)**

Wexler Wallace pursued this antitrust class action on behalf of direct purchasers of Oriented Strand Board (OSB) from Louisiana-Pacific Corporation, Weyerhaeuser Company, Georgia-Pacific Corporation, Potlatch Corporation, Ainsworth, Norbord, Inc., J.M. Huber Corporation and Tolko Industries, Inc. Plaintiffs alleged that these Defendants combined and conspired to fix prices at which OSB was sold by reducing the available supply in violation of antitrust laws. The case, which was pending in the United States District Court for the Eastern District of Pennsylvania settled for $120 million.

***In re: Fretted Instrument Products Antitrust Litg.*, MDL No. 2121 (S.D. Cal.)**

Wexler Wallace was the first among dozens of firms to have filed nationwide antitrust class actions, alleging competitors in the musical instrument product industry, facilitated by their trade association, the National Association of Music Merchants, Inc. (NAMM), conspired to fix prices of their products through unlawful information exchanges. The Federal Trade Commission ("FTC") issued a cease and desist order to NAMM settling the FTC's charges that it had "permitted and encouraged'" acts constituting violations of the FTC Act. Specifically, the FTC, after an investigation, alleged that between 2005 and 2007, NAMM organized various meetings and programs for its members, such as Guitar Center, Inc., at which these competing retailers of musical instruments were permitted and encouraged to exchange competitively sensitive information, strategies for implementing minimum advertised pricing and other information enabling them to restrict retail price competition.

REPRESENTATIVE ACTIONS AND NOTABLE SUCCESSES

<u>Consumer Protection</u>

***Schmitz et al., v. Wal-Mart Stores, Inc.***, **No.: 2:11-cv-01487 (E.D. Cal.)**

Wexler Wallace LLP represents consumers in this class action against retailer behemoth Wal-Mart Stores who returned items with a gift receipt but did not receive full price. The Complaint alleges that when its stores are presented with a gift receipt, Wal-Mart fails to honor the product purchase price, and instead redeems the receipt for the later discounted or sale price. Consumers reasonably assume that providing a gift receipt with their gift will entitle the recipient to credit for the full purchase price. Recent investigations have revealed this does not occur. Wal-Mart's practice relies on the fact that people generally do not ask how much their gift giver paid for their gift. And rarely does the recipient tell the person who gave them the gift that they returned it. These common behaviors combine to create a deceptive business practice that that is virtually certain to go undetected.

***In re: Pet Food Products Liability Litg.***, **MDL No. 1850 (D.N.J.).**

Wexler Wallace served as co-lead counsel in this consumer multidistrict litigation arising from the largest pet food recall in history, involving over 180 brands of products produced or sold by over 40 defendants.  The action, which was pending before the Honorable Noel L. Hillman in the United States District Court for the District of New Jersey, sought compensation for pet owners throughout the country for financial and other harm suffered when their pets ate contaminated pet food.  Judge Hillman granted final approval of a comprehensive $24 million settlement that provided aggrieved pet owners an unusually large percentage of their economic damages.

***In re: Webloyalty.Com, Inc. Marketing and Sales Practices Litg.,*** **MDL No. 1820 (D. Mass.)**

Wexler Wallace served as Co-Lead Counsel in this consumer multidistrict litigation concerning deceptive Internet marketing and selling strategies, unauthorized charges on consumers' credit cards and non-cancellation of memberships.  Consumers became enrolled in Webloyalty's programs in the course of transactions for other online purchases, typically through "pop-up" advertisements.   The Honorable Joseph L. Tauro approved a nationwide settlement unprecedented in a case of this type that allowed consumers to recover up to 100% of unauthorized charges for enrollment in any Webloyalty membership program.  The settlement also required that significant changes be made to disclosures on Webloyalty enrollment pages as well as post-enrollment notifications regarding program enrollment and membership fees.

***In re: DirecTV Satellite Receiver Lease Fee Litg.***, **No. cv-08-01558 FMC (C.D. Cal.)**

Wexler Wallace is prosecuting a consumer class action in federal court against DirecTV, pending in the United States District Court for the Central District of California before the Honorable Florence-Marie Cooper, alleging that the company misleads customers into believing they own the satellite receivers when, in reality, DirecTV considers the purchase to be a "lease" subject to monthly fees. The case seeks, among other things, a ruling that DirecTV customers own their equipment and DirecTV's purported lease is invalid. Plaintiffs also seek corrective disclosures and a return of improperly charged lease fees.

***In re: RC2 Corp. Toy Lead Paint Products Liability Litg.,*** **MDL No. 1893 (N.D. Ill.)**

Wexler Wallace filed a class action suit against the RC2 Corporation, which manufactures the popular line of children's toys, "Thomas & Friends Wooden Railway Toys." Wexler Wallace filed the lawsuit on behalf of all consumers who purchased various Thomas & Friends toys during the Class Period. Plaintiffs alleged that RC2 failed to inspect and test toys after they were imported from manufacturers based in China and before they were sold to the public. A settlement favorable to the Class was granted final approval by the Court.

