**KOREIN TILLERY**
Steven A. Katz
skatz@koreintillery.com
Aaron M. Zigler
azigler@koreintillery.com
One U.S. Bank Plaza
505 N. 7th St., Suite 3600
St. Louis, MO 63101-1625
Tel: (314) 241-4844  Fax: (314) 241-3525

[Additional Counsel Appear on Second Page]

Attorneys for Moving Parties

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>        Defendant. | Case No. CV 11-01726 LHK (PSG)<br><br>**DECLARATION OF STEVEN A. KATZ IN FURTHER SUPPORT OF MOTION TO INTERVENE**<br><br>Date:      July 12, 2012<br>Time:     1:30 p.m.<br>Courtroom: 8<br>Judge:    Hon. Lucy H. Koh<br>Trial Date: December 3, 2012 |

## DECLARATION OF STEVEN A. KATZ

I, Steven A. Katz, being first duly sworn upon my oath, depose and state as follows:

      1.     I certify that the statements set forth in this instrument are true and correct. I make the following statements based on my personal knowledge and if called, I could competently testify to the matters stated herein.

2.      I graduated from Washington University School of Law in 1989 and have practiced in the area of complex litigation and torts since that time.

3.      I am admitted to practice before the state courts of Illinois, Missouri and Michigan, federal district courts in Illinois, Missouri and Alabama, the Fourth, Seventh, Eighth and Ninth Circuit Court of Appeals and the United States Supreme Court.

4.      I have served as Adjunct Professor of Legal Studies: Webster University, 1993-1997 and National Institute for Paralegal Studies, 1992-1993. I am the author of 12 Missouri Practice, Jurisdiction, Venue, Limitations (2d ed. West 1994) and 16 Missouri Practice, Civil Rules Practice (2d ed. West 1998).

5.      I joined Korein Tillery's predecessor firm in 1995 and became a partner in the firm in 1999.

6.      I am familiar with class action issues and law in state and federal courts, and am particularly well-versed in multi-state class action litigation problems. I am currently involved in numerous class action cases involving such issues as ERISA, consumer fraud, antitrust, and breach of contract.

7.      In my career, I have handled individually or as lead counsel hundreds of complex civil cases and have been actively engaged in trial and appellate work for more than 20 years.

8.      I have been appointed as class counsel in such cases as: *Berger v. Xerox Corp. Ret. Income Guar. Plan*, No. 00-584-DRH (S.D. Ill. Dec. 5, 2003); *Berkowitz v. Nat'l Westminster Bancorp Ret. Plan*, 2000 WL 852451 (D. Conn. Mar. 30, 2000); *Call v. Ameritech Mgmt. Pension Plan*, No. 01-717-GPM (S.D. Ill. Aug. 26, 2003); *City of Univ. City, Mo. v. AT&T Wireless Servs., Inc.*, No. 01-CC-004454 (Mo. Cir. Ct. Aug. 30, 2007);  *Clevenger v. Dillards, Inc.*, No. 02-558 (S.D. Ohio Nov. 31, 2006); *Cooper v. The IBM Pers. Pension Plan*, No. 99-829 GPM (S.D. Ill. May 19, 2005); *Dunn v. BOC Group Pension Plan*, No. 01-CV-382-DRH (S.D. Ill. Dec.

11, 2003); *Esden v. Bk. of Boston*, 182 F.R.D. 432 (D. Vt. Sept. 28, 1998); *Graf v. Automatic Data Processing*, No. 00-694-GPM (S.D. Ill. June 18, 2001); *In Re: MCI Non-Subscriber Tel. Rates Litig.*, No. MDL 1275 (S.D. Ill. Jan. 12 2001); *Laurenzano v. Blue Cross/Blue Shield of Mass. Ret. Income Trust*, No. 99CV11751 (D. Mass. Apr. 30, 2002); *Malloy v. Ameritech*, No. 98-488-GPM (S.D. Ill. May 3, 2000); *Mangone v. First USA Bk., N.A.*, 2000 WL 33529651 (S.D. Ill. Nov. 21, 2000); *May v. SmithKline Beecham Corp.*, No. 98-108-WDS (S.D. Ill. May 31, 2001); *Medeika v. S. New Eng. Tel.*, No. 97CV01123 (D. Conn. Aug. 9, 1999); *Patterson v. Nations Bk.*, No. 99-481-PER (S.D. Ill. July 29, 1999); *Rice v. Nat'l Steel*, No. 98-L-98 (Ill. Cir. June 30, 1999); *Sullivan v. DeBeers, A.G.*, No. 04-2819 (D.N.J. Nov. 30, 2005); *Tullock v. K-Mart Corp. Employee Pension Plan*, No. 99-289-DRH (S.D. Ill. Feb. 22, 2002); *Williams v. Rohm & Haas Pension Plan*, No. 04-78 (S.D. Ind. Nov. 21, 2004); and others.

9.     Other members of my law firm and I have been involved in numerous class action cases and have considerable experience prosecuting class actions. Korein Tillery is one of the Nation's leading plaintiffs' law firms with concentration in complex litigation and class actions. A substantial portion of the firm's practice is the representation of plaintiffs and plaintiff classes in a variety of class actions, primarily in the area of deceptive trade practices and consumer fraud, pharmaceutical class actions, pension fund violations, antitrust violations and unfair telecommunications practices.

10.     Korein Tillery has been named by the National Law Journal in its 2003, 2004, 2007, 2008 and 2011 "Plaintiffs' Hot List" as one of the top Plaintiffs' firms from all specialties. The American Bar Association's Securities Litigation Journal deemed two of Korein Tillery's cases, *Kircher v. Putnam Funds Trust,* 547 U.S. 633 (2006) and *Merrill Lynch Pierce Fenner & Smth, Inc. v. Dabit,* 547 U.S. 71 (2006), the two most important securities law decisions in 2006. Securities Litigation Journal, *Top 10 Securities Law Decisions of 2006* (Winter 2006).  In

*Kircher*, Korein Tillery served as lead counsel for the plaintiffs' class from the initial trial court filing to the Supreme Court of the United States, where the Court reversed the Seventh Circuit in a 9-0 decision. In *Dabit*, Korein Tillery assisted the plaintiffs' class after the U.S. Supreme Court granted *certiorari*.

