Robert C. Fellmeth (SBN 49897)
Center for Public Interest Law
Children's Advocacy Institute
University of San Diego School of Law
5998 Alcala Park
San Diego, CA  92110
Tel:  619-260-4806 / Fax:  619-260-4753
cpil@sandiego.edu

Attorney for *Amicus Curiae*
Center for Public Interest Law and Children's Advocacy Institute

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER, JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>    Defendants. | Case No. CV 11-01726 LHK<br><br>**AMICUS CURIAE MEMORANDUM OF THE CENTER FOR PUBLIC INTEREST LAW AND CHILDREN'S ADVOCACY INSTITUTE IN OPPOSITION TO PROPOSED SETTLEMENT AGREEMENT**<br><br>Date:   July 12, 2012<br>Time:  1:30 p.m.<br>Courtroom: 8<br>Judge: Hon. Lucy K. Koh<br>Trial Date: December 3, 2012 |

The Center for Public Interest Law (CPIL) and the Children's Advocacy Institute (CAI) respectfully oppose the proposed settlement agreement in this case on the grounds that it provides inadequate injunctive relief to the class members, and especially to the sub-class of minors.  The proposed changes to Facebook's Statement of Rights and Responsibilities (a form of "terms of service") is an invalid attempt to avoid the legal prohibition in California on minors contracting for almost everything, including the expropriation of their names and likenesses.  CPIL and CAI additionally oppose the proposed settlement agreement on the basis that the stipulated attorneys' fees are excessive, especially in light of the fact that the class receives no monetary compensation

AMICUS CURIAE MEMORANDUM OF THE CENTER FOR PUBLIC INTEREST LAW AND CHILDREN'S ADVOCACY INSTITUTE IN OPPOSITION TO PROPOSED SETTLEMENT AGREEMENT
Case No. CV 11-01726 LHK

1

1 and the minors of the sub-class (and their parents) would continue to have their rights violated.

2 CPIL and CAI intend to file a formal objection at any subsequent Fairness Hearing, but request that this Court consider the few points made below, reject the proposed settlement agreement at this stage and direct the parties to continue working to resolve the case.

The Children's Advocacy Institute is an academic and advocacy center based at the University of San Diego School of Law. It is part of the Center for Public Interest Law, a center that helped to found the currently independent Privacy Rights Clearinghouse. Both CAI and CPIL were founded by a co-author of this comment, Professor Robert Fellmeth. For the last twenty years, Prof. Fellmeth has taught juvenile law courses and directed a clinic representing abused children in juvenile dependency court. He is author of the law school text *Child Rights and Remedies* (Clarity, 3d edition, 2011) and has been an officer of the National Association of Counsel for Children since 2006, and served as its President from 2010 to 2012. He is counsel to the Board of Directors of Voices for America's Children, and he chairs the Board of Public Citizen Foundation in Washington, D.C.[1]

In addition to the child-protection concerns raised by the proposed settlement, CPIL and Prof. Fellmeth also have an interest in the class action/consumer law and legal ethics issues raised by this proposed settlement – which are profound. Prof. Fellmeth is the co-author of *California White Collar Crime* (w. Papageorge, Tower, 3d edition 2010) and has taught consumer and class action law, including Public Interest Law and Practice for the last twenty two years. From 1987 to 1992, he served as the State Bar Discipline Monitor, a position created by the California legislature to investigate and reform the State Bar Discipline system and which resulted in the creation of the current independent State Bar Court. Prof. Fellmeth has served as a legal ethics and consumer law expert in cases on behalf of the State Bar, the Los Angeles Office of District Attorney, the San Diego Office of District Attorney, the Attorney General acting for the Judicial Performance Commission, and the United States Attorney for the Southern District of California.

---

[1] The comments expressed herein represent the opinion of CAI and CPIL only; no other organization has reviewed this submission.

AMICUS CURIAE MEMORANDUM OF THE CENTER FOR PUBLIC INTEREST LAW AND
CHILDREN'S ADVOCACY INSTITUTE IN OPPOSITION TO PROPOSED SETTLEMENT AGREEMENT
Case No. CV 11-01726 LHK

2

# I. CONCERNS REGARDING ADEQUACY OF REVISED "STATEMENT OF RIGHTS AND RESPONSIBILITIES" TO PROTECT MINORS' NAMES AND VISAGES FROM COMMERCIAL APPROPRIATION

CPIL and CAI have read and considered the declaration of Retired Judge Infante filed in support of the proposed settlement agreement and have no reason to doubt his perception that the parties negotiated vigorously during the mediation. But the proposed settlement agreement might reflect plaintiffs' counsel's inexperience representing the unique interests of children because child advocates would not agree to resolve a case by allowing a corporation to do that which child protection law prohibits and which is, by its very nature, detrimental to children. This Court should not approve this settlement.

