1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7         FOR THE NORTHERN DISTRICT OF CALIFORNIA
8                 SAN FRANCISCO DIVISION
9
10

ANGEL FRALEY, et al.                    No. C 11-1726 RS

            Plaintiffs,

        v.                              **ORDER DENYING MOTION FOR
                                        PRELIMINARY APPROVAL OF
FACEBOOK, INC.,                         SETTLEMENT AGREEMENT,
                                        WITHOUT PREJUDICE**

            Defendant.

_____/

        In this putative class action, plaintiffs contend that defendant Facebook, Inc. has violated

California Civil Code §3344 and the state's Unfair Competition Law, Business and Professions

Code § 17200, by utilizing the names and/or likenesses of members of the Facebook social network

website to promote products and services through a so-called "Sponsored Stories" program.  The

parties have reached a settlement, which calls for Facebook to make certain changes to the

Statement of Rights and Responsibilities ("SRRs") it contends governs use of its site, and to

implement certain additional mechanisms to give users greater information about, and control over,

how their names and likenesses are employed in connection with Sponsored Stories.  The agreement

also contemplates Facebook making a *cy pres* payment of $10 million dollars to certain

organizations involved in internet privacy issues, and provides that plaintiffs may apply for an

attorney fee award of up to $10 million, without objection by Facebook.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Plaintiffs, supported by Facebook, now seek preliminary approval of the settlement. Although the legal standard applicable to preliminary approval is liberal,[1] in this instance there are sufficient questions regarding the proposed settlement that it would not be appropriate simply to grant the motion and postpone resolution of those issues to final approval, particularly given the burden and expense to the parties of going forward with notification to potential class members and final approval proceedings, and the confusion to potential class members that likely would result were the settlement ultimately disapproved. Accordingly, the motion for preliminary approval will be denied, without prejudice. In light of the issues identified below, the parties may elect to negotiate for modifications to their agreement, or plaintiffs may present a renewed motion for preliminary approval of the existing agreement, with additional evidentiary and/or legal support directed at ameliorating the listed concerns.

1. Propriety of a settlement that provides no monetary relief directly to class members

It is well-settled that a class action settlement providing for distribution of monetary relief in the form of *cy pres* payments may be appropriate where "the proof of individual claims would be burdensome or distribution of damages costly." *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1038 (9th Cir. 2011) (quoting *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990)). Additionally, there is no dispute here that it would be impractical to the point of meaninglessness to attempt to distribute the proposed $10 million in monetary relief among the members of a class that may include upwards of 70 million individuals. Plaintiffs further argue that

---

[1] A motion seeking preliminary approval of a settlement agreement in a putative class action may be granted if, "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ." *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D.Cal. 2007) (citing Manual for Complex Litigation, Second § 30.44 (1985)). Because some of the factors bearing on the propriety of a settlement cannot be assessed prior to the final approval hearing, "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D.Cal. 2008).

**United States District Court**
For the Northern District of California

1   the dollar amount of gross revenue Facebook earned from each alleged misuse of its members'

2   names and likenesses is too small to be distributed to those members as restitution.

3          California Civil Code §3344, however, under which plaintiffs' claims are brought, provides

4   for statutory damages of $750 for any violation.  It very well may be, as Facebook argues, that

5   plaintiffs' chances of obtaining a judgment awarding such statutory damages to class members are

6   remote, but their potential availability must be considered in evaluating the fairness of any

7   settlement.  Merely pointing to the infeasibility of dividing up the agreed-to $10 million recovery, or

8   the relatively small per-use revenue Facebook derived, is insufficient, standing alone, to justify

9   resort to purely *cy pres* payments.

10         Plaintiffs offer the additional argument, in which Facebook vigorously joins, that any

11  settlement calling for cash payments to class members is simply not practicable in this case, given

12  the size of the class.  For example, even paying each class member the modest sum of $10, might

13  require a settlement fund of $1 billion (assuming a class size of 100 million), apart from

14  administration costs.[2]  The issue this presents appears to be a novel one:  Can a *cy pres*-only

15  settlement be justified on the basis that the class size is simply too large for direct monetary relief?

16  Or, notwithstanding the strong policy favoring settlements, are some class actions simply too big to

17  settle?

18         A renewed motion for preliminary approval of this settlement, or a revised settlement that

19  does not provide for monetary recovery by class members, should address these points with any

20  legal authority that may be instructive.[3]  Of course, the propriety of *cy pres* relief, and the evaluation

21  of the overall fairness of the settlement, will not turn on this single issue.  Among other things,

22

23  ─────────────────

24  [2]  Of course, the actual payout to class members under such a settlement would likely be a much
    smaller number.  That would only present additional fairness issues, however, including those
25  relating to provisions for disposition of the unclaimed funds.

