# AMENDED SETTLEMENT AGREEMENT AND RELEASE

THIS AMENDED SETTLEMENT AGREEMENT AND RELEASE ("*Settlement Agreement*" or "*Settlement*" or "*Agreement*" or "*Revised Agreement*") is entered into between plaintiffs Susan Mainzer, James H. Duval, and W.T., a minor, by and through Russell Tait as Guardian ad Litem ("*Plaintiffs*"), individually and in their representative capacity as plaintiffs on behalf of the Class (including the Minor Subclass), and defendant Facebook, Inc. ("*Facebook*" or "*Defendant*") (Plaintiffs and Facebook collectively, "*Parties*," or singularly, "*Party*").

## RECITALS

**A.** On or about March 11, 2011, plaintiffs Angel Fraley, Paul Wang, and Susan Mainzer commenced a lawsuit ("*Action*") by filing an unverified Complaint in the Superior Court of the State of California, County of Santa Clara entitled *Angel Fraley, Paul Wang, and Susan Mainzer, individually and on behalf of all others similarly situated v. Facebook, Inc., a corporation, and DOES 1-100.* The case was assigned the number 11-cv-196193. The Complaint sought relief on behalf of a putative class and asserted claims under California Civil Code section 3344 and California Business and Professions Code section 17200 (California's Unfair Competition Law ("*UCL*")) and for unjust enrichment. The Complaint generally asserted that Facebook used the plaintiffs' names, photographs, likenesses, or identities (or some combination thereof) to advertise or sell products or services through "Sponsored Stories" without the plaintiffs' permission.

**B.** On March 18, 2011, plaintiffs Angel Fraley, Paul Wang, Susan Mainzer, and newly-added plaintiffs James H. Duval, a minor by and through James Duval, as Guardian ad Litem, and W.T., a minor, by and through Russell Tait, as Guardian ad Litem, filed an Amended Complaint. The Amended Complaint, like the original Complaint, sought relief on behalf of a putative class related to Sponsored Stories and asserted claims under California Civil Code section 3344 and California's UCL and for unjust enrichment.

**C.** On April 8, 2011, Facebook removed the Action from the Superior Court of the State of California, County of Santa Clara to the United States District Court for the Northern District of California ("*Court*"). Following removal, the Action was assigned case number 11-cv-01726.

**D.** On May 18, 2011, Facebook moved to dismiss the Amended Complaint and all of its claims pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of Article III standing, and Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

**E.** On June 6, 2011, Plaintiffs responded to Facebook's motion to dismiss by filing a Second Amended Complaint. The Second Amended Complaint, like the prior complaints, sought relief on behalf of a putative class related to Sponsored Stories and asserted claims under California Civil Code section 3344 and California's UCL and for unjust enrichment.

**F.** On July 1, 2011, Facebook moved to dismiss the Second Amended Complaint and all of its claims pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of Article III standing, and Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

**G.** On December 16, 2011, the Court granted Facebook's motion to dismiss with respect to the unjust enrichment claim but denied the motion with respect to the remaining two claims.

**H.**     On January 9, 2012, Facebook filed its Answer to the Second Amended Complaint. The Answer denies the Second Amended Complaint's allegations of wrongdoing and raises several affirmative defenses.

**I.**     On February 14, 2012, Plaintiffs filed a motion to dismiss the claims of Angel Fraley and Paul Wang without prejudice and to withdraw Angel Fraley and Paul Wang as class representatives.  On March 13, 2012, the Court entered an order dismissing Angel Fraley and Paul Wang's claims without prejudice and granting their request to withdraw as class representatives.

**J.**     On March 1, 2012, the Parties attended a full-day mediation before the Honorable Edward A. Infante (ret.) of JAMS.  The Parties also submitted briefs and supporting papers to the mediator.  Although a settlement was not reached at that time, with the assistance of the mediator, the Parties continued their arms-length settlement discussions after March 1, 2012.

**K.**     On March 29, 2012, Plaintiffs filed a motion for class certification (along with supporting papers) pursuant to Federal Rule of Civil Procedure 23(b)(3), or in the alternative, Federal Rule of Civil Procedure 23(b)(2) or (c)(4).  On April 19, 2012, Facebook filed an opposition (along with supporting papers) to Plaintiffs' motion for class certification.  On May 3, 2012, Plaintiffs filed a reply (along with supporting papers) in support of their motion for class certification.

**L.**     The Parties have engaged in extensive formal discovery for almost a full year, including depositions of fact witnesses and expert witnesses, requests for production of documents and written responses thereto, requests for admission and written responses thereto, interrogatories and written responses thereto, and production of documents and electronically stored information.

**M.**     Based on the Parties' investigations, Plaintiffs believe the Action has merit, while Facebook believes the Action has no merit.  The Parties have also each looked at the uncertainties of trial and the benefits to be obtained under the proposed Settlement, and have considered the costs, risks, and delays associated with the continued prosecution and defense of this complex and time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiffs or Facebook.

**N.**     Accordingly, it is now the intention of the Parties and the objective of this Settlement Agreement to avoid the costs, risks, and delays of continued litigation, including but not limited to trial and likely appellate proceedings, and settle and dispose of, fully and completely and forever, any and all claims and causes of action asserted or that could have been asserted in the Action.

**O.**     The Parties previously entered a Settlement Agreement and Release with an execution date of June 14, 2012.  Plaintiffs filed a motion for preliminary approval of that settlement on June 14, 2012 (Dkt. No. 181), and Facebook filed a brief in support of it two weeks later (Dkt. No. 188).  On August 2, 2012, the Court held a hearing on Plaintiffs' preliminary approval motion.  In an order dated August 17, 2012 (Dkt. No. 224) ("Order"), the Court denied the motion without prejudice, stating that the Parties "may elect to negotiate for modifications to their agreement" or "may present a renewed motion for preliminary approval of the existing agreement, with additional evidentiary and/or legal support directed at ameliorating the listed concerns."  (Order at 2.)  The Order further explained that, "[a]s discussed at the hearing, plaintiffs generally appear to have satisfied the prerequisites for preliminary approval of the settlement, except with respect to the issues discussed [in the Order]."  (*Id.* at 8.)

**P.**     Subsequent to this Court's Order, the Parties made several substantial modifications to their agreement, and they now enter into this Amended Settlement Agreement and Release.

**AGREEMENT**

**1.**     **DEFINITIONS.**  The following section defines terms, including terms that are not defined above.  Some definitions use terms that are defined later in this section:

**1.1**     The terms "***Authorized Claimant***" or "***Authorized Claimants***" mean any Class Member (including Minor Class Member) who submits a valid and timely Claim Form consistent with Section 4.1 below and for whom Facebook's records reflect that the Class Member appeared in a Sponsored Story on or before the date of entry of the Preliminary Approval Order.

**1.2**     The terms "***Claim Form***" or "***Claim Forms***" mean the form Class Members (including Minor Subclass Members) must timely submit to receive payment under this Settlement Agreement.  The Claim Form must be substantially similar to the form attached as Exhibit 5.

**1.3**     The term "***Claimant***" means any Class Member (including Minor Subclass Member) who submits a Claim Form under this Settlement Agreement.

**1.4**     The terms "***Class Counsel***" or "***Plaintiffs' Counsel***" mean the Arns Law Firm through Robert S. Arns and Jonathan Jaffe Law through Jonathan Jaffe.

**1.5**     The term "***Class Counsel's Fees and Costs***" means the reimbursement of attorneys' fees, costs, and expenses incurred by Class Counsel, if any, that is awarded by the Court to Class Counsel following the petition for such awards by Class Counsel as described in Section 2.5.

**1.6**     The terms "***Class***," "***Class Member***," and "***Class Members***" mean all persons in the United States who have or have had a Facebook account at any time and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, at any time on or before the date of entry of the Preliminary Approval Order.

**1.7**     The term "***Court***" means the United States District Court for the Northern District of California.

**1.8**     The term "***Cy Pres Recipients***" shall mean any of the following entities that is approved by the Court for a *cy pres* distribution pursuant to Section 2.3 or Section 2.4: Center for Democracy and Technology, Electronic Frontier Foundation, MacArthur Foundation, Joan Ganz Cooney Center, Berkman Center for Internet and Society (Harvard Law School), Information Law Institute (NYU Law School), Berkeley Center for Law and Technology (Berkeley Law School), Center for Internet and Society (Stanford Law School), High Tech Law Institute (Santa Clara University School of Law), Campaign for Commercial-Free Childhood, Consumers Federation of America, Consumer Privacy Rights Fund, ConnectSafely.org, and WiredSafety.org.

**1.9**     The term "***Email Notice***" means the legal notice summarizing the proposed Settlement terms, as approved by Class Counsel, Facebook's Counsel, and the Court, to be provided to Class Members (including Minor Subclass Members), under Section 3.3 of this Agreement via electronic mail or the Facebook domain of www.facebook.com.  The Email Notice must be substantially similar to the form attached hereto as Exhibit 3.

**1.10**     The term "***Escrow Agent***" means the entity that shall perform the escrow duties set forth in this Settlement.  The Escrow Agent will be the Garden City Group, Inc. ("GCG").

**1.11**     The term "***Fairness Hearing***" means the hearing at which the Court will decide whether to approve this Settlement Agreement as being fair, reasonable, and adequate.

**1.12**     The terms "***Final Order Approving Class Action Settlement and Judgment***" and "***Final Order and Judgment***" means a proposed order and judgment approving this Settlement. The Final Order and Judgment must be in substantially similar form as Exhibit 7 attached hereto.

**1.13**     The term "***Final Settlement Date***" means two Court days after the Final Order and Judgment become "final."  For the purposes of this Section 1.13, "final" means (a) if no appeal from the Final Order and Judgment is filed, the expiration of the time for the filing or noticing of any appeal from the Final Order and Judgment; (b) if an appeal from the Final Order and Judgment is filed, the date on which all appeals therefrom, including but not limited to petitions for rehearing or re-argument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Judgment; or (c) if the Class Counsel and Facebook's Counsel agree in writing, "Final Settlement Date" can occur on any other agreed upon date.

**1.14**     The term "***Facebook's Counsel***" means the law firm of Cooley LLP.

**1.15**     The term "***Incentive Award***s" means the service awards, if any, awarded by the Court to Plaintiffs following the petition for such awards by Plaintiffs as described in Section 2.6.

**1.16**     The term "***Long Form Notice***" means the legal notice of the proposed Settlement terms, as approved by Class Counsel, Facebook's Counsel, and the Court, to be provided to Class Members (including Minor Subclass Members) under Section 3.3 of this Agreement.  The Long Form Notice must be substantially similar to the form attached hereto as Exhibit 2.

**1.17**     The terms "***Minor Subclass***," "***Minor Subclass Member***," and "***Minor Subclass Members***" mean all persons in the Class who additionally have or have had a Facebook account at any time and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, while under eighteen (18) years of age, or under any other applicable age of majority, at any time on or before the date of entry of the Preliminary Approval Order.

**1.18**     The term "***Net Settlement Fund***" means the Settlement Fund, plus any interest or investment income earned on the Settlement Fund, less all of the following: the costs of Taxes; Tax Expenses; Class Counsel's Fees and Costs; Plaintiffs' Incentive Awards; the costs incurred by the Escrow Agent and Settlement Administrator; and the costs of delivering notice to the Class.

**1.19**     The term "***Objection, Opt-Out, and Claim Deadline***" means one hundred and fifty (150) calendar days after entry of the Preliminary Approval Order (*i.e.*, sixty (60) calendar days after the transmission of the Email Notice pursuant to Section 3.3(b) is to be completed).

**1.20**     The terms "***Opt-Out Form***" or "***Opt-Out Forms***" mean the form Class Members (including Minor Subclass Members) must timely submit in order to make an exclusion request

pursuant to Section 3.8.  The Opt-Out Form shall be substantially similar to the form attached as Exhibit 6.

      **1.21**    The term "***Preliminary Approval of Class Settlement and Provisional Class Certification Order***" or "***Preliminary Approval Order***" means an order preliminarily approving the Settlement of this Action and provisionally certifying the Class for settlement purposes only.  This order must be in substantially similar form as Exhibit 1 attached hereto.

      **1.22**    The term "***Publication Notice***" means the legal notice summarizing the proposed Settlement terms, as approved by Class Counsel, Facebook's Counsel, and the Court, to be provided to Class Members (including Minor Subclass Members), under Section 3.3 of this Agreement via publication.  The Publication Notice must be substantially similar to the form attached hereto as Exhibit 4.

      **1.23**    The term "***Released Claims***" is defined in Section 5.2 below.

      **1.24**    The term "***Released Parties***" is defined in Section 5.2 below.

      **1.25**    The term "***Releasing Parties***" is defined in Section 5.2 below.

      **1.26**    The term "***Settlement Administrator***" means the entity that shall perform the settlement administration duties set forth in this Settlement.  The Settlement Administrator will be GCG.

      **1.27**    The term "***Settlement Fund***" means twenty million dollars ($20,000,000).

      **1.28**    The term "***Settlement Website***" means a website set up by the Settlement Administrator for the purposes of providing the Class with notice of the proposed Settlement.

      **1.29**    The term "***Sponsored Stories***" or "***Sponsored Story***" means content displayed by or on behalf of Facebook that Facebook refers to or markets as "Sponsored Stories."  Without limiting the generality of the foregoing definition, Sponsored Stories are typically posts about or from a Facebook user or entity that a business, organization, or individual has paid to promote so there is a better chance that the posts will be seen by the user or entity's chosen audience.  They may be displayed, for example, when a Facebook user interacts with the Facebook service (including sub-domains, international versions, widgets, plug-ins, platform applications or games, and mobile applications) in certain ways, such as by clicking on the "Like" button on a business's, organization's or individual's Facebook page.  Sponsored Stories typically include a display of a Facebook user's Facebook name (i.e., the name the user has associated with his or her Facebook account) and/or profile picture (if the user has uploaded one) with a statement describing the user's interaction with the Facebook service, such as "John Smith likes UNICEF," "John Smith played Farmville," or "John Smith shared a link."  For illustrative purposes only (and without limiting the definition to those examples depicted), Exhibit 8 hereto shows examples of Sponsored Stories.

      **1.30**    The term "***Taxes***" means all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund.

      **1.31**    The term "***Tax Expenses***" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents

(including, without limitation, expenses of tax attorneys and/or accountants and costs and expenses relating to filing (or failing to file) the returns).

### 2.    SETTLEMENT TERMS

**2.1    Class Relief.**  For U.S. users, Facebook agrees to take the following measures within a reasonable time not to exceed six months following the Final Settlement Date:

(a)    **Revision of Facebook's Terms of Use.**  In addition to other changes Facebook reserves the right to make to section 10.1 of its Statement of Rights and Responsibilities, Facebook will revise section 10.1 to include language reading substantially as follows:

**About Advertisements and Other Commercial Content Served or Enhanced by Facebook**

Our goal is to deliver advertising and other commercial or sponsored content, such as Facebook Ads and Sponsored Stories, that is valuable to our users and advertisers.  In order to help us do that, you agree to the following:

You give us permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us.  This means, for example, that you permit a business or other entity to pay us to display your name and/or profile picture with your content or information.  If you have selected a specific audience for your content or information, we will respect your choice when we use it.

If you are under the age of eighteen (18), or under any other applicable age of majority, you represent that at least one of your parents or legal guardians has also agreed to the terms of this section (and the use of your name, profile picture, content, and information) on your behalf.

(b)    **User Visibility and Control Over Sponsored Stories**.  Facebook will create an easily accessible mechanism that enables users to view, on a going-forward basis, the subset of their interactions and other content on Facebook that have been displayed in Sponsored Stories (if any).  Facebook will further engineer settings to enable users, upon viewing the interactions and other content that are being displayed in Sponsored Stories, to control which of these interactions and other content are eligible to appear in additional Sponsored Stories.  Without limiting the foregoing, but for the sake of clarity, these settings will include the ability to enable users to prevent individual interactions and other content (or categories of interactions and other content) from appearing in additional Sponsored Stories.

(c)    **Relief for Minor Subclass**.

    (i)    **Revision of Facebook's Terms of Use.**  Facebook will revise its Statement of Rights and Responsibilities to provide that Facebook users under the age of eighteen (18), or under any other applicable age of majority, represent that their parent or legal guardian consents to the use of their name and likeness in connection with commercial, sponsored, or related content, as set forth in the revised section 10.1 of the Statement of Rights and Responsibilities (see Section 2.1(a) above).

    (ii)    **Confirmed Parental Relationships.**  Facebook will encourage new users, upon or soon after joining Facebook, to include in their profile information their family, including their parents and children.  Where both a parent and a minor child are users and confirm their relationship, Facebook's systems will record this confirmed parent/child relationship and utilize it as further described below.

    (iii)    **Parental Controls.**  Facebook will add an easily accessible link in the Family Safety Center (https://www.facebook.com/safety) to the tool it currently provides that enables parents to prevent the names and likenesses of their minor children from appearing alongside Facebook Ads (currently available at https://www.facebook.com/help/contact/328678960533614) and Facebook will extend this tool to enable parents to also prevent the names and likenesses of their minor children from appearing in Sponsored Stories. Facebook will also implement a method for enabling parents with a confirmed parental relationship with a minor user to utilize this tool through their own Facebook accounts, without obtaining access to their children's accounts.  Finally, Facebook will add a control in minor users' profiles that enables each minor user to indicate that his or her parents are not Facebook users.  Where a minor user indicates that his or her parents are not on Facebook, Facebook will make the minor ineligible to appear in Sponsored Stories until he or she reaches the age of 18, until the minor changes his or her setting to indicate that his or her parents are on Facebook, or until a confirmed parental relationship with the minor user is established.

    (iv)    **Parental Educational Information.**  Facebook will add a clear, easily understandable description of how advertising works on Facebook to the "parents" section of its Family Safety Center (https://www.facebook.com/safety).  Facebook will also create and show advertising to users with a confirmed parental relationship with a minor user, directing them to the Family Safety Center, and/or other parent-specific resources on Facebook.

(d)    **Additional Educational Information**.  For a period of up to ninety (90) calendar days following the Final Settlement Date, Facebook agrees to make a good faith effort to work with Plaintiffs, through Plaintiffs' Counsel, to identify

any educational or other information on www.facebook.com that in Plaintiffs' view does not accurately or sufficiently explain how advertising works on Facebook.  Facebook will endeavor to clarify such language.

    **(e)**    **Compliance Audit If Court Ordered**.  For a period of two years following the Final Settlement Date, Class Counsel shall have the right to move the Court, for good cause shown, for an order requiring one third-party audit to confirm compliance with the provisions of subparts (a) through (d) of Section 2.1 of this Agreement, and Facebook shall have the right to oppose such a motion.  In the event the Court requires such a third-party audit, Facebook agrees to conduct a total of one such audit during the two-year period at its own expense and provide the results thereof to Class Counsel.

Once implemented, the measures described above in this Section 2.1 will remain in place until, at least, a date that is two years after the Final Settlement Date.  Nothing described in this Section 2.1 above will inhibit, prevent, or limit Facebook from making product changes, changes to its terms of use (currently referred to as the "Statement of Rights and Responsibilities"), changes to product names or other terminology, or other changes, from time to time, as it deems appropriate in the conduct of its business, provided that such changes are consistent with the relief described above, or to comply with the law.

    **2.2**    **Settlement Fund.**  The Settlement Fund shall be used for the payment of the costs of Taxes; Tax Expenses; Class Counsel's Fees and Costs; Plaintiffs' Incentive Awards; the costs incurred by the Escrow Agent and Settlement Administrator; the costs of delivering notice to the Class; and the claims of Authorized Claimants, and/or the distributions to *Cy Pres* Recipients described in Section 2.3 and Section 2.4.  If any interest or other investment income is earned on the Settlement Fund while in the control of the Escrow Agent, such interest shall be included in the Net Settlement Fund and disbursed as part of the Settlement or, if the Final Settlement Date does not occur, returned to Facebook as provided below.

    **(a)**    Within twenty-one (21) calendar days after entry of the Preliminary Approval Order, Facebook shall cause to be paid into an interest-bearing account designated and controlled by the Escrow Agent that portion of the Settlement Fund projected to be adequate to pay for the costs of delivering notice to the Class (as described in Section 3.3 below), based on reasonable estimates provided by the Settlement Administrator and/or any third-party vendor contemplated to be responsible for delivering notice.  For the sake of clarity, this payment into the escrow account will exclude any amounts for payment of Class Counsel's Fees and Costs, Plaintiffs' Incentive Awards, and the claims of Authorized Claimants, and/or the distributions to *Cy Pres* Recipients described in Section 2.3 and Section 2.4.

    **(b)**    Thereafter, Facebook may, at its discretion, cause to be paid into the escrow account additional portions of the Settlement Fund for the purposes of paying any additional costs of delivering notice to the Class, any costs incurred by the Escrow Agent and Settlement Administrator, any costs of Taxes, or any Tax Expenses.  For the sake of clarity, these payments into the escrow account will exclude any amounts for payment of Class Counsel's Fees and Costs, Plaintiffs'

Incentive Awards, and the claims of Authorized Claimants, and/or the distributions to *Cy Pres* Recipients described in Section 2.3 and Section 2.4.

(c) Within five (5) business days after the Final Settlement Date, Facebook shall cause to be paid into the escrow account the remaining portion of the Settlement Fund that has not previously been paid into the escrow account.

(d) All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

(e) Upon five (5) business days notice to Class Counsel and Facebook's Counsel, the Escrow Agent may pay itself and the Settlement Administrator their costs reasonably and actually incurred in their roles as the Settlement Administrator and Escrow Agent.

(f) The Settlement Fund is the total amount that Facebook will pay under this Settlement for any purpose, including without limitation, to satisfy claims by Class Members (including Minor Subclass Members), Class Counsel's Fees and Costs, Incentive Awards, the costs of delivering notice to the Class, and the costs incurred by the Settlement Administrator and Escrow Agent. Class Members (including Minor Subclass Members) shall look solely to the Settlement Fund for settlement and satisfaction against Facebook of all Released Claims. Except as expressly provided by order of the Court, no Class Member (including Minor Subclass Member) shall have any interest in the Settlement Fund or any portion thereof.

   **2.3    Relief Provided to Class.** Each Authorized Claimant, subject to the limitations stated below regarding proration of claims or distribution to the *Cy Pres* Recipients, is entitled to a one-time cash payment equal to ten dollars ($10).

(a) If payment of $10 to all Authorized Claimants would exhaust the Net Settlement Fund, the following procedures shall be followed.

   (i) The Settlement Administrator shall distribute the Net Settlement Fund pro rata to each Authorized Claimant.

   (ii) Notwithstanding Section 2.3(a)(i), if, given the number of Authorized Claimants, each Authorized Claimant's pro-rata share of the Net Settlement Fund would be less than five dollars ($5), the Court may, in its discretion, in the Final Order and Judgment either (A) order the Settlement Administrator to distribute the Net Settlement Fund pro rata to each Authorized Claimant, or (B) order the Settlement Administrator to distribute the entire Net Settlement Fund to the *Cy Pres* Recipients, as described in greater detail below in Section 2.4. If Court, in its Final Order and Judgment, does not address the disposition of the Net Settlement Fund under this Section 2.3(a)(ii), the Settlement

Administrator shall distribute the Net Settlement Fund pro rata to each Authorized Claimant.

(iii) Notwithstanding Section 2.3(a)(ii), if it is not economically feasible to make any pro rata payment to the Authorized Claimants without exceeding the Net Settlement Fund, the Settlement Administrator shall distribute the entire Net Settlement Fund to the *Cy Pres* Recipients, as described in greater detail below in Section 2.4.

(b) If payment of $10 to all Authorized Claimants would not exhaust the Net Settlement Fund, the Settlement Administrator shall first (i) distribute $10 to each Authorized Claimant and then (ii) distribute to the *Cy Pres* Recipients any proceeds remaining in the Net Settlement Fund, as described in greater detail below in Section 2.4. Notwithstanding the foregoing and subject to Section 2.3(a)(iii), the Court may, in its discretion, order the Settlement Administrator to (i) increase the pro rata payment to each Authorized Claimant such that the total payment to each Authorized Claimant would exceed $10 and (ii) then distribute to the *Cy Pres* Recipients any proceeds remaining in the Net Settlement Fund, as described in greater detail below in Section 2.4.

(c) **Manner of Payment.** Payments shall be made by ACH (Automated Clearing House) transfer to the Authorized Claimants. Alternatively, the Class Member may elect to receive payment by physical check. The Claim Form will contain spaces for Class Members to elect the manner of payment and to provide the Settlement Administrator with their payment information.

(d) **Timing of Payment.** The Net Settlement Fund shall be distributed to Authorized Claimants between thirty (30) and forty-five (45) calendar days after the Final Settlement Date.

(e) **Time to Cash Settlement Checks and Treatment of Undeliverable Checks.** Authorized Claimants who receive a physical check shall have ninety (90) calendar days within which to cash the issued check. Any funds from checks not cashed within that ninety (90) calendar day period or funds from checks returned as undeliverable shall be returned to the Net Settlement Fund and distributed to the *Cy Pres* Recipients, as described in greater detail below in Section 2.4. Additionally, if an Authorized Claimant who elects payment by ACH fails to provide sufficient or correct information to permit payment to an account, the amount of that failed payment shall revert to the Net Settlement Fund.

**2.4** *Cy Pres* **Distribution.** The following procedures shall govern the distribution of proceeds, if any, from the Net Settlement Fund to the *Cy Pres* Recipients.

(a) *Allocation of Cy Pres* **Distribution.** Subject to Court approval, any *cy pres* distributions shall be allocated to the *Cy Pres* Recipients according to the following percentages: Center for Democracy and Technology (10% of *cy pres* distribution), Electronic Frontier Foundation (10%), MacArthur Foundation

(10%), Joan Ganz Cooney Center (10%), Berkman Center for Internet and Society (Harvard Law School) (6%), Information Law Institute (NYU Law School) (6%), Berkeley Center for Law and Technology (Berkeley Law School) (6%), Center for Internet and Society (Stanford Law School) (6%), High Tech Law Institute (Santa Clara University School of Law) (6%), Campaign for Commercial-Free Childhood (6%), Consumers Federation of America (6%), Consumer Privacy Rights Fund (6%), ConnectSafely.org (6%), and WiredSafety.org (6%).

**(b)**     **Timing of *Cy Pres* Distribution.**   Any proceeds from the Net Settlement Fund that will be distributed to the *Cy Pres* Recipients shall be distributed by the Settlement Administrator to the *Cy Pres* Recipients between thirty (30) and forty-five (45) calendar days after the deadline for Class Members to cash the settlement checks pursuant to Section 2.3(d).  Alternatively, in the event that the entire Net Settlement Fund is to be distributed to the *Cy Pres* Recipients under the terms of this agreement or as ordered by the Court, the Settlement Administrator shall distribute such proceeds to the *Cy Pres* Recipients between thirty (30) and forty-five (45) calendar days after the Final Settlement Date.

**2.5**     **Class Counsel's Fees and Costs.**   Plaintiffs may file a motion with the Court seeking a portion of the Settlement Fund as payment of any reasonable attorneys' fees, plus reimbursement of actual costs and expenses, including experts or consultants, incurred in connection with prosecuting the Action.

**(a)**     Class Counsel shall file any such motion for Class Counsel's Fees and Costs, along with any papers supporting the motion, with the Court on or before twenty-three (23) days after entry of the Preliminary Approval Order.  Class Counsel's motion for payment of Class Counsel's Fees and Costs shall be available on the Settlement Website once the Settlement Website becomes active.  Additionally, the total amount of attorneys' fees, costs, and expenses sought by Class Counsel shall be disclosed in the Long-Form Notice.

**(b)**     The Settlement Administrator will distribute from the Settlement Fund any Class Counsel's Fees and Costs awarded by the Court within fourteen (14) days after the Final Settlement Date.

**(c)**     The Arns Law Firm shall have sole responsibility to distribute any payment of Class Counsel's Fees and Costs to Jonathan Jaffe Law and any other attorney or law firm that may claim they are owed fees, costs, or expenses under this Settlement.

**2.6**     **Incentive Award to Plaintiffs.**   Plaintiffs agree not to petition the Court for more than $12,500 (each) for an Incentive Award.  Facebook further agrees that it will not take a position on the amount of any incentive award requested unless asked by the Court to express views thereon.  The Settlement Administrator will pay the Incentive Awards approved by the Court to Plaintiffs (Susan Mainzer, James H. Duval, and W.T., a minor, by and through Russell Tait) from the Settlement Fund within fourteen (14) days after the Final Settlement Date.

**2.7    Relationship of Attorneys' Fees, Costs, and Expenses and Incentive Award(s) to Class Relief.**  It is not a condition of this Settlement that any particular amount of attorneys' fees, costs, or expenses or incentive awards be approved by the Court, or that such fees, costs, expenses, or awards be approved at all.  Any order or proceeding relating to the amount of any award of attorneys' fees, costs, or expenses or incentive awards, or any appeal from any order relating thereto, or reversal or modification thereof, shall not operate to modify, terminate, or cancel this Settlement, or affect or delay the finality of the Final Order and Judgment.

**2.8    Releases.**  The Parties agree that the releases stated in Sections 5.2 and 5.3 are material parts of this Settlement and are hereby incorporated into this Section 2 as if fully stated herein.

**3.    CLASS SETTLEMENT PROCEDURES**

**3.1    Cooperation to Obtain Court Approval.**  The Parties will jointly take all reasonable steps necessary to secure the Court's approval of this Settlement.

**3.2    Preliminary Approval of Class Settlement and Provisional Class Certification.**  As set forth below, the Parties shall take all reasonable steps to secure the Court's entry of a Preliminary Approval Order in substantially similar form to Exhibit 1.

(a)    As soon as practicable after the Settlement's execution date, but in any event no later than ten (10) days after the execution date, the Parties shall jointly move the Court for an order to:

(i)    preliminarily approve this Settlement on the ground it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval[,]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007);

(ii)    approve the form, manner, and content of the Long Form Notice, Email Notice, Publication Notice, Claim Form, and Opt-Out Form as described in Section 3.3 below and attached hereto as Exhibits 2-6, respectively;

(iii)    find that Facebook has complied with 28 U.S.C. § 1715(b);

(iv)    set the date and time of the Fairness Hearing, with the hearing being set no earlier than one hundred and ninety-five (195) calendar days after entry of the Preliminary Approval of Class Settlement and Provisional Class Certification Order; and

(v)    stay all proceedings in the Action until the Court renders a final decision on approval of the Settlement.

(b)    Concurrently with the joint motion for preliminary approval of the Settlement, Plaintiffs shall move for an order to:

    **(i)**    provisionally certify the Class and Minor Subclass under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only;

    **(ii)**    appoint Plaintiffs as class representatives for settlement purposes only; and

    **(iii)**    appoint the Arns Law Firm and Jonathan Jaffe Law as Class Counsel for settlement purposes only.

**3.3**    **Notice.**  Subject to the Court approving the Preliminary Approval Order, the Parties agree that the Class shall be provided with notice of the proposed Settlement by the following methods.

**(a)**    **Settlement Website.**  Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, the Settlement Administrator will set up a website and post the Long Form Notice, Claim Form, and Opt-Out Form.  The Settlement Website will also allow for electronic submission through the website of the Claim Form and Opt-Out Form.  The website will be active until thirty-one (31) calendar days after the Final Settlement Date.  However, the Settlement Administrator may disable online submission of the Claim Form and Opt-Out Form the day after the Objection, Opt-Out, and Claim Deadline.  Facebook retains sole and exclusive discretion to select the name of the URL (Internet address), to which Plaintiffs shall not object absent manifest good cause.

**(b)**    **Short Form Notice by Email.**  Starting no later than thirty (30) calendar days after entry of the Preliminary Approval Order, Facebook or its designee will begin the transmission of the Email Notice provided for in this Settlement.

    **(i)**    Facebook or its designee will transmit the Notice as follows:

        **(1)**    Transmit the Email Notice by email to each Class Member (including Minor Subclass Members) for whom Facebook has a valid email address, including persons who previously indicated that they do not wish to receive any communications from Facebook.  At Facebook's sole discretion, all or part of such email distribution may be effected through a third-party vendor or the Settlement Administrator.

    **(ii)**    For the purposes of this notice, Facebook will use reasonable efforts to ascertain which Facebook users whose names or profile pictures appeared in a Sponsored Story are located within the United States.

    **(iii)**    Facebook or its designee will have up to and including ninety (90) calendar days after entry of the Preliminary Approval Order to complete transmission of the Email Notice.  Facebook or its designee may carry out the transmission of the Email Notice over this period of ninety (90) calendar days to accommodate technical limitations,

including, for instance, if the Email Notice is transmitted by email, to avoid the risk that the Email Notice would be blocked by Internet Service Providers.

**(iv)** The Email Notice will be substantially similar to the form attached as Exhibit 3, and will provide the URL (Internet address) of the Settlement Website containing the Long Form Notice and a U.S. postal address and an email address to contact the Settlement Administrator.

**(c)** **Publication Notice.** Between thirty (30) and ninety (90) calendar days after entry of the Preliminary Approval Order, the Settlement Administrator will cause the Publication Notice to be published (i) three times in an insertion in the national Monday-Thursday edition of the *USA Today* newspaper, and (ii) once by transmission through PR Newswire's US1 distribution service. The Publication Notice will be substantially similar to the form attached as Exhibit 4, and will provide the URL (Internet address) of the Settlement Website containing the Long Form Notice and a U.S. postal address and an email address to contact the Settlement Administrator.

**(d)** As stated previously, the costs associated with providing all forms of notice referenced in this Section 3.3 shall be paid out of the Settlement Fund.

**3.4** **CAFA Notice**. After the Settlement Agreement is filed with the Court, Facebook shall serve upon the relevant government officials notice of the proposed Settlement in accordance with 28 U.S.C. § 1715. Shortly after providing CAFA notice, and prior to the preliminary approval hearing, Facebook will submit a proof of service of such notice with the Court.

**3.5** **Inquiries from Class Members.** The Settlement Administrator will establish an email account and P.O. Box to which Class Members (including Minor Class Members) may submit questions regarding the Settlement. The Settlement Administrator will monitor the email account and P.O. Box and respond promptly to inquiries received from Class Members.

**3.6** **Proof of Notice.** No later than ten (10) calendar days after the Objection, Opt-Out, and Claim Deadline, Facebook must serve a declaration on Class Counsel confirming that the Settlement Administrator and/or Facebook (or a third-party vendor retained by either) provided the Class with notice of the proposed Settlement in accordance with Section 3.3.

**3.7** **Objections.** Any Class Member (including any Minor Subclass Member) who has not submitted a timely written exclusion request pursuant to Section 3.8 below and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to Class Counsel's Fees and Costs or Incentive Awards, must follow the following procedure:

**(a)** **Content of Objections.** Written objections must be verified by a declaration under the penalty of perjury or a sworn affidavit and must include: (a) the name of the Action and case number, "*Fraley v. Facebook, Inc.*, Case No. CV-11-01726 RS"; (b) the full name, address, telephone number, and email address associated with the Facebook account of the person objecting; and (c) an

explanation detailing the specific reasons for each objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence the objector wishes to introduce in support of the objection(s). Objectors must provide the email address associated with their Facebook account to Class Counsel and Facebook's Counsel so that they can verify whether the objector is a Class or Minor Subclass Member.

(b)     **Manner of Service of Objections.**  Service of an objection may be done in one of two ways.  It shall be the objector's responsibility to ensure receipt of any objection by the Court or the Settlement Administrator.

    (i)     **Service on Settlement Administrator.**  Objecting Class Members may deliver written objections to the Settlement Administrator by postal mail or electronic mail.[1]

    (ii)     **ECF Filing.**  Alternatively, if the objector is represented by counsel, the objection may be filed with the Court and served on Facebook and Plaintiffs through the Court's electronic case filing ("ECF") system located at https://ecf.cand.uscourts.gov/cand/index.html.  An objection filed with the Court via ECF may redact the objecting individual's telephone number or email address, so long as the unredacted version is served on Class and Facebook Counsel.

(c)     **Deadline for Objections.**  Objections must be delivered on or before the Objection, Opt-Out, and Claim Deadline.  The delivery and file date of an objection is deemed to be: (a) if mailed to the Settlement Administrator, the date the objection is deposited in the U.S. Mail or equivalent foreign system, with postage paid by the objector, as evidenced by the postmark, (b) if emailed to the Settlement Administrator, the date reflected on the transmission record, or (c) if filed with the Court electronically and served on the Parties via the Court's ECF system, the date reflected on the objection's "notice of electronic filing."  For the purposes of email and ECF transmission, transmission must be complete by 11:59 p.m. (Pacific) on the Objection, Opt-Out, and Claim Deadline.

(d)     **Attendance at Fairness Hearing.**  Any Class Member (including any Minor Subclass Member) who files and serves a written objection, as described in this Section 3.7, has the option to appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the

---

[1] Every Friday starting the date on which Email Notice begins to be provided under Section 3.3(b), the Settlement Administrator will email to Facebook's Counsel and Class Counsel any objections it received during the prior week.  After the Objection, Opt-Out, and Claim Deadline, the Settlement Administrator will compile all objections it received, with an index, which Plaintiffs will file with the Court prior to the filing deadline for Plaintiffs' brief in support of the Final Order and Judgment. Plaintiffs shall redact Class Members' telephone numbers and email addresses when filing the objections.

fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of attorneys' fees or costs.  However, Class Members or their attorneys intending to make an appearance at the Fairness Hearing must also deliver, pursuant to the procedures set forth in Section 3.7(b), a Notice of Intention to Appear no later than the Objection, Opt-Out, and Claim Deadline.  As an alternative to a Notice of Intention to Appear, Class Members may state in their objections that they intend to appear and speak at the Fairness Hearing.  Only Class Members who file and serve timely objections and give notice to the Court, Class Counsel, and Facebook's counsel that they intend to speak at the Fairness Hearing may do so, unless the Court orders otherwise.  If a Class Member makes an objection through an attorney, the Class Member will be responsible for his or her personal attorney's fees and costs.

**3.8**     **Exclusion Requests.**   Class Members (including Minor Subclass Members) may elect not to be part of the Class and not to be bound by this Settlement Agreement.

**(a)**     **Manner of Making Exclusion Request.**   To make an exclusion request, Class Members must timely submit a complete Opt-Out Form.  If sent by mail, the Opt-Out Form must be postmarked no later than the Objection, Opt-Out, and Claim Deadline, with postage paid by the person requesting exclusion.  If submitted electronically, the Opt-Out Form must be submitted by 11:59 p.m. (Pacific), on or before the Objection, Opt-Out, and Claim Deadline.  The exclusion request must be made on the Opt-Out Form.  So-called "mass" or "class" opt-outs purporting to be made on behalf of multiple persons or classes of persons shall not be allowed.  Any Class Member who does not transmit a valid and timely Opt-Out Form shall be bound by all subsequent proceedings, orders, and judgments.  Only Class Members who transmit valid and timely Opt-Out Forms will be deemed to have opted out of the Class, unless the Court orders otherwise.

**(b)**     **Exclusion List**.   The Settlement Administrator shall serve on Facebook's Counsel and Class Counsel a list of Class Members who have timely and validly excluded themselves from the Class no later than ten (10) calendar days after the Objection, Opt-Out, and Claim Deadline.

**(c)**     **Termination Clause.**   If more than twelve thousand five hundred (12,500) Class Members timely and validly request exclusion, then Facebook may, in its sole discretion, at any time on or before ten (10) calendar days after the Objection, Opt-Out, and Claim Deadline, notify Class Counsel in writing that it has elected to terminate this Settlement Agreement.  If this Settlement Agreement is terminated, it will be deemed null and void *ab initio*.  In that event: (i) the Provisional Class Certification Order and all of its provisions will be vacated by its own terms; (ii) the Action will revert to the status that existed before the Settlement Agreement's execution date; and (iii) no term or draft of this Settlement Agreement, or any part or aspect of the Parties' settlement discussions, negotiations, or documentation (including any declarations and briefs filed in support of the motion for preliminary or final approval) will have

any effect or be admissible into evidence, for any purpose, in this Action or any other proceeding.   The Parties expressly acknowledge that in the event this termination clause is invoked, then Section 6.1 of this Settlement applies, and therefore they expressly incorporate Section 6.1's terms by this reference as if set forth fully herein.

> **3.9    Final Order and Judgment.**   Before the Fairness Hearing, and assuming no exercise of the Termination Clause in Section 3.8(c) of this Agreement, Plaintiffs must apply for Court approval of a proposed Final Order Approving Class Action Settlement and Judgment, substantially similar to the form attached hereto as Exhibit 7.   Subject to the Court's approval, the Final Order Approving Class Action Settlement and Judgment shall, among other things:

> **(a)**    finally approve the Agreement and Settlement;

> **(b)**    finally certify the Class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(b)(3);

> **(c)**    find that the notice and the notice dissemination methodology complied with the Settlement Agreement, Federal Rule of Civil Procedure 23, and the Due Process Clause of the United States Constitution;

> **(d)**    issue orders related to the relief provided for in the Settlement Agreement, including injunctive relief, payment of Authorized Claimants and/or *cy pres* distribution, payment of Incentive Awards, and payment of Class Counsel's Fees and Costs;

> **(e)**    incorporate the releases set forth in Section 5 of this Settlement Agreement;

> **(f)**    dismiss the Action with prejudice; and

> **(g)**    retain jurisdiction over the Action and the Parties relating to the administration, consummation, and/or enforcement of the Agreement and/or the Final Order and Final Judgment, and for any other necessary purpose.

With its application, Class Counsel must file with the Court a complete list of all Class Members who have validly and timely excluded themselves from the Class.   Facebook will be entitled either to join in Plaintiffs' motion as a co-movant or to file a brief in support of Plaintiffs' motion, at Facebook's option.   In either event, Facebook shall be permitted, but not required, to file its own brief or statement in support of the Final Order and Judgment up to and including seven (7) calendar days prior to the Fairness Hearing.

> **4.    CLAIMS ADMINISTRATION.**

> **4.1    Claim Form.**   To be entitled to receive class relief, as described in Section 2.2 and Section 2.3 above, a Class Member must timely and accurately complete and submit to the Settlement Administrator a Claim Form.   The Claim Form shall be substantially similar to the form attached to this Agreement as Exhibit 5.

(a)     To be valid, on the Claim Form the Class Member must attest under the penalty of perjury: (a) the Class Member understands that a story about some action he or she took on Facebook (such as liking a page, checking in at a location, or sharing a link), along with his or her name and/or profile picture, may have been displayed in a Sponsored Story shown to his or her Facebook Friends who were authorized by the Class Member to see that action; (b) the Class Member was not aware that Facebook could be paid a fee for displaying actions such as these, along with the Class Member's name and/or profile picture, to his or her Facebook Friends; (c) the Class Member believes that, if his or her name and/or profile picture was displayed in a Sponsored Story, he or she was injured by that display; (d) the Class Member is submitting only one claim form regardless of how many Facebook accounts the Class Member has; and (e) the Class Member understands that he or she is releasing all claims against Facebook, and all other Released Parties, as set forth in Section 5.  The Class Member must also provide the email address and User ID or username associated with his or her Facebook account, and the name associated with his or her Facebook account, whether or not such name is a pseudonym.  Facebook's records must also reflect that the Class Member appeared in a Sponsored Story on or before the date of entry of the Preliminary Approval Order.

(b)     The Claim Form must be submitted no later than the Objection, Opt-Out and Claim Deadline.  If sent by mail the Claim Form must be postmarked by the Objection, Opt-Out and Claim Deadline.  If submitted electronically through the Settlement Website, it must be submitted by 11:59 p.m. (Pacific) on the Objection, Opt-Out and Claim Deadline.

**4.2     Claims Review Process.**     The Settlement Administrator shall review all submitted Claim Forms within a reasonable time to determine each Claimant's eligibility for class relief.  To be considered an "Authorized Claimant," a Claimant must submit a valid and timely Claim Form consistent with Section 4.1 and Facebook's records must reflect that the Claimant appeared in a Sponsored Story on or before the date of entry of the Preliminary Approval Order.  Starting forty-five (45) calendar days after entry of the Preliminary Approval Order, the Settlement Administrator shall provide weekly reports to Facebook's Counsel and Class Counsel concerning the Claim Forms received during the prior week.  Claim Forms that do not meet the submission requirements shall be rejected.  Prior to rejection of a Claim Form, the Settlement Administrator shall communicate with the Claimant in an effort to remedy curable deficiencies in the Claim Form submitted.  Thereafter, the Settlement Administrator shall notify, in a timely fashion, all Claimants whose Claim Forms the Settlement Administrator proposes to reject in whole or in part, setting forth the reasons therefore.  If the Claim Form at issue was submitted by mail, the Class Member shall be notified by mail to the original address used.  If the Claim Form at issue was submitted electronically, the Class Member shall be notified by email to the original email address identified in the submission.  Should a Claimant dispute the Settlement Administrator's determination whether he or she is an Authorized Claimant, the matter shall be submitted to Class Counsel and Facebook's Counsel for resolution, and if no resolution is reached, the determination of the Settlement Administrator will be final.

5.      **DISMISSAL OF ACTION AND RELEASES**

  **5.1  Judgment and Enforcement.**  The Parties agree that should the Court grant final approval of the proposed Settlement and enter the Final Judgment and Order, such Final Judgment and Order shall include a provision for the retention of the Court's jurisdiction over the Parties to enforce the terms of this Settlement Agreement.

  **5.2  Class Members' Release.**  Upon the entry of the Final Order and Judgment, Plaintiffs and all Class Members, including all Minor Subclass Members (and their parents or legal guardians on all Minor Subclass Members' behalf), who do not validly and timely request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives (collectively the "Releasing Parties") shall be deemed to have fully, finally, and forever released, relinquished, and discharged against Facebook and all other persons and entities, including but not limited to persons and entities that have purchased Sponsored Stories from Facebook, and each of their direct or indirect parents, wholly or majority-owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under, or in concert with them, or any of them (collectively the "Released Parties"), all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown claims, in law or equity, fixed or contingent, which the Releasing Parties have or may have against the Released Parties arising out of or relating to any of the acts, omissions, or other conduct that was or could have been alleged in the Action, including but not limited to any and all acts, omissions, or other conduct related to the display of any Class Member's name, nickname, pseudonym, profile picture, photograph, likeness, or identity in a Sponsored Story ("Released Claims").

**In addition, the Releasing Parties expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:**

    **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Releasing Parties fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by the Releasing Parties and their Counsel to be true, and they expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts.  Further, the Releasing Parties agree that this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been accepted.

  **5.3  Plaintiffs' General Release.**  Upon entry of the Final Order and Judgment, Plaintiffs Susan Mainzer, James H. Duval, and W.T., a minor, by and through Russell Tait as Guardian ad Litem, in their individual capacities only, and each of their successors, assigns, legatees, heirs, and

personal representatives release and forever discharge Facebook and its direct or indirect parents, wholly or majority-owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of its present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under, or in concert with it, from all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent.

**In addition, Plaintiffs Susan Mainzer, James H. Duval, and W.T., a minor, by and through Russell Tait as Guardian ad Litem, in their individual capacities only, and each of their successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:**

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiffs fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by Plaintiffs and their Counsel to be true, and they expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts.  Further, Plaintiffs agree that this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been accepted.

6. **TERMINATION OF SETTLEMENT**

6.1 **Action Status if Settlement Not Approved.**  This Settlement Agreement is being entered into for settlement purposes only.  If the Court conditions its approval of either the Preliminary Approval Order or the Final Order and Judgment on any modifications of this Settlement Agreement that are not acceptable to all Parties, or if the Court does not approve the Settlement or enter the Final Order and Judgment, or if the Final Settlement Date cannot occur for any reason, then this Settlement Agreement will be deemed null and void *ab initio*.  In that event: (a) the Preliminary Approval Order, the Final Order and Judgment (if applicable), and all of its or their provisions will be vacated by its or their own terms, including, but not limited to, vacating any and all rulings regarding class certification for settlement purposes, including conditional certification of the Class, conditional appointment of Plaintiffs as class representatives, and conditional appointment of Plaintiffs' Counsel as Class Counsel; (b) the Action will revert to the status that existed before the Settlement Agreement's execution date; and (c)(i) no term or draft of this Settlement Agreement, (ii) nor any part of the Parties' settlement discussions, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), (iii) nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Order and Judgment), will have any effect or be admissible into evidence for any purpose in the Action or any other proceeding.  If the Court does not approve the Settlement or

enter the Final Order and Judgment for any reason, or if the Final Settlement Date cannot occur for any reason, Facebook shall retain all its rights, for example, to object to the maintenance of the Action as a class action, to move for summary judgment, and to assert defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any Party concerning whether the Action may properly be maintained as a class action, or for any other purpose.

      **6.2    Treatment of Settlement Fund if Settlement Terminated.**  Unless otherwise ordered by the Court, in the event the Settlement is terminated for any reason, then within ten (10) business days after the Parties have provided the Court with notice that they are invoking this Section 6.2, the Escrow Agent shall return the Settlement Fund (including accrued interest), less expenses and any costs which have either been disbursed or incurred, including Taxes and Tax Expenses, to Facebook pursuant to written instructions from Facebook's Counsel.  At the request of Facebook's Counsel, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Facebook.

      **7.    ADDITIONAL PROVISIONS**

      **7.1    Facebook's Denial of Wrongdoing.**  Facebook denies that it committed, or attempted to commit, any violations of law with respect to its users or otherwise.  Facebook also denies that Plaintiffs and the Class have suffered any injury or damages as a result of conduct alleged in the Action. Facebook maintains that it has meritorious defenses to all the claims alleged in the Action.  Nonetheless, Facebook believes that further litigation could be protracted, burdensome, expensive, and distracting.  Facebook has also determined that further litigation would divert resources and attention from other activities important to its business interests.  Thus, Facebook has concluded that it is desirable and beneficial to settle the Action on the terms and conditions set forth in this Settlement.

      **7.2    No Tax Liability.**  Under no circumstances will Facebook or Facebook's Counsel have any liability for taxes or tax expenses under the Settlement.  Plaintiffs, Plaintiffs' Counsel, Class Members, and the recipients of *cy pres* funds are responsible for any taxes on their respective recoveries or awards.  Nothing in this Settlement Agreement, or statements made during the negotiation of its terms, shall constitute tax advice by Facebook or Facebook's Counsel.

      **7.3    Change of Time Periods.**  All time periods and dates described in this Settlement Agreement are subject to the Court's approval.  These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the Class or Minor Subclass.  The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any provisions of this Agreement.

      **7.4    Real Parties in Interest.**  In executing this Settlement Agreement, the Parties warrant and represent that they, including Plaintiffs in their representative capacity on behalf of the Class and Minor Subclass, are the only persons having any interest in the claims asserted in this Action.  Neither these claims, nor any part of these claims, have been assigned, granted, or transferred in any way to any other person, firm, or entity.

**7.5     Voluntary Agreement.**   The Parties executed this Settlement Agreement voluntarily and without duress or undue influence.

**7.6     Binding on Successors, etc.**  This Settlement Agreement binds and benefits the Parties' respective successors, assigns, legatees, heirs, and personal representatives.

**7.7     Parties Represented by Counsel.**  The Parties acknowledge that: (a) they have been represented by independent counsel of their own choosing during the negotiation of this Settlement and the preparation of this Settlement Agreement; (b) they have read this Settlement Agreement and are fully aware of its contents; and (c) their respective counsel fully explained to them the Settlement Agreement and its legal effect.

**7.8     Authorization.**  Each Party warrants and represents that there are no liens or claims of lien or assignments, in law or equity, against any of the claims or causes of action released by this Settlement Agreement and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

**7.9     Entire Agreement.**  This Settlement and attached exhibits contain the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Action.  This Settlement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Settlement and any such prior promises, representations, or warranties relating to this Action are null and void.

**7.10     Construction and Interpretation.**   Neither Party nor any of the Parties' respective attorneys will be deemed the drafter of this Settlement Agreement for purposes of interpreting any provision in this Settlement Agreement in any judicial or other proceeding that may arise between them.  This Settlement Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

**7.11     Headings and Formatting of Definitions.**  The various headings used in this Settlement Agreement are solely for the Parties' convenience and may not be used to interpret this Settlement Agreement.  Similarly, bolding and italicizing of definitional words and phrases is solely for the Parties' convenience and may not be used to interpret this Settlement Agreement.  The headings and the formatting of the text in the definitions do not define, limit, extend, or describe the Parties' intent or the scope of this Settlement Agreement.

**7.12     Exhibits.**  The exhibits to this Settlement Agreement are integral parts of the Settlement Agreement and the Settlement and are incorporated into this Settlement Agreement as though fully set forth in the Settlement Agreement.

**7.13     Modifications and Amendments.**  No amendment, change, or modification to this Settlement Agreement will be valid unless in writing signed by the Parties or their counsel.

**7.14     Governing Law.**  This Settlement Agreement is governed by California law and must be interpreted under California law without regard to conflict-of-laws principles.

**7.15    Further Assurances.**  The Parties must execute and deliver any additional papers, documents, and other assurances, and must do any other acts reasonably necessary, to perform their obligations under this Settlement Agreement and to carry out this Settlement Agreement's expressed intent.

**7.16    Agreement Constitutes a Complete Defense.**  To the extent permitted by law, this Settlement Agreement may be pled as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceedings that may be instituted, prosecuted, or attempted in breach of or contrary to this Settlement Agreement.

**7.17    Execution Date.**  The execution date shall be the last date when all signatories have signed the Agreement.

**7.18    Counterparts.**  This Settlement Agreement may be executed in counterparts, each of which constitutes an original, but all of which together constitute one and the same instrument. Several signature pages may be collected and annexed to one or more documents to form a complete counterpart.  Photocopies, facsimiles, and PDFs of executed copies of this Settlement Agreement may be treated as originals.

**7.19    Recitals.**  The Recitals are incorporated by this reference and are part of the Settlement Agreement.

**7.20    Severability.**  If any provision of this Settlement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Settlement will continue in full force and effect, unless the provision declared to be invalid, void, or unenforceable is material, at which point the Parties shall attempt to renegotiate the Settlement or, if that proves unavailing, either Party may terminate the Settlement Agreement, and such termination shall be deemed to cause no prejudice to any Party.

**7.21    Inadmissibility.**  This Settlement Agreement and any evidence of proceedings or discussions related to this Settlement Agreement are inadmissible as evidence of any liability or wrongdoing whatsoever in any Court or tribunal in any state, territory, or jurisdiction.  Further, neither this Settlement Agreement, nor the Settlement contemplated by it, nor any proceedings taken under it, will be construed or offered or received into evidence as an admission, concession, or presumption that class certification is appropriate, except to the extent necessary to consummate this Settlement Agreement and the binding effect of the Final Order and Judgment.

**7.22    No Waiver of Attorney-Client Privilege.**  Nothing in this Agreement, the negotiations, and the mediation relating thereto is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including without limitation the attorney-client privilege or work product immunity, by any Party.

*[Continued on the next page]*

**7.23   No Conflict Intended.**  Any inconsistency between this Settlement Agreement and the attached exhibits will be resolved in favor of this Settlement Agreement.

**7.24   List of Exhibits:**  The following exhibits are attached to this Settlement Agreement:

| | |
|---|---|
| Exhibit 1: | [Proposed] Preliminary Approval of Class Settlement and Provisional Class Certification Order |
| Exhibit 2: | Long Form Notice |
| Exhibit 3: | Email Notice |
| Exhibit 4: | Publication Notice |
| Exhibit 5: | Claim Form |
| Exhibit 6: | Opt-Out Form |
| Exhibit 7: | [Proposed] Final Order Approving Class Action Settlement and Judgment |
| Exhibit 8: | Sponsored Story Examples |

**The Parties have agreed to the terms of this Settlement Agreement and have signed below**.

Dated: 10/3/12

PLAINTIFF SUSAN MAINZER

_____

Susan Mainzer,
Individually and in her Representative Capacity

Dated: _10/4/12_

**PLAINTIFF JAMES H. DUVAL**

_____

James H. Duval,
Individually and in his Representative Capacity

Dated: 10/3/12

**PLAINTIFF W.T.**

_____

W.T.,
Individually and in his Representative Capacity

Dated: 10/3/12

**PLAINTIFF W.T., A MINOR, BY AND THROUGH RUSSELL TAIT AS GUARDIAN AD LITEM**

_____

Russell Tait,
on behalf of W.T., Individually and in his Representative Capacity

27 of 28

Dated: _10-05-12_

**DEFENDANT FACEBOOK, INC.**

_Michael Rhodes_

By: _Michael G. Rhodes_

Title: _Partner, Cooley LLP_

On behalf of Facebook, Inc.

_Counsel + Attorney-in-Fact_
_for Facebook_