UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W. T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>Defendants. | CASE No. 11-cv-01726 RS<br><br><br><br>OBJECTION TO SETTLEMENT |

Zara Watkins, being duly sworn, states as follows:

1. My full name is Zara Watkins, my address is PO Box 627, New York, New York 10274, my phone number is 917-689-3180 and the email address associated with my Facebook account is zara@yoginizara.com.
2. On January 11, 2013, I received an e-mail from legalnotice@facebookmail.com informing me of the pending class action and notice of proposed settlement in the above captioned case.
3. I object to the proposed settlement for several reasons.
4. First, the proposed amount to be paid to each class member is farcically low.
5. I did not know anything about this lawsuit prior to receiving the e-mail, and although I am struggling to have any feeling whatsoever about the supposed unauthorized use of my content by Facebook (don't I waive all rights to my content by posting it in a public

1

social media forum?), the amount of $10 doesn't even compensate me for the time I have spent reading the e-mail and trying to understand both the basis of the lawsuit and the terms of the settlement—let alone being a sufficient remedy for the purported grave violation of my rights that necessitated this lawsuit.

6. If I were not so sadly aware of the method and manner of the modern legal profession I would have thought the e-mail I received on January 11, 2013 was a joke. It definitely smacks of comedy because why in the world would I want to spend hours of my time trying to understand how Facebook violated my rights by using my content, and how this lawsuit is going to make a difference to it, for a measly $10? I will even offer my portion of the settlement to Mr. Arns, Mr. Davis, Mr. Weinman and Mr. Jaffe (split evenly between them, of course) in return for their assistance in understanding just exactly how my rights were violated and how this settlement adequately compensates me for those violations or otherwise adds value to the class members as a whole.

7. Next, the proposed attorney fee amount is offensive, not only to me personally and to all of the class members collectively, but also to public policy in general.

8. Given the obscene difference between the amount to be paid to each of us class members and the proposed attorneys fee award—$10 v. $7.5 million—it is clear that the plaintiffs attorneys in this case are exploiting the rights of their supposed clients in order to profit themselves handsomely. There is simply no reason for these attorneys to be rewarded for 8346.60 hours of work at the equivalent rate of $900 per hour when the purported benefit to the class members and the public at large is not even quantifiable, if existent at all.

9. The amount of $12,500 that these attorneys propose to pay to the "courageous" class representatives in return for their devotion of "significant time and resources" is further evidence that the plaintiffs attorneys are working on this matter for their own financial gain. Apparently the Arns Law Firm and Jonathan Jaffe Law believe their time is excessively more valuable than even that of the courageous plaintiffs who are the very reason they were able to commence this litigation. This Court should not tolerate such insulting treatment of class representatives and members.

10. It seems the plaintiffs attorneys constructed this lawsuit by seeking out suitable plaintiffs to bring an action against a deep-pocket defendant so they could claim their exorbitant

fee. The "novel issues" they refer to are merely presented as such to this Court in order to support their money making venture.

11. This case is rather simple: raise the ember of an issue (i.e., using content without consent = violation of right to privacy), wave it around to start a fire, then demand a water bearer (i.e., Facebook) to put out the fire but not before paying the plaintiffs attorneys buckets full of money for starting the fire in the first place. Such plaintiff/cause-of-action shopping should be considered inherently violative of public policy.

12. Further, in all attorney-client relationships the attorney has a duty to zealously advocate for the client and to obtain an outcome that is most favorable for *the client*. This duty necessarily implies another duty applicable in this context: that the attorneys attempt in good faith to maximize the recovery for all of the class members.

13. By proposing a settlement that awards a mere $10 to class members such as me, a mere $12,500 for the services of the class representatives but a whopping $7.5 million in fees for their services, Mr. Arns, Mr. Davis, Mr. Weinman and Mr. Jaffe have shown that they have no concern for the maximization of recovery for their clients, the class representatives and class members.

14. To the contrary, it appears that the plaintiffs attorneys' primary objective is maximization of their own fees under established doctrines applicable to class action lawsuits—indeed their fee application is full of recitation of legal jargon as to why they are entitled to their fee demand under the Lodestar case. However, the Lodestar case was decided on facts much different from this one; namely, here, there are far more (supposedly harmed) plaintiffs and a much larger recovery from the (as every one well knows) very wealthy defendant, Facebook.

15. Finally, regardless of the blanket statements made by the plaintiffs attorneys, this Court should address the fact that the outcome the plaintiffs attorneys are proposing is absurd: a recovery for each class member of a value worth less than two hours of working time (assuming an individual's hour of time is worth no more than the established minimum wage) and a recovery for the attorneys that awards them such a high amount they will not need to work for the rest of the year (assuming their 2013 business plan targets revenue in the millions, not billions).

16. This outcome does not serve the class members or the public at large because the value added through meaningful compensation or benefit to society is nonexistent—at the very least it has not been demonstrated or adequately explained by the plaintiffs attorneys. On the other hand, the proposed outcome encourages the exact kind of parasitic behavior by plaintiffs attorneys that have made the entire legal profession the butt of numerous bad jokes.

17. Therefore, I respectfully request that this Court consider more than just the prongs of the Lodestar test and take into account the broader interests of the public, specifically, the fact that class action lawsuits that have no meaningful purpose ultimately cost the consumer more, not least because the settlement amount will be passed on to us as a business expense. This Court should also consider the effect the outcome proposed by the plaintiffs attorneys will have on the already tarnished reputation of the entire legal profession.

18. For the foregoing reasons, I request that this Court not approve the proposed settlement without a significant reallocation of the settlement amount away from the plaintiffs attorneys towards the class members and representatives.

SWORN TO ME BEFORE ME
ON April 30, 2013
Brooklyn, New York

NOTARY PUBLIC

NOAH B. POTTER
Notary Public, State of New York
No. 02PO6066349
Qualified in New York County
Commission Expires November 13, 2013

KINGS

Zara Watkins