**KOREIN TILLERY**
Steven A. Katz
skatz@koreintillery.com
Aaron M. Zigler
azigler@koreintillery.com
One U.S. Bank Plaza
505 N. 7th St., Suite 3600
St. Louis, MO 63101-1625
Tel: (314) 241-4844  Fax: (314) 241-3525

[Additional Counsel Appear on Signature Page]

*Attorneys for Shane Objectors.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | Case No. C 11-1726 RS<br><br>**SHANE OBJECTION TO FINAL APPROVAL OF CLASS SETTLEMENT AND NOTICE OF INTENT TO APPEAR**<br><br>Date:          June 28, 2013<br>Time:         10:00 a.m.<br>Courtroom:  3<br>Judge:        Hon. Richard Seeborg |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... II

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................... 1

ARGUMENT ............................................................................................................................. 3

    I  The Proposed Settlement Is Rife With Conflicts Of Interest Precluding Its Approval ........................................................................................................... 3

        A  The Settlement Provides Only the Promise of a De Mininmis Recovery for the Minor Subclass............................................................... 3

        B  The Special Treatment Afforded the Class Representatives Make Them Inadequate............................................................................... 7

    II  The Proposed Release is Overbroad Precluding Approval.................................... 9

CONCLUSION........................................................................................................................ 12

KOREIN TILLERY
*Attorneys at Law*

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007) .................................................................................................. 7

*Amchem Prods, Inc v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................................... 2

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...................................................................................................... 1

*Consol. Edison, Inc. v. Ne. Utils.*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004) ........................................................................................ 12

*Duffens v. Valenti*,
  161 Cal. App. 4th 434 (2008) ....................................................................................................... 5

*Fickinger v. C.I. Planning Corp.*,
  646 F. Supp. 622 (E.D. Pa. Oct. 3, 1989) ..................................................................................... 9

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ......................................................................................... 4

*Hakes Inv. Co. v. Lyons*,
  137 P. 911 (Cal. 1913) ................................................................................................................. 5

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................................................... 2

*I.B. ex rel. Fife v. Facebook, Inc.*,
  No. 12-CV-1894 (CW), 2012 U.S. Dist. LEXIS 154327, 2012 WL 5303297 (N.D. Cal. Oct. 25, 2012) ....................................................................................................................... 5

*In re Literary Works Inc. Elec. Databases Copyright Litig.*,
  654 F.2d 242 (2d Cir. 2011) ........................................................................................................ 4

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ....................................................................................................... 2

*Karvaly v. eBaby, Inc.*,
  245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................................. 12

*Maywalt v. Parker & Parsley Petrol. Co.*,
  67 F.3d 1072 (2d Cir. 1995) ........................................................................................................ 1

*Nat'l Super Suds, Inc. v. N.Y. Mercantile Exch.*,
  660 F.2d 9 (2d Cir. 1981) .......................................................................................................... 12

KOREIN TILLERY
*Attorneys at Law*

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) .................................................................................................................. 6

*Radcliffe v. Experian Info. Solutions Inc.*,
  No. 11-56376, 2013 WL 1715422 (9th Cir. Apr. 22, 2013) ..................................................... 8

*Sandoval v. Tharaldson Emple. Mgmt.*,
  No. EDCV 08-00482-VAP, 2009 U.S. Dist. LEXIS 111320 (C.D. Cal. Nov. 17, 2009) ........ 1

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)............................................................................................ passim

*Synfuel Techs. v. DHL Express*,
  463 F.3d 646 (7th Cir. 2006).................................................................................................... 6

*TBK Partners, Ltd. v. W. Union Corp.*,
  675 F.2d 456 (2d Cir. 1982).................................................................................................. 12

*Women's Comm. for Equal Empl. Opportunity v. Nat'l Broad. Co.*,
  76 F.R.D. 173 (S.D.N.Y. 1977) ............................................................................................... 2

**STATUTES**

Cal. Fam. Code § 6701 (West 2004).............................................................................................. 5

Cal. Fam. Code § 6710 (West 2004).............................................................................................. 5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ....................................................................................................................... 1, 2

**INTRODUCTION AND SUMMARY OF ARGUMENT**

A district court may approve a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The proposed settlement before the Court is none of these things. Instead, it works against the interests of its minor class members and approval would only serve to judicially approve Facebook's continuing illegal conduct. It cannot be approved.

"In approving a proposed class action settlement, the district court has a fiduciary responsibility to ensure that 'the settlement is fair and not a product of collusion, and that the class members' interests [are] represented adequately.'" *Maywalt v. Parker & Parsley Petrol. Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (quoting *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987)). The purpose of this requirement is to ensure fairness to absent class members. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("To vindicate the settlement of such serious claims, however, judges have responsibility of ensuring fairness to all members of the class presented for certification."). Class counsel, the named plaintiffs, and Facebook bear the burden of showing that the settlement satisfies this standard. *Id.* at 959; *Sandoval v. Tharaldson Emple. Mgmt., No. EDCV 08-00482-VAP* (*OPx*), 2009 U.S. Dist. LEXIS 111320, at *28 (C.D. Cal. Nov. 17, 2009) (finding class representative incentive awards too high and that attorneys' fees distribution did not "pass muster"). Although a court may need to balance several factors to determine whether a proposed settlement is fair, reasonable, and adequate, "[t]he relative importance to be attached to any particular factor will depend upon the nature of the claims, the types of relief sought, and the unique facts and circumstances presented by the individual case." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (citations omitted). Here, in addition to representing a class of Facebook users over the age of 18, the named plaintiffs and class counsel seek to represent a subclass of minor children, whose names and likenesses were used for advertising purposes on Facebook. The Court's role in determining whether the settlement is fair, reasonable, and adequate is even more important because of the interests of the individual members of the minor sub-class—who lack the capacity to contract and whose privacy has been traditionally protected by the courts.

1  The proposed settlement here also requires a higher level of scrutiny because it was
2  reached prior to class certification. *See Amchem Prods, Inc v. Windsor*, 521 U.S. 591, 620-21
3  (1997) (holding that the rights of absent class members "demand undiluted, even heightened,
4  attention in the settlement context"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th
5  Cir. 2000) ("Settlements that take place prior to formal class certification require a higher
6  standard of fairness."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The
7  dangers of collusion between class counsel and the defendant, as well as the need for additional
8  protections when the settlement is not negotiated by a court-designated class representative,
9  weigh in favor of a more probing inquiry than may normally be required under Rule 23(e).").
10 Extra scrutiny is also required because the parties are no longer in an adversarial posture, and in
11 light of the inherent tension attributable to class counsel's self-interest in achieving a settlement
12 that, like this one, involves a substantial proposed attorneys' fee award in an unlitigated case. *See*
13 *Staton*, 327 F.3d at 959-60. And, large incentive awards to the named plaintiffs. *See Women's*
14 *Comm. for Equal Empl. Opportunity v. Nat'l Broad. Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977)
15 ("[W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave
16 problems of collusion are raised."). Further, here, where a clear conflict exists between members
17 of the class and minor sub-class (in both the value and amount of relief afforded, and the releases
18 obtained), the Court must apply a great deal of scrutiny to the proposed settlement. *See Amchem*
19 *Prods, Inc*, 521 U.S. at 626 n.20 (sub groups not represented by separate counsel, affirming the
20 Third Circuit's reversal of the district court's approval of settlement). The Court also has a
21 responsibility to ensure that the settlement provides real value by offering relief that the class will
22 actually use, especially in light of the so-called "injunctive relief" boasted by class counsel. *See*
23 2003 Advisory Committee Notes, Fed. R. Civ. P. 23(h) ("Settlements involving nonmonetary
24 provisions for class members also deserve careful scrutiny to ensure that these provisions have
25 actual value to the class.").
26 As explained below, the Court should deny final approval of the proposed settlement in
27 this case because the proposed relief to the class is *de minimis*, the injunctive relief is illusory, the
28 attorneys' fees and named plaintiffs' incentive awards are outrageous, serious conflicts of interest

exist between the class members, class counsel, and the named plaintiffs, and the release is far too broad.

# ARGUMENT[1]

## I. The Proposed Settlement Is Rife With Conflicts Of Interest Precluding Its Approval

The District Court, as fiduciary to the absent class members, clearly must deny final approval of class counsel and Facebook's second attempt to settle this Action at the expense of the minor class members. Denial is especially appropriate where, as here, substantial conflicts exist between class members, class counsel, and the named plaintiffs.

### A. The Settlement Provides Only the Promise of a De Mininmis Recovery for the Minor Subclass.

While the notice circulated to the class members attempted to paint a rosy picture of true relief to the class: "Facebook will pay $20 million into a fund that can be used, in part, to pay claims of class members (including minor class members) who appeared in a Sponsored Story" (Fraley Short-Form Notice of Pending Class Action and Notice of Proposed Settlement), the reality is that the proposed payment to claimants is nominal—at best—to the statutory relief sought.

Although the release contained in the amended settlement agreement requires the class members to release, broadly, any and all claims related to the use of a class member's name or likeness (Amended Settlement Agreement and Release § 5.2.), the settlement offers those class members qualified to submit a claim up to $10—less than two percent of the statutory relief provided for even a single use of their name or likeness—in full satisfaction of his or her claim. Not only is this award miniscule in comparison to the statutory damages available, the settlement creates an absolute conflict among the class members by providing for no additional compensation for those class members most affected by Facebook's conduct—those whose name or likeness were used by Facebook without consent on multiple occasions.

Worse still, even the miniscule $10 payment is entirely theoretical. The settlement's $20 million fund is designated to satisfy all settlement costs, fees, litigation costs and monetary relief.

---

[1] This objection is brought on behalf of Sheila L. Shane and her minor daughter. Both are members of the class as defined. *See* Affidavit of Shelia L. Shane.

Facebook estimates $3.4 million in administrative costs. (ECF No. 259 at 10). The Ninth Circuit's benchmark attorneys' fee award is 25% of the monetary relief, *Staton v. Boeing Co.*, 327 F.3d 938, 973 (9th Cir. 2003), or in this case $5,000,000. This leaves $11.6 million to be distributed to 123 million class members. (ECF No. 280 at 32). However, the settlement agreement also provides that should claims provide for payments of less than $5, the remaining fund is distributed entirely to *cy pres*. (Amended Settlement Agreement and Release at § 2.3). Thus, if merely 2% of the class file a claim, each will receive nothing and the entire $11.6 million will be distributed to charity. This limited fund arrangement with both the adult and minor classes fighting for the same pot creates another absolute conflict between class members: the minor sub-class with its stronger claims has its entire recovery at the mercy of the claim rate of the larger adult class.

Although the claims of the minor sub-class are substantially stronger than the claims of the class as a whole, the minors were not represented by separate counsel and the settlement fails to account for the strength of those claims. This lack of separate representation means that "adequate structural assurances" were not present notwithstanding the formally designated subclasses. *See In re Literary Works Inc. Elec. Databases Copyright Litig.*, 654 F.2d 242, 251-55 (2d Cir. 2011) (reversing approval of settlement where adequate representation requirement not satisfied by mere "formally designated subclasses.").

The adult class in this action predicates its violation of California law based on the wording of Facebook's Statement of Rights and Responsibilities and the timing of their consent. As this Court explained their theory:

> Plaintiffs here contend that they never consented in any form to the use of their names or likenesses in Sponsored Stories, noting that Sponsored Stories were not even a feature of Facebook at the time they became registered members, and alleging that Plaintiffs were never asked to review or renew their Terms of use subsequent to Facebook's introduction of the Sponsored Stories feature, which operates on an opt-out basis. The gravamen of Plaintiffs' consent argument is that even if the Statement of Rights and Responsibilities can be broadly construed to encompass Sponsored Stories, such "consent" was fraudulently obtained and thus not knowing and willful.

*Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 805-06 (N.D. Cal. 2011).

1   On the other hand, no such issues of consent are presented by the minor subclass. As
2   explained in the Depot Objection, ECF No. 305 at 15-21, incorporated here, under California law,
3   "a minor cannot. . . [g]ive a delegation of power" or "[m]ake a contract relating to any personal
4   property not in the immediate possession or control of a minor." Cal. Fam. Code § 6701 (a) &
5   (c) (West 2004). Contracts that are contrary to this statute are "absolutely void, with no necessity
6   to disaffirm [it] to avoid [its] apparent effect." *Hakes Inv. Co. v. Lyons*, 137 P. 911, 912 (Cal.
7   1913). "Any such illegality voids the entire contract." *Duffens v. Valenti*, 161 Cal. App. 4th 434,
8   451 (2008) ("Contracts that are contrary to express statutes or to the policy of express statutes. . .
9   are illegal contracts.").

10   Another Court has recently agreed that such claims on behalf of minor Facebook users are
11   meritorious. *See I.B. ex rel. Fife v. Facebook, Inc.*, No. 12-CV-1894 (CW), 2012 U.S. Dist.
12   LEXIS 154327, 2012 WL 5303297 (N.D. Cal. Oct. 25, 2012). In *I.B.*, minor plaintiffs sued
13   Facebook for reoccurring charges to their parents' credit cards, arguing that their contracts with
14   Facebook were void and/or voidable under Cal. Fam. Code §§ 6701, 6710. The court held that
15   the minors' agreements with Facebook were both void, as they concerned a contract "relating to
16   any personal property not in the immediate possession or control of the minor" (§ 6701) and
17   voidable because Under California law, a minor may "disaffirm all obligations under a contract,
18   even for services previously rendered, without restoring consideration or the value of services
19   rendered to the other party." *I.B. ex rel. Fife*, 2012 WL 5303297, at *7; see also Fam. Code §
20   6710. Based on *I.B*. and the numerous legal arguments discussed more fully in Plaintiffs'
21   Opposition to Defendants' Motion to Dismiss in *C.M.D. v. Facebook, Inc.,* No. 12-cv-01216-RS
22   (N.D. Cal.) (the "C.M.D. Action"), (ECF No. 119), it is clear that the minors' claims against
23   Facebook have merit and value, neither of which are reflected in the terms of the proposed
24   settlement.

25   Yet, under the structure of the proposed settlement, the minor sub-class with its stronger
26   claims receives the same minuscule monetary relief and has its entire recovery at the mercy of the
27   claim rate of the larger adult class. The disparity (and resultant conflict) in the strength of the
28

KOREIN TILLERY
*Attorneys at Law*

1  Minor Sub-class claims versus the weak to non-existent claims of the class (made up of non-
2  minors) precludes its approval just as it did in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).
3        Movants will likely argue that the settlement's injunctive relief provides substantial relief
4  to the minor sub-class justifying approval. However, the injunctive relief does nothing to
5  compensate the class members before the court. The class includes only current and former
6  Facebook users whose name or likeness was used without consent. These users have been
7  wronged and are entitled to compensation of the basis of these past wrongs. "The fairness of the
8  settlement must be evaluated primarily based on how it compensates class members for these past
9  injuries." *Synfuel Techs. v. DHL Express*, 463 F.3d 646, 654 (7th Cir. 2006). The proposed
10 injunctive relief, however, only governs Facebook's future conduct. Accordingly, these changes
11 are of no relevance to whether the settlement provides adequate compensation for Facebook's
12 past wrongs.
13       Second, the injunctive relief provided in the Amended Settlement Agreement provides
14 limited—and temporary—relief to the class. Even assuming that the changes are enough to
15 protect the absent minor sub-class members, the proposed settlement provides that the proposed
16 changes (to Facebook's Terms of Use, class members' ability to control their appearances in
17 Sponsored Stories, and—most importantly—proposed relief to the minor sub-class including
18 revisions to the Terms of Use, encouraging confirmation of parental relationships, creating
19 accessible parental controls, and providing educational information to parents) are not necessarily
20 permanent. "Once implemented, the measures described above in this Section 2.1 will remain in
21 place until, at least, a date that is two years after the Final Settlement Date." (Amended
22 Settlement Agreement and Release § 2.1.) After the expiration of two years, the settlement
23 provides no guarantee that Facebook would not revert back to similar practices (nor does it
24 provide for any consequences to Facebook for doing so).
25       Moreover, the proposed injunctive relief falls far short of what is required. Injunctive
26 relief that simply promises to *almost* follow the law is both improper and of no value. Indeed, the
27 proposed relief falls short of providing a mechanism that comports with the basis of the
28

1 underlying lawsuit and Cal. Civ. § 3344 requirement of prior parental consent yet while at the
2 same time absolving Facebook of all potential liability under the Act.

3   In fact, as other district courts in this Circuit have held, even a full measure of injunctive
4 relief that would require nothing more than compliance with the law is of no value to the class.

> The ability of the Settlement's injunctive relief to redeem an unsatisfactory settlement is even further crippled by the possibility that these changes to [defendant's] procedures are inevitable. To the extent [defendant's] procedures may actually violate the FCRA, these injunctive relief provisions are of no value. *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 544-45 (S.D.Ohio 2000) ("[A] defendant's promise to do that which the law already requires is not a valuable benefit.") (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir.1981) (finding little benefit to class members from settlement agreement provisions that obligated defendant "to do what the law generally requires"); *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150 (4th Cir.1996) (defendant not the "prevailing party" under a settlement that merely obligated plaintiff to do that which the law already required); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 U.S. Dist LEXIS 3507 (E.D.La.1995) ("The proposed settlement ... merely provides plaintiffs with information to which they were already entitled and confers no additional value in consideration for release of plaintiffs' claims.")).

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 395-96 (C.D. Cal. 2007). Facebook's promise for half-measures does nothing to redress the settlements clear inequity in failing to account for the minor subclass members' superior claims.

**B.   The Special Treatment Afforded the Class Representatives Make Them Inadequate**

Likewise, the special treatment afforded the class representatives also demonstrates a conflict of interest preventing approval. The class representatives have requested—and Facebook has agreed to pay—a $12,500 incentive award for each named plaintiff. (Arns' Law Firm Motion for Attorneys' Fees, Costs, and Class Representative Awards, ECF No. 253 at 38.) This incentive award is requested based upon the named plaintiffs' actions, which the class counsel has reduced to: "retaining counsel, producing documents, responding to written discovery, conferring with counsel on the litigation." (*Id.*). The settlement provides that the named plaintiffs would receive these generous payments even if the rest of the class receives nothing. Such a large award creates a conflict between the named plaintiffs, and the absent class members they seek to represent.

> There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards. Under the agreement, if the class representatives had concerns about the settlement's fairness, they could either remain silent and accept the $5,000 awards or object to the settlement and risk getting as little as $26 if the district court approved the settlement over their objections. The conditional incentive awards at issue here, like the disproportionately large awards in *Staton*, fatally alter the calculus for the class representatives, pushing them to be "more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large."

*Radcliffe v. Experian Info. Solutions Inc.*, No. 11-56376, 2013 WL 1715422, at *4 (9th Cir. Apr. 22, 2013).

Although the named plaintiffs may have afforded the class some benefit through their actions, they did not testify at a class certification hearing, nor were they able to see to the successful certification of a class absent the proposed settlement. In fact, of the two years this case has been pending, one year has been spent briefing proposed settlements by class counsel. (See May 25, 2012 Order re: Hearing on Motion for Class Certification, EFC No. 170 ("On May 21, 2012, the parties in the above-captioned action represented that they had reached a settlement agreement in principle").) The effort expended by the named plaintiffs does not justify such a high incentive award.

Such an incentive award does create a conflict between the named plaintiffs and the class members. With the prospect of receiving $12,500 incentive awards only if the settlement is approved, the named plaintiffs had very different interests than the rest of the class. Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representative now had a $12,500 incentive to support the settlement regardless of its fairness and the possibility of nothing, like the rest of the class, if they opposed the settlement. *See Radcliffe*, 2013 WL 1715422, at *4.

But adequate representation depends an absence of antagonism and a sharing of interests between representatives and absentees. *Radcliffe*, 2013 WL 1715422, at *5. By seeking such inflated incentive awards and attorneys' fees, lead plaintiffs and class counsel have put their own interests ahead of the absent class members they purport to represent. *See Staton v. Boeing Co.*,

1 327 F.3d 938, 975 (9th Cir. 2003) ("[i]f class representatives expect routinely to receive special
2 awards in addition to their share of the recovery, they may be tempted to accept suboptimal
3 settlements at the expense of the class members whose interests they are appointed to guard."
4 (citations omitted)). The lead plaintiffs in this case appear to have taken potentially conflicting
5 positions with absent class members as evidenced by the disparity in the requested "incentive
6 awards."

7 Likewise, the settlement's disproportionate award of attorney's fees demonstrates a
8 conflict between counsel and the class. Even though class counsel seems to have superficially
9 addressed the Court's concerns regarding the previous "clear sailing agreement" by filing a
10 separate motion for attorney's fees and costs (ECF No. 253), Facebook is still unlikely to object
11 to such a fee award: the total cost to Facebook is still $20 million. *See Fickinger v. C.I. Planning*
12 *Corp.*, 646 F. Supp. 622, 633 (E.D. Pa. Oct. 3, 1989) (noting conflict between negotiating fee
13 while at the same time negotiating class recovery, and that defendants are not incentivized to
14 contest the fee award) (citing Report of the Third Circuit Task Force, Oct. 8, 1985, at 36-42).

15 The Ninth Circuit has repeatedly recognized that "[i]n a class action, whether attorneys'
16 fees come from a common fund or are otherwise paid, the district court must exercise its inherent
17 authority to assure that the amount and mode of payment of attorneys' fees are fair and proper."
18 *Staton*, 327 F.3d at 964. The fees requested here, in light of the relief the class will obtain (from
19 the *de minimis* valuation of the class members' statutory fees to the limited-duration injunctive
20 relief), is far from "fair and proper."

21 This is yet another reason why this Court should carefully scrutinize whether the lead
22 plaintiffs, and their counsel, are inadequate with respect to representing this class. Not only are
23 class counsel receiving a windfall in this settlement, but the named plaintiffs are, too, by seeking
24 to obtain a windfall that is grossly disproportionate to relief available to absent class members
25 whom the named plaintiffs purport to represent. This failure of adequate representation of the
26 minor sub-class requires the settlement to be rejected.

27 **II.    The Proposed Release is Overbroad Precluding Approval**
28 The settlement's overreaching release also requires rejection of the settlement.

The proposed "Class Members' Release" provides at 5.2:

> **5.2 Class Members' Release.** Upon the entry of the Final Order and Judgment, Plaintiffs and all Class Members, including all Minor Subclass Members (and their parents or legal guardians on all Minor Subclass Members" behalf), who do not validly and timely request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives (collectively the "Releasing Parties") shall be deemed to have fully, finally, and forever released, relinquished, and discharged against Facebook and all other persons and entities, including but not limited to persons and entities that have purchased Sponsored Stories from Facebook, and each of their direct or indirect parents, wholly or majority-owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorney, accountants, insurers, and all persons acting by, through, under, or in concert with them, or any of them (collectively the "Released Parties"), all manner of action, causes of actions, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown claims, in law or equity, fixed or contingent which the Releasing Parties have or may have against the Released Parties arising out of or relating to any of the acts, omissions, or other conduct that was or could have been alleged in the Action, including but not limited to any and all acts, omissions, or other conduct related to the display of any Class Member's name, nickname, pseudonym, profile picture, photograph, likeness, or identify in a Sponsored Story ("Released Claims").
>
> **In addition, the Releasing Parties expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:**
>
>> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**
>
> The Releasing Parties fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by the Releasing Parties and their Counsel to be true, and they expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts. Further, the Releasing Parties agree that this waiver is essential despite any difference in facts. Further, the Releasing Parties agree that this

waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been accepted.

The release goes well beyond the claims asserted in the Fraley Second Amended Complaint ("SAC," ECF No. 22) in the following respects:

**1.** It releases claims beyond the claims based on unauthorized usage in Sponsored Stories;

**2.** It releases claims not only against Facebook and affiliates officers and directors, but also against entirely unrelated, and undefined ". . .all other persons and entities. . ." and ". . .persons and entities that have purchased Sponsored Stories from Facebook. . ."

**3.** The release also expressly applies not only claims that were brought but also claims based on "acts, omissions or other conduct that was or could have been alleged in the Action. . ."

The Second Amended Complaint however was brought only against Facebook and "Does 1 through 100" consisting of "agents, joint employers, co-conspirators, employees and/or representatives of the named defendants," (SAC at 11-12), and is limited to Sponsored Stories. (*See* SAC ¶ 3 ("the wrongful conduct by Facebook that is the subject of this complaint arises from what Facebook calls "Sponsored Stories.")). The Second Amended Complaint does not assert any claim on behalf of the minor subclass specifically, nor is there any specific relief sought on behalf of the minor subclass. (*See* SAC "First Cause of Action" ¶¶ 107-118; "Second Cause of Action" ¶¶ 119-129; "Third Cause of Action" ¶¶ 130-135; and Prayer for Relief at 26-27.) Moreover, although Fraley's Second Amended Complaint does not allege claims based on anything other than Defendant's "Sponsored Stories" practices on behalf of members of the class who were Facebook members as of January 24, 2011, they now seek settle all claims on behalf of a class of individuals whose names or likenesses appeared in "Sponsored Stories" at any point in time—expanding the putative class by more than 18 months. (Amended Settlement Agreement and Release § 1.2). The Fraley parties have also broadened the definition of "Sponsored Stories"

1 "to potentially include other similar forms of advertisements created by Facebook." (*Id.* § 1.15). Such Broad release could one day be interpreted to bar claims far outside those asserted here.

A release in a proposed class settlement of class claims that are not actually alleged in the complaint is overly broad and inappropriate. *See Karvaly v. eBaby, Inc.*, 245 F.R.D. 71, 245 (E.D.N.Y. 2007) ("primary effect of certifying the broadly-defined class that the parties propose would be to faciliatate the execution of an expensive general release that would potentially extinguish many claims unrelated to the claims alleged in the Second Amended Complaint, held by individuals who stand to gain nothing more than 'injunctive relief' in the form of some minor modifications to PayPal's website in the present action."). Courts must take "special care" when a class action settlement purports to release claims "not asserted within [the] class action or not shared alike by all class members." *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 651 (S.D.N.Y. 2004). *See also Nat'l Super Suds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 19 (2d Cir. 1981) ("An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class."). Where the settlement contains a general release that purports to strip millions of individuals of their rights to sue the defendant upon a wide range of offenses that have nothing to do with the misconduct alleged in the present action, for little consideration to class members, it is an offense to the principle of due process so egregious as to render the proposed settlement untenable even at this preliminary stage. *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) ("At the heart of our concern was the danger that a class representative not sharing common interests with other class members would 'endeavor[ ] to obtain a better settlement by sacrificing the claims of others at no cost to themselves' by throwing the others' claims 'to the winds.'").

The breadth of the release here should preclude approval of the entered proposed settlement.

## CONCLUSION

For the foregoing reasons, the Court should reject the proposed settlement.

Dated: May 2, 2013

|   |   |
|---|---|
| 1 | |
| 2 | By   /s Aaron M. Zigler |
| 3 | One the attorneys for Sheila L. Shane and her minor daughter |

Steven A. Katz
Aaron M. Zigler
KOREIN TILLERY
505 N. 7th Street, Suite 3600
St. Louis, MO 63101
Tel.    (314) 241-4844
Fax.   (314) 241-3525

Edward A. Wallace
WEXLER WALLACE LLP
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel.    (312) 346-2222
Fax.   (312) 346-0022

Lee Squitieri
Garry T. Stevens Jr.
SQUITIERI & FEARON, LLP
32 E. 57th Street, 12th Floor
New York, NY 10022
Tel.    (212) 421-6492
Fax.   (212) 421-6553

Antony Stuart
STUART LAW FIRM
801 South Grand Avenue, 11th Floor
Los Angeles, California 90017-4613
Tel. (213) 612-0009 Fax. (213) 489-0225

John C. Torjesen
JOHN C. TORJESEN & ASSOCIATES, PC
612 N. Sepulveda Blvd.
Los Angeles, California 90049
Tel. (310) 440-0005 Fax. (310) 440-0006

KOREIN TILLERY
*Attorneys at Law*