Case3:11-cv-01726-RS Document316 Filed05/02/13 Page1 of 33

Robert L. Bowman
P.O. Box 1363
Knoxville, Tennessee 37901-1363
Telephone: (865) 342-0432; (865) 805-7687
Facsimile: (865) 522-5723
E-mail: rlbowman@kramer-rayson.com
*Pro Se*



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ANGEL FRALEY; PAUL WANG; SUSAN
MAINXER; JAMES H. DUVAL, a minor, by
and through JAMES DUVAL, as Guardian ad
Litem; and W.T., a minor, by and through
RUSSELL TAIT, as Guardian ad Litem;
individually and on behalf of all others similarly
situated,

Plaintiffs,

v.

FACEBOOK, INC., a corporation; and DOES
1-100,

Defendants.

Case No. CV 11-01726 RS
NOTICE OF OBJECTION, INTENTION TO
APPEAR, AND REQUEST TO BE HEARD

**NOTICE OF OBJECTION, INTENTION TO APPEAR,
AND REQUEST TO BE HEARD**

Now comes Robert L. Bowman (Class Member No. 405769268) (hereinafter "Tennessee

Objector"), *pro se*, pursuant to (1) the Notice of Class Action and Proposed Settlement, (2) Rules

23(d) and 24(a) and (b) of the Federal Rules of Civil Procedure, and (3) equity, and submits this

Notice of Objection, Intention to Appeal, and Request to Be Heard.

1

## I. PRELIMINARY STATEMENT

Objector is a citizen and resident of Tennessee and received notice of this civil action on January 25, 2013 via e-mail because "[he] may have been featured in a 'Sponsored Story' on Facebook prior to December 3, 2012." (Ex. 1, Notice of Pending Class Action and Notice of Proposed Settlement.) The identifying information provided pursuant to the Notice of Class Action and Proposed Settlement, (Ex. 2, Notice of Class Action and Proposed Settlement), is as follows:

> Full Name -       Robert Lynn Bowman
> Address:           P.O. Box 1363, Knoxville, TN 37901 and
>                        1117 April Drive, Knoxville, TN 37919
> Telephone No.:     865-342-0430; 865-805-7687
> E-mail address associated with Facebook Account:
> rlbowman@kramer-rayson.com

This Tennessee Objector respectfully submits that the proposed settlement is unfair and unreasonable and should be denied final approval for the following reasons:

1.  The proposed settlement is generally unfair and unreasonable, and inadequate, procedurally and substantively, including most notably the inadequacy of the relief afforded to absent Tennessee settlement class members. The proposed settlement is opposed because it purports to release and "expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, **or any other similar provision under federal or state law** . . ." (Ex. 2, Notice of Class Action and Proposed Settlement, ¶ 13) (emphasis added). The proposed settlement is intended to cover "[a]ll persons in the United States who have or have had a Facebook account at any time and had their names, nicknames, synonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story . . . ." (Id at ¶ 5.) But the settlement fails to take into account the rights and

2

remedies afforded to citizens and residents of the State of Tennessee under the Personal Rights Protection Act of 1984 ("PRPA"), Tenn. Code Ann. §§ 47-25-1101 *et seq.*

2.      By failing to encompass the rights and remedies afforded to citizens and residents of the State of Tennessee, the proposed settlement class fails to meet the requirements of Rule 23(a)(4), which provides that a court may certify a class only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Indeed, by proposing a settlement that excludes remedies under the PRPA (as well as remedies under California Civil Code § 3344), the Representative Plaintiffs have ignored substantive rights of other class members and have diluted the recovery for Tennesseans who actually have viable claims under the PRPA.

3.      The proposed settlement also violates the Rules Enabling Act and basic principles of federalism since it excludes and purports to release the rights and remedies afforded by the PRPA and similar statutes in other states.

4.      The Notice of Pending Class Action and Notice of Proposed Settlement, (Ex. 1), is inadequate and the proposed Release is overbroad.

For the foregoing reasons, analyzed in more detail below, final approval of the proposed settlement should be denied.

## II. STANDARD OF REVIEW

### A. Standard for Approving Class Settlements in General

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Absent class members have little at stake and thus insufficient incentive to closely monitor class counsel and his strategic choices. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987).

3

Accordingly, the role of the District Courts in evaluating proposed settlements is akin "to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 280 (7th Cir. 2002). District Courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Reynolds,* 288 F.3d at 279).

## B.   The Settlement in This Case Demands Stricter Scrutiny

Courts have demonstrated an appropriately higher level of scrutiny of certain class action settlements. In particular, courts should be leery of settlements using lower compensation to certain class members. *See In Re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.,* 55 F.3d 768, 803 (3d Cir. 1995) ("One sign that a settlement may not be fair is that some segments of the class are treated differently from others.") Here, the Class Representatives have not alleged a claim under the PRPA, which provides greater relief than the remedies sought in the Second Amended Class Act Complaint for Damages, and have not attempted to recover certain damages available under California Civil Code § 3344 (i.e., profits attributable to the illegal conduct alleged in the Complaint).

## C.   The Importance of Objectors in Class Action Settlements

Obviously the parties to the action will present the proposed settlement to both the class and the court in the most favorable light, downplaying any possible weaknesses or problems with the deal. In the absence of an adversarial proceeding, the court is poorly situated to uncover any potential conflicts between class counsel and the class, or among various class members, or to

4

otherwise assess the fairness of the proposed settlement. Hence, the significance of hearing the contentions of objectors.[1]

It is also generally the duty of the court as well as counsel for the parties present in the action to allow objectors to testify and state their objections on the record. *Waters v. City of Chicago*, 420 N.E.2d 599 (Ill. App. 1981). After all, it has been said that objectors are the *only* parties with an incentive to uncover flaws in the proposed settlement. Wasserman, R., *Dueling Class Actions*, 80 B.U.L. Rev. 461, 483 (April 2000).

## III. STATEMENT OF SPECIFIC OBJECTIONS

Many commentators have argued about the pros and cons of class actions, but there is no doubt that class actions play a significant role in litigation in the United States.[2] However,

> [t]hat the use of the device of a class action is subject to abuse in a number of ways is a well known fact. . . . [I]t is the responsibility of the court to guard the integrity of the class action device as well as its own integrity. . . . The present arrangement leaves the unfortunate impression that defendants are buying themselves out of a lawsuit by direct compensation of plaintiffs' counsel.

*Anthony v. Superior Court*, 130 Cal. Rptr. 758, 766 (Cal. App. 1976).

Class actions are "unique creatures with enormous potential for good and evil." *Johnson v. General Motors Corp.*, 598 F.2d 432, 439 (5th Cir. 1979) (Fay, J., specially concurring). In virtually every class action seeking money damages, the person with the most at stake financially is the attorney representing the class. Commentator's recognize that the attorney's interest in

---

[1] There are three main kinds of objectors to class settlements - (1) those who genuinely want to improve or scuttle an inadequate settlement, (2) those attorneys in competing class actions who simply want a piece of the fee pie, without any really significant improvements in the settlement for class members, and (3) those competing class counsel who have filed class actions elsewhere but who have been 'low-balled' out of their own cases by defendant picking the group of class counsel who will settle on terms most favorable to defendants . . . ." 19 Class Action Rep. 207 (1996).

[2] *See, e.g.,* John C. Coffee, Jr., *The Corruption of the Class Action: The New Technology of Collusion*, 80 Cornell L. Rev. 851 (1995); Arthur R. Miller, *Comment, Of Frankenstein Monsters and Shining Knights: Myth, Reality, and the "Class Action Problem,"* 92 Harv. L. Rev. 664 (1979).

securing the highest fee and the class members' interest in attaining the greatest recovery often diverge. John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 686-91 (1986). The class members, with so little at stake in the first place, have insufficient incentive to closely monitor class counsel and her strategic choices. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987). Add to the mix yet another class action filed on behalf of the same class, and the pressure to settle become even more irresistible. *See John C. Coffee, The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action,* 54 U.Chi. L. Rev. 877, 910 (1987). Even if the class has a very strong claim on the merits and class counsel ordinarily would prefer to go to trial rather than settle at a discount, the attorney must acknowledge that she cannot control the pace at which the court will entertain her action. The existence of other simultaneous suits on behalf of the same class before different courts makes the race to judgment very risky. Thus, class counsel most likely will decide that it is in his or her own best interest to settle the action and guarantee compensation for his or her work.

Likewise, the defendant is aware that class counsel is under substantial pressure to settle. Indeed, legal scholars have noted that the pressure on class counsel to collude with the defendant in this manner may be extreme. *See, e.g.,* Tim Oliver Brandi, *The Strike Suit: A Common Problem of the Derivative Suit and the Shareholder Class Action,* 98 Dick. L. Re. 355, 391 (1994). Even if class counsel is able to resist this pressure, the defendant may simply go knocking on the door of another lawyer representing the class to see if she will succumb.

6

**A.** **The Representative Plaintiffs Inadequately Represent Tennessee Settlement Class Members By Failing to Allege or Assert A Claim for Damages Under the PRPA and By Failing to Seek Damages Available Under California Civil Code § 3344.**

The proposed Settlement Class also fails to meet the requirements of Rule 23(a)(4), which provides that a court may certify a class only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There is considerable overlap among the Rule 23(a) prerequisites, though each serves discrete purposes and has discrete tests. Because of this overlap, the failure to satisfy a single Rule 23(a) prerequisite means that a class should be denied, and the failure to meet one test is probably indicative of failure to meet other tests as well. One must satisfy all four requirements separately to obtain class certification. The joinder impracticability and commonality tests are interrelated, and the commonality and typicality tests overlap, with the commonality test focusing on the relationship of common facts and issues among class members, while the typicality test examines the relationship of facts and issues between the representative and the class.

There also exists an extensive overlap between the typicality test and the adequate representation requirement. On the one hand, when typicality of claims is absent, the class representative inherently has a conflict with the rest of the class because he or she has no incentive to prosecute class claims vigorously. *Bartelson v. Dean Witter & Co.*, 86 F.R.D. 657 (E.D. Pa 1980) (employment discrimination). Where typicality was lacking, there was a real danger that claims of some class members would not be pressed with vigor (citing Newberg on Class Actions).

7

Discussing the overlap of Rule 23(a) criteria, the Supreme Court said in *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 (1982):

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

The commonality requirement was recently addressed by the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). The Court clarified the meaning of "commonality," saying that the concept is "easy to misread." *Id.* at 2551. The Supreme Court said:

> [A]ny competently crafted class complaint literally raises common 'questions,' For example: Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is than an unlawful employment practice? **What remedies should we get?** Reciting those questions is not sufficient to obtain class certification.

*Id.* (internal quotation marks and citations omitted) (emphasis added). The Court explained that "[w]hat matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather the capacity of a classwide proceeding to generate answers apt to drive the resolution of the litigation.'" *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof* 84 N.Y.U. L. , Rev. 97, 132 (2009)). So, common questions must have answers that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Accordingly, as defined by *Dukes*, "common questions" are those that, because they have answers that will affect the validity of all class members' claims, can be said to be legally

8

relevant. In conjunction with that definition, for there to be any common questions, all class members must have at least some colorable legal claim. If not, it makes no sense to speak of "resolv[ing] an issue that is central to the validity of each one of the claims. . . . " *Id.*[3]

In this case, the Representative Plaintiffs have not alleged or asserted claims that are common to the proposed settlement class. They have totally ignored the PRPA which provides greater relief than California state law on which the Second Amended Class Action Complaint for Damages is based. It is manifestly unfair for the Representative Plaintiffs to agree to a full release of all claims for a nationwide class where they have totally ignored remedies available to other members of the proposed Settlement Class.

The Respective Plaintiff's Second Amended Class Action Complaint for Damages, (R. 22), is based solely on California State Law. They seek certification, however, of a class identified as "[a]ll natural persons in the United States who had an account registered on Facebook.com as of January 24, 2011, and had their names, photographs, . . . [etc.] used in a Facebook Sponsored Stories Advertisement." (R. 22, Compl. at ¶ 95.) Although no rational explanation for relying on only California law is stated in any pleading of record, one is left to assume that the Representative Plaintiffs limited their claims to California laws because of unenforceable language in the "Terms of Use" imposed by Defendant Facebook, Inc. ("Facebook" or "Defendant").

Defendant's "Terms of Use" contains a choice of law provisions stating that "[t]he laws of the State of California will govern this Statement, as well as any other claim that might arise between you and us, without regard to conflict of law provisions." (R 22 Compl., ¶ 48.) The Representative Plaintiffs also allege facts establishing that Defendant's Terms of Use and Statement of Rights and Responsibilities do not create a binding contract because "[t]he Terms

---

[3] A colorable claim is one that "appear[s] to be true, valid, or right." Black's Law Dictionary 301(9th ed. 2009).

9

of Use are worded in a way difficult for Members to understand . . .[and] [a] Member is never required to read or agree to the Terms of Use." (*Id.* at ¶¶ 36-37.) The Complaint also alleges that Defendant admits that its Terms of Use have been justifiably criticized for being difficult to read "and should be more easily understood . . ." (*Id.* at ¶ 36.) These facts establish that the "Terms of Use" and choice of law provision are unenforceable.

Nevertheless, the Complaint is based solely on California's Right of Publicity Statute, California Civil Code § 3344, California's Unfair Competition Law, §§ 17200, and California common law unjust enrichment. The Representative Plaintiffs failed to allege claims based on the statutory or common law of other states. Indeed, Defendant's Terms of Use does not prohibit citizens and residents of the State of Tennessee from pursuing claims under Tennessee statutory and common law. A court would likely find that Defendant's choice of law provision is invalid as it fails the "meeting of the minds" requirement for a binding contract. Under Tennessee law, "[i]t is well-established that a contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon sufficient consideration, free from fraud or undue influence, not against public policy, and sufficiently definite to be enforced.'" *Tetra Tech, Inc. v. Performa Entertainment Real Estate, Inc.,* No. W2007-02244-COA-R3-CV, 2008 Tenn. App. LEXIS 595, at *12 (Tenn Ct. App. Oct. 3, 2008.) (quoting *Doe v. HCA Health Servs. Of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). A California state court would likewise not enforce Defendant's Terms of Use due to a lack of meeting of the minds over the choice of law provision. *Winter v. Window Fashions Professionals, Inc.*, 83 Cal. Rptr. 3d 89, 95 (Cal. Ct. App. 2008) (invalidating franchise arbitration agreement where "there was no meeting of the minds" as to the Agreement). *See also, Laxmi Investments, LLC v. Golf USA,* 193 F.3d 1095, 1097 (9th

Cir. 1999) (holding that a forum selection clause was invalid where "there was no meeting of the minds on the forum selection clause" in the agreement).

Here, the Representative Plaintiffs failed to allege claims under Tennessee common law, which has for decades recognized the "right of publicity," *State Ex Rel. Elvis Presley v. Crowell*, 733 S.W. 2d 89, 97 (Tenn. Ct. App. 1987) (holding that "there is ample basis for this Court to conclude that [publicity] is a species of intangible personal property"), and the PRPA. Although this property right existed at common law, the Tennessee General Assembly, possessing "Suspicious Minds," passed the PRPA in 1984 to further protect the publicity and property rights of its citizens. The PRPA says, in relevant part, the following:

> 47-25-1103 (a) Every individual has a property right in the use of that person's name, photograph, or likeness in any medium in any manner.
>
> 47-25-1105 (a) Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purpose of advertising products, merchandise, goods or services, or for purposes of fund raising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent, or, in the case of a minor, the prior consent of such minor's parent or legal guardian, or in the case of a deceased individual, the consent of the executor or administrator, heirs, or devisees of such deceased individual, shall be liable to a civil action.
>
>                           \*\*\*
>
> 47-25-1106(d)(1) An individual is entitled to recover the actual damages suffered as a result of the knowing use or infringement of such individual's rights and **any profits that are attributable to such use or infringement** which are not taken into account in computing the actual damages. Profit or lack thereof by the unauthorized use or infringement of an individual's rights shall not be a criteria of determining liability. (emphasis added)
>
> 47-25-1106(d)(2) **An individual is entitled to recover three (3) times the amount to which the individual is entitled under**

11

> **subdivision (d)(1),** plus reasonable attorney fees, if a person
> knowingly uses or infringes the rights of a member of the armed
> forces in violation of this part. As used in this subdivision (d)(2),
> 'member of the armed forces' means a member of the United
> States armed forces or a member of a reserve of Tennessee
> national guard unit who is in, or was called into, active service or
> active military service of the United States, as defined in § 58-1-
> 102. (emphasis added).
>
> 47-25-1106(e)   The remedies provided for in this section are
> cumulative and shall be in addition to any others provided for by
> law.

The PRPA, like Tennessee's anti-trust statute (Tenn. Code Ann. §§ 47-35-101, *et seq.*), is

designed to disgorge a defendant of all profits it obtained from illegal conduct. Here, Defendant

earned profits of $1 billion in 2011. Cotton Delo, Facebook Files for IPO; Reveals $1 Billion in

2011 Profit, *Advertising Age,* Feb. 1, 2012, (http://adage.com/article/digital/facebook- files-ipo-

reveals-1-billion-2011-profit/232484) (last accessed April 15, 2013). The failure of the

Representative Plaintiffs to even attempt to allege claims under the PRPA, and other similar state

laws, clearly establish that they do not adequately represent all of the members in the proposed

Settlement Class.

As further evidence that the Representative Plaintiffs do not adequately represent the

proposed Settlement Class, it is clear they have abandoned remedies available to the class

members under California's Right of Publicity Statute, Civil Code section 3344. Indeed, the

Second Amended Class Action Complaint for Damages (R. 22) seeks a remedy of "any profits

attributable to Facebook's and (Does 1-100's) illegal action." *Id.* at ¶ 118. But the

Representative Plaintiffs do not mention Defendant's profits as an element of damages in their

Memorandum of Law In Support of Joint Motion for Preliminary Approval of Class Action

Settlement (R. 280). On Page 24 of the Memorandum of Law, the Representative Plaintiffs

vaguely mention that "Civil Code section 3344 provides for $750 statutory damages," (id.),
however there is absolutely no mention of Defendant's profits as an element of damages except a
brief footnote where they say "the potential statutory damage award under Cal. Civil Code
Section 3344 would be of such size that it could potentially serve as a basis for appeal by
Facebook on due process grounds." (*Id.* at p. 25.)

The Representative Plaintiffs rely exclusively on a dubious mathematical calculation of
the value of injunctive relief as their only measure of damages to support the settlement. (*Id.* at
p. 17-18.) There is no reasonable explanation for ignoring a statutory remedy, disgorgement of
profits, in favor of the voodoo economics of trying to place a dollar value on the injunctive relief
sought in this case. Facebook is extremely profitable company. By failing to even address
profitability in the Memorandum of Law, the Representative Plaintiffs raise serious questions
about their ability to adequately represent and protect the Settlement Class and certainly suggests
that they have not vigorously prosecuted this civil action.

Recognizing that the Representative Plaintiffs have done a woeful job of justifying a $20
Million settlement where Facebook earned a profit of $1 Billion in 2011, Defendant addresses
this issue on two pages of its Memorandum of Points and Authorities in Support of Joint Motion
for Preliminary Approval of Revised Settlement (R. 259). Defendant acknowledges that its
"profits attributable to the alleged [illegal conduct] are $74 Million." (*Id.* at p. 31.) Its
Memorandum of Points and Authorities goes on to state that "We learn to argue to that [i]n
providing a $20 Million net payment to Revised Settlement also accounts for the possibility -
although extremely remote - that Plaintiffs might have recovered statutory damages." (*Id.* at p.
32.) This argument, however, conveniently ignores that had Representative Plaintiffs adequately
represented the class, they would have sought treble damages available under the PRPA. This

13

leads one to reasonably believe that the Representative Plaintiffs and Defendant may have colluded to settle this case under only California state law, and ignored the PRPA and other statutes that increase Defendant's exposure in this case. For this reason, the proposed Settlement must be rejected.

## B. The Proposed Settlement Violates The Rules Enabling Act and Principles of Federalism.

Second, the proposed certification and settlement also violates the Rules Enabling Act and basic principles of federalism. The Rules Enabling Act authorizes the creation of "rules of practice and procedure," but states that "[s]uch rules shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072(a), (b). In *Dukes,* 131 S. Ct. at 2541, the Supreme Court highlighted the role of the Rules Enabling Act in class certification decisions, holding that, "[b]ecause the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,'" the proposed class could not be certified because it would have abridged Wal-Mart's statutory right to litigate certain defenses. 131 S.Ct. at 2561 (quoting 28 U.S.C. § 2072(b)). Here, approving certification and settlement of a nationwide class endorses the abridgment of substantive rights under the PRPA.

Similarly, certifying the nationwide class is contrary to principles of federalism. The policy decisions of the states are "fundamental aspect[s] of our federal republic and must not be overridden in a quest to clear the queue in court." *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1020 (7th Cir. 2002). For instance, when one of those states says to its citizens "you have no claim," yet those citizens are included in a class with people who do have a claim, by no logical process "consistent with federalism can aggregating the 'haves' and the 'have-nots' imbue those 'have-nots' with the very claim that the state has said is foreclosed to them." *See generally, Sullivan v. DB Invs., Inc.,* No. 08-2784, 2011 U.S. App. LEXIS 25185 (3d Cir. Dec.

14

20, 2011) (Jordan, J. dissenting). Here the opposite result is happening. The proposed
settlement is excluding or prohibiting the "haves" from receiving damages they are entitled to
receive under the PRPA.

## C.   The Notice of Pending Class Action and Notice of Proposed Settlement Lacks Specificity and the Proposed Release is Overbroad.

The Notice of Pending Class Action and Notice of Proposed Settlement e-mailed to
members of the proposed settlement class fails to specifically identify the claims alleged in the
Second Amended Class Action Complaint for Damages (Ex. 1, Notice of Pending Class Action
and Notice of Proposed Settlement). It fails to inform the reader that the lawsuit alleges only
violations of California state law. Although the notice contains a paragraph entitled "What is the
action about," a reasonable person is not informed that the lawsuit is based solely on California
state law and that the members of the proposed settlement class may have greater rights under
the laws of their states.

The proposed release is also overbroad. Indeed, it includes:

> all manner of action, causes of action, claims, demands, rights,
> suits, obligations, debts, contracts, agreements, promises,
> liabilities, damages, charges, penalties, lawsuits, costs, expenses,
> and attorneys' fees, of any nature whatsoever, known or unknown
> claims, in law or in equity, fixed or contingent, which the
> Releasing Parties have or may have against the Released Parties
> arising out of or relating to any of the acts, omissions, or other
> conduct that was or could have been alleged in the Action,
> including but not limited to any and all acts, omissions, or other
> conduct related to the display of any Class Members' name,
> nickname, synonyms, profile picture, photo refs, likeness, or
> identity in a sponsored story...

(Ex. 2, Notice of Class Action and Proposed Settlement) The Release goes on to state that "the
Releasing Parties expressly waive and relinquish, to the fullest extent permitted by law, the

## IV. CONCLUSION

WHEREFORE, the undersigned requests that this court:

1.   Reject the proposed settlement; and

2.   Award such other and further relief as it is just and necessary in this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _18th_ day of April, 2013.

ROBERT L. BOWMAN, *Pro Se*
P.O. Box 1363
Knoxville, TN 37901-1363
Telephone No. (865) 342-0432
Facsimile: (865) 522-5723
E-mail: rlbowman@kramer-rayson.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the _18th_ day of April, 2013, a true and exact copy of the
foregoing was served by First Class U.S. Mail, postage prepaid, and by e-mail to the following:

Fraley v Facebook, Inc. Settlements
c/o GCG
P.O. Box 35009
Seattle, WA 98124-1009
GCG@fraleyfacebooksettlement.com

Robert S. Arns, Esq.
The Arns Law Firm
515 Folsom Street, 3rd Floor
SanFrancisco, CA 94104
E-mail: rsa@arnslaw.com

Michael G. Rhodes, Esq.
Colley, LLP
101 California Street, 5th Floor
SanFrancisco, CA 94111
E-mail: mrhodes@colley.com

Robert L. Bowman

## Robert Bowman

| | |
|---|---|
| **From:** | legalnotice <legalnotice@facebookmail.com> |
| **Sent:** | Friday, January 25, 2013 8:17 PM |
| **To:** | Robert Bowman |
| **Subject:** | Re: LEGAL NOTICE OF SETTLEMENT OF CLASS ACTION |

**NOTICE OF PENDING CLASS ACTION AND NOTICE OF PROPOSED SETTLEMENT**

**ANGEL FRALEY V. FACEBOOK, INC.**

### You are receiving this e-mail because you may have been featured in a "Sponsored Story" on Facebook prior to December 3, 2012.

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

**Why did I get this notice?** This Notice relates to a proposed settlement ("Settlement") of a class action lawsuit ("Action") filed against Facebook relating to a particular Facebook feature called "Sponsored Stories." According to available records, you may be a "Class Member."

**What is the Action about?** The Action claims that Facebook unlawfully used the names, profile pictures, photographs, likenesses, and identities of Facebook users in the United States to advertise or sell products and services through Sponsored Stories without obtaining those users' consent. Facebook denies any wrongdoing and any liability whatsoever. No court or other entity has made any judgment or other determination of any liability.

**What is a Sponsored Story?** Sponsored Stories are a form of advertising that typically contains posts which appeared on facebook.com about or from a Facebook user or entity that a business, organization, or individual has paid to promote so there is a better chance that the posts will be seen by the user or entity's chosen audience. Sponsored Stories may be displayed, for example, when a Facebook user interacts with the Facebook service (including sub-domains, international versions, widgets, plug-ins, platform applications or games, and mobile applications) in certain ways, such as by clicking on the Facebook "Like" button on a business's, organization's, or individual's Facebook page. Sponsored Stories typically include a display of a Facebook user's Facebook name (i.e., the name the user has associated with his or her Facebook account) and/or profile picture (if the user has uploaded one) with a statement describing the user's interaction with the Facebook service, such as "John Smith likes UNICEF," "John Smith played Farmville," or "John Smith shared a link."

**What relief does the Settlement provide?** Facebook will pay $20 million into a fund that can be used, in part, to pay claims of Class Members (including Minor Class Members) who appeared in a Sponsored Story. Each participating Class Member who submits a valid and timely claim form may be eligible to receive up to $10. *The amount, if any, paid to each claimant depends upon the number of claims made and other factors detailed in the Settlement. No one knows in advance how much each claimant will receive, or whether any money will be paid directly to claimants.* If the number of claims made renders it economically infeasible to pay money to persons who make a timely and valid claim, payment will be made to the not-for-profit organizations identified on the Settlement website at www.fraleyfacebooksettlement.com (if clicking on the link does not work, copy and paste the website address into a web browser). These organizations are involved in educational outreach that teaches adults and children how to use social media technologies safely, or are involved in research of social media, with a focus on critical thinking around advertising and commercialization, and particularly with protecting the interests of children.

In addition to monetary relief, Facebook will (a) revise its terms of service (known as the "Statement of Rights and Responsibilities" or "SRR") to more fully explain the instances in which users agree to the display of their names and profile pictures in connection with Sponsored Stories; (b) create an easily accessible mechanism that enables users to view, on a going-forward basis, the subset of their interactions and other content on Facebook that have been displayed in Sponsored Stories (if any); (c) develop settings that will allow users to prevent particular items or categories of content or information related to them from being displayed in future Sponsored Stories; (d) revise its SRR to confirm that minors represent that their parent or legal guardian consents to the use of the minor's name and profile picture in connection with commercial, sponsored, or related content; (e) provide parents and legal guardians with additional information about how advertising works on Facebook in its Family Safety Center and provide parents and legal guardians with additional tools to control whether their children's names and profile pictures are displayed in connection with Sponsored Stories; and (f) add a control in minor users' profiles that enables each minor user to indicate that his or her parents are not Facebook users and, where a minor user indicates that his or her parents are not on Facebook, Facebook will make the minor ineligible to appear in Sponsored Stories until he or she reaches the age of 18, until the minor changes his or her setting to indicate that

1

**EXHIBIT**

**1**

his or her parents are on Facebook, or until a confirmed parental relationship with the minor user is established.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to be eligible to receive a payment, if the Court orders payment to Class Members. | Deadline: May 2, 2013 |
| **EXCLUDE YOURSELF** | This is the only option that allows you to retain the ability to file your own lawsuit about the legal claims in this case. | Deadline: May 2, 2013 |
| **OBJECT** | Write to the Court about why you object to (i.e., don't like) the Settlement and think it shouldn't be approved. | Deadline: May 2, 2013 |
| **GO TO THE "FAIRNESS HEARING"** | The Court will hold a "Fairness Hearing" to consider the Settlement, the request for attorneys' fees and expenses of the lawyers who brought the Action ("Class Counsel"), and the class representatives' request for service awards for bringing the Action. You may, but are not required to, speak at the Fairness Hearing about any Objection you filed. If you intend to speak at the Fairness Hearing, you must follow the procedures stated on the Settlement website to notify the Court and parties of your intent when you serve your Objection. | Hearing Date: June 28, 2013 at 10:00 a.m. |
| **DO NOTHING** | You will not receive a payment, even if the Court orders payment to Class Members. You will also be giving up your right to bring your own lawsuit related to the claims in the Action. You may be eligible to receive the non-monetary benefits of the Settlement, if the Settlement is finally approved. | No deadline |

**Your Class Member Number:** 405769268

**To Parents and Guardians of Children on Facebook:** The Settlement also involves the claims of minors featured in Sponsored Stories on Facebook. Please see the Settlement website for more information.

**More Information?** For more information about the Settlement and how to take the actions described above, please visit www.fraleyfacebooksettlement.com (if clicking on the link does not work, copy and paste the website address into a web browser) or write to the Settlement Administrator at *Fraley v. Facebook, Inc.*, Settlement, c/o GCG, P.O. Box 35009, Seattle, WA 98124-1009, or GCG@fraleyfacebooksettlement.com. You may also contact Class Counsel, Robert S. Arns of the Arns Law Firm, by calling 1-888-214-5125 or by emailing fb.settlement@arnslaw.com.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ANGEL FRALEY, *et al.*,

          Plaintiffs,

    v.

FACEBOOK, INC., *et al.*,

          Defendants.

Case No. CV-11-01726 RS

## NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT

**This Notice relates to a proposed settlement (the "Settlement") of a class action lawsuit (the "Action") filed against Facebook, Inc. ("Facebook") relating to a particular Facebook feature called "Sponsored Stories." If you or your child have or have had a Facebook account and a Facebook Sponsored Story featured your or your child's name or profile picture, you or your child may be a "Class Member" in the Action.**

**This Notice explains important legal rights you may have. Your and/or your child's legal rights will be affected regardless of whether you do or do not act.**

- Sponsored Stories are a form of advertising that typically contain posts which appear on facebook.com about or from a Facebook user or entity that a business, organization, or individual has paid to promote so there is a better chance that the posts will be seen by the user or entity's chosen audience. Sponsored Stories may be displayed, for example, when a Facebook user interacts with the Facebook service (including sub-domains, international versions, widgets, plug-ins, platform applications or games, and mobile applications) in certain ways, such as by clicking on the Facebook "Like" button on a business's, organization's, or individual's Facebook page. Sponsored Stories typically include a display of a Facebook user's Facebook name (*i.e.,* the name the user has associated with his or her Facebook account) and/or profile picture (if the user has uploaded one) with a statement describing the user's interaction with the Facebook service, such as "John Smith likes UNICEF," "John Smith played Farmville," or "John Smith shared a link." For illustrative purposes only, and without limiting Sponsored Stories to those examples, Exhibit A at the end of this Notice [Exhibit 8 to the Amended Settlement Agreement and Release ("Settlement Agreement")] contains several examples of Sponsored Stories.

- The Action claimed that Facebook unlawfully used Class Members' names, profile pictures, photographs, likenesses, and identities to advertise or sell products and services through Sponsored Stories, without obtaining Class Members' consent. Facebook denies any wrongdoing and any liability whatsoever. No court or other entity has made any judgment or other determination of any liability.

- As described more completely below, in the Settlement, Facebook has agreed to:

  1. Pay $20 million into a fund that can be used, in part, to pay claims of Class Members (including Minor Subclass Members) who appeared in a Sponsored Story. Each participating Class Member may be eligible to receive up to $10. *The amount, if any, paid to each Claimant depends upon the number of claims made. No one knows in advance how much each Claimant will receive, or whether any money will be paid directly to Claimants.* If the number of claims made renders it economically infeasible to pay money to persons who make a timely and valid claim, payment will be made to the not-for-profit organizations identified in Section 7 of this Notice. These organizations are involved in educational outreach that teaches adults and children how to use social media technologies safely, or are involved in research of social media, with a focus on critical thinking around advertising and commercialization, and particularly with protecting the interests of children.

  2. Revise its terms of service (known as the "Statement of Rights and Responsibilities") relating to Sponsored Stories.

  3. Give users (and minor users' parents or legal guardians) additional information about and control over the use of their (and their children's) names and profile pictures in Sponsored Stories.

QUESTIONS? VISIT WWW.FRALEYFACEBOOKSETTLEMENT.COM

EXHIBIT

2

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to be eligible to receive a payment, if the Court orders payment to Class Members. | Deadline: May 2, 2013 |
| **EXCLUDE YOURSELF** | This is the only option that allows you to retain the ability to file your own lawsuit about the legal claims in this case. | Deadline: May 2, 2013 |
| **OBJECT** | Write to the Court about why you object to (*i.e.*, don't like) the Settlement and think it shouldn't be approved. | Deadline: May 2, 2013 |
| **GO TO THE "FAIRNESS HEARING"** | The Court will hold a "Fairness Hearing" to consider the Settlement, the request for attorneys' fees and expenses of the lawyers who brought the Action ("Class Counsel"), and the class representatives' request for service awards for bringing the Action.<br><br>You may, but are not required to, speak at the Fairness Hearing about any Objection you filed. If you intend to speak at the Fairness Hearing, you must follow the procedures set forth in Section 15 below when you serve your Objection. | Hearing Date: June 28, 2013 at 10:00 a.m. |
| **DO NOTHING** | You will not receive a payment, even if the Court orders payment to Class Members. You will also be giving up your right to bring your own lawsuit related to the claims in the Action. You may be eligible to receive the non-monetary benefits of the Settlement, if the Settlement is finally approved. | No deadline |

- These rights and options—**and the deadlines to exercise them**—are explained in more detail below.

- The Court in charge of this Action has preliminarily approved the Settlement and must decide whether to give final approval to the Settlement. The relief provided to Class Members will be provided only if the Court gives final approval to the Settlement and, if there are any appeals, after the appeals are resolved in favor of the Settlement. *Please be patient.*

## WHAT THIS NOTICE CONTAINS

BACKGROUND INFORMATION ........................................................................................................ 4

    1.    Why did I get this Notice? ............................................................................................ 4

    2.    Why is this a class action? ............................................................................................ 4

    3.    What is this lawsuit about? ............................................................................................ 4

    4.    Why is there a Settlement? ............................................................................................ 4

    5.    How do I know if I am part of the Settlement? ............................................................ 4

    6.    I am a minor or a parent or guardian of a minor. How do I know if I am (or my child is) a Minor Subclass Member? ....................................................................................................................... 5

THE PROPOSED SETTLEMENT .......................................................................................................... 5

    7.    What relief does the Settlement provide to the Class Members? ................................ 5

    8.    Will the Representative Plaintiffs receive any compensation for their efforts in bringing this Action? ..... 6

HOW TO REQUEST PAYMENT – SUBMITTING A CLAIM FORM .................................................. 6

    9.    How can I (or my child who is a Minor Subclass Member) get a payment? ................ 6

    10.    When will I (or my child) get a payment if I submit a Claim Form? ........................... 7

THE LAWYERS REPRESENTING YOU ............................................................................................. 7

    11.    Do I have a lawyer in this case? ................................................................................... 7

    12.    How will the lawyers be paid? ..................................................................................... 7

DISMISSAL OF ACTION AND RELEASE OF ALL CLAIMS ........................................................... 7

    13.    What do Class Members give up to obtain relief under the Settlement? ...................... 7

HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT .......................................................... 8

    14.    How do Class Members exclude themselves from the Settlement? ............................. 8

HOW TO OBJECT TO THE SETTLEMENT ......................................................................................... 8

    15.    How do I tell the Court that I do not like the Settlement? .......................................... 8

    16.    What is the difference between excluding myself and objecting to the Settlement? .... 9

FAIRNESS HEARING ........................................................................................................................... 9

    17.    What is the Fairness Hearing? ..................................................................................... 9

    18.    When and where is the Fairness Hearing? ................................................................... 9

    19.    May I speak at the hearing? ........................................................................................ 10

GETTING MORE INFORMATION & UPDATING INFORMATION ................................................. 10

    20.    How do I get more information? ................................................................................ 10

    21.    What if my address or other information changes after I submit a Claim Form? ....... 10

## BACKGROUND INFORMATION

**1. Why did I get this Notice?**

You received this Notice because a settlement has been reached in this Action regarding Sponsored Stories on Facebook. According to Facebook's available records, you and/or your child may be a member of the Settlement Class and may be entitled to the relief detailed below.

This Notice explains the nature of the Action, the general terms of the proposed Settlement, and your legal rights and obligations. To obtain more information about the Settlement, including information about how you can see a copy of the Settlement Agreement (which defines certain capitalized terms used in this Notice), see Section 20 below.

**2. Why is this a class action?**

In a class action lawsuit, one or more people called class representatives or "Representative Plaintiffs" (in this Action, Susan Mainzer, James Duval, and W.T., a minor, by and through Russell Tait) sue on behalf of other people who have similar claims ("Class Members"). For purposes of this proposed Settlement, one court will resolve the issues for all Class Members, except for those people who properly exclude themselves from the Settlement Class, as explained in Section 14 below. The company sued in this case, Facebook, is called the Defendant.

**3. What is this lawsuit about?**

Representative Plaintiffs contend that Sponsored Stories were advertisements that used Facebook members' names and likenesses to sell products without their consent. California Civil Code section 3344 provides that one whose name and/or likeness has been misappropriated is entitled to damages caused by the misappropriation or statutory damages, and that punitive damages may be awarded to the injured party. It also states that the prevailing party (whether it be the person bringing the lawsuit or the defendant, in this case, Facebook) will be entitled to collect attorneys' fees and costs from the other party. Representative Plaintiffs also allege that Facebook violated California's Unfair Competition Law (Business and Professions Code, section 17200 and the sections that follow).

Facebook denies any wrongdoing and any liability whatsoever and the issuance of this Notice is not an expression of the Court's opinion on the merit or the lack of merit of any of the Representative Plaintiffs' claims in the Action.

For information about how to learn about what has happened in the Action to date, please see Section 20 below.

**4. Why is there a Settlement?**

The Court has not decided that Representative Plaintiffs or Facebook should win this Action. Instead, both sides agreed to a Settlement. That way, they avoid the cost of a trial, and the Class Members will receive relief when the Settlement is final, rather than years from now, if at all.

**5. How do I know if I am part of the Settlement?**

The Court has decided that everyone who fits this description is a Class Member for purposes of the proposed Settlement:

> All persons in the United States who have or have had a Facebook account at any time
> and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses,
> or identities displayed in a Sponsored Story at any time on or before the date of entry of
> the Preliminary Approval Order [which occurred on December 3, 2012].

In this Notice, Class Members and Minor Subclass Members (defined below in Section 6) will be collectively referred to as "Class Members."

**6. I am a minor or a parent or guardian of a minor. How do I know if I am (or my child is) a Minor Subclass Member?**

The Court has decided that everyone who fits this description is a Minor Subclass Member for the purposes of the proposed Settlement:

> All persons in the Class who additionally have or have had a Facebook account at any time and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, while under eighteen (18) years of age, or under any other applicable age of majority, at any time on or before the date of entry of the Preliminary Approval Order [which occurred on December 3, 2012].

In this Notice, Minor Subclass Members and Class Members (defined above in Section 5) will be collectively referred to as "Class Members."

**THE PROPOSED SETTLEMENT**

**7. What relief does the Settlement provide to the Class Members?**

If the proposed Settlement is approved by the Court, and after any appeals are resolved, Facebook has agreed to:

- Pay $20 million into a fund that can be used, in part, to pay claims of Class Members (including Minor Subclass Members) who appeared in a Sponsored Story. Each participating Class Member who submits a valid and timely Claim Form (Authorized Claimant) may be eligible to receive up to $10. *The amount, if any, paid to each Authorized Claimant depends upon the number of claims made, the costs of administering the Settlement and providing notice to the Class, the amount of attorneys' fees and costs awarded by the Court, and other factors detailed in the Settlement Agreement. No one knows in advance how much each Authorized Claimant's payment will be, and Claimants may be paid nothing at all.*

- In addition to paying claims made by Authorized Claimants or making a payment to the not-for-profit organizations noted below, the $20 million fund will be used to pay any attorneys' fees and costs awarded by the Court to Class Counsel (defined below), any service (incentive) award paid to the Representative Plaintiffs, and any costs incurred by the Settlement Administrator (who is the neutral third party operating this website and processing claims) and Escrow Agent (who is a the neutral third party administering the fund). The part of the fund that will be used to pay claims made by Authorized Claimants or to pay the not-for-profit organizations noted below is called the Net Settlement Fund.

- If $10 cannot be paid to each Authorized Claimant, the amount paid to each Authorized Claimant will be reduced pro rata. What this means is that the cash award to individual Authorized Claimants will be determined by subtracting from the $20 million fund any attorneys' fees and costs awarded by the Court to Class Counsel, any service award paid to the Representative Plaintiffs, and any costs incurred by the Settlement Administrator and Escrow Agent, and then dividing the remaining funds by the number of Authorized Claimants. For instance, if the Net Settlement Fund has $12 million, and there are 1.2 million Authorized Claimants, the payment to each Authorized Claimant will be $10, subject to the Court's approval. As another example, if the Net Settlement Fund has $12 million, and there are 2.4 million Authorized Claimants, the payment will be $5, subject to the Court's approval. If the amount to be paid to each Authorized Claimant is calculated to be $4.99 or less, the Net Settlement Fund will be distributed pro rata to the Authorized Claimants, unless the Court orders otherwise as discussed in Section 2.3(a)(ii) of the Settlement Agreement.

- However, if the number of claims made renders it economically infeasible to pay any money to Authorized Claimants, the entire Net Settlement Fund will be distributed to the not-for-profit organizations identified below, instead of to Authorized Claimants.

- If paying $10 to each Authorized Claimant does not exhaust the Net Settlement Fund, the remaining funds will be distributed to the not-for-profit organizations identified below, unless the Court orders otherwise as discussed in Section 2.3(b) of the Settlement Agreement.

- *Again, no one knows in advance how much, if anything, Authorized Claimants may receive, and no one will know until the deadline for submitting claims passes.*

- The not-for-profit entities that might receive payment under the Settlement are involved in educational outreach that teaches adults and children how to use social media technologies safely, or are involved in research of social media, with a focus on critical thinking around advertising and commercialization, and particularly with protecting the interests of children. They are: Center for Democracy and Technology, Electronic Frontier Foundation, MacArthur

Foundation, Joan Ganz Cooney Center, Berkman Center for Internet and Society (Harvard Law School), Information Law Institute (NYU Law School), Berkeley Center for Law and Technology (Berkeley Law School), Center for Internet and Society (Stanford Law School), High Tech Law Institute (Santa Clara University School of Law), Campaign for Commercial-Free Childhood, Consumers Federation of America, Consumer Privacy Rights Fund, ConnectSafely.org, and WiredSafety.org.

In addition to the monetary benefits, the Settlement will require Facebook to:

- Revise its terms of service (known as the "Statement of Rights and Responsibilities") to more fully explain the instances in which Class Members agree to the display of their names and profile pictures in connection with Sponsored Stories.

- Create a mechanism that will allow Class Members to view, on a going-forward basis, the subset of their interactions and other content on Facebook that have been displayed in Sponsored Stories (if any).

- Develop settings that will allow Class Members to prevent particular items or categories of content or information related to them from being displayed in future Sponsored Stories.

- Revise its terms of service to confirm that Minor Subclass Members represent that their parent or legal guardian consents to the use of their names and profile pictures in connection with commercial, sponsored, or related content.

- Provide parents and legal guardians of Minor Subclass Members with additional information about how advertising works on Facebook in its Family Safety Center (currently available at https://www.facebook.com/safety/groups/parents/) and provide parents and legal guardians of Minor Subclass Members with additional tools to control whether their children's names and profile pictures are displayed in connection with Sponsored Stories.

- Encourage new users, upon or soon after joining Facebook, to include their family in their profile information, including their parents and children. Where both a parent and a minor child are users and confirm their relationship, Facebook will provide parents of Minor Subclass Members with certain additional educational information and tools to control whether their children's names and profile pictures are displayed in connection with Sponsored Stories.

- Add a control in Minor Subclass Members' timelines that enables each Minor Subclass Member to indicate that his or her parents are not Facebook users. Where a Minor Subclass Member indicates that his or her parents are not on Facebook, Facebook will make the minor ineligible to appear in Sponsored Stories until he or she reaches the age of 18, until the minor changes his or her setting to indicate that his or her parents are on Facebook, or until a confirmed parental relationship with the minor user is established.

- Make a good faith effort to work with Class Counsel to identify and clarify educational or other information on the Facebook website about how advertising works on Facebook.

**8. Will the Representative Plaintiffs receive any compensation for their efforts in bringing this Action?**

Susan Mainzer, James Duval, and W.T., a minor, by and through Russell Tait, will request a service award of up to $12,500 (each) for their services as class representatives and their efforts in bringing the Action. The Court will make the final decision as to the amount to be paid to the Representative Plaintiffs.

## HOW TO REQUEST PAYMENT – SUBMITTING A CLAIM FORM

**9. How can I (or my child who is a Minor Subclass Member) get a payment?**

To qualify for payment, Class Members must send in a Claim Form. A Claim Form is accessible by clicking HERE. Read the instructions on the Claim Form carefully, fill out all the information requested, and submit it electronically by 11:59 p.m. Pacific on May 2, 2013.

Alternatively, a copy of the Claim Form can be obtained from the Settlement Website www.fraleyfacebooksettlement.com or from the Settlement Administrator at the address below and submitted by postal mail. If a completed Claim Form is submitted by mail it must be submitted to the below address and postmarked by May 2, 2013.

*Fraley v. Facebook, Inc.* Settlement
c/o GCG
P.O. Box 35009
Seattle, WA 98124-1009

**10. When will I (or my child) get a payment if I submit a Claim Form?**

If a Class Member submits a valid Claim Form by May 2, 2013, and the Court orders payment to Authorized Claimants, the Authorized Claimant will receive his or her payment about 70 days after the Court grants final approval of the Settlement, assuming that no one files an appeal challenging the Settlement. The Claim Form allows Class Members to choose between payment via Automated Clearing House (ACH) transfer and payment via physical check.

## THE LAWYERS REPRESENTING YOU

**11. Do I have a lawyer in this case?**

The Court has ordered that the Arns Law Firm and Jonathan Jaffe Law ("Class Counsel") will represent the interests of all Class Members. Class Members will not be separately charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**12. How will the lawyers be paid?**

Class Counsel are requesting up to $7.5 million for their attorneys' fees and up to $282,566.49 to cover their costs. To see a copy of Class Counsel's application for attorneys' fees and costs, please visit the Settlement Website located at: www.fraleyfacebooksettlement.com. The Court will make the final decision as to the amounts to be paid to Class Counsel.

## DISMISSAL OF ACTION AND RELEASE OF ALL CLAIMS

**13. What do Class Members give up to obtain relief under the Settlement?**

If the Settlement is approved, the Court will enter a Final Order and Judgment dismissing the Action "with prejudice" (*i.e.*, meaning that it cannot be filed again).

Upon the entry of the Final Order and Judgment, Plaintiffs and all Class Members, including all Minor Subclass Members (and their parents or legal guardians on all Minor Subclass Members' behalf), who do not validly and timely request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives (collectively the "Releasing Parties") shall be deemed to have fully, finally, and forever released, relinquished, and discharged against Facebook and all other persons and entities, including but not limited to persons and entities that have purchased Sponsored Stories from Facebook, and each of their direct or indirect parents, wholly or majority-owned subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of their present and former directors, officers, employees, shareholders, agents, representatives, attorneys, accountants, insurers, and all persons acting by, through, under, or in concert with them, or any of them (collectively the "Released Parties"), all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, of any nature whatsoever, known or unknown claims, in law or equity, fixed or contingent, which the Releasing Parties have or may have against the Released Parties arising out of or relating to any of the acts, omissions, or other conduct that was or could have been alleged in the Action, including but not limited to any and all acts, omissions, or other conduct related to the display of any Class Member's name, nickname, pseudonym, profile picture, photograph, likeness, or identity in a Sponsored Story ("Released Claims").

**In addition, the Releasing Parties expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:**

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Releasing Parties fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by the Releasing Parties and their Counsel to be true, and they expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts. Further, the Releasing Parties agree that this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been accepted.

The precise definitions of the capitalized terms in the paragraph above can be found in the Settlement Agreement, which is located online at www.fraleyfacebooksettlement.com or may be obtained by requesting it from the Settlement Administrator: *Fraley v. Facebook, Inc.* Settlement, c/o GCG, P.O. Box 35009, Seattle, WA 98124-1009, GCG@fraleyfacebooksettlement.com.

Unless you exclude yourself, you will remain in the Settlement Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit about the Released Claims. It also means that all of the Court's orders will apply to you and legally bind you.

If you exclude yourself from the Settlement Class, you would retain the right to bring a claim against Facebook, but you would not have representation provided for you through this lawsuit, and would be responsible for hiring your own attorney at your own expense.

## HOW TO EXCLUDE YOURSELF FROM THE SETTLEMENT

**14. How do Class Members exclude themselves from the Settlement?**

Class Members who do not want to be a part of the Settlement must complete a form requesting to be excluded. An electronic version is accessible HERE. If submitted electronically, the submission must be complete by May 2, 2013, 11:59 p.m. (Pacific).

Alternatively, a copy of this form can be obtained from the Settlement Website www.fraleyfacebooksettlement.com or from the Settlement Administrator at the address below and submitted by postal mail. If the form is submitted by mail, it must be submitted to the below address and postmarked by May 2, 2013.

*Fraley v. Facebook, Inc.* Settlement
c/o GCG
P.O. Box 35009
Seattle, WA 98124-1009

Requests for exclusions must be made on an individual basis using the provided form. "Mass" or "class" opt-outs purporting to be made on behalf of multiple persons or classes of persons shall not be allowed.

If you submit a valid electronic or written request to be excluded from the Class, you will not be a part of the Settlement, you will not be eligible to make a claim for payment (as decribed in Section 9 above), will not be bound by the Final Order and Judgment entered in the Action, and will not be precluded from bringing any individual claim against Facebook based on the conduct complained of in the Action. If a Claimant also submits a request for exclusion from the Class and Settlement, the request for exclusion will be ignored.

## HOW TO OBJECT TO THE SETTLEMENT

**15. How do I tell the Court that I do not like the Settlement?**

At the date, time, and location stated in Section 18 below, the Court will hold a Fairness Hearing to determine if the Settlement is fair, reasonable, and adequate, and to also consider Class Counsel's request for an award of attorneys' fees and expenses, and a service award to the Representative Plaintiffs.

If you have not submitted a timely exclusion request and wish to object to the Settlement or to the award of attorneys' fees, expenses, or service awards, you must deliver a written objection ("Objection") by May 2, 2013 that complies with the following requirements.

Written objections must be verified by a declaration under the penalty of perjury or a sworn affidavit and must include: (a) the name of the Action and case number, "*Fraley v. Facebook, Inc.*, Case No. CV-11-01726 RS"; (b) the full name, address, telephone number, and email address associated with the Facebook account of the person objecting; and (c) an explanation detailing the specific reasons for each Objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence the objector wishes to introduce in support of the Objection(s). Objections will not be valid if they only object to the lawsuit's appropriateness or merits.

You may, but need not, file and serve your Objection through counsel of your choice. If you do make your Objection through an attorney, you will be responsible for your personal attorney's fees and costs.

Objections filed by attorneys registered for e-filing with this Court on behalf of Class Members may be filed through the Court's electronic court filing ("ECF") system located at https://ecf.cand.uscourts.gov/cand/index.html. An Objection filed with the Court via ECF may redact the objecting individual's telephone number or email address, so long as the unredacted version is served on both Class and Facebook Counsel at the following addresses: Class Counsel—Robert S. Arns, Esq., The Arns Law Firm, 515 Folsom Street, 3rd Floor, San Francisco, CA 94104; Facebook's Counsel—Michael G. Rhodes, Esq., Cooley LLP, 101 California Street, 5th Floor, San Francisco, CA 94111. Otherwise, objections must be sent to the Settlement Administrator by mail or email at the following addresses:

*Fraley v. Facebook, Inc.* Settlement
c/o GCG
P.O. Box 35009
Seattle, WA 98124-1009
GCG@fraleyfacebooksettlement.com

The date of an Objection is deemed to be the date on which it is:

 (a) deposited in the U.S. Mail or equivalent foreign system, with postage paid by the objector, as evidenced by the postmark [*if mailed to the Settlement Administrator*];

 (b) transmitted to the Settlement Administrator via email, as reflected on the transmission record [*if emailed to the Settlement Administrator*]; or

 (c) filed with the Court as reflected on the Objection's "notice of electronic filing" [*if filed with the Court electronically and served on the Parties via the Court's ECF system*].

For the purposes of email and ECF transmission, transmission must be complete by 11:59 p.m. (Pacific) on May 2, 2013.

**IF YOU DO NOT TIMELY MAKE YOUR OBJECTION, YOU WILL BE DEEMED TO HAVE WAIVED ALL OBJECTIONS AND WILL NOT BE ENTITLED TO SPEAK AT THE FAIRNESS HEARING.**

If you deliver a timely Objection, and comply with this paragraph, you may appear at the Fairness Hearing, either in person or through personal counsel hired at your expense, to object to the fairness, reasonableness, or adequacy of the Settlement, or to the award of attorneys' fees, expenses, or service award. You are not required, however, to appear.

**If you or your attorney intend to make an appearance at the Fairness Hearing, you must also deliver, according to the above procedures, no later than May 2, 2013, a Notice of Intention to Appear. Alternatively, you may state in your Objection that you intend to appear and speak at the Fairness Hearing.**

### 16. What is the difference between excluding myself and objecting to the Settlement?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

**FAIRNESS HEARING**

### 17. What is the Fairness Hearing?

The Court has preliminarily approved the Settlement and will hold a hearing to decide whether to give final approval to the Settlement. The purpose of the Fairness Hearing will be for the Court to determine whether the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Class; to consider the award of attorneys' fees and expenses to Class Counsel; and to consider the request for a service award to the Representative Plaintiffs.

### 18. When and where is the Fairness Hearing?

The Court will hold the Fairness Hearing at 10:00 a.m. on June 28, 2013, in Courtroom 3, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102. The hearing may be postponed to a different date or time or location without notice. Please check www.fraleyfacebooksettlement.com for any updates about the Settlement generally or the Fairness Hearing specifically. If the date or time of the Fairness Hearing changes, an update to the Settlement Website will be the only way you will be informed of the change.

QUESTIONS? VISIT WWW.FRALEYFACEBOOKSETTLEMENT.COM

**19. May I speak at the hearing?**

At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

You may attend, but you do not have to. As described above in Section 15, you may speak at the Fairness Hearing only if (a) you have timely served and filed an Objection, and (b) followed the procedures set forth in Section 15 above for notifying the Court and the parties that you intend to speak at the Fairness Hearing.

If you have requested exclusion from the Settlement, however, you may not speak at the Fairness Hearing.

**GETTING MORE INFORMATION & UPDATING INFORMATION**

**20. How do I get more information?**

To see a copy of the Settlement Agreement (which defines capitalized terms used in this Notice and provides a brief summary of what has happened in the Action), the Court's preliminary approval order, Class Counsel's application for attorneys' fees and costs, and the operative complaint filed in the Action, please visit the Settlement Website located at: www.fraleyfacebooksettlement.com. Alternatively, you may contact the Settlement Administrator at: *Fraley v. Facebook, Inc.* Settlement, c/o GCG, P.O. Box 35009, Seattle, WA 98124-1009.

The above description of the Action is general and does not cover all of the issues and proceedings that have occurred. In order to see the complete file for the Action, you should visit the website of the Administrative Office of the U.S. Courts, PACER Service Center, located at http://pacer.psc.uscourts.gov/. You may also visit or call the Clerk's office at the United States District Court for the Northern District of California, San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102. The Clerk will tell you how to obtain the file for inspection and copying at your own expense.

You may also contact Class Counsel, Robert S. Arns, Esq. of the Arns Law Firm, by calling 1-888-214-5125 or by emailing fb.settlement@arnslaw.com.

**21. What if my address or other information changes after I submit a Claim Form?**

If, after you submit a Claim Form, you change your postal or email address, it is your responsibility to inform the Settlement Administrator of your updated information. You may do so either by mail or email at the addresses below:

> *Fraley v. Facebook, Inc.* Settlement
> c/o GCG
> P.O. Box 35009
> Seattle, WA 98124-1009
> GCG@fraleyfacebooksettlement.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO THE CLERK OF THE COURT OR THE JUDGE.**

Dated: December 3, 2012

By: Order of the Northern District of California
HONORABLE RICHARD SEEBORG
JUDGE OF THE U.S. DISTRICT COURT

# EXHIBIT A

SPONSORED STORY EXAMPLES

## EXHIBIT A - SPONSORED STORY EXAMPLES

















**Jane Doe** played Marvel: Avengers Alliance.

**Marvel: Avengers Alliance**
▶ Play



**John Smith** used Stitcher Radio.

**Stitcher Radio**
Use



**John Smith** likes Ides of March.

RECENT POST

**Ides of March**
Rolling Stone calls Ides of March "A big, bruising thriller." -Peter Travers

👍3 💬5 · Like



**John Smith** likes Stella Artois USA.

RELATED POST

**Stella Artois USA**
Always good odds.

👍 Like This Page



**Jane Doe** likes Lowe's Home Improvement.
👍 Like This Page · Tuesday at 12:06pm · Sponsored



**Jane Doe** likes Full Circle Fund.



**Full Circle Fund**
Full Circle Fund members leverage their time, money, skills...

Yesterday at 7:27pm · Sponsored

👍 Like Page

2



**John Smith** likes Stanford
Graduate School of Business.

 **Stanford Graduate
School of Business**
👍 Like

---

**John Smith** likes Obamacare.

 **Obamacare**
Community

Jane Doe and 5 other people also like this.



Like Page · Find More Pages · about an hour ago · Sponsored

---



**John Smith** likes US Olympic Team.

**US Olympic Team**
Non-Profit Organization

Jane Doe and 3 other people also like this.



Like Page · Find More Pages · Monday at 5:04pm · Sponsored

---



**John Smith** likes George W. Bush Presidential Center.

RECENT POST

 **George W. Bush Presidential Center**    Like Page
President Bush and Warrior Open tournament director Carolyn
Creekmore played golf over Memorial Day weekend with wounded
warriors Nick Bradley and Dave Romanowsky, who competed in the
inaugural Warrior Open last year.

 **Wall Photos**
President Bush and Warrior Open tournament
director Carolyn Creekmore played gol...
See More
By: George W. Bush

Like · Comment · Share · 👍 709 💬 42 📄 46 · ↩

3