ROBERT S. ARNS (#65071, rsa@arnslaw.com)
JONATHAN E. DAVIS (#191346, jed@arnslaw.com)
STEVEN R. WEINMANN (#190956, srw@arnslaw.com)
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:   (415) 495-7800
Fax:   (415) 495-7888

JONATHAN M. JAFFE (# 267012, jmj@jaffe-law.com)
**JONATHAN JAFFE LAW**
3055 Hillegass Avenue
Berkeley, CA 94705
Tel:   (510) 725-4293
Fax:   (510) 868-3393

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W. T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>          Defendants. | **Case No. CV 11-01726 RS**<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL**<br><br>Date:  November 15, 2012<br>Time:  1:30 p.m.<br>Courtroom:  3<br>Judge:  Hon. Richard Seeborg |

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF
CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY
APPROVAL
Case No. CV 11-01726 RS

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL ................................................. 1

STATEMENT OF ISSUES ............................................................................................. 1

MEMORANDUM OF LAW .......................................................................................... 2

I.      INTRODUCTION ................................................................................... 2

II.     TERMS OF THE PROPOSED SETTLEMENT ..................................... 6

    1.   The Proposed Settlement Class ............................................................... 6

III.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ................ 7

  A.   Facts Concerning Defendant Facebook, Inc. .......................................... 7

  B.   Facts Concerning The Class Representatives ......................................... 9

  C.   Procedural History ................................................................................... 9

IV.     The Proposed Settlement Class Should be Certified for Settlement Purposes and Plaintiff's Counsel Appointed As Class Counsel ........................................... 10

  A.   Numerosity is Satisified ......................................................................... 10

  B.   The Claims are Typical and There is Commonality Under Rule 23(a) .......................... 11

  C.   Adequacy of Representation. .................................................................. 14

  D.   A Class Action is the Superior Means of Adjudication .......................... 14

  E.   Nationwide Certification ......................................................................... 15

  F.   Appointment of Class Counsel Under Rule 23(g). ................................. 16

V.      CONCLUSION ........................................................................................ 17

i

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE No. CV 11-01726 RS

# TABLE OF AUTHORITIES

**State Cases**

*Diamond Multimedia Sys., Inc. v. Super. Court*, 19 Cal. 4th 1036 (1999) ................................. 17

*Wash. Mutual Bank, FA v. Super. Court*, 24 Cal. 4th 906 (2001) ............................................. 17

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) ................................................ 17

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 10, 13

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ........................................... 16

*Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524 (N.D. Cal. 2004) ........................................... 16

*Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147 (1982) ..................................................... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................. 11, 12, 14

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................................. 11

*Leuthold v. Destination Am. Inc.*, 224 F.R.D.462 (N.D. Cal. 2004) ........................................ 16

*Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189 2011 U.S. Dist. LEXIS 114821

   (N.D. Cal. Oct. 5, 2011) ....................................................................................... 10

*Marr v. E. State Hosp.*, 2002 U.S. Dist. LEXIS 28460 (E.D. Wash. Apr. 29, 2002) ................. 14

*Parkinson v. Hyundai Motor Am., Inc.*, 258 F.R.D. 580 (C.D. Cal. 2008) ................................ 13

*Thomas v. Baca*, 231 F.R.D. 397 (C.D. Cal. 2005) ............................................................. 13

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ............................................ 15

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ................................... 13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..................................................... 12

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ........................................ 13

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) ................................................. 15

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, *am.* 273 F.3d 1266 (9th Cir. 2001) 10, 13

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF
CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY
APPROVAL
CASE NO. CV 11-01726 RS

**Statutes**

Cal. Civ. Code § 3344 ............................................................................2, 6, 12, 14

California Unfair Competition Law, Bus. & Prof. Code § 17200 et seq ..........................2, 14, 18

**Rules**

Fed. R. Civ. P. 23(a) .................................................................................passim

Fed. R. Civ. P. 23(b) .................................................................................passim

Fed. R. Civ. P. 23(g) .........................................................................................17

**Treatises**

Charles Alan Wright, *et al., 7A Federal Practice and Procedure* § 1778 (3d ed. 2005) ...........13

Manual for Complex Litigation (Fourth) § 21.632 (2012) .........................................................10

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF
CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY
APPROVAL
CASE NO. CV 11-01726 RS

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on November 15, 2012, at 1:30 p.m., or as soon thereafter as counsel may be heard, Plaintiffs and proposed Class representatives Susan Mainzer, James H. Duval, and W.T. ("Plaintiff") shall bring on for hearing before the Honorable Richard Seeborg, United States District Judge, in the United States District Courthouse, Northern District of California, San Francisco Division, Courtroom 3, 450 Golden Gate Avenue, San Francisco, CA, 94102, their Motion for Class Certification, Appointment of Class Counsel and Appointment of Class Representatives Pursuant to Motion for Preliminary Approval.

The Motion seeks an Order: (1) provisionally certifying the Settlement Class, as defined below, for settlement purposes only; (2) appointing Plaintiffs as Class Representatives and their counsel as Class Counsel; This Motion is based on this Notice of Motion, the attached Memorandum of Law, the concurrently filed Joint Motion for Prelimianry Approval of Class Action Settlement and supporting documents, as well as the pleadings, Orders, transcripts and other papers on file in this action; and any further evidence and arguments as may be presented at the hearing of this matter.

### STATEMENT OF ISSUES

1. Whether the Court should grant conditional certification of the Settlement Class, authorizing Plaintiffs and Class Counsel to represent the proposed Settlement Class, because the Settlement Class satisfies the requirements of Rules 23(a) and (b) of the Federal Rules of Civil Procedure.

-1-

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

## MEMORANDUM OF LAW

### I. INTRODUCTION

Plaintiffs Susan Mainzer, James H. Duval and W.T. bring this Motion for class certification, appointment of class counsel and appointment of class representatives pursuant to the concurrently filed motion for preliminary approval of settlement.[1]  Plaintiffs bring claims for their right of publicity under California Civil Code § 3344 and California's Unfair Competition Law, Business & Professions Code § 17200 et seq.  They allege that their names and likenesses had been used without their prior consent in "Sponsored Stories" ads shown to their online friends on Facebook.com.  After hard fought litigation since March 2011, including two motions to dismiss, twenty-one depositions, and the briefing of a motion for class certification, the Parties entered into mediation and ultimately reached a proposed settlement just days before the Plaintiffs' class certification motion was to be heard.  Following denial without prejudice of Plaintiffs' first Motion for Preliminary Approval, Plaintiffs and Facebook negotiated substantial modifications to the terms of the Settlement.

There is now a $20 million settlement fund, with no reversion to Facebook, and no "clear sailing" agreement as to Class Counsel's attorney's fees.  Under the Amended Settlement Agreement ("A.S.A.")[2] the balance of the $20 million fund after attorneys' fees and costs, incentive awards, and settlement administration and notice costs, will be made available on a claims-made basis for distribution to Class members, starting at a rate of $10 per claiming

---

[1] In support of this Motion, Plaintiffs incorporate by reference all documents concurrently filed related to the Motion for Preliminary Approval of Class Action Settlement, and all citations to Exhibits and Declarations are references to documents filled with that motion.

[2] The Amended Settlement Agreement ("A.S.A.") is attached as Exhibit 1 to the Declaration of Robert S. Arns in support of Joint Motion for Preliminary Approval ("Arns Decl.").  However, becaue of frequent discussion, it will be cited throughout this document as "A.S.A.".

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL

CASE NO. CV 11-01726 RS

Class member and being adjusted pro rata should the claims rate be relatively high.[3]  In the event that the claims rate is such that the Court determines the monies would be better instead distributed to *cy pres* (e.g., if it should fall below $5 per claimant), the Parties have designated *cy pres* recipients.  These recipients are entities which have been and are engaged in activities which will benefit the entire Class as well as the public at large, as they will advocate for issues such as the right of protection of the Class members' right of publicity on the internet and specifically on social media websites.  The *cy pres* recipients also include entities that are dedicated to the protection of the rights and welfare of minor children, as they are affected by social media in an online context.

The central focus of the Settlement remains the crucially important proposed injunctive relief, which remains in place in the Amended Settlement Agreement.  That relief will provide significant benefits to the Class Members (as well as future Facebook members) and includes changes to Facebook's website, will remain in place for at least two (2) years, and make it clear to all persons with Facebook accounts ("Users") and the parents or legal guardians of minor Users that their names and likenesses may be used in "Sponsored Stories" ads.  A.S.A § 2.1.

Plaintiffs have also received clarification of the methods by which Facebook will comply with the injunctive relief, including how it will make available an "opt-out" function for the parents of minors. When both minors and their parents are Facebook members, the parties can create a connection that establishes their relationship to one another.  A.S.A. § 2.1(c)(ii).  When a parent and their minor child confirm their relationship in the Facebook system, Facebook will provide an easily accessible tool from which parents, through their own

---

[3] As explained further below, should the claims rate exceed the point where it is feasible to provide all claimants $10, the payment amount will be adjusted pro rata to the point where it is economically feasible.  Previously the clear sailing agreement was for $10 million in fees, but class counsel was only going to request $7.5 million in fees.  Because this is now all part of a $20 million settlement with no reversion, the benefit to the class has increased under the A.S.A. by roughly $2.5 million.

-3-

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL

CASE NO. CV 11-01726 RS

Facebook account, can prevent the names and likeness of their minor child from appearing in Sponsored Stories. A.S.A. §§ 2.1(c)(ii), 2.1(c)(iii).

Additionally, new provisions of the injunctive relief require that Facebook add a control in minor users' profiles that enables the minor user to indicate that his or her parents are not Facebook members. A.S.A § 2.1(c)(iii). Under the new terms in the Amended Settlement Agreement, where a minor user has indicated that their parents are not Facebook members, Facebook will make the minor ineligible to appear in Sponsored Stories until the minor reaches the age of 18, changes his or her setting to indicate his or her parent is on Facebook, or a confirmed parental relationship with the minor is established. A.S.A § 2.1(c)(iii).

In total, the injunctive relief now includes relief in the form of (1) a revision of the Facebook terms (Statement of Rights and Responsibilities, or "SRR"), section 10.1 that clarifies to users that they give Facebook permission to use their name and likeness in Sponsored Stories ads; (2) a mechanism that will allow users to see which actions they have taken that have led to their being featured in Sponsored Stories ads and control whether those actions continue being eligible to appear as Sponsored Stories ads;[4] (3) additional provisions requiring that Users under 18 years of age represent that they have received parental consent to be featured in Sponsored Stories ads; (4) additions to Facebook's "Family Safety Center" that explain Sponsored Stories ads and enable parents to prevent their children from being featured in Sponsored Stories ads; (5) additional information shown to users upon joining, or soon thereafter, encourage new users to include in their profile relationships, including parents and children,[5] and if a confirmed parent-child relationship is established, the parents will be able to use the control mentioned above through their own Facebook accounts; (6) additional educational materials regarding how Facebook advertising works to the 'parents" section of the

---

[4] An exemplar of what this tool will potentially look like is visible in Exhibit 31 to the Declaration of Jonathan E. Davis. All references which are designated only with "Ex." and a number are citations to exhibits to the Declaration of Jonathan E. Davis ("Davis Decl."); exhibits to other persons' respective declarations are so identified.

[5] An exemplar of what this messaging will potentially look like is attached as Ex. 32.

-4-

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

Family Safety Center; (7) the creation and display of advertising to Users with a confirmed parental relationship with a minor user, directing them to the Family Safety Center, and/or other parent-specific resources on Facebook, and; (8) an opportunity for Plaintiffs' counsel to review Facebook's website materials regarding advertising and ensure that Sponsored Stories are clearly identified as ads, with the right to move the Court to call for an independent audit (for which Facebook will pay) if necessary.  A.S.A. § 2.1.

There are also at least three alternative methods for assigning a dollar amount to the ability of the Facebook users to now avoid being in Sponsored Stories ads, and limit their appearances in Sponsored Stories ads.[6]   These tools are being created by virtue of this settlement and could not be forced upon Facebook otherwise.  The first valuation method establishes the value of the new educational information and user privacy control tools provided by the injunctive relief, premised upon the fact that they create a "real option" for using Facebook that did not exists prior to the injunctive relief.  This new option is essentially one in which the user can continue to use Facebook while still maintaining control over their appearance in Sponsored Stories.  This methodology is based upon valuations assigned by economists to "call" type options in the financial markets.  This Option Value methodology values the new option created by the injunctive relief in a range of $57.4 million to $145.1 million.  An alternative method utilizes the previously established fair market value of the Class members' endorsements, and their newly created right to control those endorsements based in part on the value of future endorsements to Facebook.  Finally, Plaintiffs contend that the new tools and information provided is worth at minimum $1 to each Class member, which places the value of the injunctive relief at least $123 million.

---

[6] This relief and the precedent it establishes has further value in that it will also influence other social media sites such as GooglePlus.  All other existing and future social media sites will look to the changes here as a model as to how to obtain consent and provide meaningful information to users as to how their right of publicity will be used, and how to deal with the issue of minor consent.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

In response to the Court's requests, Plaintiffs herein provide a more detailed explanation of how the amount of actual damages that the Class members have suffered from appearing in Sponsored Stories ads was calculated. The past "actual damages" can be estimated with a reasonable amount of scientific certainty by utilizing the actual valuation represented by the "additional value" of Sponsored Stories ads paid for by advertisers on Facebook. Plaintiffs' experts performed the necessary groundwork for calculating such actual damages on the motion for class certification. *See* Section IV(C), *infra*. Plaintiffs (and Facebook in its separately filed brief) also set out in more detail the risks of continued litigation, including the likelihood of success and risks if Plaintiffs were to continue to litigate and seek the statutory penalties available to them under California Civil Code section 3344.

This case presents all the factors supporting the approval of certification and settlement of a class action: millions of class members, and a policy or practice by the defendant, which Plaintiffs contend is applied uniformly to all class members. The proposed distribution to the Class provides relief for Class members who feel they have been harmed, and the injunctive relief addresses the issues identified in the Complaint and will provide significant benefits in terms of information available and remedying the asserted lack of consent issues. The Court should approve the proposed Settlement.

## II.   TERMS OF THE PROPOSED SETTLEMENT

The terms of the Settlement are as follows:

### 1.      The Proposed Settlement Class

Plaintiffs request that, pursuant to the terms of the Settlement, the Court certify the following proposed Settlement Class:

> (a)      **Class:**  All persons in the United States who have or have had a Facebook account at any time and had their names, nicknames, pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, at any time on or before the date of entry of the Preliminary Approval Order.
>
> (b)      **Minor Subclass:**  All persons in the Class who additionally have or have had a Facebook account at any time and had their names, nicknames,

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF
CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY
APPROVAL
CASE NO. CV 11-01726 RS

pseudonyms, profile pictures, photographs, likenesses, or identities displayed in a Sponsored Story, while under eighteen (18) years of age, or under any other applicable age of majority, at any time on or before the date of entry of the Preliminary Approval Order.

A.S.A §§1.6, 1.17

## III.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Facts Concerning Defendant Facebook, Inc.

Facebook is the world's largest social networking site that generates most of its revenue from advertising.   Ex. 1, [Second Amended Complaint] ¶ 13.[7]   As of December 2011, Facebook had over 161 million monthly active users in the United States.[8] Ex. 28, p. 44.

On January 25, 2011, Facebook launched a new advertising service called "Sponsored Stories." Ex. 22 [RFA Response No. 1.3].   Since that time, when a Member posts, "Likes," "Checks-in", or uses an application or game, and the content relates to an ad campaign in some predetermined way, the Member's profile image and name may appear, along with content created by Facebook, as an endorsement.   Plaintiffs contend this process is a paid advertisement on the pages viewed by some or all of the Friends of that Member.   These Sponsored Stories ads typically appeared in the right-hand column along with other ads that have been paid for by Facebook's advertisers.   More recently, Sponsored Stories ads have been displayed in the Newsfeed column where they are denoted as "Sponsored." They do **not** appear on pages seen by the Members whose names and/or likenesses are being used.   *See* Ex. 7; and Ex. 4.

The Sponsored Stories ad service is already enabled for all Members when they sign up, and Plaintiffs contend that Members are unable to opt-out of the service. Ex. 5, pp. 24-26; Ex.

---

[7] All references which are designated only with "Ex." and a number are citations to exhibits to the Declaration of Jonathan E. Davis.

[8] As of August 31, 2012, 123,868,976 Facebook members had appeared in a Sponsored Story. Of that number, 19,761,991 are minors. *See* Decl. of Christopher Plambeck, filed concurrently by Defendant Facebook.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE No. CV 11-01726 RS

6 [Yang Dep Tr.] at 140:3-6; Ex. 23 [Squires Dep. Tr.] at 302:20-303:02. The most common action that leads to an appearance in a Sponsored Story ad, is clicking on a Facebook Like button anywhere on the Internet. Reasons for doing so include being able to thereby take advantage of some offer, or simply in order to be able to see content on a page.

At any given time, only a single user agreement was in effect between Facebook and all Class members in the United States. See Ex. 6, [Yang Depo. Tr.] 166:11-168:9; 169:3-1.[9] That agreement applied uniformly to all Class members during the time period in which it was in effect. *Id.* The user agreement has been modified over time, but only one is in effect at a given time. *Id.* The terms of use effective during the Class Period thus far (generally referred to as the Statement of Rights and Responsibilities, or "SRR") are Exs. 16-21 to the Davis Declaration.

Plaintiffs contend that none of the operative versions of the SRRs disclosed to Members the fact that they may appear in Sponsored Stories ads or sought their consent as to appearances in Sponsored Stories. Plaintiffs further contend that a problem with the voluminous "Help Center" (hundreds of linked pages) and the Settings arose from Facebook's failures to notify users of the addition of Sponsored Stories, who upon visiting the "Help Center" were told "You can edit your ad privacy settings through the 'Account Settings' link at the top of any page within Facebook or by clicking here." Ex. 35. If a Facebook user clicked on that link, they were taken to a page where it appeared that they were given the ability to "opt-out" of appearing in all advertisements. Users who did this believed that they had successfully prevented their likeness from being paid with ads. However, members who had chosen this option were still eligible to appear in Sponsored Stories, even though they likely believed they were not appearing in advertisements. Facebook's "Help Center" in some areas states that Sponsored Stories are "different" than Facebook Ads, thus, Plaintiffs allege, leading to further confusion. Ex. 34.

---

[9] Facebook's Amended Resp. And Obj. To Plaintiffs' First Set Of Interrogatories, Response to Interrogatory No. 13. Ex. 10.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

## B.   Facts Concerning The Class Representatives

Prior to January 1, 2011, Susan Mainzer uploaded a Facebook Profile picture of herself that clearly bears her likeness, visible in Ex. 7.  On March 22, 2010, Ms. Mainzer clicked on the Facebook "Like" button for UNICEF USA. Ex. 8 [Mainzer Depo. Tr.] 62:11-16, 72:4-17; 77:23-78:12.  Ms. Mainzer's name and profile picture appeared in a UNICEF Sponsored Story on facebook.com and displayed to her Friends.  Ex. 7.  She was not paid for her appearance in that ad, or for her appearance in others since then.  Ex. 9 [Mainzer Response to Int. Nos. 8, 11].

James H. Duval, a minor at the time (he turned 18 in 2012), prior to January 1, 2011, uploaded a Facebook Profile picture of himself that clearly bore his likeness visible in Ex. 11.  Mr. Duval appeared in Sponsored Stories shown to his Friends.  Ex. 2.  Three days after Facebook launched Sponsored Stories ads—eight weeks after he clicked on the "Like" button—Mr. Duval (unbeknownst to him) began appearing in Sponsored Stories about Coca-Cola, shown to his friends.  Ex. 34.  At no point did Facebook seek or obtain consent from his parents or other legal guardians to use his name or likeness as required under California law.  He was not paid for his appearance in any ads.  Ex. 34.

Sometime prior to January 1, 2011, representative "W.T," a minor at the time, uploaded a Facebook Profile picture of himself that clearly bears his likeness in the form of a photograph.  On Dec. 11, 2010, W.T. clicked on the Facebook "Like" button for Craftsman.  Ex. 14.  On or about March 20, 2011 W.T. (unbeknownst to him), began appearing in ads. *See* Ex. 3.  W.T. was not paid for his appearance in any of those ads.  Ex. 15.  [W.T. Response to Int. Nos. 8, 11]

## C.   Procedural History

This action was filed in Santa Clara Superior Court on March 11, 2011.  Plaintiffs amended to add a subclass of minors on March 18, 2011.  The case was thereafter removed to federal court on April 8, 2011.  Following an initial Motion to Dismiss after removal,

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

Plaintiffs amended the Complaint; the operative Complaint is the Second Amended Complaint. Facebook filed a second Motion to Dismiss, which was denied on December 16, 2011. Plaintiffs filed their Motion for Class Certification on March 29, 2012, and their Reply on May 3, 2012. The Motion was fully briefed at the time the Parties' original Term Sheet was entered into on May 22, 2012. Plaintiffs filed a first motion for Preliminary Approval of Settlement on June 14, 2012. The Honorable Lucy H. Koh recused herself after the first Motion for Preliminary Approval was filed. After transfer of this matter to the Hon. Richard Seeborg, the motion was heard on August 2, 2012, and denied without prejudice on August 17, 2012.

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES AND PLAINTIFF'S COUNSEL APPOINTED AS CLASS COUNSEL

The Court should determine that the proposed settlement class provisionally meets the requirements of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); Manual for Complex Litigation (Fourth) § 21.632 (2012). The prerequisites for certifying a class are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, each of which is satisfied here. *See* Fed. R. Civ. P. 23(a). Plaintiffs bear the burden of establishing that all four requirements of Rule 23(a) are met, as well as one requirement of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). Whether or not to certify a class is within the broad discretion of the Court. *Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189 2011 U.S. Dist. LEXIS 114821 (N.D. Cal. Oct. 5, 2011) at *20-21. *Id.* Plaintiffs seek certification of a Class under Fed. R. Civ. P. 23(b)(3), as questions of law and fact predominate over any individual issues

### A. Numerosity is Satisified

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

Facebook stated that as of August 31, 2012, approximately 123 million users who fit the Plaintiff Class definition had appeared in at least one Sponsored Stories ad. *See* Declaration of Christopher Plambeck.[10] Of that number, 10.9 million fit the Subclass of Minors definition of minors. *Id*. This number far exceeds the numbers where the joinder of the members of the class action is impractical beyond any doubt. *See Hanlon*, 150 F.3d at 1019.

### B.     The Claims are Typical and There Is Commonality Under Rule 23(a)

Rule 23(a)(3) requires that the claims of the representative plaintiff be typical of those of the class.  Commonality and typicality "tend to merge," such that factors that support a finding of commonality also support a finding of typicality.  *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)(citation omitted).

Plaintiffs' claims are typical of the Class they seek to represent because all claims relating to Facebook's use of User's names and likenesses in advertisements arise under California law as made applicable under the SRR (and thus under Cal. Civil Code section 3344).  Also, typicality applies because Plaintiffs' claims arise from the same practice and course of conduct:  Facebook's creation of Sponsored Stories ads and the showing of those ads without obtaining permission; all Plaintiffs have been injured in the same manner.  Plaintiffs' claims are based on the same facts and legal theories as the Class and are, therefore, typical. *See Hanlon*, 150 F.3d at 1020 (typicality satisfied where plaintiffs' claims are "reasonably coextensive with those of absent class members").  For similar reasons, Plaintiffs' claims also meet the commonality requirement in that they raise "questions of law or fact common to the class," including whether Facebook's policies violated State law, and whether they caused

---

[10] Declaration of Christopher Plambeck is filled concurrently by Defendant Facebook in Support of the Joint Motion for Preliminary Approval of Class Action Settlement.

-11-

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL

CASE NO. CV 11-01726 RS

injury to the Class. *See* Fed. R. Civ. P. 23(a)(2); *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

A subclass of minors represented by James H. Duval, and W.T, through his guardian ad litem Russell Tait, should also be certified. California Civil Code §3344 expressly states that liability attaches for the failure to obtain consent "in the case of a minor, the prior consent of his parent or legal guardian." Facebook uniformly does not seek or obtain such prior consent as to any minors. Each of the other requirements of proof—other than consent—are identical for the Subclass.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." *Hanlon*, 150 F.3d at 1022. The proposed class is maintainable under Rule 23(b)(3) as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair resolution of the controversy. *Id.* at 1022-23. Because Facebook is an Internet company and all of its dealings with its Members are all through its website, all of the Class Members are similarly situated and exposed to the same policies, practices and procedures. This applies to the SRRs, Terms of Use, and Privacy Policy, as well as the means by which Sponsored Stories ads are generated. *See* Ex. 6, 166:11-170:4 (single version of Terms applies to all users at a given time). Each of the issues that are the subject of common proof or determination as a matter of law can be addressed (in this case through settlement) for all class members at once, justifying certification of these claims for settlement purposes. *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1173 (9th Cir. 2010); *Parkinson v. Hyundai Motor Am., Inc.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008).

Class members' claims satisfy the predominance requirement, as the proposed Class and subclass are "sufficiently cohesive to warrant adjudication by representation," because of the legal and factual questions, "qualify each class member's case as a genuine controversy." *Thomas v. Baca*, 231 F.R.D. 397, 402 (C.D. Cal. 2005) (quoting *Amchem*, 521 U.S. at 623). A

-12-

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

"central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will help achieve judicial economy.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting *Zinser, supra*, 253 F.3d at 1189). Thus, courts must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative, rather than on an individual basis." Charles Alan Wright, *et al., 7A Federal Practice and Procedure* § 1778 (3d ed. 2005).

In this case, Plaintiff has alleged not just a single common issue, but several. These questions of law and fact include, but are not limited to, the following:

- Whether Plaintiffs and the Class consented to the use of their names, photographs, likenesses, or identities in Sponsored Story advertisements.

- Whether FACEBOOK gained a commercial benefit by using Plaintiff and the Class' names, photographs, likenesses in Sponsored Stories advertisements.

- Whether Class Members are entitled to damages as a result of FACEBOOK's conduct, and, if so, what is the measure of those damages.

- Whether Sponsored Stories are ads. Plaintiffs contended that they are, Facebook denied in this litigation that they are ads.[11]

- Whether FACEBOOK's conduct described herein violated California Civil Code § 3344 and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.).

Any one of these common questions is sufficient to establish commonality in this action. Together, they overwhelmingly satisfy Rule 23(a)(2).

---

[11] Facebook in response to Request For Admission, No. 6 [1.6], Set 1 Facebook denied "that Sponsored Stories are advertisements for members.") Ex. 22. Jim Squires of Facebook testified: "Yes, Sponsored Stories are not ads. I'm not sure what the distinction is to members, advertisers, or anybody else. Sponsored Stories are not advertisements period." Ex. 23, p. 33.

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

**C.     Adequacy of Representation.**

The final requirement of Rule 23(a), adequacy of representation, is also satisfied. Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." *Hanlon, supra,* 150 F.3d at 1020. The adequacy of representation issue focuses on whether the plaintiff's attorney is qualified to conduct the proposed litigation and whether the plaintiff's interests are antagonistic to the interests of the class. *Marr v. E. State Hosp.,* 2002 U.S. Dist. LEXIS 28460, *15 (E.D. Wash. Apr. 29, 2002). Plaintiffs have hired experienced class counsel to prosecute the action. As set forth more fully below, The Arns Law Firm and its lawyers, Robert S. Arns, Jonathan E. Davis, Steven R. Weinmann, Kevin M. Osborne, and Robert C. Foss are experienced in class action cases. Arns Decl., ¶¶29-39. Jonathan M. Jaffe, the other Class Counsel, is uniquely qualified to address the issues raised in this case. *See* Arns Decl., ¶39.

Second, Plaintiffs' interests are co-extensive with those of the Class. Plaintiffs had Sponsored Stories ads created about them and were not asked for their consent nor were they paid for appearing in such ads, as were all other class members. Plaintiffs seek relief that is identical to the relief sought by members of the class. Plaintiffs do not have any conflicts with the other members of the Class. Rather, they have exactly the same incentives to prove their cases as do the other Class members, and their interests are thus perfectly aligned and Plaintiffs clearly are adequate representatives of the Class. Plaintiffs and their counsel have shown, through their prosecution of this action and negotiation of this proposed settlement, that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Proposed Settlement Class Meets the Requirements of Rule 23(b) (3).

**D.   A Class Action is the Superior Means of Adjudication**

Rule 23(b)(3) requires that a court determine whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23 (b)(3). "A plaintiff can satisfy the superiority requirement when he or she can show that 'class-

-14-

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

wide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 488 (N.D. Cal. 2011), (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "In order to make this determination, the Court should consider the following factors: 'the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; the difficulties likely to be encountered in the management of a class action.' Fed. R. Civ. P. 23(b)(3)(A)-(D)." *Wolph*, 272 F.R.D. at 488; *accord Leuthold v. Destination Am. Inc.*, 224 F.R.D.462, 469 (N.D. Cal. 2004).

A class action is also superior to any alternatives because "few potential class members could afford to undertake individual litigation against [Defendant] to recover relatively modest damages." *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004); *accord*, *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010). Furthermore, to the extent that individuals would bring suit if class certification would be denied, judicial economy and efficiency, and the risk of inconsistent verdicts, all weigh in favor of class certification. The courts do not need millions of individual actions burdening their dockets. A key part of the relief sought in this case is injunctive relief in the form of an injunction requiring Facebook to make significant changes to its practices with regard to securing consent from both adults and minors. It is obviously crucial that Facebook be directed to make only one set of changes. Prosecution of Plaintiffs' claims on a class wide basis is the only viable means to resolve Plaintiffs' and other Class members' claims, and the Court should certify this action.

### E.   Nationwide Certification

A nationwide class is plainly appropriate in the circumstances. California law is specifically made applicable to all claims against Facebook under the user agreement. Exs. 18, 20, 21, Section 15.1. The claims in this case are based upon violation of a pair of California

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

laws, which pursuant to Facebook's Terms are applicable to all Class Members across the country.  In *Wash. Mutual Bank, FA v. Super. Court*, 24 Cal. 4th 906, 921 (2001), the California Supreme Court established that courts must enforce a California choice of law as to a nationwide class so long as "the chosen state has a substantial relationship to the parties or their transactions."

Here, California has a substantial relationship to the parties – since Facebook is headquartered in California – and because the challenged practices were implemented at Facebook's California headquarters.  "Where the defendant is a California corporation and some or all of the challenged conduct emanates from California," it is proper to apply California statutes to non-California members of a nationwide class. *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 243 (2001).  California has an interest in preventing unlawful, unfair, or fraudulent behavior from originating in California.  *Diamond Multimedia Sys., Inc. v. Super. Court*, 19 Cal. 4th 1036 (1999) (out of state plaintiffs can sue for actions originating in California).  Accordingly, nationwide certification is proper.

### F.    Appointment of Class Counsel Under Rule 23(g).

In connection with any order certifying a class, Rule 23(g)  requires that the Court formally appoint Class Counsel.  The Arns Law Firm consists of eight attorneys, five of who, Robert Arns, Steven Weinmann, Jonathan Davis, Kevin Osborne and Robert Foss, work on class action cases as a significant amount of their practices. *See* Arns Decl., ¶¶29-39.  All five Arns class action attorneys were also engaged in the litigation of a significant pending class action in the Northern District of California against a major bank, also involving UCL claims.  The Arns Law Firm concluded another nationwide class action case during the pendency of this lawsuit, and have commenced and continued to litigate a third, complex action involving some 64 clients.  Arns Decl., ¶¶32-33.  Robert Arns, Jonathan Davis, and Steven Weinmann all litigated an action against The Home Depot and a related company for wage and hour claims,

-16-

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS

Case 3:11-cv-01726-RS Document 142 Filed 06/10/13 Page 21 of 21

which resulted in a multimillion-dollar settlement. *Id.* The Arns firm is also presently part of a group of lawyers litigating four separate class actions against skilled nursing facility chains. *Id.*

Jonathan M. Jaffe, of co-counsel Jonathan M. Jaffe Law, has extensive experience in the field of computer software systems design, data privacy and data security, which amply qualifies him to deal with the complex technical issues raised in this case. Arns Decl. ¶39. He has also recently worked on several other class actions, dealing primarily with electronic discovery issues for these matters. *Id.*

## V.  CONCLUSION

For all the foregoing reasons, the Plaintiffs' Motion for Class Certification, Appointment of Class Counsel and Appointment of Class Representatives Pursuant to Motion for Preliminary Approval of the Settlement should be granted, the proposed Class and sub-Class should be certified for settlement purposes, Susan Mainzer, James Duval and W.T. should be appointed as class representatives, and The Arns Law Firm and Jonathan M. Jaffe appointed Class Counsel.

THE ARNS LAW FIRM

By: _____
Robert S. Arns
Jonathan E. Davis
Steven R. Weinmann

JONATHAN JAFFE LAW

By:  /s/ Jonathan M. Jaffe_____
JONATHAN M. JAFFE
Attorneys for Plaintiffs

-17-

PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS COUNSEL AND APPOINTMENT OF CLASS REPRESENTATIVES PURSUANT TO MOTION FOR PRELIMINARY APPROVAL
CASE NO. CV 11-01726 RS