1   COOLEY LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   MATTHEW D. BROWN (196972) (brownmd@cooley.com)
    JEFFREY M. GUTKIN (216083) (jgutkin@cooley.com)
3   101 California Street, 5th Floor
    San Francisco, CA  94111-5800
4   Telephone:     (415) 693-2000
    Facsimile:      (415) 693-2222
5
    Attorneys for Defendant FACEBOOK, INC.
6

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11

12   ANGEL FRALEY; PAUL WANG; SUSAN          Case No. 11-cv-01726 RS
     MAINZER; JAMES H. DUVAL, a minor, by
13   and through JAMES DUVAL, as Guardian ad **FACEBOOK, INC.'S OPPOSITION TO**
     Litem; and W.T., a minor, by and through **PLAINTIFFS' MOTION FOR ATTORNEYS'**
14   RUSSELL TAIT, as Guardian ad Litem;     **FEES AND COSTS**
     individually and on behalf of all others
15   similarly situated,                     **DATE:**         June 28, 2013
                                             **TIME:**         10:00 a.m.
16                    Plaintiffs,            **DEPT.:**         3
                                             **JUDGE:**        Hon. Richard Seeborg
17         v.

18   FACEBOOK, INC., a corporation; and
     DOES 1-100,
19
                      Defendant.
20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

TABLE OF CONTENTS

PAGE(S)

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 2

        A.      The Relief Provided by the Settlement ............................................... 2

        B.      Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs ................ 3

III.    ARGUMENT ................................................................................................. 4

        A.      The Court Should Calculate Attorneys' Fees Using the Lodestar Method............ 4

        B.      Plaintiffs' Counsel's Claimed Hours Are Excessive ........................... 7

                1.      Plaintiffs' Counsel's submitted records are inadequate and fail to
                        justify the fees they seek ..................................................... 8

                2.      Plaintiffs' Counsel's total hours are excessive........................... 10

                3.      Plaintiffs' Counsel's records suggest a failure to delegate tasks
                        appropriately ........................................................................ 11

                4.      Plaintiffs' Counsel seek compensation for unnecessary and
                        duplicative work................................................................... 13

                5.      Plaintiffs' Counsel's claimed hours for internal meetings should be
                        reduced .............................................................................. 14

                6.      Plaintiffs' Counsel cannot recover attorneys' fees for their work in
                        seeking attorneys' fees, which provides no benefit to the class.............. 15

        C.      Plaintiffs' Counsel's Claimed Billing Rates Are Excessive ................. 16

                1.      The Court should not accept claimed billing rates without
                        supporting evidence ............................................................. 16

                2.      Plaintiffs' Counsel's claimed hourly rates are unreasonably high........... 17

        D.      No Lodestar Enhancement Is Justified or Should Be Allowed............................ 20

        E.      The Court Should Award Plaintiffs' Counsel Fees in an Amount
                Significantly Less than Requested .................................................... 22

IV.     CONCLUSION ............................................................................................ 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Armstrong v. Davis*,
318 F.3d 965 (9th Cir. 2003)................................................................. 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)................................................................... 6

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008)................................................................. 16

*Chalmers v. Los Angeles*,
796 F.2d 1205 (9th Cir. 1986)............................................................... 10

*Chavez v. Netflix, Inc.*
162 Cal. App. 4th 43 (2008) ........................................................... 7, 14

*Chrapliwy v. Uniroyal, Inc.*,
670 F.2d 760 (7th Cir. 1982)................................................................. 20

*Christian Research Inst. v. Alnor*,
165 Cal. App. 4th 1315 (2008) ........................................................ 11, 22

*City of Burlington v. Dague*,
505 U.S. 557 (1992).............................................................................. 21

*Common Cause v. Jones*,
235 F. Supp. 2d 1076 (C.D. Cal. 2002) ................................................. 22

*Consumer Privacy Cases*,
175 Cal. App. 4th 545 (2009) ......................................................... 5, 7, 21

*Contreras v. City of L.A.*,
No. 2:11-CV-1480-SVW, 2013 WL 1296763 (C.D. Cal. Mar. 28, 2013)................. 16, 18, 19

*Denevi v. Green Valley Corp.*,
2005 Cal. App. Unpub. LEXIS 578 (Cal. App. Jan. 21, 2005)............................... 6

*Dunk v. Ford Motor Co.*,
48 Cal. App. 4th 1794 (1996) ................................................................. 6

*Erie Railroad Co. v. Tompkins*,
304 U.S. 64 (1938)................................................................................. 9

*Fischer v. SJB-P.D. Inc.*,
214 F.3d 1115 (9th Cir. 2000)................................................................. 9

*Flores v. Amlyn Pharm., Inc.*,
   No. 08CV1652 L(CAB), 2010 WL 2978164 (S.D. Cal. July 26, 2010).................................. 9

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   886 F.2d 1545 (9th Cir. 1989) ............................................................................................ 10

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
   No. 08-cv-1992 AJB (MDD), 2013 WL 410103 (S.D. Cal. Feb. 1, 2013)........................... 20

*Gilbert v. Master Washer & Stamping Co.*,
   87 Cal. App. 4th 212 (2001) ................................................................................................. 6

*Graham v. DaimlerChrysler Corp.*,
   34 Cal. 4th 553 (2004) ......................................................................................................... 5

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ................. 7

*Hensley v. Eckhart*,
   461 U.S. 424 (1983) ...................................................................................................... 13, 14

*Intel Corp. v. Terabyte Int'l., Inc.*,
   6 F.3d 614 (9th Cir. 1993) .................................................................................................... 9

*Jones v. Metro. Life Ins. Co.*,
   845 F. Supp. 2d 1016 (N.D. Cal. 2012) ............................................................................... 15

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) .............................................................................................. passim

*Kinney v. Int'l Bhd. of Elec. Workers*,
   939 F.2d 690 (9th Cir. 1991) ............................................................................................... 10

*Ko v. Natura Pet Prods., Inc.*,
   C 09-02619 SBA, 2012 WL 3945541 (N.D. Cal. Sept. 10, 2012)................................... 10, 18

*Kona Enters., Inc. v. Estate of Bishop*,
   229 F.3d 877 (9th Cir. 2000).................................................................................................. 5

*Lealao v. Beneficial Cal., Inc.*,
   82 Cal. App. 4th 19 (2000) ................................................................................................ 6, 7

*In re LivingSocial Mktg. & Sales Practice Litig.*,
   11-CV-0745, 2013 WL 1181489 (D.D.C. Mar. 22, 2013) .................................................. 16

*Loretz v. Regal Stone, Ltd.*,
   756 F. Supp. 2d 1203 (N.D. Cal 2010) .................................................................................. 5

*MacDougal v. Catalyst Nightclub*,
   58 F. Supp. 2d 1101 (N.D. Cal. 1999) ................................................................................. 13

*Macias v. Hartwell*,
   55 Cal. App. 4th 669 (1997) ................................................................................ 9

*Mangold v. Cal. Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995).................................................................................. 5

*Martino v. Denevi*,
   182 Cal. App. 3d 553 (1986)................................................................................... 9

*Pabst v. Genesco Inc.*,
   No. C11-01592 SI, 2012 WL 3987287 (N.D. Cal. Sept. 11, 2012)................................. 19, 20

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989).................................................................................. 6

*Petersen v. Lowe's Hiw, Inc.*,
   No. C 11-01996, 2012 U.S. Dist. LEXIS 123018 (N.D. Cal. Aug. 24, 2012)................... 4, 5

*PLCM Grp., Inc. v. Drexler*,
   22 Cal. App. 4th 1084 (2000) ........................................................................... 5, 14, 20

*In re Providian Credit Card Cases*,
   No. A097482, 2003 WL 23002628 (Cal. App. Dec. 22, 2003) ................................. 6

*Robertson v. Fleetwood Travel Trailers*,
   144 Cal. App. 4th 785 (2006) ................................................................................ 8

*Sealy, Inc. v. Easy Living, Inc.*,
   743 F.2d 1378 (9th Cir. 1984)............................................................................... 22

*Serrano v. Priest*,
   20 Cal. 3d 25 (1977) .................................................................................... passim

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) ...................................................................................... 15, 22

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990)............................................................................... 6

*Stonebrae, L.P. v. Toll Bros., Inc.*,
   C-08-0221-EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011), *aff'd*, 11-16161, 2013
   WL 1277425 (9th Cir. Mar. 29, 2013) ................................................................... 14

*Sutter Health Uninsured Pricing Cases*,
   171 Cal. App. 4th 495, 499-500, 503 (2009) ........................................................... 7

*Thayer v. Wells Fargo Bank*,
   92 Cal. App. 4th 819 (2001) .......................................................................... 22, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*,
   731 F. Supp. 2d 937 (N.D. Cal. 2010) ................................................................. 17

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
   971 F.2d 244 (9th Cir. 1992)................................................................................ 6

*United States v. 12,248 U.S. Currency*,
   957 F.2d 1513 (9th Cir. 1992)............................................................................. 9

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)............................................................................... 15

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007)......................................................................... 15, 16

*Wren v. RGIS Inventory Specialists*,
   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)............................. 8, 14, 23

*Yeager v. Bowlin*,
   2:08-102 WBS, 2010 WL 2303273 (E.D. Cal. June 7, 2010), *aff'd*, 495 F. App'x 780
   (9th Cir. 2012)................................................................................................ 13

*Zucker v. Occidental Petroleum Corp.*,
   968 F. Supp. 1396 (C.D. Cal. 1997), *aff'd*, 192 F.3d 1323 (9th Cir. 1999)............... 11, 12, 13

**OTHER AUTHORITIES**

Alan Hirsch and Diane Sheehey, Federal Judicial Center, *Awarding Attorneys' Fees and
   Managing Fee Litigation*, 2d ed. 2005.................................................................. 15

California Rule of Court 8.1115(a) ....................................................................... 6

Civil Local Rule 3-4(e) ....................................................................................... 6

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    **I.     INTRODUCTION**

2         Plaintiffs' Counsel's Motion ("Motion" or "Request") asks the Court to award $7.5

3    million in attorneys' fees from the common settlement fund (the "Settlement Fund").  Plaintiffs'

4    Counsel deserve a substantial fee for their work leading to this Settlement.[1]   Despite the

5    weaknesses in the claims they raised, Plaintiffs' Counsel's skillful advocacy allowed the Class to

6    obtain an eight-figure settlement (in addition to the significant injunctive relief).  The Settlement

7    provides real and tangible benefits to Class Members and is altogether fair, reasonable, and

8    adequate.  Nonetheless, under the appropriate standards for assessing the reasonableness of a fee

9    award, a meaningful reduction to the amount Plaintiffs' Counsel seek to recover is warranted.

10        Plaintiffs' Counsel seek fees as a percentage of the common fund, but California law,

11   which applies in this diversity-jurisdiction case, requires that the Court calculate fees using the

12   lodestar method.  Evaluated under the lodestar method, the Request is too high and lacks adequate

13   foundation.   Plaintiffs' Counsel's claimed hours appear excessive—for example, the senior

14   partner's time accounts for nearly 40 percent of Plaintiffs' Counsel's total hours and over 57

15   percent of their $5.391 million (unadjusted) total lodestar—and their time records suggest a

16   failure to appropriately delegate tasks to more junior attorneys working at lower hourly rates.

17   Further, Plaintiffs' Counsel collectively dedicated hundreds, if not thousands, of unnecessary

18   hours to duplicative work, including over a thousand hours of internal meetings and needlessly

19   redundant attendance at depositions.

20        Plaintiffs' Counsel also have failed to provide adequate evidence to justify their claimed

21   hourly rates, which include $950 per hour for partner Robert Arns and $425 per hour for Jonathan

22   Jaffe, a solo practitioner who was fresh out of law school when this case commenced.  Not only

23   have Plaintiffs' Counsel failed to show that anyone has paid or would pay them at these rates,

24   their expert's declaration shows that their claimed rates are beyond market rates for similar

25   services.  Plaintiffs' Counsel's request to enhance their already-inflated lodestar with a 1.391

26   multiplier should also be rejected, as the factors they cite (and the facts at hand) do not merit a fee

27

28   ---

[1] Capitalized terms in this memorandum that are not defined herein have the same definition as used in the Amended Settlement Agreement and Release (Dkt. 235-1).

1.

enhancement here.

The Settlement does not require Facebook to oppose Plaintiffs' Counsel's Motion, and the amount of money Facebook will pay pursuant to the Settlement is unaffected by the size of their attorneys' fees award. While Plaintiffs' Counsel's work on this case resulted in substantial relief for the Class, the law requires that their fee award be reasonable. For the reasons discussed below, Facebook respectfully submits that the Court should reduce Plaintiffs' Counsel's Request, and that a fee award around $3.0 million to $3.5 million would be reasonable compensation for procuring a Settlement that both sides firmly agree deserves the Court's approval.

**II.    BACKGROUND**

**A.    The Relief Provided by the Settlement.**

The Settlement is the product of an extensive and lengthy arms-length, supervised negotiation, which transpired after over a year of hard-fought litigation that lasted up to the eve of the class certification hearing. By any measure the Settlement is fair, reasonable, and adequate. But these attributes are particularly apparent given the circumstances presented here, including the inherent weaknesses in Plaintiffs' claims and the uncertainty they faced if litigation continued.

At a very high level, the Settlement will afford substantial benefits to Class Members. Facebook will pay twenty million dollars ($20,000,000) to a Settlement Fund, which will provide direct monetary payments to Class Members who submitted valid claims (over six hundred thousand claims have been made, and the Parties agree it is appropriate for the Court to exercise its discretion to increase per capita distributions from $10 to $15 so as to provide claimants additional monetary relief). (*See* Joint Motion for Preliminary Approval of Revised Settlement, Ex. 1 ("S.A.") (Dkt. 235-1) §§ 2.2–2.4.) The Settlement also authorizes *Cy Pres* Relief to nonprofit industry watchdog and advocacy organizations. (*See id.*) These organizations advance the very interests raised in the case, including advocacy and education regarding online privacy, particularly for minors. Moreover, Facebook has agreed to implement sweeping changes to its site, including enhanced disclosures and innovative new User tools that will give Class Members (and minor Class Members' parents) significant additional transparency into and control over how their social actions may be used in connection with commercial or sponsored content. (*See*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1   Mot. for Preliminary Approval of Revised Settlement (Dkt. 240) at 11-12.)   Finally, the

2   Settlement is not conditioned on an award of attorneys' fees or costs in any particular amount,

3   and an award will not affect the amount Facebook has agreed to pay as part of the Settlement.

4   (S.A. §§ 2.5, 2.7.)   Altogether, the Settlement provides a robust package of relief that offers

5   exceptionally fair, reasonable, and adequate compensation to all Class Members.

6          **B.      Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs.**

7          Plaintiffs' Counsel seek $7,500,000 in fees and $282,566.39 in costs out of the Settlement

8   Fund.   Relying almost exclusively on federal authority, they seek to justify their Request using

9   the "percentage-of-recovery" method ("percentage method" or "percentage approach").   (*See*

10  Mot. 19-20.)   They assert that the total value recovered should include both the value of the

11  Settlement Fund ($20 million) and the injunctive relief (which they estimate is between $57.4

12  million and $226 million).   (*Id.*)   They claim that their requested $7.5 million in fees amounts to

13  either 9.6 percent, 4.5 percent, or an even smaller percent of the common fund, depending on

14  various expert valuations of the injunctive relief.   (*See id.*)   As a cross-check on the purported

15  reasonableness of their Request, Plaintiffs' Counsel calculate their unadjusted lodestar (i.e., the

16  hours they have expended multiplied by their claimed hourly rates) as $5,391,030.   (*Id.* 36.)   The

17  $7.5 million in requested fees amounts to a 1.391 multiplier, which they argue is "more than

18  reasonable" compared to multipliers in other fee awards approved in the Ninth Circuit.   (*Id.* 37.)

19         Plaintiffs' Counsel have submitted a summary of the hours they claim to have worked on

20  this case—8,346.6 hours in total—broken down into "ten task categories."   (*See* Decl. of Robert

21  S. Arns I/S/O Mot. for Attorneys' Fees and Costs and Class Representatives' Service Awards

22  ("Arns Decl.") (Dkt. 254), Exs. 7-9; Decl. of Jonathan M. Jaffe I/S/O Mot. for Attorneys' Fees

23  and Costs and Class Representatives' Service Awards ("Jaffe Decl.") (Dkt. 256) ¶ 15.)

24         Plaintiffs' Counsel claim hourly billing rates ranging from $350 per hour for a second-

25  year associate to $950 per hour for lead counsel Robert Arns.   (*See* Arns Decl. ¶¶ 19, 28-31; *id.*

26  Ex. 7; Jaffe Decl. ¶ 16.)   In support of these rates, they have provided curriculum vitae for each of

27  the six attorneys for whom they are seeking fees (*see* Arns Decl. Exs. 2-6), as well as an expert

28  declaration from Richard M. Pearl.   (*See* Decl. of Richard M. Pearl I/S/O Mot. for Attorneys'

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1   Fees and Costs and Class Representatives' Service Awards (Dkt. 255) ("Pearl Decl.").)

2   **III.   ARGUMENT**

3          As an initial matter, Plaintiffs' Counsel argue their Motion under federal law, using the

4   percentage method.  But California law governs in this diversity action and, under California law,

5   courts use the lodestar approach to calculate attorneys' fees.

6          Plaintiffs' Counsel bear the burden of demonstrating the reasonableness of their claimed

7   hours and rates, a burden their Motion fails to carry.  First, Plaintiffs' Counsel rely on time

8   summaries broken down into broad "task categories," which fail to substantiate that the hours

9   Plaintiffs' Counsel claim are reasonable.  The time summaries suggest that Plaintiffs' Counsel

10  worked inefficiently, claimed hours for duplicative work, and failed to delegate tasks to more

11  junior members of the team.  Second, Plaintiffs' Counsel have not submitted evidence that the

12  rates they claim are their actual billing rates.  Instead they rely on an expert declaration that does

13  not establish that the rates it lists are for attorneys performing work similar to Plaintiffs'

14  Counsel's work here.  In any case, the declaration actually suggests that Plaintiffs' Counsel's

15  claimed rates are above market rates.  Finally, Plaintiffs' Counsel's argument for an enhancement

16  to their lodestar should be rejected, as a fee enhancement here is unjustified under accepted

17  standards.

18          **A.      The Court Should Calculate Attorneys' Fees Using the Lodestar Method.**

19          Relying on federal law, Plaintiffs' Counsel use the percentage-of-recovery approach as the

20  basis for their fee calculation, with a lodestar employed only as a cross-check.  Plaintiffs'

21  Counsel's approach inverts California law, under which the Court should employ the lodestar

22  method to calculate attorneys' fees and may only consider the percentage of recovery as a cross-

23  check on the lodestar and as a factor in determining whether an enhancement should be applied.

24          California law—not federal law—governs the calculation of Plaintiffs' Counsel's fees.

25  Subject-matter jurisdiction here is based on diversity.  (Notice of Removal of Action Under 28

26  U.S.C. §§ 1332(d), 1446, and 1453(b) (Dkt. 1) ¶ 4; Second Amended Class Action Complaint for

27  Damages ("SAC") (Dkt. 22) ¶ 4.)  Therefore, "[t]he availability and amount of the fee award are

28  considered substantive issues of state law for *Erie* purposes."  *Petersen v. Lowe's Hiw, Inc.*, No.

Cooley LLP
Attorneys At Law
San Francisco

4.

**Facebook's Opp'n to Plaintiffs' Counsel's
Motion For Attorneys' Fees and Costs
Case No. 11-cv-01726 RS**

1  C 11-01996, 2012 U.S. Dist. LEXIS 123018, at *5 (N.D. Cal. Aug. 24, 2012); *see Kona Enters.,*
2  *Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000) ("A federal court sitting in diversity
3  applies the law of the forum state regarding an award of attorneys' fees"); *Mangold v. Cal. Pub.*
4  *Utils. Comm'n*, 67 F.3d 1470, 1478-79 (9th Cir. 1995) ("Ninth Circuit precedent has applied state
5  law in determining not only the right to fees, but also in the method of calculating the fees.").
6  California law on attorneys' fee awards applies even when fees are sought as a part of a class
7  action settlement, including where such fees are sought out of a common fund. *See Petersen*,
8  2012 U.S. Dist. LEXIS 123018, at *5 (holding in common fund settlement that amount of fee
9  award is a substantive issue of state law for *Erie* purposes); *Loretz v. Regal Stone, Ltd.*, 756 F.
10  Supp. 2d 1203, 1209 (N.D. Cal. 2010) (noting, in class action settlement, that "[w]here California
11  law governs the claim, it also governs the award of attorneys' fees").

12          Under California law, "a court assessing attorney fees begins with a touchstone or lodestar
13  figure, based on the careful compilation of the time spent and reasonable hourly compensation of
14  each attorney." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004) (internal
15  quotation omitted); *Serrano v. Priest*, 20 Cal. 3d 25, 48 n.23 (1977) ("The starting point of *every*
16  fee award . . . must be a calculation of the attorney's services in terms of the time he has
17  expended," which is the only approach "that can claim objectivity.") (italics added and quotation
18  omitted).  Thus, in awarding fees pursuant to a class action settlement, "[t]he fee setting inquiry
19  . . . ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied
20  by the reasonable hourly rate." *Loretz*, 756 F. Supp. 2d at 1209 (quoting *PLCM Grp., Inc. v.*
21  *Drexler*, 22 Cal. App. 4th 1084, 1095 (2000)); *Consumer Privacy Cases*, 175 Cal. App. 4th 545,
22  556 (2009) (affirming fee award under lodestar method in class action common fund settlement
23  and noting that "the primary method for establishing the amount of reasonable attorney fees is the
24  lodestar method") (internal quotation omitted).  Only after calculating the lodestar may the court
25  look at what percentage of the common fund the lodestar-calculated fees amount to; but only in
26  some circumstances, as a factor in determining whether the lodestar calculation is reasonable.
27  *Consumer Privacy*, 175 Cal. App. 4th at 556-57 ("Under certain circumstances, a lodestar
28  calculation may be enhanced on the basis of a percentage-of-the-benefit analysis," which

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1    functions as "an objective determination of the value of the attorney's services, ensuring that the

2    amount awarded is not arbitrary.").[2]

3          Before the California Supreme Court's 1977 decision in *Serrano*, courts could award a

4    percentage of the recovery in common fund cases, but post-*Serrano*, the "percentage of a

5    'common fund' recovery is of questionable validity in California." *Dunk v. Ford Motor Co.*, 48

6    Cal. App. 4th 1794, 1809 (1996) (rejecting a common fund fee award under the percentage

7    approach and citing authority); *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 27 (2000)

8    ("Prior to . . . *Serrano III*, California courts could award a percentage fee in a common fund case.

9    After *Serrano III*, it is not clear whether this may still be done." (citations omitted)); *Denevi v.*

10   *Green Valley Corp.*, 2005 Cal. App. Unpub. LEXIS 578, at *50-53 (Cal. App. Jan. 21, 2005)

11   ("While it was certainly once true that a court could measure an attorney-fee award in a common-

12   fund case using the percentage-of-recovery method, it is unclear whether this is still true.")

13   (internal citations omitted); *In re Providian Credit Card Cases*, No. A097482, 2003 WL

14   23002628, at *7 (Cal. App. Dec. 22, 2003) ("Co-Lead Counsel cite no post-*Serrano* case, and we

15   have found none, approving an award of fees calculated based on the percentage of recovery in a

16   common fund case.").[3]

17

18   [2] Even under federal law, "[w]here a settlement produces a common fund for the benefit of the

19   entire class, courts have discretion to employ either the lodestar method or the percentage-of-
     recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.

20   2011). The percentage method means that the court simply awards a percentage of the fund
     sufficient to provide class counsel with a reasonable fee. *Paul, Johnson, Alston & Hunt v.*

21   *Graulty,* 886 F.2d 268, 272 (9th Cir. 1989). This circuit has established 25% of the common fund
     as a benchmark award for attorney fees under the percentage method. *Six (6) Mexican Workers v.*

22   *Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990).

23   [3] While Facebook is aware that Civil Local Rule 3-4(e) and California Rule of Court 8.1115(a)
     would not allow citation to *Denevi* and *In re Providian Credit Card Cases*, because the holdings

24   of these cases provide the Court a more accurate picture of the current state of California law,
     Facebook respectfully submits that it may take judicial notice of these opinions. *See United*

25   *States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.
     1992) ("[W]e may take judicial notice of proceedings in other courts, both within and without the

26   federal judicial system, if those proceedings have a direct relation to matters at issue."); *see also*

27   *Gilbert v. Master Washer & Stamping Co.*, 87 Cal. App. 4th 212, 218 n.14 (2001)
     (acknowledging California Rule of Court 8.1115(a) would prevent citation of an opinion but

28   taking judicial notice of the opinion under California law).

Cooley LLP
Attorneys At Law
San Francisco
        6.
Facebook's Opp'n to Plaintiffs' Counsel's
Motion For Attorneys' Fees and Costs
Case No. 11-CV-01726 RS

Following *Serrano*, California courts have *considered* the percentage approach when awarding fees in class action settlements, but only as a check on the initial lodestar or to justify an enhancement to the lodestar.[4]  *See Consumer Privacy*, 175 Cal. App. 4th at 557 (affirming fee award under lodestar method and stating courts may "'cross-check' or adjust the lodestar in comparison to a percentage of the common fund"); *Lealao*, 82 Cal. App. 4th at 49-50 (holding that percentage of recovery can be used to adjust the lodestar calculation); *see, e.g.*, *Chavez v. Netflix, Inc.* 162 Cal. App. 4th 43, 64-65 (2008) (affirming lodestar-calculated fee award in class settlement and considering percentage of the common fund "to establish a benchmark for determining the enhanced lodestar amount" and "to cross-check the fee award").  Even then, the percentage approach may be used only where "the class benefit can be monetized with a reasonable degree of certainty."  *Consumer Privacy*, 175 Cal. App. 4th at 557-58); *Lealao*, 82 Cal. App. 4th at 49-50 (the percentage method is proper as a lodestar enhancement only where "the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate"); *see also Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) (applying California law to award attorneys' fees under lodestar method in class action settlement and stating, "[i]n cases in which the class benefit can be monetized with a reasonable degree of certainty, a percentage of the benefit approach may be used to cross-check the lodestar calculation") (citing *Consumer Privacy*, 175 Cal. App. 4th at 557-58).

**B.    Plaintiffs' Counsel's Claimed Hours Are Excessive.**

The method for determining a reasonable fee award is to calculate the base, or "lodestar," by multiplying the number of hours *reasonably* spent by the *reasonable* hourly rate for each

---

[4] Facebook has not found any California case post-*Serrano* that employs a percentage-of-recovery calculation as the primary method of calculating attorneys' fees in a class action settlement.  In *Sutter Health Uninsured Pricing Cases*, 171 Cal. App. 4th 495, 499-500, 503 (2009), the court analyzed the fees under the percentage method first and used the lodestar method as a cross-check, but the exact amount of fees in that case ($4 million) had been negotiated as a part of the settlement agreement (which provided for $276 million in relief), and the court was merely assessing their reasonableness in the face of an objection, not *calculating* fees for the purpose of deciding an appropriate award.

Cooley LLP
Attorneys At Law
San Francisco

7.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1    attorney.  *See Serrano*, 20 Cal. 3d at 48.  In determining hours reasonably spent, "trial courts must

2    carefully review attorney documentation of hours expended; 'padding' in the form of inefficient

3    or duplicative efforts is not subject to compensation."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132

4    (2001).  Plaintiffs' Counsel's burden is to show that "fees incurred were reasonably necessary to

5    the conduct of the litigation, and were reasonable in amount."  *Robertson v. Fleetwood Travel*

6    *Trailers*, 144 Cal. App. 4th 785, 818 (2006); *see Wren v. RGIS Inventory Specialists*, No. C-06-

7    05778 JCS, 2011 WL 1230826, at *23 (N.D. Cal. Apr. 1, 2011) ("the party seeking fees bears the

8    initial burden of establishing that the fees and costs taxed were associated with the relief

9    requested and were reasonably necessary to achieve the results obtained.") (citation omitted).

10       Plaintiffs' Counsel's Motion does not provide sufficient support for their hours, and their

11   summaries reveal deficiencies that show, individually and collectively, that their $5,391,030

12   claimed unadjusted lodestar figure is too high.  In particular, Plaintiffs' Counsel (a) seek

13   compensation for an excessive number of hours for partner Robert Arns, including tasks a

14   reasonable senior partner should delegate to junior attorneys; (b) seek compensation for

15   unnecessary and duplicative work; (c) claim an inordinate number of hours for internal meetings,

16   totaling over $1.3 million of their requested fees; and (d) include in their Request hours spent

17   preparing their motion for attorneys' fees—an expense that should not be borne by the Class.

18          **1.    Plaintiffs' Counsel's submitted records are inadequate and fail to
                     justify the fees they seek.**
19

20       In support of their $7.5 million Request, Plaintiffs' Counsel have submitted a breakdown

21   of each attorney's time into ten broad categories of work performed.  (*See* Arns Decl. Ex. 7.)

22   Those categories include, for example, "Leg[a]l research, Case Review, and Memos" ($841,624

23   of the post-multiplier Request), "Drafting, Filing, Order Review, and Motion Preparation"

24   ($1,364,369 of the post-multiplier Request), and "Communication, Strategy Meetings and

25   Working Groups with Plaintiffs' Counsel" ($997,979 of the post-multiplier Request).  (*See* Arns

26   Decl. Ex. 7.)[5]

27

28   [5] The ten categories are: (1) "Leg[a]l research, Case Review, and Memos" (971.60 hours), (2)
     "Discovery Work, Document Review & File Organization" (1637.60 hours), (3)

While detailed billing records are not necessarily required, a court "must have 'substantial evidence' to support the fee award." *Flores v. Amlyn Pharm., Inc.*, No. 08CV1652 L(CAB), 2010 WL 2978164, at *2 (S.D. Cal. July 26, 2010) (quoting *Macias v. Hartwell*, 55 Cal. App. 4th 669, 676 (1997)).[6] Plaintiffs' Counsel's categorized summaries do not provide "substantial evidence" to support a $7.5 million award. *Intel Corp. v. Terabyte Int'l., Inc.*, 6 F.3d 614, 623 (9th Cir. 1993) (records should demonstrate "whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours."); *Martino v. Denevi*, 182 Cal. App. 3d 553, 558-59 (1986) (attorneys must "keep accurate records of the services they perform" and "[placing] the trial court . . . in the position of simply guessing at the actual value of the attorney's services . . . is unacceptable and cannot be the basis for an award of fees").

Plaintiffs' Counsel also did not consistently maintain contemporaneous time records. (*See* Arns Decl. ¶ 62 (Mr. Arns's time records were prepared "in part contemporaneously and in part by re-creation" and "time records of Jonathan Davis, Kevin Osborne, Steven Weinmann and Robert Foss were similarly prepared"); Jaffe Decl. ¶ 17 ("I kept track of the vast majority my time [sic] on a contemporaneous basis, while a handful of hours were re-created using emails and other indicia.").) The Ninth Circuit has "expressed a 'preference' for contemporaneous records," *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (quoting *United States v. 12,248 U.S. Currency*, 957 F.2d 1513, 1521 (9th Cir. 1992)), and has held that reconstructed records will

---

"Communication, Strategy Meetings and Working Groups with Plaintiffs' Counsel" (1045.80 hours), (4) "Correspondence & Meetings with Class Reps" (23.60 hours), (5) "Correspondence with Experts and Other Non-party Individuals" (225.50 hours), (6) "Depositions and Exhibit Preparations" (1233.00 hours), (7) "Drafting, Filing, Order Review, and Motion Preparation" (1775.90 hours), (8) "Correspondence with the Court, Appearances and Preparation for Appearances" (423.00 hours), (9) "Mediation, Settlement, and Related Preparation" (787.00 hours), and (10) "Meet & Confer, and Other Correspondence with Defendant" (223.60 hours). (*See* Arns Decl. Ex. 7.) Plaintiffs' Counsel have listed the same hourly totals in their Motion, albeit under task categories with slightly different titles. (*See* Mot. 18.)

[6] Facebook has not located authority regarding whether documentation submitted in support of a fee motion is properly considered a substantive or procedural issue under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and thus whether state or federal law governs this issue. Although the issue appears to be more properly categorized as procedural, Facebook has included citation to both federal and California authority on the issue of sufficiency of documentation.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1   suffice *only if* "supported by other evidence such as testimony or secondary documentation."

2   *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989).

3       Where billing records contain deficiencies, a court may properly reduce the proposed fee

4   award.  For example, in *Ko v. Natura Pet Products, Inc.*, C 09-02619 SBA, 2012 WL 3945541, at

5   *12-13 (N.D. Cal. Sept. 10, 2012), the court reduced class counsel's fee request by 28 percent

6   where billing records *that included narrative entries* lacked "sufficient detail to enable the Court

7   to determine whether the hours billed were justified."  *Id.*; *see also Chalmers v. Los Angeles*, 796

8   F.2d 1205, 1210 (9th Cir. 1986) ("hours may be reduced by the court where documentation of the

9   hours is inadequate").

10              **2.       Plaintiffs' Counsel's total hours are excessive.**

11      Plaintiffs' Counsel's time summaries suggest that they have dedicated an excessive

12  number of hours to this case.  Mr. Arns ($950 hourly rate) contributed an inordinate amount of

13  total hours relative to his colleagues.  Mr. Arns worked 3,261.1 hours on this case, representing

14  over *50 percent* of the Arns Law Firm's hours and *39 percent* of all of Plaintiffs' Counsel's hours

15  combined.  Mr. Arns claims over 1,200 more hours than the next highest of Plaintiffs' Counsel,

16  Jonathan Jaffe, and over three times as many hours as any other attorney at his firm.  (*See* Arns

17  Decl. Ex. 7.)

18      In terms of the sheer number of hours, this figure seems excessive.  3,261 hours is a

19  significant amount for any attorney to accrue to a single case over a 19 month period (from the

20  March 11, 2011 filing of the Complaint to the October 5, 2012 filing of the Revised Settlement).[7]

21  During that time, Mr. Arns averaged over 171 hours per month on this litigation.

22      Mr. Arns's 499.3 hours for "Mediation, Settlement, and Related Preparation" also seems

23  excessive.  These hours amount to twelve and a half weeks of work, assuming a 40-hour work

24  week.  If this category includes settlement and mediation briefing, Plaintiffs' Counsel's time

---

25  [7]  Plaintiffs had little (if any) work since the Parties filed their Joint Motion for Preliminary

26  Approval of Revised Settlement (Dkt. 235).  And, as discussed *infra*, they cannot recover for

    work on this Motion because fees will be awarded out of a common fund.  *Kinney v. Int'l Bhd. of*

27  *Elec. Workers*, 939 F.2d 690, 694 n.5 (9th Cir. 1991) ("Fees are not awarded for fee litigation in

    common fund cases because, rather than creating or preserving the common fund, the fee

28  litigation actually depletes it.").

summaries suggest that Mr. Arns—Plaintiffs' senior attorney—failed to appropriately delegate brief drafting to his team, since his 499.3 hours constitute 63% of all hours Plaintiffs' Counsel allocate to this category.  Plaintiffs' Counsel, however, have provided no indication as to what this 499.3-hour total ($474,335 in fees) represents, and one would assume that work on settlement approval motions would fall within "task categories" numbers one (legal research) and/or seven (motion preparation).  (*See* Arns Decl. Ex. 7.)

Additionally, Mr. Arns claims a substantial number of hours for discovery work: 1,438.1 total hours between "Discovery Work, Document Review & File Organization" and "Depositions and Exhibit Preparations."  (Arns Decl. Ex. 7, Categories 2 and 6.)  But discovery on this case did not begin until May 2011, when Plaintiffs served their first deposition notice, and it was completed at around the same time in 2012.  (Decl. of Matthew D. Brown I/S/O Opp. to Mot. for Attorneys' Fees and Costs and Class Representatives' Service Awards ("Brown Decl.") ¶ 3.)  Thus, during the roughly twelve months of discovery in this case, not all of which were active, Mr. Arns claims, on average, nearly 120 hours per month (over 27 hours per week) for discovery tasks alone.

Mr. Arns did not have to undertake these tasks, as he had other attorneys at his disposal, whose experience he highlights in his declaration.  (*See* Arns Decl. ¶¶ 20-32.)  Plaintiffs' Counsel should not be compensated for Mr. Arns's high number of hours and the failure to delegate to the other attorneys on his team.  *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1322 (2008) ("A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.") (quoting *Ketchum*, 24 Cal. 4th at 1137); *see Ketchum*, 24 Cal. 4th at 1132 ("'padding' in the form of inefficient or duplicative efforts is not subject to compensation").

### 3. Plaintiffs' Counsel's records suggest a failure to delegate tasks appropriately.

Beyond the large number of hours Mr. Arns claims overall, a closer look at his time summaries indicates that he claims many hours to tasks that could have been properly handled by less experienced, and thus less expensive, attorneys.  *See Zucker v. Occidental Petroleum Corp.*,

Cooley LLP
Attorneys At Law
San Francisco

11.

Facebook's Opp'n to Plaintiffs' Counsel's
Motion For Attorneys' Fees and Costs
Case No. 11-cv-01726 RS

968 F. Supp. 1396, 1402 (C.D. Cal. 1997) ("it appears that some of the work billed by senior Class counsel should have been delegated to attorneys who charge at lower rates"), *aff'd*, 192 F.3d 1323 (9th Cir. 1999).  For example, Mr. Arns spent 19 percent of his time (618.4 hours) on the task category "Depositions & Exhibit Preparation."  (*See* Arns Decl. Ex. 7, Category 6.) According to the deposition transcripts for the 21 depositions conducted in this case, Mr. Arns was present for all but one deposition, and he states that he prepared "for taking and defending virtually all of the twenty-one depositions."  (*See* Arns Decl. ¶ 2.)  By comparison, Cooley delegated deposition tasks—including both the taking and defending of depositions—to more junior members of the team, including associates.  (*See* Brown Decl. ¶ 7.)

Further, the title of the task category "Depositions and Exhibit Preparation" itself indicates that it encompasses activities that do not require the experience of a seasoned partner.  For example, Mr. Arns states that for each deposition "there was extensive pre-deposition preparation of exhibits, strategies, and questions" and that "a deposition extract was created, which summarized and analyzed the content generated from the deposition."  (Arns Decl. ¶ 39.)  While such activities may be compensable for paralegals and junior associates, the time summaries Plaintiffs' Counsel have submitted make it impossible to determine how, if at all, Mr. Arns delegated some of these relatively simpler tasks.

Additionally, Mr. Arns seeks to recover $778,715 in fees ($1,083,192 post-multiplier) for "Discovery Work, Document Review & File Organization,"[8] which represents more than 10 percent of the total amount of Plaintiffs' Counsel's Request.  (*See* Arns Decl. Ex. 7, Category 2.) Notably, this category appears to cover only document discovery and review; it does not even include depositions and exhibit preparation, which have their own category.  (*See id.*, Category 6.)  Mr. Arns's hours on such document discovery, document review, and file organization *account for over 50 percent of the total hours* Plaintiffs' Counsel claim to have worked in this category.  Yet Mr. Arns's hours far outnumber the hours spent on this category by junior associates Kevin Osborne ("three years of experience," 17.7 hours) and Robert Foss ("second-

---

[8]  Plaintiffs' Counsel's Motion labels this same category "Discovery, Document Review & Organization." (*See* Mot. 18.)

Cooley LLP
Attorneys At Law
San Francisco

12.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

year associate," 236.8 hours). (Arns Decl. ¶¶ 30-31, Ex. 7, Category 2.) Mr. Arns spent almost twice as many hours on document discovery as the next closest Plaintiffs' attorney, Jonathan Jaffe (15 months experience when litigation commenced, 443.8 hours). (*See id.*; Jaffe Decl. Ex. 1.) This misallocation of resources indicates a failure to appropriately delegate tasks and, given the absence of an alternative explanation for Mr. Arns's excessive work in this category, warrants a reduction to Plaintiffs' Counsel's Request. *See MacDougal v. Catalyst Nightclub*, 58 F. Supp. 2d 1101, 1106-07 (N.D. Cal. 1999) (reducing award where trial lawyer with 30 years experience billed for tasks that "could have been undertaken by less experienced associates"); *see also Yeager v. Bowlin*, 2:08-102 WBS, 2010 WL 2303273, at *7 (E.D. Cal. June 7, 2010) (reducing partner fees for time spent on paralegal tasks), *aff'd*, 495 F. App'x 780 (9th Cir. 2012).

Mr. Arns additionally claims high hourly totals for "Leg[a]l Research, Case Review, and Memos."[9] (*See* Arns Decl. Ex. 7, Category 1.) No attorney at the Arns Law Firm worked even one quarter of the 359.3 hours Mr. Arns claims for this task category, which amounts to $341,335 in fees alone. (*See id.*) While Jonathan Jaffe claims 416.2 hours for legal research, that tally appears far more reasonable given Mr. Jaffe's recent law school graduation. (*See* Jaffe Decl. Ex. 1.) But junior associates Robert Foss and Kevin Osborne at the Arns Law Firm accrued only 133.7 combined hours for legal research, well below half of the hours Mr. Arns claims. (*See* Arns Decl. Ex. 7, Catergory 1.) Given the team of junior attorneys Mr. Arns had at his disposal, it was unnecessary for him to conduct the lion's share of legal research. *See Zucker*, 968 F. Supp. at 1402 ("[L]egal research [is] a task that most certainly could have been tackled by an associate billing at a lower rate.").

### 4. Plaintiffs' Counsel seek compensation for unnecessary and duplicative work.

Throughout this litigation, Plaintiffs' Counsel engaged in duplicative work, including bringing numerous attorneys to depositions. These duplicative hours should be reduced. *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983) (fees should exclude "hours that are excessive, redundant,

---

[9] Plaintiffs' Motion labels this same category "Memoranda & Research." (*See* Mot. 18.)

or otherwise unnecessary"); *Ketchum*, 24 Cal. 4th at 1132 ("inefficient or duplicative efforts [are] not subject to compensation"); *see Chavez*, 162 Cal. App. 4th at 64 (deducting 200 hours for duplicative billing); *see also Wren*, 2011 WL 1230826, at *24 ("Class Counsel has exercised significant billing judgment by deducting 5,082 hours of recorded time to eliminate inefficiencies and other time entries that should not be claimed, thereby reducing the lodestar figure by $1,749,363.88, or 13.4%.").

Plaintiffs' Counsel brought three or more attorneys to eight of the 21 depositions taken in this case, including four attorneys at the deposition of Kent Schoen (compared to one Cooley attorney) and five attorneys at the deposition of Randolph Bucklin (compared, again, to one Cooley attorney). (*See* Brown Decl. ¶ 8.) By comparison, Cooley sent only one attorney to over half of the depositions, and only once sent more than two. (*Id.* ¶ 9.) Additionally, Cooley sent *associates* to take five of the ten depositions it handled in this case, whereas Mr. Arns was the primary questioner at all but one of the nine depositions Plaintiffs' Counsel took.[10] (*Id.* ¶ 7.)

Plaintiffs' Counsel's overlawyering of depositions has resulted in duplicative and unnecessary fees that Plaintiffs' Counsel now seek to recover from the common fund. The Court should reduce the lodestar to account for these inefficiencies. *PLCM*, 22 Cal. 4th at 1105 ("a trial court may simply reduce a fee award to account for inefficiency"); *see also, e.g.*, *Stonebrae, L.P. v. Toll Bros., Inc.*, C-08-0221-EMC, 2011 WL 1334444, at *13 (N.D. Cal. Apr. 7, 2011), *aff'd*, 11-16161, 2013 WL 1277425 (9th Cir. Mar. 29, 2013) (deducting 50% of hours claimed for depositions and hearings where "multiple attorneys attended").

**5.    Plaintiffs' Counsel's claimed hours for internal meetings should be reduced.**

Nearly 13 percent (1,045.6 hours) of the entire time accrued by Plaintiffs' Counsel is described as "Communication, Strategy Meetings and Working Groups with Plaintiffs' Counsel," (Arns Decl. Ex. 7, Category 3), which represents nearly $1 million ($997,979) of Plaintiffs' Counsel's claimed post-multiplier lodestar. Mr. Arns spent 482 hours in these internal strategy

---

[10] Facebook's in-house counsel attended certain depositions in an observational capacity. (*See* Brown Decl. ¶ 9.) Facebook is not including such attendance in these counts.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1   meetings, accounting for $636,938 of the post-enhancement lodestar.  (*Id.*)  Similarly, Jonathan

2   Davis attributes nearly 40 percent of his time to these internal strategy meetings, accounting for

3   $130,145 of the post-enhancement lodestar.  (*Id.*)

4   Plaintiffs' Counsel should be compensated only for work that "was both useful and of a

5   type ordinarily necessary to advance the . . . litigation."  *Jones v. Metro. Life Ins. Co.*, 845 F.

6   Supp. 2d 1016, 1023 (N.D. Cal. 2012) (quoting *Armstrong v. Davis*, 318 F.3d 965, 971 (9th Cir.

7   2003)).  Almost $1 million in internal strategy meetings over the course of 19 months of litigation

8   appears to be overkill.  *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007)

9   ("intra-office conferences [were] unnecessary and duplicative," particularly given attorneys'

10   "failure to provide a persuasive justification for the intra-office meetings").  Plaintiffs' Counsel

11   should not be awarded fees for over 1,000 hours of time spent talking to each other.  (*See* Arns

12   Decl. Ex. 7, Category 4.)

### 6.   Plaintiffs' Counsel cannot recover attorneys' fees for their work in seeking attorneys' fees, which provides no benefit to the class.

15   Plaintiffs' Counsel's total claimed hours presumably includes time spent drafting their

16   Motion, since they have not indicated that these hours have been excluded.  But when fees are

17   drawn from a common fund, as is the case here, "counsel [may] not be compensated for fee-

18   related services."  *Serrano v. Unruh*, 32 Cal. 3d 621, 626 (1982) ("*Serrano IV*") (discussing "the

19   prohibition of an award for fee-related services in common-fund cases"); *see also In re*

20   *Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (under federal

21   law, "[t]ime spent obtaining an attorneys' fee in common fund cases is not compensable because

22   it does not benefit the plaintiff class") (citations omitted); *see also* Alan Hirsch and Diane

23   Sheehey, Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 2d ed.

24   2005, at 75-76 ("[F]ees for time spent preparing the fee application and litigating fee disputes . . .

25   are not compensable in common fund cases.  Such efforts do not serve the beneficiaries.").

26   Therefore, Plaintiffs' Counsel cannot collect fees or costs associated with preparing and

27   defending this Request, and their fee award must be reduced accordingly.

28

Cooley LLP
Attorneys At Law
San Francisco

15.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1

### C.     Plaintiffs' Counsel's Claimed Billing Rates Are Excessive.

2

In addition to the significant number of hours claimed, Plaintiffs' Counsel seek fees based

3

on rates that appear excessive from top to bottom and are untethered to rates awarded for similar

4

work in the Bay Area legal market.  The law requires that courts determine a reasonable hourly

5

rate by looking to "the basic fee for comparable legal services in the community."  *Ketchum*, 24

6

Cal. 4th at 1140 (citing *Serrano*, 20 Cal. 3d at 141).  Although "the fee applicant must . . .

7

produce credible evidence that the requested rates meet this standard," Plaintiffs' Counsel have

8

done nothing to demonstrate that the "prevailing market rates" for similar legal services in the

9

Bay Area, or California generally, support the rates they claim.  *Contreras v. City of L.A.*, No.

10

2:11-CV-1480-SVW, 2013 WL 1296763, at *2 (C.D. Cal. Mar. 28, 2013) (citing *Camacho v.*

11

*Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)).  Instead, Plaintiffs' Counsel have relied

12

exclusively on an expert declaration that not only fails to demonstrate that the rates listed therein

13

are for comparable legal work in the market, but actually shows that the rates Plaintiffs' Counsel

14

claim are excessive.

15

### 1.     The Court should not accept *claimed* billing rates without supporting evidence.

16

17

As an initial matter, although Plaintiffs' Counsel characterize their stated rates as their

18

"billing rate[s]" (*see* Arns Decl. ¶ 19), they have not provided evidence that these rates are what

19

they "charge their paying clients."  *Welch*, 480 F.3d at 946 ("billing rates should be established by

20

reference to the fees that private attorneys of an ability and reputation comparable to that of

21

prevailing counsel charge their paying clients for legal work of similar complexity").  Plaintiffs'

22

Counsel have not declared, for example, that these are their *standard* billing rates or that they

23

have ever charged such rates to clients (assuming Plaintiffs' Counsel have had clients that pay

24

hourly rates—some of them may not).  Plaintiffs' Counsel are most likely "class action plaintiffs'

25

lawyers [who] are unconstrained by market forces; they do not regularly charge by the hour, they

26

have no clients to monitor their billings, and there is no real incentive to be efficient or to cut

27

hours or rates."  *In re LivingSocial Mktg. & Sales Practice Litig.*, 11-CV-0745, 2013 WL

28

1181489, at *18 (D.D.C. Mar. 22, 2013).  Therefore, the Court should not accept Plaintiffs'

16.

Counsel's *claimed* rates as the prevailing rates for similar legal services.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc*, 731 F. Supp. 2d 937, 945 (N.D. Cal. 2010) (determining fee award under California law and noting that "[t]o determine a reasonable hourly rate, the court disfavors reliance on *claimed* billing rates") (italics added).

### 2.   Plaintiffs' Counsel's claimed hourly rates are unreasonably high.

Not only have Plaintiffs' Counsel improperly relied on *claimed* rates, but those rates are well above prevailing market rates for similar services, and Plaintiffs' Counsel have failed to put forth support that their claimed rates are reasonable.  Instead, their sole evidence is the declaration of Richard M. Pearl.  Yet his summary of rates—based on other attorneys in other cases at other firms—contains nothing that would tether those rates to Plaintiffs' Counsel or to the market in which Plaintiffs' Counsel operate (*i.e.*, that they are market rates for similar attorneys providing similar services).[11]  But more importantly, the rates cited by Mr. Pearl actually demonstrate that Plaintiffs' Counsel's claimed rates are excessive.

Among the rates Plaintiffs' Counsel seek, the most excessive is for Mr. Arns, who flatly states: "My billing rate is $950 per hour."  (Arns Decl. ¶ 19.)  But Mr. Arns has provided no evidence that this is his *billing* rate, i.e., that he actually charges clients this rate.  Moreover, his reliance on Mr. Pearl's declaration to support this rate as reasonable is misplaced.  Not one of the cases Mr. Pearl cites support Mr. Arns's claimed rate.  (*See* Pearl Decl. at 5-7.)  Of the six 2012 cases Mr. Pearl lists, *none* awarded fees to any attorney at a $950 per hour rate and, in fact, three

---

[11] While Mr. Pearl lists rates in 23 cases from 2009 to 2012, which he declares were awarded by "various courts *for reasonably comparable services*" (Pearl Decl. at 4) (italics added), Mr. Pearl does not explain, in any way, how these cases are comparable to this case.  It appears they are not, as three of the six 2012 cases he discusses are described as a "Freedom of Information Act case," a "fee award for appellate work defending a prior fee award," and an "individual Fair Employment and Housing Act case."  (*Id*. at 5-6.)  In fact, Mr. Pearl has submitted a nearly identical declaration in another case, where he also declared that the same list of rates demonstrate "reasonably comparable services" to the services performed in that case.  *See*, *e.g.*, Decl. of Richard M. Pearl in Support of Motion for Attorneys' Fees ¶ 9, *Keys v. Budgetext Corp.*, No. 5:12-cv-05055-JLH (Dkt. 57-5) (W.D. Ark. Apr. 12, 2013), *available at* http://www.shulmanlawfirm.com/wp-content/uploads/2013/01/Declaration-of-Pearl-filed.pdf.
The Pearl declaration in *Keys* is substantively indistinguishable from his declaration here; in fact, 34 pages of that declaration are *exactly the same* as in his declaration here.  *Compare id*. at 4-27, *with* Pearl Decl. at 5-38.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   awarded fees *at lesser rates* to attorneys with *more* experience than Mr. Arns's 36 years.  (*Id.*)

2   Furthermore, out of <u>all</u> of the cases Mr. Pearl cites from 2009 through 2012, only *one* case

3   (*Credit/Debit Card Tying Cases*) awarded fees of more than $900 per hour, and it is entirely

4   distinguishable.[12]  (*Id.* at 10.)  Most of the cases listed by Mr. Pearl have top billing rates in the

5   $700-$850 per hour range.  (*Id.* at 5-14.)

6          Furthermore, in cases involving attorneys from small plaintiffs' firms comparable to the

7   Arns Law Firm and Jonathan Jaffe Law, California district courts have *rejected* senior partner

8   rates that are even *lower* than Mr. Arns's claimed rate.  For example, in *Ko*, 2012 WL 3945541,

9   the court rejected a $595 hourly rate for a named partner at a small plaintiffs' firm and reduced

10  class counsel's requested award from $752,500 to $537,500 based on factors also present in this

11  case.   In pertinent part, the court rejected attempts to justify the partner's rate based on

12  comparisons to large law firms.  *Id.* at *11-12 ("Class Counsel's mere citation to the rates charged

13  by large law firms, without more, does not establish the reasonableness of their hourly rates . . . .

14  There is no showing that the work performed by the large law firms . . . or the credentials and

15  reputations of their attorneys . . . are in any way comparable to Class Counsel."); *compare* Pearl

16  Decl. ¶¶ 10-15, Section C (citing articles discussing "legal bills paid by corporations" and rates

17  charged by large law firms such as "Bingham McCutchen," "O'Melveny & Myers," and

18  "Morrison Foerster").   In *Contreras*, 2013 WL 1296763, another case with comparable

19  circumstances, the court rejected the $800 hourly rate claimed by a partner who, "since opening

20  his own firm," had "been practicing law for nearly thirty years," who "specialized in personal

21  injury," and who had "tried over one hundred fifty civil cases."  *Id.* at *2-3 (reducing rate to $675

22  an hour); *see* Arns Decl. ¶¶ 18-19 (describing 36 years of experience practicing law, including

23  _____

24  [12]  In *Credit/Debit Card Tying Cases*, the court awarded fees to one attorney with 43 years
    experience at $975 per hour and to one attorney with 46 years experience at $950 per hour.  (Pearl

25  Decl. at 10.)  But—in stark comparison to Mr. Arns's claimed hours here—the attorney awarded
    the $975/hour rate worked only 175 hours on the case, accounting for only 4.3% of the total

26  lodestar of $4,469,709.50, and the attorney awarded a $950/hour rate worked only 27.5 hours,
    accounting for 0.58% of the total lodestar.  (*See* Supp. Decl. of Craig C. Corbitt I/S/O Pls.' Joint

27  Renewed Appl. for Attorneys' Fees, Expenses, & Incentive Awards, Exs. 2 (PDF pp. 49-50), 5
    (PDF p. 72), *available at  available at* http://classaction.kccllc.net/content.aspx?c=4966&sh=1.

28  In contrast, Mr. Arns claims 3,261.1 hours, accounting for ***57.5% of the claimed lodestar.***

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

personal injury cases and 60 jury trials).  Finally, in *Pabst v. Genesco Inc.*, No. C11-01592 SI, 2012 WL 3987287 (N.D. Cal. Sept. 11, 2012), the court rejected a well-known class action attorney's rate of $900 per hour (for 14.7 hours of work) as "not reasonable" for a contingency litigation.  *Id.* at *6.  While the *Pabst* court rejected $900 per hour for a class action attorney billing only 14.7 hours, Mr. Arns claims $950 per hour for 3,261.1 hours of work, which he additionally claims should be enhanced by a 1.391 multiplier.  Mr. Arns's rate is unjustifiable compared to these cases.

Plaintiffs' Counsel's other attorneys also claim billing rates untethered to any market evidence or other rationale.  Jonathan Jaffe—whose 2,029.9 claimed hours are second only to Mr. Arns in this case—seeks fees at a rate of $425 per hour.  (Arns Decl. Ex. 7.)  But his declaration offers nothing to support why his services justify this rate.  While an "experienced attorney will command a higher hourly rate," *Ketchum*, 24 Cal. 4th at 1139, Mr. Jaffe's legal experience—by his own admission—is extremely limited.  (*See* Jaffe Decl. Ex. 1.)  Although his résumé dedicates four full pages to his *pre-law* employment, concerning his *legal* experience, he states only that he is a solo practitioner "focusing on electronic discovery in complex litigation."  (*Id.*)  Indeed, when this litigation commenced, Mr. Jaffe was fresh out of law school, and he has put forward no evidence supporting a $425 hourly rate for a recent law school graduate operating as a solo practitioner.  To the contrary, Mr. Pearl's declaration indicates that attorneys with Mr. Jaffe's experience are awarded fees at lesser rates; it lists 2012 fee awards of $325 to $350 per hour for attorneys with two to three years of experience.  (*See* Pearl Decl. at 5-7, listing *Williams*, *Vasquez*, and *Charlebois*.)  Mr. Pearl's declaration further shows that Mr. Jaffe's claimed $425 hourly rate exceeds first-year attorneys at large, multinational law firms.  For example, in 2011, first-year associates at Morrison & Foerster billed at $335 per hour (*id.* at 27), and, in 2010, Wilson Sonsini Goodrich & Rosati PC billed its starting associates at $290 per hour (*id.* at 35).[13]

---

[13] Rates charged by large, multinational law firms are not, of course, comparable to market rates Plaintiffs' Counsel can command.  *See, e.g.*, *Contreras*, 2013 WL 1296763, at *2 (rejecting $800/hour rate for partner who ran "a relatively small firm, further reducing the reasonableness of the requested rate") (citation omitted).

Cooley LLP
Attorneys At Law
San Francisco

19.

Facebook's Opp'n to Plaintiffs' Counsel's
Motion For Attorneys' Fees And Costs
Case No. 11-cv-01726 RS

1   Indeed, no case or law firm cited in Mr. Pearl's declaration supports a $425 hourly rate for a

2   starting solo practitioner like Mr. Jaffe.

3       Plaintiffs' Counsel's inflated rates cumulatively amount to a blended rate of $645 per hour

4   based on their unadjusted lodestar,[14] a remarkable figure considering that half of their attorneys

5   have less than three years of experience.  But that figure skyrockets to nearly $900 per hour given

6   the $7.5 million award they seek.  In another case this year, Cooley—a national AmLaw 50

7   firm—sought and was awarded fees based on a blended rate of $447 per hour.  *See Gabriel Techs.*

8   *Corp. v. Qualcomm Inc.*, No. 08-cv-1992 AJB (MDD), 2013 WL 410103, at *9-10 (S.D. Cal.

9   Feb. 1, 2013) (awarding requested $10,244,053 in attorneys' fees for 22,921.5 hours of work over

10  four years in patent infringement lawsuit where plaintiffs originally alleged 92 patent violations);

11  *see also Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982) ("hours and hourly

12  rates charged by the defendant's attorneys provide a helpful guide in determining whether

13  similarly high rates and hours requested by the plaintiffs were reasonable").

14      **D.      No Lodestar Enhancement Is Justified or Should Be Allowed.**

15      Upon determining the lodestar, courts may adjust the lodestar figure based on "factors

16  specific to the case, in order to fix the fee at the fair market value for the legal services provided."

17  *PLCM*, 22 Cal. 4th at 1095.  "In the Ninth Circuit—even where attorneys fees are sought under

18  California law—although the lodestar figure is 'presumptively reasonable . . . the court may

19  adjust it upward or downward . . . .'"  *Pabst*, 2012 WL 3987287, at *1 (internal quotation

20  omitted).  Plaintiffs' Counsel's $7.5 million fee request reflects a 1.391 multiplier to their claimed

21  lodestar, which they justify by citing the quality of work they performed, the complexity and

22  difficulty of the issues this case presented, the risks faced in this litigation, the contingent nature

23  of their representation, and the caliber of work they faced from Facebook's attorneys.  (Mot. 31-

24  35.)  None of these factors justifies an increase here.  *See Ketchum*, 24 Cal. 4th at 1132 ("the

25  party seeking a fee enhancement bears the burden of proof").

26  _____

27  [14] Plaintiffs' Counsel's unadjusted lodestar is $5,391,030.00.  (Mot. 5.)  Their total hours claimed
    for fees in this case is 8,346.6.  (*Id.*)  Their blended rate—which Plaintiffs did not provide—is
28  therefore $645.89 per hour, calculated by dividing the unadjusted lodestar by the total hours.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

First, Plaintiffs' Counsel cite the quality of work performed as justifying an enhancement. (Mot. 31.)  But unless "the representation was exceptional," "the quality of representation" cannot justify a lodestar enhancement because this factor is "already encompassed in the lodestar." *Ketchum*, 24 Cal. 4th at 1138-39.  While Plaintiff's Counsel obtained an excellent Settlement for the Class in light of the formidable obstacles they faced, they have not explained how or why a quality-of-work enhancement is justified, as their argument in support of this enhancement merely lists the issues they litigated.[15]

Plaintiffs' Counsel also claim that this "novel, complex case" required them "to confront many difficult legal and factual issues," thus warranting a fee enhancement.  (Mot. 32.)  But again, Plaintiffs' Counsel have not demonstrated that their unadjusted lodestar does not already reflect these factors.  Such a showing is required, as the California Supreme Court has made clear that factors such as "the difficulty of a legal question . . . are already encompassed in the lodestar." *Ketchum*, 24 Cal. 4th at 1132; *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (difficulty and complexity is already reflected in the lodestar).[16]

Next, Plaintiffs' Counsel devote an entire section to the risks they faced in this litigation. (*See* Mot. 33-35.)  But they have provided no relevant authority indicating that litigation risk may justify a fee enhancement.  Indeed, their case certainly faced very substantial risk of loss, which was a prime motivator for Plaintiffs to settle.  But a fee enhancement for undertaking that risk is not justified, and is presumably reflected in Plaintiffs' Counsel's lodestar.

Plaintiffs' Counsel additionally claim the contingent nature of their representation warrants a fee enhancement.  (*See id.* at 35-36.)  California courts may consider "contingent risk presented" as a factor in adjusting the lodestar, *Consumer Privacy*, 175 Cal. App. 4th at 556, but

---

[15] Specifically, Plaintiffs' Counsel simply list legal issues they faced given Facebook's defenses. (*See, e.g.*, Mot. 31) ("The litigation further required an extensive understanding of standing under Article III of the Constitution, as Facebook moved to dismiss on standing grounds").)

[16] Similarly, Plaintiffs make a cursory argument that the caliber of representation they faced from Facebook's counsel justifies an enhanced fee award.  (*See* Mot. 32-33.)  But again, they have not shown why this justifies an enhancement, and any additional work required of Plaintiffs' Counsel to address Facebook's arguments would be reflected in the hours they have claimed.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1  the purpose of contingent-risk enhancements is "to approximate market-level compensation."

2  *Ketchum*, 24 Cal. 4th at 1138. Plaintiffs' Counsel's claimed hours and rates, even if reduced,

3  more than sufficiently provide market-level compensation.

4       In sum, a lodestar enhancement is unwarranted here, as it would not serve the purpose for

5  which it is available: to provide counsel with the fair market value for their services. *Ketchum*, 24

6  Cal. 4th at 1132 (the purpose of the lodestar "adjustment is to fix a fee at the fair market value for

7  the particular action"). The rates and hours Plaintiffs' Counsel have claimed already go well

8  beyond "the fair market rate for [their] services." *Id.*

9       **E.    The Court Should Award Plaintiffs' Counsel Fees in an Amount Significantly**
            **Less than Requested.**

10

11      The "Court may not uncritically accept a fee request." *Common Cause v. Jones*, 235

12  F. Supp. 2d 1076, 1079 (C.D. Cal. 2002) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378,

13  1385 (9th Cir. 1984)). Indeed, the Court has the power to, and should, significantly reduce

14  Plaintiffs' Counsel's "unreasonably inflated" request. *Serrano IV*, 32 Cal. 3d at 635 (courts have

15  authority to "reduce the award or deny [an award] altogether" if the request "appears

16  unreasonably inflated"); *Christian Research Inst.*, 165 Cal. App. 4th at 1329 ("Counsel may not

17  submit a plethora of noncompensable, vague, block-billed attorney time entries and expect

18  particularized, individual deletions as the only consequence.").[17] Facebook respectfully submits

19  that, instead of the requested $7.5 million, a fee award around the range of $3 million to $3.5

20  million would be reasonable. *See id.* at 1326 (affirming reduction of fees from over $250,000 to

21  $21,300 where billing records were "unreasonably padded, vague, and worthy of little credence");

22  *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 840 (2001) (determining that "the factors

23

24  [17] Regarding costs, Plaintiffs' Counsel submitted records as support for their claimed litigation
    expenses, including expert fees. (*See* Arns Decl. Exs. 1, 10.) Yet they have included "$65,000
    for anticipated future costs" without any explanation as to the basis for this amount. (Arns Decl.

25  ¶ 71.) Equally concerning, Plaintiffs' Counsel has charged the Class $45,000 in costs for a
    records subpoena that they have not incurred. (*See id.*; Mot. 36 n.16.) Specifically, Razorfish,

26  Inc. has demanded $45,000 from Plaintiffs' Counsel, who has in turn offered $500. (Arns Decl.
    ¶ 71.) Thus, Plaintiffs' Counsel has billed the Class for $45,000 they have not yet incurred,

27  including $44,500 they currently *have no intention of incurring*. In the event the Court awards
    costs, it should reduce the award of costs by $44,500.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                        22.
FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1  justifying use of a multiplier to enhance the lodestar figures are wholly missing" and that "the

2  unjustified duplication of work that took place requires a negative multiplier *decreasing* the

3  lodestar") (emphasis in original).

4  **Rates.** Facebook submits that the Court should apply, at minimum, a 20% reduction to

5  Plaintiffs' Counsel's claimed rates, which is appropriate given that Plaintiffs' Counsel have

6  submitted inadequate evidence to substantiate their above-market rates and, in fact, their evidence

7  indicates that lower rates are reasonable. For example, reducing Robert Arns's claimed $950

8  hourly rate by 20% would result in a $760 hourly rate, which is in line with the rates cited by his

9  own expert, Mr. Pearl. (*See* Pearl Decl. at 5-9.)

10  Similarly, a 45% or greater reduction of Jonathan Jaffe's claimed $425 hourly rate is

11  appropriate (i.e., a reduction to, at most, $234/hour). A $234 hourly rate would bring Mr. Jaffe's

12  rate closer to starting attorney rates cited in Mr. Pearl's declaration (*see*, *e.g.*, *id.* at 18, 22, 26).

13  But even that rate is likely more than the market could bear for Mr. Jaffe, a solo practitioner

14  recently out of law school, who has submitted no evidence of ever having had a single paying

15  client during the 21 months from his May 2009 law school graduation to the March 2011 filing of

16  this action, let alone since this case was filed.

17  The remaining Plaintiffs' attorneys at the Arns Law Firm should have their rates reduced

18  by 20-25%, which would also provide rates commensurate with those cited by Mr. Pearl and

19  awarded to attorneys in this district. *See Wren*, 2011 WL 1230826, at *21.

20  **Hours.** Facebook submits that Plaintiffs' Counsel's hours should be reduced significantly

21  given that what can be reduced from their inadequate billing summaries shows inefficiency,

22  duplicative efforts, failure to maintain contemporaneous records, and the inclusion of hours spent

23  on this Motion. *Ketchum*, 24 Cal. 4th at 1132. The following two charts summarize potential

24  reductions that would be reasonable:

25

26

27

28

Cooley LLP
Attorneys At Law
San Francisco

23.

Facebook's Opp'n to Plaintiffs' Counsel's
Motion For Attorneys' Fees and Costs
Case No. 11-cv-01726 RS

**Robert Arns**

| Category (Category Number) | Discussion | Requested Hours | Reduction | Reduced Hours |
|---|---|---|---|---|
| Legal Research, Case Review, and Memos (#1) | p. 13 | 359.3 | 50% | 179.6 |
| Document Discovery (#2) | pp. 11, 12-13 | 819.7 | 50% | 409.8 |
| Communication, Strategy Meetings and Working Groups with Plaintiffs' Counsel (#3) | p. 14-15 | 482.0 | 50% | 241.0 |
| Mediation & Settlement (#9) | pp. 10-11 | 499.3 | 50% | 249.6 |
| Depositions and Exhibit Prep.  (# 6) | pp. 11, 12, 14 | 618.4 | 25% | 463.8 |
| Other categories (inefficiency, failure to delegate) | pp. 10-15 | 482.4 | 20% | 385.9 |
| **Total hours** | | 3,261.1 | | 1,929.9 |

This would reduce Mr. Arns's hours from 3,261.1 to 1,929.9, which, based on a rate of $760 per hour, would account for a still-significant $1,466,701.2 fee award for Mr. Arns's services alone (down from the requested pre-multiplier $3,098,045).

**Other Attorneys**

| Category (Category Number) | Discussion | Requested Hours | Reduction | Reduced Hours |
|---|---|---|---|---|
| Communication, Strategy Meetings and Working Groups with Plaintiffs' Counsel (#3) | p. 14-15 | 563.8 | 25% | 422.8 |
| Depositions and Exhibit Prep. (# 6) | pp. 11, 12, 14 | 614.6 | 25% | 460.9 |
| Other categories | | 3,907.1 | 0% | 3,907.1 |
| **Total hours** | | 5,085.5 | | 4,790.8 |

This would reduce the remaining Plaintiffs' attorneys' (i.e., excluding Mr. Arns) total hours from 5,085.5 to 4,790.9.  Assuming a rate reduction of 45% for Jonathan Jaffe (i.e., to $233.75 per hour) and a reduction of 20% for the requested rates for the other attorneys, the remaining attorneys' fee award would be $1,526,666.31.

As a whole, applying these reductions to Plaintiffs' Counsel's proposed hours and claimed rates, Plaintiffs' Counsel's lodestar would be $2,993,367.51, and their blended rate would be $445 per hour.  Moreover, Mr. Arns's share of the total lodestar would drop from 57% to 49%, an improved, but still-significant portion of the work.   (*See supra* n.12 (in *Credit/Debit Card Tying Cases* cited in Pearl Declaration, partner billing $950 per hour accounted for 0.58% of total lodestar and partner billing $975 per hour accounted for 4.3% of the total lodestar.))

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS

1    **IV.    CONCLUSION**

2          For the foregoing reasons, Facebook respectfully submits that the Court should reduce

3    Plaintiffs' Counsel's Request and that a fee award between approximately $3 million and $3.5

4    million would be reasonable.

5
     Dated: June 7, 2013

6                                                   COOLEY LLP

7                                                   */s/ Michael G. Rhodes*

8                                                   Michael G. Rhodes

9                                                   Attorneys for Defendant FACEBOOK, INC.

10   1319890 /SF

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

FACEBOOK'S OPP'N TO PLAINTIFFS' COUNSEL'S
MOTION FOR ATTORNEYS' FEES AND COSTS
CASE NO. 11-CV-01726 RS