ROBERT S. ARNS (#65071, rsa@arnslaw.com)
JONATHAN E. DAVIS (#191346, jed@arnslaw.com)
STEVEN R. WEINMANN (#190956, srw@arnslaw.com)
**THE ARNS LAW FIRM**
515 Folsom Street, 3rd Floor
San Francisco, CA 94105
Tel:    (415) 495-7800
Fax:    (415) 495-7888

JONATHAN M. JAFFE (# 267012, jmj@jaffe-law.com)
**JONATHAN JAFFE LAW**
3055 Hillegass Avenue
Berkeley, CA 94705
Tel:    (510) 725-4293
Fax:    (510) 868-3393

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W. T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>Defendants. | **Case No. CV 11-01726 RS**<br><br>**PLAINTIFFS' RESPONSE TO FACEBOOK'S OBJECTIONS TO MOTION FOR FEES**<br><br>Date:   June 28, 2013<br>Time:  10:00 a.m.<br>Courtroom:   3<br>Judge: Hon. Richard Seeborg |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     FACEBOOK'S OBJECTIONS REGARDING THE REQUEST FOR ATTORNEYS'
        FEES ARE WITHOUT MERIT .................................................................................. 4

        A.   California Law Allows The Request To Be Reviewed Under The Common Fund
             Method And A Multiplier Is Justified ............................................................... 4

        B.   The Requested Multiplier is Appropriate in the Circumstances ....................... 5

        C.   There Is Substantial Evidence To Support The Fee Award .............................. 7

        D.   The Rates Requested Are Commensurate With Attorneys' Fees Charged In This Market
             And In Other Cases ........................................................................................... 9

        E.   The Work Was Performed By The Lawyers With Appropriate Expertise and Who
             Would Need The Knowledge From Performing the Tasks ............................. 13

        F.   There Was No Duplication Of Effort ............................................................. 14

III.    CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**State Cases**

*Chacon v. Litke,* 181 Cal.App.4th 1234 (2010) ........................................................................ 10

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) .................................................................. 9

*Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628 (1996) ........................................... 7

*David A. Cohen v. Facebook, Inc.*, No. BC 444482 (Sup. Ct. Cal December 13, 2011) ........... 11

*Denevi v. Green Valley Corp.,* 2005 Cal.App.Unpub. LEXIS 578 (Cal.App Jan. 21, 2005) ...... 5

*Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794 (1996) ................................................................ 5

*In re Consumer Privacy Cases,* 175 Cal. App. 4th 545 96 Cal. Rptr. 3d 127 (2009) ............... **4, 5**

*In re Providian Credit Card Cases, No. A097482, 2003 WL 23002628 (Cal.App. Dec. 22,*

*2003)* .......................................................................................................................................... 5

*Mendenhall v. NTSB,* 213 F.3d 464 (9th Cir. 2000) .................................................................. 10

*Nemecek & Cole v. Horn,* 208 Cal.App.4th 641(2012) ............................................................. 10

*Russell v. Foglio,* 160 Cal.App.4th 653 (2006) ........................................................................ 10

*Serrano v. Priest,* 20 Cal.3d 25 (1977) ............................................................................ 4, 5, 11

*Shaffer v. Superior Court,* 33 Cal.App.4th 993 (1995) .............................................................. 11

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) ................................................. 9

**Federal Cases**

*Ackerman v. W. Elec. Co.*, 643 F. Supp. 836 (N.D. Cal. 1986) ................................................... 8

*Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984) ............................................................... 10, 11

*Contreras v. City of Los Angeles*, No. 2:11-cv-1480-SVW, 2003 WL 1296793 (C.D. Cal.

March 28, 2013) ....................................................................................................................... 15

*Fischel v. Equitable Life. Assur. Society of U.S.,* 307 F.3d 997 (9th Cir. 2002) .......................... 4

*Flores v. Amlyn Pharmaceuticals,* No. 08cv1652, 2010 WL 2978164 (S. D. Cal. July 26, 2010)

.................................................................................................................................................... 7

In *Ko v. Natura Pet Prods.* 2012 U.S. Dist. LEXIS 128615 (N.D. Cal. Sept. 10, 2012) (No. 9-

2619-SBA) ................................................................................................................................. 7

*Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614 (9th Cir. 1993) .................................................... 8

*Pabst v. Genesco*, No. C11-01592, 2012 WL 3987287 (N.D. Cal. Sept 11, 2012) ................... 15

*Petersen v. Lowe's HIW, Inc.* No. C 11-01996 RS, 2012 U.S. Dist. LEXIS 123018 (N.D. Cal.

August 23, 2012) .................................................................................................................... 4, 5

*Prison Legal News v. Schwarzenegger,* 608 F.3d 446 (9th Cir. 2010)........................................ 10

*R. Cohen v. Facebook, CV- 05282* RS (N.D. Cal.).............................................................. 8, 9, 13

*Theme Promotions v. News Am. Mktg. FSI, Inc.*, 731 F. Supp. 2d 937 (N.D. Cal. 2010)........... 9

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010).................................... 6

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................................ 6

*Winterrowd v. Am. Gen. Annuity Ins.*, 556 F.3d 815 (9th Cir. 2009) ........................................... 8

**Statutes**

Cal. Civ. Code § 3344........................................................................................................... 8, 11

**Rules**

California Rules of Professional Conduct, Rule 4-200............................................................... 11

L.R. 54-5(b)(2)........................................................................................................................... 8

**Treatises**

2 Pearl, *Calif. Atty. Fee Awards, 3d Ed.* (Calif. Cont. Ed. of Bar 2010; Feb. 2013 Supp.).. 10, 11

## I. INTRODUCTION

Plaintiffs submit this Memorandum in response to Facebook, Inc.'s opposition to Class Counsel's Motion for Attorney's Fees, Costs and Class Representative Service Awards ("Fee Motion"). Class Counsel The Arns Law Firm and Jonathan Jaffe Law have requested a total fee of $7.5 million (not including costs of $282,566.49, which Facebook for the most part does not contest). This number is based on a lodestar of $5,391,030, with the resulting multiplier being 1.391. This modest multiplier and resultant fee request must be weighed against the excellent results in the case, and the over $9,200,000 in proposed cash distributions, *cy pres* of approximately $2 million (pending Court approval), and the injunctive relief, which has been valued by Plaintiffs' experts as being worth between $57.4 and $226 million. See Motion for Preliminary Approval, pages 16-17, and Motion for Final Approval at 3-7.[1]

Facebook, Inc. ("Facebook") argues for an arbitrary across-the-board fee reduction of at least 20% and an overall reduction of the fee award to less than 50% of the requested amount. This is premised largely on two unsupported assertions: (1) Plaintiffs' counsel spent too many hours on the case, and (2) the Plaintiffs' counsels' fee rates are too high. Cooley, LLP seems to assume that because it *defends* cases in one manner, Plaintiffs should prosecute their claims in a similar manner. This is a preposterous assertion considering the relative size and role differences of the two firms. No argument is made that Plaintiffs' fees are unreasonable compared to Cooley's rates, likely because these attorneys have sought the similar fees to be paid by the plaintiffs in the *Robyn Cohen v. Facebook* matter before this very court. Facebook also now disingenuously takes the position that detailed time records should be submitted, the reverse of the position it took in that application.

---

[1] Facebook's only complaints about the costs requested by Counsel are as to "future anticipated costs" and the $45,000 for the potential liability to Razorfish for a subpoena response. There is in reality only one sum (the $45,000 was part of the $65,000 in anticipated costs. While Plaintiffs are fighting the Razorfish cost bill as ludicrous and unjustified, they have to accept that there is the unlikely possibility the Court could disagree. Therefore the inclusion of the cost is warranted, but Plaintiffs suggest that the funds be held separately and any unpaid sums distributed to the proposed cy pres recipients. Arns Reply Decl., 20-21 and Ex. 3 (updated costs bill showing current costs of $236, 591.08 and the Razorfish $45,000 reserve).

1       Much of the brief is devoted to criticisms of the rates and time spent on the case by Robert
2 S. Arns.[2]   As lead counsel on this case, Mr. Arns made this matter his primary focus for the
3 duration of the case because the egregious actions of the Defendant required expeditious
4 resolution, so as to obtain relief for the class members, including the ability to limit the use of
5 their name and likenesses, as quickly as possible. Thus, during the almost 20 months between
6 filing the complaint and the preliminary approval stage, there was a persistent onslaught of
7 discovery waged by plaintiffs, and motions by both sides, all of which required an intimate
8 knowledge of the entire case. Unlike unwieldy defense firms, The Arns Law Firm uses a
9 system where each case has a lead attorney who takes all of the depositions and is as involved
10 in the briefing and research as much as practicable. Arns Reply Decl. ¶3. Given the size and
11 resources of Facebook and its counsel, and the novel legal and factual issues at play, Mr. Arns
12 was the obvious person for this task. As result of his thorough immersion in the facts and law
13 of this case, Mr. Arns was able to take or defend every deposition except one, and brief matters
14 with greater efficiency, and more importantly, obtain greater results, than had the tasks been
15 performed by several different attorneys.

16       Thanks to Class Counsel's concerted discovery efforts, the Defendant was producing
17 documents (sometimes tens of thousands of pages at a time) via a "rolling" production shortly
18 before the depositions and major briefing events, requiring rapid review and processing of the
19 documents in preparation for depositions and motions. Plaintiffs relied heavily on document
20 management software to facilitate this process, yet identified documents still needed to be
21 pored over by class counsel, and discussed among counsel to ensure that Mr. Arns was fully
22 prepared to take the depositions of Defendant's numerous witnesses. Mr. Arns also oversaw
23 the preparation of the motions and participated in distilling the 200,000 documents and infinite
24 online information and more than a thousand pages of deposition transcripts into a cogent and
25 well presented prosecution of this case.

26       The intensity of plaintiffs' efforts is best demonstrated by the Defendant's reactions. At the

27

28 [2] Mr. Arns' background is set forth in his declaration in support of the Motion for Attorneys' Fees. [ECF 254] ("Arns Fee Decl.")

outset of litigation, the Defendant hired Cooley, LLP.  Following this continued onslaught of discovery initiated by plaintiffs and an unsuccessful attempt by the Defendant to get the case dismissed, Facebook hired an additional major law firm, Gibson Dunn, in advance of the class certification motion.  Defendants spent more than $200,000 alone with the billings of their expert witnesses.  The rapid pace of the case and depositions of seven expert witnesses thus required the significant efforts and resources of two national firms to defend. The significant number of hours billed by Robert Arns is ultimately an indication of the gravity of the case and the need for the attention of a skilled trial attorney and negotiator. Mr. Arns felt complimented that two firms, that he respects greatly, were needed to defend this case.

Facebook's claims as to duplication of efforts, specifically the presence of multiple Plaintiffs' counsel present at depositions is baseless.  Such a claim betrays an ignorance of the realities of prosecuting claims as opposed to defending them. For example, as to non-expert depositions, Plaintiffs must prove every element of their case. The Defendant need only defend the deposition or to attack the adequacy of the class representatives.  Similarly, Facebook's attack on the amount of time spent on communications amongst the attorneys is without merit, as courts –and common sense—hold that such communications are crucial and are the essence of a successful prosecution of the case.

As supported by the initial and Reply Declarations of Richard Pearl, Plaintiffs' counsel's rates are supported by their experience and expertise which provided insight and knowledge which was instrumental to the successful, timely resolution of this case.  As to Kevin Osborne, Jonathan Jaffe and Robert Foss, their backgrounds in various fields made them superior lawyers in addressing key areas in the case.  Mr. Osborne's MBA degree and expertise in economics and statistics was crucial to examining the analytics of the case.  Mr. Jaffe 's 15 years of experience as a software architect was crucial to this case  Robert Foss, also an MBA, also possesses experience in the technology field which assisted greatly in the drafting of discovery requests and preparation and assistance at depositions. This greater efficiency warrants higher rates, as Mr. Pearl has opined.

Facebook's assertion that no multiplier is necessary is belied by its own statements that the

1 settlement was excellent. The injunctive relief and cash obtained for the Class are deserving of

2 a full fee award plus multiplier.

## II. FACEBOOK'S OBJECTIONS REGARDING THE REQUEST FOR ATTORNEYS' FEES ARE WITHOUT MERIT

5 The California Supreme Court has held that the "'experienced trial judge is the best judge of

6 the value of professional services rendered in his court, and while his judgment is of course

7 subject to review, it will not be disturbed unless the appellate court is convinced that it is

8 clearly wrong.'" *Serrano v. Priest,* 20 Cal.3d 25, 49 (1977). Facebook's objections to these fees

9 are mainly as to the distribution of the work performed by Robert Arns and to the hourly rates

10 employed. The work was fully justified, and while the Court must satisfy itself that the fees are

11 supported by evidence, Plaintiffs have provided such evidence. The Court should award the

12 fees and costs and overrule Facebook's unsupported objections.

### A. California Law Allows The Request To Be Reviewed Under The Common Fund Method And A Multiplier Is Justified

15 Facebook refers to this Court's holding in *Petersen v. Lowe's HIW, Inc.* No. C 11-01996 RS,

16 2012 U.S. Dist. LEXIS 123018 (N.D. Cal. August 23, 2012) that California law as to attorneys'

17 fees is to be applied where CAFA supplies the basis for jurisdiction and the court is sitting in

18 diversity. However, Facebook in arguing that a lodestar calculation comes first, chose to

19 ignore the very next passage in *Petersen*, in which the Court held:

20   In common fund cases, under state and federal law, the courts possess the
   **"discretion to apply either a lodestar method or the percentage-of-the-fund**
21   **method in calculating a fee award.**" *Fischel v. Equitable Life. Assur. Society of U.S.,*
   307 F.3d 997, 1006 (9th Cir. 2002) (citing *Vizcaino,* 290 F.3d at 1047); *In re*
22   *Consumer Privacy Cases,* 175 Cal. App. 4th 545, 558, 96 Cal. Rptr. 3d 127 (2009).
   **"[T]he choice between lodestar and percentage calculation depends on the**
23   **circumstances.**" *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1296
   (9th Cir, 1994 (citing *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d
24   1301, 1311 (9th Cir. 1990).

26 2012 U.S. Dist. LEXIS 123018 at *6 (emphasis added). Thus, under the Ninth Circuit's

27 holding, this Court can **choose** to apply the common fund calculation in awarding attorneys'

28 fees in the proper circumstances. The 2002 decision in *Fischel v. Equitable Life* obviously

-4-

PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS TO MOTION
FOR FINAL APPROVAL AND FEE APPLICATION     CASE NO. CV 11-01726 RS

1  postdates that in *Dunk v. Ford Motor Co.*, 48 Cal.App.4th 1794, 1809 (1996), where the
2  California Supreme Court had noted that it was then not "clear" if California courts could still
3  use the common fund calculation. The Ninth Circuit has since made it clear, as this Court noted
4  in *Petersen*, *supra*, that the common fund calculation may be used. [3]

5                    **B. The Requested Multiplier is Appropriate in the Circumstances.**

6       Facebook contends no multiplier should be applied, but even under the line of cases after
7  *Serrano*, in California the common fund approach has been used to justify enhancements to the
8  lodestar, as Facebook concedes.    FB Brief at 7, citing *Consumer Privacy Cases*, 175
9  Cal.App.4th 545, 557 (2009).    In any event, Facebook concedes that under either Federal or
10 California law, a lodestar can be enhanced by a multiplier, and under California law this may
11 include reference to the contingent nature of the representation. Facebook Opp. Brief at 20, 21.
12 This case was on a contingency, and Class Counsel took it on in the face of knowing they would
13 be up against a defendant with nearly unlimited resources and representation by major law firms
14 with hundreds of lawyers, in this case Cooley, LLP and Gibson Dunn.  Facebook, following the
15 denial of the Motion to Dismiss, called upon Gibson Dunn for assistance in opposing the Class
16 Certification Motion.

17      Because Plaintiffs' calculations show that the "common fund" should really include the
18 injunctive relief, a lodestar multiplier is certainly appropriate. Even using the Ninth Circuit's
19 benchmark of 25% of the common fund, the minimum award for Class Counsel would be $5
20 million on the $20 million common fund, not the $3 to $3.5 million that Facebook is
21 advocating. A multiplier is clearly indicated given the results and the various factors which
22 courts consider in deciding adequate compensation in class actions. *See* Plaintiffs' Motion for

23

24 ---

[3] Thus the two cases Facebook cited in spite of Civil Local Rule 34 (e) (as well as California
25 Rule of Court 8.115 (a)), do nothing to support Facebook's argument. The *Denevi v. Green*
    *Valley Corp.,* 2005 Cal.App.Unpub. LEXIS 578 (Cal.App Jan. 21, 2005) court simply repeated
26 the now outdated California Supreme Court statement that it was "unclear" if the common fund
    method could be employed. The fact that the court in *In re Providian Credit Card Cases, No.*
27 *A097482, 2003 WL 23002628 (Cal.App. Dec. 22, 2003)*, as of December 2003, had seen no
28 post-*Serrano* cases approving fees on that basis cited to it is similarly irrelevant.

1  Final Approval (at pages 15-30), and Plaintiffs' Response to Objections to Settlement and
2  Motion for Attorneys' Fees (pages 29-35, 45).

3    Facebook tries unsuccessfully to walk the line between commending the work done by
4  Plaintiffs in arguing that the Settlement was "an excellent Settlement in light of the formidable
5  obstacles they faced," Facebook Br. at 21, but then arguing that nevertheless, there is no
6  justification for an enhancement. Overcoming "formidable obstacles" and achieving an
7  "excellent Settlement" are precisely the evidence that supports a multiplier. "When assessing
8  whether the percentage requested is reasonable, courts look to factors such as: (a) the results
9  achieved; (b) the risk of litigation; (c) the skill required, (d) the quality of work; (e) the
10  contingent nature of the fee and the financial burden; and (f) the awards made in similar cases."
11  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) *citing Vizcaino v.*
12  *Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). This multiplier is necessary to bring
13  Class Counsel's fees up to a figure which approaches 25% of the value of the Settlement, when
14  the cash component of $20 million and substantial injunctive relief of $57 million to $226
15  million are taken into consideration.

16    Class Counsel only seek a multiplier of 1.391 times lodestar. Even a minimal valuation of
17  the injunctive reliefs' value of $5 million would place a $7.5 million fee award well within the
18  usual range. Further, the lodestar which has been presented to the Court is the result of reduced
19  billing in that it does not account for paralegal time, and the attorney hours have been
20  scrutinized and reduced by Counsel before submission. RSA Decl. ISO Fee Motion at ¶ 62
21  [Dkt 254].[4] Plaintiffs' counsel has also continued to provide benefit to the class through their
22  post-fee application efforts, with over 275 hours preparing the motion for final approval and
23  addressing the objectors in the matter. RSA Decl. ISO Mot. For Final Approval ¶2. Plaintiffs'

24

25    [4] Facebook willfully misreads the "research" category to infer that Robert Arns was
26  engaged in paralegal tasks. Simply because The Arns Law Firm did not submit for paralegal
    time, does not mean that they were not employed whenever possible. Also, contrary to
27  Facebook's assumption, Class Counsel did not include hours spent preparing the Fee Motion as
    part of their lodestar. Arns Reply Decl. ¶19. Thus, this contention is baseless.

28

1  counsel will also continue to work with Facebook to determine the necessary changes to the
2  Facebook.com website and will be monitoring compliance with the Defendant's website, and
3  potentially call for an audit if necessary. *See* A.S.A. §§ 2.1(d)-(e).

4  ### C. There Is Substantial Evidence To Support The Fee Award

5  Class Counsel provided the Declarations of Robert S. Arns and Jonathan Jaffe, and also the
6  Declaration of Richard Pearl in support of their motion for fees.[5] While Facebook argues that
7  "substantial evidence" must support a fee award, it fails to follow through and explain what
8  evidence is "substantial." In *Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628
9  (1996), the Court of Appeal in approving the fees, noted that counsel had submitted
10  declarations of the attorney's experience and expertise, information supportive of the rates
11  charged by counsel, itemized accountings of attorney time, as well as the declaration of an
12  expert on attorney fees who opined that the rates requested were "within the range of market
13  rates charged by attorneys of equivalent experience, skill and expertise." *Id.* at 659. The Court
14  finding that this was "substantial evidence." *Id.* The same type of evidence was submitted
15  herein. The "itemized" time here was organized into the form of categories of work, but Class
16  Counsel has also offered to provide the Court with more detailed time records if requested.
17  Arns Fee Decl., ¶ 63 [ECF No. 254]. *Wollersheim* was the authority relied upon by the court
18  in *Flores v. Amlyn Pharmaceuticals,* No. 08cv1652, 2010 WL 2978164 (S. D. Cal. July 26,
19  2010); *Amlyn* itself is inapposite as it involved a minor's settlement, not a class action fee
20  request.[6]

21
22  ---
[5] *See* Arns Fee Decl. (ECF No. 254); Decl. of Richard M. Pearl (ECF No. 255); Memo of Law
ISO Motion for Atty. Fees (ECF No. 253); Memo of Law ISO Joint Motion for Preliminary
23  Approval (ECF No. 280); as well as the documents filed concurrently with those motions.
[6]  The court in In *Ko v. Natura Pet Prods.* 2012 U.S. Dist. LEXIS 128615 (N.D. Cal. Sept. 10,
24  2012) (No. 9-2619-SBA)*,* while it reduced counsel's fees, noted in so doing that in that matter,
the "Class Counsel *did not submit evidence* showing that the hourly rates charged, i.e., \$245/hr.
25  to \$595/hr., [were] reasonable and customary in this district for the type of work performed."
*Ko* at *11 (emphasis added). Further, the court in *Ko* noted it was "not convinced that [the]
26  case involve[d] complex factual or legal issues." *Ko* at *10. *Ko* was also a case with no
substantial injunctive relief component, but the Court nevertheless awarded attorney fees larger
27  than the lodestar submitted in the fee application, despite noting class counsel's failure to
28  appropriately substantiate the rates and hours spent. Here, as noted above, Plaintiffs have

The other cases cited by Facebook, *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614 (9th Cir. 1993) and *Martino v. Denevi*, 182 Cal.App.3d 553 (1986) are also inapposite. In *Intel Corp.* the court, while having evidence of the hours worked, did not make findings that they were reasonable, and the Court of Appeal noted that summaries can be used in the proper circumstances. 6 F.3d at 28-29. In *Martino*, the Court noted expressly that "[i]n California, an attorney **need not submit contemporaneous time records** in order to recover attorney fees...." 182 Cal.App.3d at 560 (emphasis added).[7] Furthermore, the lawyer seeking fees in *Martino* presented only a flat fee, and testified that he billed based upon a "general feeling" of how much the case was worth. *Id.* at 561.

Facebook's assertions that the breakdowns provided are insufficient for the Court to evaluate the work done is without merit. Plaintiffs provided 6 pie charts breaking down the amount of time for each lawyer by categories and depicting how their time was spent by percentage, as well as summary sheets and charts for ease of comparison. *See* Exs. 7, 8, & 9. To Arns Fee Decl. [ECF Nos. 254-7, 254-8, & 254-9]. This gives the Court a much more useful overall view than the individual time entries, and is in line with what Civil Local Rule 54-5(b)(2) requires.[8] (emphasis added). Indeed, Facebook in its fee application under Civil Code § 3344 in *R. Cohen v. Facebook, CV- 05282* RS (N.D. Cal.) cited the Rule and submitted charts and summaries, "including a description of the work performed and the time expended on a month-by-month basis ..." FB *R. Cohen* Reply ISO Attorney's Fees and Costs, at page 8. [*R. Cohen, CV- 05282* ECF 95] (Arns Reply Decl., Ex. 2) Facebook argued that this information,

---

submitted significant evidence that the fee rates are reasonable and customary, and where Plaintiffs have secured significant and valuable injunctive relief.

[7] See also *Ackerman v. W. Elec. Co.*, 643 F. Supp. 836, 863 (N.D. Cal. 1986) (citing authorities) (footnote omitted), aff'd 860 F.2d 1514 (9th Cir. 1988); *Winterrowd v. Am. Gen. Annuity Ins.*, 556 F.3d 815, 827 (9th Cir. 2009).

[8] Civ. L.R. 54-5(b)(2) (2) states that counsel should provide: "A statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained. Depending on the circumstances, the Court *may* require production of an abstract of or the contemporary time records for inspection, including *in camera* inspection, as the Judge deems appropriate;..." (emphasis added).

1  plus its "abstracts" of time with its daily timesheets (but without any narrative description) was
2  sufficient. In other words, Facebook provided <u>virtually the same type of information as</u>
3  <u>Plaintiffs have herein,</u> except for the addition of virtually useless non-narrative time records.
4  Facebook also noted in that Reply that detailed time records are not required, and that a
5  declaration is sufficient.[9] FB *R. Cohen* Reply Brief at 8 ECF 95] Arns Decl., Ex., 2.[10]

### D. The Rates Requested Are Commensurate With Attorneys' Fees Charged In This Market And In Other Cases

8  Facebook takes issue with the hourly rate charge by the lead Plaintiffs' counsel Mr. Arns,
9  claiming that his rate ($950 per hour) is too high. Mr. Arns is a seasoned trial attorney with 38
10 years' experience preparing and trying cases. Arns Reply Decl., ¶1. He has tried over 60
11 cases to a jury verdict, is an active professor teaching trial practice at the University of San
12 Francisco School of Law, where he was named Professor of the Year in 2011. Arns Fee Decl.
13 at 8. Mr. Arns has published two best selling treatises on trial and evidence, has received
14 numerous professional awards related to his trial performance and has significant experience
15 trying and settling complex cases. *Id.* Richard Pearl, an expert in evaluating attorneys' fee
16 applications and rates, included surveys of San Francisco Bay Area and California fees found
17 reasonable by courts in recent years and found they support the fees requested herein. *See*
18 Declaration of Richard M. Pearl ISO Motion for Attorneys' Fees and Costs [ECF No.
19 255]("Pearl Decl."). The market rates for Plaintiffs' counsel in this matter are in line with the
20 non-contingent market rates charged for reasonably similar services by California attorneys of
21 reasonably similar qualifications and experience. *See* Pearl Decl., ¶ 8. The Pearl Reply

---

[9] *See Theme Promotions v. News Am. Mktg. FSI, Inc.*, 731 F. Supp. 2d 937, 944 (N.D. Cal. 2010) (declaration by attorney as to the total number of hours worked by each team member is sufficient evidence to recover attorneys fees under California law); *accord, Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254-55 (2001) (detailed time records not required in a class action); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 65 (2008)(same).
[10] Facebook sought recovery for $650,133.00, in a case which was decided on a Motion to Dismiss with <u>no</u> depositions being taken and which was only being actively litigated for less than 10 months. *See* Facebook, Inc.'s Motion for Attorney's Fees in *R. Cohen*, CV-05282 [ECF 81] , at pages 9-10, Arns Reply Decl. Ex. 1.

Declaration further supports the rates charged by Robert Arns and the other Arns Law Firm and Jonathan Jaffe Law attorneys. Pearl Decl. at ¶¶3,8,11, 15-17.

Contrary to Facebook's assertions, declarations supporting a prevailing party's requested hourly rates law are not required to pinpoint attorneys with exactly the same experience and skill-set handling exactly the same type of case. *See Mendenhall v. NTSB,* 213 F.3d 464, 472 (9th Cir. 2000) (rejecting a similar argument as based "on an idealized standard of precision in fee applications that we do not require..."); *Prison Legal News, supra* (finding generalized declarations adequate); Pearl Decl. ¶6 (listing numerous cases in which Richard Pearl's declaration was relied on to support fee determinations).

Facebook's argument that Class Counsels' rates are not actually billed to paying clients is without merit. Under California law, hourly rates are not based on the rates charged to the particular client but on what is reasonable in the legal marketplace for similar services: "The [market-rate] standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel." *Chacon v. Litke,*181 Cal.App.4th 1234, 1258 (2010) (quoting Pearl, *Calif. Atty. Fee Awards, 2d ed.* (CEB 2008 Supp.) § 12.26, pp. 358-359). *See also, e.g., Nemecek & Cole v. Horn,* 208 Cal.App.4th 641, 651(2012); Pearl Reply Decl, ¶4.

Nor must the rates be compared only against work on identical types of cases as Facebook argues. Hourly rates are reasonable if they are "in the range of" or "in line with" the rates charged by attorneys of reasonably comparable background, skill, and experience performing reasonably similar services. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984). In determining whether services are similar, the courts may not restrict themselves to the particular area of law, but must look to the type of work performed – in this case, hard-fought class action litigation against a well-funded, well-represented opponent. *See, e.g., Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 455 (9th Cir. 2010). In litigation, clients generally pay for litigation and strategic experience and skills, not expertise in a particular subject area. *See, e.g., Russell v. Foglio,* 160 Cal.App.4th 653, 661 (2006). Thus, Richard Pearl found that the

1 | fees here are comparable to those awarded in the decisions which he had noted previously.
2 | Pearl Reply Decl., ¶5.

3 | Facebook erroneously asserts that Plaintiffs' counsels' rates must be lower because they are
4 | not in large firms but rather "small plaintiffs' firms." FB Brief at 18. This premise, however, is
5 | not only legally wrong, but also ludicrous. Rates may not be based on whether the claiming
6 | attorney is a "large" or "small" law firm, or on its costs or overhead. *See* 2 Pearl, *California*
7 | *Attorney Fee Awards, 3d Ed.* (Calif. Cont. Ed. of Bar 2010; Feb. 2013 Supp.) § 9.108, p. 358
8 | (listing cases); *see* California Rules of Professional Conduct, Rule 4-200 ( establishing
9 | standards for determining whether is unconscionable, no mention of either firm size or
10 | overhead). Many sole proprietors, small and mid-size firms charge and are awarded rates that
11 | are comparable to larger firms' rates, the relevant factors being the attorneys' skill,
12 | background, and experience, the type of case, the stakes involved, and the client's ability to
13 | pay. Pearl Reply Decl. ¶6. Under these standards, the size of the firm is irrelevant to rates. *See*
14 | *Blum v. Stenson, supra; Serrano v. Unruh,* 32 Cal.3d 621, 643(1982); *Shaffer v. Superior*
15 | *Court,* 33 Cal.App.4th 993 (1995).

16 | Smaller law firms which take on difficult but important litigation frequently litigate against
17 | major law firms, just as Plaintiffs have done in the instant case. It makes no sense to award
18 | small firm attorneys a much lower rate, when they have comparable skills, experience, and
19 | expertise, and produce work that is equally as good, if not better. Pearl Reply Decl. ¶6. The
20 | proof is in the pudding here, as it is Class Counsel who have achieved a settlement which
21 | includes substantial injunctive relief as well as a $20 million cash component.

22 | Cooley, LLP's own fee structure and requests support the requested fees here. A request for
23 | attorneys' fees was made by Cooley, LLP on behalf of Facebook, Inc., in *David A. Cohen v.*
24 | *Facebook, Inc.*, No. BC 444482 (Sup. Ct. Cal December 13, 2011). Facebook attempted to
25 | collect attorneys' fees from the plaintiffs under the fee-shifting provision of California Civil
26 | Code § 3344. See Pearl Reply Decl, ¶¶8 and 9, and Ex. 1 (MP&A in support of motion for
27 | fees). Facebook sought attorneys' fees for Cooley's time and costs in the amount of
28 | $790,523.68, of which $737.461.50 was for the litigation through a motion to dismiss. *Ibid.*

-11-

The *D. Cohen* case involved similar issues of law and fact as in *Fraley v. Facebook*. RSA Reply Decl., ¶13[11] Facebook sought to recover $930 an hour for Michael Rhodes (also representing Facebook here), an attorney with 9 years' less experience than Robert Arns. Pearl Reply Decl. Ex. 1 at page 12. Matthew Brown, with only 13 years of experience, was billed at $630 an hour, while Jeffrey Gutkin, also with 12-13 years' experience, was billed at $615 an hour. *Id.* These rates are equivalent to the $625 billed for Jonathan Davis (over 15 years of experience and significant trial experience) and obviously more than the $550 billed for Steven Weinmann, who has 23 years of experience, much of it in litigating class actions. Pearl Reply Decl., ¶8. The junior associates at Cooley are billed at $580 for sixth year associate Benjamin Kleine, and $425 an hour for third year associate Cooke. *Id.* at 13.

The rates for third year associates such as Kevin Osborne (billed at $425 / hour) have been as high as $470 an hour (Gibson, Dunn 2009 rates, see Pearl Decl. at page 20). The rates for second year attorneys such as Jonathan Jaffe ($425 / hour) and Robert Foss ($350 / hour) are only slightly behind those rates. Associate attorneys of 2 and 3 year's experience are billed at up to or over $400 an hour $420/ hour. *See* Pearl Reply Decl., ¶ 12, Pearl Decl. at pages 16-17). The rates for Jonathan Jaffe, Kevin Osborne and Robert Foss should also be higher than the typical first, second and third year associates because they have extensive experience in other fields (see their resumes, Exs. 5and 6 Decl. of Robert S. Arns ECF 254, and Jaffe Decl. Ex. 1 ECF 256), which makes them more efficient at handling legal tasks in their fields of expertise. Pearl Reply Decl., ¶¶12-13. Mr. Jaffe's deep background in computer software system design allows him to question technical aspects of a system such as Facebook with much more facility than a novice attorney; his expertise, as set forth in his Declaration in support of the motion for fees, also lends itself to understanding the limits of electronic discovery and document organization capabilities. Pearl Reply Decl., ¶13. With an online company such as Facebook, this expertise can also add value to the discovery process. Pearl Reply Decl., ¶13. Mr. Jaffe's expertise is also of assistance in determining what is reasonable

---

[11] The fees sought by Cooley, LLP were denied in a later Order dated February 9, 2013, on the ground that the ground for the dismissal was due to COPPA preemption. *Id.*

1 and possible in terms of potential changes to how Facebook and its ad systems operate. Pearl

2 Decl. ¶13, Arns Reply Decl. ¶16. The suggested reduction of Jonathan Jaffe's rate from $425 to

3 $234 an hour is without merit or logical basis. Even Cooley, LLP's "senior paralegals" are

4 billed out at more than $265 an hour. Facebook Motion for Fees in R. Cohen, Arns Decl. Ex.1.

5 Kevin Osborne's background in economics allowed him to assist with the theories of

6 damages which were essential to proving on class certification and in settlement that Plaintiffs

7 could bring the case to trial, and how much the damages were valued at for purposes of

8 evaluating the fairness of the settlement. Arns Reply Decl.¶14. Robert Foss's background in

9 economics and in computer systems made it possible for him to craft discovery requests and aid

10 in the damages evaluation and strategy concerning settlement options. Arns Reply Decl. ¶15,

11 Pearl Decl. ¶14. Plaintiffs did employ four experts in the fields of economics, statistics, and

12 marketing. See Arns Decl., ¶¶13, 14. The role of attorneys in working with such experts is

13 greatly improved by backgrounds in such fields as possessed by Jaffe, Osborne and Foss. Arns

14 Reply Decl. ¶¶14-17. In Richard Pearl's opinion, such backgrounds are worthy of an increase

15 in hourly rates towards the high end for attorneys of their years. Pearl Reply Decl.,¶ 14.

16 **E. The Work Was Performed By The Lawyers With Appropriate Expertise**

17 **and Who Would Need The Knowledge From Performing the Tasks**

18 Facebook criticizes the 618.4 hours on depositions and exhibit preparation by Mr. Arns.

19 However, Mr. Arns prepared for and took eight all-day depositions of Defendant's employees

20 and experts, defended four plaintiffs' experts' depositions, and defended seven Plaintiffs'

21 depositions. The 21 depositions required extensive preparation and document review. Arns

22 Fee Decl., ¶¶ 39-42. The file produced included over 1,300 pages of deposition transcripts and

23 extracts. *Id.* ¶ 42. Written discovery in the case was also substantial, with 11 sets of Requests

24 for Production, for a total of 214 combined categories propounded, and over 200,000

25 documents being delivered. *Id.* ¶ 43. These had to be sorted, organized, and analyzed by

26 Plaintiffs' counsel, and Plaintiffs made use of a digital document management software

27 (Autonomy) to speed this process. *Id.* at ¶¶ 44-47. Plaintiffs' counsel marked 725 exhibits

28 which were used in the depositions and other filings. *Id.* at ¶ 48. Regardless of how much

initial preparatory work was done, all of this had to be intimately understood by the person in charge of litigation strategy, taking the depositions, and overseeing settlement negotiations. [12]

The research done by Mr. Arns mainly involved constantly researching the law, documents and theories of liability and proof, and Facebook's policies as set forth in the 200,000 documents produced to create a 231-page settlement conference statement, mainly authored by Mr. Arns, that would serve as the receptacle for every relevant document and an explanation of its importance. Arns Fee. Decl., ¶ 2. This settlement conference statement and a 20-page executive summary of it were given to Hon. Edward Infante (Ret.) at the mediation of this matter. and was critical in moving the case toward settlement. The personal attention given the case by Mr. Arns is reflective of the importance accorded and dedication to the case by Plaintiffs' counsel. The novel issues presented, the complexity of the claims asserted, and the significant resources of the defendant frequently required his experience and abilities.

### F. There Was No Duplication Of Effort

Facebook criticizes the staffing on depositions, arguing that it only sent one lawyer to "half" of the depositions. However, an in-house attorney, named counsel on Cooley's pleadings, attended nearly all of those depositions.[13] It is also far easier to "defend" a deposition than it is to take one. Facebook also knew in advance what its clients' employees would or could say. All but the depositions of Plaintiffs' experts and the class representatives were Facebook employees or experts. Arns attorneys introduced 725 exhibits, many of them running to dozens of pages long. Jonathan Jaffe, Kevin Osborne and Robert Foss have expertise in the computer systems and economic fields, which was necessary to further explore nuanced areas that did or

---

[12] It is not the review of documents, but the sifting through documents identified as potentially useful and deciding how to use them in briefing, mediation and depositions which takes time. The lead attorney needs an intense understanding of the relevant documents to be able to prepare for the depositions, including identifying potential witnesses, reviewing documents the witnesses viewed, and learning what the witness knew or stated prior to the deposition.

[13] In-house counsel provides an additional set of ears and critical analysis, assisting the billing attorney just as does for the Plaintiffs. Counting the attorneys sent by Facebook, Cooley, and Gibson Dunn (Ashlie Beringer), Defendant sent and average of 1.95 attorneys to each deposition while Plaintiffs' counsel sent an average of 2.41. Plaintiffs' counsel thus averaged one more attorney than Defendant at less than half of the depositions.

PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS TO MOTION FOR FINAL APPROVAL AND FEE APPLICATION    CASE NO. CV 11-01726 RS

1   may have come up during the depositions of Facebook employees. Having an additional
2   attorney allows for formulation of additional questions for both current and future deponents to
3   happen contemporaneously, real-time note taking and support, and better exhibit management
4   and control. Due to the "seven hour" rule, Plaintiffs had to make the most of their one shot at
5   these witnesses.

6       Many of Facebook's arguments have been rejected by the very cases to which it cites. In
7   *Contreras v. City of Los Angeles*, No. 2:11-cv-1480-SVW, 2003 WL 1296793 (C.D. Cal.
8   March 28, 2013), the court noted that "[c]onferences between attorneys to discuss strategy and
9   prepare for oral argument are an essential part of effective litigation." *Id.* at \*5. The *Contreras*
10  court also observed that as to duplication, where more than one attorney has worked on a
11  motion or held conferences with a client, "[s]uch efforts are far from *unbillable* duplication."
12  *Id.* at \*4. Similarly, it noted that the presence of more than one or even several attorneys for
13  important hearings or "key events" such as settlement conferences is "standard practice." *Id.*
14  (citation omitted).[14]   There is no rationale provided at all for Facebook's suggested 20-25%
15  reduction in rates for the "other attorneys" at The Arns Law Firm. *See* FB Brief at 23.
16  Facebook simply throws this in, saying the reduction would bring the fees "commensurate"
17  with those in Pearl's declaration. As noted above, the rates for Jonathan Davis and Steven
18  Weinmann are perfectly in line with the rates in Pearl's declaration in this case for similarly
19  experienced attorneys in comparable cases.

20  **III.   CONCLUSION**

21      For all the foregoing reasons, the Motion for attorneys' fees and costs should be granted.

22

23

24  [14] While the District Court in *Contreras* reduced the hourly rate of $800 for an attorney who
    had "nearly 30 years" experience, which  does not compare to Robert Arns' 38 years of
25  experience, nor are the case remotely comparable—*Contreras* involved the excessive use of
    force by the police and claims under 42 U.S.C. § 1988. Similarly, *Pabst v. Genesco*, No. C11-
26  01592, 2012 WL 3987287 (N.D. Cal. Sept 11, 2012) is inapposite. The Court rejected the $900
    rate for an attorney, but noted this was not reasonable "in light of the straightforward nature of
27  the claims filed and settled in this case, as well as the limited amount of relief provided to the
28  class." *Id.* at 2.

1

2 | THE ARNS LAW FIRM

JONATHAN JAFFE LAW

3

4 | By: /s/ Robert S. Arns

By: /s/ Jonathan M. Jaffe

5 | Robert S. Arns
Jonathan E. Davis

Jonathan M. Jaffe

6 | Steven R. Weinmann

7 | ATTORNEYS FOR PLAINTIFFS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO OBJECTIONS TO MOTION
FOR FINAL APPROVAL AND FEE APPLICATION          CASE No. CV 11-01726 RS