1 | Janine R. Menhennet (SBN 163501)
2 | janinerm@sbcglobal.net
  | 601 Santa Helena
3 | Solana Beach, California 92075
  | Telephone: (858) 583-6972
4 |
5 | In propria persona, as *guardian ad litem* for Michael M., a minor____
6 |
7 | UNITED STATES DISTRICT COURT
8 | NORTHERN DISTRICT OF CALIFORNIA
9 | SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as guardian ad litem; and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as guardian ad litem, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC., a corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 11-cv-01726 LHK (PSG)<br><br>**IN PROPRIA PERSONA MOTION BY CLASS MEMBER MICHAEL M. TO HAVE HIS OBJECTION DEEMED VALID**<br><br>Judge: Lucy H. Koh<br>Courtroom: 4 |

Class Member Michael M., by and through his guardian ad litem Janine R. Menhennet, hereby moves the Court to consider his objection, filed timely, and postmarked on May 1, 2013. Michael M.'s objection was deemed invalid because it lacked a declaration. This was the only defect noted by the Administrator, found at Exhibit 1, at Docket number 343-1. Michael M. moves the Court to deem his objection valid, under the doctrine of substantial compliance. The Court has the power to grant this

motion through its inherent power to manage its own proceedings. *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996)(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32).

The terms of the notice provide that objections must contain the following: "(a) the name of the Action, and case number, "*Fraley v. Facebook, Inc.*, Case No. CV-11-01726 RS"; (b) the full name, address, telephone number, and email address associated with the Facebook account of the person objecting; and (c) an explanation detailing the specific reasons for each Objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence the objector wishes to introduce in support of the Objection(s)." Notice at 8, section 15. Objector Michael M. complied with <u>every</u> requirement regarding the contents of his objection. The only missing component was an affidavit regarding the precise contents of what Michael M. already included.

Michael M., the class member, is a minor. His signature, therefore, affixed to any legal document, has no enforceable legal effect. Michael M.'s guardian, Janine R. Menhennet, is a member of the California State Bar, and has been admitted to practice in the Central and Southern Districts of California, and in the Ninth Circuit. She has no record of discipline. Her signature on the pleading, therefore, verifies that the contents in the filing are true and correct to the best of her knowledge, under the language of Rule 11(b), which provides in relevant part as follows:

> That to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Under these circumstances, and because the minor class member's signature has no legal effect, Janine Menhennet's signature affixed to the Objection certifies that its contentions are warranted by existing law, that the contentions are made based upon a reasonable inquiry, and that the Objection is not being

1

asserted for any improper purpose. This surely satisfies the reason for requiring an affidavit or sworn statement.

Michael M. makes this motion under the doctrine of substantial compliance, "an equitable doctrine designed to avoid hardship in cases where a party has done all that can reasonably be expected." *Baccei v. U.S.*, 632 F.3d 1140, 1145 (9th Cir. 2011). Other cases have applied the doctrine of substantial compliance where there was no prejudice to the non-complying entity. *Peters v. City and County of San Francisco,* 41 Cal.2d 419, 426-27 (1953)(applying doctrine of substantial compliance where the original claim was filed with the wrong entity, but the correct entity received a carbon copy of the claim and therefore was on notice of the claim and therefore could not claim prejudice); *Carlino v. Los Angeles County Flood Control District,* 10 Cal.App.4th 1526 (1992)(although the wrong entity was served, the entity which received the notice was responsible for governing the correct entity, and therefore no prejudice resulted). In this case, the settling parties were on timely notice of the objection, which contained all requested information. There is no prejudice to settling parties whatsoever. That a minor failed to "verify" the contents should be a legal nullity, and should not operate to destroy a meritorious objection with a signature by a member of the California bar, certified under Rule 11.

Michael M. will suffer prejudice if his objection is not considered. His objection primarily concerns issues of exploiting minors for profit, among other issues. This is an important public policy consideration which should be considered by the Court. Michael M.'s objection was not lodged through the PACER database, because his guardian is not admitted in the Northern District of California. This motion, therefore, is being made in propria persona, on Michael's behalf. A true and correct copy of Michael M.'s objection is attached to this motion as Exhibit A, in the event the Court grants Michael

1  M.'s motion and chooses to consider the important societal and policy arguments raised therein.

Dated: June 24, 2013

By: _____
Guardian ad Litem for class member Michael M.

**EXHIBIT A**

Janine R. Menhennet (SBN 163501)
janinerm@sbcglobal.net
601 Santa Helena
Solana Beach, California 92075
Telephone: (858) 583-6972

As *guardian ad litem* for Michael M., a minor_____

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as guardian ad litem; and WILLIAM TAIT, a minor, by and through RUSSELL TAIT, as guardian ad litem, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FACEBOOK, INC., a corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 11-cv-01726 LHK (PSG)<br><br>**OBJECTION OF MICHAEL M. TO MOTION FOR APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR**<br><br>Judge: Lucy H. Koh<br>Courtroom: 4 |

Class Member Michael M., by and through his guardian ad litem Janine R. Menhennet, hereby objects to the Settlement Agreement preliminarily approved on December 3, 2012, and hereby notifies this Court of his intention to appear by and through the undersigned, to present argument in this matter at the Fairness Hearing.

This Objector, a minor, is reachable through his guardian ad litem listed above. His class membership is verifiable through the email notice he was sent, and through his class member number

0

11-cv-01726 LHK (PSG)
OBJECTION OF MICHAEL M. TO MOTION FOR APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR

945562836. This Objector filed a claim form on April 28, 2013, online, and received claim number 1754762. The GCG Control Number is 0190340495. Because this Objector is a minor, his telephone number and Facebook email contact is being withheld for reasons of privacy, but are available through his guardian ad litem, whose contact information is listed above. Further, in making his claim, Michael M. provided his email and contact information, which information is available to Settling Parties thereby. In adhering to the long-form Notice of Settlement, this Objection is being served on counsel for plaintiffs, counsel for Facebook, and the settlement administrator. A true and correct copy of this Objector's claim confirmation is attached hereto, before the Proof of Service.

According to defendant Facebook's records, this Objector was a minor during the class period.

The Settlement Agreement and Application for Attorneys' Fees should not be approved for the following reasons:

1. The class notice disseminated by email is inadequate;

2. The injunctive relief does not cure the harm complained of;

3. The injunctive relief has been improperly valued;

4. There are insufficient protections for minors;

5. The requested attorneys' fees far exceed the benchmark approved by the Ninth Circuit.

## I. THE CLASS NOTICE IS INADEQUATE AND MISLEADING

One of the most fundamental protections for a settlement being found fair and adequate is adequate notice to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998)("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). The notice disseminated to the class via email contains no information regarding attorneys' fees, which apparently constitute nearly 38% of the fund made available for distribution. This not only exceeds the 25% benchmark espoused by the Ninth Circuit, but also exceeds the 33% benchmark often adopted by California courts. In view of

the fact that class members **may not get any recovery at all,** this extraordinarily high fee request is unjustifiable.

The notice is misleading because there is no reference to the $20 million figure being depleted to $12.5 million before any monies are paid to the class (if they ever will be). Further, the notice indicates that users will be able to prevent their content from being displayed ("develop settings that will allow users to prevent particular items or categories of content or information related to them from being displayed"), when examination of the pleadings, declarations, and other documents on file indicate that content used to sell advertisements can only be **removed,** and not prospectively prevented from being displayed. The supporting declaration of Allman, in paragraph 8, states that Facebook **"will be permitted"** to place users' names and likenesses, and **then** users can remove this personal information. This language is mandatory, stating that the use "will" be permitted, and the user's recourse, then, is to remove it after it has been appropriated. This is an exercise in *forgiveness,* rather than *permission,* and further, runs contrary to the language contained in the email notice, quoted above.

Because the notice inadequately describes the terms of the settlement, and omits critical information regarding attorneys' fees, the notice fails to provide appropriate due process protections and should be re-disseminated with appropriate notice adequately identifying the true terms and conditions of the settlement.

## II. THE INJUNCTIVE RELIEF DOES NOT CURE THE HARM COMPLAINED OF

In a nutshell, this case is about Facebook charging advertisers to place ads on its website, and the advertisers get to sell their products using salespersons who have not been compensated, or even notified that they are schilling a product. This is a free endorsement, for which the user has not been compensated, much less notified. Facebook reaps additional sales benefits from appropriating users' identities, and the advertiser gets a more-effective advertisement. The Facebook user gets nothing. After the settlement, the practice continues unabated, with the exception that the user gets a notification, after the fact, that his likeness was used to sell a product, and the user can then remove his likeness, **after** it has already been used, again, without compensation. This is no solution whatsoever.

The Facebook user still gets his likeness appropriated. The Facebook user still sells products for which he does not receive compensation. After this has occurred, then the Facebook user is notified that

2

11-cv-01726 LHK (PSG)
OBJECTION OF MICHAEL M. TO MOTION FOR APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR

he is being used to sell products, and can remove his likeness from that application. Still, the Facebook user's privacy has been compromised. The new solution does not resolve the Civil Code section 3344 privacy violation, which the California legislature has valued at $750 per person.

### III. THE INJUNCTIVE RELIEF HAS BEEN IMPROPERLY VALUED

Settling parties make much of the "value" of the injunctive relief, which as described above, actually fails to remedy the harm complained of: taking someone's likeness to sell a product without compensation, and without permission. Then, to justify judicial approval of the plan to actually notify someone that his likeness is being used to sell a product without compensation, Settling Parties have agreed that allowing a user to remove his endorsement somehow has market value, thereby justifying the settlement. Settling Parties have retained experts to put a number on this value, but the premises are flawed and must be rejected, especially in view of the recent Supreme Court decision in *Behrend v. Comcast,* 133 S.Ct. 1426 (2013).

In *Behrend,* the court rejected certification because the methodology used to value the harm had no rational relation to the theory of damage. Plaintiffs got one method of harm certified, and the valuation used to support the theory was not tied to *any* of the theories advanced by plaintiffs, let alone the one the district court certified. The lack of nexus between harm to methodology of damages undid the certification. The present settlement suffers from the same defect.

The harm complained of is invasion of privacy, codified in Civil Code section 3344, and assigned a value by the legislature of $750 per occurrence. Yet the damages calculation, as described hereinabove, has no relation to the harm suffered. The valuation grasps at straws in its attempt to justify itself, borrowing concepts from the stock market and capital development, which truly have no connection to one's invasion of privacy, with or without remuneration.

Facebook, and its advertisers, have admittedly benefitted from using "friends" to make their advertising more effective: the advertisers sell more products, and Facebook can charge more to these advertisers because their ads are more effective. The only ones *not* making money off of this are the users whose likenesses have been appropriated to sell the products. Facebook has been able to quantify how much it benefits from using the "sponsored stories." What it cannot quantify is how much the class members should be entitled to (the Legislature has stated that it is $750 per violation).

3

11-cv-01726 LHK (PSG)
OBJECTION OF MICHAEL M. TO MOTION FOR APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR

Mr. Allman begins his analysis by assuming that "control over an asset" (¶10) has a value. However, being able to <u>remove</u> something is not control. Being able to determine if your likeness will be used in the first place would equate with control. Accordingly, Allman's hypothesis fails, based upon the flawed assumption regarding "control." The parties admit that Facebook will still <u>take</u> your likeness, but now it has to notify you that it has <u>already</u> done this, and <u>then</u> you can remove it. Further, there is no financial component to being used to sell items, or removing yourself from being used to sell items. Accordingly, the user gets no value whatsoever from Facebook's use of his information to increase advertising revenue.

Even assuming there could be "value" from being able to remove one's self from a "sponsored story," where is the value going? The only discernible value runs to the advertiser who got a personal endorsement for his product and increased sales, and to Facebook, who can charge the advertiser a higher rate for the "sponsored" spot. The value **never runs** to the class member, thereby destroying Allman's theory of "value."

The next problem with Allman's theory is the "real option" analysis. As Allman admits, the "real option" theory was invented for use in capital budgeting for development, or for use of a patent. Neither of these applications has any cognizable connection to being able to remove one's personal information from Faceboook after it was taken. The real option theory was apparently borrowed because the right to remove one's information is difficult to value (because it has no value; no one would pay for this). One should look to the terms of the theory itself: an "option," and as described by Allman, it is an "option to exercise use" of an asset, such as a patent, or a right to develop land. Removing one's personal information from a Facebook ad is not exercising use of any asset except guarding one's privacy once it has been breached. The entire theory is inapplicable and ought to be disregarded. It is not appropriate, because there is no "asset" to value. This Objector is reminded about the officious intermeddler who paints the house numbers on one's curb, and then asks to be compensated for it, although the homeowner did not ask for it, did not want it, and did not need it. The intermeddler cannot insist upon compensation under these circumstances, because it has no value to the homeowner. Similarly, attempting to place a value on the right to be "removed" from a list which compromises one's privacy finds no realizable value and must be rejected outright.

4

11-cv-01726 LHK (PSG)
OBJECTION OF MICHAEL M. TO MOTION FOR APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR

The settling parties' suggestion that this "control" is worth "at least $1 per class member" is offensive. That a user should have to part with $1 to remove his likeness from an internet advertisement that he was unwittingly used to sell products flies in the face of the legislature's determination that such an encroachment should be compensated to the user in the amount of $750, a difference of $751. There truly is no reconciling this "new math."

## IV. THERE ARE INSUFFICIENT PROTECTIONS FOR MINORS

No one is unaware of the existence of child predators, who have taken trolling for victims to new heights with the aid of the internet. The fact that Facebook misappropriated the faces of children to reap increased advertising revenue is appalling. Worse, the suggested fix is inadequate. While parents and children can "link" themselves under the terms of the settlement, and the parent can then control access to appropriation of the child's Facebook account, the language of the settlement is still too permissive. Apparently, the child can attest that he has his parent's permission to allow sponsored stories, OR link his account to his parents, OR neither, in which case his account will be restricted from sponsored stories. This disjunctive language is its flaw, in that children are free for the mining if they simply attest that they obtained their parents' permission. Further, the attestation language does not hold water: a minor is not legally capable of "attesting" to anything. Quite simply, children should not be a market for free advertising, especially on the internet. The proposed fix is inadequate and does not go far enough.

## V. THE REQUESTED ATTORNEYS' FEES ARE TOO HIGH

While this Objector can appreciate the effort which contributed to righting a wrong, the right proposed in the settlement, as described above, simply did not fix the problem. When evaluating a request for attorneys' fees, the Court must look at the value bestowed upon the class:

> Foremost among these [fee] considerations, however, is the benefit obtained for the class. *See Hensley v. Eckerhart,* 461 U.S. 424, 434-36 (1983). Thus, where the plaintiffs has achieved "only limited success," counting *all* hours expended on the litigation -- even those reasonably spent -- may produce an "excessive amount," and the Supreme Court has instructed district courts to instead "award only that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 436.

5

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In this case, irrespective of the lodestar amassed, the solution simply does not fix the problem: appropriation without permission and without remuneration (a secondary consideration). This Objector would consider this settlement "only limited success," and would suggest a discounted fee, rather than a fee comprising 38% of the settlement fund ($7.5 million of $20 million).

The 38% requested, further, is far and above the 25% benchmark set in *Six Mexican Workers,* and even above the California benchmark of 33%. Given the dubious solution proposed by the settling parties, a 38% take of the common fund is simply unjustifiable.

Lead Counsel has touted the "value" of the injunctive relief. However, there is no value flowing to the class; only the right to remove your "sponsored story" **after** it has already been posted and used to sell goods or services (and after both Facebook and the vendor have had the ability to have the advertisement viewed). This utter lack of value to the class member, despite the attempt to pin supposed value to the class member, must be considered when determining an appropriate attorneys' fee, under the Advisory Committee Notes to Rule 23(h), 2003: "Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class," and under Ninth Circuit case law. *See, In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D.Cal. 2009)("The standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.").

Accordingly, the only value which should be weighed in considering the fairness of this settlement to the class is the actual value Facebook is parting with: $20 million, less $8 million suggested in fees and costs, or $12 million. Further, this $12 million may evaporate; if there are too many claimants, the money allotted to be distributed to the class members can be entirely transferred to *cy pres* recipients, leaving no value whatsoever to the class members. This truly cannot support a 38% fee request.

## CONCLUSION

WHEREFORE, This Objector respectfully requests that this Court:

A. Upon proper hearing, sustain these Objections;

6

11-cv-01726 LHK (PSG)
OBJECTION OF MICHAEL M. TO MOTION FOR APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

C. Award an incentive fee to this Objector for his role in improving the Settlement, if applicable.

Dated: May 1, 2013

By: _____
Guardian ad Litem for class member Michael M.

7

11-cv-01726 LHK (PSG)
OBJECTION OF MICHAEL M. TO MOTION FOR APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR

# DECLARATION OF SERVICE
*Fraley et al. v. Facebook, Inc.*
U.S.D.C., N.D. CA., Case No. 11-cv-01726 LHK (PSG)

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to this action. My business address is 750 B Street, Suite 1950, San Diego, CA 92101. I served the document(s) described as:

**(1) OBJECTION TO MICHAEL M. TO MOTION FOR APPROVAL OF SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, AND NOTICE OF INTENT TO APPEAR**

on the following interested parties and in the manner as follows:

Robert S. Arns, Esq.
The Arns law Firm
515 Folsom St, 3rd Floor
San Francisco, CA 94104

Michael G. Rhodes, Esq.
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111

Fraley v Facebook, Inc. Settlement
c/o GCG
P.O. Box 35009
Seattle, WA 98124-1009

☒ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope for collection and mailing following our ordinary business practices. I am readily familiar with our ordinary business practices for collecting and processing mail for the United States Postal Service, and mail that I place for collection and processing is regularly deposited with the United States Postal Service that same day with postage prepaid to:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on May 1, 2013, at San Diego, California.

*/s/ Carolyn Mills*
Carolyn Mills

1
**DECLARATION OF SERVICE**