IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ANGEL FRALEY, et al.

    Plaintiffs,

v.

FACEBOOK, INC.,

    Defendant.

_____/

No. C 11-1726 RS

**ORDER GRANTING IN PART MOTION FOR ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS**

## I. INTRODUCTION

This class action challenged the propriety of Facebook's "Sponsored Stories" program, in which the names and "profile pictures" of Facebook members are sometimes presented in connection with promoting products and services those members have indicated they "like," through the Facebook "like" feature. The parties' settlement has received final approval and requires (1) establishment of a $20 million dollar settlement fund, and (2) Facebook to make changes to the Statement of Rights and Responsibilities ("SRRs") it contends governs use of its site, and to implement additional mechanisms giving users greater information about, and control over, how their names and likenesses are employed in connection with Sponsored Stories (the "injunctive relief"). The settlement fund is to be distributed in cash payments of $15 each to Facebook members who submitted valid claims. It will also be used to pay settlement administrative

expenses, attorney fees and costs, and incentive awards, with the remaining balance going to specified *cy pres* recipients. Plaintiffs move for an attorney fee award of $7.5 million, plus costs, and incentive awards to the named plaintiffs of $12,500 each, for a total of $37,500. The motion will be granted, albeit in lower amounts than those requested.

## II. DISCUSSION[1]

### A. Attorney Fees

Plaintiffs seek to recover $7,500,000 in fees and $236,591.08 in costs[2] out of the settlement fund. They contend the fee request is well justified under the "percentage-of-recovery" approach, in which a fee award of 25% of a settlement fund is generally considered the benchmark. *See Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). Although plaintiffs are requesting fees amounting to 37.5% of the settlement fund, they argue that the recovery should be seen as including the economic value of the injunctive relief, which they estimate to be between $57.4 million and $226 million. Plaintiffs then claim that their requested $7.5 million in fees represents either 9.6%, 4.5%, or an even smaller percent of the common fund, depending on which expert valuation of the injunctive relief is employed.

As a cross-check on the purported reasonableness of their request, plaintiffs calculate their unadjusted lodestar (i.e., the hours counsel expended multiplied by their claimed hourly rates) as $5,391,030. The $7.5 million in requested fees amounts to a 1.391 multiplier, which plaintiffs argue is "more than reasonable" compared to multipliers in other fee awards approved in the Ninth Circuit. Plaintiffs' counsel have submitted a summary of the hours they claim to have worked on this case— 8,346.6 hours in total—broken down into ten "task categories." The claimed billing rates range from $350 per hour for a second year associate to $950 per hour for lead counsel. In support of these rates, plaintiffs have provided curriculum vitae for each of the six attorneys for whom they are

---

[1] The factual and procedural background of this litigation has been set forth in prior orders and will not be repeated here.

[2] This cost figure was updated on reply to a lower amount than first requested.

seeking fees and an expert declaration opining as to the reasonableness of the rates in this geographical market.

1. Basis of calculation

In opposing the fee request, Facebook insists that applicable California law requires that the fee award be calculated through the lodestar approach, and *not* as a percentage of the recovery. As Facebook correctly observes, the availability and amount of the fee award are considered substantive issues of state law for *Erie* purposes. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). While Facebook points to some California precedent questioning whether a percentage-based award remains available in California, more recent Ninth Circuit guidance teaches that in common fund cases, under state and federal law, courts possess the "discretion to apply either a lodestar method or the percentage-of-the-fund method in calculating a fee award." *Fischel v. Equitable Life. Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citing *Vizcaino*, 290 F.3d at 1047); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558 (2009).

In this instance, 25% of the common fund recovery (assuming no value ascribed to injunctive relief, as explained below), prior to deductions for costs and administrative procedures, is $5 million. Plaintiffs' claimed lodestar is just under $5.4 million. Although the lodestar would be subject to downward adjustment to the extent the rates or hours are found to be unreasonable, the eventual award under a lodestar approach at least theoretically could be adjusted upward through use of a multiplier. Thus, whether the award were calculated as a percentage of recovery with the lodestar used as a "cross-check," or under a lodestar approach with the percentage of recovery as a cross-check, there would be little, if any, difference in the eventual award in this case.

Regardless of the approach, "[t]he ultimate goal is to award a reasonable fee." *Hartless v. Clorox*, 273 F.R.D. 630, 645 (S.D. Cal. 2011). As an exercise of discretion, in this instance it is appropriate to utilize the percentage of recovery approach, including the 25% benchmark. Although the percentage recovery is apparently sometimes calculated prior to any deduction for costs and settlement administration expenses, in this instance it appears more appropriate and reasonable to

apply the benchmark percentage to that portion of the settlement that will actually be distributed to the class, either directly or through *cy pres.* Accordingly, plaintiffs shall recover fees in the amount of 25% of the settlement funds remaining *after* deducting (1) all costs of settlement administration, (2) the attorney costs allowed below, and (3) the incentive awards allowed below.

### 2. Size of the common fund

Plaintiffs urge the Court to assign a dollar value to the injunctive relief, such that it can be considered part of the total settlement fund, for purposes of applying a percentage-based fee. Plaintiffs have pointed to cases in which courts have acknowledged the value of injunctive relief when awarding fees, particularly as one factor supporting a multiplier under a lodestar approach. *See*, *e.g.*, *White v. Experian Information Solutions*, 2011 U.S. Dist LEXIS 79044 (C.D. Cal. July 15, 2011). Additionally, the monetary value of injunctive relief has sometimes been taken into account where it plainly would result in more cash in the pockets of the class members in the future, even if the precise amount of such benefit would be difficult to ascertain. *See*, *e.g.*, *McCoy v. Health Net*, 569 F.Supp.2d 448 (D.N.J. 2008) (value of injunctive relief considered where settlement required defendant to alter procedures for future processing of health insurance claims, to avoid underpayments.)

Here, plaintiffs have offered several different methodologies for assigning a dollar value to the injunctive relief. There is nothing to suggest, however, that any class member will see a single dollar more in his or her pocket as a result of any of the injunctive provisions, directly or indirectly. There is no indication, for example, that by having the opportunity to limit and control appearances in Sponsored Stories, a Facebook member will be able to exploit his or her name or likeness to greater commercial advantage elsewhere. There certainly are no circumstances under which a member will obtain monetary compensation from Facebook as a result of the injunctive provisions.

Under these circumstances, while the non-financial benefits to the class of the injunctive relief certainly can be used to support the over-all fairness, reasonableness, and adequacy of the settlement, and while they may generally support a fee award at the benchmark level, it would not be appropriate to award plaintiffs' counsel a percentage of a dollar figure that is, at best, an abstract

theoretical construct, *not* cash benefits actually obtained for the class. Accordingly, adopting any particular dollar calculation offered by plaintiffs is unwarranted, and the "value" of injunctive relief will not be deemed part of the settlement fund against which a benchmark percentage will be applied.

### 3. Lodestar cross-check

As noted, plaintiffs' claimed lodestar is somewhat greater than 25% of the settlement fund, particularly given that costs, expenses, and incentive awards are being deducted from the fund prior to application of the percentage. Given the size and complexity of this litigation, the hours expended by counsel were generally commensurate with the tasks involved and the results achieved. Facebook complains that excessive hours were billed by lead counsel, for work that could have been delegated to associates with lower billing rates. Delegation, however, does not inevitably lead to overall savings, and counsel here appears to have avoided some of the excesses that can result from overstaffing. Whether plaintiffs have sufficiently demonstrated the reasonableness of all of their hourly rates is a somewhat closer call.

Were it necessary to calculate the lodestar with precision, at least some reduction in hourly rates likely would be applied, and specific time entries might require closer examination. For purposes of applying the cross-check, however, plaintiffs have adequately demonstrated that they reasonably incurred approximately 8000 hours in attorney time, which at reasonable hourly rates would result in a lodestar of not less than $4.5 million. Plaintiffs have not shown that application of a multiplier to that lodestar is warranted in order to reach a reasonable fee award. This is particularly so given that plaintiffs have urged application of a percentage-based recovery, and the lodestar calculation is only being employed as a cross-check. Fees are being awarded at the full 25% benchmark, applied against the net cash recovery to class members, directly or through *cy pres*. The lodestar calculation demonstrates that figure is not excessively high. Having urged a percentage-based recovery, plaintiffs cannot now reasonably contend that the lodestar cross-check suggests that recovery is too low unless a multiplier were applied. In sum, as a cross-check, the

lodestar approach confirms that application of the percentage of recovery model, in the manner outlined above, reaches an appropriate result.

### B. Costs

Plaintiffs have adequately supported their request for costs, and Facebook does not suggest otherwise, except with respect to a third-party claim made by an entity known as Razorfish, for responding to a subpoena. Plaintiffs agree that the Razorfish claim is excessive, and are challenging it. Accordingly, costs are awarded in the amount requested, $236,591.08. As suggested by plaintiffs on reply, an additional $45,000 shall be allocated for payment of the Razorfish claim, with any excess remaining upon resolution of that claim to be added to the *cy pres* distribution.

### C. Incentive Awards

As noted, the three named plaintiffs seek incentive awards—or "service" awards—of $12,500 each, in light of the risks they took, and the efforts they made, in pursuing this litigation. As noted in the order approving the settlement, *Radcliffe v. Experion Information Solutions,* 715 F.3d 1157 (9th Cir. 2013) does not preclude such awards here, where eligibility to receive them was not conditioned on class representatives' support for the settlement. Nevertheless, *Radcliffe* teaches that making incentive awards, "should not become routine practice" and that they must be "scrutinize[d]" carefully, so that they "do not undermine the adequacy of the class representatives." 715 F. 3d at 1160. The greater the disparity between the awards and the recovery by other class members, the more cause there is for concern. *Id.*

In light of these principles, an award in the amount requested by plaintiffs would be excessive. Nevertheless, they did take risks and contribute time and efforts to this litigation, which resulted in benefits to the class as a whole. Whether or not Facebook's prior practices caused significant and tangible harm, the additional transparency and control resulting from the settlement is to users' benefit. Under all the circumstances, an appropriate incentive award to each named plaintiffs will be in the amount of $1500.

## III. CONCLUSION

Plaintiffs' application for costs is granted in the amount of $236,591.08. Up to an additional $45,000 is allowed to pay the Razorfish claim, with any excess to be included in the *cy pres* distributions. The three named plaintiffs are awarded $1500 each. Plaintiffs may recover attorney fees of 25% of the balance of the settlement funds remaining after deduction of (1) settlement administration expenses, (2) the costs awarded herein, (3) the incentive awards made herein. Upon final calculation of those figures, plaintiffs shall file a statement setting forth the exact amount of their fee recovery consistent with this order.

IT IS SO ORDERED.

Dated: 8/26/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE