Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW, No. 236
Washington, DC 20036
Voice: (703) 203-3848
tedfrank@gmail.com

*Attorney for Objector Sam Kazman*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem, individually on behalf of and all others similarly situated,<br><br>             Plaintiffs,<br><br>     v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>            Defendants,<br><br>_____<br><br>Sam Kazman,<br><br>            Objector. | Case No. CV-11-01726 RS<br><br>**DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES**<br><br>Hon. Richard Seeborg<br><br>Date:        October 17, 2013<br>Time:        1:30 p.m.<br>Courtroom:  3<br><br>**<u>CLASS ACTION</u>** |

Theodore H. Frank declares as follows:

1.     I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.     I am the attorney for objector Sam Kazman in this matter.

3.     I lead the Center for Class Action Fairness, a public interest law firm based out of Washington D.C. I founded the Center in 2009.

4.     I am paid on a salary basis that does not vary with the result in any case. I do not receive a contingent bonus based on success in any case, a structure that would be contrary to I.R.S. restrictions on public interest law firms.

5.     The goal of the Center is to protect class members in the class action and derivative settlement process from the abuse of the class action and shareholder derivative system. The Center's work in this and other cases, which have won class members millions of dollars, has received national acclaim. *See, e.g.,* Victor Li, "Frank Takes Aim at Bayer Aspirin Settlement, Hagens Berman Fees," The Litigation Daily (Feb. 6, 2013); Ashby Jones, "A Litigator Fights Class-Action Suits," Wall St. J. (Oct. 31, 2011); Allison Frankel, "Legal Activist Ted Frank Cries Conflict of Interest, Forces O'Melveny and Grant & Eisenhofer to Modify Apple Securities Class Action Deal," American Lawyer Lit. Daily (November 30, 2010).

6.     The Center has been successful, winning reversal on 7 of 9 federal appeals decided to date and all three in the Ninth Circuit. *In re Dry Max Pampers Litig.* (6th Cir. Aug. 2, 2013); *In re HP Inkjet Printer Litigation*, No. 11-16097 (9th Cir. May 15, 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).

### Attempt to Meet and Confer

7.     Under Local Rule 54-5, the Center is required to file its request for attorneys' fees within fourteen days of this Court's August 26, 2013, order.

8.     The Center is very leanly staffed with annual spending under $500,000 and only three attorneys. At the moment, all three are undergoing time-consuming life changes: one closed on a new house

August 27, 2013, and is undergoing a move; one is getting married next week; and the third is pregnant and expecting a baby in December.

9.     In addition, the Center was unusually busy in the August 26-September 9 time frame. I had a hearing in San Diego on September 9; we filed an Eighth Circuit brief and joint appendix on September 3; we are making or have made decisions whether to file appeals in three district-court cases where we won partial relief; we have been ordered to produce a Sixth Circuit brief by September 17; we have three Supreme Court briefs and an objection due in the next eight days; we are dealing with financial reporting requirements. Between that, the Labor Day weekend, and the Jewish holidays, we did not realize until Saturday, September 7, that our motion for attorneys' fees was due Monday, September 9.

10.     Very early in the morning on September 9, I emailed class counsel Mr. Arns to determine his position on our motion for attorneys' fees. Mr. Arns is apparently in mediation today, and I did not yet receive a response; because I am about to fly cross-country, I had to file these papers before I got on a plane to Washington, D.C. I will do my best to meet and confer with Mr. Arns to narrow the issues before Mr. Arns's opposition is due.

**Objector Attorney Awards and the Center**

11.     Tax law limits the amount that the Center can receive in attorneys' fees over a five-year period to no more than 50% of our expenses in that time.

12.     In 31 of the Center's objections, a court rejected a settlement, reduced attorneys' fees, or the settlement was otherwise improved. The Center has sought attorneys' or expert's fees in only ten of those cases to date (including this one), and has been awarded a total of $322,452 since 2009, including an $86,000 award that has not yet been paid because other objectors have appealed the settlement approval.

13.     The Center regularly passes up the opportunity to seek fees to which it is legally entitled. In *Classmates*, for example, the Center did not make a fee request and instead asked the district court to award money to the class; the court subsequently found that an award of $100,000 "if anything" "would have undercompensated CCAF." *In re Classmates.com*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *34 (W.D. Wash. Jun. 15, 2012).

**Objector Attorney Award Based on Percentage of the Benefit**

14.     Applying a 10% mid-level fee award, the Center would be entitled to an attorney award of fees of over $280,000.

15.     Instead, the Center requests an aggregate award of $135,000—less than 5% of the benefit occurred, a rate a fifth of the 25% class counsel received for creating a benefit to the class.

16.     The Center requests that $85,000 of that award (all surplus exceeding $50,000) be donated to the net settlement fund, which will fall under the residual funds under the terms of the settlement if class recovery cannot be augmented.

17.     The remaining $50,000 we request payable to the Center constitutes less than 2% of the benefit conferred to the class.

**Lodestar Cross-check**

18.     Local Rule 54-5(b) requires a brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services.

19.     The Center has been monitoring this case since June 2012, when the parties announced the first settlement in this case.

20.     I was the primary attorney on this case, with primary responsibility on all aspects of the case, including attending and arguing at the fairness hearing. Many class members contacted me interested in objecting, and I had to screen class members interested in objecting to ensure that their motives were primarily for the benefit of the class and that they had standing to object to a fee award.

21.     In terms of counsel's skill and experience, I graduated University of Chicago Law School in 1994 with high honors and as a member of Order of the Coif and Law Review, and where I had an Olin Fellowship in Law & Economics and Public Service Scholarship. I clerked for the Hon. Frank H. Easterbrook of the Seventh Circuit for a year. I worked in prominent "BigLaw" firms in Washington, DC, and Los Angeles, California, for ten years, handling complex litigation for plaintiffs and defendants, and arguing and winning two appeals. I served as the first head of the AEI Legal Center for the Public Interest, and have testified before federal and state legislative subcommittees about class actions and class action

DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES

settlements. In 2008, I served as a consulting attorney for a governor running for national office and her husband, who faced an investigation over alleged ethical improprieties; the state Personnel Board eventually exonerated them.

22.     I founded the Center for Class Action Fairness in 2009, and have won national acclaim for its work from the *Wall Street Journal*, *Forbes*, the *ABA Journal*, and several other legal publications; some of my other legal work has been covered by the *New York Times*, *GQ*, and the *Washingtonian*, among other publications. I have spoken about class action settlements across the country including, *inter alia*, to the ABA Annual National Institute on Class Actions; to the Federalist Society National Lawyers Convention; to the DRI Corporate Counsel Roundtable; to numerous law firms and student groups at law schools; and even in television and radio appearances. Journalists regularly call me for quotes about class action settlements, even in cases where I am not involved: before the Center was formally involved in this case, for example, *Fortune* and the *ABA Journal* sought quotes from me about this settlement. Adam Liptak of the *New York Times* recently wrote in August that I was "the leading critic of abusive class-action settlements." I have argued and won seven appeals on behalf of class members since 2011, and was heavily involved in briefing in an eighth victory.

23.     Starting in 2012, I billed private clients at $750/hour. I found that even at that rate, I was getting more offers for work than I had time to handle, and was turning down many opportunities. I am raising my billing rate to $900/hour with a substantial minimum retainer. Nevertheless, I seek a lodestar of only $750/hour in this case. This is below the lodestar rate of attorneys in this case with comparable skill and experience.

24.     Adam Schulman is a 2010 graduate of Georgetown University Law School who has worked for the Center since 2011. This understates his skill and experience, because with thousands of hours of work focusing on class-action settlements, he almost certainly knows more about the law of Rules 23(e) and 23(h) than any other person his age. In August, he won his first federal appellate oral argument. Mr. Schulman did most of the research in this case; hashed out the legal strategy for objection in conjunction with me; and wrote the first draft of several sections of the objection. We are seeking a lodestar rate of $375/hour for his

DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES

work; we believe this is substantially below what plaintiffs' and defendants' counsel is being billed for attorneys with less relevant experience doing less substantive work.

25.     I billed 37.2 hours and Adam Schulman billed 63.7 hours for a total lodestar of $51,787.50. On information and belief, this is substantially less than the lodestar incurred by class counsel in responding to our objection (their opposition to objections mentioned our objection more than any other) or by defense counsel in writing their brief opposing the fee petition. We believe that this is a reasonable time spent investigating two complex settlements and a fee petition and numerous other objections, preparing for and attending a fairness hearing, and screening potential objectors.

26.     We maintained detailed time records of the work performed on this case and are willing to share those with the Court *in camera* if they are at issue. However, we believe the fee should be awarded on the basis of a percentage of the class benefit achieved.

27.     Our lodestar does not include any time spent on this fee application.

28.     Our lodestar does not include time I spent traveling to and from California for the fairness hearing.

29.     Our lodestar does not include time a summer associate spent researching *cy pres* issues.

30.     An award of $135,000 would not be an unreasonable multiplier under the circumstances, and a smaller multiplier than class counsel called reasonable in this Circuit. Moreover, because the Center is waiving any amount over $50,000 to the benefit of the class, the receipt of $50,000 would thus represent a multiplier of under 1 of our already artificially low lodestar and would plainly not be a windfall to the Center.

**Objector Incentive Awards**

31.     In other cases where clients of mine have objected to unfair class action settlements, the clients have been threatened with abusive discovery requests and subjected to vitriolic abuse in the briefing for agreeing to be represented by me. In this case, class counsel trained its untrue *ad hominem* attacks on me, rather than my client, but the risk is regularly present *ex ante*.

32.     I have had multiple cases where a potential objector chose not to get involved because they were afraid of the possibility of such abusive discovery requests and vitriolic abuse. I thus firmly believe that

DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES

incentive awards in successful substantive objections are an important public-policy tool to encourage legitimate good-faith objections.

### Other Factors Supporting Fee Award

33.     The risk of nonpayment was high: because the Center does not and cannot agree to *quid pro quo* settlements to withdraw appeals or objections in exchange for cash payment, the Center could only receive payment if there is a court award after the parties amend the settlement or the Court agreed with our opposition to the class counsel fee request. While the Center ultimately prevails in the majority of its objections, it is less than 25% of the time that there ends up being improved pecuniary benefit to the class, as opposed to good precedent that will benefit future class members in future class actions and class action settlements. And even when we win a material improvement in a settlement, the Center does not seek attorneys' fees unless our role in the improvement is unambiguous and quantifiable, lest we generate an opinion criticizing us for our fee request.

34.     And it is worth noting that the Center's success rate reflects not a lack of risk, but the quality of our work, with a success rate substantially larger than class action objections in general. (One of the most famous professional objectors has publicly stated at an ABA panel that he loses 90% of his objections.)

35.     The Center is not a professional objector. A "professional objector" is a legal term with a specific definition: an attorney who "routinely submits unsuccessful objections to settlements and threatens to file insubstantial appeals of settlement approvals merely to obtain payoffs from class counsel." John E. Lopatka & D. Brooks Smith, *Class Action Professional Objectors: What to Do About Them?*, 39 Fla. St. L. Rev. 865, 874 (2012). A non-profit public-interest objector like myself may be "professional" and may be an "objector," but is not a "professional objector" as that term is used in the law. Paul Karlsgodt & Raj Chohan, "Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval," *BNA: Class Action Litigation Report* (Aug. 12, 2011) (distinguishing the Center for Class Action Fairness from "professional objectors"); Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n. 150 (public interest groups are not "professional objectors").

36.     The difference between a "professional objector" and a public-interest objector is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections

DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES

regardless of the merits of the settlement or the objection, because they make most of their money from being paid not to hold up a settlement. Thus, courts frequently criticize professional objectors as nuisances. *E.g.*, *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).

37.     In contrast, a public-interest firm such as the Center has to triage dozens of requests for *pro bono* representation, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a meritless objection.

38.     Professional objectors can make substantial sums of money from agreeing to withdraw an appeal at the expense of the class. It would create perverse incentives if a legitimate successful objection merits a smaller reward than a meritless objection. It is thus important for public-policy reasons to create an incentive for private attorneys to take on abusive class action settlements with meritorious substantive objections.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 9, 2013, in San Diego, California.


        */s/ Theodore H. Frank*

DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES