Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW, No. 236
Washington, DC 20036
Voice: (703) 203-3848
tedfrank@gmail.com

*Attorney for Objector Sam Kazman*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem, individually on behalf of and all others similarly situated, | Case No. CV-11-01726 RS<br><br>**REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>Hon. Richard Seeborg |
| Plaintiffs, | Date: October 17, 2013<br>Time: 1:30 p.m.<br>Courtroom: 3 |
| v. | **CLASS ACTION** |
| FACEBOOK, INC., a corporation; and DOES 1-100, | |
| Defendants, | |
| Sam Kazman, | |
| Objector. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................i

TABLE OF AUTHORITIES.........................................................................................................ii

Introduction.................................................................................................................................1

I.      Kazman's motion complies with Civil Local Rule 54-5. ...............................................1

II.     Kazman is entitled to fees for the class benefit attributable to the Kazman objection. .........................3

III.    Objectors' fee award should be funded from class counsel's fee award...................................6

IV.     Class counsel's scurrilous attacks on Kazman and Frank are false and unwarranted. ...........................8

V.      Lodestar crosscheck confirms the reasonableness of the request............................. 12

VI.     Kazman is entitled to an incentive award. ................................................................. 14

Conclusion ................................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc., v. Windsor,*
    521 U.S. 591 (1997) ...................................................................................................... 12

*Dawson v. Delaware,*
    503 U.S. 159 (1992) ...................................................................................................... 11

*Dennis v. Kellogg Co.,*
    No. 09-cv-1786 (S.D. Cal.) .......................................................................................... 8-9

*Dennis v. Kellogg Co.,*
    697 F.3d 858 (9th Cir. 2012) ............................................................................................ 7

*Dewey v. Volkswagen AG.,*
    681 F.3d 170 (3d Cir. 2012) .............................................................................................. 9

*Dewey v. Volkswagen of Am.,*
    728 F. Supp. 2d 546 (D.N.J. 2010) ................................................................................... 9

*Dewey v. Volkswagen of Am.,*
    909 F. Supp. 2d 373 (D.N.J. 2012) ................................................................... 1, 3, 6, 9, 14

*Doe v. Fulton-DeKalb Hosp. Auth.,*
    628 F.3d 1325 (11th. Cir. 2010) ...................................................................................... 11

*Fieger v. Cox,*
    524 F.3d 770 (6th. Cir. 2008) .......................................................................................... 11

*Fogel v. Farmers Groups, Inc.,*
    No. BC300142 (Cal. Sup. Ct. (L.A. County) 2011) ......................................................... 14

*Fortson v. Marriott Int'l, Inc.,*
    No. CV 11-01454 LB, 2013 U.S. Dist. LEXIS 62496 (N.D. Cal. May 1, 2013) ........................ 2

*Gens v. Wachovia Mortg. Corp.,*
    2011 WL 3844083, 2011 U.S. Dist. LEXIS 97401 (N.D. Cal. Aug. 30, 2011) ....................... 1-2

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.,*
    212 F.R.D. 400 (E.D. Wis. 2002) ...................................................................................... 7

*Hajro v. Barrett,*
    No. C 10-1772 MEJ, 2012 U.S. Dist. LEXIS 133363, (N.D. Cal. Sept. 18, 2012) ................... 2

*Hunt v. Rousmanier's Adm'rs,*
    21 U.S (8 Wheat) 174 (1823) ............................................................................................ 7

*In re Apple Inc. Secs. Litig.,*
    No. 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) ...... 14

*In re Bayer Corp. Combination Aspirin Prods. Mkt'g and Sales Practices Litig.*,
No. 09-md-2023(BMC)(JMA) (E.D.N.Y.)..................................................13

*In re Bluetooth Headset Prods. Liab. Litig*,
654 F.3d 935, (9th Cir. 2011) ..................................................9-10, 14

*In re Citigroup Secs. Litig.*,
No. 07-cv-9901(SHS) (S.D.N.Y. Sept 10, 2013) ...........................8, 12, 14

*In re Classmates.com Consolidated Litig.*,
No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012)....6, 8, 12, 14

*In re Dry Max Pampers Litig.*,
724 F.3d 713 (6th Cir. 2013) .....................................................14

*In re Ikon Office Solutions*,
194 F.R.D. 166 (E.D. Pa. 2000).....................................................7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
2003 WL 22801724, 2003 U.S. Dist. LEXIS 21322 (S.D.N.Y. Nov. 24, 2003) .........3

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
842 F. Supp. 2d 346 (D. Me. 2012) ................................................14

*In re Prudential Ins. Co. of Am.*,
273 F. Supp. 2d 563 (D. N.J. 2003)................................................6

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) .............................................5, 13

*In re Rite Aid Corp Secs. Litig.*,
396 F.3d 294 (3d Cir. 2005) .....................................................12

*Kahre v. United States*,
CV-S-02-0375-LRH-LRL, 2003 U.S. Dist. LEXIS 6938 (D. Nev. Mar. 10, 2003) .......11

*Lan v. Ludrof*,
2008 WL 763763 (W.D. Pa. Mar. 21, 2008)..........................................6

*Lane v. Facebook, Inc.*,
No. 08-cv-3845-RS ...............................................................5

*Lonardo v. Travelers Indem. Co.*,
706 F. Supp. 2d. 766 (N.D. Ohio 2010).....................................4, 9-10, 14

*Magnus Elecs., Inc. v. Masco Corp.*,
871 F.2d 626 (7th Cir. 1989) ....................................................11

*Nault's Auto Sales, Inc. v. Am. Honda Motor Co., Acura Auto Div.*,
148 F.R.D. 25 (D.N.H. 2003) .....................................................11

*Neslin v. Wells,*
  104 U.S. 428 (1882) ....................................................................................................7

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,*
  322 F.3d 147 (2d Cir. 2003) .......................................................................................7

*Pecover v. Electronic Arts,*
  No. C 08-02820 CW (N.D. Cal. Jun. 19, 2013) ........................................................14

*Perdue v. Kenny A.,*
  139 S. Ct. 1662 (2010) ..............................................................................................14

*R.A.V. v. St. Paul,*
  505 U.S. 377 (1992) ..................................................................................................11

*Reynolds v. Beneficial Nat. Bank,*
  288 F.3d 277 (7th Cir. 2002) ...................................................................................3-4

*Robinson v. Delgado,*
  No. 1:02-CV-01538 NJV, 2011 U.S. Dist. LEXIS 21218 (N.D. Cal. Feb. 17, 2011) .................2

*Rodriguez v. Disner,*
  688 F.3d 645 (9th Cir. 2012) ......................................................................................6

*Rodriguez v. West Pub. Corp.,*
  563 F.3d 948 (9th Cir. 2009) ......................................................................................4

*Shaw v. Toshiba Am. Info Sys., Inc.,*
  91 F. Supp. 2d 942 (E.D. Tex. 2000) ........................................................................10

*Ultracashmere House, Ltd. v. Nordstrom, Inc.,*
  123 F.R.D. 435 (S.D.N.Y. 1988) ...............................................................................11

*United Steelworkers of Am. v. Sadlowski,*
  435 U.S. 977 (1978) ....................................................................................................6

*Vought v. Bank of Am.,*
  901 F. Supp. 2d 1071 (C.D. Ill. 2012) .........................................................................8

*Weeks v. Kellogg Co.,*
  No. CV-09-08102 (MMM), 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) .........14

*West Virginia State Bd. of Educ. v. Barnette*
  319 U.S. 624 (1943) ..................................................................................................11

*White v. Auerbach,*
  500 F.2d 822 (2d Cir. 1974) ......................................................................................12

*Williams v. Colvin,*
  No. C-11-02962(EDL), 2013 U.S. Dist. LEXIS 126325 (N.D. Cal. Sept. 3, 2013) ....................

*Young v. Polo Retail, LLC.,*
    2007 WL 951821, 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ............................ 13

*Zimmerman v. Oregon Dep't of Justice.,*
    170 F.3d 1169 (9th Cir. 1999) .............................................................................................

*Zucker v. Occidental Petroleum Corp.,*
    192 F.3d 1323, 1329 (9th Cir. 1999) ................................................................................. 4

**Rules and Statutes**

Fed. R. Civ. Proc. 11 .................................................................................................................. 10-11

N.D. Cal. Civil Local Rule 54-5 ..................................................................................................... 1-2

N.D. Cal. Civil Local Rule 54-5(b)(1) ............................................................................................. 1

N.D. Cal. Civil Local Rule 54-5(b)(2) ............................................................................................ 12

**Other Authorities**

Capriccioso, Rob, *McCain Opposes Harper Nomination to UN Council, Citing Indian Concerns*,
    INDIAN COUNTRY TODAY MEDIA NEWORK, Sept. 24, 2013,
    http://indiancountrytodaymedianetwork.com/2013/09/24/mccain-opposes-harper-
    nomination-un-council-citing-indian-concerns-151434 ............................................................ 12

Objector Sam Kazman submits this Reply in Support of his earlier Motion for Attorneys' Fees ("Fee Motion") (Dkt. 363), following the Plaintiffs' Opposition to the motion ("Opp.") (Dkt. 370), and their subsequent Corrected Opposition ("Corr. Op.") (Dkt. 379). Class counsel has requested oral argument on this straightforward motion. Flying to San Francisco would cost Kazman's counsel over $1,000 in travel expenses and over ten hours of travel. Kazman requests that his counsel be permitted to participate in any hearing telephonically.

### Introduction

Class counsel concedes that objectors are entitled to fees if they "show[]that a court adopted their objection." Corrected Opp. 8 (quoting *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395 (D.N.J. Dec. 14, 2012) (granting CCAF fees of 13.4% of benefit conferred)). Class counsel does not dispute that this Court adopted multiple elements of Kazman's objection to the fees. No other objectors made the arguments Kazman did; no other objectors have claimed that Kazman is unfairly taking credit for their work. Multiple cases—including cases cited by class counsel—award a higher percentage of class benefit than Kazman asks for here. That ends the inquiry. Kazman is entitled to fees, and it would be reversible error if he was not awarded those fees. Class counsel's irrelevant and false *ad hominem* attacks and bad-faith refusal to meet and confer do not provide a reason othewise.

Class counsel never disputes that it would be unfair to the class for the class to be required to pay two fees for the single benefit received when it was class counsel's fault that the original fee request was so excessive. (Indeed, if, as class counsel claims, Kazman's objections were "obvious," it begs the question why they made such an excessive fee request subject to such an obvious objection, and alone provides a reason for reducing their fees.) The fees should be awarded out of class counsel's share of the recovery.

### I.   Kazman's motion complies with Civil Local Rule 54-5.

Kazman has complied with the particulars of Local Rule 54-5, notwithstanding plaintiffs' claims to the contrary (Corr. Opp. at 4-5). The Frank declaration (Dkt. 363-1 ¶¶7-10) facially satisfies Local Rule 54-5(b)(1) because it includes a "statement that no conference was held, with certification that the applying attorney made a good faith effort to arrange such a conference, setting forth the reason the conference was not held." L.R. 54-5(b)(1); *see also Gens v. Wachovia Mortg. Corp.*, 2011 WL 3844083, 2011 U.S. Dist. LEXIS

97401, at *6-*7 (N.D. Cal. Aug. 30, 2011) (email from moving party to opposing party notifying of intent to bring fee motion satisfies Rule 54-5). Local Rule 54-5 makes no demand that the attempt to meet and confer occur "at any particular time before the filing of a motion. . . .[N]o such requirement[] exist[s]." *Robinson v. Delgado*, No. 1:02-CV-01538 NJV, 2011 U.S. Dist. LEXIS 21218, at *23-*24 (N.D. Cal. Feb. 17, 2011) (conference on same day as filing of the motion). Thus, courts in this district will award fees even where meet and confer attempts were not made until the morning that the fee motion was filed. *See Williams v. Colvin*, No. C -11-02962(EDL), 2013 U.S. Dist. LEXIS 126325 (N.D. Cal. Sept. 3, 2013).[1]

Even if the Court were to find a violation of 54-5, it should "not deny the motion on a procedural defect" where there was an attempt to meet and confer after filing the motion. *Fortson v. Marriott Int'l, Inc.*, No. CV 11-01454 LB, 2013 U.S. Dist. LEXIS 62496, at *10 (N.D. Cal. May 1, 2013); *accord Hajro v. Barrett*, No. C 10-1772 MEJ, 2012 U.S. Dist. LEXIS 133363, at *7 (N.D. Cal. Sept. 18, 2012) (finding L.R. 54-5 violation to be "an innocent mistake that was remedied by his subsequent efforts to meet and confer with opposing counsel."). Despite Frank's subsequent efforts (including unilaterally narrowing the issues by requesting $135,000 instead of $280,000 and sending numerous emails in attempt to set up a conference), Mr. Arns repeatedly refused to meet and confer. Ultimately, Mr. Arns stated by email that he refused to meet and confer—instead sending a lengthy and insulting email arguing why he need not meet and confer that plainly took longer to draft than the actual meet-and-confer would have taken. The purpose of a meet-and-confer is to narrow issues before the Court. Arns has identified no issues he is willing to narrow; he has refused to take the opportunity to even spend five minutes on the phone with Frank to attempt to do so, despite repeated entreaties from Frank.

Arns fails to explain why his busy schedule is more important than Frank's busy schedule, or why he could spend hours of attorney time drafting emails to send to Frank refusing to meet and confer instead of simply spending five minutes on the phone to meet and confer. If Arns's argument is to be taken seriously, any party can force the denial of a motion by simply having its attorney refuse to meet and confer. Arns's bad faith in raising this argument and refusing to meet and confer is reason alone to deny it. Arns has suffered no prejudice from the failed attempt at a meet-and-confer—especially given that he unilaterally

---

[1] *Williams* penalized the fee request by deducting two hours spent on the fee request, but Kazman seeks no fees for time spent on Kazman's fee request, so no reduction is required. Dkt. 363-1 ¶27.

refused to meet and confer.

Plaintiffs' procedural objection to the fee request should be overruled.

**II.    Kazman is entitled to fees for the class benefit attributable to the Kazman objection.**

Class counsel concedes that objectors are entitled to fees if they "show[]that a court adopted their objection." Corrected Opp. 8 (quoting *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395 (D.N.J. Dec. 14, 2012) (granting CCAF fees of 13.4% of benefit conferred)). Class counsel does not dispute that this Court adopted multiple elements of Kazman's objection to the fees. That ends the inquiry.

Plaintiffs' cardinal reason for opposing a fee award is that Kazman's objection conferred no substantial benefit upon the class. Corr. Opp. 5-15. But, as detailed specifically in the initial Fee Motion (Fee Motion at 1-5), Kazman's objection did confer a benefit on the class. Kazman is not "taking sole credit"[2] for the Court's decision to reduce the fee percentage, base fees on the net rather than gross fund, reject the valuations of injunctive relief, or augment the direct claimant recovery, nor does the law require him to do so. This Court has seen the filings in this case, and can readily see that Kazman did not file a "me too" objection or merely duplicate the objections of others.

Plaintiffs protest that Kazman lacks "evidence" that his objection made a material difference in the Court's decision. Is Kazman supposed to depose this Court? Of course not. Whether Kazman's objection was so influential upon the Court's private and unascertainable deliberations is irrelevant to an award of fees based on objector benefit. In the Fee Motion (Dkt 363 at 4), Kazman cited Judge Posner's decision in *Reynolds v. Beneficial Nat'l Bank*, which declares that objectors' "lawyers who contribute materially to the proceeding" are entitled to a fee, even if the judge would have *sua sponte* made the same finding without the objection. 288 F.3d 277, 288 (7th Cir. 2002) ("[O]bjectors must decide whether to object without knowing what objections may be moot because they have already occurred to the judge."). *Accord In re Indep. Energy Holdings PLC Sec. Litig.,* 2003 WL 22801724, 2003 U.S. Dist. LEXIS 21322, at *2-*3 (S.D.N.Y. Nov. 24, 2003) ("Although this Court would likely have reached the same result [reducing class counsel's fees from 25% to 20%], with or without the objectors' comments, some of the viewpoints and facts highlighted by the objectors certainly assisted the Court in making an appropriate fee award. Because the overall settlement was

---

[2] Corr. Opp. 6.

1   improved by their efforts, objectors' counsel are entitled to an award of fees"). Plaintiffs' response did not

2   bother to distinguish this core reasoning of *Reynolds* or give any reason not to follow it.

3           Plaintiffs cite *Lonardo v. Travelers Indem. Co.*, 766 F. Supp. 2d 766 (N.D. Ohio 2010), for the argument

4   that no meaningful benefit is attributable to Kazman's objection. Corr. Opp. at 7 n.6. But *Lonardo* does not

5   help them. In *Lonardo*, the plaintiffs voluntarily agreed to reduce their settlement and it was a factual question

6   whether the objector's objection had motivated that voluntary reduction. Here, class counsel's unreasonable

7   fee was involuntarily reduced by the Court after class counsel fought tooth-and-nail to preserve it.

8           Binding Ninth Circuit case law cited by the Fee Motion (Dkt. 363 at 3-4) that Plaintiffs ignore

9   demonstrates the error of Plaintiffs' argument. *Rodriguez v. West Pub. Corp.* holds that it is "clearly erroneous"

10  to deny an objector's fee request on the basis that counsel "did not add anything to its decision to deny

11  incentive awards." 563 F.3d 948, 963 (9th Cir. 2009). As in *Rodriguez,* the net effect of Kazman's objections

12  was to increase the amount of the settlement fund available to the class, regardless of whether the Court

13  would have independently arrived at the same conclusion. *Rodriguez* shows that the plaintiffs' opposition

14  urges the wrong standard: a given objector may still be entitled to fees even though the deciding court does

15  not single her out and "expressly mention" the value of her objection. *Contrast* Corr. Opp. at 8-9 *with*

16  *Rodriguez. Rodriguez* also undermines the Plaintiffs' notion that there was no benefit to a reduced fee award

17  because the request was "merely a request and in no way was assured to be awarded." Corr. Opp. at 13. Like

18  the proposed incentive awards in Rodriguez, class counsel's fee request was subject to the court's discretion.

19  But when the court denies said request "[i]n the wake of th[e] objection," the Ninth Circuit "cannot let stand

20  a ruling that Objectors did nothing that increased the fund or substantially benefitted the class members."

21  563 F.3d at 963; *accord Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999) ("The

22  contribution [the objector's] attorney made, by providing an adversarial context in which the district court

23  could evaluate the fairness of attorneys' fees, was substantial.").

24          In any case, Kazman's objection was, as a matter of obvious fact, unique. Even by comparison to

25  Facebook's later-filed opposition to the fee award (Dkt. 344)—the other notably thorough opposition to

26  class counsel's fee award—the Kazman objection stacks up favorably. *See* Fee Motion at 1-2. Recall that

27  Kazman had no way of knowing that Facebook would bother to file an opposition, let alone adopt many of

28  the same arguments of Kazman's objection. *Compare* Dkt. 344 at 18-20, *with* Dkt. 310 at 13-15; *also compare*

Dkt. 344 at 10-13 with Dkt. 310 at 15-16. Still the plaintiffs' silence is revealing; they can point to no objection that urged the court to award percentage-based fees on the net, rather than the gross, settlement. Contrary to plaintiffs' protestations (Corr. Opp. 11), class counsel did not "repeatedly" or even once advocate for a percentage of recovery award based on the net settlement,[3] nor did class counsel ever argue for a *reasonable* percentage award. Rather, class counsel was insistent on seeking an excessive percentage of the gross settlement, inclusive of notice and administration costs.

Kazman's arguments were detailed and well-grounded in fact and law. The record belies plaintiffs' assertion the objections were "routine" or "obvious": plaintiffs themselves did not anticipate these objections, and avoid them by presenting reasonable settlement terms. Neither the settling parties, nor the Court, nor other objectors had previously made the same arguments as Kazman.[4] Plaintiffs cannot turn Kazman's objection in a "me-too" objection by wishful *ex post* fiat. We can further tell that the objections were not "me-too" objections by looking at Plaintiffs' opposition to the objections, which mentioned Kazman's objection more than any other. Moreover, not even the other objectors contend that Kazman's objection was a "me-too" objection: Kazman is the only objector who filed a request for fees, and no objector has objected to Kazman's request or suggested that Kazman is unfairly taking credit for their objection.

Class counsel's calculation of the benefit to be "at most $296,114" (Corr. Opp. at 13) operates under the tenuous assumption that Kazman's objection conferred no benefit in arguing that the requested fee percentage was excessive (Dkt. 310 at 4-8), that the injunctive relief should not be included in the fund

---

[3] It is worth noting that in the last Facebook settlement before this Court, it did evaluate the fees using a percentage of net recovery model. *See Lane v. Facebook, Inc.*, No. 08-cv-3845-RS, Order re Attorneys Fees, Dkt. 127 (applying lodestar method).

[4] Although the plaintiffs correctly note that the Court has been skeptical of earlier injunctive relief valuations at the first preliminary approval hearing in 2012 (Corr. Opp. at 10), Kazman's objection rebutted proposed valuative methodologies for the injunctive relief that the plaintiffs had not even proposed at the time of the Court's intial skepticism. *See* Corr. Opp. at 10 ("Class counsel…submitted additional economic theory, expert opinions, and detail in support of valuation"); *see also* Kazman Obj. (Dkt. 310) at 8-12 (refuting all the new valuation metrics). Furthermore, Kazman's arguments unquestionably expanded on the Court's earlier skepticism. *See In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) ("appreciat[ing] Objectors['] further development" of argument initially raised by the court and awarding 10% of the class benefit).

calculation (Dkt. 310 at 8-12), that the lodestar crosscheck did not support the fee percentage sought (Dkt. 310 at 12-17), and that the Court should augment the value of individual claimants' recoveries (Dkt. 310 at 17-21). The $296,114 estimate assumes that the *only* benefit was arguing for utilizing the net recovery rather than the gross recovery as the denominator for the percentage of recovery calculation.

Nor are plaintiffs correct to assert that "fees for objectors are rarely so high as 10%." *See, e.g., Lan v. Ludrof*, 2008 WL 763763, at *28 (W.D. Pa. Mar. 21, 2008) (awarding objecting 25% of the reduction in attorneys' fees of class counsel); *Dewey,* 909 F. Supp. 2d 373 (objectors entitled to same range of percentage as class counsel) (13.4% to CCAF-represented objectors) (cited by class counsel); *see also In re Classmates.com Consol. Litig.*, No. C09-45RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 12, 2012) (noting that award of $100,000 "if anything" "would have undercompensated CCAF" where $100,000 was roughly 5% of the monetary benefit conferred).[5] As long as there is a lodestar crosscheck supplementing the base percentage method, there is no reason at all that the benchmark for objectors' fees should be different than that of plaintiffs' fees. *Dewey,* 909 F. Supp. 2d 373.

### III.   Objectors' fee award should be funded from class counsel's fee award.

Although plaintiffs make efforts to distinguish the several cases awarding objectors' fees out of class counsel's fund (Fee Motion at 5-6), plaintiffs cite no countervailing cases that refuse to award fees out of class counsel's funds when requested or suggest that doing so would be improper. (Class counsel's subject heading that "Ninth Circuit Authority" requires otherwise is false: the Ninth Circuit has never ruled on the question.) Awarding objectors' fees out of class counsel's fee fund is sound public policy, avoids unfairness, and is within the equitable discretion of this Court.

"[T]he 'common benefit' theory is premised on a court's equity power" *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez v. Disner*, 688 F.3d 645, 654 (9th Cir. 2012). Thus, it is within the Court's equitable discretion not to penalize the class for class counsel's negotiation of an excessive

---

[5] *In re Prudential Ins. Co. of Am. Sales Practices Litigation*'s award to objectors of 1.48% was unusually small, and likely resulted from the fact that an award larger than $1,260,000 may have been a windfall based on lodestar considerations. 273 F. Supp. 2d 563 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 694 (3d Cir. 2004). A $135,000 award to Kazman, with Kazman disclaiming all but $50,000 of it, would not constitute such a windfall. *See infra* §V; Fee Motion at 6-8.

fee request that necessitated the services of objecting class members. There is a pertinent discussion of the issue in *Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 416-17 (E.D. Wis. 2002). There, the court recognized its equitable discretion to impose the burden of paying objector's fees on the class but correctly declined to do so, based on its recognized fiduciary obligation to safeguard the class funds, especially in a pre-certification settlement and in light of the fact that the amount per claimant was already modest. *Id.* at 417. Instead, the *Great Neck* court awarded the objector fees from "class counsel and the defendants as they may agree but without diminution of the sum awarded to the class." *Id.*; *accord In re Ikon Office Solutions*, 194 F.R.D. 166, 197 (E.D. Pa. 2000) (Objectors' "fees and costs will be taken from class counsel's award to avoid dilution of the settlement fund.").

And the *Great Neck* and *Ikon* courts arrived at the right answer without even alluding to the most compelling reason why class counsel should pay the objectors' bill: it would be highly inequitable to require the class to foot the bill for **both** class counsel **and** objector's counsel, when class counsel created the necessity of objection by tendering an unreasonable settlement in the first place. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) ("While a court of equity will on swift wings fly to relieve the innocent from wrong and injury, it travels with leaded feet and turns a deaf ear, when called on to furnish a cloak of righteousness to cover sin.") (quoting *Grant v. Grant*, 286 S.W. 647, 650 (Tex. Civ. App. 1926)). Class counsel's first fee request in this case exceeded 50% of the proposed gross settlement fund, and their reconsidered fee request was nearly 40% of the second proposed settlement fund. As Kazman explained in his objection, this was "clearly excessive under [Ninth Circuit] guidelines." Kazman Obj. at 6 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012)).

Yet, class counsel now wish to shift the cost of their own inefficiency—submitting one unreasonableness fee request after another—to the class. As between the class members and class counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). As the venerable Supreme Court reporter and jurist Henry Wheaton observed at oral argument in *Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat) 174 (1823), "no maxim of equity is better established than this, 'that no man is entitled to the aid of a Court of equity, when the necessity of resorting to that Court is created by his own fault.'" Class counsel cannot resort to equitable common fund doctrine now.

The latest example of case support is *In re Citigroup Securities Litigation. See* No. 07-cv-9901(SHS), Dkt. 286, Order (S.D.N.Y. Sept. 10, 2013) (attached as Exhibit 1). There, Frank's *pro se* objection through CCAF resulted in a reduction of nearly $30,000,000 in fees to the class counsel and a concomitant benefit to the class. Because Frank was solely representing himself, case law prohibited a request for fees, but still permitted a request for expense reimbursement. Finding that "Frank's objections enhanced the adversarial process and played a not insignificant role in focusing the Court on instances of overbilling by plaintiffs' counsel, resulting in a reduction of the attorneys' fees awarded to lead counsel and therefore providing a tangible economic benefit to the class," Judge Stein awarded CCAF expense reimbursement to "be deducted from the attorneys' fees awarded to lead counsel." *Id.* at 1-2. More generally, *Citigroup* reaffirmed that "objectors have a valuable and important role to perform in policing class action settlements" *Id.* at 1.

In addition to equity, good public policy necessitates payment from class counsel's fee in order to discourage future class counsel from proposing unfair settlements. Plenty of unfavorable settlements are approved quickly, quietly and unopposed, without a single objection filed. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey of several federal districts that reported between 42% and 64% of settlements engendered no filings by objectors). Put simply, "counsel should not benefit from its efforts to win approval of an inadequate settlement." *Classmates*, 2012 U.S. Dist. LEXIS 83480, at *23.

## IV.    Class counsel's scurrilous attacks on Kazman and Frank are false and unwarranted.

Reinforcing the equitable reasons to dip into class counsel's fund instead of the class's are the no less than seventeen instances of unjustified *ad hominem* attacks class counsel levies against Frank and Kazman in their oppositional response. Corr. Opp. *passim*. Class counsel complains that Kazman's attorneys "had the audacity to request attorneys' fees for work on an appeal that was filed, argued, and won *by different objectors represented by different counsel*--even though he and his client were not involved at all in that appeal, and apparently would not receive the fees if awarded" in the S.D. California case of *Dennis v. Kellogg.*[6] Corr. Opp. at 17. Class counsel never explains why a complaint that class counsel was collecting too much while objectors

---

[6] No. 09-cv-1786-IEG (S.D. Cal.).

responsible for the bulk of the class benefit were collecting zero is "audacious." (It seems that class counsel kept the "audacious" even after they corrected falsely accusing Kazman's counsel of making an attorney-fee request for himself in that case. Dkt. 370 at 16; Frank Decl. Exh. 1.) Though class counsel claims to have "corrected" the brief, they fail to inform this Court that the *Dennis* court issued an order to show cause why the objectors should not be granted attorneys' fees after the objectors did file a fee request. *Dennis* Dkt. 117, 118. It's unclear why the *Dennis* court's criticism of Henderson's counsel disentitle him to a fee in this case (class counsel gives no reason), but it should be noted that those criticism are false. Henderson's counsel has filed a motion in *Dennis* to have the court reconsider and amend the factual findings that class counsel here relies upon (*See* MPA in Support of Motion for Reconsideration attached as Exhibit 3). [7]

---

[7] The reconsideration motion details the Southern District's errant reliance on *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d. 546, 575 (D.N.J. 2010) (cited by Corr. Opp. at 17). First, the *Dewey* settlement approval decision cited was overturned and vacated after Frank's client appealed to the Third Circuit. *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012). Perhaps even more importantly, on remand the district court disavowed that any negative connotation should be drawn from its earlier use of the term "professional objector." "The Court's use of the term 'professional objector' did not intend to connote that the objections presented in 2010 or now were motivated by a desire to hold up the settlement for personal profit, even though some academic commentary assigns such a meaning to the term. This, however, does not change the fact that certain objectors are represented by attorneys who are in the profession of objecting to class action settlements, whether motivated by views of the law, ideology, or otherwise. The phrase was not meant to be pejorative and this professional focus does not bar counsel from receiving an appropriate fee award where counsel has advocated for and helped secure an improved settlement to the benefit of the class." *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 396 n.24 (D.N.J. 2012). The court found that Frank's clients had "improved the settlement" by "identif[ying] a deficiency in the adequacy of the representative plaintiffs and successfully pursu[ing] their argument on appeal, such that a new settlement was negotiated..." *Id.* at 396. Thereupon, Judge Shwartz awarded CCAF fees of "10.5% of the benefit conferred, well within the range of acceptable percentages-of-recovery." *Id.* at 396. Note how *Dewey* also refutes Class Counsel's claim that the percentage requested here is somehow unusual.

Another part of the reconsideration motion details the Southern District's errant reliance on *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d. 766 (N.D. Ohio. 2010) (cited by Corr. Opp. at 17). *Lonardo* criticized only one particular argument as "long on ideology"; it otherwise held that "Frank's policy arguments contribute to the legal discussion regarding this important area of law," and upon reconsideration awarded fees to CCAF based on the $2 million benefit to the class caused by the objection of Frank's client. 706 F. Supp. 2d at 807, 816. The court's other findings were similarly complimentary. *Id.* at 807 ("[T]he Court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving."); *id.* at 812 ("it appears that the parties' decision to propose it without a Court order was prompted, at least in part, by Objector Greenberg's filing.") Even more significantly, Frank ultimately persuaded the Ninth Circuit that the singular argument which *Lonardo* had described as "long on ideology and short on law" was legally correct.

REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Thus, class counsel here attempts to mislead the Court into thinking that Frank had a "motive of looking for an easy handout."[8] Class misuses the "see" citation, falsely implying that Frank participated in *Shaw v. Toshiba Am. Info Sys.*, 91 F. Supp. 2d. 942 (E.D. Tex. 2000). *See* Corr. Opp. at 7 & n.7. *See also* Corr. Opp. at 16 (making baseless allegation that "Frank routinely files virtually identical objections in very similar cases" and referring to his objection as "boilerplate" when it clearly was not). Indeed, when class counsel was confronted with a threat for Rule 11 sanctions for these false *ad hominems*, they sent a lengthy email disclaiming the most obvious readings and arguing that class counsel merely meant an innocent interpretation for their miscites and false accusations—an innocent interpretation that conveniently demonstrates that their arguments are entirely irrelevant when applied to Kazman and Frank. Frank Decl. Exh. 1.

Imputation to Frank of a pecuniary "motive" was even repudiated by the *Lonardo* case upon which class counsel heavily relies. *See Lonardo*, 706 F. Supp. 2d at 807 ("'[T]he Court is convinced that Mr. Frank's goals are policy-oriented as opposed to economic and self-serving."). Kazman further attempted to ward off these concerns by seeking to stipulate to an injunction against withdrawing his objection in exchange for *quid pro quo* consideration. *See* Dkt. 310 at 28-29. Class counsel did not take him up on the offer.[9]

---

The Ninth Circuit held that segregation of fee funds (i.e. "a kicker") is a sign of a self-dealing unfair settlement. *Contrast In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), *with Lonardo*, 706 F. Supp. 2d at 785. The "long on ideology and short on law" statement from *Lonardo* should not be relied upon, especially in the Ninth Circuit where *Bluetooth* is binding law.

[8] Kazman's decision not to appeal the grounds on which his objection were overruled stems from the fact that the Court's decision to adopt Kazman's arguments for reducing fees corrected much of the unfairness related to the settlement, making it less problematic than other settlements CCAF wishes to devote resources to. CCAF has limited time and resources and cannot appeal every decision where it does not agree 100%, and prefers to be in cases where there are not several co-appellants.

[9] Class counsel's shotgun approach to *ad hominems* presents internal contradictions. Is Frank to be criticized because he's looking for an easy handout (despite the evidence that CCAF has requested far less fees than which it is legally entitled), or because his objections are on behalf of an ideological non-profit (despite the evidence that CCAF has won tens of millions of dollars for class members)? If fees are to be denied to objectors who successfully improve class benefit because those objectors seek recompense for their success, but also to objectors who successfully improve class benefit because they're ideologically motivated to win money for class members, it is hard to see what objectors are ever entitled to fees. The Ninth Circuit says differently.

Nor does class counsel now confine their *ad hominem* epithets to Frank. Kazman argued that he was entitled to an incentive award because of the *ex ante* risk of being subjected to abuse by opposing counsel for objecting. Class counsel decides to make that hypothetical a reality in their brief, exacting personal reprisal on Objector Kazman himself. *E.g.* Corr. Opp. 17-18 ("Kazman is also not simply a public-minded citizen; he is also an attorney with a track record of activism. . . ."). (It is never clear why a "track record of activism" is supposed to be a criticism. Don't the class representatives and class counsel have a track record of activism for bringing this lawsuit?) Ironically, class counsel, whose clients allege injury to privacy rights, scandalizes Kazman for wishing to protect his personal, private information in the declaration accompanying his objection (accusing him of the nefarious motive of "concealing his interest").

Class counsel's diatribes would be humorous if they were not so unethical.[10] The Court must decline the plaintiffs' invitation to interpose irrelevant political viewpoints and associations as factors in the disposition of this motion. The First Amendment would prohibit as much. *R.A.V. v. St. Paul,* 505 U.S. 377, 392 (1992) (outlining prohibition on viewpoint discrimination); *Dawson v. Delaware*, 503 U.S. 159, 166-67 (1992) (prohibiting consideration of "nothing more than the abstract beliefs" and associations of litigants where they are not germane to the matter at hand). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (opinion of Jackson, J.).

---

[10] A "decision to include unsubstantiated, vituperative statements with regard to the character and professional ethics [of counsel] plainly constitutes a violation of Rule 11." *Kahre v. United States*, CV-S-02-0375-LRH-LRL, 2003 U.S. Dist. LEXIS 6948, at *17 (D. Nev. Mar. 10, 2003); *Magnus Elecs., Inc. v. Masco Corp.*, 871 F.2d 626, 633 (7th Cir. 1989) (sustaining sanctions for "frivolous attacks upon the magistrate and opposing counsel"); *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25, 35, 37 (D.N.H. 1993) (Violation of Rule 11 to engage in "unsubstantiated and extreme attacks on the personal integrity, ethics and character of defense counsel" and a "deluge of *ad hominem* assaults and insupportable accusations); *Ultracashmere House, Ltd. v. Nordstrom, Inc.*, 123 F.R.D. 435, 437 (S.D.N.Y. 1988) (imposing sanctions where attorney "indulge[d] in repeated personal attacks on the respondent and its counsel.").

A paper spurred by "political and professional animus" toward the objector and her counsel is one improper purpose under Rule 11. *See Fieger v. Cox*, 524 F.3d 770, 774 (6th Cir. 2008); *Doe v. Fulton-DeKalb Hosp. Auth.*, 628 F.3d 1325, 1341 (11th Cir. 2010) (district court's imposition of sanction upon finding that counsel's frivolous motion to disqualify as part of a "campaign of vilification" was "unassailable").

Just because abusive and hostile treatment of objectors is commonplace does not make it right. "[I]t is well settled that objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements." *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974); *accord Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997) (noting the "benefit of adversarial investigation" in vetting class action settlements); *Citigroup, supra*; Fee Motion at 8. And they "are entitled to an allowance as compensation for attorneys' fees and expenses where a proper showing has been made that the settlement was improved as a result of their efforts." *White*, 500 F.2d at 828. As has been CCAF's all-too-customary experience in its short history, class counsel here adopts a "hammer and tongs" approach that is unwarranted. *Classmates*, 2012 U.S. Dist. LEXIS 83480, at *35.[11] Although class counsel is adverse to Frank and Kazman, that does not absolve class counsel of all of their fiduciary duties with respect to Frank and Kazman *qua* class members, and it certainly doesn't exonerate their departure from basic norms of professional conduct and courtesy.

## V.    Lodestar crosscheck confirms the reasonableness of the request.

Plaintiffs skirtingly suggest that Frank violated L.R. 54-5(b)(2) by "fail[ing] to submit the requisite detailed time keeping records." Corr. Opp. at 16. Frank specifically noted, and now again states, that he would be perfectly willing to submit CCAF's detailed timesheets to the Court. Dkt. 363-1 ¶26. His description of the work performed and the attorneys performing it (Dkt. 363-1 ¶¶18-30) was in full compliance with L.R. 54-5(b)(2) (requiring "[a] statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained.").

The description is also in full compliance with the law of attorneys' fees. *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) (when petitioner is relying on a base percentage of recovery methodology, with a lodestar crosscheck, submission of detailed timesheets for "bean-counting" is not

---

[11] *Accord* Rob Capriccioso, *McCain Opposes Harper Nomination to UN Council, Citing Indian Concerns*, INDIAN COUNTRY TODAY MEDIA NETWORK, Sept. 24, 2013, http://indiancountrytodaymedianetwork.com/2013/09/24/mccain-opposes-harper-nomination-un-council-citing-indian-concerns-151434 (last visited Sept. 25, 2013) (describing how class counsel in *Cobell* case had revealed personal information of objecting class members in an attempt to intimidate them into dropping their appeal).

necessary); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 465 (D.P.R. 2011) (same); *Young v. Polo Retail, LLC*, 2007 WL 951821, 2007 U.S. Dist. LEXIS 27269, *15 (N.D. Cal. Mar. 28, 2007) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours."). Kazman thinks the Court has better things to do than flyspeck 100 hours of billable time over a trivial fee request that is a single-digit percentage of the class benefit achieved—especially when class counsel does not deny that they spent substantially more than 100 hours or $50,000 of billable time responding to Kazman's objection. The lodestar is more than reasonable, especially given that it does not include the dozens of additional hours expended responding to class counsel's vexatious opposition to a fee award required by Ninth Circuit law—a vexatiousness that includes insisting that Kazman's non-profit counsel engage in an expensive cross-country flight for a ten-minute hearing in San Francisco over the small sum at stake here.

More egregious is the outright fabrication that "Frank…claims that [the 2.7 multiplier he requests] is smaller than the multiplier Class Counsel sought to apply." Corr. Opp. 16. Kazman's motion never makes that claim; rather the motion states that the requested award "is under the range of multipliers **class counsel argued was reasonable**." Fee Motion at 7-8 (emphasis added). And that statement is exactly correct. *See* Pl. Mem. in Support of Attorneys' Fees, Dkt. 253 at 36 ("In the Ninth Circuit and elsewhere, multipliers of between 3 and 4.5 have been common.").

Class counsel's 1.39 reqested multiplier arose out of notable inefficiencies, including a blended lodestar hourly rate 25% higher than CCAF's ($645 vs $513). *See* Kazman Obj. (Dkt. 310) at 12-16. Moreover, CCAF accomplished the majority of what they set out to achieve, while class counsel realized only a nuisance settlement of an infinitesimal fraction of the billions of dollars they claimed would be available in this lawsuit.

Objectors faced the legitimate risk that they would not be paid for their considerable time and effort expended. *See Prudential*, 273 F. Supp. 2d at 571. Though CCAF has had dozens of successful objections, including seven federal appellate victories, this is only the tenth time in five years that CCAF has sought fees or expenses in district court.[12] The requested $135,000 award is reasonable. It is made even more reasonable

---

[12] One fee request remains pending. *In re Bayer Corp. Combination Aspirin Prods. Mkt'g and Sales Practices Litig.*, No. 09-md-2023 (BMC) (JMA) (E.D.N.Y.). CCAF's other eight fee and expense requests were

by virtue of the fact that CCAF is ceding to the class any award over $50,000, an amount less than its lodestar, which is presumptively reasonable. *Perdue v. Kenny A.*, 139 S. Ct. 1662 (2010).

**VI.    Kazman is entitled to an incentive award.**

Kazman requests a token $500 incentive award. It is appropriate to award objectors incentive awards just as class representatives receive incentive awards. *Dewey*, 909 F. Supp. 2d at 398-400; *Lonardo*, 706 F. Supp. 2d at 816-17; *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011).

The personal risk an objector takes is demonstrated by Plaintiffs' calumnious response papers in this case. An objector risks reputational injury or intimidation by objecting. *See* Capriccioso, *supra* at 11 n.10. An objecting class member also risks having to deal with harassing discovery or a subpoena. *See Classmates*, *supra*.

Legitimate good faith objectors offer a valuable service to the court and absent class members, in fairness hearing proceedings that "cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). The incentive award does what its name suggests, incentivizing good faith meritorious objections. For the sake of the process at large, it would be bad policy if objectors would be better off losing their objections, appealing and then settling on appeal than they would be after successfully objecting at the district court level.

**Conclusion**

Kazman's motion for reasonable attorneys' fees and incentive award to be paid by class counsel should be granted.

---

successful. *In re Citigroup Sec. Litig.*, No. 07-cv-9901 (S.D.N.Y. Sept. 10, 2013) ($19,987.50); *In re Apple Inc. Secs. Litig.*, 5:06-CV-05208-JF (HRL), 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) ($87,000); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-817 (N.D. Ohio 2010) ($39,936); *Fogel v. Farmers Groups, Inc.*, No. BC300142 (Cal. Sup. Ct. (L.A. County) 2011) ($47,577); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 842 F. Supp. 2d 346, 351 (D. Me. 2012) ($10,000); *Weeks v. Kellogg Co.*, No. CV-09-08102 (MMM), 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) ($21,000); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373 (D.N.J. 2012) ($86,000); *Pecover v. Electronic Arts*, No. C 08-02820 CW (N.D. Cal. Jun. 19, 2013) ($33,975).

Dated: September 30, 2013

Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW, No. 236
Washington, DC 20036
tedfrank@gmail.com
(703) 203-3848

*Attorneys for Objector Sam Kazman*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system thus effectuating service of such filing all ECF registered attorneys in this case.

DATED this 30th day of September, 2013.

*/s/ Theodore H. Frank*
Theodore H. Frank