Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW, No. 236
Washington, DC 20036
Voice: (703) 203-3848
tedfrank@gmail.com

*Attorney for Objector Sam Kazman*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem, individually on behalf of and all others similarly situated,<br><br>         Plaintiffs,<br><br>   v.<br><br>FACEBOOK, INC., a corporation; and DOES 1-100,<br><br>         Defendants, | Case No. CV-11-01726 RS<br><br>**SUPPLEMENTAL DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES**<br><br>Hon. Richard Seeborg<br><br>Date:         October 17, 2013<br>Time:         1:30 p.m.<br>Courtroom:  3<br><br>**CLASS ACTION** |
| Sam Kazman,<br><br>         Objector. | |

Case No. CV-11-01726 RS
SUPPLEMENTAL DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM
FOR ATTORNEYS' FEES

Theodore H. Frank declares as follows:

1. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I am the attorney for objector Sam Kazman in this matter.

3. I was in Houston from August 24 to August 30, 2013, closing on a house purchase. Much of that week, I was working from a hotel room on an Eighth Circuit opening brief due September 3, 2013, the day after Labor Day.

4. On September 3, 2013, the Sixth Circuit ordered us to respond by September 17, 2013, to an *en banc* petition in *In re Dry Max Pampers Litig.*, 724 F.3d 713. Because the attorney who argued that case, Adam Schulman, had a wedding scheduled for September 15, 2013, I took lead responsibility for that response.

5. On September 4, 2013, I was contacted about the possibility of being retained in my private-practice capacity to represent in reply briefs and oral argument class members objecting to the *Deepwater Horizon* multi-billion-dollar settlement, where two Fifth Circuit briefs would be due September 20. For much of September 4 through 7, I was analyzing a very extensive record to determine whether the clients had standing to appeal and whether they had a meritorious case that I was comfortable representing, determining whether it was feasible to post an appeal bond in that case, and negotiating a retainer agreement consistent with my ethical principles regarding objections. While I already had some familiarity with the case, this process still involved dozens of emails, reviewing hundreds of pages of briefing and exhibits filed between August 26 and September 3, numerous lengthy phone calls, and drafting from scratch a case-specific retainer agreement delineating my limited scope of representation.

6. Meanwhile, throughout this time period, I was also consulting with co-counsel on the reply briefs for two pending *certiorari* petitions to the Supreme Court in *Marek v. Lane* and *Blessing v. Martin*.

7. Meanwhile, throughout this time period, I was meeting with movers collecting bids to handle my cross-country move.

8. In addition, I was traveling cross-country September 7 to San Diego to attend the September 9 fairness hearing in *Dennis v. Kellogg*. (The difference between a Saturday-to-Monday roundtrip

Case NO. CV-11-01726 RS     1
SUPPLEMENTAL DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES

plane ticket and a Sunday-to-Monday plane ticket was several hundred dollars more than the cost of an additional night in a hotel.)

9. This Court's opinion came down on August 26, while I was in Houston. I briefly skimmed it, and noticed that this Court had adopted our views on the injunctive relief, attorneys' fees, and net settlement value, but, because of my schedule mentioned in the above paragraphs, did not have an opportunity to evaluate our entitlement to attorneys' fees by comparing the opinion to our objection and the other substantive objections and the Facebook opposition to attorneys' fees until Sunday, September 8, when I reviewed these materials in a San Diego hotel room. We made our first request to meet and confer within a few hours of that decision, and I followed it up with a telephone call as soon as Mr. Arns's office opened on the morning of September 9.

10. I received no response to either request. To compensate for the fact that Mr. Arns did not return my phone call requesting a meet and confer, I unilaterally reduced our fee request from 10% of the benefit to under 5% and excised dozens of hours from our lodestar, in the hopes that this would be an acceptable compromise and that we could reach an agreement after our motion was filed. Had I known that Mr. Arns was going to take the untenable and vexatious position that we were not entitled to fees at all, our motion would have requested the full 10%.

11. I have made multiple attempts to schedule a meet-and-confer conference with Robert Arns, lead counsel for the plaintiffs. Mr. Arns failed to respond to any of them until September 25.

12. On September 25, 2013, Mr. Arns sent an email that he refused to meet and confer unless I could show him "authority" for a meet-and-confer.

13. I responded by email that day that the point of a meet-and-confer was for the benefit of the court to narrow issues, and that I hoped to resolve this dispute with a compromise that would limit the number of issues before the Court. By a second email later on September 25, I also provided the requested authority cited in Section I of our brief.

14. Mr. Arns still failed to return my earlier phone call or emails, so I emailed him a sixth request to meet and confer on September 26.

Case No. CV-11-01726 RS 2
SUPPLEMENTAL DECLARATION OF THEODORE H. FRANK IN SUPPORT OF MEMORANDUM FOR ATTORNEYS' FEES

15.     Though I jumped through all the hoops I requested (though nothing in Rule 54-5 requires me to provide authority for meeting and conferring before meeting and conferring), Mr. Arns moved the goalposts. Instead of spending five minutes on the phone with me to meet and confer, Mr. Arns on September 26 sent me an insulting several-hundred-word email tendentiously claiming that the cases I cited did not require him to meet and confer, and that he "could not disagree with [me] more on all issues you have raised." I took this as a statement that he did not wish to narrow any issues before this Court. There was therefore no prejudice to the lack of a meet and confer, because Mr. Arns has taken the hard-line position that we are not entitled to any fees whatsoever, and that he was not willing to compromise on this.

16.     The attorney-time spent on that email clearly took far more time than it would have taken to actually meet and confer, and to me demonstrated the bad faith in Mr. Arns's complaint of the lack of a meet-and-confer.

17.     Later that day, by email, I notified Mr. Arns that contrary to Rule 11, several statements in his Response in Opposition to Kazman's Motion for Fees were incorrect, and requested yet another meet-and-confer.

18.     He responded that day with an email claiming that the statements were not false, because they were ambiguous and could be interpreted in a manner such that they were technically true. A true and correct copy of that email is attached as Exhibit A to this Supplemental Declaration. The tendentious interpretations Mr. Arns claims should be made of the false statements in his original (and corrected) brief would make the sentences utterly irrelevant to his argument; his intent was plainly to mislead the Court.

19.     Attached to Kazman's Reply in Support of Motion for Attorneys' Fees is a true and correct copy of the Order granting CCAF's request for expense reimbursement in *In re Citigroup Securities Litigation*, No. 07-cv-9901 (SHS) (S.D.N.Y. Sept. 10, 2013) (Dkt. 286). It is labeled as Exhibit 1.

20.     Attached to Kazman's Reply in Support of Motion for Attorneys' Fees is a true and correct copy of the Motion for Reconsideration that Todd Henderson filed today in *Dennis v. Kellogg Co.*, No. 09-cv-1786-IEG (S.D. Cal.). It is labeled as Exhibit 3. There is no Exhibit 2, as Exhibit 2 was mooted by the late-night Friday correction filed by Class Counsel where they retracted their false statement that we had requested fees in *Dennis v. Kellogg*.

21. As the Court evaluates our request for fees, I hope it takes into consideration that Class Counsel's vexatious opposition to our request and their bad-faith refusal to meet-and-confer has required my non-profit to waste dozens of hours of attorney time justifying a modest fee request that is a single-digit percentage of the marginal class benefit achieved by our objection. These are hours that could have been used to protect other class members in other cases from similarly predatory class counsel's similarly abusive fee requests, but for which we are not seeking fees here.

22. Mr. Arns accuses us of being "professional objectors" with "boilerplate objections," accusations that he knows not to be true. On information and belief, discovery would show that he has settled with real professional objectors who brought real boilerplate objections purely for vexatious reasons for more money than the modest amount we request here. It would be perverse if the Center was left worse off because it filed a meritorious objection and followed the rules than if it had gone the for-profit bad-faith professional-objector route and simply tried to hold up a settlement with a frivolous objection and appeal in exchange for payment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 30, 2013, in Fairfax, VA.

                                                                         */s/Theodore H. Frank*