1  Scott Michelman (D.C. Bar No. 1006945) (admitted pro hac vice)
       smichelman@citizen.org
2  Scott L. Nelson (D.C. Bar No. 413548)
       snelson@citizen.org
3  PUBLIC CITIZEN LITIGATION GROUP
   1600 20th Street NW
4  Washington, DC 20009
   Telephone: 202.588.1000
5  Facsimile: 202.588.7795

6  Jay Rorty (SBN 135097)
       jayrorty@gmail.com
7  LAW OFFICES OF JAY RORTY
   835 Cedar Street
8  Santa Cruz, CA 95060
   Telephone: 831.316.0722
9  Facsimile: 831.295.6734

10  *Attorneys for Objectors John Schachter (on behalf of himself and his
    minor son S.M.S.), J.J.R. (through his mother Judy Reidel), Kim Parsons
11  (on behalf of herself and her minor daughter C.B.P.), Ann Leonard (on
    behalf of herself and her minor daughter D.Z.), R.P. (through her mother
12  Margaret Becker), and J.C. (through his father Michael Carome)*

13

14              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
15                SAN FRANCISCO DIVISION

16  ANGEL FRALEY, et al., individually and on       Case No. CV 11-01726 RS
    behalf of all other similarly situated,
17                                                   **OPPOSITION TO MOTION FOR
                        Plaintiffs,                  POSTING OF APPEAL BOND**
18          v.
                                                     Date:        February 13, 2014
19  FACEBOOK, INC., et al.,                          Time:        1:30 p.m.
                                                     Department: 3
20                      Defendants.                  Judge:       Hon. Richard Seeborg

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2   TABLE OF AUTHORITIES ..................................................................................................... ii

3   STATEMENT OF ISSUES ...................................................................................................... 1

4   INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................... 1

5   BACKGROUND ...................................................................................................................... 2

6          A.      The Underlying Class Action ................................................................................ 2

7          B.      The Schachter Objector-Appellants ...................................................................... 3

8   ARGUMENT ........................................................................................................................... 4

9          I.      The Schachter Objector-Appellants Cannot Be Liable For Any Of The
                   Expenses For Which A Bond Is Requested, So No Bond May Be Imposed
10                 Against The Schachter Objector-Appellants ......................................................... 4

11                 A.      Objector-appellants cannot be required to post a bond for
                           administrative expenses associated with a class settlement while an
12                         appeal is pending because these expenses are not taxable under a
                           specific statute or rule ............................................................................ 5

13
                   B.      The Schachter objector-appellants may not be taxed for costs that
14                         class counsel incurs responding to other objectors' appeals ..................... 9

15         II.     Forcing Each Objector-Appellant To Post A Bond For The Entire Amount
                   Of The Alleged Costs Is Improper Because It Secures Far More Money
16                 Than Appellees Could Recover As Costs. ............................................................. 9

17         III.    A Bond Against The Schachter Objector-Appellants Is Unjustified In Any
                   Amount. ............................................................................................................... 10

18
           IV.     There Is No Justification For Imposing An Appeal Bond On An Objector
19                 Who Is Not Appealing .......................................................................................... 14

20         V.      The Court Should Not Permit The Use Of An Appeal Bond To Deter
                   Legitimate Objectors From Seeking Appellate Review ....................................... 14

21
     CONCLUSION ...................................................................................................................... 17
22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

### **CASES**

3    *In re America President Lines, Inc.*,
4        779 F.2d 714 (D.C. Cir. 1985) ........................................................................ 14

5    *Amchem Products, Inc. v. Windsor*,
6        521 U.S. 591 (1997) ........................................................................................ 16

7    *In re AOL Time Warner, Inc., Securities & "ERISA" Litigation*,
8        2007 WL 2741033 (S.D.N.Y. Sept. 20, 2007) ................................................ 7

9    *Arlington Central School District Board of Education v. Murphy*,
10       548 U.S. 291 (2006) .......................................................................................... 5

11   *Azizian v. Federated Department Stores, Inc.*,
12       499 F.3d 950 (9th Cir. 2007) .................................................................. *passim*

13   *In re Bayer Corp. Combination Aspirin Products Marketing & Sales Practices Litigation*,
14       2013 WL 4735641 (E.D.N.Y. Sept. 3, 2013) .................................................. 7

15   *Bell Atlantic Corp. v. Bolger*,
16       2 F.3d 1304 (3d Cir. 1993) ............................................................................. 15

17   *In re Cardinal Health, Inc. Securities Litigation*,
18       550 F. Supp. 2d 751 (S.D. Ohio 2008) .......................................................... 15

19   *Clark v. Universal Builders, Inc.*,
20       501 F.2d 324 (7th Cir. 1974) ......................................................................... 14

21   *Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
22       482 U.S. 437 (1987) .......................................................................................... 5

23   *Crawford v. Equifax Payment Services, Inc.*,
24       201 F.3d 877 (7th Cir. 2000) ......................................................................... 16

25   *In re Currency Conversion Fee Antitrust Litigation*,
26       2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) ................................................... 7

27   *Dennings v. Clearwire Corp.*,
28       928 F. Supp. 2d 1270 (W.D. Wash. 2013) ....................................................... 6

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) ................................................................................................ 16

*In re Domestic Air Transport Antitrust Litigation*,
    148 F.R.D. 297 (N.D. Ga. 1993) ...................................................................... 15

*Douglas v. California*,
    372 U.S. 353 (1963) .......................................................................................... 17

*Embry v. ACER America Corp.*,
    2012 WL 2055030 (N.D. Cal. June 5, 2012) .......................................... 7, 8, 11

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938) ............................................................................................ 11

*Fleury v. Richemont North America, Inc.*,
    2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ........................................ *passim*

*In re Initial Public Offering Securities Litigation*,
    728 F. Supp. 2d 289 (S.D.N.Y. 2010) ......................................................... 7, 11

*Klee v. Nissan North America, Inc.*,
    No. 2:12-cv-08238 (C.D. Cal.) .......................................................................... 16

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ............................................................................ 15

*Lecates v. Justice of Peace Court No. 4*,
    637 F.2d 898 (3d Cir. 1980) .............................................................................. 17

*Miletak v. Allstate Insurance Co.*,
    2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) .................................................... 6

*In re Navistar Diesel Engine Products Liability Litigation*,
    2013 WL 4052673 (N.D. Ill. Aug. 12, 2013) ...................................................... 7

*In re Netflix Privacy Litigation*,
    2013 WL 6173772 (N.D. Cal. Nov. 25, 2013) ............................................. 6, 11

*In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .............................................................................. 15

*Reynolds v. Beneficial National Bank,*
    288 F.3d 277 (7th Cir. 2002) ......................................................... 15

*Schulken v. Washington Mutual Bank,*
    2013 WL 1345716 (N.D. Cal. Apr. 2, 2013) ..................................... 6, 7, 10, 11

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, &*
    *Products Liability Litigation,*
    2013 WL 5775118 (C.D. Cal. Oct. 21, 2013) ............................................ 7, 10

*In re UnitedHealth Group Inc. PSLRA Litigation,*
    643 F. Supp. 2d 1107 (D. Minn. 2009) ......................................... 15

*Vaughn v. American Honda Motor Co.,*
    507 F.3d 295 (5th Cir. 2007) ...................................................... 8, 15

**STATUTES AND RULES**

Cal. Civ. Code § 3344 ...................................................................... 4, 12

Fed. R. App. P. 7 ................................................................................. 4, 9, 10

Fed. R. App. P. 39 ............................................................................... 5, 9

Fed. R. Civ. P. 54 ............................................................................... 5

N.Y. Civ. Rights Law § 50 .............................................................. 4

N.Y. C.P.L.R. §§ 5401-08 ............................................................. 11

Tenn. Code. §§ 26-6-101 to -108 ................................................. 11

Tenn. Code § 47-25-1105(a) ........................................................ 4

Va. Code § 8.01-40(A) .................................................................. 4

Va. Code §§ 8.01-465.1 to -465.5 ................................................ 11

**OTHER AUTHORITIES**

Robert B. Gerard & Scott A. Johnson, *The Role of the Objector in Class Action Settlements —*
    *A Case Study of the General Motors Truck "Side Saddle" Fuel Tank Litigation,*
    31 Loy. L.A. L. Rev. 409 (1998) ................................................. 16

*The Federalist* No. 80 (Hamilton) ................................................ 11

1        **STATEMENT OF ISSUES**

2   1.      May a court impose a $32,000 appeal bond on class action objector-appellants based only

3           on the fact that they have lost at the district court and some of them live out of state, and

4           where the amount of the bond is based on costs for which the objector-appellants will not

5           be responsible if they lose and the total amount sought from all objectors is 15 times the

6           appellees' claimed costs?

7   2.      Should the Court impose an appeal bond on an objector who is not appealing?

8        **INTRODUCTION AND SUMMARY OF ARGUMENT**

9           Class counsel's motion to impose an appeal bond on objector-appellants is extraordinary

10  for both the amount requested and the breadth of the legal theory justifying the request.

11          The amount requested is impermissible in two respects: First, in contravention of the

12  Ninth Circuit's decision in *Azizian v. Federated Department Stores, Inc.*, 499 F.3d 950 (9th Cir.

13  2007), class counsel seeks a bond for costs that no rule or statute entitles the appellees to recover.

14  *Azizian* makes clear that taxable costs are limited to those provided by rule or statute, and that

15  requiring an appeal bond for non-taxable costs is impermissible. Because there is no rule or

16  statute authorizing a court to tax "settlement administrative expenses" or "delay damages" as

17  costs, these costs are not a permissible component of an appeal bond. Second, although the

18  purpose of a bond is to ensure that the appellee will be able to recover his costs, class counsel

19  seeks to impose a bond for the full amount of the alleged costs on *each* appellant, for a total bond

20  amount that is 15 times greater than the costs to which class counsel claims the plaintiff-

21  appellees are entitled if they prevail.

22          Class counsel's asserted justifications for imposing a bond are both unpersuasive and

23  overly broad. Class counsel avers that collection of costs will be difficult because some (but not

24  all) of objector-appellants Schachter, Parsons, Leonard, Becker, and Carome (collectively, the

25  "Schachter objector-appellants") reside out of state. The allegation of collection difficulty is

26  unsupported and in fact incorrect; if there is an award of costs that appellants do not pay, there is

27  a simple administrative procedure for domesticating the judgment in the states (New York,

28  Tennessee and Virginia) in which the out-of-state Schachter objector-appellants reside. Class

1    counsel suggests that the merits of the appeal weigh in favor of a bond, but counsel has made no

2    showing on this point other than that objector-appellants have been unsuccessful in this Court.

3    The litigation histories and alleged motivations of *other* objectors in the same case are irrelevant

4    to the merits of the arguments made by the Schachter objector-appellants. Class counsel's

5    insinuation about a profit motive on the part of the Schachter objector-appellants is unsupported,

6    particularly since the Schachter objector-appellants have already indicated that the lone issue

7    they are pursuing on appeal pertains to the privacy protections for their minor children. Stripped

8    of the innuendo regarding other objectors and profit motives, class counsel's theory of when an

9    appeal bond may be imposed — that is, whenever an appellant has lost (the very definition of an

10   appellant) and lives out-of-state — is of such breadth that it would make appeal bonds the rule

11   rather than the exception, and numerous appeals would be chilled as a result.

12       There is no justification whatsoever (and class counsel advances none) for the imposition

13   of an appeal bond on objector Reidel, who has not appealed.

14       Finally, in light of the magnitude of the bond class counsel seeks, class counsel's attempt

15   to impose the amount of the asserted costs on *each* objector-appellant, and class counsel's

16   unfounded allegations about the motives of the Schachter objector-appellants, this Court should

17   be cognizant of the possibility that the purpose of the motion is not securing costs but

18   intimidating objector-appellants from exercising their appellate rights.

19       For all of these reasons, class counsel's motion for an appeal bond should be denied.

## **BACKGROUND**

21   **A.    The Underlying Class Action**

22       Plaintiffs, members of the online social networking site Facebook, filed a class-action

23   complaint against Facebook over its advertising program "Sponsored Stories," through which

24   Facebook, without a member's consent, creates an advertisement that displays the member's

25   name, likeness, or image in a manner that suggests the member endorses a Facebook sponsor.

26       This Court approved a settlement of the case on August 26, 2013, *see* Doc. 359, over the

27   objections of the Schachter objector-appellants (along with objector Reidel), *see* Doc. 308, and

28   those of a number of other objectors. As approved, the settlement consisted of a small monetary

1    award for class members who filed claims ($15), a cy pres award, and a set of changes to

2    Facebook's policies. *See* Doc. 359, at 1. The Court also approved an award of fees to class

3    counsel, in the amount of 25% of what remains of a $20 million settlement fund after the

4    deduction of settlement expenses and between roughly $240,000 and $285,000 for costs and

5    incentive awards, *see* Doc. 360 at 7 — for a total attorneys' fee award that is likely to be over $4

6    million and perhaps close to $5 million.

7           The main argument raised by the Schachter objector-appellants (along with objector

8    Reidel) was that the terms of the settlement permit Facebook to violate the privacy laws of

9    California, Florida, New York, Oklahoma, Tennessee, Virginia, and Wisconsin prohibiting the

10   use of a minor's likeness for advertising without parental consent. *See* Doc. 308, at 9-14.

11   Although the Court rejected this argument, it was the objection to which the Court devoted the

12   most analysis among all the objections, including a discussion (but not a conclusion) regarding

13   the possible preemptive effect of federal law and a discussion (ultimately dispositive) of whether

14   the minors'-privacy objection required the Court to evaluate the merits of the underlying case.

15   *See* Doc. 359, at 12-13.

16          The Schachter objector-appellants noticed their appeal on September 24, 2013, Doc. 372;

17   objector Reidel did not appeal. In responding to the parties' requests regarding the ordering of

18   transcripts on appeal, the Schachter objector-appellants indicated that they intend to pursue a

19   single issue on appeal: "whether the fact that the class action settlement in this case permits

20   violations of seven state laws should have defeated settlement approval." Doc. 409-1.

21   **B.      The Schachter Objector-Appellants**

22          The Schachter objector-appellants and objector Reidel are all parents of minor children

23   (or the children themselves, proceeding through their parents) who are members of Facebook and

24   who have been notified they are members of the class or have had (or believe they have had)

25   their images used for advertising without their consent or, in the case of minors, parental consent.

26   *See* Doc. 308, Exs. 1-6 (Docs. 308-2 to -7). The Schachter objector-appellants and objector

27   Reidel all reside in one of four states: California, New York, Tennessee, and Virginia. *Id.*

28

1    Specifically, the Schachter objector-appellants are John Schachter, on behalf of himself

2    and his minor son S.M.S.; Kim Parsons, on behalf of herself and her minor daughter C.B.P.; Ann

3    Leonard, on behalf of herself and her minor daughter D.Z.; the minor child R.P. (through her

4    mother Margaret Becker); and the minor child J.C. (through his father Michael Carome). *See*

5    Doc. 308, Exs. 1, 3-6. The minor child J.J.R. (through his mother Judy Reidel) also objected. *See*

6    Doc. 308, Ex. 2. Facebook has created Sponsored Stories involving objector-appellants. For

7    instance, Carome saw a Sponsored Story featuring his son J.C., Becker's daughter R.P. saw a

8    Sponsored Story featuring herself, D.Z. saw a Sponsored Story featuring her mother Ann

9    Leonard, and Parsons' daughter C.B.P. received email notification that she is a class member

10   because Facebook has used her in one or more Sponsored Stories. *See* Doc. 308, Ex. 3 ¶ 7, Ex. 4

11   ¶ 8, Ex. 5 ¶ 7, Ex. 6 ¶ 7. The objector-appellant parents know that their children use the "Like"

12   function and will continue to do so. *See* Doc. 308, Ex. 1 ¶ 13, Ex. 3 ¶ 13, Ex. 4 ¶ 13, Ex. 5 ¶ 11,

13   Ex. 6 ¶ 11. All of the parents object to the use of their children's names, images, and/or

14   likenesses without parental consent. *See* Doc. 308, Ex. 1 ¶ 6, Ex. 3 ¶ 6, Ex. 4 ¶ 6, Ex. 5 ¶ 6, Ex. 6

15   ¶ 6. All of the objector-appellants reside in states (California for Leonard and her daughter; New

16   York for Becker and her daughter, Tennessee for Parsons and her daughter; and Virginia for

17   Schachter and Carome and their respective sons) that prohibit the use of a minor's likeness

18   without parental consent. *See* Cal. Civ. Code § 3344(a); N.Y. Civ. Rights Law § 50; Tenn. Code

19   Ann. § 47-25-1105(a); Va. Code Ann. § 8.01-40(A). Through counsel, the Schachter objector-

20   appellants presented argument at the Final Approval Hearing in support of their objections.

21   Public Citizen Litigation Group represents the Schachter objector-appellants on a pro bono basis.

22                                   **ARGUMENT**

23   **I.    The Schachter Objector-Appellants Cannot Be Liable For Any Of The Expenses
24         For Which A Bond Is Requested, So No Bond May Be Imposed Against The
           Schachter Objector-Appellants.**

25   The purpose of an appeal bond is "to ensure payment of costs on appeal." Fed. R. App. P.

26   7; *accord Fleury v. Richemont N. Am., Inc.*, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008).

27   Here, class counsel requests a bond of $32,000 (from each of 15 objectors) to cover two sets of

28   alleged costs: the administrative expenses associated with settlement while the appeal is pending,

1    and transcript costs. Because no rule or statute provides that the Schachter objector-appellants

2    can be liable for the former, and because the latter pertain only to other objectors' appeals, no

3    bond may be imposed against the Schachter objector-appellants.

4          **A. Objector-appellants cannot be required to post a bond for administrative expenses associated with a class settlement while an appeal is pending because these expenses are not taxable under a specific statute or rule.**

5

6        In *Azizian v. Federated Department Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007), the Ninth

7    Circuit considered the propriety of imposing an appeal bond on a class action objector in the

8    amount of opposing counsel's fees. *Id.* at 953-54. The court held that such a bond was improper,

9    *id.* at 954, because the statute at issue did not authorize defendants to recover fees from

10    unsuccessful plaintiffs, *id.* at 959, and "the term 'costs on appeal' in Rule 7 includes all expenses

11    defined as 'costs' by an applicable fee-shifting statute," *id.* at 958. Thus, in the absence of an

12    applicable cost-shifting statute or appellate rule, the Schachter objector-appellants are

13    responsible only for normal "costs" under Rule 39, which covers "(1) the preparation and

14    transmission of the record, (2) the reporter's transcript, if needed to determine the appeal, (3)

15    premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4)

16    the fee for filing the notice of appeal." Fed. R. App. P. 39(e). The Ninth Circuit's approach to

17    defining "costs" on appeal is consistent with the Supreme Court's repeated admonition that the

18    term "costs" is not an open-ended invitation for courts to impose whatever expenses they deem

19    fair, but rather a term of art whose content is bounded by the items specified in statutes or rules.

20    *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006) (holding that, in

21    the Individuals with Disabilities Education Act, "[t]he use of this term of art [i.e., 'costs'], rather

22    than a term such as 'expenses,' strongly suggests that [the statute's cost-shifting provision] was

23    not meant to be an open-ended provision that makes participating States liable for all expenses

24    incurred by prevailing [plaintiffs]"); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437,

25    441-42 (1987) (holding that "costs" as defined in Federal Rule of Civil Procedure 54 are limited

26    to those specified by statute).

27        Class counsel's failure to identify a rule or statute that would render objector-appellants

28    responsible for settlement administration costs is dispositive of the question whether a bond may

1  be required for these costs. Under *Azizian*, a bond cannot be imposed for costs that cannot be

2  taxed against appellants if they lose on appeal, 499 F.3d at 959, and costs beyond those under

3  Rules 38 and 39 cannot be taxed absent statutory authority, *id.* at 958.

4        Class counsel concedes (as he must) that "the Ninth Circuit has held that 'costs other than

5  those identified in FRAP 39 can qualify as 'costs' for purposes of Rule 7 if they are so defined

6  by some positive law, such as a fee-shifting statute.'" Doc. 435, Mot. for Posting of Appeal Bond

7  (hereinafter "Mot.") 20 (quoting *Fleury*, 2008 WL 4680033, at \*8, which in turn cites *Azizian*,

8  499 F.3d at 958); *see also* Mot. 21-22 (citing *Azizian*, 499 F.3d at 958, as "holding that the Court

9  may include such expenses in the appeal bond if an applicable rule or statute defines them as

10  'costs'"). Yet class counsel identifies no rule or statute authorizing the imposition of settlement

11  administrative costs or other damages resulting from delay while an appeal is pending.

12        Instead, class counsel cites a handful of non-precedential district court opinions imposing

13  bonds to cover settlement administration costs. *See* Mot. 22-25. But these cases did not consider

14  the effect of *Azizian* on the propriety of awarding administrative expenses. For instance,

15  *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270 (W.D. Wash. 2013), did not cite *Azizian* at

16  all, much less explain how a bond including administrative expenses is permissible under

17  *Azizian*. In *Miletak v. Allstate Insurance Co.*, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012), the

18  court's entire discussion of administrative costs consisted of one sentence ("However, the Court

19  finds that it may only award an appeal bond comprising the first and third of these items —

20  namely, appellate costs and administrative costs."), along with a footnote characterizing such

21  costs as "reasonable." *Id.* at \*2 & n.5. *In re Netflix Privacy Litigation*, 2013 WL 6173772 (N.D.

22  Cal. Nov. 25, 2013), discussed *Azizian* in rejecting "delay damages" but then agreed to include

23  administrative expenses in appeal bond without identifying a rule or statute authorizing the

24  taxing of administrative expenses as "costs"; the court's one-sentence rationale relied only on a

25  re-labeling of "delay damages" as "administrative costs": "Plaintiffs do not seek a bond for *delay*

26  *damages* or attorneys' fees, but rather for the *administrative costs incurred during the delay* of

27  settlement." *Id.* at \*4 (emphasis added).

28        Class counsel's discussion of *Schulken v. Washington Mutual Bank*, 2013 WL 1345716

1    (N.D. Cal. Apr. 2, 2013), is misleading. Class counsel notes that part of the court's reason for not

2    including administrative expenses in that case was plaintiffs' failure to justify their specific

3    estimate of costs, Mot. 24, but class counsel omits the fact that *Schulken* also relied on plaintiffs'

4    failure to identify a statute authorizing taxing such expenses as costs. *Id.* at *8. *Schulken* also

5    criticized *Miletak* because it "did not identify any fee-shifting statute authorizing administrative

6    expenses as 'costs,' but nonetheless interpreted such expenses as falling within the meaning of

7    'costs' in Rule 7." *Id.* at *7. The remainder of class counsel's authorities, *see* Mot. 23, pre-date

8    the Ninth Circuit's decision in *Azizian*. *See Fleury*, 2008 WL 4680033, at *9 (refusing to rely on

9    pre-*Azizian* case law); *accord Schulken*, 2013 WL 1345716, at *7.

10       Class counsel does not mention that many recent district court opinions — including

11   some of the cases that class counsel himself relies on elsewhere in his motion — hold that appeal

12   bonds may *not* include settlement administration costs or delay damages. *See In re Toyota Motor*

13   *Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 2013 WL

14   5775118, at *3 (C.D. Cal. Oct. 21, 2013); *In re Bayer Corp. Combination Aspirin Products*

15   *Mktg. & Sales Practices Litig.,* 2013 WL 4735641, at *4 (E.D.N.Y. Sept. 3, 2013); *In re Navistar*

16   *Diesel Engine Prods. Liab. Litig.*, 2013 WL 4052673, at *2 (N.D. Ill. Aug. 12, 2013); *Schulken*,

17   2013 WL 1345716, at *7-*8; *Embry v. ACER Am. Corp.*, 2012 WL 2055030, at *2 (N.D. Cal.

18   June 5, 2012); *In re Initial Pub. Offering Sec. Litig.,* 728 F. Supp. 2d 289, 296-97 (S.D.N.Y.

19   2010); *In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *3 (S.D.N.Y. Mar.

20   5, 2010); *Fleury*, 2008 WL 4680033, at *8; *In re AOL Time Warner, Inc., Sec. & "ERISA"*

21   *Litig.,* 2007 WL 2741033, at *4 (S.D.N.Y. Sept. 20, 2007).

22       In contrast to class counsel's authorities, the district court decisions within the Ninth

23   Circuit *rejecting* settlement administration expenses or delay damages *do* apply *Azizian*. *See*

24   *Toyota Motor Corp.*, 2013 WL 5775118, at *3 (C.D. Cal.) ("[A]pplication of *Azizian* in this case

25   precludes inclusion of increased settlement administration costs in the amount of a bond imposed

26   on appeal."); *Schulken*, 2013 WL 1345716, at *7-*8 (N.D. Cal.) (discussing *Azizian* and refusing

27   to include settlement administration expenses in bond amount because, among other reasons,

28   "Plaintiffs-Appellees were unable to identify any additional precedent or statutes authorizing

1   administrative expenses as 'costs'"); *Fleury*, 2008 WL 4680033, at *8 (N.D. Cal.) (rejecting

2   "delay damages" because, under *Azizian*, "F.R.A.P. 7 authorizes a bond only to cover 'costs' on

3   appeal as expressly defined by rule or statute" and plaintiffs "have cited no statute or rule

4   defining such delay damages as 'costs'"); *see also Embry*, 2012 WL 2055030, at *2 & n.9 (N.D.

5   Cal.) (rejecting "delay damages" in reliance on *Fleury*, which in turn relied on *Azizian*). Because

6   they rely on the Ninth Circuit's authoritative guidance in *Azizian*, the decisions refusing to

7   include settlement administration expenses or delay damages in appeal bonds are more

8   persuasive than class counsel's authorities that predate or ignore *Azizian*.

9       The Fifth Circuit has also refused to permit a bond to include expenses allegedly

10  attributable to settlement delay where, as here, a settlement does not explicitly provide for pre-

11  judgment interest. In *Vaughn v. American Honda Motor Co.*, 507 F.3d 295 (5th Cir. 2007), the

12  court reduced a $150,000 bond to $1000, holding that "provid[ing] security for the detrimental

13  impact of an appeal as to the entire class" did not justify the exorbitant bond. *Id.* at 298 (citation

14  and internal quotation marks omitted). Rather, "the costs of delay are adequately captured by the

15  settlement. The settlement agreement makes no provision for the payment of pre-judgment

16  interest on the benefits Honda has agreed to pay, and the settlement does not become effective,

17  by its terms, until any appeals are concluded." *Id.* at 299. Likewise, in this case, neither the

18  monetary nor injunctive relief under the settlement agreement goes into effect until the "Final

19  Settlement Date," *see* Doc. 235-1, §§ 2.1, 2.3(d), 2.4(b), which is defined as two court days after

20  "the date on which all appeals [from the order approving the settlement], including but not

21  limited to petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for

22  certiorari or any other form of review, have been finally disposed of in a manner that affirms the

23  Final Order and Judgment," *id.* § 1.13. Thus, as in *Vaughn*, "the costs of delay are adequately

24  captured by the settlement," 507 F.3d at 299.

25      In sum, almost the entire amount of the bond class counsel requests ($30,450 out of

26  $32,000, *see* Mot. 25) consists of settlement-administration or delay expenses that are not

27  defined by statute or rule as costs and are therefore not permissible components of an appeal

28  bond under *Azizian*. There is no authority for requiring a bond for these expenses.

1

2      **B.  The Schachter objector-appellants may not be taxed for costs that class counsel incurs responding to other objectors' appeals.**

3

4      The Schachter objector-appellants have indicated in filings with this Court and with the

5 Ninth Circuit that they intend to raise a single issue on appeal: "whether the fact that the class

6 action settlement in this case permits violations of seven state laws should have defeated

7 settlement approval." Doc. 409-1.

8      Class counsel asks for a bond to cover transcript costs, but none of these costs are

9 relevant to the Schachter objector-appellants' appeal, because as these appellants have noted in

10 their transcript-related certifications, Docs. 409-1, 418-1, they raise a pure issue of law that can

11 be decided based solely on the documents in the record.

12      If class counsel incurs transcript costs in responding to *other* objectors' appeals, those

13 costs cannot be taxed against the Schachter objector-appellants. Among the costs taxable on

14 appeal is the cost of "the reporter's transcript, if needed to determine the appeal." Fed. R. App. P.

15 39(e)(2). Because the transcripts are not "needed to determine the appeal" that the Schachter

16 objector-appellants have brought, these appellants cannot be taxed for these transcript costs.

17      * * *

18      Accordingly, because class counsel has not identified any costs that would be taxable

19 against the Schachter objector-appellants if they do not prevail on appeal, counsel has offered no

20 basis for imposition of a bond on these objectors. The Court should deny the bond motion as to

21 the Schachter objector-appellants for this reason alone.

22    **II.  Forcing Each Objector-Appellant To Post A Bond For The Entire Amount Of The Alleged Costs Is Improper Because It Secures Far More Money Than Appellees Could Recover As Costs.**

23

24      Class counsel's requested bond would go far beyond the purpose of an appeal bond,

25 which (as noted) is to ensure that an appellee is able to recover costs to which the appellee is

26 entitled by rule or statute. Fed. R. App. P. 7. Instead of dividing class counsel's anticipated costs

27 among all of the appellants and seeking a bond against each appellant for the appellant's share of

28 the alleged costs, class counsel asks for a bond in the amount of all the alleged costs against *each*

1   appellant (and one individual who is not an appellant, *see infra* Part IV). The resulting request

2   for bonds totaling $480,000 from the Schachter objector-appellants and others is *15 times* the

3   amount class counsel claims would be taxable on appeal. Class counsel cites no authority

4   justifying this extraordinary multiplier, and at least one court in this circuit has rejected such an

5   approach when plaintiffs only sought to secure four times their anticipated costs and to impose

6   the bond on groups of appellants rather than each individual. *See Toyota Motor Corp.*, 2013 WL

7   5775118, at *2 ("[T]he Court agrees that it would be improper to impose a bond upon *each* of

8   four groups of the Appellants. Collectively . . . Plaintiffs seek bonds to cover their briefing costs

9   four times over. This is clearly improper under the plain language of the Rule, which permits

10  imposition of a bond in an amount limited to that 'necessary to ensure payment of costs on

11  appeal.'" (quoting Federal Rule of Appellate Procedure 7; other citations omitted)).

12      A multiplier is particularly inappropriate here because the appeals have been consolidated

13  and so class counsel will file only one complete set of appellate filings — not one for each group

14  of separately-represented objector-appellants, and certainly not one for each individual objector-

15  appellant.

16      Additionally, because the amount of the requested bond is so much greater than even the

17  costs class counsels alleges the appellees could recover if they were to prevail, there is reason to

18  question whether the motion to require such a large appeal bond from each objector is aimed at

19  securing costs or deterring objectors from pursuing their appeals. *See infra* Part V.

20  **III.    A Bond Against The Schachter Objector-Appellants Is Unjustified In Any Amount.**

21      The few cases in this district discussing appeal bonds look to three factors when

22  considering whether to impose a bond: "(1) appellant's financial ability to post bond; (2) the risk

23  that appellant would not pay the costs if the appeal loses; and (3) an assessment of the likelihood

24  that appellant will lose the appeal and be subject to costs." *Schulken*, 2013 WL 1345716, at *4;

25  *accord Fleury*, 2008 WL 4680033, at *7.

26      Regarding ability to pay, $32,000 appeal bond is an entirely different order of magnitude

27  than the $500 filing fee that class counsel cites as the relevant benchmark. *See* Mot. 7-8.

28  Inferring ability to pay the former from the payment of the latter is a non sequitur. Class counsel

1    asks this Court to consider, in evaluating ability to pay, "[a]n objector's habit of incessantly

2    filing frivolous appeals," Mot. 7, but class counsel's discussion refers entirely to objectors and

3    counsel *other than* the Schachter objector-appellants and their counsel, Public Citizen Litigation

4    Group. In fact, the Schachter objector-appellants' counsel, Public Citizen Litigation Group, is a

5    non-profit law firm that handles cases pro bono, so the Schachter objector-appellants are not

6    even paying their lawyers. Moreover, class counsel has identified no prior appeal brought by any

7    of the Schachter objector-appellants, and although Public Citizen Litigation Group has handled

8    other appeals on behalf of objectors, no court has ever suggested that any of the appeals were

9    frivolous, and class counsel identifies no such appeal.

10          For the second factor, difficulty of collection, class counsel relies on several district court

11   decisions declaring, with little or no analysis, that collecting costs from out-of-state appellants is

12   difficult. *See* Mot. 8-10 (citing *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 293; *In*

13   *re Netflix Privacy Litig.*, 2013 WL 6173772, at *3; *Schulken*, 2013 WL 1345716, at *5; *Embry*,

14   2012 WL 2055030, at *2; *Fleury*, 2008 WL 4680033, at *7). Respectfully, these conclusory

15   statements in non-binding decisions should not persuade this Court. First, it is incorrect that

16   collecting costs against an out-of-state party is burdensome. Here, in particular, each of the non-

17   Californians among the Schachter objector-appellants lives in a state — New York, Tennessee,

18   or Virginia — that has enacted the Uniform Enforcement of Foreign Judgments Act, under

19   which domesticating an out-of-state judgment is a simple administrative matter of filing in a

20   local court a copy of the judgment along with the debtor's address (available from the Schachter

21   objector-appellants' affidavits). *See* N.Y. C.P.L.R. §§ 5401-08; Tenn. Code. §§ 26-6-101 to

22   -108; Va. Code §§ 8.01-465.1 to -465.5. Second, the argument equating out-of-state residency

23   with collection difficulty proves too much by suggesting that every out-of-state resident should

24   face an appeal bond — an overly broad presumption that would place out-of-state litigants at a

25   disadvantage in federal appeals, despite the constitutional design of making the federal courts

26   available for the purpose of *enhancing* fairness to non-residents. *See Erie R.R. Co. v. Tompkins*,

27   304 U.S. 64, 74 (1938); *The Federalist* No. 80 (Hamilton). One of class counsel's own

28   authorities demonstrates that there is a better approach than simply punishing out-of-state

1    litigants as a group: in *Schulken*, the court considered the individual circumstances of the

2    appellant and relied on the appellant's history of non-payment of transcript fees rather than out-

3    of-state residency alone. *See* 2013 WL 1345716, at *5. Following *Schulken*, and to avoid a

4    presumption that disfavors out-of-state litigants, this Court should look for indications that

5    particular appellants are unlikely to pay costs rather than considering only appellants' states of

6    residence. Finally, some of the appellants in this case are from California, and class counsel

7    offers no reason why he could not collect from them.

8         For the third factor, the merits of the appeal, class counsel assumes that a loss in this

9    Court implies the total absence of any potential merit. *See* Mot. 10-14. That a few cases have

10   imposed bonds after rejecting objections to settlement does not show that the Schachter objector-

11   appellants' arguments *in this case* are so lacking in merit that a bond is appropriate because they

12   are sure to lose. Again, class counsel's argument proves too much. If merely losing before a

13   district court made an appeal bond appropriate, then appeal bonds would become the norm —

14   sharply curtailing access to the appellate process and reducing the number of issues on which the

15   appeal courts have the opportunity to provide legal guidance.

16        Respectfully, this Court's rejection of the Schachter objector-appellants' claim that the

17   settlement violates seven state privacy laws is open to reasonable debate. As the Schachter

18   objector-appellants will argue to the Ninth Circuit, the fact that one of the laws objectors accuse

19   the settlement of violating (California Civil Code § 3344) is also one of the laws that plaintiffs

20   sued defendants for violating in the case being settled, does not collapse the objection into a

21   question about the lawsuit's underlying merits. A court has an independent obligation to satisfy

22   itself as to the legality of the settlement. Moreover, the question whether this defendant is liable

23   to these plaintiffs under these circumstances is analytically distinct from whether the settlement

24   at issue violates the statute as a general matter. And the Court's focus on whether California law

25   was violated in this instance undervalues the independent force of the laws of six other sovereign

26   states — Florida, New York, Oklahoma, Tennessee, Virginia, and Wisconsin — which should

27   reasonably expect that federal courts will not approve settlements that authorize or contemplate

28   the violation of their laws. Finally, the Court's suggestion that the relevant state laws may be

1   preempted by the Child Online Protection and Privacy Act (COPPA) is incorrect, because the

2   Supreme Court has made clear that Congress's decision not to regulate in a particular area (here,

3   individuals between 13 and 18 years old) does not preempt states' ability to regulate in that area

4   absent a specific showing (not made here) of congressional intent to do so. In fact, discussing the

5   parental-consent laws upon which the Schachter objector-appellants rely, class counsel himself

6   admits that "The laws of the other States are not preempted." Mot. 11. Thus, regardless of

7   whether they succeed, the Schachter objector-appellants' arguments cannot be dismissed out of

8   hand as entirely lacking in potential merit, and it would provide clarity regarding a district

9   court's proper role at settlement and the preemptive scope of COPPA to have these issues

10  addressed on appeal. The answers are by no means a forgone conclusion such that the Schachter

11  objector-appellants should have to put up a bond just for the privilege of raising these questions.

12          Class counsel's attempt to cast aspersions on all objector-appellants' motives, *see* Mot. 2

13  ("Plaintiffs . . . ask the Court to impose an appeal bond upon objectors whose primary interest is

14  their own compensation[.]"), is unsupported. The Schachter objector-appellants' only argument

15  on appeal — that their children's privacy is being invaded in violation of their state-law rights —

16  shows that the Schachter objector-appellants do not stand to come away from a successful appeal

17  with any money. Class counsel's extensive discussion of *other* objectors' "Histories of Frivolous

18  and Vexatious Litigation," Mot. 14-20, is wholly irrelevant to the merits of the Schachter

19  objector-appellants' argument about their children's privacy. If any of the objections pursued on

20  appeal turn out to be frivolous, the settling parties may make a Rule 38 motion against the

21  appropriate parties before the court of appeals. *See Fleury*, 2008 WL 4680033, at *9 ("Settling

22  Parties are not left without any recourse if the appeal is frivolous.").

23          In sum, setting aside class counsel's guilt-by-association arguments and unjustified

24  insinuation about the motivations of the objectors, the gravamen of class counsel's theory is that

25  whenever out-of-state objectors lose at the district court, they should have to pay a bond to

26  appeal. This theory is untenably broad and would deny a large swath of litigants access to the

27  appeals process. This Court should instead look to the specifics of this case: the Schachter

28  objector-appellants should not be expected to pay $32,000 each just because they had to pay

1 (jointly) one appellate filing fee, do not present collection risks merely because they reside in

2 other states, and are raising a potentially meritorious claim. An appeal bond is inappropriate.

3 **IV. There Is No Justification For Imposing An Appeal Bond On An Objector Who Is Not Appealing.**

4

5       Class counsel's request for a bond against objector Judy Reidel, who is not appealing,

6 lacks any support in law or logic. A person who does not appeal cannot be taxed costs if the

7 appeal is unsuccessful. Class counsel advances no reason to impose an appeal bond on a non-

8 appellant and this Court should not do so.

9 **V. The Court Should Not Permit The Use Of An Appeal Bond To Deter Legitimate Objectors From Seeking Appellate Review.**

10

11       The magnitude of the requested bond, the attempt to impose the full amount of asserted

12 costs on *each* objector-appellant (plus one objector who is not even appealing), and class

13 counsel's guilt-by-association arguments and unfounded allegations about the motives of the

14 Schachter objector-appellants, all suggest that the purpose of this motion may not be securing

15 costs but intimidating objector-appellants from exercising their appellate rights. Whereas the

16 Schachter objector-appellants stand to pocket no money as a result of this appeal, class counsel's

17 fees are discounted by settlement expenses, *see* Doc. 360, at 7, so class counsel *does* have a

18 financial incentive to discourage an appeal.

19       Not only should the bond motion be rejected on the merits for the reasons explained

20 above, but this Court should reject the improper use of a Rule 7 bond to deter appeals: "Allowing

21 districts court to impose high Rule 7 bonds where the appeals *might* be found frivolous risks

22 impermissibly encumbering appellants' right to appeal[.]" *Azizian*, 499 F.3d at 961 (citation,

23 internal quotation marks, and source's alteration marks omitted); *accord In re Am. President*

24 *Lines, Inc.*, 779 F.2d 714, 718 (D.C. Cir. 1985) ("While, in the federal scheme, appeals found to

25 be frivolous cannot command judicial respect, those possessing merit are normally a matter of

26 right. Courts accordingly must be wary of orders, even those well-meaning, that might

27 impermissibly encumber that right." (footnotes omitted)); *Clark v. Universal Builders, Inc.*, 501

28 F.2d 324, 341 (7th Cir. 1974) ("[A]ny attempt by a court at preventing an appeal is unwarranted

1    and cannot be tolerated."); *see also Vaughn*, 507 F.3d at 300 (cautioning that "imposing too great

2    a burden on an objector's right to appeal may discourage meritorious appeals or tend to insulate a

3    district court's judgment in approving a class settlement from appellate review" (footnote

4    omitted)).

5            The availability of an appeal is particularly important for class action objectors, who play

6    a crucial role in the settlement process by speaking for absent class members and ensuring

7    adversarial presentation of issues. "Objectors provide a critically valuable service of providing

8    knowledge from a different point of view [from that of the settling parties.]" *Lane v. Facebook,*

9    *Inc.*, 696 F.3d 811, 830 (9th Cir. 2012) (Kleinfeld, J., dissenting); *see also Reynolds v.*

10   *Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, J.) ("It is desirable to have as

11   broad a range of participants in the fairness hearing as possible because of the risk of collusion

12   over attorneys' fees and the terms of settlement generally."); *Bell Atl. Corp. v. Bolger*, 2 F.3d

13   1304, 1310 (3d Cir. 1993) ("In seeking court approval of their settlement proposal, plaintiffs'

14   attorneys' and defendants' interests coalesce and mutual interest may result in mutual

15   indulgence. The parties can be expected to spotlight the proposal's strengths and slight its

16   defects. In such circumstances, objectors play an important role by giving courts access to

17   information on the settlement's merits." (citation omitted)); *In re Cardinal Health, Inc. Sec.*

18   *Litig.*, 550 F. Supp. 2d 751, 753 (S.D. Ohio 2008) ("It is undisputed that some objectors add

19   value to the class-action settlement process by: (1) transforming the fairness hearing into a truly

20   adversarial proceeding; (2) supplying the Court with both precedent and argument to gauge the

21   reasonableness of the settlement and lead counsel's fee request; and (3) preventing collusion

22   between lead plaintiff and defendants."); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F.

23   Supp. 2d 1107, 1109 (D. Minn. 2009) (same); *see also In re Prudential Ins. Co. Am. Sales*

24   *Practice Litig. Agent Actions*, 148 F.3d 283, 298 (3d Cir. 1998) (noting that objections had led to

25   several "enhancements" to a proposed settlement); *In re Domestic Air Transp. Antitrust Litig.*,

26   148 F.R.D. 297, 359 (N.D. Ga. 1993) ("The Court finds that the efforts on behalf of objectors . . .

27   assisted the Court in thoroughly examining the settlement. These objectors significantly refined

28   the issues germane to a consideration of the fairness of this complex settlement and their

1   participation transformed the settlement hearing into a truly adversarial proceeding . . . and

2   performed a valuable service for the class, even though their objections did not prevail.").

3       "As an outsider — someone without a stake in the attorneys' fee award — the objector

4   provides an unbiased view of the settlement to a court that will otherwise see only a smooth

5   presentation by the defendants' attorneys and class counsel claiming that the settlement is fair

6   and reasonable and the product of hard-fought negotiations." Robert B. Gerard & Scott A.

7   Johnson, *The Role of the Objector in Class Action Settlements — A Case Study of the General

8   Motors Truck "Side Saddle" Fuel Tank Litigation*, 31 Loy. L.A. L. Rev. 409, 417 (1998).

9   Indeed, Chief Judge Kozinski himself recently filed an objection to a class-action settlement. *See*

10  Opp'n to Pls.' Mot. for Final Approval of Class Action Settlement, Dkt. 71, *Klee v. Nissan N.

11  Am., Inc.*, No. 2:12-cv-08238 (C.D. Cal.), *at* http://www.abajournal.com/files/Kozinski.pdf.

12      The role of the class action objector is no less important on appeal. *See Crawford v.

13  Equifax Payment Servs., Inc.*, 201 F.3d 877, 881 (7th Cir. 2000) (Easterbrook, J.) (noting that

14  "appellate correction of a district court's errors is a benefit to the class" and that providing

15  objectors the opportunity to appeal "is vital"). Some of the Supreme Court's most important

16  guidance on Rule 23 resulted from a decision in which class action objectors successfully

17  appealed. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 608, 612 (1997). In fact, the very

18  legitimacy of binding absent class members through a class action settlement depends on their

19  opportunity to participate fully in the settlement, including by appealing it:

20          [N]onnamed class members are parties to the proceedings in the sense of being
            bound by the settlement. It is this feature of class action litigation that requires
21          that class members be allowed to appeal the approval of a settlement when they
            have objected at the fairness hearing. To hold otherwise would deprive nonnamed
22          class members of the power to preserve their own interests in a settlement that
            will ultimately bind them, despite their expressed objections before the trial court.
23

24  *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002). Thus, absent a showing that objectors' appeal is

25  taken in bad faith or is wholly lacking in potential merit (not just that it "*might* be found

26  frivolous," *Azizian*, 499 F.3d at 961) — a showing that class counsel has not even attempted to

27  make regarding the Schachter objector-appellants — exorbitant appeal bonds should not be used

28  to deter objectors' continued participation in litigation over class action settlements. Here, the

1    Schachter objector-appellants are raising a serious question of law about the legality of the

2    settlement in light of seven state laws protecting minors' privacy. Whether or not their position is

3    ultimately accepted by the court of appeals, the adversarial presentation of issues and appellate

4    review facilitate the development and clarification of the law and, ultimately, fairer outcomes.

5         Beyond the class action context, the breadth of class counsel's arguments, if adopted by

6    this Court, would pave the way for appeal bonds to become the norm when out-of-state litigants

7    lose — a trend that would inevitably lead to fewer appeals and the diminution of access to

8    justice, particularly for the impecunious. "[T]here can be no equal justice where the kind of an

9    appeal a man enjoys depends on the amount of money he has." *Douglas v. California*, 372 U.S.

10   353, 355 (1963) (citation and internal quotation marks omitted); *see also Lecates v. Justice of*

11   *Peace Court No. 4*, 637 F.2d 898, 899-900, 907-08 (3d Cir. 1980) (in two-tier court system, in

12   which action could be heard by a justice of the peace but losing party normally would have the

13   option to seek de novo superior court trial as of right, losing party's access to superior court in

14   civil debt action could not be conditioned on the posting of a surety bond).

15        The use of appeal bonds to chill the pursuit of legitimate, good-faith appeals is a practice

16   that this Court should emphatically discourage.

17                                    **<u>CONCLUSION</u>**

18        The motion to impose an appeal bond should be denied.

19   Dated: January 23, 2014              Respectfully submitted,

20                                        /s/ Scott Michelman

21        Jay Rorty (SBN 135097)          Scott Michelman (D.C. Bar No. 1006945)
            jayrorty@gmail.com              (admitted pro hac vice)
          LAW OFFICES OF JAY RORTY         smichelman@citizen.org
22        835 Cedar Street                Scott L. Nelson (D.C. Bar No. 413548)
          Santa Cruz, CA 95060              snelson@citizen.org
23        Telephone: 831.316.0722         PUBLIC CITIZEN LITIGATION GROUP
          Facsimile: 831.295.6734         1600 20th Street NW
24                                        Washington, DC 20009
                                          Telephone: 202.588.1000
25                                        Facsimile: 202.588.7795

26   *Attorneys for Objectors John Schachter (on behalf of himself and his minor son S.M.S.), J.J.R.*
     *(through his mother Judy Reidel), Kim Parsons (on behalf of herself and her minor daughter*
27   *C.B.P.), Ann Leonard (on behalf of herself and her minor daughter D.Z.), R.P. (through her*
     *mother Margaret Becker), and J.C. (through his father Michael Carome)*

28