**KOREIN TILLERY**
Steven A. Katz
skatz@koreintillery.com
Aaron M. Zigler
azigler@koreintillery.com
One U.S. Bank Plaza
505 N. 7th St., Suite 3600
St. Louis, MO 63101-1625
Tel: (314) 241-4844  Fax: (314) 241-3525

[Additional Counsel Appear on Signature Page]

*Attorneys for Shane Objectors.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ANGEL FRALEY; PAUL WANG; SUSAN MAINZER; JAMES H. DUVAL, a minor, by and through JAMES DUVAL, as Guardian ad Litem; and W.T., a minor, by and through RUSSELL TAIT, as Guardian ad Litem; individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FACEBOOK, INC., <br><br> Defendant. | Case No.  C 11-1726 RS <br><br> **SHANE'S OPPOSITION TO PLAINTIFFS' REQUEST FOR A COST BOND** <br><br> Date:           February 13, 2014 <br> Time:           1:30 p.m. <br> Courtroom:   3 <br> Judge:          Hon. Richard Seeborg |

Plaintiffs' bond motion should be denied for a host of reasons. For starters, an appeal bond should only be required where there is a "need" for one, and there is no such "need" here. The proposed settlement terms provide for the payment of "Class Counsel's Fees and Costs" out of the proposed settlement fund. (ECF No. 235-1 at 8, ¶ 2.2). By Plaintiffs' own reckoning, even if all eligible settlement claims are paid, they will total $9,210,000, leaving more than $10 million in the settlement fund to cover Plaintiffs' costs of appeal.

Moreover, nearly all of the $32,000 sought is non-bondable administrative expenses. Settlement administration expenses cannot be included in a Rule 7 bond. Still, Plaintiffs offer no competent evidence or explanation in support of any of the amounts they request to be bonded.

Finally, even if the Court is inclined to require an appeal bond, it cannot require each appellant to post a bond for the full amount, as Plaintiffs have requested. For reasons discussed below, however, the Court should exercise its discretion to deny any appeal bond. Appeal bonds are neither automatic nor required by the rules. "[W]e emphasize that the rule states that a district court 'may,' rather than 'shall,' impose a bond for costs on appeal." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007). That discretion is to be exercised based on the "need for a bond for costs." Fed. R. App. P. 7 (1979 advisory notes). Plaintiffs have failed to demonstrate any such need because there is no such need. Plaintiffs' bond motion should be denied.

**I.    Increased Expenses of Settlement Administration Pending Appeal Cannot Be Included in an Appeal Bond Because No Rule or Statute Authorizes Such Expenses as "Costs on Appeal."**

Federal Rule of Appellate Procedure 7 gives district courts discretion to "require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of *costs on appeal*." Fed. R. App. P. 7 (emphasis added). Costs on appeal generally include "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. Civ. P. 39(e). "[T]he costs identified in Rule 39(e)," however, are "not necessarily the only[] costs available on appeal." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007). As Plaintiffs

themselves acknowledge, the "holding" of *Azizian* is "that the Court may include such expenses in the appeal bond *if an applicable rule or statute defines them as 'costs.'*" Bond Motion at 21-22 (emphasis added); *see Azizian*, 499 F.3d at 958 ("the term 'costs on appeal' in Rule 7 includes all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees").

But Plaintiffs fail to identify "an applicable rule or statute" that defines settlement administration expenses as "costs" on appeal. Indeed, after acknowledging this requirement of the *Azizian* holding, in the very next sentence of their motion, Plaintiffs cite district court decisions—not a rule, not a statute—as authority for the proposition that settlement administration expenses are taxable "costs" on appeal. Bond Motion at 22. There is a very good reason Plaintiffs fail to cite a rule or statute defining settlement administration expenses as "costs on appeal": there isn't one.

In the first case Plaintiffs cite, this Court *denied* a bond motion seeking class settlement administration expenses pending appeal. *Schulken v. Wash. Mut. Bank*, No. 09-CV-02708-LHK, 2013 WL 1345716 (N.D. Cal. Apr. 2, 2013). Plaintiffs attempt to distinguish *Schulken*, contending that the bond for administrative expenses was denied on the grounds that the plaintiffs did not adequately identify the basis for their estimate of those expenses and did not clearly distinguish them from attorneys' fees. Bond Motion at 24. That, however, is a gross mischaracterization of *Schulken*. The Court's primary reason for denying the bond motion—which Plaintiffs completely ignore—was that such expenses are not properly included in an appeal bond¬:

> In this case, Plaintiffs–Appellees do not in fact seek a bond for attorney's fees, but rather for another set of costs beyond those taxable under Federal Rule of Appellate Procedure 39(e)—the administrative costs of delaying settlement. Under *Azizian*, it is clear that this Court may include such expenses in the appeal bond if an applicable rule or statute defines them as "costs." By contrast, if such delay expenses are more properly deemed "damages" of delay, the Court may not include them in the appeal bond. …
>
> Plaintiffs note that some courts have recognized administrative expense of delay as "costs" for the purpose of Rule 7, even without identifying an authorizing fee-shifting statute. In the single post-*Azizian* case relied on by Plaintiffs–Appellees, the *Miletak* Court distinguished between "delay damages" (caused by the delay in recovering the award) and the "administrative costs" of responding to class members' needs pending the appeal, and included the latter

> in assessing the amount of an appeal bond. This opinion did not identify any fee-shifting statute authorizing administrative expenses as "costs," but nonetheless interpreted such expenses as falling within the meaning of "costs" in Rule 7.
>
> At the March 28, 2013 hearing, Plaintiffs–Appellees were unable to identify any additional precedent or statutes authorizing administrative expenses as "costs," and could neither concretely identify the basis for their $10,000 estimate, nor clearly distinguish the projected costs from those that could be claimed as attorney's fees. As a result, the Court declines to include the $10,000 of administrative costs in the appeal bond.

*Id*. at *7-8 (citation omitted). Having ignored this critical holding in *Schulken*, Plaintiffs predictably fail to distinguish it from the present case.

The next case Plaintiffs cite is the same case the Court discussed in *Shulken*—*Miletak v. Allstate Ins. Co.,* C 06-03778 JW, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012). As noted, in *Miletak*, the Court held that "administrative costs" may be included in an appeal bond, but it gave no reasons for that conclusion. As Judge Koh observed in *Shulken*, *Miletak* "did not identify any fee-shifting statute authorizing administrative expenses as 'costs.'" *Schulken*, 2013 WL 1345716, at *8. But "because a district court opinion does not have binding precedential effect" and "all the weight a district court opinion carries" is "its persuasive weight," *NASD Dispute Resolution, Inc. v. Jud. Council of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007), Judge Koh was free to disregard *Miletak*, and she did so.

Similarly, in *In re Netflix Privacy Litig.,* No. 5:11-CV-00379-EJD, 2013 WL 6173772 (N.D. Cal. Nov. 25, 2013), the Court did not explain its reasons for concluding that administrative costs could be included in an appeal bond, nor did it identify any fee- or cost-shifting statute defining administrative expenses as "costs." Rather, the sum total of the Court's discussion was two sentences. First, after properly recognizing that "delay damages" cannot be included in an appeal bond, the Court asserted that "Plaintiffs do not seek a bond for delay damages or attorneys' fees, but rather for the administrative costs incurred during the delay of settlement." *Id*. at *4. Then, in a footnote, the Court distinguished *Schulken* on the grounds that "Plaintiffs in this case concretely identified the basis for their estimate and distinguished the projected costs from attorneys' fees." *Id*. at *4 n.2 The Court did not address the *Schulken* holding that administrative expenses are not

"costs" for purposes of a Rule 7 appeal bond. Like *Miletak*, *Netflix* is not persuasive.

The smattering of remaining cases Plaintiffs cite are from other district courts, some from outside the Ninth Circuit. Plaintiffs fail to acknowledge that "courts disagree on whether the additional costs of settlement administration are properly included within the calculation of a bond amount under Rule 7." *In re Toyota Motor Corp.*, 8:10ML02151 JVS FMOX, 2013 WL 5775118, at *2 (C.D. Cal. Oct. 21, 2013).

> Courts that refuse to impose appeal bonds to cover increased settlement administration costs reason that such costs are not "costs on appeal" because they are not within the scope of the Rule 39(e) taxable costs or another applicable fee-shifting statute. *E.g., In re Bayer Corp.*, [No. 09-MD-2023 BMC, 2013 WL 4735641, at *3-4 (E.D.N.Y. Sept. 3, 2013)]. Here, this Court is persuaded by that rationale.
>
> This conclusion is in accord with Ninth Circuit authority, which has considered a related issue of whether attorney fees may be encompassed in the term "costs on appeal." *See Azizian*, 499 F.3d at 958. … Although Plaintiffs point to examples of cases in which other courts have imposed bonds based on delay costs, they have not been able to identify any "applicable fee-shifting statute," that might justify imposition of the additional amount of bond in the present case.
>
> Therefore, the Court concludes that application of *Azizian* in this case precludes inclusion of increased settlement administration costs in the amount of a bond imposed on appeal.

2013 WL 5775118, at *3. That rationale is not merely persuasive; it is completely unrebutted.

None of the cases Plaintiffs cite even address the reasoning of cases like *In re Toyota* and *Schulken*, much less refute it. And Plaintiffs offer no reason for not following that reasoning. Accordingly, this Court should likewise refuse to impose an appeal bond to cover increased settlement administration expenses because those expenses are not "costs on appeal." They are not Rule 39(e) taxable costs, and they are not "costs" under any other applicable rule or fee- or cost-shifting statute. Plaintiffs' motion for an appeal bond covering administrative expenses should be denied.

**II.   Administrative Expenses Cannot Be Included in an Appeal Bond Because They Are "Delay Damages," Plaintiffs Agreed to Delayed Settlement Implementation, and Any Alleged Expenses Will Not be Borne by Plaintiffs or the Class.**

**A.   Appellants cannot be required to post an appeal bond for "delay damages."**

A second reason the Court should deny the bond motion is that any expenses that might result

KOREIN TILLERY
*Attorneys at Law*

from delayed implementation or execution of a judgment are "delay damages" that cannot be included in a Rule 7 appeal bond. *See* Pl. Ex. 2 ("we estimate these appeals will cause an incremental increase of approximately $1,250 to $1,750 per month in ongoing Settlement Administration fees and expenses during the Appeal period"). Even Plaintiffs and the authorities they cite recognize that an "appeal bond, however, may not include delay damages." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *4 (N.D. Cal. Nov. 25, 2013).

Plaintiffs confuse the difference between a Rule 7 appeal bond and a Rule 8 supersedeas bond. The latter is a "bond to stay execution on a judgment during the pendency of the appeal." BLACK'S LAW DICTIONARY (9th ed. 2009) (supersedeas bond, citing Fed. R. Civ. P. 8). Using an appeal bond to "secur[e] the benefits that would inure to the class members under the settlement agreement … [is] essentially using a bond for costs on appeal as a surrogate for a supersedeas bond. Bonds to supersede a judgment must be set under Rule 8, not Rule 7." *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 298-99 (5th Cir. 2007).

Appellants have not requested a stay of judgment or that implementation of the proposed settlement be delayed pending appeal. Rule 8 therefore has no application here, and Rule 7 cannot do the work Plaintiffs ask of it. Delay damages are precisely what Plaintiffs ask appellants to bond under the guise of anticipated administrative expenses. Plaintiffs do not make any effort to explain how increased administrative expenses resulting from their projected 17.4-month delay in settlement implementation are anything other than "delay damages." *See* Bond Motion at 22. None of the cases Plaintiffs cite offer any rationale, either. Indeed, Plaintiffs themselves characterize these increased expenses as anticipated expenses "beyond the date on which the judgment should have become final" (*id.*)— in other words, "delay damages." Plaintiffs' motion to bond those expenses should therefore be denied.

**B. Plaintiffs voluntarily agreed to delayed settlement implementation.**

A third reason the excessive bond Plaintiffs seek here cannot be granted is that the delayed implementation of the settlement is self-inflicted. As just noted, appellants have not requested a stay of the Court's final judgment approving the settlement. Rather, *Plaintiffs and Facebook voluntarily agreed to that delay*, without any input from appellants, as part of the terms of their

1  proposed settlement. Just as the Fifth Circuit observed in *Vaughn*, the reason the class settlement
2  here is delayed is because the terms that Plaintiffs negotiated provide that "the settlement does not
3  become effective, by its terms, until any appeals are concluded." 507 F.3d at 299.

**C. Neither Plaintiffs nor class members are at risk for payment of any increased settlement administration expenses in the event their bond motion is denied.**

There is yet another, wholly independent reason the Court should deny the extravagant bond Plaintiffs seek: the claim that Plaintiffs or the class will "incur" administrative costs during the pendency of the appeal is demonstrably false from the face of Plaintiffs' motion itself. Even if this Court's approval of the settlement approval is ultimately affirmed on appeal, then *after* all eligible claims are paid, nearly $10.8 million will remain in the settlement fund. As Plaintiffs acknowledge on the first page of their motion, "[t]he Class action settlement will provide a cash distribution to over 614,000 members in the amount of $15 each, or approximately $9,210,000." Bond Motion at 1 (emphasis added). Under the terms of the proposed settlement, the proposed $20 million settlement fund "shall be used for the payment of … the costs incurred by the Escrow Agent and Settlement Administrator." (ECF No. 235-1 at 8 ¶ 2.2). As the Court noted in its final order approving the proposed settlement, the settlement would "result in small cash payments to the relatively low percentage of class members who filed claims, and *cy pres* payments of several millions of dollars." (ECF No. 359 at 1). Thus, neither Plaintiffs nor any eligible class members are at the slightest risk for paying any amount of increased administrative expenses that might be incurred during the pendency of the appeal. Even if all claims are eventually paid in full, there would still be millions of dollars of undistributed settlement funds available to satisfy all of anticipated costs of settlement administration.

**III. The Amount of the Appeal Bond Plaintiffs Have Requested is Both Excessive and Speculative.**

**A. The costs Plaintiffs claim are duplicative.**

Plaintiffs ask the Court to "impose an appeal bond in the amount of $32,000 on each of the appellants"—in other words, that each of the 15 appellants post a bond in the amount of $32,000, for a grand total of $480,000. Bond Motion at 3, 25. Of that amount, only a tiny fraction includes

KOREIN TILLERY
*Attorneys at Law*

1 a request for typical Rule 39(e) appeals costs "estimated" at $1,500. (The rest is accounted for by
2 the non-bondable administrative expenses discussed above.) But even requiring each of the 15
3 appellants to post a $1,500 bond would be duplicative and is not authorized by Rule 7. If
4 Plaintiffs' motion is granted, appellants will collectively have paid for bonds to secure the
5 identical costs of appeal not once, but 15 times. Plaintiffs cite no authority in support of their
6 request.

7 The plaintiffs in *In re Toyota Motor Corp.*, No. 8:10ML02151 JVS FMOX, 2013 WL
8 5775118 (C.D. Cal. Oct. 21, 2013), made a similar bond request, although in that case the request
9 was somewhat more modest; the plaintiffs did not seek duplicative bonds from each appellant but
10 from each of four groups of appellants. The court rejected the request.

> Plaintiffs seek bonds to cover their briefing costs four times over. This is clearly improper under the plain language of the Rule, which permits imposition of a bond in an amount limited to that "necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Thus, at most, by Plaintiffs' estimation, this portion of the bond amount should therefore not exceed $809.

15 *Id*. at *2. The same is true here. Rule 7 does not authorize imposition of a bond in an amount that
16 covers Plaintiffs' appeals costs 15 times over or twice over, for that matter. At the parties request,
17 each of these appeals was consolidated on December 12. Accordingly, by Plaintiffs' own
18 estimation, this portion of the bond should not exceed $1,500 collectively for all appellants and
19 should therefore not exceed $100 per appellant.

20 Assuming the Court exercises it discretion to require any appeal bond at all, whatever amount
21 the Court may ultimately determine to be proper, Rule 7 authorizes security for that amount and
22 no more, regardless of the number of appellants. Plaintiffs' request that each appellant be required
23 to post the full amount of the total bond is meritless and should be denied.

24 **B. The costs Plaintiffs claim are speculative.**

25 Plaintiffs also fail to provide any basis for their $1,500 estimate of Rule 39(e) costs. Rather,
26 they "anticipate" a need to "compile" their expert's declarations for the Excerpts of Record
27 required under Ninth Circuit rules. *See* Circuit Rule 30-1.
28 In Plaintiffs' papers in support of their Motion for Preliminary

> Approval, declarations by Plaintiffs' experts were included as support for the estimates of the Class' potential damages. I believe that these documents were important to the Court's understanding of the issues as to the settlement and as to the Motion for Attorney's fees and costs. I also believe that these documents are unlikely to be included among the excerpts of record provided by the appellants. Thus, I expect that my firm will be obliged to pay at least $1,500 in copying and mailing costs for the additional excerpts, should the appellants fail to include the documents.

(Declaration of Robert Arns ECF No. 435-1 at ¶ 4). Those declarations are nine and twelve pages each. (Decls. of Allman and Torres, ECF Nos. 281-282). Under Ninth Circuit rules, Plaintiffs would at most need to prepare four copies of those declarations for a total of 84 pages (four copies of 12 pages each).[1]

The seven paper copies of Plaintiffs' appellate brief do not justify the costs Plaintiffs seek to have bonded, either. Generously assuming their brief consists of 100 pages (well beyond what the Rules permit, see Fed. R. Civ. P. 32(a)(7)) and that their Excerpts of Record is also 100 pages, the total is still just 1,100 pages of copies (seven copies of a 100-page brief plus four copies of a 100-page Excerpts of Record). At the outlandish copy rate of a dollar per page, Plaintiffs' taxable costs would still be $400 less than they have requested. At ten cents per page, Plaintiffs would have to make 15,000 pages of copies to incur $1,500 in copy costs. Plaintiffs have made no showing that there copy costs on appeal will come anywhere near those numbers.

Similarly, the settlement administrator's alleged expenses are based exclusively on unsupported, conclusory allegations: "we estimate these appeals will cause an incremental increase of approximately $1,250 to $1,750 per month," including "an estimated monthly cost of $250 for storage of records, $500 to $700 for handling class members' communications, $50 for website updates, $100 to $200 for escrow management, and $350 to $500 for overall project management." (ECF No. 435-3). Plaintiffs and their administrator do not offer the slightest factual bases for those assertions, which are dubious on their face. Why would there be a need for

---

[1] The procedure for filing Excerpts of Record in the Ninth Circuit "mirrors" the procedure for briefs. The Excerpts are initially filed electronically, and then four paper copies are filed with the court. See Excerpts of Record FAQs at http://www.ca9.uscourts.gov/cmecf/faqs/er/#ecfers-servepapercopies. Paper copies do not need to be served on registered ECF filers (and all appellants' counsel here are registored ECF filers). *Id.*

1  monthly website updates? Why is any record storage necessary, much less storage that costs $250

2  per month? Does the administrator base its $500 to $700 monthly expense for communicating

3  with class members on its experience in this case since the filing of the first appeal in September?

4  What is "overall project management" and why does it cost $350 per month at a minimum? The

5  administrator's declaration does not answer these questions or provide a factual basis to support

6  the claimed monthly expenses. Three months after the first appeal was filed, there should be

7  monthly invoices available to support these claims, but none are provided. The Court should thus

8  assume no factual evidence exists to support Plaintiffs' allegedly increased, monthly

9  administrative expenses, and Plaintiffs' bond motion should be denied for these reasons as well.

## CONCLUSION

Plaintiffs concede that expenses included in an appeal bond must be authorized as costs by a rule or statute, yet they seek a bond for over $30,000 in administrative expenses without contending that any rule or statute authorizes such expenses as costs. They offer scant support for the $1,500 they estimate in the only costs of appeal that would be taxable. And they offer no authority for requiring each appellant to post a bond for the full amount of any bond that the Court may require.

Moreover, there simply is no need for an appeal bond here because the proposed settlement terms also cover "Class Counsel's Fees and Costs." As discussed earlier, even if all eligible settlement claims are paid, there will be more than $10 million remaining in the settlement fund which may be used to reimburse Plaintiffs' and their attorneys for any costs of appeal. In view of these facts and the serious shortcomings of Plaintiffs' motion, the Court should decline to require any appeal bond and deny Plaintiffs' motion in its entirety.

Dated: January 23, 2014

By   /s Aaron M. Zigler
One the attorneys for Sheila L. Shane
and her minor daughter

Steven A. Katz
Aaron M. Zigler
KOREIN TILLERY
505 N. 7th Street, Suite 3600

| | |
|---|---|
| 1 | St. Louis, MO 63101 |
| | Tel. (314) 241-4844 |
| 2 | Fax. (314) 241-3525 |
| 3 | Edward A. Wallace |
| | WEXLER WALLACE LLP |
| 4 | 55 West Monroe Street, Suite 3300 |
| | Chicago, IL 60603 |
| 5 | Tel. (312) 346-2222 |
| | Fax. (312) 346-0022 |
| 6 | |
| | Lee Squitieri |
| 7 | Ray Barto |
| | SQUITIERI & FEARON, LLP |
| 8 | 32 E. 57th Street, 12th Floor |
| | New York, NY 10022 |
| 9 | Tel. (212) 421-6492 |
| | Fax. (212) 421-6553 |
| 10 | |
| | Antony Stuart |
| 11 | STUART LAW FIRM |
| | 801 South Grand Avenue, 11th Floor |
| 12 | Los Angeles, California 90017-4613 |
| | Tel. (213) 612-0009 Fax. (213) 489-0225 |
| 13 | |
| | John C. Torjesen |
| 14 | JOHN C. TORJESEN & ASSOCIATES, PC |
| | 612 N. Sepulveda Blvd. |
| 15 | Los Angeles, California 90049 |
| | Tel. (310) 440-0005 Fax. (310) 440-0006 |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

KOREIN TILLERY
*Attorneys at Law*