FILED
JAN 06 2016
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Batman v. Facebook, Inc.*, Nos. 13-16819+

BEA, Circuit Judge, dissenting:

I agree with most of the majority's disposition of this case. I part ways with the majority on two issues: the use of *cy pres* and the denial of objector's fees. I discuss each issue in turn.

I

I acknowledge that our case law regarding the use of *cy pres* in class-action settlements is rather lax; it generally requires only that "[t]he *cy pres* remedy . . . bear[] a direct and substantial nexus to the interests of absent class members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012); *see also Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038–41 (9th Cir. 2011). The problems with the application of *cy pres* to class actions are legion, and I will not repeat them here. *See Marek v. Lane*, 134 S. Ct. 8, 9 (2013) (Roberts, C.J., concurring in the denial of certiorari); *Lane v. Facebook, Inc.*, 709 F.3d 791, 794–95 (9th Cir. 2013) (M. Smith, J., dissenting from the denial of rehearing en banc); *see also* Martin H. Redish et al., *Cy Pres Relief and the Pathologies of the Modern Class Action*, 62 Fla. L. Rev. 617 (2010). But in this case, the district court had no need to invoke *cy pres* at all because the settlement funds can be distributed directly to class members.

I start from the premise that "damage awards are ideally distributed to the

1

class members whose claims are being compromised by the class action judgment." 4 William B. Rubenstein, *Newberg on Class Actions* § 12:14 (5th ed. 2011). Our case law recognizes that *cy pres* is a way to "distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Lane*, 696 F.3d at 819 (quoting *Nachshin*, 663 F.3d at 1036). In that vein, *cy pres* should be used only if: (1) it is infeasible to distribute the money to class members directly, such as when identifying the members of the class is exceedingly difficult or costly; or (2) funds are left over after a distribution has been made, and the per-class-member amount remaining is so small as to make a pro rata redistribution of funds uneconomical. *See Principles of the Law of Aggregate Litigation* § 3.07 (Am. Law Inst. 2010); 4 Rubenstein, *supra*, §§ 12:26, 12:28, 12:30, 12:32 (collecting cases). I would require the district court to find that one of these conditions is met before making or approving a *cy pres* award.

      The district court did not make such a finding—and neither condition holds true in this case. The settlement agreement set up a scheme to distribute $20 million (or the amount remaining after paying fees and expenses) to class members who submitted valid claim forms. Class members were identified and given notice of the settlement, and over 600,000 class members submitted claims. No money has yet been distributed. It is thus eminently feasible to distribute the bulk of the

net settlement fund to the claiming class members; indeed, when it gave final approval to the settlement, the district court increased the per-claimant distribution from $10 to $15, as it was allowed to do under the settlement agreement. I see no reason why the district court could not have further increased the per-claimant distribution to avoid giving a huge windfall to the charities identified as *cy pres* recipients.[1]

I also find the district court's decision odd. During the hearing on preliminary approval of the settlement agreement, the district court repeatedly expressed discomfort at being handed too much discretion in making *cy pres* awards. The parties explained that the settlement "defaults to a prorated distribution" of funds to claiming class members with *cy pres* to be used only "when we have that point of economic futility"—that is, when the per-claimant distribution would be very small. Yet, in approving the final settlement, the district court essentially earmarked an arbitrary—but large—portion of the net settlement

---

[1] The district court suggested it could be "unfair" to increase the per-claimant distribution because, anticipating the per-claimant distribution would be $10 or less, some class members may not have submitted claims. I do not understand this. If there were any problem, it would be one of notice, but the settlement agreement and long-form notice provided to class members both explained that the district court can increase the per-claimant distribution if the net settlement fund is not exhausted by the claims made. Moreover, even accepting the district court's premise, I cannot fathom why increasing the per-claimant distribution to $15 is fair, but raising it a few dollars more is not.

fund for charity, with another arbitrary amount going to the claiming class members. This course of action treated the *cy pres* recipients as entitled to something under the settlement agreement, rather than as substitutes for claiming class members, which contravenes the principles I outlined previously and the settlement agreement itself.

I would thus find that the district court abused its discretion in approving the final settlement. But because the settlement agreement allows the district court to increase the per-claimant distribution, I would not undo the entire agreement. Instead, I would vacate the district court's decision and remand with instructions to set a per-claimant distribution that should exhaust the net settlement fund. If there were funds remaining after that distribution, a *cy pres* award would likely be proper.

## II

I would also find that the district court abused its discretion in denying fees to objector Sam Kazman. The district court admitted that only Kazman suggested calculating class counsel's fee award on the net settlement value rather than the gross settlement value. Contrary to what the district court stated, Kazman's objection on this point was not necessarily "commonsense," as the district-court judge overseeing this case had, in prior cases, approved attorneys'-fee awards

4

calculated on the gross settlement value. *See, e.g.*, *Petersen v. Lowe's HIW, Inc.*, No. C 11 01996 RS, 2012 U.S. Dist. LEXIS 123018, at *11 (N.D. Cal. Aug. 24, 2012) (Seeborg, J.) (awarding attorneys' fees equal to 22% of the gross settlement value). In addition, the district court acknowledged that a fee award may be proper "where an objector advances a point not previously made by other parties or objectors even if the Court would have *sua sponte* reached the same conclusion." *See also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) ("[O]bjectors must decide whether to object without knowing what objections may be moot because they have already occurred to the judge.").

    The district court calculated that adopting Kazman's suggestion reduced class counsel's fee award by approximately $300,000. Nonetheless, the district court concluded that Kazman did not make a material contribution to the class. I disagree; saving the class $300,000 on attorneys' fees—or approximately $0.50 per claiming class member—is clearly a material benefit. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (finding a $325,000 increase in the settlement fund sufficiently material to warrant a reconsideration of objectors' fees). I would thus find Kazman and his counsel entitled to fees for their trouble in making this objection.

    I recognize that objector fees must be reasonable in light of both the amount

5

of the benefit conferred on the class and the time required to make the objection. *See id.*; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–52 (9th Cir. 2002). Kazman's counsel submitted an affidavit stating that their lodestar—for Kazman's entire objection—was approximately $50,000. The district court determined that any fee award to Kazman would be de minimis because Kazman's objection regarding the calculation of class counsel's fee award occupied only a small portion of his overall objection to the settlement. As far as I can tell from the record, the district court did this without inspecting the time records of Kazman's counsel[2] and without asking Kazman to specify how much time he and his counsel spent on that part of the objection. Although I understand the district court's desire not to haggle over small fee awards, I also think it is an abuse of discretion to dismiss a fee request as de minimis without having the relevant information. *Cf. United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc) (holding that a district court abuses its discretion when it makes factual findings that are "illogical, implausible, or without support in inferences that may be drawn from facts in the record"). I would thus vacate the district court's denial of objector fees

---

[2] Kazman's counsel did not submit their time records with their declaration but stated that they would submit such records at the district court's request.

and remand with instructions to determine a reasonable fee award.³

---

³ I also do not understand why the district court approved a settlement giving millions of dollars to *cy pres* recipients—which performed no service for the class—but denied fees to Kazman—whose objection undeniably produced a material benefit for the class.