***Online Merchant Sys., LLC v. Overture Servs., Inc. and Yahoo, Inc.***, **No. 05-4833 (C.D. Cal.)**

Wexler Wallace served as co-lead counsel in this consumer class action on behalf of an online advertiser asserting that Yahoo's online advertising system caused online advertisers to pay more than they otherwise would have for the same advertising space, and that the class' bidding behavior was altered as a result of Yahoo's unlawful conduct. Plaintiffs obtained a favorable settlement in this matter.

***Casillas v. Wal-Mart Stores, Inc.***, **No. 2:06-cv-00571 (C.D. Cal.)**

Wexler Wallace filed this proposed class action on behalf of California consumers who were charged higher prices at Wal-Mart checkout counters than what was advertised on store shelves. Such overcharges are often difficult to detect and the amount of an individual overcharge deters consumers from seeking remedies at Wal-Mart stores. Plaintiffs alleged that overcharges occurring at Wal-Mart scanner check-outs are almost double the national average. A settlement of this action was approved, that provided significant injunctive relief applicable to all of Wal-Mart's California stores. Wal-Mart must regularly certify its compliance with the settlement terms to the Court.

***Ellerbrake v. Campbell-Hausfeld*, No. 01 L 540 (St. Clair County, Illinois)**

Wexler Wallace served as co-lead counsel in this consumer fraud case brought against power tool manufacturers for mislabeling the horsepower on their air compressors. After the firm achieved certification of the consumer class, the defendants agreed to a permanent injunction that halted the alleged mislabeling and provided millions of dollars' worth of benefits to affected consumers.

***Ortiz v. CVS Pharmacy, Inc., et al.*, No. 8:09-cv-1050-JVS-MLG (C.D. Cal.)**

Wexler Wallace has filed a class action suit in the Central District of California on behalf of California consumers who were charged excessive fees by CVS Pharmacy for copies and/or searches of their prescription drug records. California and federal law require that healthcare providers, such as CVS Pharmacy, make prescription records available to patients and charge them reasonable, cost-based fees for inspecting, copying and retrieving such records. This case is currently pending before the Honorable James V. Selna in the United States District Court for the Central District of California.

***Simon v. Toshiba America, Inc., et al.*, No. 3:07-CV-6202 (N.D. Cal.)**

Wexler Wallace served as class counsel in this consumer class action against notebook computer manufacturer Toshiba, based on its marketing and sale of particular model notebooks with incorrectly stated memory upgrade capacity. The case, which was pending in the United States District Court for the Northern District of California before the Honorable Marilyn Patel, settled on terms offering significant relief to consumers.

***Ronald Carter v. Allstate Insurance Company, et al..*, No. 02-CH-16092 (Cir. Ct. Cook Cty.)**

Wexler Wallace is prosecuting a class action against Allstate, alleging that the company has refused to pay its policyholders either their replacement cost or the limits of liability under the Residential Fire Insurance Policy after fire damaged the insureds' premises. Rather, the Complaint alleges, Allstate improperly settled policyholders' claims based on a market value appraisal Allstate secures for property. This appraisal method results in a reduced recovery by the insureds, in violation of the terms of their insurance policies. The case is pending in Illinois state court and it has twice gone up to the Illinois Appellate Court, First District, on appeal, once in relation to Defendant's motion to transfer to another court pursuant to the doctrine of *forum non conveniens*, and once in relation to Defendant's motion to dismiss. Due to the efforts of Plaintiffs' counsel, the case remains in Cook County, Illinois, where it was filed, and has substantially survived the motions to dismiss.

***Exhaust Unlimited, Inc. v. Cintas Corporation, et al..*, No. 3:02-cv-00614-MJR-DGS (S.D. Ill.)**

Wexler Wallace investigated and pursued claims against a $10 billion service linen supply industry that imposed "ancillary charges" on their customers, such as "Environment Charges," that, despite their appearance and placement on invoices, are not imposed by federal or state governmental laws or regulations and are not an actual pass-through of any tax or other cost. This litigation, which was pending in various courts throughout the country, settled for substantial injunctive and monetary relief.

***In re: Sony DVD Litg.*, No. 03-L-210 (Cir. Ct. Ill., St. Clair Cty.)**

Wexler Wallace served as co-lead counsel in this consumer class action involving DVD/DVP line of video disc players manufactured and sold by Sony, alleging that Sony failed to disclose that the DVD players contained uniform defects that rendered them unable to consistently and clearly play DVDs.  After the Plaintiffs achieved class certification, the parties reached a favorable nationwide settlement.

REPRESENTATIVE ACTIONS AND NOTABLE SUCCESSES

Mass Tort Litigation

**In re: Kugel Mesh Hernia Patch Litg., MDL No. 1842 (D.R.I.)**

Wexler Wallace represents individuals who have had defective Composix Kugel Mesh hernia repair patches implanted in their bodies.  The firm is a member of both the State and Federal Plaintiff Steering Committees, chair of the law committee and a member of the trial team.  At the direction of the FDA, C.R. Bard and Davol announced a recall of the large and extra-large varieties of their surgically implanted hernia repair patches, known as the Composix Kugel Mesh Patch.  Despite knowledge of the defective design and manufacture of these patches, C.R. Bard and Davol failed to alert physicians about potential problems and sold roughly 75,000 patches.  The Plaintiffs Wexler Wallace represent all suffered serious injuries from the failure of their patches.

**In re: Medtronic, Inc. Implantable Defibrillator Prods. Liab. Litg., MDL No. 1726 (D. Minn.)**

Wexler Wallace filed suit on behalf of United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund seeking to certify a class of other third party payors (including other union health and welfare benefit plans), as well as many personal injury claimants, to recover the cost of explant surgery and related medical expenses necessitated by the recall of Medtronic's implantable cardiovertable defibrillators ("ICDs") and cardio resynchronization therapy defibrillators ("CRT-Ds"), which were recalled for prematurely failing after implantation in patients who had spontaneous and/or inducible life-threatening ventricular arrhythmias, and those patients who are at high risk for developing such arrhythmias.  An arrhythmia is a cardiac rhythm that is out of syncopation, which can cause myocardial damage, a myocardial infarction (heart attack) and/or death.  The expense of explanation and re-implantation of replacement ICDs and CRT-Ds is enormous and falls largely on third party payors (TPPs). The federal district court approved a settlement for over $75 million in this case, benefiting third party payors and personal injury claimants.

**In re: Guidant Defibrillators Products Liability Litg., MDL No. 1708 or Case No. 0:05-md-01708 (D. Minn.)**

Wexler Wallace represented numerous personal injury claimants, as well as third party payors (which includes union health and welfare benefit plans), in this multi-district litigation to recover damages as a result of the nationwide recall of Guidant's ICDs and CRT-Ds.  After significant litigation, Guidant resolved the cases in the MDL for $195 million.

**DePuy Metal-on-Metal Hip Litigation**

On August 26, 2010, DePuy Orthopedics, Inc., a division of Johnson & Johnson, announced a worldwide recall of two hip implant systems – the ASR™ XL Acetabular System and the ASR™ Hip Resurfacing System. DePuy has estimated that 93,000 total devices have been implanted worldwide. If they have not already experienced hip failure, people with these implants will likely suffer injuries including dislocation, infection, constant pain, as well as symptoms associated with Metalosis – which is a condition that results when the metal-on-metal hip components of these implants wear down and displace metal into the body. These injuries will require these hip implantees to undergo costly, painful, and life threatening revision surgeries. Wexler Wallace currently represents hundreds of individuals who have had Metal-On-Metal hip replacement surgeries. These lawsuits are in their early stages. We have many Complaints pending with the Judicial Council Coordinated Proceeding, pending in the Superior Court of the State of California. We will continue to pursue these cases on behalf of our clients and all affected individuals against DePuy Orthopedics, Inc. and its parent company Johnson & Johnson.

**Yaz/Yasmin/Ocella Litigation**

Yaz and Yasmin are oral contraceptives developed, designed, licensed, and manufactured by Bayer and/or Bayer subsidiaries. Ocella is the generic version of Yaz and Yasmin and is a registered trademark of Barr Laboratories, Inc. The ingredient that makes Yaz, Yasmin, Ocella unique among commercially available birth control is Drosperinone; Drosperinone is a lab-made hormone intended to mimic the effects of naturally occurring hormone Progesterone. Drosperinone is chemically unlike the other lab-made hormones and its use in Yaz, Yasmin and Ocella has been linked serious safety concerns. Wexler Wallace currently represents hundreds of individuals who have suffered serious injuries after ingesting Yaz, Yasmin or Ocella.

**SSRI**

When taken during pregnancy, the group of antidepressant drugs classified as Selective Serotonin Re-uptake Inhibitors (SSRIs) has been linked to birth defects of the heart, lung, and other internal organs, as well as the conditions known as cleft-palate and club foot. Studies show that infants who have been exposed to SSRIs, especially during the critically developmental first trimester of pregnancy, have a significantly higher risk of developing congenital birth-defects when compared to infants who were not exposed. SSRI antidepressants such as Zoloft, Effexor, Paxil, Wellbutrin, Lexapro and Celexa have all been linked to these birth defects. In many cases, corrective surgery is required just after birth, but can take place at any time after being born. SSRIs have also been linked to increased risk of atrial and ventricular septal defects, persistent pulmonary hypertension, and a range of serious cranio-facial, limb (hand, arm, foot, leg) and abdominal wall malformations. The FDA issued its first Public Health Advisory warning about these risks in December of 2005. Wexler Wallace

represents hundreds of claimants who have suffered or are suffering injuries related to SSRI ingestion.

REPRESENTATIVE ACTIONS AND NOTABLE SUCCESSES

<u>Securities and Business Litigation</u>

***Boca Raton Firefighters and Police Pension Fund v. Devry Inc. et al.* No. 1:10-CV-07031 (N.D. Ill.)**

Wexler Wallace is appointed liaison counsel in this securities fraud lawsuit alleging that DeVry, a global provider of educational services for profit, issued a series of materially false and misleading statements regarding the company's business and financial results. Because of these statements, which occurred during the period between October 25, 2007 and August 13, 2010 (the "Class Period"), DeVry's common stock traded at artificially inflated prices.  The complaint specifically alleges that, as a result of numerous statements by the company about "record" financial results, the price of its common shares jumped substantially, from $40.03 on October 26, 2007 to as high as $74.25 on April 22, 2010 . The federal government, however, had been engaged in an undercover investigation of the for-profit education industry, of which DeVry was a part. On August 4, 2010, GAO issued a report in which it specifically cited abuses committed by DeVry. DeVry's stock price then plummeted. The complaint, which Plaintiff recently amended, seeks damages for shareholders injured as a result of the artificial inflation of DeVry common stock.

***Virginia M. Damon Trust v. Mackinac Financial Corp., f/k/a North Country Financial Corp.,* No. 2:03cv0135 (W.D. Mich.)**

Wexler Wallace was co-lead counsel on behalf of plaintiffs in this shareholder derivative lawsuit that alleged that North Country Financial Corporation's (n/k/a Mackinac Financial Corp.) former chief executive officer breached his fiduciary duties to the bank and its shareholders by mismanaging the bank's commercial loan portfolio, failing to heed repeated warnings from regulators regarding internal controls at the bank, and failing to correct specific deficiencies in the bank's underwriting, loan collection, and loan administration functions, among other things.   The Virginia Damon Trust alleged that the Bank underwent years of gross mismanagement that ultimately resulted in cease and desist orders from the Federal Deposit Insurance Corporation and the Michigan Office of Financial and Insurance Services.  The United States District Court for the Western District of Michigan granted final approval of a multi-million dollar settlement, payable to the bank which, at the time, was in financial distress.

***List v. List***, **No. 96 CH 845 (Cook County, Illinois Circuit Court)**

After more than a decade of litigation, certain shareholders of List Industries retained Wexler Wallace to pursue this derivative suit, which involved alleged waste and mismanagement by an officer and director of the company.  After key discovery and extensive settlement negotiations, this long-running dispute was successfully resolved for a confidential amount.

***Angelfish Swim School, Inc., v. Glenda A. Hood, Secretary of State of the State of Florida***, **No. 03-13413 CA 21 (11th Jud. Cir. Ct., Miami-Dade, F.L.)**

In 2003, the law office of Andrew Trailor, P.A. filed this novel case entitled, Angelfish *Swim School, Inc. v. Glenda A. Hood, Secretary of State of the State of Florida* (No. 03-13413 CA 21) in the 11th Judicial Circuit Court in and for Miami-Dade County, Florida.  The complaint seeks declaratory relief that two sections of Florida's Business Corporations Act (Fla. Stat. § 607.0122(13) and Fla. Stat. § 607.193(2)(b)) are unconstitutional.  This action involves two plaintiffs: Angelfish Swim School and Steak on the Run, both Florida corporations which  failed to timely file Annual Reports with the Florida Secretary of State and were assessed a statutory $400 "late charge" and a $600 statutory "reinstatement fee," respectively.

This litigation is significant because it challenges the Florida Secretary of State's ability to impose excessive "late charges" and "reinstatement fees" upon Florida corporations that fail to timely file Annual Reports with the Secretary of State.  The outcome of this case could potentially affect all Florida corporations and shield them from unconstitutional charges and fees.

***The Village of Maywood, Illinois v. Unison-Maximus, Inc., Hill Taylor & Company, LLC and Sharon Gist Gilliam***, **No. 00 L 014029 (Cir. Ct. Ill., Cook County)**

In this case, Wexler Wallace filed suit on behalf of a municipality, seeking damages from a management consulting and accounting firm that was hired to run the Village's Finance Department but allegedly failed to fulfill its duties, including failing to keep a detailed general ledger of the Village's finances over a multi-year period.  The Village also sued its auditor during this period for its alleged failure to notify the Village that the financial statements prepared by the management consulting and accounting firm were woefully unreliable.  The parties ultimately entered into a settlement that completely resolved the litigation.

***Wiginton v. CB Richard Ellis, Inc.*, No. 02 CV 6832 (N.D. Ill.)**

Wexler Wallace filed and served as co-lead counsel in this class action against CB Richard Ellis Group, Inc., alleging claims of sexual harassment on behalf of a class of current and former female employees.  After extensive litigation, Wexler Wallace secured a favorable settlement that made available monetary relief for eligible claimants, as well as a charitable contribution to the Commercial Real Estate Women (CREW) Network for the purpose of establishing scholarships to promote the entry or advancement of women in the real estate services industry.  The Court granted final approval of Plaintiffs' settlement with CBRE.

***Illinois Funeral Directors Litigation* (multiple cases)**

Wexler Wallace has served as lead counsel and spearheaded litigation aimed at restoring funds to the Illinois Funeral Directors Association Preneed Trust (the "IFDA Trust").  The IFDA Trust was designed to be a safe, conservative investment vehicle for funds deposited by consumers who pre-paid for their funerals by purchasing preneed funeral contracts.  Beginning in the fall of 2007, however, funeral directors at the six plaintiff funeral homes learned that, contrary to what they had been told, the money they had deposited for their customers was not safe and the Trust was running at a deficit.  Wexler Wallace's investigation revealed that, not only where the Trust's assets shrinking, but the variable universal life insurance policies defendants had recommended IFDA purchase with trust funds were completely inappropriate investments for the goals of the Trust's beneficiaries.  After learning how their deposits were actually being invested, these funeral directors filed suit on January 28, 2009.

The first case filed (*Calvert Funeral Homes, et al. v. Ninker, et al.*) was a derivative action brought on behalf of IFDA that sought to restore the IFDA Trust.  A second case, *Clancy-Gernon Funeral Home, et al. v. Merrill Lynch, Pierce, Fenner & Smith, et al.*, was later filed, against IFDA's former legal and financial advisors, as a class action on behalf of Illinois funeral homes that had deposited funds in the IFDA Trust.

Over the past three years, Wexler Wallace has expended countless hours litigating these cases, fending off motions to dismiss brought by over a dozen defendants, taking key depositions and reviewing over 1 million pages of discovery documents, while at the same time serving as a tireless advocate for its clients and the class in negotiations with state administrative agencies also investigating the defendants' conduct.

 Wexler Wallace has additionally not hesitated to protect the interests of the class in related litigation.  For example, when one of the defendants announced that it was entering into a settlement with a state agency that would require class members to release their legal claims in

order to participate, Wexler Wallace brought an action for declaratory and injunctive relief, and won.  The Court ruled that the agency did not have the authority to require members of the class to give up their claims in order to obtain what amounted to a partial recovery, and the money collected by the state was distributed to class members without this requirement.

## ATTORNEY BIOGRAPHIES

### *Kenneth A. Wexler*
### Founder

Kenneth A. Wexler, the founder of the firm, is a 1980 graduate of the Georgetown University Law Center.  He received a Bachelor of Arts degree in 1977, *summa cum laude*, from Washington University in St. Louis, Missouri.

For almost 30 years, Ken has devoted himself to helping those whose rights have been denied, or who have been victims of the unscrupulous or fraudulent actions of others, typically more powerful persons or entities.  Founder of Wexler Wallace, Ken was also a founding partner of the firm formerly known as Miller Faucher Cafferty and Wexler LLP.  Before then, he began his career and was a partner in the Chicago law firm now known as Much Shelist Dennenberg Ament & Rubenstein, PC.

Ken has been in leadership positions in cases with far-ranging subject matters, including brand name manufacturer suppression of competition from generic drugs, fraudulent and deceptive product overcharges, discrimination and harassment, corporate waste and mismanagement, cost recovery for defective medical devices, false advertising, and government fraud.  Ken's practice is devoted to complex class action and commercial litigation, which includes a substantial amount of health care litigation, claims brought under federal and various state false claims statutes, and cases alleging violations of the securities and antitrust laws.  At present, Ken is particularly focused on protecting issuers of municipal bonds, recovering losses for pension funds and other investors that were victimized by unlawful and improvident securities lending practices, and cost-recovery for victims of health care fraud, including Taft-Hartley Funds, self-insured employers and governments.

Ken is a member of the Chicago Bar Association, Illinois State Bar Association, Federal Bar Association, American Bar Association, Chicago Council of Lawyers, American Association for Justice (AAJ) and the Illinois Trial Lawyers Association.  He is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, United States District Court for the Northern and Southern Districts of Illinois, the United States Court of Appeals for the First, Second, Third, Sixth and Seventh Circuits and the United States Court of Appeals for the District of Columbia.  With so many of the firm's cases pending in jurisdictions across the country, Ken has also been admitted to practice *pro hac vice* in United States District Courts of New York, Maine, Massachusetts, Pennsylvania, New Jersey, Virginia, the District of Columbia, Missouri, Tennessee, Florida, New Mexico, Minnesota, Maryland, South Dakota, Connecticut, Ohio, California and Wisconsin.

Along with bar activities, Ken is a fellow of The Roscoe Pound Institute, a member of the American Constitution Society for Law and Policy, a member of the Center for International Legal Studies and the National Association of State Treasurers.

In addition to the cases reflected here and on the firm's Web site (www.wexlerwallace.com), Ken has held leadership positions in two class actions alleging fraudulent conduct under the Commodities Exchange Act.  These cases include *In re: First Commodities Corp. of Boston Customer Accounts Litg.*, MDL No. 713 (D. Mass.), and *Benfield v. Mocatta Metals Corp.*, Case No.91-8255 (S.D.N.Y.).

*Edward A. Wallace*
Partner

Edward A. Wallace is a 1995 graduate of DePaul University College of Law.  He received a Bachelor of Arts degree in 1991 from Eastern Illinois University.

Ed joined the firm in February 2000, a little over a month after its founding.  Since then, he has helped lead the firm to national prominence.  He became a partner of the firm in 2003 and joined Ken Wexler as an equity partner in 2006.  Ed focuses his practice on large scale multi-party complex litigation and he has been asked to serve in leadership positions in numerous high-profile cases, including recent appointments in securities litigation and mass torts.

Ed's hard work led to his recognition as a 2009 "Rising Star" by Super Lawyers for the practice areas of class actions and mass torts, an award given annually to no more than 2.5 percent (2.5%) of the lawyers in Illinois.  Ed also was rated by peers in the Bar and given an AV® Preeminent™ rating by Martindale-Hubbell,[3] the highest rating a lawyer can obtain, indicating a very high to preeminent legal ability and exceptional ethical standards.

He is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, the United States District Court for the Northern and Southern Districts of Illinois, the United States District Court for the Western District of Michigan, the United States District Court for the District of Colorado, the United States Court of Appeal for the Third and Seventh Circuits and has been admitted *pro hac vice* in many courts around the country.

Ed is a member of the American Bar Association and is a former Consumer Protection Law Subcommittee Newsletter Co-Chair, a member of the Chicago Bar Association, where he is a member of the Class Action Committee, a member of the Illinois State Bar Association, a

---

[3]  Martindale-Hubbell is the facilitator of a peer review rating process. Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories - legal ability and general ethical standards.  CV, BV and AV are registered certification marks of Reed Elsevier Properties Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.

member of the National Association of Shareholder and Consumer Attorneys, a member of Public Justice as well as a member of the American Association for Justice (AAJ). Within AAJ, he belongs to the Commercial Law Section, the Product Liability Section and the Section on Toxic, Environmental and Pharmaceutical Torts (STEP). At the AAJ's recent annual convention, Ed was re-elected co-chair for the Kugel Mesh Litigation Group.

### Amber M. Nesbitt
### Associate

Amber M. Nesbitt is a 2000 graduate of the University of Michigan, with a Bachelor of Arts in psychology and sociology. She received her J.D., *magna cum laude*, from Loyola University Chicago School of Law in 2004. At Loyola, she was a member of the Loyola University Law Journal and the Publication Editor of the Public Interest Law Reporter.

Amber began at Wexler Wallace as a summer associate while in law school, and joined the firm as an attorney upon graduating in 2004. In that time, she has been actively involved in several types of cases, from complex class action litigation involving nationwide claims to arbitration of business disputes and everything in between. A majority of her time is spent on antitrust, consumer fraud, and RICO cases, although she also has extensive experience with civil rights, securities, mass torts and shareholder derivative lawsuits. She is regularly involved in all aspects of litigation, from investigating potential cases, conducting and managing discovery, researching legal issues and drafting briefs at every stage of a lawsuit, preparing for trial, and mediating and negotiating settlements. Amber has first-chaired the arbitration of a partnership dispute directed to a complex business relationship and real estate transaction.

### Amy E. Keller
### Associate

Amy E. Keller is a 2005 graduate of the University of Michigan, with a Bachelor of Arts in Political Science, and a minor in French and Francophone Studies. She received her Juris Doctor from The John Marshall Law School in 2008.

As an undergraduate, Amy worked as a summer intern for the Honorable Denise Page Hood of the United States District Court for the Eastern District of Michigan. In 2004, she received national recognition for leadership while president of the governing body for Michigan's sixteen residence halls from the Great Lakes Affiliate of College and University Residence Halls.

During law school, Amy earned a CALI Award in both Real Estate Transactions and Criminal

Procedure.  She was member of the Moot Court Council and *The John Marshall Law Review*, and served as the Parliamentarian for John Marshall's chapter of the Lambda Alpha International Student Association. In her third year, as the Administrative Editor of the law review, Amy was selected to chair a state-wide symposium highlighting the revisions to the Illinois Criminal Code.  *The Criminal Law Edit, Alignment and Reform Initiative: A Symposium on the New Criminal Code*, 41 J. Marshall L. Rev. 610-935 (Spring 2008).

Amy has specialized in complex class action litigation since beginning her practice of law in 2008.   Amy has a particular fondness for consumer protection and, in addition, works on numerous business and antitrust matters for the firm.

Amy has been asked to master a variety of tasks in the practice of law.  She has assisted in seeking summary judgment on behalf of a class of Plaintiffs against a major insurance company, made several material discovery finds in significant antitrust litigation, and briefed numerous matters pending in federal courts in multiple jurisdictions.

*Dawn M. Goulet*
Associate

Dawn M. Goulet is a 2009 graduate, *magna cum laude*, of the Loyola University Chicago School of Law, where she was the recipient of an Honors at Entrance Academic Scholarship.  Dawn received her Bachelor of Science in Architecture, *cum laude*, from Lawrence Technological University, Southfield, MI in 2002.  First as a paralegal and now as an attorney, Dawn has been actively involved in many of the firm's most complex cases, including its extensive healthcare litigation practice.  Dawn is often the point person for client contact and has an excellent grasp of all phases of litigation, from case initiation through discovery and ultimate resolution.

Dawn began her legal career as a member of the firm's support staff over eight years ago.  As a paralegal, she developed a passion for complex litigation that led her to law school.  She immersed herself in a curriculum of consumer protection, antitrust, class action litigation, products liability and pharmaceutical regulation, received CALI awards for obtaining the highest grade in a number of her classes, and graduated at the top of her class.  Dawn's familiarity with complex litigation now serves her well as a new associate.

At Loyola, Dawn was the recipient of academic honors and demonstrated leadership as as the Consumer News Editor and executive board member for the Consumer Law Review.  Because of the interest and experience she developed at Wexler Wallace, Dawn was also selected, as a first year law student, to join the Institute for Consumer Antitrust Studies' student fellowship, which is limited to students with demonstrated interest or experience in antitrust and consumer

protection, and who maintain grades at the top of their class.  As a student fellow, Dawn attended the ABA Antitrust Spring Meeting in Washington, D.C., as well as a series of Institute-led events attracting renowned scholars and practitioners in the field of antitrust.  As a third year student at Loyola, Dawn was also one of six law students from Chicago-area law schools featured in the September, 2008 issue of Chicago Lawyer magazine.

Now in her third year of practicing law, Dawn works tirelessly to improve her skills to better serve the firm's clients.  She is an active member of the Chicago Bar Association, Illinois Bar Association, American Association for Justic, Illinois Trial Lawyers Association and American Bar Association, including its Class Action and Derivative Suit Committee, for which she serves as a consumer law sub-committee co-chair.

### Bethany R. Turke
**Associate**

Bethany joined Wexler Wallace after practicing in the New York and Chicago offices of Latham & Watkins LLP.  Bethany's practice at Latham involved a wide range of complex civil and criminal litigation matters, including securities litigation, contract disputes, government investigations, and employment matters.  She was also very active in Latham's pro bono practice, working tirelessly on behalf of clients facing various immigration, employment, and housing discrimination issues.  Before joining Latham & Watkins, Bethany served as a law clerk to the Honorable Cheryl L. Pollak of the United States District Court for the Eastern District of New York.  She received her J.D. from Harvard Law School in 2006.

Bethany is actively involved on cases in a number of Wexler Wallace's practice specialties, including the firm's antitrust, healthcare, and consumer protection practice areas.

### Justin N. Boley
**Associate**

After attending school abroad and obtaining a Masters Degree in International Relations, Justin sought out a career in law that led him to Wexler Wallace.  He attended law school after earning a merit scholarship, and then began work at the firm as a summer associate and clerk during the school year.

During law school, Justin's focus on corporate law, finance, and complex litigation earned him numerous academic honors; he was awarded top-of-the-class CALI Awards in Antitrust, Contracts, Legal Analysis, Research, and Writing III, Commercial Arbitration, Natural Resource Law, and Legal Profession (Ethics).  Justin was a member of the Public Interest Law Committee at DePaul College of Law for three years.  He also worked as a member of the New Media Team

in President Obama's Presidential campaign headquarters in Chicago, where he helped facilitate the online organizing efforts of grassroots groups nationwide.

Since joining the firm, he has been actively involved in litigation covering a wide range of practice specialties, including antitrust class actions, a matter involving complex multistate breaches of contract and fiduciary duty, and an international multidistrict product liability case. Justin is admitted to the bar of the State of Illinois, Western District of Wisconsin and the United States District Court for the Northern District of Illinois.

*Mark R. Miller*
Associate

Mark R. Miller is a 2001 graduate of Central Michigan University, with a Bachelor of Science in History.  He received his J.D. from Loyola University Chicago School of Law in 2004.

Before joining Wexler Wallace, Mark represented both plaintiffs and defendants at all stages of litigation and in various areas of the law.  He has first-chaired a bench trial and successfully argued a motion for class certification in a multimillion dollar case.

At Wexler Wallace, Mark has been engaged in virtually all facets of complex litigation on the plaintiffs' side.  He has enhanced the firm's reputation and developed solid relationships with judges, co-counsel and clients alike.

Mark's charitable work has demonstrated his commitment to protecting the right of all persons, regardless of social or economic background, to obtain able representation.  His work with local businesses has given him an understanding of the importance of the legal system's role in protecting the interests of small business and consumer clients from trade violations and other abuses of market power.

While at Loyola, he obtained a Trial Advocacy Certificate, received awards for his work with local small businesses, was chosen by faculty members to participate in Loyola's London Comparative Advocacy Program and provided pro bono legal services to the indigent through the Cabrini Green Legal Aid clinic.  He currently coaches Loyola's Chicago Bar Association Moot Court Team.  Mark is admitted to the bar of the State of Illinois and the United States District Court for the Northern District of Illinois.

### Michael H. Bowman
#### Associate

Michael H. Bowman received his J.D. from Rutgers University in May of 2004. In law school, Mike was immersed in complex financial cases as a creditor's rights law clerk. After graduation, he began his career by working to defend litigation brought against the federal government. His commitment to holding wrongdoers accountable through the judicial system brought him to Wexler Wallace in 2006.

At Wexler Wallace, Mike has been involved in many of the firm's diverse practice areas. From antitrust class actions to mass torts, Mike has sought results for individuals and businesses who would otherwise be denied relief. Mike's devotion to achieving results that create widespread positive change exemplifies what Wexler Wallace is all about.

### Kara A. Elgersma
#### Of Counsel

Kara A. Elgersma is a 2000 graduate of Georgetown University Law Center, with Bachelor of Arts Degrees in English and History, obtained from the University of Kansas in 1997.

Kara came to Wexler Wallace from K&L Gates LLP, where she was a partner. At K&L Gates, Kara was a member of the Antitrust and Trade Regulation Department, focusing on antitrust litigation, franchising and dealership disputes, class actions and other complex commercial litigation, as well as advising clients on a variety of regulatory matters, including antitrust, FCC and energy regulatory policies.

Kara's experience includes all aspects of complex commercial litigation.  In addition, she is well-versed in arbitration, including pre-hearing case development and management, as well as the conduct of full hearings.

For six months in 2004, Kara was "on loan" to Kraft Foods Global, Inc., Northfield, Illinois, where she directly assisted the Chief Litigation Counsel for the company, and handled a wide variety of litigation matters, including small and large product liability claims, general commercial litigation, civil investigative demands from the Federal Trade Commission, business subpoenas, labor and employment litigation and bankruptcy matters.

She is admitted to the Bars of the Supreme Court of Illinois, The District of Columbia Court of Appeals, The Supreme Court of Wisconsin, The United States District Courts for the Northern District of Illinois and the District of Columbia, the District Court of Colorado, the United States

Courts of Appeals for the Third, Fourth, Sixth, Seventh, and Tenth Circuits, and the Supreme Court of the United States.

Kara is a member of the American Bar Association, the Illinois State Bar Association, and the District of Columbia Bar Association.  She was a Board Member of the Competition Law360 Advisory Board for 2009 to 2010, and has been involved as a Board Member for Girls on The Run in Northern Virginia, as well as a volunteer with Chicago Volunteer Legal Services from 2000-2006.

### Corey G. Raines
### Associate

Corey's primary practice area at Wexler Wallace LLP is mass tort litigation.  While in law school she actively engaged in the study of civil litigation and trial advocacy, where she was a member of the Moot Court Society and was a semi-finalist in the Intramural Moot Court Competition. She has applied these skills to her practice of law with Wexler Wallace where she works with clients that have been injured by the use of Actos, Pelvic Mesh and Yaz. Corey graduated from the DePaul University College of Law in 2011.

### Debbie A. Pritts
### Legal Nurse Consultant

Debbie A. Pritts, R.N., LNCC is a Registered Nurse with over 20 years of clinical experience in Oncology, Med-Surg, Endoscopy, Ambulatory/Outpatient Care, Orthopedics, Ophthalmic Laser, Home Health and Utulization Review.  She has been certified in BLS (Basic Life Support), ACLS (Advanced Cardiac Life Support) and Chemotherapy Administration. Debbie achieved the status as Legal Nurse Consultant Certified (LNCC) through the American Association of Legal Nurse Consultants (AALNC) in November 2005.  LNCC certification is designated after successfully meeting the requirements through examination and experience that validate qualifications, knowledge and practice in the field of legal nurse consulting.  LNCC is the only legal nurse consulting credential recognized by American Association of Legal Nurse Consultants and accredited by the American Board of Nursing Specialties (ABNS).

Debbie has experience in Product Liability, Medical Malpractice, Personal Injury and Workers Compensation. Debbie is a member of the American Association of Legal Nurse Consultants and the West Virginia Upper Ohio Valley Chapter of the AALNC, presently serving as the chapter's president.  She has been a Member of the Board of Directors since 2005, serving as a past Treasurer and is Chair of the Website Committee.  Additionally she is a founding member of the WV Bar Association, Legal Nurse Consultant Section.

She works directly with clients of Wexler Wallace, from the first time they contact the firm, through trial.  Her expertise and passion for the job has provided the firm's clients with the service they deserve.