11.     Korein Tillery has been appointed as class counsel in more than fifty class actions[1] and has successfully negotiated some of the country's largest settlements. *See, e.g., Parker v.*

[1] *See, e.g., Asbury v. May Dep't Store Co. Ret. Plan*, No. 97-667-GPM (S.D. Ill. May 3, 1999); *Barbara's Sales Inc. v. Intel Corp.*, 2004 WL 5723558 (Ill. Cir. July 12, 2004); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, No. 00-584-DRH (S.D. Ill. Dec. 5, 2003); *Berkowitz v. Nat'l Westminster Bancorp Ret. Plan*, 2000 WL 852451 (D. Conn. Mar. 30, 2000); *Brentwood Travel Serv., Inc. v. DCT Enter.*, No. 03CC-2857 (Mo. Cir. Ct. June 13, 2007); *Call v. Ameritech Mgmt. Pension Plan*, No. 01-717-GPM (S.D. Ill. Aug. 26, 2003); *Chultem v. Ticor Title Ins. Co.*, 927 N.E.2d 289 (Ill. App. Ct. 2010); *City of Univ. City, Mo. v. AT&T Wireless Servs., Inc.*, No. 01-CC-004454 (Mo. Cir. Ct. Aug. 30, 2007); *Clevenger v. Dillards, Inc.*, No. 02-558 (S.D. Ohio Nov. 31, 2006); *Clutts v. Allstate Ins. Co.*, No. 02-L-226 (Ill. Cir. Dec. 6, 2005); *Collora v. R.J. Reynolds Tobacco Co.*, 2003 WL 23139377 (Mo. Cir. Ct. Dec. 31, 2003); *Cooper v. The IBM Pers. Pension Plan*, No. 99-829 GPM (S.D. Ill. May 19 2005); *Craft v. Philip Morris, Inc.*, 2003 WL 23355745 (Mo. Cir. Ct. Dec. 31, 2003); *Crockett v. U.S. Sales Corp.*, No. 98-L-1057 (Ill. Cir. Apr. 5, 2000); *Dunn v. BOC Group Pension Plan*, No. 01-CV-382-DRH (S.D. Ill. Dec. 11, 2003); *Esden v. Bk. of Boston*, 182 F.R.D. 432 (D. Vt. Sept. 28, 1998); *Folkerts v. Ill. Bell Tel. Co.*, No. 95-L-912 (Ill. Cir. Jan. 7, 1998); *Fun Serv. of Kan. City, Inc. v. AMF Bowling, Inc.*, No. 03-DV-203690 (Mo. Cir. Ct. Apr. 22, 2005); *Gans v. Leiserv, Inc.*, No. 02CC-002115 (Mo. Cir. Ct. Oct. 6, 2004); *Gans v. Seventeen Motors, Inc.*, No. 01-L-478 (Ill. Cir. July 1, 2002); *Graf v. Automatic Data Processing*, No. 00-694-GPM (S.D. Ill. June 18, 2001); *Harris v. Roto-Rooter Servs. Co.*, No. 00-L-525 (Ill. Cir. Nov. 17, 2005); *Howard v. Brown & Williamson Tobacco Co.*, 2001 WL 1910779 (Ill. Cir. Dec. 18, 2001); *Hoormann v. SmithKline Beecham Corp.*, 2006 WL 3869484 (Ill. Cir. Oct. 6, 2006); *Hoyleton Youth & Family Servs. v. Surrey Vacation Resorts, Inc.*, No. 03-L-0507 (Ill. Cir. Mar. 18, 2011); *In Re: MCI Non-Subscriber Tel. Rates Litig.*, No. MDL 1275 (S.D. Ill. Jan. 12 2001); *JC Hauling v. Capital Assoc.*, No. 02-L0425 (Ill. Cir. Feb. 9, 2005); *Joiner v. Ameritech Mobile Commc'ns*, No. 96-L-121 (Ill. Cir. Aug. 8, 2000); *Kaiser v. Cigna Corp*, 2001 WL 36180948 (Ill. Cir. Apr. 20, 2001); *Kohl v. Am. Trial Lawyers Ass'n*, No. AW-97-3264 (D. Md. Nov. 2, 1999); *Laurenzano v. Blue Cross/Blue Shield of Mass. Ret. Income Trust*, No. 99CV11751 (D. Mass. Apr. 30, 2002); *Lawrence v. Philip Morris USA, Inc.*, No. 09-CV-519 (N.H. Nov. 22, 2010); *Little L.L.C. v. Brinker Mo., Inc.*, 2005 WL 6191055 (Mo. Cir. Ct. Sept. 23, 2005); *Malloy v. Ameritech*, No. 98-488-GPM (S.D. Ill. May 3, 2000); *Mangone v. First USA Bk., N.A.*, 2000 WL 33529651 (S.D. Ill. Nov. 21, 2000); *Mansfield v. Air Line Pilots Ass'n*, No. 06-cv-06869 (N.D. Ill. July 9, 2007); *May v. SmithKline Beecham Corp.*, No. 98-108-WDS (S.D. Ill. May 31, 2001); *Meyer v. HomEq Servicing Corp.*, No. 05-L-208 (Ill. Cir. Nov. 16, 2011); *Medeika v. S. New Eng. Tel.*, No. 97CV01123 (D. Conn. Aug. 9, 1999); *Nichols v. B.P. Am. Pension Plan*, No. 01-C-6238 (N.D. Ill. July 15, 2002); *Nichols-Siedhoff v. Ameritech Corp.*, No. 01-L-456 (Ill. Cir. Feb. 6, 2004); *Null v. D.B. Inv., Inc.*, No. 05-L-209 (Ill. Cir. July 22, 2005); *Parker v. Sears, Roebuck & Co.*, No. 04-L-716 (Ill. Cir. Sept. 18, 2007); *Patterson v. Nations Bk.*, No. 99-481-PER (S.D. Ill. July 29, 1999); *Peterson v. State Farm Mut. Auto. Ins. Co.*, 2000 WL 35641572 (Ill. Cir. Dec. 21, 2000); *Pierce v. Gold Kist*, No. CV-97-L-0748-5 (N.D. Ala. Aug. 11, 1997); *Prather v. Pfizer Inc.*, No. 02-L-480 (Ill. Cir. Mar. 2, 2004); *Price v. Philip Morris Inc.*, 2001 WL 34366710 (Ill. Cir. Feb. 6, 2001); *Rice v. Nat'l Steel*, No. 98-L-98 (Ill. Cir. June 30, 1999); *Richardson v. Fairchild Space & Def.*, No. 99-1867 (M.D. Pa. Oct. 9, 2001); *Rogers v. Tyson Foods, Inc.*, 2007 WL 6712021 (Ill. Cir. Aug. 17, 2007); *Seifert v. May Co. Ret. Plan*, No. 96-1028-GPM (S.D. Ill. May 3, 1999); *Shuppert v. Blair Down*, No. 00-L-223 (Ill. Cir. Feb. 18, 2004); *Sims v. Allstate Ins. Co.*, 2000 WL 35751322 (Ill. Cir. Dec. 21, 2000); *Sparks v. Lucent Tech.*, 2001 WL 36208888 (Ill. Cir. July 27, 2001); *State of Mo. v. SBC Commc'ns, Inc.*, No. 22044-02645 (Mo. Cir. Ct. Nov. 9, 2009); *Sullivan v. DeBeers, A.G.*, No. 04-2819 (D.N.J. Nov. 30, 2005); *Synfuel Tech. v. Airborne Inc.*, No. 02-CV-324-DRH (S.D. Ill. Oct. 31, 2003); *Todt v. Ameritech Corp.*, No. 97-L-1020 (Ill. Cir. Nov. 12, 1997); *Tullock v. K-Mart Corp. Employee Pension Plan*, No.

*footnote continued on following page....*

Declaration of Steven A. Katz in Further Support of Motion to Intervene; Case No. CV11-01726 LHK

*Sears Roebuck & Co.*, No. 04-L-716 (Ill. Cir. Ct. Jan. 16, 2008) (settlement valued at $544.5

million); *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee Benefits Cas.

2488 (S.D. Ill. Aug. 8, 2005) ($325 million settlement); *Sparks v. AT&T Corp.*, 96-LM-983 (Ill.

Cir. Ct. Nov. 4, 2002) ($350 million settlement); *Sullivan v. DB Investments, Inc*, 04-2819 (D.

N.J. May 22, 2008) ($323 million settlement); *Folkerts v. Illinois Bell Tel. Co.*, 95-L-912 (Ill. Cir.

Ct. July 7, 1998) ($252 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004

WL 287902, 32 Employee Benefits Cas. 1362 (S.D. Ill. Jan. 22, 2004) ($240 million settlement);

*Williams v. Rohm & Hass Pension Plan*, 2010 WL 1490350 (S.D. Ind. Apr. 12, 2010) ($180

million settlement); *Malloy v. Ameritech*, 98-488-GPM (S.D. Ill. July 21, 2000) ($180 million

settlement); *In Re: MCI Non-Subscriber Tel. Rates Litig.*, MDL 1275 (S.D. Ill. Apr. 19, 2001)

($99 million settlement); and *Dunn v. BOC Group Pension Plan*, 01-CV-382-DRH (S.D. Ill. Mar.

12, 2004) ($70 million settlement).

      12.     Korein Tillery's settlement in *Prather v. Pfizer Inc.*, 02-L-480 (Ill. Cir. Ct. 2004),

was used as an example of why state court based class actions serve the public good and the Class

Action Fairness Act should not become law.  *See* 150 Cong. Rec. 92, S7714-17 (July 7, 2004

statement of Sen. Durbin); 151 Cong. Rec. 12, S1082-85 (February 8, 2005 statement of Sen.

Durbin).

      13.     Members of the firm have substantial knowledge and expertise in complex

litigation.  The following are descriptions of a few of the complex cases in which this firm is or

has been involved:

      a.     *Williams v. Rohm & Hass Pension Plan*, 2010 WL 1490350 (S.D. Ind. Apr.

---

99-289-DRH (S.D. Ill. Feb. 22, 2002); *Turner v. R.J. Reynolds Tobacco Co.*, No. 00-L-113 (Ill. Cir. Nov. 14, 2001);
*Vollmer v. PCH*, No. 99-434-GPM (S.D. Ill. June 30, 1999); *Wagner v. Lowe's Home Ctrs., Inc.*, No. 02-L-690 (Ill.
Cir. Jan. 14, 2008); *Wheeler v. Sears, Roebuck & Co.*, No. 99-L-529 (Ill. Cir. Apr. 17, 2003); *Wilgus v. Cybersource*,
No. 02-L-995 (Ill. Cir. Aug. 30, 2004); *Williams v. Am. Equity Mortgage, Inc.*, No. 05-L-207 (Ill. Cir. July 21, 2011);
*Williams v. Con Agra*, No. 97-L-373 (Ill. Cir. Oct. 31, 1997); *Williams v. Rohm & Haas Pension Plan*, No. 04-78
(S.D. Ind. Nov. 21, 2004).

12, 2010). Korein Tillery filed this matter in 2002 alleging that the Rohm & Haas Pension Plan violated ERISA by failing to include the value of future cost-of-living adjustments in calculating lump-sum distributions from the Plan. After eight years of litigation, Korein Tillery obtained one of the largest settlements in the history of ERISA – $180 Million. In 2006, the case was certified and Plaintiffs won summary judgment convincing the district court that the terms of the Plan violated ERISA because a COLA is an "accrued benefit" requiring that it be included in lump-sum distributions. The district court's decision was affirmed on interlocutory appeal. *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007) ("If a defined benefit pension plan entitles an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution."), *cert. den.*, 128 S.Ct. 1657 (2008).

After the case was remanded, the parties filed cross-motions for summary judgment on statute of limitations. The Plan argued that the Pennsylvania four-year limitations period for breach of contract applied; the plaintiffs argued that the statute of limitations defense failed because a provision of the Plan that allows a participant 90 days within which to file suit following a final denial of any claim. The district court agreed with the plaintiffs and found the class properly included persons who received lump sums as far back as the effective date of ERISA -- January 1, 1975. *Williams v. Rohm & Haas Pension Plan*, 2008 WL 4628114 (S.D. Ind. Oct. 17, 2008), *recons. den.*, 2009 WL 382628 (S.D. Ind. Feb. 11, 2009).

The Plan also argued that Class members who received "subsidized" early retirement benefits were not entitled to the value of the COLA and that no Class members were entitled to prejudgment interest owing to their delay in bringing claims. But Korein

Tillery effectively argued these arcane questions under ERISA, the tax laws and other authorities, some of which had never been faced by any court. The authorities and arguments it marshaled eventually brought the Plan to engage seriously in settlement discussions.

After almost eight years of litigation and over eighteen months of protracted and difficult negotiations, the parties reached a settlement valued at $180 Million. Under the settlement, all 11,000 Class members who had taken lump sum distributions of their retirement benefits will receive cash, with an average award being over $9,000. For Class members who have not yet retired, the settlement requires the Plan to be amended to provide approximately $40 Million in additional benefits to participants. *Williams v. Rohm & Hass Pension Plan*, 2010 WL 1490350 (S.D. Ind. Apr. 12, 2010).

b.    *Mansfield v. ALPA*, 06-c-6869 (N.D.Ill. Dec. 14, 2009). Beginning in 2001, United Airlines encountered financial difficulties that ultimately culminated in its filing for bankruptcy protection. During the course of United's reorganization in bankruptcy, United sought to terminate its pilots' defined benefit pension plan. In exchange for ALPA's agreement not to oppose the termination of the pension plan, United agreed to provide ALPA with $550 million in convertible notes. ALPA, through its United Airlines Master Executive Council ("MEC"), was tasked with allocating the proceeds from the sale of the convertible notes among the pilots. The MEC selected an allocation method that divided the note proceeds based upon each pilot's lost accrued benefits and lost projected benefits.

Plaintiffs filed this case in 2006 contending that ALPA breached its duty of fair representation in discriminating between its members in allocating the proceeds from the sale of $550 million in convertible notes. Plaintiffs prevailed on a number of complex and

novel issues in the trial court. For example, ALPA moved to exclude retirees from the class, arguing that a union owes no duties to retired pilots under the Railway Labor Act. The court denied ALPA's motion, agreeing with Plaintiffs that because ALPA represented the retirees when it negotiated the convertible notes, it owed them a duty even though the retirees were no longer a part of the bargaining unit. *Mansfield v. ALPA*, 2007 WL 2903074 (N.D.Ill. Oct. 1, 2007). Plaintiffs also successfully opposed ALPA's and United's motions for summary judgment. *Mansfield v. ALPA*, 2009 WL 2386281 (N.D.Ill. Jul. 29, 2009). Plaintiffs' successful opposition to summary judgment represents a significant victory for a plaintiff in a duty of fair representation case under the Railway Labor Act, as a court's review of a union's actions is very deferential. E.g *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65 (1991).

After additional litigation, ALPA moved to decertify the class, arguing that Plaintiffs' alternative damage theories created a conflict of interest such that class certification was no longer proper. The court again sided with Plaintiffs, holding that certification was proper, and that any potential conflict of interest could be addressed by supplemental notice. *Mansfield v. ALPA*, 2009 WL 2601296 (N.D.Ill. Aug. 20, 2009).

Finally, just two-weeks before trial was set to begin, and following nearly four years of hard-fought litigation, the production and review of over 1.5 million pages of documents, and nearly 40 depositions, the parties reached a settlement that resolved this action. Under the terms of the settlement, ALPA funded an aggregate settlement fund of $44 million to be directly paid to class members. *Mansfield v. ALPA*, No. 06C6869 (N.D.Ill. Dec. 14, 2009). The settlement is believed to be one of the largest ever in a duty of fair representation case, in which unions are sued over their responsibility to fairly represent their members.

c.      *State of Missouri v. SBC Communications, Inc.*, 044-02645 (Mo. Cir. Ct.); *University City v. AT&T Wireless Services, Inc.*, No. 01-CC-4454 (Mo. Cir. Ct.). In 2001, municipal attorneys, John F. Mulligan, Jr. and Howard Paperner, filed a class action on behalf of Missouri municipalities against cellular phone providers for failing to pay municipal license taxes. The carriers denied liability claiming that they did not provide "telephone service" or "exchange telephone service" as required by local ordinances. In 2004, a similar action was filed against Southwestern Bell to recover unpaid taxes for landline telephone services.

After meeting enormous and unified resistance from numerous national defense firms, Mulligan and Paperner retained Korein Tillery in 2004 to lead the litigation. Shortly thereafter the defendants sponsored legislation in Missouri to eliminate the litigation and alter the ability of municipalities to bring similar class actions. The state legislature then passed a law granting the carriers back-tax immunity, and requiring the dismissal of the pending tax collection suits. Korein Tillery challenged the industry-backed bill as unconstitutional and the Missouri Supreme Court overturned the law in two unanimous opinions, *City of Wellston v. SBC Commc'ns*, 203 S.W.3d 189 (Mo. banc 2006), and *City of Univ. City v. AT&T Wireless*, 203 S.W.3d 197 (Mo. banc 2006). Following remand and additional litigation, including the defense of tax protest suits brought by carriers throughout the State of Missouri, Korein Tillery was able to resolve the litigation with all of the defendants.

In August 2007, the Circuit Court of St. Louis County granted preliminary approval to a settlement between one of the defendants, Verizon Wireless, and the municipalities, that calls for Verizon's payment of approximately $25,000,000 in back taxes, plus payment of municipal license taxes at existing rates going forward. This

settlement was finally approved in December of 2007. *City of Univ. City v. AT&T Wireless Services Inc.*, (Verizon) 01-CC-4454 (Mo.Cir.Ct. Dec. 20, 2007). Shortly thereafter, AT&T Wireless agreed to pay $76.3 million, Sprint Nextel agreed to pay $52 million and US Cellular has agreed to pay $5 million to 228 municipalities and counties in Missouri as well as agreeing to pay all future business license taxes. *City of Univ. City v. AT&T Wireless Services Inc.*, (US Cellular) 01-CC-4454 (Mo.Cir.Ct. Feb. 22, 2008); *City of Univ. City v. AT&T Wireless Services Inc.*, (AT&T) 01-CC-4454 (Mo.Cir.Ct. Apr. 18, 2008); *City of Univ. City v. AT&T Wireless Services Inc.*, (Sprint) 01-CC-4454 (Mo.Cir.Ct. Apr. 18, 2008). Missouri Lawyers Weekly named the AT&T, Sprint Nextel and Verizon settlements as three of the five largest business verdicts or settlements in Missouri in 2007. Will Connaghan and Heather Cole, *Top Verdicts & Settlements*, 22 Mo. Lawyers Weekly (Jan 28, 2008). Similar statewide settlements were reached with Alltel and Cricket consistent with their market penetration.

On November 9, 2009, a $65 million settlement was approved to resolve Southwestern Bell's landline tax liability. *State of Missouri. v. SBC Communic'ns, Inc.*, 044-02645 (Mo. Cir. Ct. Nov. 9, 2009). The settlement was the second largest settlement in the State for 2009, according to Missouri Lawyers Weekly. Heather Cole, *Top Verdicts & Settlements*, Mo. Lawyers Weekly (Feb. 1, 2010).

Finally, on June 28, 2010, the St. Louis County Circuit Court granted preliminary approval of a $55 million settlement of T-Mobile's back-tax liability. *City of Univ. City v. AT&T Wireless*, No. 01-cc-004454 (Mo.Cir.Ct. Jun. 28, 2010). In prosecuting these matters, Korein Tillery succeeded at every level from trial courts throughout the state, the Missouri Supreme Court, and at the negotiating table in recovering more than $250 million back-taxes for cash-strapped Missouri municipalities. In addition, as part of the

settlements, all carriers agreed to abandon their attempts to avoid the municipal taxes and to satisfy their future tax liability to the municipalities at existing rates. With prospective taxes easily expected to top $1 billion in the coming decade, Korein Tillery has dramatically assisted in maintaining the solvency of Missouri's cities.

       d.      *Chultem v. Ticor Title Ins. Co.*, 927 N.E.2d 289 (Ill. App. Ct. Apr. 15, 2010). In 2006, Korein Tillery filed a pair of cases in Circuit Court of Cook County, Illinois, contesting the legality of "attorney agent" programs operated by Ticor Title Insurance Company and Chicago Title Insurance Company. *Chultem v. Ticor Title Ins. Co.*, No. 06-9488; *Colella v. Chicago Title Ins. Co.*, No. 06-09489. Both cases allege violations the Illinois Title Insurance Act, the Real Estate Settlement Procedures Act ("RESPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act by paying their attorney agents kickbacks for the referral of title insurance business under the pretext that the attorney agents were performing title examination services. The alleged kickbacks, which were not disclosed to the buyers or sellers, represented approximately 70% of the title insurance premiums in the transactions at issue.

      As a general matter, courts have not treated actions under RESPA as amenable to class certification. On Plaintiffs' first attempt to certify the two cases are class actions, the circuit court denied Plaintiffs' motions because individual issues predominated, but allowed Plaintiffs to file amended motions for class certification. Following extensive discovery, Plaintiffs crafted narrowly-tailored class definitions to satisfy the predominance requirement and avoid the "reasonableness" inquiry that has doomed nearly every attempt to certify a class under RESPA. Plaintiffs then moved the circuit court to certify the two cases as class actions under their new class definitions. After briefing and oral argument, the circuit court denied the motions by Order dated May 26, 2009.

The Appellate Court of Illinois took Plaintiffs' permissive appeal on the issue of class certification, reversed the circuit court, and remanded with instructions to certify both cases as class actions. *Chultem v. Ticor Title Ins. Co.*, 927 N.E.2d 289 (Ill. App. Ct. Apr. 15, 2010). The appellate court's decision validates Plaintiffs' class definitions, and Plaintiffs' now-certified classes represent two of the few successful attempts to certify classes under RESPA. In addition, Plaintiffs' success in certifying the classes sets the stage for recovering at trial millions of dollars in allegedly illegal kickbacks paid by Defendants to their attorney agents at the expense of buyers and sellers of real estate in Illinois.

   e.  *In re Motor Fuel Temperature Sales Prac. Litig.*, MDL 1840, 2010 WL 2160889 (D. Kan. May 28, 2010). Korein Tillery currently serves as co-lead counsel for the putative class in this Multi-district litigation. *In Re Motor Fuel Temperature Sales Prac. Litig.*, MDL No. 1840 (D. Kan. Sep. 12, 2007). *In Re Motor Fuel Temperature Sales Prac. Litig.*, aggregates 50 federal class actions brought on behalf of consumers in 29 states and territories to remedy the failure to disclose and compensate for thermal expansion of motor fuel in retail sales to consumers. Plaintiffs allege that as a result of retailers' failure to sell standardized, temperature-compensated gallons, the amount of fuel received by consumers in every gallon varies according to the temperature of the fuel. When consumers buy motor fuel that has a temperature in excess of 60 degrees Fahrenheit, consumers: (1) receive less fuel in every gallon than is contained in the industry-standard U.S. Petroleum Gallon; and (2) pay retailers more in fuel excise taxes that retailers are required to remit to taxing authorities. Plaintiffs estimate that this practice costs U.S. consumers in excess of three billion dollars every year. Plaintiffs' consolidated complaint alleges breach of contract, unjust enrichment, civil conspiracy, and violations of

the consumer protection laws of 29 states and territories. On February 21, 2008, the Court denied Defendants' Motion to Dismiss in its entirety. *In re Motor Fuel Temperature Sales Prac. Litig.*, 534 F. Supp. 2d 1214 (D. Kan. 2008).

As part of Plaintiffs' class certification strategy, Plaintiffs sought to certify subclasses based on groups of non-conflicting state laws. The district court granted class certification to the first of those subclasses to be considered certifying a class of Kansas purchasers. *In re Motor Fuel Temperature Sale Practices Litig.*, 271 F.R.D. 221 (May 28, 2010).

f.      *Sullivan v. DB Investments, Inc.*, 04-2819 (D.N.J. May 22, 2008). Beginning in 2004, several actions were filed against De Beers and its related companies alleging violations of federal antitrust law and various state antitrust and consumer protection laws on behalf of purchasers of polished diamonds.  Following its strategy of denying that U.S. Courts could maintain jurisdiction over it, De Beers refused to appear in any of these cases and defaults were entered against each of the defendants.

The entry of default, however, did not mean that plaintiffs litigated with no opposition.  Instead, counsel faced substantial opposition from intervenors and amici. Furthermore, the entry of default did not eliminate the risk to the plaintiffs that De Beers could prevail on liability or damages.  Because De Beers defaulted, plaintiffs could not obtain formal discovery from De Beers and thus Plaintiffs were denied access to the means in which to prove anti-competitive conduct, damages and causation.  In addition, as the defendants are incorporated in the United Kingdom, South Africa, Luxembourg and Switzerland, enormous difficulties were believed to exist in seeking enforcement of a U.S. class action default judgment.

On July 22, 2005, Korein Tillery became the first to obtain certification of a

nationwide class of diamonds purchasers in *Null v. D.B. Investments, Inc.*, No. 05-L-209 (Ill. Cir. Ct. July 22, 2005).  On May 22, 2008, in a consolidated proceeding in which Korein Tillery was appointed as co-lead counsel, the district court approved a nationwide settlement that created a fund of $323 million to compensate diamond purchasers and provided additional injunctive relief to the class. While this settlement is the culmination of numerous related lawsuits, Korein Tillery attorney Steven A. Katz was instrumental in the settlement discussions that began shortly following entry of the *Null* certification order.  The Third Circuit recently affirmed approval of the settlement.  *Sullivan v. DB Invs., Inc.*, 667 F. 3d  273 (3d Cir. 2011) (en banc).

   g. *Call v. Ameritech Mgmt. Pension Plan*, 475 F.3d 816 (7th Cir. 2007). ERISA requires that when a participant in a defined-benefit pension plan is given a choice between taking pension benefits as an annuity or in a lump sum, the lump sum must be so calculated as to be the actuarial equivalent of the annuity.  Plaintiff brought this class action alleging that Ameritech's plan amendment, specifying two options for calculating lump-sum distribution amounts, violated the plan's own anti-cutback provision.  Korein Tillery obtained a judgment on behalf of the Plaintiff Class in excess of $31 million.  The Seventh Circuit Court of Appeals affirmed the trial court's judgment on January 9, 2007.

   h. *Watson v. Philip Morris*, 127 S. Ct. 2301 (2007); *Kelly v. Martin & Bayley, Inc.*, 503 F.3d 584 (7th Cir. 2007). After the United States Court of Appeals for the Eighth Circuit held that Philip Morris was acting as a federal officer in designing, manufacturing and selling "light" cigarettes, Korein Tillery successfully obtained reversal by the U.S. Supreme Court. To avoid the result of this decision, which would allow tobacco companies to remove to federal court all cases involving "light" cigarettes, Korein Tillery employed a two-pronged attack. While simultaneously pursuing the same issue to the

Seventh Circuit on behalf of the family of Everett Kelly, a deceased "light" cigarette smoker, KT assisted counsel for Watson in successfully petitioning the Supreme Court for certiorari. Once certiorari was granted, Korein Tillery assisted with brief writing and preparation for oral argument. Korein Tillery also successfully solicited the overwhelming amicus support for the plaintiffs in *Watson*. Included in the *amici* were the Campaign for Tobacco-free Kids, American Lung and Heart Associations, American Cancer Society, American Legacy Foundation, and attorneys general for 48 U.S. states. The result: a 9-0 reversal of the Eighth Circuit in *Watson*, as well as a subsequent legal victory for the plaintiffs in *Kelly*.

       i.    *Parker v. Sears, Roebuck & Co.*, Case No.: 04-L-716 (Ill. Cir. Ct. Sept. 18, 2007). Korein Tillery brought this action against Sears in 2004 to remedy Sears' failure to install anti-tip safety devices, which prevent ranges from tipping over and severely burning or injuring unsuspecting consumers, on ranges that it sold, delivered and set-up in customers' homes. In the 1960's and 1970's, kitchen range manufacturers started reducing the weight of metal in an effort to competitively lower the price of kitchen ranges. Over the course of several years, advances in materials allowed manufacturers to produce ranges which were durable and which were extremely light weight. However, because the oven doors on the front of the ranges serve as a lever and fulcrum, the light weight of the new ranges created an extremely dangerous tipping hazard. For example, if a person were to place a turkey roaster on an open and horizontal oven door, the added weight would cause these newly designed ranges to tip forward spilling the hot contents onto anyone standing in the vicinity. Children who opened and used the range door as a step could unwillingly tip boiling liquids onto themselves. Over the last several years dozens of people have been killed and hundreds have been maimed as a result of this problem.

Recognizing the need for a solution to this dangerous hazard, manufacturers and regulators began requiring installing of an anti-tip bracket that could be attached to the wall or floor at the back end of the range preventing any forward tipping and maintaining complete stability.  The installation is simple and the lightweight bracket costs pennies. The rule making bodies of most codes (BOCA Code, National Electrical Code; numerous other industry codes) thereafter required the installation of anti-tip brackets in all range installations in the United States.  Even Sears acknowledged that a properly installed anti-tip bracket completely eliminates the hazards of tipping stoves.

Sears, Roebuck & Company has been the largest retail seller of kitchen ranges in the United States - averaging more than 800,000 ranges sold every year.  When selling a gas or electric range Sears generally includes delivery, installation and hookup in customers' homes, thus, Sears became the largest installer of kitchen ranges in the United States.  To increase its profits, Sears adopted a policy of refusing to install anti-tip brackets during normal installation unless the customer agreed to incur a substantial cost. At the same time, Sears failed to disclose the hazards associated with forgoing anti-tip bracket installation.

In January 2008, the Court granted final approval of a settlement which provided complete relief to the class by requiring Sears to install anti-tip brackets for the affected members of the class as well as requiring the installation of such brackets in the future. The settlement is valued at more than $544,500,000.

This settlement was touted by the public interest organization Public Citizen as an example as to how consumer class actions benefit society.  Public Citizen nominated Stephen Tillery as Trial Lawyers for Public Justice's Trial Lawyer of the Year based upon his role in this case.

j.     *Hoormann v. SmithKline Beecham Corp.*, 04-L-715 (Ill. Cir. Ct. May 17, 2007).   In July 2004, Korein Tillery filed suit on behalf of a nationwide class of purchasers alleging that SmithKline Beecham promoted Paxil® and Paxil CR™ for prescription to children and adolescents despite having actual knowledge that these drugs exposed children and adolescents to dangerous side effects while failing to treat their symptoms.  Following three years of litigation, Korein Tillery obtained a settlement that established a $63.8 million dollar fund to reimburse class members 100% of their out-of-pocket expenses. The New York Attorney General's office settled their lawsuit concerning the same conduct for a $2.5 million fine. This case was featured in *The American Lawyer* (Aruna Viswanatha, *King & Spalding Lawyer Stirs State Judge's Ire*, 1 Am. Law., Jan. 2007, at 50), and mentioned in *the National Law Journal* (*The Plaintiffs' Hot List*, 30 Nat'l L.J. S8 (Nov. 22, 2007)).

k.     *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006). Korein Tillery won a reversal of a Seventh Circuit ruling in this group of securities class actions involving "market timing," one of the practices which first came to public attention in the mutual fund scandals in 2003. After these cases were removed from state court and the district court remanded them, the Seventh Circuit held that remand orders under the Securities Litigation Uniform Standards Act of 1998 may be reviewed on appeal. The Supreme Court granted certiorari to review that ruling and reversed in a unanimous 2006 decision.

l.     *Price v. Philip Morris Inc.*, 2003 WL 22597608 (Ill. Cir. Mar 21, 2003), *rev'd*, 848 N.E.2d 1 (Ill. Dec 15, 2005), *reh'g denied*, 846 N.E.2d 597 (Ill. May 5, 2006), *cert denied*, 549 U.S. 1054 (Nov. 27, 2006), *petition from relief from judgment denied*, 2009 WL 2840913, (Ill. Cir., Feb. 04, 2009), *rev'd* 2011 WL 722749 (Ill. App. Ct. Feb. 24, 2011), *appeal denied*, 2011 IL 112067 (Sep. 30, 2011).  In this first ever judgment

rendered in a light cigarette fraud case, Korein Tillery obtained a $10.1 billion verdict ($7.1 billion compensatory and $3 billion punitive) in this class action lawsuit alleging fraud in the marketing of Marlboro Lights and Cambridge Lights cigarettes. Plaintiffs accused Philip Morris of misleading the Illinois class of consumers by packaging cigarettes as "Lights" and claiming that these cigarettes contain "lower tar and nicotine than regular cigarettes." The court agreed, holding not only that these "Lights" cigarettes deliver the same amount of tar and nicotine and are therefore just as harmful as a regular cigarettes, but also that the "Lights" cigarettes actually deliver more of the most toxic substances to smokers than regular cigarettes. After taking the case on direct appeal, a divided Illinois Supreme Court (2-2-2 opinion) reversed. Three of the firm's lawyers were nominated for Public Justice's Trial Lawyer of the Year award as a result of our work on this case. In December 2006, the Canadian Department of Justice sent representatives to Illinois to honor Korein Tillery for its help in securing a settlement cigarette manufactures that removed the descriptors "light" and "mild" from tobacco products in Canada.

m.     *Barbara's Sales, Inc. v. Intel Corp.*, 367 Ill. App. 3d 1013 (July 25, 2006). In this matter Korein Tillery sought to represent a class of consumers who purchased personal computers containing Pentium 4 processors, alleging that the defendants engaged in consumer fraud by concealing from the purchasers that the Pentium 4 was not any faster or otherwise superior to the Pentium III available at the time.  Plaintiffs asked that a class be certified including all purchasers of Pentium 4 computers within the United States and applying California law to the defendants' conduct on the ground that the defendants' wrongful conduct occurred in that state.  After the trial court certified a class action restricting the class to Illinois purchasers and applying Illinois law, the plaintiffs appealed. The appellate court reversed, agreeing with Korein Tillery that a nationwide class was

appropriate and that California law should apply to all purchases.

          n.     *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee

Benefits Cas. 2488 (S.D. Ill. 2005), *appeal dismissed*, 163 Fed.Appx. 424 (7th Cir. Feb 1,

2006). Korein Tillery challenged IBM's pension equity plan on the grounds that it

violated ERISA's prohibition against age discrimination. After obtaining class

certification and summary judgment in favor of the class, Korein Tillery obtained a $324

million settlement for the class.

          o.     *Prather v. Pfizer Inc.*, 02-L-480 (Ill. Cir. Ct. Dec. 2, 2004). Following the

withdrawal of the anti-diabetes prescription drug Rezulin from the market, Korein Tillery

filed suit against Pfizer, and its subsidiary, Warner-Lambert, alleging that the defendants

engaged in unfair business conduct relating to their advertising and pricing. The resulting

settlement, finalized 2005, established a fund of $60 million, representing an 85%

recovery for claimants and a $20 million cy pres award benefiting diabetes research. *See*

Ameet Sachdev, *Charities reaping lawsuit dividends*, Chicago Tribune, September 9,

2007.

          p.     *Berger v. Xerox Retirement Income Guar. Plan*, 231 F.Supp.2d 804

(S.D.Ill. Sep. 30, 2002), *aff'd* 338 F.3d 755 (7th Cir. Aug. 1, 2003). Korein Tillery

obtained a $255 million judgment for a class of retirees in their challenge to Xerox's

improper payment of lump sum distributons from a defined benefit, cash balance plan.

Following Korein Tillery successful defense of the verdict on appeal, the case settled in

March 2004 for $239 million.

          q.     *Sparks v. AT&T Corp.*, No. 96-LM-983 (Ill. Cir. Ct. Aug. 9, 2002). Korein

Tillery filed this nationwide class action against AT&T and Lucent Technologies in 1996

to remedy their practice of deceptively leasing telephone sets to residential consumers. In

1984, AT&T began independently charging leasing fees to residential customers for the telephone sets that customers received when they first obtained telephone service.  AT&T continued to charge residential customers the monthly lease charges by sending a quarterly bill for "leased equipment" without identifying the fact that the leased equipment was a telephone set, the quantity of sets supposedly being leased, or the style of the sets. Many customers continued to pay the bill over the intervening 15 years believing that AT&T was charging for access to long-distance telephone service. To counter defendants' arguments that the case should be dismissed on the ground that certain FCC orders preempted Plaintiffs' claims, Korein Tillery persuaded the FCC to appear as *Amicus Curiae* in support of the plaintiffs. The United States' Attorney appeared to present the FCC's brief and argument that the FCC had not preempted plaintiffs' claims in the Illinois trial court. In 2001, the trial court certified a class of more than 20 million people making the action one of the largest class actions ever certified. In litigation spanning seven years, including numerous appeals, Korein Tillery attorneys deposed more than 150 corporate designees and fact witnesses in Arkansas, Arizona, California, District of Columbia, Delaware, Florida, Georgia, Iowa, Illinois, Kansas, Louisiana, Massachusetts, Minnesota, Missouri, North Carolina, New Hampshire, New Jersey, New Mexico, Nevada, New York, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, and Wisconsin and reviewed and catalogued more than 3.2 million pages of documents.  The parties reached a settlement on the eve of trial in which the defendants agreed to pay up to $300 million in cash to the class members with another $50 million distributed to charities.

   r. *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, 175 F.Supp.2d 593 (S.D.N.Y. Aug 20, 2001).  Stephen Tillery was court-appointed co-lead

counsel in the MTBE litigation which was consolidated for pretrial purposes in the Southern District of New York.  The MTBE litigation involved the claims of private well owners throughout the country whose water wells are either contaminated or threatened with contamination by MTBE, a chemical added to gasoline for its octane-enhancing and allegedly cleaner-burning characteristics.

   s. *Laurenzano v. Blue Cross/Blue Shield of Mass. Ret. Income Trust*, 134 F.Supp. 2d 189 (D.Mass. 2001). Korein Tillery challenged Defendant's exclusion of cost-of-living adjustments in the calculation of retirement benefit lump sums paid to Class Members and recovered approximately $16 million for BCBS retirees.

   t. *In Re: MCI Non-Subscriber Tel. Rates Litig.*, MDL 1275 (S.D. Ill. Jan. 12, 2001).  Korein Tillery was liaison counsel in this MDL proceeding challenging MCI's charges for nonsubscribers.  The case was resolved favorably for the class with a total recovery of approximately $90 million.

   u. *Taylor v. Martin County Canvassing Bd.*, 773 So.2d 517 (Fla. Dec 12, 2000).  A four-member team of Korein Tillery attorneys participated in the preparation, trial and appeal of one of the nationally-televised 2000 presidential election contest cases in Florida.  The Martin County case, involving a challenge to absentee presidential election ballots, was filed, tried and subsequently briefed in the Florida Supreme Court and U.S. Supreme Court in less than two weeks.

   v. *Joiner v. Ameritech Mobile Commc'ns*, 96-L-121 (Ill. Cir. Ct. Aug. 8, 2000).  A consumer fraud and breach of contract case against Ameritech Mobile in connection with its "round up" practice of charging customers for one full minute of airtime for each portion of a minute used, allegedly in breach of the contracts in use at the time.  Korein Tillery negotiated the largest settlement of any cellular phone "round-up"

case in the nation.  The Joiner settlement received court approval in December 2000.

w.     *Esden v. Bk. of Boston*, 229 F.3d 154 (2nd Cir. 2000). Korein Tillery

served as class counsel in this groundbreaking case in this ERISA based class action.

Esden was the first case to successfully challenge case balance type defined benefit plans

and has formed the basis for a number of other class actions which resulted in hundreds of

millions of dollars returned to retirees.

x.     *Malloy v. Ameritech*, 98-488-GPM (S.D. Ill. May 3, 2000). This suit for

ERISA violations and recovered approximately $185 million in pension benefits for

Ameritech retirees.

y.     *Folkerts v. Illinois Bell Tel. Co.*, 95-L-912 (Ill. Cir. Ct. Jan. 7, 1998); and

*Todt v. Ameritech Corp.*, 97-L-1020, (Ill. Cir. Ct. Nov. 12, 2997).  Korein Tillery was

court-appointed Class Counsel in two consumer fraud cases filed against Ameritech

Corporation involving allegations that Ameritech's marketing of its "inside wire"

maintenance plans (plans intended to protect phone customers against the cost of repairs

to telephone wires in their homes) was misleading.  The *Folkerts* and *Todt* cases included

class members from Illinois, Indiana, Michigan, Ohio and Wisconsin.

14.     Since February 2011, Korein Tillery has dedicated substantial time and effort in

identifying and investigating the potential claims in the action brought by the *C.M.D., et al. v.*

*Facebook, Inc.*, No. 12-cv-01216-LHK plaintiffs and how those claims may be properly certified.

15.     This matter is being principally handled by me and Mr. Zigler and the associates

that normally support our practice. However, like all matters the firm handles, the firm remains

ready to augment the matter's staffing when it is required. At the same time, I supervise all of the

firm's matters to ensure that they are prosecuted in the most efficient manner possible.

16.     Korein Tillery has both the experience and resources to prosecute this suit and adequately represent the interests of the minor children putative class.  As of the filing of this declaration, my firm has dedicated the efforts of seven attorneys in research, drafting, document review and work with experts.  Going forward, Korein Tillery intends to continue this same level of dedication in the prosecution of this matter.

17.     As is detailed in Mr. Zigler's declaration, counsel for the plaintiffs in the *C.M.D.* action moved to intervene in the *Fraley* action as soon as we were able to determine that the *Fraley* settlement did not serve the best interests of the minor children putative class.

18.     I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.


FURTHER DECLARANT SAYETH NOT

Affirmed this 10th day of July 2012.

/s/ Steven A. Katz
Steven A. Katz

**KOREIN TILLERY**
Steven A. Katz
skatz@koreintillery.com
One U.S. Bank Plaza
505 N. 7th St., Suite 3600
St. Louis, MO 63101-1625
Tel: (314) 241-4844  Fax: (314) 241-3525

*Counsel for Movants*

Additional Counsel for Movants:

John C. Torjesen
JOHN C. TORJESEN & ASSOCIATES, PC
612 N. Sepulveda Boulevard, 2nd Floor
Los Angeles, CA  90049

Lee Squitieri
Garry T. Stevens Jr.
SQUTIERI & FEARON LLP
32 E. 57th Street, 12th Floor
New York, NY 10022

Declaration of Steven A. Katz in Further Support of Motion to Intervene; Case No. CV11-01726 LHK

1

2    Antony Stuart
     STUART LAW FIRM
3    801 South Grand Avenue, 11th Floor
     Los Angeles, CA  90017

4    Edward A. Wallace
     WEXLER WALLACE LLP
5    55 West Monroe St., Suite 3300
     Chicago, IL 60603

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28