The proposed settlement agreement purports to stipulate, on behalf of all minors, to a violation of the California Family Code, which prohibits minors from contracting for the use of their names and likenesses. Further, the proposed settlement agreement would prohibit minors (as well as adults) from preventing Facebook's use of their names and visages until after Facebook had already used their names and images for commercial purposes.

## A. Under longstanding California law, minors cannot consent to the contract proposed in the Statement of Rights and Responsibilities.

The proposed settlement creates no benefit to the class, but actually amounts to a dangerous detriment. Current California Family Code provisions echo common law prohibitions against enforcing contracts against minors. The current floor is that minors cannot consent to the expropriation of their image or personal details. Family Code §6701, "Restriction on authority to contract," states:

> A minor cannot do any of the following:
> (a) Give a delegation of power.
> (b) Make a contract relating to real property or any interest therein.
> (c) Make a contract relating to any personal property not in the immediate possession or control of the minor.

The proposed settlement agreement operates on the violation of subsections (a) and (c), pretending that a minor has consented (delegated to Facebook the power) to the use of his or her name and image for commercial purposes and pretending the minor has, in exchange for the use of the Facebook service, contracted for the use of his or her name and images that are now in

AMICUS CURIAE MEMORANDUM OF THE CENTER FOR PUBLIC INTEREST LAW AND CHILDREN'S ADVOCACY INSTITUTE IN OPPOSITION TO PROPOSED SETTLEMENT AGREEMENT
Case No. CV 11-01726 LHK

3

Facebook's possession or control and not in the immediate possession or control of the minor.

That minors lack capacity to so consent underlies much of our system to protect them. And some of that protection is, to be sure, safeguarding them from their own immature improvidence. We have age minimums behind everything from voting to tobacco, liquor to tattoos, even sex. The inability of the adolescent brain to regulate emotional responses, resist peer influences and calculate the harmful future consequences of present actions is the basis for the recent United States Supreme Court rulings abolishing the death penalty for minors and prohibiting the mandatory imposition of a sentence of life without parole, even for homicide offenses. *See Roper v. Simmons*, 543 U. S. 551, 560 (2005), *Graham v. Florida*, 560 U. S. ___, 130 S.Ct. 2011 (2010) and *Miller v. Alabama/Johnson v. Hobbs*, Nos. 10-9646 and 10-9647, decided June 25, 2012. It in no way protects the privacy and property rights of children (or their parents) to create a system for releasing the names and faces of children into the world wide stream of e-commerce based on a provision in "terms of service" contract to which minors lack the capacity to consent.

Further, requiring children to "represent" that at least one parent or legal guardian has also agreed to Facebook's use of the child's name, profile picture, Facebook account content and personal information for commercial purposes (Sec. 2.1(a), page 5) violates the law, public policy and common sense.

**B.     The proposed settlement creates no benefit to the class.**

The specific, current abuse addressed by this settlement is particularly pernicious, for it involves the irreparable harm that comes from the necessarily final publication into a forum that can reach millions and from which the images and information can then not be withdrawn. The publication is potentially massive and it is permanent.

Under the proposed settlement, via the Statement of Rights and Responsibilities, the control of this irremediable publication – likely into the homes of friends– is vested with the commercial sensibilities of a corporation. That delegation is unconscionable. It violates the rationale behind limitations on the power of juveniles to contract and to suffer the enforcement and consequences of those contracts.

AMICUS CURIAE MEMORANDUM OF THE CENTER FOR PUBLIC INTEREST LAW AND
CHILDREN'S ADVOCACY INSTITUTE IN OPPOSITION TO PROPOSED SETTLEMENT AGREEMENT
Case No. CV 11-01726 LHK

4

CAI and CPIL share the concerns raised in the letter submitted to this Court by the Center for Digital Democracy, dated July 10, 2012. CDD presents compelling arguments made by the Federal Trade Commission and computer science scholars: the "notice-and-choice" model of privacy policies rarely provide actual notice and most frequently effectuate the service provider's, rather than the consumer's, choice.

The proposed settlement would require Facebook, *for a period of only two years*, to provide a highly-unlikely-to-be-read notice that a user "give[s] [Facebook] permission to use [his or her] name, profile picture, content and information in connection with commercial, sponsored, or related content (such as a brand [the user] like[s]) served or enhanced by [Facebook]." Sec. 2.1(a), page 4. An adolescent between 13 and 17 years old cannot be expected to understand the significance or consequences of giving "permission to use [his or her] name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us." A further objection is that the default setting is to allow the uncompensated use of a user's name and likeness for commercial purposes, and that the user is required to take affirmative steps to "opt-out" or change the default setting (which a user is unlikely to do given that the user probably is not even aware there is a setting to be changed).

But the terms of the proposed settlement agreement go beyond that:
> **User Visibility and Control Over Sponsored Stories**. Facebook will create a[] . . . mechanism that enables users to view the subset of their interactions and other content that **have been displayed** [emphasis added] in Sponsored Stories. Facebook will . . . engineer settings to enable users, upon viewing the interactions and other content that **have been used** [emphasis added] in Sponsored Stories, to control which of these interactions and other content are eligible to appear in **additional** [emphasis added] Sponsored Stories. Without limiting the foregoing, . . . these settings will include the ability to enable users to prevent individual interactions with other content (or categories of interactions and other content) from appearing in **additional** [emphasis added] Sponsored Stories. Sec. 2.1(b), page 5.

Under the proposed settlement, Facebook does not have to give users the ability to restrict Facebook's resale of the user's name and likeness *until <u>after</u> Facebook has already made some commercial profit by using the users' names and faces* in its top-of-the-line (and therefore top-dollar) advertising. Facebook appears to be making no concession here.

AMICUS CURIAE MEMORANDUM OF THE CENTER FOR PUBLIC INTEREST LAW AND
CHILDREN'S ADVOCACY INSTITUTE IN OPPOSITION TO PROPOSED SETTLEMENT AGREEMENT
Case No. CV 11-01726 LHK

5

Facebook likely does not intend many of the inevitable consequences of its site's abuses. But embarrassment and youthful indiscretion on the one end of the spectrum, and bullying and suicides on the other end, are not part of the formulae in calculating commercial return on image and information dissemination. The proposed settlement's warnings and notices are textbook adhesive fig leaves. They do nothing for the thirteen-year-old who is striving to assert her independence yet is still simply too young to grasp the reach of her digital citizenship – a reach that could tarnish her reputation for years to come through a few thoughtless clicks of a mouse. And this settlement exacerbates the fiction of responsibility by carving out a practical "safeguard" consisting of (1) information on some site that parents may access (if apparently both omniscient and tech savvy) (Sec. 2.1(c)(ii)) and (2) the child's certification that the parent consents. Ferris Bueller would not be the only one laughing at such pretexts. The current settlement creates not a world of statutory compliance, but one of rigged evasion. That is hardly to the benefit of the children involved.

## II. CONCERNS REGARDING LACK OF FINANCIAL COMPENSATION FOR USERS WHOSE NAMES AND VISAGES HAVE BEEN APPROPRIATED AND SOLD AND MASSIVE COMPENSATION FOR ATTORNEYS

Plaintiffs' counsel and Facebook have agreed that plaintiffs' counsel will seek, and Facebook will not oppose, fees up to $10 million. Sec. 2.3, page 6. No information suggests that $10 million in fees, or any amount approaching it, is appropriate in this case (no lodestar billing amount – actual hours times market value – has been provided) and comparison to other cases suggests this amount is excessive.

For example, in *Kenny A. v. Perdue* (a federal court class action case challenging the Georgia child protection system's failure to provide minimally sufficient services to abused and neglected children in foster care), plaintiffs' counsel received a lodestar fee of $6,012,802.90. See 454 F.Supp.2d 1260, 1286-1287 (2006), rev'd on other grounds, Perdue v. Kenny A. ex rel Winn, ___ U.S. ____, 130 S.Ct. 1662 (2010). In *Kenny A.*, Children's Rights (a law firm with decades of experience in class action litigation pursuing children's rights and protection) recorded (after a 15% across-the-board reduction by the trial court) 25,423 hours litigating the case before the state was willing to begin settlement discussions; after being removed to federal

AMICUS CURIAE MEMORANDUM OF THE CENTER FOR PUBLIC INTEREST LAW AND
CHILDREN'S ADVOCACY INSTITUTE IN OPPOSITION TO PROPOSED SETTLEMENT AGREEMENT
Case No. CV 11-01726 LHK

6

court, the case involved a motion and full evidentiary hearing for a preliminary injunction, an unsuccessful state motion to dismiss, a motion for class certification, an unsuccessful state motion for summary judgment, discovery of nearly half a million pages of documents, and 60 depositions.

It seems doubtful that plaintiffs' counsel, in one year, worked this case to point of earning $10 million to procure a settlement. The basic posture is problematic when the settlement provides the class no monetary compensation and no injunctive relief beyond an agreement by Facebook that it will do *less* than the law requires.

### III. CONCLUSION

Although CPIL and CAI may ultimately file an objection at any future Fairness Hearing setting forth in further detail the legal and ethical concerns with the proposed settlement, CPIL and CAI respectfully request that this Court deny preliminary approval of the unfair and inadequate proposed settlement to prevent undue reliance, during a permanent approval process, on structure that is seemingly flawed at its outset.

Date: July 11, 2012

_____
Robert C. Fellmeth

AMICUS CURIAE MEMORANDUM OF THE CENTER FOR PUBLIC INTEREST LAW AND
CHILDREN'S ADVOCACY INSTITUTE IN OPPOSITION TO PROPOSED SETTLEMENT AGREEMENT
Case No. CV 11-01726 LHK

7