26  [3] Additionally, the motion should provide more concrete estimates of the likely class size, and
    information as to what plaintiffs believe would be the minimum size for a settlement fund that could
27  be distributed to class members, both as a logistical matter and in terms of providing meaningful
    relief.
28

United States District Court
For the Northern District of California

1  while the theoretical availability of statutory damages cannot be ignored, the more remote the

2  chances of any such recovery are, the less important this particular question becomes.

3

4       2.  <u>The amount of the *cy pres* payment</u>

5       Assuming that it may be appropriate to approve a settlement that provides for no cash

6  distribution to class members in this case, the question will remain as to whether $10 million in *cy*

7  *pres* recovery is fair, adequate, and reasonable.  At oral argument, plaintiffs seemed to suggest that

8  the *cy pres* payment is relatively unimportant, given the primary purpose of their action from the

9  outset:  to compel Facebook to change its practices prospectively, and that therefore the injunctive

10  relief component of the settlement represents a tremendous success in that regard.  The problem

11  with treating the *cy pres* element of the recovery as effectively a "bonus," such that *any* payment

12  could be seen as fair, adequate, and reasonable, is that the injunctive relief relates only to

13  Facebook's future conduct.  *Cy pres* monetary payments are intended to be "[u]sed in lieu of direct

14  distribution of *damages* . . . ."  *Dennis v. Kellogg Co.*__ F.3d __, 2012 WL 2870128, *4 (9th Cir.

15  2012) (emphasis added).  In other words, the *cy pres* payment is compensation for *past* alleged

16  wrongdoing.

17       The proposed settlement agreement here includes a release of Facebook for any such past

18  misconduct.  Regardless of the importance and value to plaintiffs of the injunctive relief, it cannot

19  serve as meaningful consideration for a release of class members' claims for damages, statutory or

20  actual. Thus, contrary to plaintiffs' argument, the amount of the *cy pres* payment remains critically

21  important to evaluating the appropriateness of the settlement.

22       To arrive at a fair settlement amount in compensation for past damages, the plaintiffs'

23  potential recovery at trial must be estimated, and then appropriate discounts applied for the

24  uncertainties, risks, and costs of litigation.  At the hearing, Facebook argued the $10 million figure

25  represents a fair estimate under just such an analysis.  That well may be so, but the present motion

26  does not provide adequate support for the conclusion.  Although it is not a precise science, plaintiffs

27  must show that the *cy pres* payment represents a reasonable settlement of past damages claims, and

28

that it was not merely plucked from thin air, or wholly inconsequential to them, given their focus on prospective injunctive relief.

Additionally, at least as outlined at the hearing, Facebook's proffered justification of the $10 million figure raises an additional concern. Facebook gave a rough estimate of plaintiffs' potential recovery at trial, and applied a percentage discount for the uncertainties and expenses of litigation. Facebook then proposed discounting that figure by an additional amount to reflect the fact that, in class actions such as this, only a relatively small percentage of class members actually file claims and receive payouts from the settlement fund. That analytical approach would result in this *cy pres* settlement being analogous to one calling for direct cash payments to class members, but where any unclaimed settlement funds revert to the defendant. While such reversionary provisions are not necessarily prohibited, they are problematic. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011) (discussing issue in context of reversion of amounts not awarded in fees).

Facebook's calculations, provided on the fly during oral argument, are not binding on the parties, of course. They suggest at least the possibility, however, that a *cy pres* payment in the amount suggested *prior* to the reduction based on the percentage of class members that typically submit claims might be more appropriate.

Finally, as discussed below, there are serious concerns with the provision of the settlement agreement permitting plaintiffs to apply for up to $10 million in attorney fees without objection by Facebook. The fact that the parties negotiated that "clear sailing" provision separately from the *cy pres* payment does not wholly eliminate the concern that class counsel may "have bargained away something of value to the class." *Bluetooth*, 654 F.3d at 948. If, and to the extent, that only a much smaller fee award can ultimately be justified here, then the fact that Facebook has agreed to pay up to $20 million (plus up to $300,000 in costs) to resolve this action may be of some consequence in evaluating the adequacy and fairness of the *cy pres* amount. *See id* at 949 ("Ordinarily, a defendant is interested only in disposing of the total claim asserted against it, and the allocation between the class payment and the attorneys' fees is of little or no interest to the defense.")

United States District Court
For the Northern District of California

5

3.  <u>The injunctive relief</u>

At the hearing, plaintiffs offered to submit additional materials explicating the changes Facebook will be making pursuant to the injunctive provisions of the proposed settlement.  Any renewed motion should describe with clarity what will be required of Facebook, with particular attention to explaining the extent to which Facebook will retain discretion in implementing features and revising the SRRs under the agreement.  The motion should also directly address the legal arguments raised in the motion to intervene brought by the named plaintiffs in the related case, *C.M.D. v. Facebook, Inc.*, No. 12-cv-01216 RS, regarding issues of obtaining valid consent from minors.

4.  <u>The amount of attorney fees</u>

Although plaintiffs have not yet filed a motion for attorney fees, the present settlement agreement provides that they may seek up to $10 million, plus up to $300,000 in costs, without objection by Facebook.  Plaintiffs do not suggest that an award of that size could ever be justified by reference to the $10 million *cy pres* payment alone.  Instead, they argue that the injunctive provisions of the settlement have an economic value of $103,200,000.

Plaintiffs have derived that figure, however, by calculating an estimated dollar value *to Facebook*, of being able to use its members' names and likenesses in Sponsored Stories over the next two years.  Plaintiffs' theory is that the ability of Facebook members to exercise control over the degree to which their names and likenesses appear in Sponsored Stories translates to economic value to them in that same dollar amount.  Plaintiffs have presented no reason in logic or law that supports calculating the value of the injunctive relief in such a manner.

At the hearing, plaintiffs offered an alternative framework for calculating the value of the injunctive relief based on figures they submitted in connection with a class certification motion that was filed, but not adjudicated, prior to the settlement.  Although those materials were not technically part of this motion, that procedural defect could easily be disregarded or cured.  Nevertheless, the alternate approach suffers from the same fundamental defect as the one plaintiffs used to support their $103,200,000 calculation.  The dollars Facebook derived from using its members' names and

United States District Court
For the Northern District of California

1   likenesses (allegedly wrongfully), cannot serve as measure of the economic value realized by

2   members through obtaining the ability to "opt out" from allowing Facebook to do so in the future.

3   Under the injunctive provisions of the settlement, a member will have the choice of either

4   continuing to allow his or her name and likeness to be used without monetary compensation (in

5   which case Facebook will presumably still derive revenue from it), or of preventing Facebook from

6   using his or her name and likeness (in which case Facebook will not derive the revenue).  In neither

7   instance will the Facebook member receive any clear or direct economic benefit.[4]

8          This is not to say that the injunctive relief provisions of the settlement necessarily have no

9   benefit that can be considered in evaluating a fee award.  At a minimum, even putting aside the *cy*

10  *pres* payment, obtaining a favorable settlement for injunctive relief likely would give plaintiffs a

11  basis to seek fees as a prevailing party under the fee-shifting provisions in Civil Code §3344.  *See*

12  *Hensley v. Eckerhart*, 461 U.S. 424,  435 n. 11 (1983) ("a plaintiff who failed to recover damages

13  but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably

14  expended if the relief obtained justified that expenditure of attorney time.").  To the extent any

15  renewed motion for preliminary approval contemplates a fee award based in part on an asserted

16  economic value of injunctive relief, plaintiffs should include any authority addressing whether

17  injunctive relief may be assigned such a value, and how it should be calculated.

18         At this juncture, of course, plaintiffs have not presented their "lodestar" calculation, so it is

19  not possible to apply that as a "cross-check" to the reasonableness of any claim they may make

20  under a "percentage of recovery" method for the full $10 million permitted by the settlement

21  agreement.  *See Dennis*, __ F.3d __, 2012 WL 2870128 at *8.  Nor have plaintiffs even yet applied

22  for the full $10 million.  Nevertheless, (1) the ratio of the amount of attorney fees specified in the

23  clear sailing agreement and the clearly definable economic value of the *cy pres* payment, (2) the

24  sheer size of the award, and (3) the fact that any fees not awarded would revert to Facebook, all

25  present serious concerns.

26  _____

27  [4]  While not directly related to the "value" of injunctive relief, a calculation based on the revenue
    derived by Facebook from utilizing members' names and likenesses might serve as a method to

28  estimate past actual damages, as a starting point for supporting the amount of the *cy pres* payment.

United States District Court
For the Northern District of California

5.  Other issues

Any renewed motion for preliminary approval should include the parties' best estimates as to the percentage of potential class members who may not receive email notice of the proposed settlement, either because they are no longer Facebook members or for other reasons.   As discussed at the hearing, plaintiffs generally appear to have satisfied the prerequisites for preliminary approval of the settlement, except with respect to the issues discussed above.  Nevertheless, any renewed motion for approval will be considered afresh, and while it is not clear that third parties have standing to object at the preliminary approval stage, plaintiffs should address significant points, if any, that may have been raised by such parties beyond those encompassed in the preceding discussion.  For administrative purposes, a further Case Management Conference is hereby set for December 6, 2012 at 10:00 a.m.  In the event a renewed motion for preliminary settlement approval has been filed prior to that date, the conference will be vacated.

IT IS SO ORDERED.

Dated: August 17, 2012

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE